# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HELEN HUDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., CCP III CAYMAN GP LTD., GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC. and MORGAN STANLEY & CO. LLC,<br><br>Defendants. | Case No. 1:20-cv-05593<br><br>Judge Sharon Johnson Coleman |
| PIETRO PIUMETTI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., and CCP III CAYMAN GP LTD.,<br><br>Defendants. | Case No. 1:20-cv-05701<br><br>Judge Mary M. Rowland |

CHRISTOPHER STRIANESE, Individually and on Behalf of All Others Similarly Situated,

           Plaintiff,

        v.

GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., CCP III CAYMAN GP LTD., GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC. and MORGAN STANLEY & CO. LLC,

           Defendants.

Case No. 1:20-cv-05765

Judge Andrea R. Wood

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MOHAMMED ABDUL WAJID TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

2

## I.    INTRODUCTION

On September 21, 2020, the above-captioned *Hudson* action was filed on behalf of purchasers of GoHealth, Inc. ("GoHealth" or the "Company") common stock pursuant and/or traceable to GoHealth's July 2020 initial public offering (the "IPO"). The lawsuit asserts claims under §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. §§ 77k and 77o)). On September 25, 2020 and September 28, 2020, respectively, the above-captioned *Piumetti* and *Strianese* lawsuits were filed, alleging substantially the same causes of action involving the same misconduct against primarily the same defendants. The Court should therefore consolidate these three lawsuits. 15 U.S.C. § 77z-1(a)(3)(B)(ii).

The PSLRA requires the Court to "consider any motion made by a purported class member," and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). Under the PSLRA, the Court should "adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii).

The Court should appoint Mr. Abdul Wajid as Lead Plaintiff because he has timely moved for such appointment, has a substantial financial interest in the outcome of this litigation, and is a typical and adequate class representative. The Court should also approve of Mr. Abdul Wajid's selection of Block & Leviton LLP as Lead Counsel because the firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members, as well as Mr. Abdul Wajid's selection of Carlson Lynch LLP as Liaison Counsel.

3

II.    STATEMENT OF FACTS[1]

This securities class action was filed on behalf of all purchasers or acquirers of GoHealth common stock pursuant and/or traceable to GoHealth's July 2020 IPO. ¶ 1. GoHealth provides an end-to-end health insurance marketplace that purportedly specializes in matching consumers with Medicare Advantage plans. ¶ 2. GoHealth, based in Chicago, IL, is organized as a holding company, with GoHealth Holdings, LLC ("GHH") as the Company's principal asset. *Id.* GHH was formerly known as Blizzard Parent, LLC ("Blizzard") until it was acquired by the private equity firm Centerbridge in September 2019 for $1.1 billion in equity and cash. *Id.* In this acquisition, Centerbridge also agreed to pay GoHealth's selling shareholders up to $275 million worth of additional contingent consideration, to be paid in the form of common and senior preferred earnout units, if the Company achieved certain earnings targets in late 2019 and 2020. *Id.*

Following this acquisition, GoHealth reported tremendous growth. ¶ 3. From September 13, 2019 to December 31, 2019, the Company purportedly generated $308 million in net revenues, up from just $231 million during the period from January 1, 2019 through September 12, 2019. *Id.* In other words, GoHealth claimed to have generated more revenue in 3.5 months following the acquisition than it did during the 8.5 months preceding the transaction. *Id.* In addition, GoHealth represented that its business model was highly profitable, offering the best lifetime value ("LTV") of commissions per consumer acquisition cost ("CAC") of any of its peers. ¶ 4. GoHealth represented that its LTV/CAC ratio for its Medicare Internal segment (its largest and most profitable segment) was 3.9x and 2.7x for 2019 and its first quarter 2020, respectively,

---

[1] All references to "¶_" are to paragraphs of the Complaint for Violation of the Securities Act of 1933, filed in the first-filed *Hudson* lawsuit. *See* Case No. 1:20-cv-05593, ECF No. 1.

