**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HELEN HUDSON, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-05593 |
| Plaintiff, | CLASS ACTION |
| vs. | Honorable Sharon Johnson Coleman |
| GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., CCP III CAYMAN GP LTD., GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC. and MORGAN STANLEY & CO. LLC, | |
| Defendants. | |
| PIETRO PIUMETTI, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-05701 |
| Plaintiff, | CLASS ACTION |
| v. | Honorable Mary M. Rowland |
| GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., and CCP III CAYMAN GP LTD., | |
| Defendants. | |

[Caption Continued On Next Page.]

| CHRISTOPHER STRIANESE, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-05765 |
|---|---|
| Plaintiff, | CLASS ACTION |
| v. | Honorable Andrea R. Wood |
| GOHEALTH, INC., CLINTON P. JONES, BRANDON M. CRUZ, TRAVIS J. MATTHIESEN, NVX HOLDINGS, INC., CENTERBRIDGE PARTNERS, L.P., CCP III AIV VII HOLDINGS, L.P., CB BLIZZARD CO-INVEST HOLDINGS, L.P., BLIZZARD AGGREGATOR, LLC, CENTERBRIDGE ASSOCIATES III, L.P., CCP III CAYMAN GP LTD., GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC. and MORGAN STANLEY & CO. LLC, | |
| Defendants. | |

**COMPENDIUM OF UNPUBLISHED CASES CITED IN THE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE GOHEALTH INVESTOR GROUP FOR CONSOLIDATION OF THE ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Pursuant to the Honorable Sharon Johnson Coleman's Memorandum of Law Requirements, Muhammad Zeeshan, Sai Kumar Reddy Edavally, and Benjamin Neenan (collectively, the "GoHealth Investor Group" or "Movant"), by and through its counsel, respectfully submits the following unpublished cases cited in its Memorandum of Points and Authorities in Support of the Motion of the GoHealth Investor Group for Consolidation of the Actions, for Appointment as Lead Plaintiff, and Approval of Selection of Counsel.

| Tab | Description |
|---|---|
| Tab 1 | *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 U.S. Dist. LEXIS 107340 (N.D. Ill. June 26, 2018) |
| Tab 2 | *Gunderson v. Klondex Mines Ltd.*, No. 3:18-cv-00256-LRH-CBC, 2018 U.S. Dist. LEXIS 213995 (D. Nev. Dec. 18, 2018) |

1

| Tab 3 | *In re Groupon Secs. Litig.*, Master File No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012) |
|---|---|
| Tab 4 | *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) |
| Tab 5 | *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006) |

Dated: November 20, 2020                         Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Liaison Counsel for Movant and [Proposed]*
*Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
(*pro hac vice* application forthcoming)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Telephone: (203) 992-4523
shopkins@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
580 California Street, Suite 1200
San Francisco, California 94014
Telephone: (415) 568-2124
fortunato@bespc.com

*Co-Counsel for Movant and [Proposed] Lead*

2

*Counsel for the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Muhammad Zeeshan*

3

# Tab 1

 Cited

As of: November 21, 2020 12:01 AM Z

# *Chandler v. Ulta Beauty, Inc.*

United States District Court for the Northern District of Illinois, Eastern Division

June 26, 2018, Decided; June 26, 2018, Filed

Case No. 18-cv-1577

**Reporter**

2018 U.S. Dist. LEXIS 107340 *; 2018 WL 3141763

BARBARA CHANDLER, Plaintiff, v. ULTA BEAUTY, INC., et al., Defendants.

**Counsel: [*1]** For Barbara Chandler, Individually and On Behalf of All Others Similarly Situated, Plaintiff: Patrick Vincent Dahlstrom, LEAD ATTORNEY, Louis Carey Ludwig, Pomerantz LLP, Chicago, IL; J. Alexander Hood, II, Jeremy Alan Lieberman, Pomerantz Llp, New York, NY.

For Ulta Beauty, Inc., Mary N. Dillon, Scott M. Settersten, Defendants: Craig Christopher Martin, LEAD ATTORNEY, Howard Steven Suskin, Matt D. Basil, Paul Benjamin Rietema, Jenner & Block LLP, Chicago, IL.

For Ulta Investor Group, Movant: Jeffrey Michael Salas, Salas Wang LLC, Chicago, IL.

For Danny Hurlbut, Marlene Hurlbut, Cynthia Busse, Movants: Jeffrey Michael Salas, Salas Wang LLC, Chicago, IL; Shannon Hopkins, PRO HAC VICE, Levi & Korsinsky, LLP, Stamford, CT.

For Lawrence Banker, Movant: Gregory Potrepka, Shannon Hopkins, PRO HAC VICE, Levi & Korsinsky, LLP, Stamford, CT.

For Lehigh County Employees Retirement Fund, Movant: Danielle S. Myers, Robbins Geller Rudman & Dowd Llp, San Diego, CA.

For Asha Ullah, Ahmad Ullah, Vaijinath Chakote, Movants: Charles H Linehan, Lesley F. Portnoy, Robert Vincent Prongay, PRO HAC VICE, Glancy Prongay & Murray LLP, Los Angeles, CA; John Scott Monical,

Mitchell Benjamin Goldberg, Peter E. Cooper, **[*2]** Lawrence, Kamin, Saunders & Uhlenhop, Chicago, IL; Marielise Fraioli, Lawrence Kamin Saunders & Uhlenhop, LLC, Chicago, IL.

**Judges:** Robert M. Dow, Jr., United States District Judge.

**Opinion by:** Robert M. Dow, Jr.

# Opinion

**MEMORANDUM OPINION AND ORDER**

This is a securities class action against Ulta Beauty, Inc. ("Ulta" or the "Company"), Mary N. Dillon, and Scott M. Settersten (collectively, the "Defendants"). Four movants sought appointment as lead plaintiff and lead counsel in this matter: (1) Daniel Hurlbut, Marlene Hurlbut, Cynthia Busse, and Lawrence Banker (collectively, the "Hurlbut Group") [14; 32][1], (2) Asha Ullah, Ahmad Ullah, and Dr. Vaijinath Chakote (collectively, the "Ullah Group") [22], (3) Iron Workers Local 580 (the "IW 580")[2] [23], and (4) Lehigh County

---

[1] The Hurlbut Group filed a corrected motion for appointment as lead plaintiff and approval of selection of lead counsel and memorandum in support [32; 34] the same day it filed its original motion and memorandum in support [14; 16].

[2] Iron Workers Local 580 initially filed its motion for appointment as lead plaintiff and approval of lead counsel with Iron Workers Locals 40, 361 & 417. However, due to the

Employees Retirement Fund [19]. Lehigh County Employees Retirement Fund filed a motion to withdrawal [40] its motion for appointment as lead plaintiff and approval of selection of lead counsel. Accordingly, Lehigh County Employees Retirement Fund's motion to withdraw [40] is granted and its motion for appointment as lead plaintiff and approval of selection of lead counsel [19] is stricken. For the reasons set forth below, the Hurlbut Group's motion to **[*3]** for leave to file a sur-reply [53] is granted. The Court grants the motion [14; 32] of Lawrence Banker, Cynthia Busse, Danny Hurlbut, Marlene Hurlbut for appointment as lead plaintiffs and approves their selection of Levi & Korsinsky, LLP as lead counsel and Salas Wang LLC as liaison counsel. The Court denies the remaining motions [22; 23] for appointment as lead plaintiff. The case is set for further status on July 17, 2018 at 10:00 a.m.

## I. Background

Defendant Ulta Beauty, Inc. operates a chain of beauty stores that offers cosmetics, fragrance, skin and hair care products, and salon services to customers throughout the United States. [1, at ¶ 2.] Defendant Mary N. Dillon served at all relevant times as the Company's Chief Executive Officer and Director. *Id.* at ¶ 16. Defendant Scott M. Settersten served at all relevant times as the Company's Chief Financial Officer, Treasurer and Assistant Secretary. *Id.* at ¶ 17.

