**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| **In re GOHEALTH, INC. SECURITIES** | ) | **Case No. 1:20-cv-5593** |
| **LITIGATION** | ) | |
| | ) | |
| | ) | **Judge:  Sharon Johnson Coleman** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE GOHEALTH AND UNDERWRITER DEFENDANTS'
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ......................................................................................1

II. FACTUAL BACKGROUND......................................................................................3

    A. The Defendants ...............................................................................................3

    B. GoHealth's Business Operations ....................................................................5

    C. GoHealth's IPO And Disclosures ..................................................................6

    D. Plaintiffs File The Complaint..........................................................................9

    E. GoHealth Files Its Annual Report For 2020 ................................................10

III. ARGUMENT...........................................................................................................10

    A. Legal Standards.............................................................................................10

    B. The Complaint Is An Impermissible Puzzle Pleading .................................13

    C. Plaintiffs Have Not Alleged Any Actionable Misstatements Or Omissions .........16

        1. Plaintiffs' "Maximized Growth" Theory Fails .........................................17

        2. Plaintiffs' "LTV Drag" Theory Fails.........................................................20

        3. The Emphasized Statements From GoHealth's Registration Statement Are Not Actionable ...............................................................23

            a. Many Emphasized Statements Are Not Alleged To Be False ..............................................................................................23

            b. Many Emphasized Statements Are Forward-Looking Statements Protected Under The Bespeaks Caution Doctrine.....................................................................................25

            c. Many Emphasized Statements Are Immaterial Puffery.................29

            d. Plaintiffs' Reliance On Items 303 And 105 Under SEC Regulation S-K And SEC Staff Accounting Bulletin 104 Does Not Save Their Claims.........................................................30

    D. Plaintiffs Fail To State A Claim Under Section 15................................................33

IV. CONCLUSION........................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alizadeh v. Tellabs, Inc.*,
  2014 WL 2726676 (N.D. Ill. June 16, 2014) ............................................................... 16

*Anderson v. Abbott Lab'ys*,
  140 F. Supp. 2d 894, 903 (N.D. Ill. 2001) ................................................................. 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 11

*Asher v. Baxter Int'l Inc.*,
  377 F.3d 727 (7th Cir. 2004) ................................................................................ 27, 28

*Berg v. Velocity Fin., Inc.*,
  2021 WL 268250 (C.D. Cal. Jan. 25, 2021) .............................................................. 33

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ...................................................................................... 13

*Conlee v. WMS Indus., Inc.*,
  2012 WL 3042498 (N.D. Ill. July 25, 2012) ........................................................ 13, 16

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*,
  2014 WL 3610877 (N.D. Ill. July 22, 2014) ................................................... 13, 14, 15

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) .......................................................................... 28

*Eisenstadt v. Centel Corp.*,
  113 F.3d 738 (7th Cir. 1997) ...................................................................................... 29

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ........................................................................................ 3

*Gallagher v. Abbott Lab'ys*,
  269 F.3d 806 (7th Cir. 2001) ...................................................................................... 23

*Golan v. Puleo*,
  480 F. Supp. 2d 1325 (S.D. Fla. 2007) ....................................................................... 31

*In re Alcatel Sec. Litig.*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005) ......................................................................... 14

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006) ................................................................................... 18

*In re Bally Total Fitness Sec. Litig.*,
  2007 WL 551574 (N.D. Ill. Feb. 20, 2007) .......................................................................... 30

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................................... 18

*In re Duane Reade Inc. Sec. Litig.*,
  2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ..................................................................... 18

*In re Harley-Davidson Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009) ............................................................................ 19, 22

*In re HEXO Corp. Sec. Litig.*,
  2021 WL 878589 (S.D.N.Y. Mar. 8, 2021) ........................................................................... 33

*In re Midway Games, Inc. Sec. Litig.*,
  332 F. Supp. 2d 1152 (N.D. Ill. 2004) ............................................................................... 3, 29

*In re NTL, Inc. Sec. Litig.*,
  347 F. Supp. 2d 15 (S.D.N.Y. 2004) ..................................................................................... 31

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................................ 14

*In re TVIX Sec. Litig.*,
  25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v.*
  *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) .............................................................. 11

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
  2021 WL 1222290 (D. Utah Mar. 31, 2021) ......................................................................... 32

*Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
  432 F. Supp. 2d 571 (E.D. Va. 2006) .................................................................................... 31

*Johnson v. Tellabs, Inc.*,
  262 F. Supp. 2d 937 (N.D. Ill. 2003) .................................................................................... 28

*Kriendler v. Chem. Waste Mgmt., Inc.*,
  877 F. Supp. 1140 (N.D. Ill. 1995) ....................................................................................... 31

*Lapiner v. Camtek, Ltd.*,
  2011 WL 445849 (N.D. Cal. Feb. 2, 2011) ........................................................................... 13

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  673 F. Supp. 2d 718 (S.D. Ind. 2009) ................................................................................... 13

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v.
AllScripts-Misys Heathcare Sols., Inc.*, 778 F. Supp. 2d 858 (N.D. Ill. 2011) .......................... 29

*Shah v. GenVec, Inc.*,
2013 WL 5348133 (D. Md. Sept. 20, 2013) ............................................................................... 31

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019) ...................................................................................................... 29

*St. Lucie Cty. Fire Dist. Firefighters' Pension Trust Fund v. Motorola, Inc.*,
2011 WL 814932 (N.D. Ill. Feb. 28, 2011) .......................................................................... 27, 30

*Starr v. Hey!, Inc.*,
2003 WL 21212596 (N.D. Ill. May 23, 2003) ............................................................................ 34

*Stavros v. Exelon Corp.*,
266 F. Supp. 2d 833 (N.D. Ill. 2003) ..................................................................................... 4, 28

*Tabankin v. Kemper Short-Term Glob. Income Fund*,
1994 WL 30541 (N.D. Ill. Feb. 1, 1994) ................................................................................... 34

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................................... 3

*Wagner v. First Horizon Pharm. Corp.*,
464 F.3d 1273 (11th Cir. 2006) ................................................................................................. 12

*Zerger v. Midway Games, Inc.*,
2009 WL 3380653 (N.D. Ill. Oct. 19, 2009) .............................................................................. 30

*Zishka v. Am. Pad & Paper Co.*,
2001 WL 1748741 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) .......... 34

## STATUTES

15 U.S.C. § 77k ............................................................................................................................. 8

15 U.S.C. § 77o ............................................................................................................................ 30

15 U.S.C. § 78u ................................................................................................................. 10, 22, 23

## REGULATIONS

17 C.F.R. § 229.105 ..................................................................................................................... 29

17 C.F.R. § 229.303 ................................................................................................................. 27, 28

iv

Defendants GoHealth, Inc. ("GoHealth" or the "Company"), Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, NVX Holdings, Inc., Goldman Sachs & Co LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC (collectively, the "GoHealth and Underwriter Defendants"[1]) submit this memorandum of law in support of their motion to dismiss Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed's (collectively, the "Plaintiffs") Consolidated Complaint (Dkt. No. 66, referred to herein as the "Complaint," and cited herein as "¶ ___").

## I.      PRELIMINARY STATEMENT

This purported class action is nothing more than an attempt to manufacture securities claims in the wake of a post-IPO stock price decline. But declines in stock price are insufficient alone to create a claim under the federal securities laws, and Plaintiffs have failed to plead a coherent theory of liability or any actionable misrepresentations sufficient to survive a motion to dismiss.

Plaintiffs' theories of liability are premised on the suggestion that Defendants had knowledge about GoHealth's strategy and performance that was not disclosed in GoHealth's offering documents. Not so. The few, cherry-picked statements Plaintiffs identify as the basis for their theories provide no foundation for actionable claims. Plaintiffs seize primarily on a single Defendant's utterance of the phrase "investment year" at a post-IPO conference in December 2020, and argue that the phrase establishes that Defendants knew at the time they issued the registration statement that GoHealth's existing business model had hit a brick wall and that a pivot was necessary for the Company to continue growing. But Plaintiffs mischaracterize the reference to

---

[1] Together with Centerbridge Partners, L.P., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Centerbridge Associates III, L.P., CCP III Cayman GP Ltd., the GoHealth and Underwriter Defendants are referred to herein collectively as "Defendants."

1

an "investment year" as an acknowledgment that GoHealth's business model was doomed, and fail to plead any other facts from which one could infer that Defendants believed GoHealth had reached its growth ceiling.

