**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re GO HEALTH, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Case No. 1:20-cv-05593<br><br><u>CLASS ACTION</u><br><br>Judge Sharon Johnson Coleman |

<u>**CENTERBRIDGE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**</u>

Defendants Centerbridge Partners, L.P., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Centerbridge Associates III, L.P., and CCP III Cayman GP Ltd. (collectively, "Centerbridge") join the Motion to Dismiss the Consolidated Class Action Complaint submitted by the GoHealth and Underwriter Defendants[1] (Dkt. No. 73) and submit this Memorandum of Law in support of Centerbridge's Motion to Dismiss Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed's (collectively, "Plaintiffs") Consolidated Complaint ("Complaint") (Dkt. No. 66, cited as "¶ ___").

**PRELIMINARY STATEMENT**

Centerbridge, only some entities of which have made direct investments in GoHealth, Inc. ("GoHealth"), should be dismissed from this lawsuit because the Complaint fails to plead a claim under the federal securities laws, and Plaintiffs' own allegations establish that Centerbridge is not a control person under Section 15 of the Securities Act of 1933 ("Securities Act"). Centerbridge is not a majority stockholder of GoHealth, designated only a minority of GoHealth directors, and, critically, is not alleged to have controlled either the general operations of GoHealth, including the Company's day-to-day decision-making, or the GoHealth Initial Public Offering itself. For the reasons set forth in GoHealth's motion to dismiss, and in view of the insufficiency of the allegations concerning Centerbridge's purported control, the Section 15 claim against Centerbridge should be dismissed.

---

[1] As used herein the "GoHealth Defendants" and the "Underwriter Defendants" have the same meaning as given in the GoHealth and Underwriter Defendant's Motion to Dismiss the Consolidated Class Action Complaint (Dkt. No. 73).

1

## STATEMENT OF FACTS[2]

Centerbridge Partners, L.P. is a New York-based private investment firm that made no direct investment in GoHealth.[3]  ¶ 37; *see* Exhibit A at ii (defining "Centerbridge" as "Centerbridge Capital Partners III, L.P" and other entities and funds over which it has voting control and making no reference to Centerbridge Partners, L.P.).  Investors invested in GoHealth through a series of investment vehicles, CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC (collectively, "CCP III").  ¶ 38.  Centerbridge Associates III, L.P. is the general partner of CCP III AIV VII Holdings, L.P. and CB Blizzard Co-Invest Holdings, L.P.  ¶ 39.  CCP III Cayman GP Ltd. is the general partner of Centerbridge Associates III, L.P. and is the sole manager of Blizzard Aggregator, LLC.[4]  ¶ 40.  Of all the Centerbridge defendants named in the Complaint, only CCP III made direct investments in GoHealth.  *See* Exhibit A at ii.

On September 13, 2019, CCP III acquired 100% of the equity in Norvax, LLC, a subsidiary of Blizzard Midco, LLC, which is itself a subsidiary of GoHealth Holdings, LLC.[5]  ¶¶ 2, 41.  Since GoHealth's initial public offering ("IPO") on July 14, 2020, CCP III has held a minority interest in GoHealth, both in terms of economic control and voting power.  ¶ 84(c).  No

---

[2] In support of its Motion to Dismiss, Centerbridge also incorporates the facts stated in GoHealth's Motion to Dismiss.  For the purposes of this Motion only, Centerbridge assumes the truth of the allegations in the Complaint.

[3] Centerbridge requests that the Court take judicial notice of GoHealth's Second Amended Form S-1 (July 8, 2020), which was filed with the SEC and is referenced throughout the Complaint as part of GoHealth's Registration Statement.  *See, e.g.*, ¶¶ 1, 16, 71, and 145.  A court considering a motion to dismiss in a securities fraud action must consider "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A copy of the Second Amended Form S-1 is attached as Exhibit A to this Memorandum of Law.

