UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) ) | Case No.  1:20-cv-05593 |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) | Judge Sharon Johnson Coleman |
| ALL ACTIONS. | ) ) ) | |

**LEAD PLAINTIFFS' RESPONSE IN OPPOSITION TO CENTERBRIDGE'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   STATEMENT OF FACTS REGARDING CENTERBRIDGE .........................................2

III.  THE COMPLAINT STATES CONTROL PERSON CLAIMS AGAINST
      CENTERBRIDGE, AND ITS MOTION TO DISMISS SHOULD BE DENIED ..............3

      A.    Legal Standard ..................................................................................................3

      B.    Centerbridge's Motion to Dismiss Should Be Denied Because Plaintiffs
            Have Stated Claims for Primary and Control Person Liability Under the
            Securities Act ....................................................................................................4

            1.    Plaintiffs State Predicate §11 Claims.............................................................4

            2.    The Complaint Adequately Alleges Centerbridge Is Subject to
                  Control Person Liability Under §15 of the Securities Act ..........................5

                  a.    Centerbridge Exercised General Control over GoHealth's
                        Operations ........................................................................................5

                  b.    Centerbridge Also Had the Power or Ability to Specifically
                        Control the IPO .................................................................................7

            3.    Centerbridge's Arguments Should Be Rejected and Its Motion to
                  Dismiss Should Be Denied ...........................................................................8

                  a.    Centerbridge's Arguments Raise Issues of Fact that Cannot
                        Be Resolved at the Pleading Stage....................................................8

                  b.    Control Person Liability Does Not Require Direct
                        Investment......................................................................................10

                  c.    Collective Stock Ownership of Minority Shareholders May
                        Give Rise to §15 Control Person Liability.....................................11

                  d.    The Stockholder Agreement Supports the Complaint's
                        Allegations of Control.....................................................................12

                  e.    The Complaint Does Not Rely on NASDAQ or NYSE
                        Rules to Establish Control ..............................................................13

IV.   CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*,
735 F. Supp. 587 (S.D.N.Y. 1990) ...................................................................................10, 11

*Cent. Laborers' Pension Fund v. SIRVA, Inc.*,
No. 04 C 7644, 2006 WL 2787520 (N.D. Ill. Sept. 22, 2006)....................................................4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..............................................................................................8

*Harrison v. Dean Witter Reynolds, Inc.*,
974 F.2d 873 (7th Cir. 1992) ..............................................................................................4

*In re AFC Enters., Inc. Sec. Litig.*,
348 F. Supp. 2d 1363 (N.D. Ga. 2004) ...............................................................................11

*In re: Cabletron Sys., Inc.*,
311 F.3d 11 (1st Cir. 2002)...................................................................................................8

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2016 WL 215476 (S.D. Tex. Jan. 19, 2016)............................................9, 13

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2016 WL 949065 (S.D. Tex. Mar. 14, 2016) ..........................................9, 10

*In re Glob. Crossing Ltd. Sec. Litig.*,
No. 02 Civ. 910(GEL), 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005)................................8, 10

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) .............................................................................12, 13

*In re Sears, Roebuck & Co. Sec. Litig.*,
291 F. Supp. 2d 722 (N.D. Ill. 2003) .....................................................................................8

*In re Spiegel, Inc. Sec. Litig.*,
382 F. Supp. 2d 989 (N.D. Ill. 2004) ...........................................................................7, 8, 12

*Lindelow v. Hill*,
No. 00 C 3727, 2001 WL 830956 (N.D. Ill. July 20, 2001) ................................................7, 8

*McKenna v. Smart Techs. Inc.*,
No. 11 Civ. 7673(KBF), 2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ............................11, 13

**Page**

*Premier Capital Mgmt., L.L.C. v. Cohen*,
No. 02 C 5368, 2003 WL 21960357 (N.D. Ill. Aug. 15, 2003) ...................................... *passim*

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
No. 15-cv-3187, 2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ..................................................5

*SEC v. Winemaster*,
No. 19-cv-04843, 2021 WL 1172773 (N.D. Ill. Mar. 29, 2021) ................................................4

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...............................................................................12

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§77o.................................................................................................................................4
§78t(a) ............................................................................................................................4

Federal Rules of Civil Procedure
Rule 8 .........................................................................................................................9, 13
Rule 12(b)(6)....................................................................................................................1

17 C.F.R.
§230.405........................................................................................................................10

Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Centerbridge's[1] motion to dismiss [ECF Nos. 75-76] ("CB Mem.") the Consolidated Complaint for Violations of the Securities Act of 1933 [ECF No. 66] ("Complaint").

