UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) ) | Case No.  1:20-cv-05593 |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | Judge Sharon Johnson Coleman |
| ALL ACTIONS. | ) ) ) | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO STRIKE**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................2

      A.    Legal Standards........................................................................................2

      B.    GoHealth's 2020 10-K Should Be Stricken Because It Is Neither Referred to in the Complaint nor Central to Plaintiffs' Claims ..............................................4

      C.    The 2020 10-K Cannot Be Judicially Noticed for the Truth of the Facts Stated in It, upon Which Defendants Rely, in Order to Draw Inferences in Their Favor........................................................................................................6

III.    CONCLUSION.....................................................................................................9

Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rules of Civil Procedure 12(f), to (1) strike Exhibit B [ECF No. 74-2 at 549-673] ("2020 10-K") filed by Defendants GoHealth, Inc. ("GoHealth" or "Company"), Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, NVX Holdings, Inc., Goldman Sachs & Co LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC (collectively, "Defendants") in connection with their motion to dismiss [ECF No. 73] ("Motion to Dismiss") the Consolidated Class Action Complaint [ECF No. 66] ("Complaint") and (2) strike all references to and assertions based on the 2020 10-K made in the Defendants' memorandum of law supporting the Motion to Dismiss [ECF No. 74] ("Memorandum" or "Mem.") and any reply memorandum of law submitted in support of that motion.

## I.    INTRODUCTION

In connection with their Motion to Dismiss, Defendants attached GoHealth's 2020 10-K to their Memorandum, in which they rely on the 2020 10-K to make fact-based arguments that they claim mandate dismissal. For example, Defendants argue the Complaint should be dismissed because "GoHealth's 2020 10-K demonstrated . . . LTV increased . . . post-IPO" in 2020. Mem. at 21. Defendants' fact-based use of the 2020 10-K contrasts Plaintiffs' allegations that GoHealth's key financial metric, "a ratio that GoHealth calls LTV/CAC," *decreased* as a consequence of GoHealth's rapid carrier expansion plan that was not disclosed in the Registration Statement. ¶¶18, 64, 88, 89(d), 91, 100(e), 100(g), 100(i), 114.[1] Moreover, Defendants' use of the 2020 10-K is based on a nuanced sleight of hand. This is because Defendants use the 2020 10-K to argue facts about LTV. Mem. at 21. But this argument not only ignores CAC, it also ignores

---

[1]    Citations to "¶__" herein refer to paragraphs of the Complaint.

that the 2020 10-K makes clear that GoHealth suffered a "decrease in LTV/CAC" for 2020. *See Defs. Ex. B at 61.* Defendants' selective reading aside, the 2020 10-K is extraneous to the Complaint and neither of the two exceptions that would permit the Court to consider extraneous material without converting the Motion to Dismiss to one for summary judgment – incorporation by reference or judicial notice – apply in this case.

The Court should grant Plaintiffs' motion to strike for two reasons. First, the 2020 10-K was filed with the U.S. Securities and Exchange Commission ("SEC") on March 16, 2021, *after* the filing of the Complaint on February 25, 2021, and almost six months *after* this action commenced on September 21, 2020. It is not incorporated by reference and is not attached to, referred to, or central to the Complaint. Second, courts generally are not permitted to take judicial notice of extraneous SEC filings for the truth of the statements contained in them. In this case, Defendants use the 2020 10-K to make fact-based arguments that they want the Court to take as true to justify granting their Motion to Dismiss. Because neither of the two exceptions apply, the Court should strike the 2020 10-K and all references to it that appear in Defendants' Memorandum.

## II. ARGUMENT

The Court should strike all references to GoHealth's 2020 10-K from Defendants' Memorandum, and any subsequent reply memorandum of law, because it is neither referred to in the Complaint nor central to Plaintiffs' claims and may not be judicially noticed for the truth of the facts stated in it, upon which Defendants rely, in order to draw inferences in their favor.

