**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re GO HEALTH, INC. SECURITIES LITIGATION | Case No. 1:20-cv-05593 |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | Judge Sharon Johnson Coleman |
| ALL ACTIONS. | |

<u>**CENTERBRIDGE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**</u>

**PRELIMINARY STATEMENT**[1]

Plaintiffs' Response in Opposition to Centerbridge's Motion to Dismiss (the "Opposition") only serves to highlight the Complaint's many defects, including that the Complaint lacks well-pleaded allegations concerning Centerbridge and the inferences Plaintiffs draw in order to cure the pleading defects are not reasonable. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). ***First***, Plaintiffs fail to plead actual and specific control. Plaintiffs rely on conclusory allegations of collective control, but such allegations cannot withstand scrutiny in the absence of any claim that any Centerbridge defendant and any other shareholder in fact worked together to control either (a) the day-to-day operations of GoHealth, or (b) the statements made in GoHealth's Registration Statement. ***Second***, Plaintiffs' attempt to "group plead" Centerbridge as a single entity fails, particularly in light of Plaintiffs' failure to plead any allegations concerning any control wielded by ***any*** Centerbridge defendant and the fact that Centerbridge Partners, L.P., Centerbridge Associates III, L.P., and CCP III Cayman GP Ltd. had no direct investment in GoHealth. ***Finally***, in an effort to save the Complaint from dismissal, Plaintiffs resort to arguing that there are factual disputes that cannot be resolved at this stage of the proceedings. This argument defies judicial economy where there is no dispute over the key facts. CCP III[2]—the only set of Centerbridge entities which made direct investments in GoHealth—had minority stock ownership, both in terms of voting and economic power, minority board membership, and no alleged ability to run the day-to-day operations of GoHealth or to control the initial public offering ("IPO") process by itself.

---

[1] Centerbridge joins the Motion to Dismiss the Consolidated Class Action Complaint submitted by the GoHealth and Underwriter Defendants (Dkt. No. 73, 74) seeking dismissal of Lead Plaintiffs' Consolidated Complaint (Dkt. No. 66, cited as "¶ __"). Capitalized terms not otherwise defined herein have the same meaning set forth in the Complaint.

[2] The only Centerbridge entities that directly invested in GoHealth were CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC (collectively, "CCP III").

1

After discounting allegations and inferences that are conclusory, facially contradicted, and patently unreasonable, Plaintiffs are left with a Complaint that cannot satisfy even the generous pleading standards applicable to a motion to dismiss.

## ARGUMENT

**A. Plaintiffs Fail to Allege Either of the Two Essential Elements of a Section 15 Control Person Liability Claim**

### 1. Plaintiffs Fail To Allege That Centerbridge Actually Exercised General Control Over GoHealth

One of the most glaring defects of the Complaint is Plaintiffs' failure to adequately plead that Centerbridge actually controlled the operations of GoHealth. *See Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994) ("[T]he 'control person' needs to have *actually* exercised general control over the operations of the wrongdoer[.]"). In their Opposition, Plaintiffs do little more than argue that a handful of deficient and conclusory allegations are sufficient under the law, relying principally on generic language concerning the "liberal" pleading standard governing control person allegations at the dismissal stage. *See, e.g.*, Pls.' Opp. (Dkt. No. 84) at 4 (quoting general language from inapposite SEC securities fraud case where purported control person allegedly held roles as CEO, President and Chairman of the Board, and was responsible for internal accounting controls at the alleged wrongdoer) (citing *SEC v. Winemaster*, No. 19-cv-04843, 2021 WL 1172773, at *29 (N.D. Ill. Mar. 29, 2021)). None of Plaintiffs' arguments provide a basis under the law to avoid dismissal.

Plaintiffs' Opposition makes clear that the core facts alleged are undisputed. There is no dispute that CCP III is the only Centerbridge entity that is a shareholder of GoHealth, and that CCP III is a minority shareholder both in terms of economic control and voting power. *See* Pls.' Opp. (Dkt. No. 84) at 11. There is no dispute that CCP III can designate only a minority of directors to the nine-person GoHealth board. There is no dispute that two of the four Centerbridge-designated

2

directors are required under the terms of the Stockholders Agreement to be independent. *See id*. at 7. There is no dispute concerning the lack of affiliation between the Individual Defendants—members of GoHealth's management—and Centerbridge.

Moreover, in their Opposition, Plaintiffs do not point to any specific allegation that Centerbridge was involved in day-to-day or long-term decision making or planning for the operations of GoHealth. Nor do Plaintiffs cite to any specific allegation that Centerbridge and GoHealth's Founders together exercised control over the day-to-day operations of the company or the IPO process. And there are no allegations that any of the Centerbridge-designated directors breached any fiduciary duties to GoHealth at any time or in any respect. In light of these undisputed facts and pleading failures, Plaintiffs' control person claims against Centerbridge fail for a number of reasons.