significantly higher than the 1.7x LTC/CAC ratio stated during the first quarter of 2019, and by some estimates, about double the Company's peers. *Id.*

GoHealth generated net losses in 2019, but the Company explained this was because it was in growth mode and seeking to expand its presence as a dominant force in the Medicare insurance marketplace. ¶ 5. GoHealth's earnings before interest, taxes, depreciation, and amortization ("EBITDA") increased considerably in the lead-up to the IPO. *Id.* The Company claimed that its adjusted EBITDA had grown by 388% year-over-year to $170 million during its pro forma 2019 and by 394% year-over-year to $35 million during the first quarter of 2020. *Id.*

In the first quarter of 2020, 74% of GoHealth's entire net revenues were derived from just two insurance carriers, Humana and Anthem. ¶ 6. The concentration was even higher for the Company's Medicare segments, at roughly 85% of all segment revenues, despite the fact that Humana and Anthem were estimated to account for just 23% of total Medicare Advantage market-wide enrollment. *Id.*

GoHealth receives no revenue directly from consumers; rather, it considers insurance carriers to be its primary customers as they are responsible for paying commissions to GoHealth in exchange for the Company reliably placing policies in compliance with applicable regulations and carrier-specific requirements. ¶ 7. Per GoHealth, its LTV/CAC ratio was primarily the result of the Company's unique competitive advantages in the services it provides to its insurance carrier partners. *Id.* GoHealth reported that its "Best-in-Class Medicare LTV/CAC Ratio" is "Driven by Proprietary Technology, Business Processes, Data and Highly Skilled Agents." *Id.*

On June 19, 2020, GoHealth filed a Registration Statement on Form S-1, which the SEC declared effective, after two amendments, on July 14, 2020. ¶ 8. On July 16, 2020, GoHealth filed a Prospectus on Form 424B4, which incorporated and formed part of the Registration Statement.

5

*Id.* (the "Registration Statement"). This was used to sell 43.5 million shares of GoHealth Class A common stock at $21 per share, for total gross proceeds of $913.5M. *Id.* Proceeds from the IPO were used primarily for the purpose of paying Company insiders and Centerbridge, and consummating financial obligations that had arisen from the acquisition. *Id.*

This lawsuit alleges that the Registration Statement contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures under the rules and regulations governing its preparation. ¶ 9. Specifically, the Registration Statement failed to disclose at the time of the IPO that: (1) the Medicare insurance industry was undergoing a period of elevated churn, which had begun in the first half of 2020; (2) GoHealth suffered from a higher risk of customer churn as a result of its unique busines model and limited carrier base; (3) GoHealth suffered from degradations in customer persistency and retention as a result of elevated industry churn, which arose from the Company's concentrated carrier business model and its efforts to expand into new geographies, develop new carrier partnerships and worsening product mix; (4) GoHealth had entered into materially less favorable revenue sharing arrangements with external sales agents; and (5) these adverse financial and operational trends were internally projected by GoHealth to continue and worsen following the IPO. *Id.*

Shortly after the IPO, the price of GoHealth common stock suffered precipitous price declines, and by September 15, 2020, shares closed at just $12.53 each, over 40% below the $21.00 price investors paid for the stock in the IPO just two months before. ¶ 10.

### III.   ARGUMENT

#### A.  The Court Should Consolidate the *Hudson*, *Piumetti*, and *Strianese* Actions.

Under the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed," the court shall not make the determination of the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii). "A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Dollens v. Zionts*, No. 01-cv-5931, 2001 WL 1543524, at *2 (N.D. Ill. Dec. 4, 2001), citing *Ikerd v. Lapworth*, 435 F.3d 197, 204 (7th Cir. 1970); *see also* Fed. R. Civ. P. 42(a) (noting that a court may consolidate actions that "involve a common question of law or fact"). Courts routinely consolidate lawsuits brought under the Securities Act and the PSLRA that involve the same core defendants, class periods, and factual allegations. *See, e.g.*, *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-1039, 2018 WL 3141814, at *1 (N.D. Ill. June 26, 2018)