Plaintiff alleges that "Defendants made false and/or misleading statements and/or failed to disclose: (i) the Company was engaged in the widespread practice of repackaging returned cosmetics and re-shelving them alongside unblemished products to sell at full retail price, **[*4]** and (ii) that as a result of the foregoing, Ulta's public statements were materially false and misleading at all relevant times." *Id.* at ¶ 4. On February 9, 2018, "media outlets reported that a consumer class action had been filed against the Company, alleging that the Company engaged in the 'widespread and surreptitious' practice of repacking returned cosmetics

---

recovery of Ulta's common stock after the end of the class period, Iron Workers Locals 40, 361 & 417 no longer have any losses under the PSLRA in connection with their class period purchases of Ulta's stock. [51, at 2.] Accordingly, Iron Workers Locals 40, 361 & 417 no longer seeks appointment as a lead plaintiff. *Id.* IW 580 continues to seek appointment as sole Lead Plaintiff based on its own significant financial interest in the litigation. *Id.*

and re-shelving them alongside unblemished products to sell at full price." *Id.* at ¶ 5. The price of Ulta's stock fell following this news. *Id.* at ¶ 6. On February 23, 2018, CBS News published a story reporting on statements made by at least one former Ulta employee indicating that Ulta store managers pressured the Company's employees to clean and resell used products. Id. at ¶ 7. The price of Ulta's stock fell further following this news. *Id.* at ¶ 8.

On March 2, 2018, Plaintiff Barbara Chandler filed this securities class action on behalf of all persons who purchased or otherwise acquired Ulta securities between March 30, 2016 and February 23, 2018, both days inclusive, seeking to recover damages caused by Defendants' alleged violations of federal securities laws. *Id.* at ¶ 1. Pending before the Court are the motions to be appointed **[*5]** as lead plaintiff and for approval of counsel filed by (1) the Hurlbut Group, (2) the Ullah Group, and (3) IW 580.

## II. Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides guidelines for the appointment of a lead plaintiff in a securities class action case. The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members[.]" *15 U.S.C. § 78u-4(a)(3)(B)(i)*. The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" who "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*." *15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(aa)*; (bb); and (cc). This presumption may be rebutted, however, if a member of the purported class establishes that the "presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. The PSRLA further provides **[*6]** that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v)*.

## III. Analysis

## A. Timing of Motions

By statute, any motions for lead plaintiff of a class action brought under the PSLRA must be made within 60 days of the Early Notice. See *15 U.S.C. §77z-1(a)(3)(A)(i)(II)*. The remaining movants all filed timely motions [14; 22; 23; 34] and therefore have satisfied *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)*. However, the IW 580 raised new arguments in its reply brief. Specifically, IW 580 dropped Iron Workers Locals 40, 361 & 417 as a proposed co-lead plaintiff, changed its loss calculation, argued that the Hurlbut Group was inadequate, and argued that the Court should appoint IW 580 because it is the only institutional investor seeking appointment. Because IW 580 raised these arguments for the first time in its reply brief, these arguments could be deemed to be waived. *Fletcher v. ZLB Behring LLC, 2006 U.S. Dist. LEXIS 3056, 2006 WL 218164, at *4 (N.D. Ill. Jan. 27, 2006)*. However, for the sake of completeness, the Court addresses the merits of these arguments. Accordingly, the Court grants the Hurlbut Group's motion for leave to file a sur-reply [53] and will consider the arguments raised in the Hurlbut Group's sur-reply as part of its analysis.

## B. Largest Financial Interest

The PSLRA presumes that [*7] the most adequate plaintiff is the plaintiff who—in addition to satisfying other requirements—has the largest financial interest in the relief sought by the class. "The largest financial interest provision seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.' The PSLRA, however, does not specify how courts should measure the largest financial interest in the relief sought by the class." *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012)* (internal citations and quotations omitted). Most courts consider: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *Hospira, Inc., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *4* (citing *Lax v. First Merch. Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997))*; see also *In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001)* ("[W]e agree with the many district [*8] courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." (citations omitted)).

In their initial motions, each of the remaining movants agreed that the fourth factor—the approximate losses suffered—is the most critical factor in determining a moving party's financial interest. [24, at 5; 28, at 6; 34, at 9.] This is consistent with the approach taken by most courts. See *Hospira, Inc., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *3* ("While courts differ on the precise weight to apply to each factor, most courts agree that fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff." (citations omitted)); *Takara Trust v. Molex, Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005)* ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses"); see also *In re CMED Sec. Litig., 2012 U.S. Dist. LEXIS 47785, 2012 WL 1118302, at *3* ("In giving weight to the four factors, courts in this District, as others, place the most emphasis on the last of the four factors: the approximate losses suffered by the movant above any weight accorded to net shares purchased and net expenditures." (citations [*9] and quotations omitted)); *Foley v. Transocean Ltd., 272 F.R.D. 126, 128 (S.D.N.Y. 2011)* ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant." (collecting cases)); *In re Vicuron Pharms., Inc. Sec. Litig., 225 F.R.D. 508, 511 (E.D. Pa. 2004)* (finding the amount of the financial loss "the most significant" factor); *In re Comverse Tech., Inc. Sec. Litig., 2007 U.S. Dist. LEXIS 14878, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007)* (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest").

In its opening brief and its brief in opposition, IW 580 and Iron Workers Locals 40, 361 & 417 (collectively, the "Iron Workers Group") claimed $182,958.00 in losses.

The Iron Workers Group argued that even though the other two remaining movants claimed more in losses, their claimed losses were overstated. [48, at 3.] Because the Iron Workers Group was claiming more in losses than the other movants—after adjusting for the identified deficiencies—the Iron Workers Group argued that it had the greatest financial interest in the relief sought by the class.[3] However, as a result of how losses are calculated pursuant to the PSLRA, it became clear after the lead plaintiff motions were filed that the IW 40, 361 & 417 no longer had any losses **[\*10]** in connection with its class period purchases of Ulta securities, as Ulta stock recovered after the class period ended. IW 40, 361 & 417 therefore withdrew its request to serve as lead plaintiff. [51, at 1 n.2.]

Although IW 580 continues to seek appointment as lead plaintiff, its claimed losses have decreased since it filed its lead plaintiff motion. Thus, in its reply brief, IW 580 switched course and argued that the number of retained shares is the "most determinative factor in assessing financial interest."[4] [51, at 3-4.] Because IW 580 retained the most shares through both of the corrective disclosures, it argues that is has the largest financial interest. However, the Court sees no reason to depart from the general rule that overall financial losses are the best measure of each movants' respective financial interest in the relief sought by the class.[5] In fact, the use of losses to measure overall financial interest is especially appropriate in this case. Because the value of

---

[3] The Iron Workers Group also argued that they should be appointed lead plaintiff because they had the most retained shares through both of the relevant corrective disclosures. [48, at 2.] However, the Iron Workers Group's argument focused on the movants' claimed losses. [*Id.* at 3-6.]

[4] In making this argument, IW 580 cites to cases indicating that the number of net shares purchased is the most relevant factor. [51, at 4.] As noted in the sur-reply filed by the Hurlbut Group, it also has the most shares purchased, net shares purchased, and net funds expended. [53-1.]

[5] Indeed, courts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method. See, *e.g.*, *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp., 2013 U.S. Dist. LEXIS 106246, 2013 WL 3934243, at \*3 (N.D. Ill. July 30, 2013)* (rejecting a movant's proposal to alter the loss calculation methodology when "[i]t was only after [movant] discovered that it did not have the largest loss amount when compared to other Plaintiffs that [movant] changed its position in later filings as to the proper loss calculation").

Ulta's common stock rallied after the class period ended, movants who retained Ulta's shares did not incur as much in losses. Although retained shares might be an objective way to measure financial interest when **[\*11]** the security at issue did not recover after the Class Period, the measure is of little relevance when the security did recover—as is the case here. The Court therefore will use each movant's losses to determine their respective financial interest in the relief sought by the class.

The remaining movants generally agree that the "LIFO" or the "last in, first out" approach is the appropriate method for calculating losses under the PSLRA. "'LIFO,' or 'last in, first out,' calculates loss by assuming that the stocks purchased most recently were sold first." *In re CMED Sec. Litig., 2012 U.S. Dist. LEXIS 47785, 2012 WL 118302 at \*3*. However, the parties dispute how to properly calculate their respective LIFO losses. Both the Hurlbut Group and IW 580 argue that the Ullah group cannot claim losses from in-and-out trades that were completed before the corrective disclosure dates at issue in this case.