Plaintiffs likewise seize on generic references Defendants made post-IPO to the fact that, in the healthcare insurance marketplace industry, carrier expansion can create a "near-term drag on LTV," with LTV being a key metric used in the industry to measure the average revenue generated by a customer. Plaintiffs again misconstrue Defendants' statements in an effort to render them actionable. General statements about an industry reality like carrier expansion potentially impacting LTV say nothing of Defendants' alleged knowledge that GoHealth itself suffered from LTV drag as of July 2020. Plaintiffs also fail to support this theory with any additional pleaded facts, and, worse still, ignore the incontrovertible fact that GoHealth's LTV *increased* post-IPO.

Plaintiffs' claims under the Securities Act cannot stand. The Complaint should be dismissed with prejudice for the following reasons:

First, the Complaint is an improper "puzzle pleading" that fails to identify with the requisite specificity the statements in GoHealth's offering materials that Plaintiffs contend constitute misrepresentations and the facts that render those statements misleading. Unable to connect their theories of liability with statements in GoHealth's offering materials, Plaintiffs resort to a "throw-everything-at-the-wall-and-see-what-sticks" approach to their pleading, characterizing lengthy block quotes from GoHealth's registration statement as alleged misstatements and arguing that the same repeated laundry list of allegedly adverse facts demonstrates why each block quote is misleading. Such vague, imprecise pleading is insufficient to state a claim.

Second, Plaintiffs have failed to plead facts that support their theories that GoHealth, at the time it filed its registration statement for the IPO (i) had maximized its growth under its existing

2

business model or (ii) was experiencing LTV drag.  They have also failed to identify any alleged, material information relating to those theories that was not already disclosed in GoHealth's registration statement.

Third, the statements Plaintiffs seek to offer as misrepresentations do not create liability under the federal securities laws: they are either not actually alleged to be false, constitute forward-looking statements protected under the bespeaks caution doctrine, and/or amount to immaterial puffery.

Fourth, Plaintiffs cannot revive their claims by alleging that Defendants' offering materials violated Items 303 and 105 of SEC Regulation S-K or SEC Staff Accounting Bulletin 104 because those authorities do not provide a basis for concluding that Defendants' registration statement contained material omissions.

Fifth, Plaintiffs' claim for control person liability under Section 15 fails because it lives or dies, as a pleading matter, with their Section 11 claim and because Plaintiffs have failed to sufficiently allege that Defendants exercised the requisite control over GoHealth.

 For all of these reasons, the Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND[2]

### A.    The Defendants

GoHealth is a Delaware corporation and leading health insurance marketplace headquartered in Chicago, Illinois.  (¶ 31.)  It was formed on March 27, 2020, but has been in

---

[2] Only for purposes of this motion, Defendants assume the truth of well-pleaded factual allegations.  On a motion to dismiss, the Court may also consider documents incorporated into the Complaint by reference, documents referred to in the Complaint that are central to Plaintiffs' claims, and any matters of which a court may take judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("*Tellabs II*"); *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1155 n.1 (N.D. Ill. 2004).  Among other things, the Court may take judicial notice of U.S. Securities and Exchange Commission ("SEC") filings (s*ee Stavros v. Exelon Corp.*, 266 F.

3

business under different form since 2001. (¶ 2.) The Company is organized as a holding company with GoHealth Holdings (formerly known as Blizzard Parent, LLC) as the principal asset. (¶ 50.) The Company's operations are carried out by Norvax LLC, which is a wholly owned subsidiary of Blizzard Midco, LLC, which itself is a wholly owned subsidiary of GoHealth Holdings. (¶ 50.) GoHealth trades under the ticker symbol "GOCO" on the NASDAQ stock exchange. (¶ 31.)

Clinton P. Jones ("Jones"), Brandon M. Cruz ("Cruz"), and Travis J. Matthiesen ("Matthiesen") (collectively, the "Individual Defendants") are officers and directors of GoHealth. (¶ 32-34.) Jones is a co-founder of GoHealth and currently serves as its CEO and Co-Chair of the GoHealth Board of Directors. (¶ 32.) Cruz is also a co-founder of GoHealth and currently serves as Chief Strategy Officer, Special Advisor to the Executive Team, and Co-Chair of the GoHealth Board of Directors. (¶ 33.) Matthiesen currently serves as CFO. (¶ 34.)

Jones and Cruz control Defendant NVX Holdings, Inc. ("NVX Holdings"), a Delaware corporation through which Cruz and Jones hold their ownership of GoHealth Class A and Class B stock. (¶ 36.) Jones serves as CEO of NVX Holdings, and Cruz serves as its President. (¶ 36.)

Defendant Centerbridge Partners, L.P. is a New York-based private equity firm that, on September 13, 2019, acquired all of the equity of GoHealth's operating entity, Norvax LLC, through the then newly-formed GoHealth Holdings. (¶¶ 3, 37, 41, 67.) Defendants CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC are investment vehicles created for the purpose of holding Centerbridge Partners, L.P.'s ownership of GoHealth Class A and Class B stock. (¶ 38.) Defendant Centerbridge Associates III, L.P. is the general partner of CCP III AIV VII Holdings, L.P. and CB Blizzard Co-Invest Holdings, L.P.

---

Supp. 2d 833, 844 n.8 (N.D. Ill. 2003)) on which Plaintiffs rely in the Complaint. All exhibits cited herein fit these categories.

(¶ 39.)  Defendant CCP III Cayman GP Ltd. is the general partner of Centerbridge Associates III, L.P. and the sole manager of Blizzard Aggregator, LLC.  (¶ 40.)  Collectively, Centerbridge Partners L.P., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator LLC, Centerbridge Associates III, L.P., and CCP III Cayman GP Ltd. are referred to herein as "Centerbridge."

Goldman Sachs & Co. LLC ("Goldman Sachs"), BofA Securities, Inc. ("BofA Securities"), and Morgan Stanley & Co. LLC ("Morgan Stanley") (collectively, the "Underwriter Defendants") are financial services firms that acted as managing underwriters for GoHealth's July 14, 2020 initial public offering (the "IPO").  (¶ 42.)

### B.    GoHealth's Business Operations

GoHealth operates a technology-driven health insurance marketplace.  (¶¶ 7, 51.)  Through a combination of online websites and licensed agents, GoHealth helps consumers to find and sign up for health insurance with third-party insurance carriers.  (¶¶ 4, 31.)  The Company relies on its propriety technology platform and machine-learning capabilities to facilitate its business and differentiate itself from traditional healthcare insurance sales providers.  (¶¶ 31, 51.)  GoHealth's revenue primarily comes from commissions paid to GoHealth by its healthcare insurance carrier partners.  (¶ 54.)  Typically, the carriers pay GoHealth an initial commission when consumers enroll in the carriers' products, and thereafter the carriers pay recurring commissions as long as the consumers remain enrolled in the carriers' products.  (¶ 54.)

One of GoHealth's core performance metrics is LTV/CAC, which is a ratio that measures the estimated lifetime value of commissions that GoHealth will receive per "approved

5

submission"[3] ("LTV") by the cost to convert a prospective consumer into a consumer enrolled with a partner carrier ("CAC"). (¶¶ 13, 14.) In short, LTV/CAC is a means of measuring commission revenue relative to customer acquisition cost. (¶ 13.) The LTV component of the ratio is based on numerous input variables including contracted commission rates, carrier mix, policy persistency, and the number of expected submissions. (¶ 58.) GoHealth does not publicly report each of these individual variables. (¶ 58.) The CAC component is "comprised of cost of revenue, marketing and advertising expenses and customer care and enrollment expenses less other revenue and is presented on a per commissionable Approved Submission basis." (¶ 14 (quoting Ex. A (GoHealth July 8, Second Amended Form S-1)).)

GoHealth recognizes revenue when a submitted policy is approved by a carrier partner. (¶ 59.) GoHealth determines revenue by applying the latest estimated LTV for the approved product. (¶ 59.) In 2019, the year prior to GoHealth's IPO, the majority of GoHealth's revenue came from two insurance carriers: Humana and Anthem. (¶ 61.) Those two carrier partners accounted for 40% and 20%, respectively, of the Company's total revenues in 2019. (¶ 61.)

## C. GoHealth's IPO And Disclosures

On June 19, 2020, GoHealth filed with the SEC a registration statement on Form S-1, which sought to register shares of GoHealth Class A common stock in anticipation of an IPO. (¶ 70.) On July 6, 2020, GoHealth filed an amended registration statement, which added information and materials to the original filing. (¶ 70.) On July 8, 2020, GoHealth filed a second amended registration statement, which registered 39.5 million shares of GoHealth Class A common stock and indicated that the shares would be priced between $18.00 and $20.00 per share.

---

[3] "Approved Submissions" refer to Submitted Policies approved by carriers for the identified product during the indicated period. (¶ 14, n.2.)