[4] Together, these entities are referred to as "Centerbridge" in the Complaint.  ¶ 41.

[5] Centerbridge Capital Partners III, L.P.—not a defendant in this action—acquired 100% of Norvax through various investment vehicles, defined above as CCP III.  *See* Ex. A at iii.  The Complaint refers to "Centerbridge" throughout without distinguishing which entities made direct investments in GoHealth.

senior member of GoHealth management is affiliated with CCP III and only two of the nine

directors were designated by CCP III. *See* Exhibit A at 158-59 (noting that directors Jeremy

Gelber and Miriam Tawil are Centerbridge designees). Notably, none of the Individual

Defendants, including Clinton Jones (the Chief Executive Officer and Co-Chair of the Board),

Brandon Cruz (the Chief Strategy Officer, Special Advisor to the Executive Team and Co-Chair

of the Board) or Travis Matthiesen (the Chief Financial Officer), has any connection to

Centerbridge or CCP III. ¶¶ 32-34.

## ARGUMENT

I.  **Plaintiffs' Allegations Fail to Meet the Legal Standard for Liability Under Section 15 of the Securities Act**

### A. Legal Standard

A complaint must contain enough well-pleaded factual allegations "to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must

also state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A pleading that

offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

Under Section 15, control persons are jointly and severally liable for primary securities

law violations committed by persons under their control. 15 U.S.C. § 77*o*; *see also* 17 C.F.R. §

230.405 ("The term control (including the terms controlling, controlled by and under common

control with) means the possession, direct or indirect, of the power to direct or cause the

direction of the management and policies of a person, whether through the ownership of voting

securities, by contract, or otherwise"). To state a claim for Section 15 control person liability,

Plaintiffs must allege a primary securities violation and meet the Seventh Circuit's two-part test

to determine control: "the 'control person' needs to have *actually* exercised general control over

3

the operations of the wrongdoer . . . [and] have had the power or ability—even if not exercised—to control the specific transaction or activity that is alleged to give rise to liability." *Donohoe v. Consolidated Operating & Prod. Corp.,* 30 F.3d 907, 911-12 (7th Cir. 1994) (emphasis in original); *see also Starr v. !Hey, Inc.*, No. 01 C 6087, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003); *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) ("To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person.") (internal quotation marks and citations omitted).

Conclusory allegations of control are insufficient as a matter of law. *See, e.g.*, *Desai v. Gen. Growth Properties, Inc*., 654 F. Supp. 2d 836, 863 (N.D. Ill. 2009) ("where a plaintiff 'self-servingly pleads a bare legal conclusion that the . . . defendants were control person,' without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pleaded and must be dismissed") (quoting *Starr*, 2003 WL 21212596, at *4). Courts applying these standards have consistently held that ownership status and board rights alone as to persons not involved in day-to-day management is legally insufficient to support a control person liability claim. *See In re Deutsche Telekom AG Sec. Litig*., No. 00 Civ. 9475, 2002 WL 244597, at *5-7 (S.D.N.Y. Feb. 20, 2002).

Relevant here, a parent-subsidiary relationship, without more, is insufficient under Section 15 to meet the pleading standard for control liability. *See Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010). As the "power to direct the management and policies of a [primary violator] must be a real, de facto power and not just de jure[,] officer or director status alone does not constitute control." *Glob. Crossing,* 2005 WL 1907005, at *12 (internal citations omitted). Finally, status as a minority

4

shareholder, presence of a voting agreement, or designation as a "controlled company" under Nasdaq listing rules, without more, do not establish control under Section 15.  *See Glob. Crossing*, 2005 WL 1907005, at *13 (minority stockholder status insufficient); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (voting agreement insufficient); *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676-77 (N.D. Tex. 2013) (stock exchange control definition insufficient).