## I. INTRODUCTION

The Registration Statement filed in connection with GoHealth, Inc.'s ("GoHealth" or "Company") initial public offering ("IPO") makes explicitly clear that Centerbridge controlled GoHealth. Now, seeking to avoid liability, Centerbridge claims in its motion to dismiss that its *own representations* in the Registration Statement that Centerbridge controlled GoHealth were false (or meaningless), and that the Court should credit this about-face in dismissing Plaintiffs' control person claims against Centerbridge. But Plaintiffs plead overwhelming facts constituting indicia of control, and the factual issues Centerbridge attempts to raise are inappropriate for resolution under Rule 12(b)(6). Viewed together, Plaintiffs' allegations sufficiently plead that Centerbridge exercised control over GoHealth's operations and had the ability to control the IPO. For these reasons, the Complaint adequately states control person claims as to Centerbridge, and Centerbridge's motion to dismiss should be denied.

---

[1] "Centerbridge" collectively refers to Defendants Centerbridge Partners, L.P. ("Centerbridge Partners"), CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Centerbridge Associates III, L.P., and CCP III Cayman GP Ltd. Centerbridge Partners is a New York-based private equity firm. ¶37. (Paragraph cites ("¶__") are to the Complaint unless noted otherwise.) Defendants CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC are investment vehicles created for the benefit of Centerbridge Partners to house its ownership of GoHealth Class A and Class B stock. ¶38. Defendant Centerbridge Associates III, L.P. is the general partner of CCP III AIV VII Holdings, L.P. and CB Blizzard Co-Invest Holdings, L.P. ¶39. Defendant CCP III Cayman GP Ltd. is the general partner of Centerbridge Associates III, L.P. and the sole manager of Blizzard Aggregator, LLC. ¶40.

## II.    STATEMENT OF FACTS REGARDING CENTERBRIDGE[2]

Centerbridge is a global private investment firm with over $25 billion in assets.  ¶66. Centerbridge was the primary beneficiary and private equity sponsor of GoHealth's July 17, 2020 IPO.  *Id.*  Before the IPO, on September 13, 2019, Centerbridge indirectly acquired 100% of the equity in GoHealth's operating entity, Norvax, LLC ("Norvax"[3]), effectively taking control of the Company along with its co-founders, Defendants Brandon M. Cruz ("Cruz") and Clinton P. Jones ("Jones") (Cruz and Jones are, collectively, GoHealth's "Founders").  ¶67.

In connection with the IPO, GoHealth undertook certain transactions to reorganize its corporate structure and determine how the IPO proceeds would be applied or distributed across the various interested parties ("Transactions").  ¶77.  The Transactions included GoHealth entering into a variety of additional agreements that impacted the Company's and its subsidiaries' ability to act, including a Stockholder Agreement with Centerbridge and NVX Holdings, Inc. ("NVX Holdings").[4]  This Stockholder Agreement provided Centerbridge and NVX Holdings with substantial control over the Company and required each party to the agreement to, *inter alia*, vote all outstanding shares in favor of Centerbridge directors at any annual or special meeting of

---

[2]    Plaintiffs limit their statement of facts in this brief to matters involving Centerbridge.  For a more fulsome statement of facts, Plaintiffs respectfully refer the Court to Plaintiffs' memorandum of law in opposition to the other Defendants' motion to dismiss, filed contemporaneously herewith.