### A. Legal Standards

When evaluating the sufficiency of a complaint in the face of a Rule 12(b)(6) challenge, a court must "view [the complaint] in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *see also Shield Techs.*

*Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 917 (N.D. Ill. 2012) ("The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.").[2] Thus, "[g]enerally, in deciding a motion to dismiss, courts look only to matters within the four corners of the complaint," *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *10 (N.D. Ill. Feb. 13, 2013) (citing FED. R. CIV. P. 12(d) and *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002)), which includes "any written instruments attached to the complaint as exhibits," *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 2007 WL 845046, at *3 (N.D. Ill. Mar. 16, 2007).

Where documents attached to a motion to dismiss are outside of a complaint's four corners and do not otherwise qualify for either of the two exceptions discussed below, a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure is appropriate. *See Hospira*, 2013 WL 566805, at *11; FED. R. CIV. P. 12(f) (permitting the court "on its own" or "on motion made by a party" to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). "While Rule 12(f) does not explicitly authorize a motion to strike documents other than pleadings, courts routinely entertain such motions" under their "inherent power to strike impermissible filings." *Hospira*, 2013 WL 566805, at *11 (collecting cases).

Only two exceptions permit the Court, at this stage, to consider materials outside of the Complaints' four corners: incorporation by reference or "judicial notice." *Id.* at *10. "If the court looks to documents other than the complaint and those that fall within these exceptions," then, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, "the court must convert the motion to one for summary judgment under Rule 56." *Id.*

---

[2]   Unless otherwise stated, all emphases and alterations are added and citations and internal quotation marks are omitted.  Additionally, all capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Complaint.

**B.      GoHealth's 2020 10-K Should Be Stricken Because It Is Neither Referred to in the Complaint nor Central to Plaintiffs' Claims**

Under the "incorporation by reference" exception, a district court may consider documents attached to the motion to dismiss only "if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). But "the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." *Albany Bank & Tr. Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). Thus, the incorporation by reference exception "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In the context of securities cases, courts have allowed SEC filings attached to motions to dismiss to be considered when, for example, they are the "source of information" upon which the claim relies, such as the source of the "purportedly materially false statements, misrepresentations, omissions, and/or corrective disclosures that are the basis for Plaintiffs' securities claims and alleged losses." *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894-95 (N.D. Ill. 2020). However, when it is not clear whether a securities complaint relies on a particular document, courts have refused to consider those documents and disregarded all references to them. *See, e.g.*, *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2015 WL 1478565, at *4-5 (E.D. Wis. Mar. 31, 2015) ("Certain allegations in the Amended Complaint may contain similar or identical to information within the Form 4s submitted by defendants. However, it is not clear from the pleadings whether plaintiffs used the Form 4s as the source of their information. Nothing in the Amended Complaint suggests that plaintiffs relied on the Form 4s to form the basis of any claim.").

The Complaint does not rely, because it could not have relied, on GoHealth's 2020 10-K. Indeed, the 2020 10-K was not filed with the SEC until March 16, 2021. *See* Mem. at 10. The

- 4 -

Complaint, filed on February 25, 2021, *ipso facto* neither references nor quotes the 2020 10-K. For the same reason, neither can the 2020 10-K properly be considered "central" to the Complaint. It is clear, therefore, that the "incorporation by reference" exception requires that the document in question be cited or referenced in the complaint in addition to being central to it. *See, e.g.*, *Mueller*, 880 F.3d at 895 ("It is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim.); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("What makes it appropriate for us to consider the documents . . . is that [plaintiff] has not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims."). Because the 2020 10-K is not both referenced or quoted in *and* central to the Complaint, it does not fall within the "incorporation by reference" exception and should be stricken from Defendants' Memorandum. *See Mueller*, 880 F.3d at 895.