*First*, Plaintiffs repeatedly fall back on allegations built on the premise that Centerbridge and the Founders *in fact* acted in concert to exercise majority control over the general operations of GoHealth. *See* Pls.' Opp. (Dkt. No. 84) at 5-7. But there is a complete failure to plead conduct by Centerbridge and the Founders that would support such allegations. Notably, the Plaintiffs have now *disclaimed* reliance on the Registration Statement's description of GoHealth as a "controlled company" by Centerbridge and NVX Holdings under stock exchange rules. *See* Pls.' Opp. (Dkt. No. 84) at 13 ("Plaintiffs do not base their control person liability claims on NASDAQ rules").

Notwithstanding the disclaimer, Plaintiffs claim throughout their Opposition that control of GoHealth was exercised "collective[ly]" by Centerbridge and the Founders both before and after the IPO, citing to language in the Registration Statement for support. *See* Pls.' Opp. (Dkt. No. 84) at 6-7, 12-13. But Plaintiffs cannot have it both ways—simultaneously disclaiming reliance on GoHealth's "controlled company" status while relying exclusively on such disclosures

3

to support their claims. As Plaintiffs themselves have now acknowledged, reliance on this language improperly conflates "control" as defined by stock exchange rules—which is determined solely by the percentage of shares held—with "control" for purposes of Section 15 liability. *Cf. In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676-77 (N.D. Tex. 2013) ("Kosmos' statement that it was a controlled company under NYSE rules is largely irrelevant in determining whether the complaint alleges control person liability.").

In another attempt to contrive collective control by Centerbridge and the Founders, Plaintiffs argue that "there is no per se rule immunizing majority shareholder groups as control persons simply because their constituent parts have less than 50% voting control individually." Pls.' Opp. (Dkt. No. 84) at 11. Whether or not this statement is accurate, it begs the question: what is a "shareholder group" and which constituents make up such a group? The Opposition is silent in this regard. To the extent Plaintiffs are implicitly relying on a stock exchange definition, *see* Nasdaq Rule 5615(c)(1) & IM-5615-5 (shareholders are considered to be a control "group" where the group possesses more than 50% of the voting power for the election of directors), Plaintiffs have already conceded such rules are inapposite for purposes of Section 15 liability. In any event, in the absence of allegations that Centerbridge and the Founders exercised actual, joint control, Plaintiffs' arguments are due no weight. *See Donohoe*, 30 F.3d at 911-12 (requiring allegations of actual control); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) ("Unless there are facts that indicate that the controlling shareholders were ***actively participating in the decisionmaking process*** of the corporation, no controlling person liability can be imposed.") (emphasis added); *LLDVF, L.P. v. Dinicola*, No. 09-1280, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010) ("[E]ach defendant's control must be evaluated separately unless there is some basis on which to consider their collective action.").

Moreover, the fact that both CCP III and the Founders are each minority shareholders of roughly equal ownership stake supports the inference that in fact neither is a control person for Section 15 purposes. *Cf. Fulton Cty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012) (where two minority shareholders held equal positions of approximately 46% stock ownership they were each prevented "from exercising unilateral control" over the company or each other for Section 20(a) liability purposes).[3] Although Plaintiffs cite to *McKenna v. Smart Technologies* to support the proposition that the requisite Section 15 control by Centerbridge and the Founders can be inferred from prospective risk disclosures in a registration statement, *McKenna* is an unpublished, out-of-Circuit decision that is inconsistent with the reasoning in *Fulton* and which does not appear to have been followed by any other court. *See McKenna v. Smart Techs. Inc.*, No. 11 Civ. 7673, 2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012). Plaintiffs' other citations are likewise inapposite. *See, e.g., In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d 1363, 1382 (N.D. Ga. 2004) (purported controller had control over the ***majority*** of the board).