The *Hudson*, *Piumetti*, and *Strianese* lawsuits clearly involve common questions of law and fact. As set forth above, these actions were brought against the same Defendants[2] in connection with alleged violations of the Securities Act concerning GoHealth's July 2020 IPO. Accordingly, these actions allege substantially the same wrongdoing, namely that the Registration Statement for the IPO contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make the necessary disclosures required under relevant rules and regulations governing its preparation. Consolidation of the two actions

---

[2] The *Piumetti* action does not name Goldman Sachs & Co. LLC, BOFA Securities, Inc., or Morgan Stanley & Co., LLC, as defendants. *See* Case No. 20-cv-05701, ECF No. 1.

under Fed. R. Civ. P. 42(a) is therefore appropriate. *See, e.g.*, *Sokolow*, 2018 WL 3141814, at *1. The Court should therefore consolidate the above-captioned actions into the first-filed *Hudson* action, 1:20-cv-05593. Upon selection as Lead Plaintiff, Mr. Abdul Wajid proposes to file a single consolidated class action complaint.

### B. The Court Should Appoint Mr. Abdul Wajid as Lead Plaintiff

The PSLRA establishes a procedure governing the appointment of the lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(1) & 15 U.S.C. § 77z-1(a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*, today, November 20, 2020), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. 77z-1(a)(3)(A)(i)(II).

*Second*, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. 77z-1(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . . (bb) in the determination of the court, has

the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §77z-1(a)(3)(B)(iii).

Mr. Abdul Wajid satisfies each of these requirements, and the Court should therefore appoint him as Lead Plaintiff.

### a. This Motion Is Timely.

The statutorily-required notice of this action was published on September 21, 2020, advising class members of: (1) the pendency of the action; (2) the claims asserted therein; and (3) the right to move the Court to be appointed as lead plaintiff by November 20, 2020. *See* Motion, Ex. A.

Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, Mr. Abdul Wajid timely moves this Court to be appointed as Lead Plaintiff on behalf of all members of the class. Mr. Abdul Wajid has signed a certification pursuant to the PSLRA. *See* Motion, Ex. B. He has selected and retained qualified counsel to represent him and the proposed class. *See* Motion, Exs. E, F. Accordingly, Mr. Abdul Wajid is entitled to have his application for appointment as Lead Plaintiff and approval of Lead Counsel considered and approved by the Court.

### b. Mr. Abdul Wajid Has a Substantial Financial Interest in the Relief Sought by the Class.

According to 15 U.S.C. § 77z-4(a)(3)(B)(iii), a presumption exists that the Court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. *See, e.g.*, *Sokolow*, 2018 WL 3141814, at *2.

As evidenced by, among other things, Mr. Abdul Wajid's accompanying signed certification and loss chart, Mr. Abdul Wajid incurred substantial losses of approximately $95,540.00 as measured under § 11 of the Securities Act on his transactions in GoHealth stock.

9

*See* Motion Exs. B, C. At the time of this filing, Mr. Abdul Wajid believes that he possesses the largest financial interest of any movant seeking lead plaintiff status. Accordingly, Mr. Abdul Wajid is entitled to the presumption that he is the most adequate lead plaintiff.

### c.  Mr. Abdul Wajid Otherwise Satisfies Rule 23.

In addition to possessing a significant financial interest, a presumptive lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Only two of the Rule 23 requirements pertain to the lead plaintiff motion: typicality and adequacy. *Sokolow*, 2018 WL 3141814, at *6. "[A] plaintiff's claims are typical if they arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Id.* (internal quotation marks omitted). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Id.* (internal quotation marks omitted).