The Ullah Group disputes the principle that a trader cannot recover losses on stock purchases and sales that occurred prior to any corrective disclosure. However, that principle is supported by Seventh Circuit and Supreme Court cases holding that a plaintiff cannot satisfy the causation element of a securities fraud claim based on an inflated price theory relating **[\*12]** to securities sold before the fraud was revealed. *Wong v. Accretive Health, Inc., 773 F.3d 859, 864-65 (7th Cir. 2014)* ("[T]hose class members who sold their * * * common stock before * * * the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud."); see also *Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)* ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Accordingly, the Court will exclude losses incurred prior to both of the corrective disclosure dates from the losses claimed by the Ullah Group. *Alexandre Pelletier v. Endo International PLC, 316 F. Supp. 3d 846, 2018 U.S. Dist. LEXIS 101994, 2018 WL 3035745, at \*2 (E.D. Pa. June 19, 2018)* (holding that losses incurred before any disclosure could not have been caused by the any disclosures and should not be included in the "'largest financial interest' calculus"); *Galmi v. Teva Pharms. Indus. Ltd., 302 F. Supp. 3d 485 (D. Conn. 2017)* (reducing claimed losses to exclude losses not plausibly tied to any partial disclosure); *Sallustro v. CannaVest*

2018 U.S. Dist. LEXIS 107340, *12

_Corp., 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015)_ ("Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures." (collecting cases)).

The remaining movants have all recognized that the Hurlbut Group had more than $180,000[6] in losses. The parties **[*13]** have submitted a number of loss calculations for the other movants, ranging from $49,331.78 to $58,598.00 for IW 580 and ranging from $8,954.00 to $25,398.10 for the Ullah Group.[7] The Court therefore concludes that the Hurlbut Group has the greatest financial interest in the relief sought by the class.

### C. _Rule 23_ Requirements

The PSLRA further provides that the lead plaintiff must "otherwise satisfy the requirements of _Rule 23 of the Federal Rules of Civil Procedure_." _15 U.S.C. § 78u4(a)(3)(B)(iii)(I)(cc)_. _Rule 23(a)_ provides that a party may serve as a class representative "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." _Fed. R. Civ. P. 23(a)_. The typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff. _Hospira, 2012 U.S. Dist._

_LEXIS 54081, 2012 WL 1339678, at *8_. The Hurlbut Group has satisfied its burden by making a preliminary showing that it satisfies the requirements of _Rule 23_.

Under _Rule 23(a)_, a plaintiff's claims are typical if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims **[*14]** of other class members and his or her claims are based on the same legal theory." _Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998)_. Here, for purposes of selecting the lead plaintiff, the Hurlbut Group's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of the other class members in this case. As such, it meets the typicality requirement of _Rule 23(a)_. See _Johnson v. Tellabs, 214 F.R.D. 225, 228 (N.D. Ill. 2002)_.

The Hurlbut Group also meets the adequacy requirement in _Rule 23(a)_. "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." _Hospira, Inc., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *8_ (citing _Tellabs, 214 F.R.D. at 228-29_). There is no indication that the Hurlbut Group's claims conflict with those of the class. Given the Hurlbut Group's alleged losses, it has a substantial interest in the outcome of this case. Finally, the Hurlbut Group is represented by competent, experienced counsel. Because the Hurlbut Group satisfies all the criteria of _15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)_, it is presumed the "most adequate plaintiff" under the PSLRA.

### D. Rebuttable Presumption

The presumption **[*15]** established by the PSLRA "may rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." _15 U.S.C.A. § 78u-4 (a)(3)(B)(iii)(II)_. IW 580 argues that the Hurlbut Group is an inadequate lead plaintiff because the group includes an individual (Lawrence Banker) who does not have any pre-litigation relationship with the rest of the members in the group (Danny Hurlbut, Marlene Hurlbut, and Cynthia Hurlbut Busse), who are related.

---

[6] The Hurlbut Group initially claimed $222,748.00 in losses. However, the Iron Workers argued that after accounting for gains in connection with class period transactions in Ulta securities—losses properly excluded from financial loss calculations pursuant to the PSLRA, see _Makor Issues & Rights, Ltd. v. Tellabs, Inc., 256 F.R.D. 586, 600 (N.D. Ill. 2009)_—the Hurlbut Group only incurred $180,844.00 in losses. _Id._ The Hurlbut Group does not respond to the argument, apparently conceding that these gains should be excluded.

[7] The Ullah Group does not provide a calculation of its losses excluding in-and-out trades. However, the Ullah Group does not argue that the other movants improperly calculated its losses after excluding the in-and-out claims. Instead, the Ullah Group focuses its argument on whether such in-and-out losses can be included in its loss calculation at all, apparently recognizing that it does not have the largest financial interest excluding such losses.

The Seventh Circuit has not yet addressed whether and to what extent the claims of class members can be aggregated together for the purposes of determining which movant has the largest financial interest in the relief sought by the class. Although some courts have held that a group of investors must have a preexisting relationship to serve as lead plaintiff together, see, *e.g., Sakhrani v. Brightpoint, Inc., 78 F. Supp. 2d 845 (S.D. Ind. 1999),* "the 'trend' has been to allow small groups of investors to act as lead plaintiff even if they do not have pre-existing relationships." See *Bang v. Acura Pharms., Inc., 2011 U.S. Dist. LEXIS 2550, 2011 WL 91099, at *2 (N.D. Ill. Jan. 11, 2011)* (citing *Sabbagh v. Cell Therapeutics, Inc., 2010 U.S. Dist. LEXIS 93614, 2010 WL 3064427 at *4-5 (W.D. Wash. Aug. 2, 2010)).* This trend is consistent with the **[*16]** Third Circuit's decision *In re Cendant Corporation Litigation,* which held that small groups of investors can aggregate their losses in computing the total loss amount and act as lead plaintiff even if they did not have any pre-existing relationship. *264 F.3d 201, 266-67 (3rd Cir. 2001).* In reaching this conclusion, the Third Circuit reasoned that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner[.]" See *id. at 266.* The Court follows the case trend and concludes that there is nothing improper about the members of the Hurlbut Group serving as lead plaintiff together.

To begin, the Hurlbut Group is small and cohesive enough to adequately control and oversee the litigation. All but one of the individuals in the Hurlbut Group are related. The members of the Hurlbut Group also submitted a joint affidavit discussing how they will monitor the litigation and work to achieve the best outcome for the possible class. [16-6.] For example, the members of the Hurlbut Group represent that they will review and discuss all pleadings, orders, and motion papers. *Id.* at ¶ 17. Furthermore, even excluding the losses associated with Mr. Banker, the Hurlbut Group still claims more losses than any **[*17]** other movant. [16-3, at 5.] Given the significant financial losses claimed by each member of the Hurlbut Group, each can be counted on to sufficiently monitor counsel.

IW 580 also argues that even if the Court determines that another movant has a larger financial interest in the relief sought by the class, it should nonetheless be appointed lead plaintiff because the PSLRA favors institutional investors. [24, at 10.] While it is true that PSLRA was enacted—at least in part—to increase the likelihood that institutional investors would more often

control securities litigation,[8] the text of the statute establishes a presumption that the most adequate plaintiff is the plaintiff with the largest financial interest in the relief sought. *15 U.S.C. 78u-4(a)(3)(B)(iii).* Some courts have chosen institutional investors over individual investors when their claimed financial interests were close, *Randall v. Fifth St. Fin. Corp., 2016 U.S. Dist. LEXIS 15719, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016)* ("As the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption."), but this is not such a case. Because no party has rebutted the Hurlbut Group's presumptive lead plaintiff status, the Court grants the Hurlbut Group's motion for appointment as lead plaintiff.