6

(¶ 71.) On July 14, 2020, GoHealth filed an additional registration statement that registered an additional 4.6 million shares of Class A common stock for the IPO and updated the share price to $21.00 per share. (¶ 72.) The July 14, 2020 registration statement incorporated by reference GoHealth's prior registration statements.[4] (¶ 72.) Later that same day, the SEC issued a notice of effectiveness for the IPO. (¶ 73.) On July 15, 2020, the NASDAQ approved the listing of GoHealth Class A common stock. (¶ 74.) On July 16, 2020, GoHealth filed with the SEC the Prospectus for the IPO on Form 424(b)(4). (¶ 75.) GoHealth completed the IPO on July 17, 2020, selling a total of 44.5 million shares. (¶ 76.)

GoHealth's Registration Statement disclosed to prospective investors that "participating in this [IPO] involve[d] substantial risk." (Ex. A at 16.) In particular, GoHealth disclosed that "[s]ome of the most significant challenges and risks [GoHealth] face[s] include," among other things:

- "the potential for an adverse change in our relationships with carriers, including a loss of carrier relationships;"

- "carriers' ability to reduce commissions paid to us;"

- "factors that adversely impact our estimate of LTV;" and

- "inability to effectively advertise our products[.]"

(Ex. A at 16.) The Registration Statement directed potential investors to the "Risk Factors" section of the filing, which provided 45 pages of additional detail on the risks identified above and others. (Ex. A at 33-78.) In particular, the "Risk Factors" section noted the following:

- Carrier relationships. "If a carrier is not satisfied with our services, it could cause us to incur additional costs and impact our profitability. For example, a carrier could terminate our services, decrease our commissions going forward or restrict our ability to market their products." (Ex. A at 34.)

---

[4] Collectively, GoHealth's registration statement filings are referred to herein as the "Registration Statement."

- Customer churn. "Any decrease in the amount of time we retain our customers could adversely impact the estimated LTV we use for purposes of recognizing revenue." (Ex. A at 34.)

- Commission rates. "Our commission rates from carriers are either set by each carrier or negotiated between us and each carrier. The commission rates we are paid are, for any given plan for a given customer, based on a number of factors, including the carriers offering those plans, the state of residence of customers, the laws and regulations in the jurisdictions where the customer is located, and the customer's previous Medicare enrollment history (if any). Carriers have the right to alter these commission rates with relatively short notice and have altered, and may in the future alter, the contractual relationships we have with them, including, in certain instances by unilateral amendment of our contracts relating to commission rates or otherwise." (Ex. A at 35.)

- LTV estimates and impact of LTVs on revenue. "LTVs are estimates and are based on a number of assumptions, which include, but are not limited to, estimates of the conversion rates of commissionable Approved Submissions into customers, forecasted average plan duration and forecasted commission rates we expected to receive per approved customer's plan. These assumptions are based on historical trends and require significant judgment by our management in interpreting those trends. Changes in our historical trends will result in changes to our LTV estimates in future periods and, therefore, could adversely affect our revenue and financial results in those future periods. As a result, negative changes in the factors upon which we estimate LTVs, such as reduced conversion of commissionable Approved Submissions to customers, increased health insurance plan termination or a reduction in the lifetime commission amounts we expect to receive for selling the plan to a customer or other changes could harm our business, operating results and financial condition. In addition if we ultimately receive commission payments that are less than the amount we estimated when we recognized commission revenues, we would need to write off the remaining commissions receivable balance, which could materially adversely impact our operating results and financial condition." (Ex. A at 36-37.)

- Marketing costs. "If the cost of marketing and advertising increases for any reason, we may not be able to purchase as many advertisements as we typically would or would have to incur greater costs to do so." (Ex. A at 40.)

- Carrier concentration. "We derive a large portion of our revenue from a limited number of carriers. Carriers owned by Humana and Anthem accounted for [] approximately 42% and 32%, respectively, of net revenues for the three months ended March 31, 2020 [and] . . . approximately 40% and 20%, respectively, of net revenues for the Pro Forma Fiscal Year 2019 . . . . Should we become dependent on fewer carrier relationships (whether as a result of the termination of carrier relationships, carrier consolidation or otherwise), we may become

8

more vulnerable to adverse changes in our relationships with carriers." (Ex. A at 41.)

- <u>Customer conversion and carrier integration</u>. "[O]ur ability to convert [] consumer leads to customers is also a key to our success. Our growth depends in large part upon growth in Approved Submissions in a given period. The rate at which we grow our Approved Submissions directly impacts our revenue. In addition, the rate at which Submitted Policies turn into commissionable Approved Submissions impacts the expected LTV of our customers, which impacts the revenue that we are able to recognize. A number of factors have influenced, and could in the future influence, these conversion rates for any given period . . . . These factors include . . . carriers offering health insurance plans for which customers have expressed interest, and the degree to which our technology is integrated with those carriers." (Ex. A at 46-47.)

In addition, in discussing "LTV per Approved Submission for the Medicare segments" for 2018, 2019, and the three month period ending March 31, 2019, GoHealth disclosed the impact that carrier mix can have on commission rates, noting that:

> LTV per Approved Submission for Medicare Advantage remained approximately flat for the three months ended March 31, 2020 compared to the three months ended March 31, 2019 as commission rates slightly increased ***but were offset by a variance in carrier mix*** and slight changes in policy effectuation and churn during this time period.

(Ex. A at 115 (emphasis added).) In the "Factors Affecting Our Results of Operations" section, GoHealth noted risks associated with failed carrier expansion, including that "[i]f we are unsuccessful in adding new carriers and expanding existing relationships with carriers to offer more products and plans, it may become more difficult to compete against competitors with more diverse product and plan offerings." (Ex. A at 109.)

### D. Plaintiffs File The Complaint

Following a post-IPO decline in GoHealth's stock price, putative shareholders filed the first of three securities class action complaints related to the GoHealth IPO on September 20, 2020. After consolidation and appointment of lead Plaintiffs and counsel, Plaintiffs filed the Complaint against Defendants on February 25, 2021, on behalf of a putative class of all investors who

9

purchased GoHealth Class A common stock traceable to the Registration Statement and Prospectus filed in connection with GoHealth's IPO. (¶ 1.) Plaintiffs allege that all Defendants violated Section 11 of the Securities Act based on allegedly false or misleading statements in GoHealth's Registration Statement. (¶¶ 133-140.) Plaintiffs further allege that GoHealth, the Individual Defendants, NVX Holdings, and Centerbridge violated Section 15 of the Securities Act under theories of control-person liability. (¶¶ 141-147.)

### E. GoHealth Files Its Annual Report For 2020

Subsequent to the filing of the Complaint, on March 16, 2021, GoHealth filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2020. (*See* Ex. B (GoHealth 2020 10-K).) The 2020 10-K disclosed total net revenues of $877.4 million in 2020, compared to $539.5 million in 2019. (Ex. B at 56[5].) Both Commission and Enterprise net revenues increased during this year-over-year period, with Commission net revenues increasing from $419.2 million in 2019 to $671.1 million in 2020, and Enterprise net revenues increasing from $120.3 million in 2019 to $206.2 million in 2020. (Ex. B at 56.) The 2020 10-K also disclosed that LTV per Approved Submission for Medicare Advantage *increased* from 2019 "due to an increase in CMS-approved commission rates and a more diverse carrier base, allowing [GoHealth] to offer more products and plans that contributed to more long-term customer satisfaction." (Ex. B at 63.)

### III. ARGUMENT

### A. Legal Standards

To state a claim under Section 11 of the Securities Act, Plaintiffs must allege actionable misrepresentations or omissions of material fact in a registration statement or prospectus.

---

[5] 2019 net revenues are calculated by adding net revenues from the 2019 "Successor Period" (*i.e.*, post Centerbridge acquisition) of September 13, 2019 through December 31, 2019 and the 2019 "Predecessor Period" (*i.e.*, pre Centerbridge acquisition).

15 U.S.C. § 77k(a). These elements must be set forth in accordance with two operable pleading standards. To begin with, Plaintiffs must satisfy Rule 8 by pleading "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state an actionable claim. *Id.*; *see also In re TVIX Secs. Litig.*, 25 F. Supp. 3d 444, 458 (S.D.N.Y. 2014) (dismissing securities complaint for failure to plead plausible claims), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).