### B. In the Absence of a Legally Cognizable Section 11 Claim, the Section 15 Claim Must Fail

For all the reasons set forth in GoHealth's Motion to Dismiss, the Complaint fails to plead any actionable violation of Section 11 of the Securities Act.  Plaintiffs fail to plead material misstatements or omissions with specificity and even if they did, the statements are not false, are protected as forward-looking statements, constitute immaterial puffery or are otherwise inactionable.  In the absence of an underlying violation of the federal securities laws, Plaintiffs' Section 15 claim must be dismissed.  There can be no liability for allegedly controlling an entity that did not violate the securities laws.  *See, e.g.*, *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, No. 19-CV-01323, 2020 WL 6118605, at *37 (N.D. Ill. Oct. 15, 2020) ("Without a claim for primary liability under [Section] 11 . . . there can be no control liability claim under Section 15").

### C. Plaintiffs Fail to Plead Sufficient Facts to Establish Section 15 Liability

Even assuming *arguendo* that Plaintiffs sufficiently alleged a primary violation, the control person liability claim still fails for two independent reasons: ***first***, Centerbridge did not actually exercise control over the general operations of GoHealth; and ***second***, Centerbridge had neither the power nor the ability to control the specific offering at issue here.  *See Kosmos Energy*, 955 F. Supp. 2d at 676-77; *Glob. Crossing,* 2005 WL 1907005, at *12; *Zishka v. Am.*

5

*Pad & Paper Co.*, No. 3:98-CV-0660-M, 2001 WL 1748741, at \*1 (N.D. Tex. Sept. 28, 2001). The Complaint contains a handful of conclusory and barebones allegations concerning Centerbridge's alleged control, all of which are insufficient as a matter of law to state a claim against Centerbridge. *See, e.g.*, ¶¶ 3, 35, 41, 83-85, 144-45. Notably, the Complaint fails even to acknowledge that *none* of the Centerbridge defendants save CCP III made any direct investments in GoHealth at all. With respect to the remaining defendants, namely Centerbridge Partners, L.P., Centerbridge Associates III, L.P. and CCP III Cayman GP Ltd., the Complaint contains no allegations that could meet the Seventh Circuit's Rule 15 test. Accordingly, the Complaint should be dismissed on this basis as well.

**1. Centerbridge, a Minority Shareholder, Did Not Actually Exercise Control Over the Operations of GoHealth and Did Not Have the Power to Control the IPO With Only a Minority of Director Designees on the Board**

***First***, Centerbridge Partners, L.P., Centerbridge Associates III, L.P. and CCP III Cayman GP Ltd. should be dismissed because none were direct investors in GoHealth. *See* Exhibit A at ii. Without any direct investment in GoHealth, they did not actually exercise control or have the power to control the IPO as required by *Donohoe*, 30 F.3d 907, 911-12.

***Second***, CCP III's September 2019 acquisition of Norvax, LLC, a subsidiary of GoHealth, Inc., did not confer control on CCP III for purposes of Section 15 liability. Plaintiffs make only the barebones allegation that Centerbridge "effectively took control of the Company along with its founders" through Centerbridge's acquisition of Norvax. ¶ 3; *see also* ¶¶ 37-41, 50, 67. Norvax, however, is a "wholly-owned subsidiary of Blizzard Midco, LLC, which, in turn, is a wholly-owned subsidiary of GoHealth Holdings," as set forth below:

6



*See* ¶ 50 (diagram of GoHealth following its IPO). As an initial matter, the allegation of a

parent-subsidiary relationship, without more, is insufficient under Section 15 to meet the

pleading standard for control liability. *See Pub. Employees' Ret. Sys. of Mississippi*, 714 F. Supp.

2d at 485 (dismissing Section 15 claim and holding that (1) the "parent/subsidiary relationship"

between a parent company and an issuer was an insufficient basis from which to infer control

and (2) "mere allegations of a corporate affiliation" between subsidiaries were also insufficient);

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV.3288(DLC), 2004 WL 1097786, at *3 (S.D.N.Y.