[3]    GoHealth's operations are carried out by Norvax, which is a wholly owned subsidiary of Blizzard Midco, LLC, which, in turn, is a wholly owned subsidiary of GoHealth Holdings.  ¶2.  GoHealth Holdings was previously known as Blizzard Parent, LLC until September 2019, when Centerbridge acquired 100% of the equity in GoHealth's operating entity – Norvax – indirectly through GoHealth Holdings (which had been formed for the purpose of this acquisition) for $807 million in cash and $306 million in equity.  ¶¶3, 41.

[4]    NVX Holdings is a Delaware corporation based in Chicago that is controlled by the Founders for their benefit and to house their ownership of GoHealth Class A and Class B stock.  ¶¶36, 83.

stockholders in which directors are elected. ¶83; CB Mem., Ex. A, Form S-1 (filed July 8, 2020) at 160.

Following completion of the Transactions and the IPO, GoHealth remained a controlled company, with Centerbridge and the Founders owning the majority of GoHealth stock and collectively controlling approximately 71% of the voting power represented by all classes of GoHealth stock. ¶¶35, 84. After the IPO, GoHealth was considered a "controlled company" under the listing rules of the NASDAQ because NVX Holdings and Centerbridge had more than 50% of the voting power for the election of directors to GoHealth's Board of Directors ("Board"). ¶144. Centerbridge and the Founders continued to exercise significant control over its Board, including: (a) "all matters requiring stockholder approval"; (b) the election and removal of directors; (c) the size of GoHealth's Board; (d) any amendment of GoHealth's certificate of incorporation or bylaws; (e) any approval of significant corporate transactions (including a sale of all or substantially all of GoHealth's assets); and (f) "significant control over [GoHealth's] business, affairs, and policies, including the appointment of [GoHealth's] management." ¶¶3, 35, 145. Stated directly, Centerbridge possessed and exercised control over GoHealth before, during, and after the IPO. ¶85.

### III. THE COMPLAINT STATES CONTROL PERSON CLAIMS AGAINST CENTERBRIDGE, AND ITS MOTION TO DISMISS SHOULD BE DENIED

#### A. Legal Standard

"Claims under § 15 need only satisfy federal notice pleading standards." *Premier Capital Mgmt., L.L.C. v. Cohen*, 2003 WL 21960357, at *11 (N.D. Ill. Aug. 15, 2003).[5] The Seventh

---

[5] Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

Circuit has set forth a two-prong test for control person liability[6]: "(1) that the defendant actually exercised general control over the operations of the entity [that is liable for a primary violation]; and (2) that the defendant had the power or ability to control the specific acts constituting the primary violation." *Id.* (finding allegations that alleged control person actively participated in and controlled decisions of board of directors, helped prepare and/or review an information statement, and held a security interest in controlled entity's assets "are enough to survive a motion to dismiss"). The Seventh Circuit has also emphasized that control person liability is "remedial, to be construed liberally, and requiring only some indirect means of discipline or influence short of actual direction to hold a control person liable." *SEC v. Winemaster*, 2021 WL 1172773, at \*29 (N.D. Ill. Mar. 29, 2021) (quoting *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 880 (7th Cir. 1992)).

      **B.**    **Centerbridge's Motion to Dismiss Should Be Denied Because Plaintiffs Have Stated Claims for Primary and Control Person Liability Under the Securities Act**

          **1.**    **Plaintiffs State Predicate §11 Claims**

Centerbridge first seeks dismissal of Plaintiffs' §15 claims in their entirety based on a purported failure to plead a primary §11 violation. CB Mem. at 5. As discussed in Plaintiffs' opposition to GoHealth and the Underwriter Defendants' motion to dismiss filed contemporaneously herewith, however, the Complaint adequately states §11 claims against GoHealth, the Individual Defendants, and the Underwriter Defendants. Therefore, Centerbridge's

---

[6]   Control person liability under §15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77o, and §20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78t(a), are "parallel" in that, "[t]hough the two sections are not identical, the analysis applied to them is the same," *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, 2006 WL 2787520, at \*24 (N.D. Ill. Sept. 22, 2006). Notably, the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 do not apply to claims brought under the Securities Act. *Premier Capital*, 2003 WL 21960357, at \*2.

- 4 -

primary argument for dismissal of Plaintiffs' §15 claim fails. *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *8 (N.D. Ill. Sept. 23, 2019) (Coleman, J.) (denying motion to dismiss control person claim after underlying claim survived motion to dismiss).