Even assuming, *arguendo*, that the 2020 10-K existed before the filing of the Complaint, the 2020 10-K still could not properly be considered "central" to the Complaint because it neither is the source of a right upon which Plaintiffs base their claims nor speaks to any contractual agreement or relationship between Plaintiffs and Defendants that otherwise would impact Plaintiffs' claims. *See In re Shopko Sec. Litig.*, 2002 WL 32003318, at *1 (E.D. Wis. Nov. 5, 2002); *Mueller*, 880 F.3d at 892, 895; *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). Plaintiffs' claims are not based on the 2020 10-K, and so the 2020 10-K could not be "potentially . . . dispositive" of them. *Tierney*, 304 F.3d at 739. And because Plaintiffs' claims are based on false statements and omissions in the Registration Statement under §11 of the Securities Act of 1933, the 2020 10-K could not be the "source" of those statements or omissions

forming the basis of Plaintiffs' claims. *See Fryman*, 462 F. Supp. 3d at 894-95; *Kohl's Corp.*, 2015 WL 1478565, at *4.

Accordingly, because the "incorporation by reference" exception does not apply, the 2020 10-K and references and assertions based on it in Defendants' Memorandum should be stricken.

**C.**     **The 2020 10-K Cannot Be Judicially Noticed for the Truth of the Facts Stated in It, upon Which Defendants Rely, in Order to Draw Inferences in Their Favor**

In resolving a motion to dismiss, without converting it to one for summary judgment, a court is also permitted to consider a document attached to it that otherwise is extraneous to a complaint if the document qualifies for judicial notice. *See Hospira, Inc.*, 2013 WL 566805, at *10. As relevant here, "a court may take judicial notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," such as "matters of public record." *Id.* While courts have held that SEC filings can be subject to judicial notice because they are publicly filed with the SEC, "a court may take 'judicial notice of documents filed with the SEC for the purpose of showing what statements the documents contain, but not for the proof of the facts stated therein.'" *George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009) (quoting *Riggs Partners, LLC v. Hub Grp.*, 2002 WL 31415721, at *1 (N.D. Ill. Oct. 25, 2002)); *see also Hospira, Inc.*, 2013 WL 566805, at *11-12 (same); *Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1025 n.3 (N.D. Ill. 2010) (same); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th Cir. 1995) (declining to take judicial notice of purported fact stated in a 10-K because there was "considerable argument over the significance of the 10-K" and the "fact in question . . . was not capable of accurate and ready determination by resort to the 10-K").

Thus, judicial notice of statements within SEC filings is taken typically only when done to determine what disclosures the SEC filings made, but not for the truth of the disclosures made.

*See, e.g.*, *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 807-821 (N.D. Ill. 2017) (in denying motion to dismiss, considering defendant company's Forms 10-K attached thereto only for purposes of noting what disclosures they contained); *In re Shopko Sec. Litig.*, 2002 WL 32003318, at *2 (declining to take judicial notice of SEC filings because defendants requested that court do so "for the truth of the disclosures contained therein, not as evidence of what disclosures defendants made").

Defendants' use of the 2020 10-K in this case is the subject of clear dispute, making the 2020 10-K inappropriate for judicial notice for any purpose. First, all of the data in the 2020 10-K, including that to which Defendants cite (*see* Mem. at 10, 21, 32), cannot be assumed accurate because GoHealth's personnel reported it. *See Kohl's Corp.*, 2015 WL 1478565, at *5 (striking and declining to take judicial notice of amounts of stock, reported in Forms 4, that defendants bought or sold because "Plaintiffs have not had the opportunity to engage in discovery to disprove these numbers. [Defendant's] personnel reported those amounts, and it is impossible at this stage . . . to determine whether they are correct").

Second, even if data in the 2020 10-K is presumptively accurate, the purposes for which Defendants rely on the 2020 10-K ultimately bear no relevance or significance to Plaintiffs' claims. *See Hennessy*, 69 F.3d at 1354 (affirming district court's decision not to take judicial notice of number of employees reported in company's Form 10-K because there was "considerable argument over the significance of the 10-K form"); *Gas Tech. Inst. v. Rehmat*, 2006 WL 3743576, at *15 (N.D. Ill. Dec. 15, 2006) (refusing to take judicial notice of information that was "irrelevant" to determining whether plaintiffs had adequately alleged a cause of action). Indeed, Defendants use the 2020 10-K to make the fact-based argument that GoHealth's LTV increased during 2020 and after the Company's IPO. *See* Mem. at 10, 21, 32. But LTV only tells half the story.