***Second***, in relying on certain language in the Registration Statement, *see* Pls.' Opp. (Dkt. No. 84) at 5 (citing ¶¶85, 145), Plaintiffs do not allege how the supposed "control" allegations related to Centerbridge and the Founders as a combined group translate into the requisite control ***by Centerbridge alone*** over the general operations of GoHealth. For example, Plaintiffs disingenuously cite to the Registration Statement to allege that "Centerbridge exercised control over any amendment of GoHealth's certificate of incorporation or bylaws," *id.*, without noting that the Registration Statement refers to ***both*** Centerbridge and the Founders, and not to Centerbridge alone. Plaintiffs also fail to explain how control of the amendment of certificate of incorporation

---

[3] As noted in Plaintiffs' Opposition, courts recognize that the "control" analysis is generally the same whether applied in the context of Section 15 or Section 20 of the Securities Act. *See* Pls.' Opp. (Dkt. No. 84) at 4 n.6.

or bylaws—which Centerbridge could not exercise on its own—somehow impacted the general operations of the business. Likewise, Plaintiffs allege that "Centerbridge exercised control over any approval of significant corporate transactions," *id.*, but fail to explain how this provision—which, again, Centerbridge could not exercise on its own—resulted in any actual control by Centerbridge over the day-to-day operations of the company.

Plaintiffs' allegations are based principally on Centerbridge's rights under the Stockholders Agreement, which was plainly designed to give both Centerbridge and the Founders certain protections once the Company admitted public shareholders, but also balanced those protections as against each other so that neither Centerbridge nor the Founders could by itself control the operations of GoHealth in any particular respect. In other words, one purpose of the rights set forth under the Stockholders Agreement was to ensure that Centerbridge alone would not have the type of control Plaintiffs allege the Stockholders Agreements affords it.[4]

In the absence of allegations of actual control, Plaintiffs' arguments must fail. The cases cited by Plaintiffs are not to the contrary. *See, e.g.*, *Premier Capital Mgmt., L.L.C. v. Cohen*, No. 02 C 5368, 2003 WL 21960357, at *11 (N.D. Ill. Aug. 15, 2003) (alleged control person was member of company's board of directors, actively participated in board decisions, helped prepare and/or review the allegedly false information statement, and held a security interest in all company's assets); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 998 (N.D. Ill. 2004) (plaintiff pleaded purported controller—who was Chairman of the company's Board of Directors—

---

[4] Notably, although Plaintiffs allege that, pursuant to the Stockholders Agreement, Centerbridge and the Founders obligated themselves to vote in favor of each other's directors at shareholders meeting, see Pls.' Opp. (Dkt. No. 84) at 6-7 (citing Centerbridge Mot. to Dismiss, Ex. A (Dkt. No. 76-1) at 160), this allegation does not establish anything other than that there was a procedural mechanism in place to secure the designation of directors on the board. It does not in any respect suggest that directors designated by Centerbridge and the Founders actually voted together to accomplish any purpose.

controlled most of the company's voting shares along with his family and was able to "ensure[]" that [company's] Board of Directors was comprised of 'interlocking directorships tied to other entities controlled by the [controller] family'"); *Lindelow v. Hill*, No. 00 C 3727, 2001 WL 830956, at *9 (N.D. Ill. July 20, 2001) (plaintiffs based control person argument on alleged controllers' status "as top-ranking company officials whose high level positions necessarily involve general oversight and direction"; plaintiffs also alleged purported controllers acted "knowingly" in issuing allegedly false or misleading press release).

### 2. Plaintiffs Fail To Allege That Centerbridge Had the Ability to Control the IPO, Where It Did Not Control a Majority of Directors of the Board

In addition to failing to allege the requisite general control required for Section 15 liability, Plaintiffs' attempts to demonstrate pre-IPO control over the statements and alleged omissions in the Registration Statement are also deficient. In this regard, Plaintiffs rely almost exclusively on the allegation that some months before the IPO, Centerbridge indirectly acquired 100% of the equity in the GoHealth subsidiary Norvax, LLC and thereby "effectively took control of the Company along with its Founders." Pls.' Opp. (Dkt. No. 84) at 7-8 (citing ¶¶3, 41, 67).[5] This lone allegation fails to carry Plaintiffs' pleading-stage burden for three reasons.

---

[5] Plaintiffs also aver that "Centerbridge was a controlling shareholder and primary beneficiary of the IPO, as well as its private equity sponsor, and controlled GoHealth at the time of the IPO." Pls.' Opp. (Dkt. No. 84) at 7. Of course, these allegations, including that Centerbridge "controlled GoHealth at the time of the IPO," are also conclusory and need not be credited. Status as private equity sponsor or beneficiary of the IPO does not connote control of the IPO. *In re Kosmos Energy*, 955 F. Supp. 2d at 677 (dismissing Section 15 claims against private equity sponsors absent failure to allege "the requisite power to directly or indirectly control or influence Kosmos' corporate policy"); *Katz v. China Century Dragon Media, Inc.*, No. LA CV11-02769, 2011 WL 6047093, at *6 (C.D. Cal. Nov. 30, 2011) (dismissing Section 15 claims where plaintiffs alleged individual was company's CEO and sole owner and "stood to derive substantial financial benefit from the IPO," among other things).