Mr. Abdul Wajid has submitted a sworn certification confirming his desire, willingness, and ability to serve as a lead plaintiff. *See* Motion., Ex. B. Like all class members, Mr. Abdul Wajid purchased GoHealth common stock pursuant and/or traceable to GoHealth's July 2020 IPO at allegedly inflated prices and suffered damages as a result. Motion, Exs. B, C. Mr. Abdul Wajid's substantial financial interest indicates that he has the requisite incentive to vigorously represent the putative class's claims. Furthermore, Mr. Abdul Wajid has submitted a Declaration in which

he discusses his background and details his understanding of the responsibilities of a lead plaintiff and his commitment to leading this case. *See* Motion, Ex. D. Moreover, Mr. Abdul Wajid is neither subject to unique defenses nor aware of any conflicts between his claims and those asserted by the class. Finally, as discussed below, he has selected qualified counsel, highly experienced in securities litigation.

Mr. Abdul Wajid's common interests shared with the class, substantial financial interest in this Action, and selection of qualified counsel demonstrate that he *prima facie* satisfies the Rule 23 inquiries at this stage of the litigation.

**C. The Court Should Approve Mr. Abdul Wajid's Selection of Block & Leviton LLP as Lead Counsel and Carlson Lynch LLP as Liaison Counsel**

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. § 77z-1(a)(3)(B)(v); *Sokolow*, 2018 WL 3141814, at *8. The lead plaintiff's choice of counsel should be approved, and the Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *11 (N.D. Ill. Oct. 8, 2019). Mr. Abdul Wajid has selected Block & Leviton LLP, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as lead counsel. Motion, Ex. E. As recently noted by one district court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.*

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

11

Moreover, Mr. Abdul Wajid has selected Carlson Lynch LLP to serve as Liaison Counsel. With offices in Chicago, Pittsburgh, San Diego and Los Angeles, Carlson Lynch is a national firm specializing in complex class and collective actions, including high profile multidistrict litigation proceedings. The firm's experience is far-ranging in scope and includes class action matters involving financial fraud (including securities fraud, derivative actions, and mortgage fraud), data breaches, privacy, consumer fraud, labor and employment, antitrust and civil rights litigation, in federal and state courts throughout the country. As set forth in its resume (Motion, Ex. F), the firm's successes have resulted in substantial monetary recoveries and injunctive benefits on behalf of class members across the United States.

Accordingly, the Court should approve Mr. Abdul Wajid's selection of Block & Leviton LLP as Lead Counsel and Carlson Lynch LLP as Liaison Counsel.

## IV.    CONCLUSION

The Court should consolidate the *Hudson*, *Piumetti*, and *Strianese* lawsuits as they assert substantially the same claim or claims and involve common questions of law and fact. Moreover, Mr. Abdul Wajid satisfies each of the PSLRA's requirements for appointment as Lead Plaintiff. Accordingly, Mr. Abdul Wajid respectfully requests that the Court consolidate the above-captioned actions; appoint him as Lead Plaintiff; and approve of his selection of Block & Leviton LLP as Lead Counsel and Carlson Lynch LLP as Liaison Counsel.

Dated: November 20, 2020                    Respectfully submitted,

                                            */s/ Katrina Carroll*
                                            Katrina Carroll
                                            **CARLSON LYNCH LLP**
                                            111 West Washington Street, Suite 1240
                                            Chicago, IL 60602
                                            (312) 750-1265 (phone)
                                            kcarroll@carlsonlynch.com

12

*Proposed Liaison Counsel*

Jeffrey C. Block
Jacob A. Walker
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 (phone)
(617) 507-6020 (fax)
jeff@blockleviton.com
jake@blockleviton.com
steti@blockleviton.com

*Attorneys for Mr. Abdul Wajid and
Proposed Lead Counsel*

13

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, I caused a true and correct copy of the foregoing *Motion of Mohammed Abdul Wajid to Consolidate and For Appointment as Lead Plaintiff and Approval of Lead Counsel* to be served on all counsel of record via filing electronically on the Court's CM/ECF system.

*/s/ Katrina Carroll*