### E. Lead Counsel [*18]

Counsel representing the parties who moved for lead plaintiff in this case are highly skilled and have extensive experience in the area of securities litigation. "The PSLRA provides that the lead plaintiffs shall, subject to Court approval, select and retain counsel to represent the class they seek to represent." *Hospira, Inc., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *9* (citing *15 U.S.C. § 78u-4(a)(3)(B)(v)).* The Hurlbut Group has selected Levi & Korsinsky, LLP as lead counsel and Salas Wang, LLC as liaison counsel. No party has challenged the Hurlbut Group's choice of counsel. Given the extensive experience of these firms in the area of securities law, the Court approves them as counsel in this case.

### IV. Conclusion

For the foregoing reasons, Lehigh County Employees Retirement Fund's motion to withdraw [40] is granted and its motion for appointment as lead plaintiff and approval of selection of lead counsel [19] is stricken. For the reasons set forth below, the Hurlbut Group's motion to for leave to file a sur-reply [53] is granted. The Court grants the motion [14; 32] of Lawrence Banker, Cynthia Busse, Danny Hurlbut, Marlene Hurlbut for appointment as lead plaintiffs and approves their selection of Levi & Korsinsky, LLP as lead counsel and Salas Wang LLC as liaison counsel. **[*19]** The Court denies the remaining

---

[8] See H.R. Conf. Rep. No. 104-369, at 34 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

2018 U.S. Dist. LEXIS 107340, *19

motions [22; 23] for appointment as lead plaintiff. The case is set for further status on July 17, 2018 at 10:00 a.m.

Dated: June 26, 2018

/s/ Robert M. Dow, Jr.

Robert M. Dow, Jr.

United States District Judge

---

**End of Document**

# Tab 2

# *Gunderson v. Klondex Mines Ltd.*

United States District Court for the District of Nevada

December 18, 2018, Decided; December 18, 2018, Filed

Case No. 3:18-cv-00256-LRH-CBC; Case No. 3:18-cv-00284-LRH-CBC; Case No. 3:18-cv-00288-LRH-CBC

**Reporter**

2018 U.S. Dist. LEXIS 213995 *; 2018 WL 6620875

DAVID GUNDERSON, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. KLONDEX MINES LTD., RICHARD J. HALL, BLAIR SCHULTZ, RODNEY COOPER, MARK DANIEL, JAMIE HAGGARTY, PAUL ANDRE HUET, WILLIAM MATLACK, CHARLES OLIVER, HECLA MINING COMPANY, and 1156291 B.C. UNLIMITED LIABILITY COMPANY, Defendants.JOHN D. LAWSON, Plaintiff, v. KLONDEX MINES LTD., RODNEY COOPER, MARK DANIEL, JAMIE HAGGARTY, RICHARD J. HALL, PAUL ANDRE HUET, WILLIAM MATLACK, CHARLES OLIVER, and BLAIR SCHULTZ, Defendants.NELSON BAKER, On Behalf of Himself and All Others Similarly Situated, Plaintiffs, v. KLONDEX MINES LTD., RICHARD J. HALL, PAUL HUET, WILLIAM MATLACK, CHARLES OLIVER, BLAIR SCHULTZ, RODNEY COOPER, MARK DANIEL, and JAMES HAGGARTY, Defendants.

**Subsequent History:** Motion granted by, Dismissed by, Request granted, in part, Request denied by, in part, Motion denied by, As moot *Lawson v. Klondex Mines, 2020 U.S. Dist. LEXIS 53036 (D. Nev., Mar. 24, 2020)*

**Counsel:** **[*1]** For David Gunderson, individually and obo similarly situated, Plaintiff (3:18-cv-00256-LRH-CBC): Marc L. Ackerman, LEAD ATTORNEY, PRO HAC VICE, Brodsky & Smith, LLC, Bala Cynwyd, PA; Evan Smith, PRO HAC VICE, Brodsk & Smith. LLC, Bala Cynwyd, PA; John P. Aldrich, Aldrich Law Firm, Ltd., Las Vegas, NV.

For John D. Lawson, Movant (3:18-cv-00256-LRH-CBC, 3:18-cv-00288-LRH-CBC): John P. Aldrich, Aldrich Law Firm, Ltd., Las Vegas, NV.

For Nelson Baker, Movant (3:18-cv-00256-LRH-CBC,

3:18-cv-00284-LRH-CBC): Martin Muckleroy, Las Vegas, NV; Michael J Palestina, Kahn Swick & Foti, LLC, New Orleans, LA.

For John D. Lawson, Plaintiff (3:18-cv-00284-LRH-CBC): Donald J. Enright, LEAD ATTORNEY, PRO HAC VICE, Levi & Korsinsky LLP, Washington, DC; Elizabeth K Tripodi, LEAD ATTORNEY, Levi & Korsinsky LLP, Washington, DC; John P. Aldrich, Aldrich Law Firm, Ltd., Las Vegas, NV.

For Nelson Baker, Plaintiff (3:18-cv-00288-LRH-CBC): Michael J Palestina, LEAD ATTORNEY, PRO HAC VICE, Kahn Swick & Foti, LLC, New Orleans, LA; Christopher R. Tillotson, PRO HAC VICE, Kahn Swick & Foti, LLC, New Orleans, LA; Juan E. Monteverde, PRO HAC VICE, Monteverde & Associates, New York, NY; Martin Muckleroy, Las Vegas, NV.

For **[*2]** Klondex Mines Ltd., Richard J. Hall Paul Huet, William Matlack, Charles Oliver, Blair Schultz, Rodney Cooper, Mark Daniel, James Haggarty, Defendants (3:18-cv-00288-LRH-CBC): John D. Tennert, LEAD ATTORNEY, Fennemore Craig, P.C., Reno, NV; Thomas Swigert, LEAD ATTORNEY, PRO HAC VICE, Dorsey & Whitney, Minneapolis, MN; Kathryn Johnson, PRO HAC VICE, Dorsey & Whitney, Minneapolis, MN.

**Judges:** LARRY R. HICKS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** LARRY R. HICKS

# Opinion

ORDER

Before the court are two motions to Consolidate, for Appointment of Lead Plaintiff, and Approval of Selection of Counsel. The motions were filed by plaintiff John D. Lawson (ECF No. 15),[1] and plaintiff Nelson Baker on behalf of himself and others similarly situated, (ECF No. 16). The plaintiffs in *Gunderson* ("Gunderson plaintiffs") have not opposed the motions and have not motioned the court to act as lead plaintiff. Defendants Klondex Mines, Ltd. ("Klondex"), Richard J. Hall, Blair Schultz, Rodney Cooper, Mark Daniel, James Haggarty, Paul Andre Huet, William Matlack, Charles Oliver, Hecla Mining Company ("Hecla"), and 1156291 B.C. Unlimited Liability Company (collectively "defendants")[2] have not opposed either motion. Plaintiffs each responded [*3] and replied accordingly to each motion. ECF Nos. 17, 18, 19, 20. The court now grants Lawson's motion to consolidate, appoints him lead plaintiff, and approves his chosen counsel as lead and liaison counsel.

### I. Facts and Background

This is a federal securities class action filed by and on behalf of investors of Klondex who allege violations of the *Securities and Exchange Act of 1934* and of the U.S. Securities and Exchange Commission Rules based on the then proposed merger of Klondex with Hecla and 1156291 B.C. Unlimited Liability Company. ECF No. 1 ¶ 1. The plaintiffs allege the Definitive Proxy Statement filed by Klondex was materially deficient and misleading and that it did not provide stockholders with the necessary information to make an informed vote on the merger. *Id.* ¶¶ 3, 25. As a result of the proposed sale, five different federal securities class actions were filed against defendants in this federal court between May and June, 2018.[3]

───────────────

[1] For clarity's sake, this Order refers to the ECF document numbers in *Lawson*, Case No. 3:18-cv-00284, unless otherwise noted. Specific rulings on all three cases will be found in the conclusion.

[2] Hecla Mining Company and 1156291 B.C. Unlimited Liability Company are only named defendants in the *Gunderson* Complaint.

[3] *Assad v. Klondex Mines Ltd. et al.*, Case No. 2:18-cv-00165 (June 13, 2018) and *Chandra v. Klondex Mines Ltd.*, Case No. 3:18-cv-00305 (June 25, 2018) were both voluntarily dismissed prior to this motion.