In addition, because Plaintiffs' claims sound in fraud, the heightened pleading requirements of Rule 9(b) also apply to the Complaint. *See W. Palm Beach Firefighters Pension Fund v. Conagra Brands, Inc.*, No. 19-CV-01323, 2020 WL 6118605, at *5 (N.D. Ill. Oct. 15, 2020) ("To the extent Plaintiffs' Securities Act claims sound in fraud, Rule 9(b) applies."). A claim sounds in fraud where it alleges liability from "statements that the defendant knows to be false, as well as a 'half-truth' that the defendant knows to be misleading and which the defendant expects another to act upon to his detriment and the defendant's benefit." *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (citing *Stephens*, 421 F.3d at 507); *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (fraud includes misrepresentations, misleading omissions, and "embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain advantage over another by false suggestions or by the suppression of truth"). Here, Plaintiffs' Complaint sounds in fraud because it alleges that Defendants issued a Registration Statement that contained untrue statements of material fact and omitted to disclose known information about GoHealth's alleged "planned" investment year and declining LTVs that

11

"misled investors about the prospects and drawbacks of investing in GoHealth." (¶ 115.) Such allegations are classic fraud allegations. *See Conagra Brands, Inc.*, 2020 WL 6118605, at \*6 ("Taken together, the allegations in the complaint allege that [defendants] knew or were reckless with respect to the falsity of the challenged statements in the [] Offering Documents. The Securities Act claims against them therefore sound in fraud.").

Importantly, it is of no consequence that Plaintiffs purport to disclaim "that any of the Section 11 Defendants engaged in intentional or reckless misconduct or acted with fraudulent intent." (¶ 134.) A plaintiff's disclaimer of pleading fraud is irrelevant to the analysis of whether Rule 9(b) applies. *See Conagra Brands, Inc.*, 2020 WL 6118605, at \*6 ("[C]ourts generally look beyond such disclaimers to determine whether a Securities Act claim sounds in fraud."); *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (holding that plaintiff's "one-sentence disavowment of fraud" in Section 11 claim does not shield it from Rule 9(b)). In short, the substance of Plaintiffs' allegations, not their characterization of the allegations, controls the application of Rule 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004) (holding that Rule 9(b) applied to a Section 11 claim because underlying allegations of "false and misleading" statements are "classically associated with fraud"). This is with good reason, as the "[t]he purpose of [Rule 9(b)] is to protect a defendant's good will and reputation when that defendant's conduct is alleged to have been fraudulent." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006). Plaintiffs should not be allowed to impugn Defendants' reputation with allegations of fraud and then escape Rule 9(b) with a superficial disclaimer that they are not, in fact, alleging fraud.

Because Rule 9(b)'s heightened pleading standard applies, Plaintiffs must "state with particularity the circumstances" constituting the alleged fraud. This requires Plaintiffs to describe

12

the "who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In other words, Plaintiffs must identify the specific statements alleged to be false or misleading and the reasons why they are so. Plaintiffs here fail to satisfy that burden.

## B. The Complaint Is An Impermissible Puzzle Pleading

As an initial matter, the Complaint should be dismissed because it is a paradigmatic "puzzle pleading," through which Plaintiffs have improperly placed the burden on Defendants and the Court "to sort out the alleged misrepresentations and then match them with the corresponding adverse facts." *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 733 n.14 (S.D. Ind. 2009). This Court, like many others, has held that complaints relying on verbatim quoted paragraphs from securities filings paired with laundry lists of allegedly true, adverse facts are inadequately plead. *See*, *e.g.*, *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 2014 WL 3610877, at *5-6 (N.D. Ill. July 22, 2014) (dismissing complaint relying on "block quotes [from SEC filings], with liberal use of bold and italics" and a "laundry list of [adverse facts]" as an "inappropriate 'puzzle pleading'"); *Conlee v. WMS Indus., Inc.*, 2012 WL 3042498, at *4-5 (N.D. Ill. July 25, 2012) (a complaint that "leave[s] the reader . . . jumping from page to page in an attempt to link the alleged statements to the background that supposedly makes them false or misleading" is "an inappropriate puzzle pleading" that "does not meet 9(b)'s particularity requirement"); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007) ("A complaint is deficient for the purposes of Rule 9(b) when it relies on 'shotgun' or 'puzzle' pleading."); *see also Lapiner v. Camtek, Ltd.*, 2011 WL 445849, at *4 (N.D. Cal. Feb. 2, 2011) (dismissing claims because "the Court is not required 'to search through' the 57-page SAC in an effort to link the allegedly false statements to the reasons those statements purportedly are false"); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y.

13

2005) ("This [puzzle pleading] method is deficient under the pleading standards."). Ultimately, a puzzle pleading, like this Complaint, is one in which plaintiffs toss a slew of statements against the wall and ask the Court and Defendants to make sense of it. That pleading style warrants dismissal under Rule 9(b). *See WMS Indus., Inc.*, 2012 WL 3042498, at \*4.

Here, the Complaint contains each of the hallmarks of improper puzzle pleadings identified by prior courts: use of lengthy block quotes excerpted from securities filings to describe the alleged misstatements, unexplained use of emphasis in the block quotes, and reliance on the same laundry list of allegedly adverse facts to demonstrate falsity for each alleged misstatement and omission. Plaintiffs purport, in Paragraphs 91-99 and 101-104, to identify the misrepresentations that form the basis of their claims. (¶¶ 91-99, 101-104.) But these paragraphs offer nothing more than lengthy block quotes from the Registration Statement modified with unexplained bold and italics emphasis. *Id.* Plaintiffs make no effort to plainly identify the specific language on which they base their claims or to explain what significance, if any, the Court and Defendants should take from the emphasis Plaintiffs added to the block quotes. *See Constr. Workers Pension*, 2014 WL 3610877, at \*5 (dismissing block quote pleading as puzzle pleading and noting that plaintiffs' "use of bold and italics to emphasize certain statements does nothing to clarify Plaintiffs' assertions of false statements"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) ("The fact that certain sections of the report have been highlighted is not a reliable guide to determining which statements are alleged to be false.").

Paragraph 94 of the Complaint is a prime example of Plaintiffs' defective pleading. There, Plaintiffs state that GoHealth's "Registration Statement touted the Company's 'deep, tenured, and expanding' relationships with top carriers" and then paste a five-sentence block quote, which includes statements discussing various topics including (i) GoHealth's ability to offer a wide

14

variety of products to consumers, (ii) GoHealth's status as a critical partner for its top carriers, (iii) GoHealth's stable relationships with its top carriers as measured by submission volume, (iv) GoHealth's expansion of products with those top carriers, and (v) GoHealth's licensure status across the United States and the impact of that status on its relationship with carriers.  (¶ 94.) Plaintiffs provide no guidance as to which of these sentences (if any) is at issue, how the sentences purportedly relate to the commentary they included before the block quote, or what the significance is of the emphasis on two of the five sentences (iii and v) in the block quote.  Plaintiffs then repeat these same vague pleading practices in twelve additional paragraphs.   (¶ 91-99;  101-104.) Plaintiffs also fail, throughout the Complaint, to identify whether any identified statements constitute misstatements or omissions, further muddying the morass.[6]

Moreover, Plaintiffs also fail to specifically identify the alleged adverse facts that render the statements (however defined) false.  Plaintiffs purport to plead falsity via Paragraphs 100 and 105.  (¶¶ 100, 105.)  But both paragraphs contain the same laundry list of purported "adverse facts" and summarily allege that those facts establish the falsity of all of the block quote statements in Paragraphs 91-99 and 101-104.  *Id.*  That manner of pleading is inadequate as a matter of law.  *See Constr. Workers Pension*, 2014 WL 3610877, at *6 (dismissing complaint where the alleged adverse facts "are not linked to any specific statement but rather are alleged to be generally applicable to all allegedly misleading statements and omissions."); *In re Alcatel Sec. Litig.*, 382 F.Supp. 2d at 531-32 (dismissing Section 11 and 12(a)(2) claims because plaintiffs' allegations of fraud and the alleged misstatements in the registration statement did "not connect with sufficient

---

[6] Plaintiffs' header for the section of the Complaint including the 13 block quote paragraphs—"The Registration Statement Contained Untrue Statements of Material Fact and Omitted Material Facts Necessary to Make the Statements Therein Not Misleading"—suggests they themselves are not sure what type of misrepresentation they are pleading.  (Complaint at p. 33.)

particularity to meet the Rule 9(b) pleading requirements"); *Lauria v. Biosante Pharms., Inc.*, 968 F. Supp. 2d 951, 959 (N.D. Ill. 2013) (dismissing complaint as a puzzle pleading noting that under Rule 9(b) "plaintiff must allege facts necessary to support [a] fraud claim in a clear and understandable manner").

In short, Plaintiffs' approach upends the pleading burdens and prejudices Defendants' ability to respond to the Complaint. *See Alizadeh v. Tellabs, Inc.*, 2014 WL 2726676, at *6 (N.D. Ill. June 16, 2014) ("Court finds that Plaintiffs have not satisfied the applicable pleading standards because the Amended Complaint does not identify with specificity which statements Plaintiffs alleges are false."). It also sets the stage for wasteful, expansive discovery should litigation proceed under this flawed Complaint. *See WMS Indus., Inc.*, 2012 WL 3042498, at *5 ("The greater cost of inappropriate puzzle pleading comes in discovery. A vague and ill-formed complaint can lead to more expansive (and expensive) document production and unnecessarily lengthy depositions covering needless factual ground."). On this basis alone, the Complaint should be dismissed.