May 18, 2004) (dismissing Section 15 claim against parent entities of subsidiaries that

underwrote bond offerings at issue in part because parent/subsidiary relationship was inadequate

to assert control person liability).

***Third***, by Plaintiffs' own allegations, following the IPO, CCP III became a ***minority***

shareholder of GoHealth, possessing only approximately 13% and 25.8% of the combined voting

power of the Class A and Class B stock, respectively stock.[6] ¶ 84(c)(i) & (iii). Courts have

repeatedly recognized that such a minority interest is insufficient to confer control on CCP III in

the absence of allegations that the minority shareholder was "somehow involved in [the issuer's]

---

[6] CCP III also holds approximately 38.7% of the economic interest in GoHealth Holdings, LLC. ¶ 84(c)(ii).

operations (day-today or long-term), decision making, or planning." *Kosmos Energy*, 955 F. Supp. 2d at 676; *see also Glob. Crossing*, 2005 WL 1907005, at *13 (minority shareholders, each with 15.8% of stock and the authority to appoint one board member to a 12-member board, lacked sufficient control); *Deutsche Telekom*, 2002 WL 244597, at *6-7 (dismissing control person claim against a shareholder with a 22% interest in the issuer). In this case, Plaintiffs make no such allegations against Centerbridge generally or CCP III specifically.

Plaintiffs attempt to cure this flaw in their pleading by alleging that Centerbridge and the Founders together exercised control over the company because they have a combined majority ownership interest. *See* ¶¶ 3, 35, 41, 84, 145. But Plaintiffs do not allege that the Founders and Centerbridge, much less CCP III, together exercised control over the day-to-day operations of the Company or made decisions in concert to omit material facts from the Registration Statement. The mere fact that their combined interests form a majority is not dispositive of the question of control. *See Aldridge*, 284 F.3d at 85 (rejecting control person liability even for shareholders who "own the majority of the shares" in the absence of "facts that indicate that the[y] …were actively participating in the decisionmaking processes of the corporation").

***Fourth***, CCP III's designation of a minority of directors does not confer actual control. Pursuant to the Stockholders Agreement with GoHealth and NVX Holdings, Inc., a corporation controlled by Cruz and Jones to house their ownership of GoHealth stock, only two of the nine members of the GoHealth Board of Directors are designated by CCP III and are CCP III-affiliated. *See* Exhibit A at 159-63, 190. And the other two CCP III designees are required under the terms of the Stockholders Agreement to be independent. *See id.* at 190. The designation of a minority of directors falls well short of conferring on CCP III or Centerbridge any actual authority over GoHealth's operations, or the power or ability to control the IPO, in the absence of

8

any allegations to the contrary. As one court has noted, "[s]tatus alone as to persons not involved in day to day management is legally insufficient to support a [control person] claim." *Zishka*, 2001 WL 1748741, at *1 (dismissing Section 20(a) control-person claim for a private equity defendant which owned 38-50% of the issuer and had designated three directors on the Board); *see also Aldridge*, 284 F.3d at 85 (holding that controlling shareholders who could elect two-thirds of the board were not control persons where there were no facts alleged concerning their actual exercise of control over company's management and operations); *Glob. Crossing*, 2005 WL 1907005, at *13 ("Allegations that a person was one of multiple directors of the primary violator does not raise an inference of control over that entity.").

Moreover, service as a designated director on GoHealth's board does not, by itself, sufficiently plead control in the absence of any allegation that any of the CCP III directors breached their fiduciary duties to the issuer. Here, there are no such allegations that any of the CCP III directors were acting at the behest of Centerbridge. Any inference of a breach is therefore unsupported and unwarranted. *See Kosmos Energy*, 955 F. Supp. 2d at 676 (holding that the Court "cannot assume" that the private equity designees on the board "were acting on behalf of" the private equity companies in their capacity as directors because "there are no allegations" in support of such a theory); *Glob. Crossing*, 2005 WL 1907005, at *13 (same).