### 2. The Complaint Adequately Alleges Centerbridge Is Subject to Control Person Liability Under §15 of the Securities Act

In addition to stating primary §11 claims, Plaintiffs also properly allege control person liability against Centerbridge. The Complaint satisfies the Seventh Circuit's two-pronged test for control person liability, which requires allegations: (a) that the defendant actually exercised general control over the operations of the entity liable for a primary violation; and (b) stating the control person's power or ability to control the alleged misconduct that gave rise to liability. *See Premier Capital*, 2003 WL 21960357, at *11. The Complaint alleges numerous facts constituting indicia of Centerbridge's general control over GoHealth's operations as well as Centerbridge's specific ability to control the IPO.

### a. Centerbridge Exercised General Control over GoHealth's Operations

Centerbridge exercised significant general control over GoHealth's operations before, during, and after the IPO. ¶¶85, 145. For example, citing specific language in the Registration Statement, the Complaint alleges that: (i) Centerbridge exercised control over all matters requiring stockholder approval, including the election and removal of directors and the size of GoHealth's Board; (ii) Centerbridge exercised control over any amendment of GoHealth's certificate of incorporation or bylaws; (iii) Centerbridge exercised control over any approval of significant corporate transactions (including a sale of all or substantially all of GoHealth's assets); and (iv) members of GoHealth's Board were appointed by and/or affiliated with the Founders and Centerbridge prior to the IPO. ¶¶35, 145.

- 5 -

Notably, the Registration Statement explicitly discussed Centerbridge's control over the Company, both prior to, during, and following the IPO. According to the Registration Statement:

> Upon consummation of this offering, the Founders and Centerbridge will control, in the aggregate, approximately 70.8% of the voting power represented by all our outstanding classes of stock. As a result, the Founders and Centerbridge will *continue to* exercise significant influence over all matters requiring stockholder approval, including the election and removal of directors and the size of our board, any amendment of our amended and restated certificate of incorporation or bylaws and any approval of significant corporate transactions (including a sale of all or substantially all of our assets), and *will continue to have significant control over our business, affairs and policies*, including the appointment of our management. The directors that the Founders and Centerbridge elect have the authority to vote to authorize the Company to incur additional debt, issue or repurchase stock, declare dividends and make other decisions that could be detrimental to stockholders.
>
> We expect that members of our board *will continue to* be appointed by and/or affiliated with the Founders and Centerbridge who will have the ability to appoint the majority of directors. The Founders and Centerbridge can take actions that have the effect of delaying or preventing a change of control of us or discouraging others from making tender offers for our shares, which could prevent stockholders from receiving a premium for their shares. These actions may be taken even if other stockholders oppose them. The concentration of voting power with the Founders and Centerbridge may have an adverse effect on the price of our Class A common stock. The Founders and Centerbridge may have interests that are different from yours and may vote in a way with which you disagree and that may be adverse to your interests.

¶145.

Plaintiffs also allege additional facts constituting indicia of actual control. For example, Centerbridge entered into a Stockholders Agreement prior to the IPO that required Centerbridge to give prior approval for various corporate actions. ¶¶35, 83, 145. Centerbridge could also take actions that would have the effect of "delaying or preventing a change of control of us or discouraging others from making tender offers for our shares, which could prevent stockholders from receiving a premium for their shares." ¶145. The consummation of the IPO and the Stockholder Agreement provided Centerbridge (and NVX Holdings) with substantial control over the Company and required each party to the Agreement to vote all outstanding shares in favor of

- 6 -

Centerbridge and Founders directors at any annual or special meeting of stockholders in which directors are elected.  ¶83; CB Mem., Ex. A at 160.  The Stockholder Agreement also provided Centerbridge with even greater, disproportionate control over the Company by, for example, providing that Centerbridge had the power to: (i) appoint two directors as long as Centerbridge beneficially owned, directly or indirectly, just *10%* of the Company's Class A common stock; and (ii) designate two additional independent directors as long as Centerbridge beneficially owned, directly or indirectly, at least 20% of the Company's Class A common stock.  ¶83; CB Mem., Ex. A at 190.  As a result, Centerbridge could effectively designate or control nearly half of GoHealth's Board.