Specifically, the Complaint focuses not on LTV, but on a key financial ratio: LTV/CAC. *See, e.g.*, ¶58 ("the best or key metric for assessing [GoHealth's] overall business profitability and efficiency, and the performance of its integrated platform, is . . . LTV/CAC"); ¶97 ("Our integrated technology platform, business processes, data and highly skilled and trained agents enable us to rapidly scale while improving our unit economics, as measured by LTV/CAC"). This critical metric, as discussed in the Registration Statement, measures "the Company's commissions relative to its customer acquisition cost" and is, therefore, "a type of profitability metric that generally refers to how much of a return GoHealth expects on its consumer acquisition investments." *See, e.g.*, ¶¶13-15, 18, 58, 60-65, 88, 89, 91, 93, 97, 100, 114. To that end, the Complaint not only alleges that LTV was negatively impacted by GoHealth's undisclosed shift in business strategy, but also that CAC increased due to, among other things, increased costs associated with rapidly adding new carriers. *See, e.g.*, ¶64 (rapid expansion not only reduced commissions, but also GoHealth's marketing support, and increased agent training costs); ¶118 (reporting a 330% increase in marketing and advertising expenses as GoHealth added several new carriers in 2Q2020).

Importantly, the 2020 10-K *confirms* Plaintiffs' allegations and states there was a "decrease in LTV/CAC" for 2020. Defs. Ex. B at 61. Thus, Defendants' use of the 2020 10-K to argue facts only about GoHealth's LTV creates a misleading impression of GoHealth's post-IPO financial performance. By asking the Court to consider statements regarding *only* LTV in the 2020 10-K in order to counter factual allegations in the Complaint tied to LTV/CAC, Defendants not only impermissibly ask the Court to consider the 2020 10-K for truth of its contents, but also for an improper purpose that excludes the relationship between LTV and CAC and ignores the fact that LTV/CAC declined in 2020.

Accordingly, by using inaccurate, fact-based arguments from the 2020 10-K as justification for moving to dismiss the Complaint, Defendants have impermissibly "urge[d] the [C]ourt to go beyond viewing the facts alleged in the [C]omplaint in a light favorable to [Plaintiffs] to instead" draw inferences in Defendants' favor and resolve a question of fact. *In re Quadrant 4 Sys. Corp.*, 2020 WL 375591, at *5 (Bankr. N.D. Ill. Jan. 22, 2020) (denying motion to dismiss). Plaintiffs' "responsibility to state a claim to relief that is plausible on its face does not imply that, at this stage, it must be decided whose version to believe, or which version is more likely than not. Such analysis would be improper on a motion to dismiss" and "[i]nstead . . . should be raised in an answer to the Complaint." *Id.*; *see also Ingenhutt v. State Farm Inv. Mgmt. Corp.*, 2017 WL 1398646, at *6 (C.D. Ill. Apr. 18, 2017) (denying motion to dismiss, rejecting defendant's request for judicial notice of SEC filings (prospectuses) that plaintiffs claimed were subject to reasonable dispute, and noting "[t]he parties will have an opportunity to discuss or dispute the significance of the contents of these documents at later stages of the litigation, including summary judgement").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the 2020 10-K and all references to and assertions based on it in the Memorandum and any reply memorandum of law submitted in support of the Motion to Dismiss. Alternatively, if the Court considers the 2020 10-K in resolving the Motion to Dismiss, Plaintiffs respectfully request that the Court convert the Motion to Dismiss into one for summary judgment under Rule 56 and permit Plaintiffs to take discovery pertaining to such references and assertions. Plaintiffs also respectfully request any additional and other relief as the Court deems just and proper.

- 9 -

DATED:  June 14, 2021

ROBBINS GELLER RUDMAN
   & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)


                    *s/ Brian E. Cochran*
                    BRIAN E. COCHRAN

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ROBERT J. ROBBINS (admitted *pro hac vice*)
CHRISTIAN G. MONTELIONE (admitted *pro
hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
cmontelione@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

*Additional Counsel for Lead Plaintiffs*

- 10 -

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 14, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Brian E. Cochran*
BRIAN E. COCHRAN

- 11 -