*First*, the self-serving allegation that Centerbridge, by virtue of the indirect acquisition of the equity in Norvax, "effectively took control of the Company along with its Founders" should be rejected because it is purely conclusory. On a motion to dismiss, a court "need not accept as true legal conclusions or opinions that are couched as factual allegations." *Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs. LLC*, 877 F. Supp. 2d 614, 619 (N.D. Ill. 2012) (quoting *Union Oil v. John Brown E&C*, No. 94 C 4424, 1994 WL 535108, *4 (N.D. Ill. Sept. 30, 1994)). Accordingly, bare allegations of "control" cannot support a Section 15 claim. *See, e.g.*, *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 863 (N.D. Ill. 2009) ("[W]here a plaintiff 'self-servingly pleads a bare legal conclusion that the . . . defendants were control persons,' without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pleaded and must be dismissed.") (quoting *Starr v. !Hey, Inc.*, No. 01 C 6087, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003)). Notably, Plaintiffs cite to no case law to refute the proposition raised in Centerbridge's Motion to Dismiss that an allegation of a parent-subsidiary relationship, without more, is insufficient under Section 15 for control liability of the parent. *See* Centerbridge Mot. to Dismiss (Dkt. No. 76) at 7.

*Second*, the GoHealth Registration Statement—the heart of the alleged Section 11 violation—is developed by management and could only be issued with the consent of the Board of Directors. *See* Centerbridge Mot. to Dismiss, Ex. A (Dkt. No. 76-1) at II 5-6. Here, it is undisputed that (1) no senior member of GoHealth management is affiliated with Centerbridge; (2) only a minority of directors were designated by CCP III; and (3) CCP III is a minority investor. *See id.* at 158-59. It strains credulity to suggest that Centerbridge could control the IPO and Registration Statement with a minority of directors and no Centerbridge appointment to management.

8

***Third***, there is no basis to impute collective control to Centerbridge in the absence of any specific allegation that Centerbridge and the Founders in fact acted together to make any statements or omissions in the Registration Statement. *See* Pls.' Opp. (Dkt. No. 84) at 7-8.

Plaintiffs' citation to *Lindelow v. Hill*, which addresses control-person liability only for officers and directors, does nothing to save their claim. *Lindelow* concerned purported control by "top-ranking company officials" (the CFO and CEO) in connection with the issuance of a ***press release*** quoting the alleged control persons—which is controlled entirely by management. *See Lindelow*, 2001 WL 830956, at \*9.[6] A registration statement, by contrast, requires board approval. Accordingly, the second prong of *Donohoe*—requiring the ability to control the transaction at issue—fails. *See* 30 F.3d at 911-12; *cf. Brasher v. Broadwind Energy, Inc.*, No. 11 CV 991, 2012 WL 1357699, at \*12 (N.D. Ill. Apr. 19, 2012) (dismissing control person claim because allegations that defendants owned approximately 47.7 percent of company's stock and influenced company's affairs significantly "d[id] not state with adequate particularity how the … Defendants were in a position to control the specific conduct that constitutes the alleged primary securities violation.").

Because Plaintiffs fail to offer any plausible explanation for how Centerbridge could have controlled the making of misleading statements which form the basis of Plaintiffs' Section 11 claim, the Court should dismiss the Section 15 claim against all Centerbridge defendants.

**B. The Court Can Dismiss Centerbridge on the Record Before It**

In their Opposition, Plaintiffs suggest that the Court should treat control as a fact question that cannot be resolved at the motion to dismiss stage. Pls.' Opp. (Dkt. No. 84) at 8-10. Plaintiffs are wrong. Courts regularly dismiss defendants where the well-pleaded facts related to control

---

[6] Betraying the weakness of their argument, the only other cases Plaintiffs cite for support stand for the general proposition that Plaintiffs' pleading burden is low. *See* Pls.' Opp. (Dkt. No. 84) at 8.

9

allegations are legally insufficient to support a claim.[7]  In any event, the cases on which Plaintiffs

primarily rely for this argument are inapposite because they apply a materially more lenient control

person standard than the Seventh Circuit.[8]  *Compare In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No.

H-14-3428, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) ("At the pleading stage, a plaintiff

need only allege that [the defendant] possessed the power to control the primary violator, not that

control was exercised.") (internal quotations omitted) *with Donohoe*, 30 F.3d at 911-12 (holding a

control person "needs to have *actually* exercised general control" over a wrongdoer's operations)

(emphasis in original).  This Court should reject Plaintiffs' attempt to inject a control person

pleading standard that is plainly more lenient than that used in this Circuit.