Baker filed a motion to enjoin the vote on the proposed merger on June 20, 2018. *Baker*, ECF No. 5. Following oral argument, the court found that Baker had not demonstrated [*4] that he would suffer irreparable harm if the preliminary injunction was not issued and declined to enjoin the shareholder vote. *Baker*, ECF No. 26, 27.

Baker now moves this court to (1) consolidate this matter with the two related cases before the court; (2) appoint him Lead Plaintiff; and (3) appoint his chosen counsel, Kahn Swick & Foti, LLC and Monteverde & Associates PC, as co-lead counsel and Muckleroy Lunt, LLC as liaison counsel. ECF No. 16.[4] Plaintiff John D. Lawson also moves this court to consolidate these three cases but moves to appoint himself lead plaintiff and his chosen counsel Levi & Korsinsky, LLP ("LK") as class counsel and Aldrich Law as liaison counsel. ECF No. 15.[5]

### II. DISCUSSION

### A. The court grants plaintiff Lawson's motion to consolidate.

*Federal Rule of Civil Procedure 42* allows a court to consolidate two or more actions that involve a common question of law or fact. *Fed. R. Civ. P. 42(a)*; *see also* LR 42-1. The court has broad discretion under *Rule 42* to determine whether to consolidate actions pending in the same district. *See Investors Research Co. v. United States Dist. Court for Cent. Dist., 877 F.2d 777, 777 (9th Cir. 1989)*. In determining if consolidation is proper, "[t]he court should weigh the time and effort that consolidation would save against any inconvenience, delay, or expense it would cause" [*5] as well as the specific risks of prejudice and confusion. *Narvaes v. EMC Mortg. Corp., No. CIV 07-00621 HG-LEK, 2009 U.S. Dist. LEXIS 38084, 2009 WL 1269733, at *2 (D. Haw. May 1, 2009)*.

Under *Rule 42*, the court now consolidates the three aforementioned matters. "Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to *Rule 42(a)* because unification expedites pretrial proceedings, reduces case

───────────────

[4] *Gunderson*, ECF No. 9; *Baker*, ECF No. 35.

[5] *Gunderson*, ECF No. 8; *Baker*, ECF No. 34.

duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditures of time and money for all parties involved." *Miami Police Relief & Pension Fund v. Fusion-io, Inc., Case No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, 2014 WL 2604991, at \*3, (N.D. Cal. June 10, 2014)*. Here, consolidation is proper because the three matters all allege the same or similar shareholder class action claims against defendants for violations stemming from the same proposed transaction. Additionally, as none of these cases have yet to begin discovery, consolidation at this stage will reduce duplication and minimize expenditures for all parties. Further, neither plaintiffs nor defendants oppose consolidation. The court therefore consolidates the three matters based on the overlapping questions of law and of fact and in the interests of judicial economy and efficiency under *Rule 42(a)*.

**B. The court appoints [*6] plaintiff Lawson as lead plaintiff**.

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the court must select the lead plaintiff that is "most capable of adequately representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)(i)*. Under the statute, "most capable" is read as the plaintiff "who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of *Rule 23*." *In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002)*. The PSLRA sets out a three-step process that the court must follow when selecting a lead plaintiff.

First, the plaintiff to first file an action must post notice of the pending action "in a widely circulated national business-oriented publication or wire service," which must state that "any member of the purported class may move the court to serve as lead plaintiff." *15 U.S.C. § 78u-4(a)(3)(A)(i)*. Here, the Gunderson plaintiffs were the first to file; however, they did not post notice. Rather, Baker posted the required notice in the *Globe Newswire* on July 23, 2018. *See* ECF No. 15-1, 16-3. On September 21, 2018, both Lawson and Baker timely moved for appointment as lead plaintiff under the PSLRA requirements and provided the necessary certifications under the statute. *See* ECF No. 15-1, 16-4.

Second, the court must determine **[*7]** which plaintiff is presumptively most adequate. This plaintiff will have (1) filed the complaint or motioned the court following notice; (2) "the largest financial interest in the relief sought by the class;" and (3) otherwise satisfy *Rule 23*.

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. To determine the largest financial interest, "the court may select accounting methods that are both rational and consistently applied." *Cavanaugh, 306 F.3d at 730 n.4*. Once the court identifies the plaintiff with the largest financial interest, the court "must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of *Rule 23(a)*, in particular those of 'typicality' and 'adequacy.'" *Id. at 730* (emphasis in original). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)* (internal quotation marks omitted). The adequacy requirement is satisfied by showing the plaintiff and his or her counsel do not "have any conflicts of interest with other class members," and are able and willing to "prosecute **[*8]** the action vigorously on behalf of the class." *Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003)*.

Here, undisputed by Baker, the plaintiff with the largest financial interest is Lawson: he owns 28,325 shares, Baker owns 12,014 shares, and Gunderson owns 1,905 shares of Klondex stock. ECF No. 15 at 6. The court finds number of shares a rational calculation of financial interest in this litigation. Baker argues that because both potential lead plaintiffs are individuals, rather than large investor groups, the court should simply consider this as one of many factors. However, to follow Baker's reasoning here would be directly contradictory to Ninth Circuit precedent. The Court in *Cavanaugh* specifically rejected this exact same argument: "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals." *Cavanaugh, 306 F.3d at 731-32*. Rather, the "*only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Id. at 732* (emphasis in the original).

Finding Lawson has the largest financial interest, the court now considers whether he meets the *Rule 23* requirements. Lawson fits the requirement of typicality: **[*9]** as a shareholder, he alleges he has suffered the same injury as other absent shareholders. His alleged injury stems from the same events—the proposed merger and the issuance of the allegedly materially deficient and misleading proxy statement—as other class members. And he alleges the same or

substantially similar claims based on the same or similar legal theories as the other class members. Further, Lawson is adequate. There is no evidence in the record that shows he has any conflict or special defense that puts his interests at odds with those of the other plaintiffs. By filing his motion with the court to be appointed as lead plaintiff by the required deadline—September 21, 2018—and certifying under penalty of perjury that he is willing to serve as class representative, Lawson has shown his willingness and ability to prosecute this action.

The final step of the analysis allows other plaintiffs the opportunity to rebut the presumption that the plaintiff with the largest financial interest satisfies the requirements of typicality and adequacy. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. To rebut the presumption, it must be proved that the plaintiff "will not fairly and adequately protect the interests of the class; or is subject **[*10]** to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. While "[t]he district court has latitude as to what information it will consider in determining typicality and adequacy," it is not for the court to determine which plaintiff is "more typical" or "more adequate." *Cavanaugh, 306 F.3d at 732*. If the plaintiff with the largest losses satisfies the *Rule 23* requirements, the court must appoint him lead even if the "court is convinced that some other plaintiff would do a better job." *Id.*

Baker argues that he has rebutted the presumption by showing that Lawson has failed to zealously prosecute the case: it was Baker who (1) filed the required notice to other plaintiffs via *Globe Newswire* after the Gunderson plaintiffs failed to do so, (2) filed a motion for a preliminary injunction, and (3) argued that motion before this court. While the court recognizes that Baker has zealously advocated for the class thus far, it has not been shown that Lawson is inadequate or atypical under the statute going forward. See *In re Outerwall Inc., Case No. C16-1275JLR, 2017 U.S. Dist. LEXIS 31570, 2017 WL 881382, at *7 (W.D. Wash. March 6, 2017)* (the plaintiff attempting to rebut the presumption must prove that the presumed lead plaintiff "will not **[*11]** be a fair and adequate lead plaintiff going forward"). The court is not persuaded that Lawson will not adequately protect the interests of the class or is subject to a unique defense. Simply because Baker has been more zealous in prosecuting this case to date does not prove Lawson is inadequate. Accordingly, the court grants Lawson's motion and appoints him lead plaintiff.