### C.      Plaintiffs Have Not Alleged Any Actionable Misstatements Or Omissions

Plaintiffs' Section 11 claims fail as a matter of law because Plaintiffs do not allege that the Defendants made any actionable misstatements or omissions in the Registration Statement. Plaintiffs rest their allegations of false and misleading statements on two related, but equally unavailing theories of liability. Both theories stem from Plaintiffs' undue reliance on a statement Jones made at a post-IPO conference on December 2, 2020 that "we anticipated 2020 to be an investment year with new carriers." (¶ 124.) Plaintiffs seize on the single phrase "investment year"—mentioning it fifteen times in their Complaint—and use it as the basis for their twin, unsupported theories that, at the time GoHealth issued the Registration Statement, GoHealth knew that (1) it had maximized the growth possible under its existing business model (the "Maximized

16

Growth Theory") and (2) GoHealth's so-called "investment year" would result in a near-term drag on LTV (the "LTV Drag Theory"). Plaintiffs have failed, however, to plead adequate facts that could support either of these fictionalized theories, let alone to plead any related actionable material misstatements or omissions in the Registration Statement.

In addition, as discussed below, each of the emphasized statements in the block quotes falls into one or more of the following categories of non-actionable statements: statements not actually alleged to be false, forward-looking statements protected by the bespeaks caution doctrine, or standard statements of optimism constituting legal puffery.

### 1. Plaintiffs' "Maximized Growth" Theory Fails

In their Maximized Growth Theory of liability, Plaintiffs contend that Defendants knew, and failed to disclose, that GoHealth's heavy reliance on carrier partners Humana and Anthem was unsustainable and that an "investment year" was necessary for the business to pivot to a new model that would enable further growth. For example, Plaintiffs argue that "[b]y the time of the IPO . . . GoHealth had effectively maximized the growth that could be achieved by relying on [Humana and Anthem] and, as a result needed to substantially and rapidly change its business model to pursue a broader array of carriers to continue growth." (¶ 87.) But Plaintiffs fail altogether to allege any facts that could support their conclusory assertion that GoHealth's growth had in fact been maximized as of the filing of the Registration Statement. Indeed, the only statement Plaintiffs even purport to offer in support of this theory is Jones's December 2, 2020 utterance of the phrase "investment year." (¶ 124.) But the notion that the so-called investment year was a response to a perception that GoHealth had maximized growth potential is an invention entirely of Plaintiffs' own creation. Jones's quote made no reference to diminished or maximized growth, and Plaintiffs do not (and cannot) allege facts to support that Defendants ever stated that GoHealth had maximized its growth, believed a business model change was necessary, or devised the supposed

17

"investment year" to address those concerns.  Plaintiffs' entire claim rests on Jones's singular use of the phrase "investment year."  That falls far short of stating a clam under Section 11.  *See Conagra Brands, Inc.*, 2020 WL 6118605, at *13 (dismissing complaint where "there are no allegations to connect the dots between the [theory of liability] and Defendants' statements").

What is more, even if Plaintiffs could establish that GoHealth's growth had been maximized and that Defendants knew that hypothetical fact, the theory still fails because the federal securities laws do not impose liability for failing to disclose that otherwise accurately reported financial results may be unsustainable.  *See Conagra Brands*, 2020 WL 6118605, at *11 (dismissing plaintiffs' claims that defendant company's statements regarding "top line results over time" and "top line growth" were misleading due to company's failure to disclose that such metrics resulted from unsustainable channel stuffing); *see also In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 587 (S.D.N.Y. 2006) ("As a matter of law, no statements regarding AXIS's accurately reported revenue and income have been rendered materially misleading by failing to disclose that such income was 'unsustainable.'"); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 378 (S.D.N.Y. 2004) (claims "premised on the assertion that [defendant] breached a duty to disclose that its revenues were unsustainable" are not actionable).  Indeed, the core premise of Plaintiffs' Maximized Growth Theory runs contrary to the well-established principle that the "disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003) (internal quotations and citation omitted).  Here, Plaintiffs do not allege that GoHealth's reported financial metrics were inaccurate, only that the growth they reflected was unsustainable.  Those allegations are inadequate as a matter of law.

In addition, Plaintiffs have not identified any material information pertaining to the so-called investment year that Defendants omitted from the Registration Statement. An omission is material only if "there is a substantial likelihood that disclosure of the information would have been viewed by the reasonable investor to have significantly altered the total mix of information." *See In re Harley-Davidson Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009) (quoting *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995)). Plaintiffs characterize the investment year as one in which GoHealth planned to "significantly expand[] its Medicare business to establish relationships with additional insurance carrier customers," (¶ 88) and allege that the "Registration Statement failed to disclose these changed tactics and the expected business disruptions that would result." (¶ 89.) Yet Plaintiffs acknowledge in the Complaint that the Registration Statement disclosed GoHealth's intention to expand its carrier base, including that the Company "would expand the geographic reach of its platform" and expected the platform would grow to "include Medicare Advantage products from at least one of the top two carriers . . . in each county, in 49 states, which collectively represented 95% of 2019 Medicare enrollments" up from "24 states, which collectively represented 54% of 2019 Medicare enrollments" in the prior year. (¶ 95.) Likewise, Plaintiffs also acknowledge that the Registration Statement disclosed the risk from taking on new carriers, including that "commission rates from carriers are either set by each carrier or negotiated between us and each carrier," (¶ 102), and that "[a]ny reduction in our average commission revenue per customer could harm our business, operating results and financial condition." (¶ 104.) Accordingly, there is no support for Plaintiffs' conclusory allegation that Defendants omitted to disclose information from the Registration Statement that would have "significantly alter[ed] the total mix of information" that investors received.

19

To the extent Plaintiffs seek to argue that the Registration Statement was required to contain the specific words "investment year," that argument also fails. The absence of any loss causation between the disclosure of the phrase "investment year" and the decline in the price of GoHealth stock is apparent from the face of the Complaint. *Stafford v. Bakke*, Case No. 102-CV-1132 LJMWTL, 2005 WL 1656855, at *5 (S.D. Ind. July 7, 2005) (dismissing Section 11 claim where the "pleadings themselves show that the stock value loss suffered by Plaintiffs was not caused by the failure of the [defendants] to disclose [the allegedly omitted information]"); *Miller v. Apropos Tech., Inc.*, Case No. 01-C-8406, 2003 WL 1733558, at *8 n.6 (N.D. Ill. Mar. 31, 2003) (noting "absence of loss causation can be grounds for dismissal [of Section 11 claim] under Rule 12(b)(6)"). Plaintiffs allege that Defendants first mentioned an "investment year" on December 2, 2020, (¶ 124), and acknowledge later in the Complaint that "[b]y December 2, 2020, the price of GoHealth Class A common stock fell to a <u>low</u> of just $10.01," (¶ 126 (emphasis added)), making clear all losses from the stock price must have been driven by something *other than* mention of the specific words "investment year."

### 2. Plaintiffs' "LTV Drag" Theory Fails

In their "LTV Drag" theory of liability, Plaintiffs allege that Defendants failed to disclose that the undertakings of GoHealth's alleged "investment year" would create a near-term "drag on GoHealth's LTV/CAC." (¶¶ 100, 105.) Plaintiffs do not, however, allege that overall LTV/CAC was misstated, inflated, or subject to decline. Instead, Plaintiffs' theory is far narrower: Plaintiffs allege only that GoHealth failed to disclose that its investment year undertakings may impact certain LTV/CAC *inputs*. For example, Plaintiffs allege that "the changed business model and addition of new carriers had resulted in GoHealth receiving reduced commission rates . . . creating a 'near-term drag' on GoHealth's average LTV." (¶ 105(d).) However, once again, Plaintiffs fail to allege facts that could support either (i) that GoHealth's LTV in fact suffered from short-term

drag or (ii) that GoHealth had a duty to disclose information about short-term drag to a specific LTV input variable.