**_Fifth_**, the requirement under the Stockholders Agreement that CCP III give prior approval for certain corporate actions which have the potential to impact the value of CCP III's investment does not constitute control for purposes of the Section 15 analysis. *See* ¶¶ 35, 145. In *Global Crossing*, the court found the designated directors' "power to veto certain extraordinary corporate actions" insufficient to constitute control for purposes of Section 15 liability, where "plaintiffs have failed to allege specifically how each director possessed the

9

power to direct or cause the direction of the management of the primary violator, let alone how [the minority shareholders] controlled [the designated directors] to direct [the issuer]." *Glob. Crossing,* 2005 WL 1907005, at *13 (internal quotations and citations omitted). The shareholder protections for CCP III are typical of large shareholders in go-public circumstances and Plaintiffs have alleged no facts suggesting that CCP III or Centerbridge had actual control over the business operations of the Company for purposes of Section 15 liability.

### 2. Nasdaq Rules Regarding Control Are Not Relevant to Control Person Liability Under Section 15

Finally, Plaintiffs conflate the analysis of control for purposes of Section 15 liability with the definition of a controlled company under the Nasdaq rules. As alleged, GoHealth was considered a "controlled company" under Nasdaq rules following the IPO because NVX Holdings and Centerbridge "have more than 50% of the voting power" of GoHealth stock. ¶¶ 144-45.

Even if Centerbridge and the Founders together had a controlling interest in GoHealth for purposes of meeting the "controlled company" definition under Nasdaq rules, however, that fact would not be dispositive for purposes of control liability under Section 15. Whether a company meets the definition of a "controlled company" under the Nasdaq or New York Stock Exchange ("NYSE") rules is contingent only upon the percentage of shares held, and not any actual authority to control the business operations of the company. Therefore, courts recognize that "controlled company" status is "largely irrelevant" in deciding the issue. *See, e.g., Kosmos Energy*, 955 F. Supp. 2d at 676-77.

In *Kosmos Energy*, plaintiff brought a Section 11 claim against the issuer's private equity sponsors, among others, under a Section 15 theory, alleging that the sponsors exercised control by virtue of their combined positions as majority shareholders, the fact that each sponsor

appointed two directors to the board, and that the company had elected to be treated as a "controlled entity" under NYSE rules. 955 F. Supp. 2d at 676-77. In rejecting plaintiff's claim, the court noted that status under NYSE rules was "largely irrelevant" to control person liability because "the only requirement for 'controlled company' status under NYSE rules is that 'more than 50% of [the Company's] voting power is held by funds affiliated with [its] Investors, acting as a group" and there was no case law that deemed such status to be "relevant to the issue of control under securities laws." *Id.* at 676-77.

## CONCLUSION

Plaintiffs have fallen far short of the requirements for establishing control under Section 15. Nowhere in the Complaint do they allege that Centerbridge actually exercised control over the general operations of GoHealth or that Centerbridge had the power or ability to control the IPO, which is the legal standard they must meet to survive a motion to dismiss. For the reasons set forth above, the Court should grant Centerbridge's motion to dismiss with prejudice.

Dated: April 26, 2021
New York, New York

Respectfully submitted,

*/s/ Katherine R. Goldstein*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Katherine R. Goldstein
kgoldstein@akingump.com
Nathaniel B. Botwinick (*pro hac vice* pending)
nbotwinick@akingump.com
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

11

Michelle Reed
mreed@akingump.com
2300 N. Field Street
Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Megan Cunniff Church (ARDC No. 6281234)
mchurch@mololamken.com
MOLOLAMKEN LLP
300 North LaSalle Drive, Suite 5350
Chicago, Illinois 60654
Telephone: (312) 450-6716
Facsimile: (312) 450-6701

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's CM/EFC system on April 26, 2021.

*/s/Megan Cunniff Church*
Megan Cunniff Church