These allegations are sufficient to allege Centerbridge's control of GoHealth.  *Premier Capital*, 2003 WL 21960357, at *11 (allegations that control person "actively participated in and controlled decisions of the Board of Directors" were sufficient to establish general control); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1022 (N.D. Ill. 2004) (allegations that control person placed loyal associates in leadership positions and "controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public" were sufficient to establish control); *Lindelow v. Hill*, 2001 WL 830956, at *9 (N.D. Ill. July 20, 2001) (allegations of control persons' exercise of "general control over the operations of" a controlled entity and high-level positions which "necessarily involve[d] general oversight and direction" were sufficient to establish general control).

**b.**      **Centerbridge Also Had the Power or Ability to Specifically Control the IPO**

Centerbridge was a controlling shareholder and primary beneficiary of the IPO, as well as its private equity sponsor, and controlled GoHealth at the time of the IPO.  ¶¶41, 67, 145; *see also* CB Mem., Ex. A at 69-70.  Prior to the IPO, in September 2019, Centerbridge Partners acquired

100% of GoHealth's operating entity – Norvax – for $807 million in cash and $306 million in equity, and effectively took control of the Company along with its Founders.  ¶¶3, 41, 67.[7] Plaintiffs therefore allege facts sufficient to demonstrate Centerbridge's control over the IPO and its power to influence the statements made in the Registration Statement.  *Lindelow*, 2001 WL 830956, at *9 (allegations of control over corporation that issued press release were sufficient to allege the power to influence the statements made in the press release); *Premier Capital*, 2003 WL 21960357, at *11 ("Claims under § 15 need only satisfy federal notice pleading standards."); *In re Glob. Crossing Ltd. Sec. Litig.*, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) (§15 claims are subject to a notice pleading standard and must only provide defendants "fair notice of [plaintiffs'] theory of control").

### 3. Centerbridge's Arguments Should Be Rejected and Its Motion to Dismiss Should Be Denied

#### a. Centerbridge's Arguments Raise Issues of Fact that Cannot Be Resolved at the Pleading Stage

As a preliminary matter, Centerbridge's control person arguments should be rejected because they present questions of fact that cannot be resolved at this stage.  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015) (whether CEO was a control person for purposes of statements made in press releases was "an inherently fact-bound inquiry"); *Spiegel*, 382 F. Supp. 2d at 1022 ("Determination of whether an individual defendant is a controlling person . . . is a question of fact that cannot be determined at the pleading stage." (quoting *In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (same))); *In re: Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) ("Control is a question of fact that will not ordinarily be

---

[7]    The Form S-1 attached to Centerbridge's motion to dismiss also makes clear that Centerbridge was the beneficial owner of 100% of the Company's Class A Common Stock and 35.5% of the Company's Class B Common Stock immediately before the IPO was completed.  CB Mem., Ex. A at 195.

resolved summarily at the pleading stage. The issue raises a number of complexities that should not be resolved on such an underdeveloped record."); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at \*11-12 (S.D. Tex. Jan. 19, 2016) ("limited" allegations of control regarding stock ownership, ability to elect a majority of a board of directors, a stockholder agreement, affiliated directors, self-identification as a "controlled company," and allegations of entities collectively exercising majority voting power nonetheless raised "highly fact intensive" issues and were sufficient to satisfy the notice pleading requirements of Rule 8).

For example, Centerbridge's arguments discounting Plaintiffs' allegations regarding Centerbridge's right to designate Board members (CB Mem. at 8-9), minority share ownership (*id.* at 6-8), and stockholder agreement regarding election of directors and approval of significant corporate transactions (*id.* at 9-10) do not raise "controlling questions of law but are, instead, issues regarding the Court's application of established legal principles to the factual allegations in this lawsuit." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 949065, at \*3 (S.D. Tex. Mar. 14, 2016). In *Cobalt*, private equity sponsors sought certification of the following issues for interlocutory appeal:

1. Whether a complaint can state a claim for control-person liability merely by alleging that a private-equity sponsor owned a minority of a company's shares and appointed a minority of the company's board.