In this case, notwithstanding Plaintiffs' efforts to create confusion to save the Complaint

from dismissal, there is no dispute over the core facts.  In Plaintiffs' own words, Centerbridge is a

minority shareholder with the right to appoint a minority of the board.  *See* Pls.' Opp. (Dkt. No.

84) at 11 (conceding Centerbridge's minority voting control); *id.* at 7 (conceding Centerbridge

designates a minority of the board).  The dispute here is over what the facts mean—and that can

be decided at this stage.

---

[7] *See, e.g.*, *Fulton Cty. Emps. Ret. Sys.*, 675 F.3d at 1051-52; *Desai*, 654 F. Supp. 2d at 862-63; *Starr*, 2003 WL 21212596, at *4; *Aldridge*, 284 F.3d at 85; *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910, 2005 WL 1907005, at *13-14 (S.D.N.Y. Aug. 8, 2005); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004); *In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475, 2002 WL 244597, at *7-8 (S.D.N.Y. Feb. 20, 2002); *In re Kosmos Energy*, 955 F. Supp. 2d at 676-77; *Zishka v. Am. Pad & Paper Co.*, No. 3:98-CV-0660-M, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001).

[8] *See Maher v. Durango Metals*, 144 F.3d 1302, 1305 n.8 (10th Cir. 1998) (recognizing that the Seventh and Fifth Circuits are on opposite ends of "a potential circuit split regarding whether, as part of a prima facie case of control person liability, a plaintiff must show that the alleged control person actually exercised control over the primary violator's general affairs").

In particular, Plaintiffs offer no valid reason why this Court should not dismiss the Section 15 claim against Centerbridge Partners, L.P., Centerbridge Associates III, L.P. and CCP III Cayman GP Ltd., none of which had any direct equity interest in GoHealth. Citing only to the Code of Federal Regulations, Plaintiffs argue in their Opposition that they need not plead that these entities were direct investors in GoHealth in order to establish that they were control persons. Pls.' Opp. (Dkt. No. 84) at 10 (citing 17 C.F.R. § 230.405 for the proposition that the Securities and Exchange Commission defines "control" to mean direct or indirect possession of power to direct or cause the direction of the management and policies of a person). But Plaintiffs do not just fail to plead that these entities made a direct investment in GoHealth. They also fail to plead *any facts* indicating that they exercised any control over GoHealth whatsoever. As detailed in Centerbridge's Motion to Dismiss—and unrefuted by Plaintiffs—none of these entities were shareholders of either Norvax or GoHealth and none had authority to appoint directors. Centerbridge Mot. to Dismiss (Dkt. No. 76) at 6. Notably, the definition of "Centerbridge" in the Registration Statement does not even include Centerbridge Partners, L.P. Centerbridge Mot. to Dismiss, Ex. A (Dkt. 76-1) at iii, 15. Centerbridge Partners, L.P. appears only once in the Registration Statement, as the c/o mailing address for the other Centerbridge Defendants. *Id.* at 196.

Even in their Complaint, Plaintiffs plead nothing about Centerbridge Associates III, L.P. and CCP III Cayman GP Ltd. beyond their relationship with other Centerbridge defendants. *See* ¶¶ 39-40. Accordingly, the Complaint against Centerbridge Partners, L.P., Centerbridge Associates III, L.P. and CCP III Cayman GP Ltd. must be dismissed. *See* 15 U.S.C. § 77o(a); *Starr*, 2003 WL 21212596, at *4 ("Starr presents nothing to support his claim that the individual defendants were control persons other than his sweeping and self-serving statement that the defendants should be

11

liable solely by virtue of shareholder status or directorships. Such allegations are insufficient to state a claim for control person liability[.]").

## CONCLUSION

For the reasons set forth above, in the Centerbridge Motion and in the GoHealth and Underwriter Defendants' Motion to Dismiss and Reply, the Court should dismiss Centerbridge with prejudice.

Dated: July 6, 2021
New York, New York

Respectfully submitted,

/s/ Katherine R. Goldstein
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Katherine R. Goldstein
kgoldstein@akingump.com
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Michelle Reed
mreed@akingump.com
2300 N. Field Street
Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Megan Cunniff Church (ARDC No. 6281234)
mchurch@mololamken.com
MOLOLAMKEN LLP
300 North LaSalle Drive, Suite 5350
Chicago, Illinois 60654
Telephone: (312) 450-6716
Facsimile: (312) 450-6701

12

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's CM/EFC system on July 6, 2021.


*/s/ Megan Cunniff Church*
Megan Cunniff Church

13