**C. The court approves plaintiff Lawson's choice of counsel.**

The Court must also appoint class counsel that will "fairly and adequately represent the interests of the class." *Fed. R. Civ. P. 23(g)(4)*. Under the PSLRA, the lead plaintiff is entitled to select and retain counsel to represent the class, subject to approval of the court. *15 U.S.C. § 78u-4(a)(3)(B)(v)*. Although the district court has discretion, the PSLRA "clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh, 306 F.3d at 734* (citing *15 U.S.C. § 78u-4(a)(3)(B)(v)*). Further, so long as "the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Court for the N. Dist. of Cal., 586 F.3d 703, 712 (9th Cir. 2009)*.

Lawson seeks to appoint LK as lead counsel and Aldrich Law as liaison counsel. To support the qualifications of selected counsel, Lawson produced information regarding LK's experience litigating securities fraud class actions **[*12]** and corporate governance and derivative litigation and included both firms' resumés. Accordingly, the court finds no reason that Lawson's choice of LK as class counsel and Aldrich Law as liaison counsel will not fairly and adequately represent the interests of the class, and therefore approves both as motioned.

## III. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Lawson's motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 15) is **GRANTED**. The court instructs the clerk of the court to consolidate this matter with *Gunderson v. Klondex Mines LTD. et al*, case number 3:18-cv-00256-LRH-CBC, and *Baker v. Klondex Mines LTD., et al.*, case number 3:18-cv-00288-LRH-CBC.

IT IS FURTHER ORDERED that all parties shall file any actions pertaining to this class action in *Lawson*, No: 3:18-cv-00284.

IT IS FURTHER ORDERED that Lawson is to properly serve notice on all defendants within 60 days of this Order.

IT IS FURTHER ORDERED that Baker's motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 16) is **DENIED**.

The court's additional holdings are described below:

**a. Gunderson v. Klondex Mines et. al., No. 3:18-cv-00256 [*13]**

IT IS ORDERED that plaintiff Lawson's motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 8) is **GRANTED**.

IT IS FURTHER ORDERED that the Baker plaintiffs' motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 9) is **DENIED**.

**b. Baker v. Klondex Mines et. al., No 3:18-cv-00288**

IT IS ORDERED that plaintiff Lawson's motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 34) is **GRANTED**.

IT IS FURTHER ORDERED that the Baker plaintiffs' motion to consolidate, be appointed lead plaintiff, and appoint lead and liaison counsel (ECF No. 35) is **DENIED**.

IT IS SO ORDERED.

DATED this 18th day of December, 2018.

/s/ Larry R. Hicks

LARRY R. HICKS

UNITED STATES DISTRICT JUDGE

---

**End of Document**

# Tab 3

 Positive
As of: November 21, 2020 12:03 AM Z

## *In re Groupon Secs. Litig.*

United States District Court for the Northern District of Illinois, Eastern Division

August 28, 2012, Decided; August 28, 2012, Filed

Master File No. 12 C 2450 CLASS ACTION

### Reporter

2012 U.S. Dist. LEXIS 123899 *; 2012 WL 3779311

In re GROUPON, INC. SECURITIES LITIGATION; This Document Relates To: ALL ACTIONS.

**Subsequent History:** Motion denied by *In re Groupon, Inc. Sec. Litig., 2013 U.S. Dist. LEXIS 135191 (N.D. Ill., Sept. 18, 2013)*

Motion denied by *In re Groupon Secs. Litig., 2014 U.S. Dist. LEXIS 26212 (N.D. Ill., Feb. 24, 2014)*

Motion granted by, in part, Motion denied by, in part *In re Groupon, Inc. Secs. Litig., 2014 U.S. Dist. LEXIS 67437 (N.D. Ill., May 16, 2014)*

Class certification granted by *In re Groupon, Inc. Secs. Litig., 2014 U.S. Dist. LEXIS 137382 (N.D. Ill., Sept. 23, 2014)*

Motion denied by *In re Groupon Inc. Sec. Litig., 2015 U.S. Dist. LEXIS 27334 (N.D. Ill., Mar. 5, 2015)*

Objection overruled by *In re Groupon Sec. Litig., 2015 U.S. Dist. LEXIS 196369 (N.D. Ill., May 12, 2015)*

Motion granted by, Judgment entered by *In re Groupon Sec. Litig., 2016 U.S. Dist. LEXIS 95881 (N.D. Ill., July 13, 2016)*

## Case Summary

### Overview

Plaintiff shareholders filed a securities class action as to purchases or acquisition of defendant company's common stock between certain dates, and alleged that false statements were responsible. Competing motions were filed to be appointed lead plaintiff. The trial court found that under the Private Securities Litigation Reform Act of 1995, plaintiff one shareholder had the largest financial interest in the relief sought, *15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)*, otherwise satisfied the *Fed. R. Civ. P. 23* requirements, and the presumption that he should be the lead plaintiff was not rebutted.

### Outcome

One shareholder's motion to serve as lead plaintiff granted, one shareholder's selection of lead counsel approved, and all other motions denied.

**Counsel:  [*1]** For Fan Zhang, Individually and on Behalf of All Others Similarly Situated, Plaintiff: Danielle S. Myers, LEAD ATTORNEY, Robbins Geller Rudman & Dowd Llp, San Diego, CA; James E Barz, Robbins Geller Rudman & Dowd LLP, Chicago, IL.

For John H. Cottrell, Plaintiff: Amelia Susan Newton, Leigh R. Lasky, Heidi E. VonderHeide, Norman Rifkind, Lasky & Rifkind, Ltd., Chicago, IL.

For Mario Orlandi, Daniel Wright, Plaintiffs: Carol V Gilden, Cohen Milstein Sellers & Toll PLLC, Chicago, IL.

For Groupon, Inc., Andrew D. Mason, Jason E. Child, Joseph M. Del Preto, Eric P. Lefkofsky, Theodore J. Leonsis, Peter J. Barris, Kevin J. Efrusy, Mellody Hobson, Bradley A. Keywell, Howard Schultz, Defendants: Anton Ronald Valukas, LEAD ATTORNEY, Elizabeth Abbene Coleman, Howard Steven Suskin,

Marc David Sokol, Jenner & Block LLP, Chicago, IL.

For Morgan Stanley & Co. LLC, Goldman Sachs & Co., Credit Suisse Securities (USA) LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, William Blair & Company L.L.C., Loop Capital Markets, Inc., RBC Capital **[\*2]** Markets LLC, The Williams Capital Group, L.P., Defendants: Allen W Burton, Edward N. Moss, LEAD ATTORNEYS, PRO HAC VICE, O'melveny & Myers Llp, New York, NY; Jonathan Rosenberg, LEAD ATTORNEY, PRO HAC VICE, O'Melveny & Myers, New York, NY; Kevin Buckley Duff, Rachlis Durham Duff Adler & Peel, LLC, Chicago, IL; Michael Rachlis, Rachlis, Durham, Duff, Adler & Peel, LLC, Chicago, IL.

For Michael Cohn Carter, Movant: Jeremy Alan Lieberman, LEAD ATTORNEY, PRO HAC VICE, Pomerantz Haudek Grossman & Gross Llp, New York, NY; Dominic J. Rizzi, Cafferty Clobes Meriwether & Sprengel LLP, Chicago, IL; Louis Carey Ludwig, Pomerantz Grossman Hufford Dahlstrom & Gross LLP, Chicago, IL.

For Gus Sekas, Movant: Amelia Susan Newton, Heidi E. VonderHeide, Norman Rifkind, Lasky & Rifkind, Ltd., Chicago, IL.

For John Pedrow, Movant: Daniel J. Kurowski, Elizabeth A. Fegan, Hagens Berman Sobol Shapiro LLP, Oak Park, IL; Peter E. Borkon, Hagens Berman Sobol Shapiro, Berkeley, CA; Reed R Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, CA.

For Construction Laborers Pension Trust of Greater St. Louis, Movant: Darren J Robbins, LEAD ATTORNEY, Robbins Geller Rudman & Dowd LLP, San Diego, CA.