First, Plaintiffs fail to plead any facts showing that GoHealth did in fact suffer LTV drag as a result of its alleged investment year. As with the Maximized Growth Theory, the LTV Drag Theory is based entirely on Plaintiffs' erroneous reading of Defendants' post-IPO remarks. For this theory, Plaintiffs seize on Jones's and Matthiesen's statements at a post-IPO conference that: "typically, you'll see LTV compression [with new carriers]," "new carriers really are a short-term drag on LTV," "adding those carriers . . . can be a short term drag on LTV . . .," and "despite [experiencing] short-term drag on these new carrier adds." (¶¶ 124-125.) Just as before, Plaintiffs fail to connect the dots between the post-IPO statement and the theory. None of these statements supports Plaintiffs' conclusory allegation that GoHealth was experiencing LTV drag at the time GoHealth filed the Registration Statement. They are not statements made about GoHealth's business at the time of the IPO, but statements about industry dynamics in general. Recognition of the general dynamic that carrier expansion can create near-term pressure on commission rates is insufficient to sustain a claim that Defendants knew and failed to disclose that GoHealth was suffering LTV drag in July 2020. In fact, GoHealth's 2020 Form 10-K demonstrated that LTV increased, not decreased post-IPO, underscoring the baseless nature of Plaintiffs' premise. (*See* Ex. B at 63.)

Second, Plaintiffs' theory fails because it wrongly assumes that GoHealth had a duty to disclose all changes to the inputs underlying GoHealth's LTV calculation. Plaintiffs do not allege that information relating to overall LTV was omitted or misstated, but only that information pertaining to the short-term movements of certain inputs to LTV was omitted. That information is immaterial as a matter of law for at least two reasons. For one, Plaintiffs concede that GoHealth

21

does not disclose the specific methodology or the value of all inputs to its LTV/CAC calculation and that, as a result, investors cannot "crosscheck or fully understand how GoHealth calculates its LTV." (¶¶ 15, 59.) Nor do Plaintiffs contend that such granular detail needed to be disclosed. Accordingly, Plaintiffs cannot base their claim on the theory that GoHealth failed to disclose near-term changes in the value of LTV inputs. Indeed, it is a bedrock principle of the securities laws that there is no free-floating duty to disclose all information that shareholders might find useful in making investment decisions. *Anderson v. Abbott Lab'ys*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001) ("Plaintiffs must show that defendants had a duty to disclose that information."); *see also In re Harley-Davidson*, 660 F. Supp. 2d at 984 (holding that an omission is material only if there is a substantial likelihood that disclosure of the information would have been viewed by the reasonable investor to have significantly altered the total mix of information).

For another, Plaintiffs do not allege that the so-called "LTV drag" on which they focus caused a net reduction in overall LTV/CAC, and not just a reduction to one LTV input variable that was offset or outweighed by a corresponding increase to another input. Plaintiffs allege, for example, that Defendants knew GoHealth's carrier expansion would drag LTV because it would decrease average commissions (an LTV input). But they do not allege that this reduction to the commissions LTV input *outweighed* the positive impacts that carrier expansion provided to other LTV inputs (e.g. increased customer persistency) such that overall LTV declined, as they must to establish materiality. *See Conagra Brands*, 2020 WL 6118605, at *13 (defendants' omission regarding a decline in sales growth rate did not render a statement regarding ongoing growth false or misleading because "ongoing growth" is not inconsistent "with a declining rate of growth") (emphasis omitted). Moreover, temporary or short-term directional pressure on reported metrics

22

is inherently immaterial, to say nothing of *unreported metrics*. *See Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001) ("We do not have a system of continuous disclosure. Instead firms are entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose.").

Accordingly, Plaintiffs' Maximized Growth and LTV Drag Theories fail and their claims alleged in reliance on those theories should be dismissed.

### 3. The Emphasized Statements From GoHealth's Registration Statement Are Not Actionable

Even if Defendants assume that the statements Plaintiffs emphasized in the block quotes cut and pasted from GoHealth's Registration Statement are the ones Plaintiffs contend give rise to their claims,[7] none of the emphasized statements amounts to an actionable misrepresentation for a host of additional reasons. These reasons are discussed below and the deficiencies for each emphasized statement are summarized in Appendix A to this Memorandum of Law ("Appendix A").

### a. Many Emphasized Statements Are Not Alleged To Be False

Many of the statements emphasized in Plaintiffs' excerpted quotes are statements of historic or present fact that Plaintiffs do not (and cannot) allege to be false or misleading. *See Conagra Brands*, 2020 WL 6118605, at \*13 (dismissing complaint where "Plaintiffs do not include enough factual content to plausibly allege that any challenged statement was false or misleading"). For example, Plaintiffs emphasize the six statements below, but offer no allegations as to why any one of these statements is false or misleading:

---

[7] Defendants' inability to discern, and therefore address, the statements actually at issue is proof itself of the puzzle nature of Plaintiffs' Complaint. *See* Section III.B, *supra*. Defendants reserve all rights to address any other portions of the statements in the block quotes excerpted in Complaint paragraphs 91-99 and 101-104 that Plaintiffs may hereafter contend are at issue.

- " . . . *carriers that partner with [GoHealth] through one or more of [GoHealth's] internal segment businesses will often supplement [GoHealth's] marketing and technology investments.*" (¶ 92.)

- "*We engineered our marketplace for rapid scalability[.]*" (¶ 93.)

- "*The data generated through the sales process by these consumers helps us increase LTV/CAC through machine-learning enabled feedback loops, and allows us to improve and deepen our relationships with carriers.*" (¶ 93.)

- "*Our carrier relationships are stable, as evidenced by the fact that our relationships with each of our five largest carriers, measured by 2019 submission volume, exceeds five years.*" (¶ 94.)

- "*We are licensed in all 50 states and the District of Columbia, which combined with our data-driven, omni-channel marketing and effective and scalable marketplace, makes us a partner of choice for the leading Medicare Advantage plans nationally and in each state.*" (¶ 94.)

- "*We are strategically adding carriers in the Medicare segments in order to offer top-rated plans and multiple plan choices in each of the U.S. counties in which we operate. This also allows us to market more efficiently in these geographies, increase conversion rates on consumer leads, and improve customer satisfaction rates as we are better able to meet consumers' specific needs, which drives revenue growth.*" (¶ 98.)

- "*We were also able to utilize more agents on a year-round basis instead of during enrollment periods due to the addition of SNPs into our marketplace which are able to be sold at any time of year.*" (¶ 99.)

- "*Net revenues also increased in this segment due to the implementation of new marketing strategies to generate a greater number of qualified prospects and due to an increase in non-commission revenues.*" (¶ 99.)

*See also* Appendix A. In particular, Plaintiffs do not contest that: GoHealth's carrier partners provided marketing and technology support; GoHealth's technology-driven business model enabled rapid scalability and growth through machine-learning feedback loops; GoHealth's carrier relationships were stable; GoHealth benefitted from licensure in all 50 states and the District of Columbia; GoHealth was adding carriers in Medicare segments to expand its geographic coverage; GoHealth was able to utilize more agents on a year-round basis; and that GoHealth's net revenues increased due to implementation of new marketing strategies and non-

24

commission revenues. In fact, the Complaint corroborates—rather than undermines—the veracity of many of these statements. For example, despite implying that GoHealth's statement that "carriers . . . will often supplement [GoHealth's] marketing and technology investments" (¶ 92) is false or misleading, Plaintiffs allege elsewhere that "GoHealth benefitted from deep technical integration and subsidized marketing with its top carriers." ( ¶ 88.) Failing to plead falsity (and pleading facts undermining falsity) is fatal to Plaintiffs' claims. *See Conagra Brands*, 2020 WL 6118605, at *13.

**b.      Many Emphasized Statements Are Forward-Looking Statements Protected Under The Bespeaks Caution Doctrine**

Other statements Plaintiffs emphasize are not actionable because they are forward-looking statements protected by the "bespeaks caution" doctrine. This doctrine provides that "when forecasts, opinions, or projections in a disclosure statement are accompanied by meaningful warnings and cautionary language, the forward-looking statements may not be misleading." *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 842 n.6 (N.D. Ill. 2003) (quoting *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1404 (7th Cir. 1995)). The doctrine applies to Section 11 claims, among others, and enables a court to "rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994); *see also Raffensperger, Hughes & Co.*, 65 F.3d at 1405 (7th Cir. 1995) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1415 n.3).

The doctrine recognizes that alleged misrepresentations may be immaterial as a matter of law if "it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Chang*, 355 F.3d at 173. In making this inquiry, courts look not to "whether isolated statements within a document were true, but

25

whether defendants' representations or omissions, *considered together and in context*, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Id*. (emphasis added) (internal citation omitted); *see also Apropos Tech., Inc.*, 2003 WL 1733558, at *6.