2. In the absence of any allegations that separate private-equity sponsors acted jointly to control the primary defendant, whether such separate sponsors may be treated as a group for purposes of determining whether a complaint states a control-person claim against each of them.

*Id.* In rejecting the private equity sponsors' request for interlocutory appeal, the district court found "the issues the [private equity sponsors] want certified for interlocutory appeal are not controlling questions of law but are, instead, issues regarding the Court's application of established legal principles to the factual allegations in this lawsuit." *Id.* The district court reiterated that

whether a defendant is a §15 control person "is an intensely factual question." *Id*. The district court noted that allegations regarding the right to select members of board committees, allegations of collective stock ownership, and a stockholder agreement regarding election of directors and approval of significant corporate transactions presented questions of fact rather than issues of controlling law. *Id.* Here, the Complaint's similar allegations regarding Centerbridge's Board member designations (¶¶83, 145), collective stock ownership (¶¶35, 145), and stockholder agreement (*id.*) likewise present questions of fact inappropriate for resolution on the pleadings, and Centerbridge's motion to dismiss should be denied.

### b. Control Person Liability Does Not Require Direct Investment

Centerbridge first argues that Centerbridge Partners, Centerbridge Associates III, L.P., and CCP III Cayman GP Ltd. should be dismissed because purportedly none of these entities were direct investors in GoHealth. CB Mem. at 6 (citing Registration Statement at ii). Even if this factual assertion is true, however, "control" does not require direct investment. The United States Securities and Exchange Commission defines "control" to mean the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, ***whether through the ownership of voting securities, by contract, or otherwise***." 17 C.F.R. §230.405.

Along similar lines, Centerbridge seeks to skirt responsibility for its role in conducting the IPO by claiming that it was not actually a shareholder of GoHealth at all, but rather its wholly owned subsidiary Norvax. CB Mem. at 6-7. But Plaintiffs' allegations that Centerbridge "effectively took control of the Company along with its founders" through Centerbridge's acquisition of Norvax are sufficient to allege control person liability. ¶¶3, 37-41, 50, 67; *Glob. Crossing*, 2005 WL 1875445, at *4 (collecting cases and noting that complete ownership is a basis for finding control person liability); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 735

F. Supp. 587, 591 (S.D.N.Y. 1990) (finding control person liability adequately alleged because as the sole shareholder of the subsidiary, the parent corporation "had the potential power to influence and direct the activities of" its subsidiary).

> ### c.    Collective Stock Ownership of Minority Shareholders
> ### May Give Rise to §15 Control Person Liability

Centerbridge next argues that "following the IPO, CCP III became a *minority* shareholder of GoHealth" and that minority interests are insufficient to confer control.  CB Mem. at 7-8. Acknowledging Plaintiffs' combined majority ownership interest arguments, Centerbridge argues "[t]he mere fact that their combined interests form a majority is not dispositive of the question of control."  *Id.* at 8.  This argument fails because there is no per se rule immunizing majority shareholder groups as control persons simply because their constituent parts have less than 50% voting control individually, especially where a plaintiff alleges myriad facts demonstrating control of the type pled in the Complaint.  Indeed, §11 liability may attach when the registration statement warns investors of collective control of the group of shareholders.  *See, e.g.*, *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *19-20 (S.D.N.Y. Apr. 3, 2012).  In *McKenna*, the court found the "actual control" prong of a §15 claim was met where risk disclosures warned investors that two minority shareholders:

> by virtue of their collective stock ownership . . . act together in a way that would effectively "control" [the company]. . . .  [T]hat disclosure plausibly supports the inference that [the collective group of minority shareholders] used its pre-IPO collective 70.5 percent voting power to approve of the IPO – *i.e.,* to "control" by virtue of its collective vote whether [the company] would undertake the IPO.

*Id*. at *20.  *See also In re AFC Enters., Inc. Sec. Litig*., 348 F. Supp. 2d 1363, 1382 (N.D. Ga. 2004) (upholding §15 claims against a 47.8% shareholder that had "a controlling interest in the direction of AFC [because] [s]ix of the eleven directors" were "representatives of [the minority shareholder]").