**Judges:** Hon. CHARLES RONALD NORGLE **[\*3]** , United States District Judge.

**Opinion by:** CHARLES RONALD NORGLE

## Opinion

### OPINION AND ORDER

Before the Court are three competing motions for appointment as lead plaintiff and approval of lead counsel. For the following reasons, the Court grants Michael Carter Cohn's ("Cohn") motion to serve as lead plaintiff and approves the selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel in this action. The remaining motions are denied.

### I. INTRODUCTION

This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Groupon, Inc. ("Groupon"), "between November 4, 2011 and March 30, 2012, inclusive . . . and/or who acquired shares of Groupon common stock pursuant or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its November 4, 2011 initial public offering." Compl. ¶ 1. [1] Plaintiffs allege that, during the class period, "defendants issued materially false and misleading statements regarding the Company's business practices and financial results. Specifically, defendants failed to disclose negative trends in Groupon's business and made false statements as to Groupon's financial results." **[\*4]** Id. ¶ 3.

On June 8, 2012, the Court issued an order consolidating for all purposes Case Numbers 12 C 2450, 12 C 2460, 12 C 2547, 12 C 2791, and 12 C 3129 as In re Groupon, Inc. Securities Litigation, Master File No. 12 C 2450. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), provides that "[a]s soon as

---

[1] Defendants in this case are Groupon, Andrew Mason, Jason E. Child, Joseph M. Del Preto, Eric P. Lefkofsky, Theodore J. Leonsis, Peter J. Barris, Kevin J. Efrusy, Mellody Hobson, Bradley A. Keywell, Howard Schultz, Morgan Stanley & Co. LLC, Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, William Blair & Company L.L.C., Loop Capital Markets, Inc., RBC Capital Markets LLC and The Williams Capital Group, L.P.

practicable after [deciding consolidation], the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. Five movants originally sought appointment as lead plaintiff in this case: **[\*5]** (1) Cohn; (2) John Pedrow and Stephens Johnson ("Pedrow and Johnson"); (3) Gus Sekas ("Sekas"); (4) Mario Orlandi and Daniel Wright ("Orlandi and Wright"); and (5) the Construction Laborers Pension Fun of Greater St. Louis (the "Pension Trust").

After the movants filed their original motions, Sekas withdrew, stating that he "believes that [Cohn] has the largest financial interest in the relief sought in this action and appears otherwise typical and adequate pursuant to *Rule 23*." Notice of Withdrawal of Gus Sekas' Mot. for App. as Lead Pl. & Approval of Selection of Counsel 1. Orlandi and Wright also withdrew their motion. Pedrow and Johnson have not withdrawn but concede that Cohn has the largest financial interest in the outcome of this litigation. Accordingly, Pedrow and Johnson state that they are ready to step in as lead plaintiff "[s]hould the Court find Mr. Cohn unsuitable to serve as lead plaintiff for any reason." Pedrow & Johnson's Mem. of Law in Further Supp. of Mot. to App. Lead Pl. 4. The Pension Trust—the lone institutional investor—challenges both Cohn and Pedrow and Johnson's motions. For the following reasons, Cohn's motion is granted and the remaining motions are denied.

## II. [\*6] ANALYSIS

### A. Legal Standard

The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." *15 U.S.C. § 78u-4(a)(3)(B)(i)*. The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that:

    (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
    (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*.

*Id.* at *§ 78u-4(a)(3)(B)(iii)(I)*. This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at *§ 78u-4(a)(3)(B)(iii)(II)*. The PSLRA further provides that the "most adequate plaintiff shall, subject to the approval **[\*7]** of the court, select and retain counsel to represent the class." *Id.* at *§ 78u-4(a)(3)(B)(v)*. As each movant has filed a timely motion in response to a notice under *subparagraph A(i)*, the Court focuses its analysis on the party with the largest financial interest and the requirements of *Federal Rule of Civil Procedure 23*.

### B. Largest Financial Interest

"Under the PSLRA, presumptively, the lead plaintiff shall be the party with the largest financial interest in the relief sought by the class, assuming that person otherwise satisfies the requirements of *Rule 23*." *Craig v. Sears Roebuck & Co., 253 F. Supp. 2d 1046, 1047-48 (N.D. Ill. 2003)*. Though the PSLRA offers no guidance for how to measure which potential lead plaintiff has the "largest financial interest," many courts in this District and others look to the following four factors: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at \*5 (N.D. Ill. Aug.11, 1997)*; see also *In re: Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001)* **[\*8]** (applying Lax factors); *Varghese v. China Shenguo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2008)* ("[C]ourts in this District overwhelmingly rely on the factors derived from [Lax] . . . to evaluate who has the greatest financial interest."); *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc., No. 11 C 8332, 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at \*4 (N.D. Ill. Apr. 18, 2012)* (same). "While courts differ on the precise weight to apply to each factor, most courts agree that [the] fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff." *City of Sterling Heights Gen. Emp. Ret. Sys., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at \*4* (collecting cases); see also *Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005)* (explaining that, to determine financial interest, "most courts simply

determine which potential lead plaintiff has suffered the greatest total losses"); *Varghese, 589 F. Supp. 2d at 395* ("Financial loss . . . is the most important element of the [lead plaintiff] test.").

Here, there is no dispute that Cohn suffered the greatest loss during the class period. Applying the widely accepted Lax factors, Cohn has the largest financial interest **[*9]** in this action, as indicated by the table below: 2

⊞*Go to table1*

Accordingly, Cohn will qualify as the "presumptively most adequate plaintiff" so long as he satisfies the requirements of *Rule 23*.

## C. Rule 23 Requirements

A lead plaintiff must also make a preliminary showing that it satisfies that typicality and adequacy requirements of *Rule 23*. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)*; *Johnson v. Tellabs, Inc., 214 F.R.D. 225, 228 (N.D. Ill. 2002)* ("In selecting the lead plaintiff **[*10]** under the PSLRA . . . typicality and adequacy of representation are the only relevant considerations."). Cohn has met this burden.

"A lead plaintiff meets the typicality requirement if its 'claims or defenses . . . are typical of the claims or defenses of the class[.]'" *Takara Trust, 229 F.R.D. at 580* (quoting *Fed. R. Civ. P. 23(a)(3)*). "A lead plaintiff's claims can be considered typical if they arise out of the 'same event or practice or course of conduct that gives rise to the claims of other class members and . . . [its] claims are based on the same legal theory.'" Id. (quoting *De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983))*. The lead plaintiff's claims need not be identical to satisfy this requirement. *Johnson, 214 F.R.D. at 228*. Here, there is no dispute that Cohn's claims are based on the same legal theories and arise

_____

2 The amount expended and net losses suffered are slightly different in Pedrow and Johnson's submission, but the difference is not material in calculating the loss amounts for purposes of selection of the lead plaintiff. Pedrow and Johnson assert that the amounts expended were: Cohn ($512,026), Pedrow and Johnson ($237,194.74), and Pension Trust ($181,630.50), and that the net losses suffered were Cohn ($263,437), Pedrow and Johnson ($177,444.74), and Pension Trust ($100,000). See Pedrow & Johnson's Mem. of Law in Further Supp. of Mot. to App. Lead Pl. 1.

from the same events and course of conduct giving rise to the claims of other class members. Cohn purchased Groupon securities during the class period, paid prices allegedly inflated because of the claimed false and misleading statements by defendants, and thereby allegedly suffered damages. As such, Cohn meets the typicality requirement **[*11]** of *Rule 23(a)*. See id.

Under *Rule 23(a)(4)*, the lead plaintiff must "fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *City of Sterling Heights Gen. Emp. Ret. Sys., 2012 U.S. Dist. LEXIS 54081, 2012 WL 1339678, at *9* (citing *Johnson, 214 F.R.D. at 228-29*). There is no evidence before the Court to suggest that Cohn's interest is in conflict with those of the purported class. Further, given his alleged losses, Cohn has a substantial interest in the outcome of this case. Finally, as explained below, Cohn is represented by competent, experienced counsel. Accordingly, Cohn satisfies *Rule 23(a)*'s adequacy requirement.