The PSLRA contains a counterpart statutory safe harbor provision, which is based on the judicially-created bespeaks caution doctrine and similarly isolates certain forward-looking statements from serving as the basis of a securities claim. *See* 15 U.S.C. § 78u–5(i)(1)(A); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 842 (N.D. Ill. 2003) (noting that Congress borrowed from the "judicially-created 'bespeaks caution' doctrine" in creating the PSLRA safe-harbor); *see also Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004) ("The PSLRA created a statutory version of th[e] [bespeaks caution] doctrine by providing a safe harbor for forward-looking statements identified as such, which are accompanied by meaningful cautionary statements."); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (calling the safe harbor a statutory form of the doctrine). Although the PSLRA safe harbor itself does not apply to statements made in an initial public offering, because of its reliance on the bespeaks caution doctrine, the text of the safe harbor and case law interpreting the protection afforded to forward-looking statements are instructive.

The PSLRA safe harbor expressly immunizes statements, among other things, (i) "containing a projection of revenues, income . . . or other financial items," (ii) "of the plans and objectives of management for future operations," (iii) "of future economic performance, and (iv) "of the assumptions underlying or relating to any statement described in [i, ii, or iii]" if accompanied by meaningful cautionary language. *See* 15 U.S.C. § 78u-5(i)(1). Cautionary language is meaningful if it "identif[ies] important factors that could cause actual results to differ

26

materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004). This includes "point[ing] to the principal contingencies that could cause actual results to depart from the projection." *St. Lucie Cty. Fire Dist. Firefighters' Pension Trust Fund v. Motorola, Inc.*, 2011 WL 814932, at \*9 (N.D. Ill. Feb. 28, 2011).

The statements Plaintiffs emphasize concerning, for example, the expected increase in LTVs, and planned carrier expansion are the type of quintessential forward-looking statements protected by the bespeaks caution doctrine. For example, Plaintiffs emphasize the statements below:

- "*As we continue to scale our platform, we improve our key drivers through specialization and optimization using our proprietary data and machine-learning.*" (¶ 91.)

- "*As we scale our business, our machine-learning data combined with our omni-channel marketing allows us to become progressively better at acquiring consumer leads with favorable engagement potential and to do so at lower cost. In doing so, we increase the lifetime commissions generated by the consumer leads we convert, which increases LTV per Approved Submission, and we reduce the cost of acquiring consumer leads, lowering CAC per commissionable Approved Submission.*" (¶ 97.)

- "*The resulting increase in the expected LTV of consumers obtained at a lower CAC has made our innovative distribution model more appealing to carriers and has altered their own approach to strategic marketing and consumer acquisition.*" (¶ 93.)

- "*In 2020, we expect our platform will include Medicare Advantage products from at least one of the top two carriers, as measured by Medicare Advantage enrollees in each county, in 49 states, which collectively represented 95% of 2019 Medicare enrollments.*" (¶¶ 95, 96.)

*See also* Appendix A. These emphasized statements indisputably speak to future expectations and optimism governed by the bespeaks caution doctrine. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1413 (applying the doctrine to "economic projections, estimates of future performance, and similar optimistic statements").

27

The statements are also accompanied by meaningful cautionary language. In the context of the PSLRA safe harbor, this Court has held that in order to qualify as meaningful cautionary language, language must "identify [] important factors that could cause actual results to differ materially from those in the forward-looking statement." *Asher*, 377 F.3d at 734. Moreover, so long as the principal risk at issue is disclosed, "the fact that some other event caused problems cannot be dispositive." *Id.* at 730; *see also Stavros*, 266 F. Supp. 2d at 843 ("[T]he language need not explicitly refer to the risk that ultimately caused the projection to differ from the actual results; it is sufficient that the language warned of risks of a significance similar to that actually realized.") (internal quotations and citation omitted). Here it is beyond dispute that statements concerning LTV growth and carrier expansion were accompanied by meaningful cautionary language.

Regarding LTV growth, GoHealth's Registration Statement disclosed, among other things, that LTV is an estimate based on numerous assumptions and that negative changes in any of those factors could impact LTV and, consequently, GoHealth's operating results and financial condition. (*See* Ex. A at 36-37.) Regarding carrier expansion, GoHealth disclosed, among other things, that carrier expansion could be unsuccessful and that, if it were, it could negatively impact GoHealth's ability to compete in the market. (Ex. A at 109.) These warnings adequately warned investors of the risks that the forward-looking statements may not come to fruition. *See*, e.g., *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 711 (N.D. Ill. 2005) (holding that disclosures that "such variables as market conditions, changes in demand, [and] competition . . . could cause actual company results to differ from predictions" and qualified as "cautionary language"); *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 954 (N.D. Ill. 2003) (holding that disclosures of "risks associated with introducing new products, entering new markets, availability of resources, competitive response, and [] economic conditions" qualified as "cautionary language").

28

### c.    Many Emphasized Statements Are Immaterial Puffery

Many of GoHealth's statements are also optimistic statements, at most constituting legally immaterial puffery. Non-actionable statements of puffery are "general, optimistic statements that are not capable of being objectively verified." *In re Midway Games*, 332 F. Supp. 2d at 1164; *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). For example, Plaintiffs emphasize statements such as:

- "*We engineered our marketplace for rapid scalability[.]*" (¶ 93.)

- "*The data generated through the sales process by these consumers helps us increase LTV/CAC through machine-learning enabled feedback loops, and allows us to improve and deepen our relationships with carriers.*" (¶ 93.)

- "*The resulting increase in the expected LTV of consumers obtained at a lower CAC has made our innovative distribution model more appealing to carriers and has altered their own approach to strategic marketing and consumer acquisition.*" (¶ 93.)

- "*We are licensed in all 50 states and the District of Columbia, which combined with our data-driven, omni-channel marketing and effective and scalable marketplace, makes us a partner of choice for the leading Medicare Advantage plans nationally and in each state.*" (¶ 94.)

- "*We believe we are a partner of choice for the top carriers in the Medicare marketplace because of our scale, efficiency and ability to integrate with carriers using direct API connections to exchange data and insights.*" (¶ 96.)

*See also* Appendix A.

These statements and others like them are precisely the type of optimistic talk that cannot support a claim under the securities laws. *See, e.g., Eisenstadt v. Centel Corp.*, 113 F.3d 738, 745 (7th Cir. 1997) (dismissing claim where alleged misstatements were puffery because "[t]he heart of a reasonable investor does not begin to flutter when a firm announces that some project or process is proceeding smoothly"); *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. AllScripts-Misys Heathcare Sols., Inc.*, 778 F. Supp. 2d 858, 872 (N.D. Ill. 2011) (holding statements that defendant was "'confident in its ability to deliver solid results,' and was

29

'in position to capitalize' on a significant market opportunity" are non-actionable); *In re Bally Total Fitness Sec. Litig.*, 2007 WL 551574, at *6 (N.D. Ill. Feb. 20, 2007) (holding that alleged statements "that Bally would continue to 'grow' its earnings are classic examples of [immaterial] sales 'puffing'"); *Zerger v. Midway Games, Inc.*, 2009 WL 3380653, at *6, 9 (N.D. Ill. Oct. 19, 2009) (holding statements that acquisition was "strengthening" "facilitating" "adding depth" and "expertise" classic puffery); *St. Lucie*, 2011 WL 814932, at *7 ("Statements regarding a company's 'strong balance sheet' or its 'proven record of growth' are immaterial puffery that no reasonable investor would rely on.").

<blockquote>

**d.** **Plaintiffs' Reliance On Items 303 And 105 Under SEC Regulation S-K And SEC Staff Accounting Bulletin 104 Does Not Save Their Claims**
</blockquote>

Plaintiffs also contend that Defendants are liable under Section 11 because they omitted from the Registration Statement certain known trends and risks required to be disclosed under Items 105 and 303 of SEC Regulation S-K ("Item 105" and "Item 303," respectively) and SEC Staff Accounting Bulletin No. 104 ("SAB 104").

As an initial matter, the SEC rescinded its revenue guidance in SAB 104 in 2017 with the adoption of FASB ASC Topic 606. SAB 104 applied to Topic 13 of the codification of SEC staff accounting bulletins. S.E.C., Staff Acct. Bull. No. 104 (Dec. 17, 2003). Topic 13 related to ASC 605, but was rescinded by the adoption of ASC 606. *See* SEC Staff Acct. Bull. No. 116, Release No. 116 (Aug. 29, 2017) ("Topic 13 is no longer applicable upon a registrant's adoption of ASC Topic 606."). That rescission was operative prior to GoHealth's filing of its Registration Statement in 2020. (Ex. A at 36, 135 (noting the Registration Statement's reliance on ASC 606).) Accordingly, SAB 104 does not apply to GoHealth's Registration Statement.