- 11 -

Centerbridge relies on *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658 (N.D. Tex. 2013), to argue minority interests are insufficient to confer control. CB Mem. at 7-8. But *Kosmos* merely stands for "the proposition . . . that a party that has always held only a minority share of the company does not, by virtue of that fact ***alone***, possess 'control' over that company." *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016) (interpreting *Kosmos*). But Centerbridge is not alleged to have "always held only a minority share" of GoHealth; in fact, prior the IPO, in September 2019, Centerbridge acquired 100% of GoHealth's operating entity – Norvax – and effectively took control of the Company along with its Founders. ¶¶3, 41, 67; *see also* CB Mem., Ex. A at 195.

### d. The Stockholder Agreement Supports the Complaint's Allegations of Control

Centerbridge next argues that CCP III's ability to designate four directors pursuant to the Stockholder Agreement does not confer "actual control." CB Mem. at 8-9. Centerbridge's arguments are undermined by the plain language of the Registration Statement, which indicates Centerbridge would ***continue to*** exercise significant control over the election, removal, and appointment of directors after the IPO, necessarily raising the inference that Centerbridge had such control ***prior to*** the IPO. ¶145 ("As a result [of the IPO], the Founders and Centerbridge will ***continue to*** exercise significant influence over all matters requiring stockholder approval, including the election and removal of directors and the size of our board . . . . We expect that members of our board ***will continue to*** be appointed by and/or affiliated with the Founders and Centerbridge who will have the ability to appoint the majority of directors."). Moreover, placing loyalists in leadership positions ***is*** indicia of actual control. *Spiegel*, 382 F. Supp. 2d at 1022 (allegations that control person placed loyal associates in leadership positions supported allegations of control).

- 12 -

Centerbridge next claims that because the Stockholders Agreement required that CCP III give prior approval for certain corporate actions, there is no indication of actual control. CB Mem. at 9-10 (citing ¶¶35, 145). These allegations are certainly relevant to the issue of control and, at the least, raise fact questions that cannot be resolved at the pleading stage. *See Cobalt*, 2016 WL 215476, at \*11-12 ("limited" allegations of control regarding stock ownership, ability to elect a majority of a board of directors, a stockholder agreement, affiliated directors, self-identification as a "controlled company," and allegations of entities collectively exercising majority voting power nonetheless raised "highly fact intensive" issues and sufficiently satisfied the notice pleading requirements of Rule 8).

### e. The Complaint Does Not Rely on NASDAQ or NYSE Rules to Establish Control

Finally, Centerbridge argues that GoHealth's "controlled company" status under NASDAQ rules is "largely irrelevant" in deciding the issue of control for purposes of §15 liability. CB Mem. at 10-11 (citing *Kosmos*, 955 F. Supp. 2d at 676-77). But collective stock ownership can easily (as it does here) support the inference that a group of minority shareholders used its collective voting power to approve of the IPO, "*i.e.*, to 'control' by virtue of its collective vote whether [the company] would undertake the IPO." *McKenna*, 2012 WL 1131935, at \*20. Regardless, Plaintiffs do not base their control person liability claims on NASDAQ rules; instead, Plaintiffs base their control person liability claims on Centerbridge's general and specific control of GoHealth prior to, during, and after the IPO, as clearly set forth in the language of the Registration Statement.

## IV. CONCLUSION

For the above stated reasons, Centerbridge's motion to dismiss should be denied in its entirety.

- 13 -

DATED:  June 14, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)

_s/ Brian E. Cochran_
BRIAN E. COCHRAN

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS (admitted _pro hac vice_)
CHRISTIAN G. MONTELIONE (admitted _pro hac vice_)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
cmontelione@rgrdlaw.com

_Lead Counsel for Lead Plaintiffs_

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

- 14 -

- 15 -

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

*Additional Counsel for Lead Plaintiffs*

- 15 -

- 16 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 14, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Brian E. Cochran*
BRIAN E. COCHRAN

- 16 -