Because Cohn both satisfies the requirements of *Rule 23* and has the largest financial interest, he is the "presumptively most adequate plaintiff." However, as set forth above, other members of the purported class may attempt to rebut this presumption **[*12]** by showing that Cohn "will not fairly and adequately protect the interests of the class . . . or is subject to unique defenses that render [him] incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

Under this provision, the Pension Trust argues that Cohn is an inadequate lead plaintiff because he is "an individual investor with a history of poor decision-making." Pension Trust Mem. of Law in Opp. to Competing Mots. for App. as Lead Pl. 1. More specifically, the Pension Trust asserts that Cohn has "had multiple encounters with law enforcement, DUI convictions, and been declared bankrupt." Id. at 4. In an affidavit attached to his reply brief, Cohn affirms that he was charged and convicted of driving under the influence three times, the last conviction occurring on December 16, 1986. Decl. of Michael Carter Cohn in Further Supp. of his Mot. for App. as Lead Pl. & Approval of Lead Counsel ¶ 3. Cohn states that, prior to that date, he struggled with alcohol addiction, but that he has not consumed any alcohol in over twenty-five

years. Id. Cohn also affirms that he filed for personal bankruptcy in July of 2000, and that, in the years that followed, his "financial [*13] condition materially improved." Id. ¶ 2. Prior to his retirement, Cohn was employed as an analytical chemist and quality lab supervisor at Lorillard Tobacco Company for over thirty years. Id.

The DUI convictions, which occurred over twenty-five years ago, are not germane to this action and do not call into question Cohn's adequacy to serve as lead plaintiff. See generally, Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (finding that courts generally reject the most adequate plaintiff presumption only where the proposed lead plaintiff is suspected of violating the precise laws he wishes to invoke).

The bankruptcy filing, which occurred twelve years ago, also has no bearing on Cohn's ability to serve as lead plaintiff. As Cohn points out, bankruptcy is not a crime, is not evidence of misconduct, and does not end one's ability to earn an income. The Pension Trust relies on Johnson v. Geico Cas. Company, 673 F. Supp. 2d 255, 279 (D. Del. 2009), to argue that the bankruptcy filing should disqualify Cohn. Geico Cas., however, involves facts far beyond those at issue here. In addition to filing for bankruptcy, the proposed class [*14] representative in Geico Cas. was involved in a mortgage action, replevin action, a criminal charge for writing a bad check in excess of $500, an employment discrimination action, a disorderly conduct charge, and landlord tenant disputes. Id. The court explained that, "[w]hen viewed cumulatively, this history of litigation calls into question Mr. Johnson's adequacy to serve as a class representative." Id. (emphasis added). Cohn does not share nearly such an extensive litigation history. 3

---

3 The other cases that the Pension Trust cites in support of its argument that Cohn cannot adequately represent [*15] the class are inapposite. Like Geico Cas., these cases involve potential lead plaintiffs with problematic histories that go far beyond the stale DUI convictions and bankruptcy filing at issue here. See Folding Cartons, Inc. v. Am. Can Co., 79 F.R.D. 698, 703 (N.D. Ill. 1978) (finding that "a number of factors" combine to render the proposed institutional lead plaintiff inadequate, including that its principal "had participated in deceptive selling schemes, had sold sub-standard grade materials while representing them to meet specifications, and had deliberately lied and concealed his actions"); In re Surebeam Corp. Sec. Litig., No. 03 CV 1721JM (POR), 2003 U.S. Dist. LEXIS 25022, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (rejecting potential institutional lead plaintiff

Indeed, courts have rejected attacks on prospective lead plaintiffs with histories far more problematic than those raised here. See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust, 229 F.R.D. at 417 ("[E]ven if the [settled SEC fraud charges] had been proven, they do not appear to represent the degree of serious misconduct that would require the [presumptive lead plaintiff's] candidacy to be rejected at this stage."). Accordingly, the combination of two-decade-old DUI convictions and a personal bankruptcy filing does not call into question Cohn's adequacy to serve as lead plaintiff.

Finally, to the extent that the Pension Trust argues that its status as the lone institutional investor creates a presumption in its favor, that argument is rejected. "[A] plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest." Mohanty v. Bigband Networks, Inc., No. C 07-5101 SBA, 2008 U.S. Dist. LEXIS 32764, 2008 WL 426250, at *6 (N.D. Cal. Feb. 14, 2008); see also In re Cavanaugh, 306 F.3d 726, 732, 737 n. 20 (9th Cir. 2002) ("[A] straightforward application of the [PSLRA] statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. . . . If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff."); In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999) ("The institutional investor is not presumptively [*17] the most adequate plaintiff solely by virtue of its status as an institutional investor. . . . If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs, regardless of the size of financial loss, and saved the Court from the need to engage in the very analysis it undertakes here."); Hall v. Medicis Pharm. Corp., Nos. CV-08-1821-PHX-GMS, CV-08-1870-PHX-DKD, CV-08-1964-PHX-JAT, 2009

---

where its president and principal representative was "subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments . . .[and] had his National Association of Securities Dealers . . . membership terminated"); In re Peregrine Sys., Sec. Litig., No. 02 CV 870-J(RBB), 2002 U.S. Dist. LEXIS 27690, 2002 WL 32769239, at *7-8 (S.D. Cal. Oct. 11, 2002) (rejecting potential [*16] lead plaintiff on conflict of interest grounds because he was still employed by the defendant corporation and had an interest in continuing his employment).

U.S. Dist. LEXIS 24093, 2009 WL 648626, at *6 (D. Ariz. March 11, 2009) ("[T]he plain language of the PSLRA does not permit the Court to favor [an institutional investor] over another plaintiff with a greater financial stake merely because [the institutional investor] is an institutional investor."). The Pension Fund's status as an institutional investor, therefore, does not trump the explicit language of the PSLRA. Because Cohn has significantly larger losses and otherwise satisfies Rule 23's requirements of typicality and adequacy, his motion for appointment as lead plaintiff is granted.

**D. Lead Counsel**

The PSLRA provides that the lead plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class, 15 U.S.C. § 78u-4(a)(3)(B)(v), [*18] and courts typically do not disturb a lead plaintiff's selection unless it is necessary to protect the interests of the class, In re Flight Safety Techs., Inc. Sec. Litig., 231 F.R.D. 124, 132 (D. Conn. 2005) (collecting cases). Cohn has selected Pomerantz Haudek Grossman & Gross LLP to serve as lead counsel and has attached the firm's resume, which reveals extensive experience and expertise in the area of securities litigation and class actions. See Decl. of Patrick V. Dahlstrom in Supp. of Cohn's Mot. for Consolidation, App. as Lead Pl. & Approval of Lead Counsel, Ex. D. The Pomerantz firm has successfully prosecuted numerous securities fraud actions on behalf of investors, and several courts have acknowledged the firm's ability to successfully litigate such cases. See id. As a result of the Pomerantz firm's experience in litigation involving issues similar to those raised in this case, the Court finds that it has the skill and knowledge necessary to prosecute this action effectively and expeditiously. Accordingly, the Court approves Cohn's selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel in this case. The Court places the parties on notice, however, that it will [*19] carefully scrutinize any proposed fee award and will not hesitate to reject such an award if it proves to be unreasonable. See 15 U.S.C. § 78u-4(a)(6) (limiting the total award of attorneys' fees and expenses to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

**II. CONCLUSION**

For the foregoing reasons, Cohn's motion to serve as lead plaintiff is granted. The remaining motions to serve

as lead plaintiff are denied. The Court approves the selection of Pomerantz Haudek Grossman & Gross LLP as lead counsel.

IT IS SO ORDERED.

ENTER:

/s/ Charles Ronald Norgle

CHARLES RONALD NORGLE, Judge

United States District Court

DATED:          August          28,          2012

2012 U.S. Dist. LEXIS 123899, *19

**Table1 (***Return to related document text***)**

| Movant | Shares Purchased | Amount Expended | Shares Retained | Net Losses Suffered |
|---|---|---|---|---|
| Cohn | 24,800 | $604,106 | 20,800 | $263,437 |
| Pedrow & Johnson | 16,000 | $384,005 | 16,000 | $169,405 |
| Pension Trust | 9,200 | $232,731 | 6,700 | $101,556 |

**Table1 (***Return to related document text***)**

---

End of Document