Nor can Plaintiffs base their Section 11 claim on Items 303 or 105. Plaintiffs have failed to plead facts sufficient to show that GoHealth omitted to disclose any information required under

those items.[8]  Item 303 requires companies to "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on sales or revenues or income from continuing operations."  (¶ 107 (quoting 17 C.F.R. § 229.303(a)(2)(ii)).)  Plaintiffs argue that Defendants violated Item 303 because GoHealth's Registration Statement failed to disclose "planned material changes to GoHealth's business model and the attendant negative consequences and risks stemming from this change."  (¶ 108.) Plaintiffs' argument fails for at least three reasons.  First, Plaintiffs fail to establish that any planned business model changes constituted a "known trend."  Plaintiffs cite no authority at all supporting their dubious contention that a planned business strategy constitutes a "trend" required to be disclosed under Item 303.  *Conagra Brands, Inc.*, 2020 WL 6118605, at *15 ("Even if Plaintiffs could enforce Item 303's disclosure requirements through the federal securities laws, they do not adequately allege any known trend or uncertainty within Item 303's scope that Defendants failed to disclose in an SEC filing.").  Second, even if the alleged business model could qualify as a trend (which Defendants dispute), Plaintiffs cannot show that the trend had, or that GoHealth expected it would have, a "material favorable or unfavorable impact on sales or revenues or income from continuing operations."  (¶ 107 (quoting 17 C.F.R. §229.303(a)(2)(ii)).)  Not only have Plaintiffs failed to show that the alleged business model changes negatively impacted the LTV metrics on which they focus (*see* Section III.C.2, *supra*), but they have failed to address how an impact from what they describe as new business undertakings constitute an impact on *continuing operations*.

---

[8] Items 303 and 105 do not confer an independent private right of action.  *See Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1157 (N.D. Ill. 1995) (holding that a violation of Regulation S-K does not support a private claim); *see also Shah v. GenVec, Inc.*, 2013 WL 5348133, at *15 n.16 (D. Md. Sept. 20, 2013) ("There is no private right of action under SEC Regulation SK."); *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 583 (E.D. Va. 2006) (same); *Golan v. Puleo*, 480 F. Supp. 2d 1325, 1328 (S.D. Fla. 2007) (same); *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 37 (S.D.N.Y. 2004) (same).  Plaintiffs do not argue otherwise.

*See Conagra Brands*, 2020 WL 6118605, at \*14 (dismissing Item 303-based claims on the grounds that alleged omissions concerning information on an acquisition target did not relate to "continuing operations"); *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 2021 WL 1222290, at \*25 (D. Utah Mar. 31, 2021) (dismissing Item 303 based claim where defendants were alleged to have known of a sales capacity gap but where sales growth continued in the period at issue). Third, Plaintiffs have failed to show that the facts at issue constituted a trend "known" to Defendants. As explained above (*see* Section III.C.2, *supra*), Plaintiffs' allegations that Defendants knew the so-called planned business strategies could theoretically affect certain LTV inputs is insufficient to establish that Defendants knew any such strategies would *in fact* affect *overall* LTV *at GoHealth*— particularly when LTVs actually *increased* post-IPO. *See Pluralsight*, 2021 WL 1222290, at \*25; (Ex. B at 56.).

Item 105 requires public companies to include in their registration statements and prospectuses "a discussion of the [most significant] factors that make [the offering] . . . speculative or risky" and requires each risk factor to "adequately describe[] the risk." (¶ 107 (quoting 17 C.F.R. § 229.105).) Plaintiffs cite the same list of allegedly omitted information cited in connection with their argument under Item 303 in arguing that Defendants violated Item 105. (*See* ¶¶ 114-15.) However, Plaintiffs ignore that GoHealth's Registration Statement included 45 pages of risk disclosures that included numerous disclosures concerning risks attendant with, among other things: changing carrier relationships (Ex. A at 34, 41), carriers paying reduced commissions (Ex. A at 35), adverse impact to LTV factors (Ex. A at 36), inability to advertise products on a cost-effective basis (Ex. A at 40), investment in business areas that do not reap improved enrollment results (Ex. A at 42), and failure to manage future growth effectively (Ex. A at 57). Plaintiffs have not (and cannot) point to any significant risk factor that is not disclosed in this 45-

page risk section. Nor can Plaintiffs argue that any more granular breakdown of risk disclosures is required. *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *9 (C.D. Cal. Jan. 25, 2021) (holding that where key risk categories were disclosed, a demand under Items 303 and 105 for "a more granular breakdown of the [risk] data" failed). Indeed, Plaintiffs' allegation of insufficient disclosure is belied by their repeated recitation of risk disclosures covering the exact topics at issue. (*See* ¶ 102 (quoting GoHealth's risk disclosures regarding carrier right to alter commission rates and risks attendant from carrier concentration); ¶ 103 (quoting GoHealth's risk disclosures regarding LTV input risk and, in particular, that commission rates are a factor in LTVs); ¶ 104 (quoting GoHealth's risk disclosure regarding carrier concentration)); *see also In re HEXO Corp. Sec. Litig.*, 2021 WL 878589, at *11 (S.D.N.Y. Mar. 8, 2021) ("[P]laintiffs' argument that HEXO did not properly disclose trends and uncertainties is belied by the fact that plaintiffs' allegations regarding the SQDC's store openings and HEXO's sales to date are based on HEXO's disclosures themselves.") (emphasis omitted). At bottom, Plaintiffs' reliance on Item 105 "reads as if Plaintiffs believe Defendants should be held liable not for failing to disclose risks, but for failing to surround truthful disclosures with flashing lights and arrows. Investors might prefer that, but the securities laws do not require it." *Brasher*, 2012 WL 1357699, at *15.

### D. Plaintiffs Fail To State A Claim Under Section 15

Section 15 renders control persons jointly and severally liable for primary securities laws violations committed by persons under their control. *See* 15 U.S.C. § 77o. For the reasons set forth above, the Complaint does not plead any predicate violations under Section 11. (*See* Section III, *supra*.) Without any underlying violation of the federal securities laws, Plaintiffs' Section 15 claims must also be dismissed. *See, e.g.*, *Conagra Brands*, 2020 WL 6118605, at *37 ("Without a claim for primary liability under Sections 11 or 12(a)(2), there can be no control liability claim

33

under Section 15."); *Tabankin v. Kemper Short-Term Glob. Income Fund*, 1994 WL 30541, at *6 (N.D. Ill. Feb. 1, 1994).

Plaintiffs' control person claims also fail because Plaintiffs do not sufficiently allege control-person liability with respect to any Individual Defendant, NVX Holdings, or Centerbridge. To state a claim for control-person liability, Plaintiffs must allege that these Defendants "actually exercised control over the general operations of the primary violator; and . . . that [they] had the power or ability (even if not exercised) to control the specific transaction that is alleged to give rise to liability." *Starr v. Hey!, Inc.*, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003).

First, Plaintiffs' allegation that the Individual Defendants had control "by virtue of their positions as directors and/or senior officers of GoHealth" (¶ 143) and because of their "business and/or personal relationships with other directors and/or officers and/or major shareholders of GoHealth" (*Id.*) is insufficient as a matter of law. *See Starr*, 2003 WL 21212596, at *4 ("Courts within this District have consistently held that a plaintiff may not premise control person liability solely upon status within the company.").

Second, Plaintiffs' allegations that the Individual Defendants, NVX Holdings and Centerbridge had the requisite control through their collective ownership interest and power to appoint directors (¶¶ 144-145) are similarly insufficient. *See Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001) (dismissing control person claims against defendants who owned 38%-50% of the company's stock and placed three affiliates on the board), *aff'd*, 72 F. App'x 130 (5th Cir. 2003); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (controlling shareholders who could elect two-thirds of board not control persons where no facts alleged their actual exercise of control over company's management and operations). Accordingly, Plaintiffs' Sections 15 claims should be dismissed.

34

## IV.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Date:  April 26, 2021

Respectfully submitted,

*/s/ Christopher J. Clark*
One of the Attorneys for Defendants GoHealth, Inc., Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, and NVX Holdings, Inc.

Matthew Walch (ARDC No. 626308)
matthew.walch@lw.com
Jack M. McNeily (ARDC No. 6332140)
jack.mcneily@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Christopher J. Clark *(pro hac vice)*
christopher.clark@lw.com
Sandeep Savla *(pro hac vice)*
sandeep.savla@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Counsel for Defendants GoHealth, Inc., Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, and NVX Holdings, Inc.*

*/s/ Susan L. Saltzstein (with consent)*
One of the Attorneys for Defendants Goldman Sachs & Co., LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC

Marcella L. Lape (ARDC No. 6286676)
marcie.lape@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700

35

Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

Susan L. Saltzstein *(pro hac vice)*
susan.saltzstein@skadden.com
Lara A. Flath (ARDC No. 6289481)
lara.flath@skadden.com
SKADDEN ARPS SLATE MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Counsel for Defendants Goldman Sachs & Co.,
LLC, BofA Securities, Inc., and Morgan Stanley &
Co. LLC*

36