In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)

2002 WL 244597, Fed. Sec. L. Rep. P 91,703

KeyCite Yellow Flag - Negative Treatment

Disagreement Recognized by In re Vivendi Universal, S.A., S.D.N.Y., November 3, 2003

2002 WL 244597
United States District Court, S.D. New York.

In re DEUTSCHE TELEKOM
AG SECURITIES LITIGATION.

No. 00 CIV 9475 SHS.
|
Feb. 20, 2002.

*OPINION & ORDER*

STEIN, J.

**\*1** In this consolidated securities class action, the Lead Plaintiffs individually and on behalf of all others who purchased ordinary shares of Deutsche Telekom stock in the form of American Depository Shares ("ADSs"), pursuant to a registration statement filed on May 22, 2000 and a prospectus dated June 17, 2000, allege that defendants-Deutsche Telelkom; Kreditanstalt fur Wiederaufbau ("KfW"); Deutsche Bank AG; Deutsche Bank Alex. Brown; Dresdner Kleinwort Benson North America, L.L.C.; Goldman Sachs & Co.; A.G. Edwards & Sons, Inc.; and Ron Sommer-have violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") and section 10(b), Rule 10b-5, and section 20(a) of the Exchange Act of 1934 ("Exchange Act").

Defendant KfW now seeks a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) as to counts II, III, and V of the consolidated amended class action complaint. Because plaintiffs have failed to plead adequately facts sufficient to demonstrate that KfW is (1) a seller within the meaning of section 12(a)(2) of the Securities Act, (2) a control person within the meaning of section 15 of the Securities Act, and (3) a control person with culpable participation within the meaning of section 20(a) of the Exchange Act, counts II, III, and V of the consolidated amended class action complaint are dismissed as against KfW without prejudice and plaintiffs are granted leave to file a second amended class action complaint within 30 days of this Opinion and Order.

BACKGROUND

A. The Parties

Plaintiffs are individuals who, pursuant to the public offering, purchased Deutsche Telecom stock in the form of ADSs and who continue to hold a portion of that stock. (Consolidated Am. Class Action Compl. ¶¶ 7-8 ("Compl.").) Deutsche Telekom is a German corporation that is one of the largest telecommunication service providers in the world. (Compl. ¶ 9; June 17, 2000 Prospectus at 5 ("Pr.").) At the time of the public offering, the Federal Republic of Germany owned 43% of Deutsche Telekom's shares. (Pr. at 5.) KfW is a German public law entity that at the time of the offering owned 22% of Deutsche Telekom's shares. (Compl. ¶ 10, Pr. at 25.) KfW is 80% owned by the Federal Republic of Germany and 20% owned by the German Federal States. (Pr. at 6, 25.)

The remaining corporate defendants-Deutsche Bank AG; Deutsche Bank Alex. Brown; Dresdner Kleinwort Benson North America, L.L.C.; Goldman Sachs & Co.; A.G. Edwards & Sons, Inc.-were underwriters of the public offering. (Compl. ¶¶ 11-15, Pr. at 181-82.) Defendant Ron Sommer was the Chairman and C.E.O. of Deutsche Telekom and signed the registration statement on behalf of Deutsche Telekom. (Compl. ¶ 16, Pr. at F-59.)

B. The Allegations

The Court accepts the allegations in the consolidated amended class action complaint as true for the purposes of a motion to dismiss, *see Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994), and will consider the June 17, 2000 Prospectus for the purposes of this motion because it is quoted extensively in the complaint and is an integral part of the complaint, *see International Audiotext Network v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773-75 (2d Cir.1991).

**\*2** As part of a global offering of 200 million ordinary shares of Deutsche Telecom stock owned by KfW, Deutsche Telekom filed a registration statement with the Securities and Exchange Commission on May 22, 2000, to sell 45 million ordinary shares of its stock in the form of ADSs. (Compl. ¶ 26, Pr. at 1.) The registration statement contained a prospectus, the final version of which is dated June 17, 2000. (Comp.¶¶ 1-2, 26.) The prospectus and registration statement are alleged to be materially false and misleading on the grounds that the documents (1) failed to disclose that Deutsche Telecom was at that time engaged in advanced merger talks with VoiceStream

In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)
2002 WL 244597, Fed. Sec. L. Rep. P 91,703

Wireless Corp., and (2) overstated Deutsche Telekom's real estate portfolio by at least 2 billion Euro (approximately $1.8 billion). (Compl.¶¶ 2, 27-29, 34-42.)

Pursuant to the prospectus, KfW entered into a firm commitment underwriting by which various underwriters agreed to purchase 200 million ordinary shares of Deutsche Telekom as part of a global offering in fifteen European countries and the United States. (Pr. at 1, 10.) KfW was obligated to pay underwriting commissions and discounts equal to $1.033 per ADS. (*Id.*) The underwriters also had the option of purchasing an additional 30 million shares from KfW to cover over-allotments. (*Id.* at 1, 7, 10.) The offering price by the underwriters to the public was $64.38 per share. (*Id.* at 1.) On June 16, 2000, the effective date of the prospectus, the closing price of the ADSs on the New York Stock Exchange was $65.00 per share. (Compl.¶ 26.)

Between June 16, 2000 and July 24, 2000 Deutsche Telelcom stock declined almost $20 per share to approximately $45. (Compl.¶¶ 30-32.) This decline in price came on the heels of Deutsche Telekom's public announcements of its $50.7 billion takeover of VoiceStream Wireless. (*Id.*) By this agreement Deutsche Telekom was to pay $200 per VoiceStream share to purchase VoiceStream and to fund that purchase by issuing additional shares of Deutsche Telekom. (*Id.* ¶¶ 29, 33(e).) This $200 per share figure was offered by Deutsche Telecom to VoiceStream on June 15, 2000, two days before the date of the prospectus. (*Id.* ¶ 33(e).) In response to the offer, VoiceStream "agreed to begin providing Deutsche Telekom with due diligence" as of June 15, 2000. (*Id.*)

Deutsche Telekom stock declined again in February 2001, after it disclosed that it was taking "a special writedown for land values in its real estate portfolio by 2 billion Euros (approximately $1.8 billion) from a total book value of 17.2 billion Euros. (*Id.* ¶ 42). Allegedly, the over-valuation of Deutsche Telekom's real estate portfolio had first come to light within the company as early as 1995. (*Id.* ¶¶ 42-44.)

The consolidated amended class action complaint alleges violations of: section 11 of the Securities Act by all defendants except KfW (count I); section 12(a)(2) of the Securities Act by all defendants except Sommer (count II); section 15 of the Securities Act by Sommer and KfW (count III); section 10(b) of the Exchange Act and Rule 10b-5 by Deutsche Telekom and Sommer (count IV); and section 20(a) of the Exchange Act by Sommer and KfW (count V).

C. KfW's Motion to Dismiss
 **\*3** KfW's motion to dismiss attacks plaintiffs' complaint on several fronts. First, KfW argues that count II must be dismissed because KfW is not a "seller" within the meaning of section 12(a)(2) because first, it sold its Deutsche Telekom shares to the underwriters pursuant to a firm commitment underwriting and thus did not transfer title to the shares to plaintiffs and second, it did not solicit the sale of its shares directly from plaintiffs. KfW also contends that the controlling person liability claims must be dismissed because plaintiffs have failed to plead both control person status and culpable participation by KfW.

DISCUSSION

A. Legal Standard
In reviewing a motion to dismiss a complaint for failure to state a claim for relief, a district court's role is to assess the legal feasibility of the complaint; it is not to weigh the evidence which might be offered at trial. *SeeFesta v. Local 3, Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990); *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *Castellano v. City of New York,* 946 F.Supp. 249, 252 (S.D.N.Y.1996). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Auth. .,* 941 F.2d 119, 123 (2d Cir.1991)). All factual allegations in the complaint are accepted as true and the complaint is viewed in the light most favorable to plaintiff. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699 (2d Cir.1994). Nonetheless, " '[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." ' *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996) (quoting *Palda v. General Dynamics Corp. .,* 47 F.3d 872, 875 (7th Cir.1995)). *See alsoKern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996).

B. Section 12(a)(2)-"Statutory Seller"
Section 12(a)(2) of Securities Act, codified at 15 U.S.C. § 77*l* (a)(2), attaches liability to "[a]ny person who ... offers or sells a security ..., by means of a prospectus or oral communication...." The statute neglects to define who is a

Case: 1:20-cv-05593 Document #: 90-4 Filed: 07/06/21 Page 3 of 6 PageID #:2574

In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)
2002 WL 244597, Fed. Sec. L. Rep. P 91,703

statutory seller. In *Pinter v. Dahl,* the United States Supreme Court defined who is a statutory seller within the meaning of section 12(1) of the Securities Act as one who must have either (1) passed title of the security to the plaintiff or (2) successfully solicited the purchase motivated at least in part by his own financial interest. 486 U.S. 622, 642, 647, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The same analysis of who constitutes a statutory seller governs section 12(2)(a). *See Wilson v. Saintine Exploration and Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir.1989); *Capri v. Murphy,* 856 F.2d 473, 478 (2d Cir.1988).

**\*4** The Supreme Court found that limiting a statutory seller to one who passes title-a theory "not unlike traditional contractual privity"-was inconsistent with the purpose of the Securities Act "to promote full and fair disclosure of information to the public in the sale of securities." *Pinter,* 486 U.S. at 642, 646-47. Congress intended to expand liability to solicitors of purchasers because solicitation is "the most critical stage of the selling transaction," one where the investor is most likely to suffer injury. *Id.* at 646. Liability is therefore properly extended to one "who successfully solicits the purchase of a security motivated at least in part by a desire to serve his own financial interest or those of the security owner." *Id.* 647.

Plaintiffs contend that because, as set forth on the face of the prospectus, "[KfW] is selling all of the shares that are being offered in the global offering," KfW is a seller for purposes of section 12(a)(2). KfW responds that because the sale was made pursuant to a "firm commitment underwriting" it cannot be held liable as a "seller" pursuant to section 12(a)(2). In a firm commitment underwriting, "the underwriter agrees to purchase an agreed upon percentage of the offering irrespective of whether the securities can be sold in the public market; therefore, the underwriter [i.e., not the seller] bears the risk if the offering is undersubscribed." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 701 (2d Cir.1994)

KfW, in accordance with the firm commitment underwriting, sold all 200 million shares to the underwriters and paid underwriting commissions and discounts equal to $1.033 per ADS. Further, KfW agreed to sell an additional 30 million shares to the underwriters to cover any over-allotments. "Title to the securities passed from [KfW] to the underwriters and then from the underwriters to the purchaser-plaintiffs." *Akerman v. Orynx,* 810 F.2d 336, 344 (2d Cir.1987). Accordingly, because "a buyer cannot recover from a seller's

seller," the first test of who is a seller pursuant to section 12(a)(2) set forth in *Pinter*-title passing to the plaintiffs-is not satisfied. 486 U.S. at 644 n. 21. *See also Credit Suisse First Boston Corp. v. ARM Fin. Group Inc.,* No. 99 Civ. 12046, 2001 WL 300733, at \*10 (S.D.N.Y. Mar. 28, 2001). *Accord Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1215-16 (1st Cir.1996). *But see In re Twinlab Corp. Sec. Litig.,* 103 F.Supp.2d 193, 204-05 (E.D.N.Y.2000)

KfW further asserts that it is not a seller pursuant to the second test annunciated in *Pinter* as plaintiffs have failed to plead any allegations that KfW actively solicited the sale of the securities and that as a result of those solicitations, plaintiffs purchased the securities. Further, KfW contends that any allegations set forth by plaintiffs are merely conclusory.

Plaintiffs allege in the complaint that "KfW was a seller of the shares sold in the Offering within the meaning of Section 12(a)(2) of the Securities Act." (Compl.¶ 10.) In count II of the complaint, plaintiffs allege that KfW and other defendants were "sellers, offerors, and/or solicitors of sales ... by means of the Prospectus" and that "[p]laintiffs ... purchased Deutsche Telekom ADSs pursuant to and traceable to the Prospectus." (Compl.¶¶ 69, 72.)

**\*5** Plaintiffs' bald allegations of solicitation are insufficient to sustain KfW's section 12(a)(2) liability as a "seller" pursuant to the second *Pinter* test. *See Shaw,* 82 F.3d at 1216; *Dorchester Investors v. Peak Int'l Ltd.,* 134 F.Supp 2d 569, 580 (S.D.N.Y.2001). First, there is no factual allegation that KfW had direct contact with any plaintiff. *See Shain v. Duff & Phelps Credit Rating Co.,* 915 F.Supp. 575, 577 (S.D.N.Y.1996). Second, there is no factual allegation of specific conduct on the part of KfW to solicit purchases of the security other than the fact that KfW's name appears in the prospectus. *See Dorchester Investors,* 134 F.Supp.2d at 580. Third, while the nature of a prospectus itself is to solicit the purchase of securities, it is those who sign the registration statement that accompanies the prospectus who are deemed solicitors. *See Steed Fin. LDC v. Nomura Sec. Int'l, Inc.,* No. 00 Civ. 8058, 2001 WL 1111508, at \*7 (S.D.N.Y. Sept. 20, 2001); *APAC Teleservices, Inc., Sec. Litig.,* No. 97 Civ 9145, 1999 WL 1052004, at \*11 (S.D.N.Y. Nov. 19, 1999).

Given that (1) KfW did not sign the registration statement, (2) pursuant to the prospectus, KfW agreed "with the underwriters that until December 31, 2000" not to "offer, sell or market, directly or indirectly, any shares," (Pr. at 184), and (3) there are no factual allegations that KfW actively solicited

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 3

Case: 1:20-cv-05593 Document #: 90-4 Filed: 07/06/21 Page 4 of 6 PageID #:2575

In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)
2002 WL 244597, Fed. Sec. L. Rep. P 91,703

the purchase of the securities, count II of the complaint is dismissed against KfW. Plaintiffs are granted leave to replead successful solicitation by KfW pursuant to the second *Pinter* test, if they are able to do so. *SeeCortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991).

C. Sections 15 and 20(a)-"Control Person Liability"

Section 15 of Securities Act, codified at 15 U.S.C. § 77*o*, attaches liability to "[e]very person who, by or through stock ownership, agency, or otherwise, ..., controls any person liable under sections 77k or 77*l* of this title, shall also be liable ... to the same extent as such controlled person." Similarly, section 20(a) of the Exchange Act, codified at 15 U.S.C. § 78t(a), attaches liability to "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder ..., unless the controlling person acted in good faith and did not ... induce the ... violation."

The analysis of these provisions is the subject of a trinal intra-circuit split because the U.S. Court of Appeals for the Second Circuit has yet to address squarely the issue subsequent to the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The district courts in this circuit have analyzed sections 15 and 20(a) in three different ways: (1) requiring two elements-an underlying violation by the controlled person and the presence of control-to establish a prima facie case; (2) requiring the addition of culpable conduct by the controlling person to establish a prima facie case; (3) requiring the first two elements to establish a prima facie case pursuant to section 15 and all three elements in order to establish a prima facie case pursuant to section 20(a). *SeeIn reIndep Energy Holdings PLC Sec. Litig.,* No. 00 Civ. 6689, 2001 U.S. Dist. LEXIS 10340, at *71 (S.D.N.Y. July 26, 2001) (collecting cases). *See alsoLaser Mortgage Mgmt., Inc. v. Asset Securitization Corp.,* No. 00 Civ. 8100, 2001 WL 1029407, at *11-12 (S.D.N.Y. Sept. 6, 2001); *Ellison v. American Image Motor Co., Inc.,* 36 F.Supp.2d 628, 638 (S.D.N.Y.1999).

**\*6** Because the underlying violation pursuant to section 15 is a violation of sections 11 and 12(a)(2) in which strict liability is imposed (i.e., knowledge of the misrepresentation is not required), this Court is in accord with those district courts that hold that merely two elements are required to establish a prima facie case of control person liability pursuant to section 15:(1) an underlying primary violation of the securities laws by the controlled person; and (2) control over that controlled

person. *SeeLaser Mortgage,* 2001 WL 1029407, at *11-12; *Indep. Energy,* 2001 U.S. Dist. LEXIS 10340, at *71.

In order to establish a prima facie case of control person liability pursuant to section 20(a), however, three elements are required: (1) an underlying primary violation of the securities laws by the controlled person; (2) control over the controlled person; and (3) that the controlling person was, in some meaningful sense, a culpable participant in the controlled person's primary violation. *SeeGanino v. Citizens Utils. Co.,* 228 F.3d 154, 170 (2d Cir.2000); *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998); *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996). Culpable participation must be pled to allege control person liability pursuant to section 20(a) as a consequence of the pleading requirements of the PSLRA that require that where money damages are recoverable "on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."15 U.S.C. § 78u-4(b)(2).

KfW contends that plaintiffs have failed to establish a prima facie case of control person liability pursuant to section 15 or section 20(a) because they have failed to allege control person status in anything but conclusory terms. Plaintiffs allege that KfW is a control person within sections 15 and 20(a) by virtue of "its stock ownership of Deutsche Telekom and/or [its] participation in [Deutsche Telekom's] operations ... [in that] KfW had the power to influence and control and did influence and control the decision-making of [Deutsche Telekom], including the content and dissemination of the public statements that plaintiffs contend are false and misleading." (Compl.¶ 79.) Plaintiffs also allege that KfW was "provided with or had unlimited access to copies of the complained of statements prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected." (*Id.*)

Plaintiffs fail to allege any facts that support the alleged control person status of KfW. A control person is one who has the power, directly or indirectly, "to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. *See also*17 C.F.R. § 240.12b-2. The only factual allegation made by plaintiffs is that as of the date of the prospectus, KfW owned 22 percent of Deutche Telekom. (Compl.¶ 9.) This is insufficient by itself to

In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)
2002 WL 244597, Fed. Sec. L. Rep. P 91,703

infer control of Deutsche Telecom by KfW, especially given the 43% ownership share of Deutsche Telekom by the Federal Republic of Germany.

**\*7** In order to survive a Rule 12(b)(6) motion, "a plaintiff must plead facts which 'support a reasonable inference that they had the potential power to influence and direct the activities of the primary violator." ' *Sloane Overseas Fund Ltd. v. Sapiens Int'l Corp.,* 941 F.Supp. 1369, 1378 (S.D.N.Y.1996) (quoting *Food & Allied Service Trades Dep't, AFL-CIO v. Millfeld Trading, Co., Inc.,* 841 F.Supp. 1386, 1391 (S.D.N.Y.1994)). Conclusory allegations that KfW "controlled" Deutsche Telekom are insufficient for the assertion of liability pursuant to sections 15 and 20(a). *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 102 (2d Cir.2001).

Because actual control over the primary violator is required and plaintiffs' allegations fail to allege facts supporting an inference of actual control but rather, simply restate the legal standard for control person liability, plaintiffs fail to establish the second element of a prima facie case pursuant to sections 15 and 20(a). *See Cromer Fin. Ltd. v. Berger,* 137 F.Supp.2d 452, 484 (S.D.N.Y.2001).

Additionally, plaintiffs fail to establish the third element of a prima facie case pursuant to a section 20(a) control person liability claim in that plaintiffs fail to allege culpable participation by KfW. The pleading specifics of the culpable participation element of section 20(a) control person liability is the subject of yet another three way intra-circuit split because the Second Circuit has only peripherally addressed the issue by noting that "a determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability." *Boguslavsky,* 159 F.3d at 720.

District courts, in attempting to determine how to properly allege culpable participation for purposes of section 20(a) have looked to the scienter requirement for section 10-b and have arrived at divergent formulations. They have held variously that the culpable participation element of section 20(a) requires the pleading of: (1) "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud," *Mishkin v. Ageloff,* No. 97 Civ. 2690, 1998 WL 651065, at [*] 25 (S.D.N.Y. Sept. 23, 1998); (2) "facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over

whom the person had control, was engaging in fraudulent conduct," *Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 122 F.Supp.2d 407, 426-28 (S.D.N.Y.2000); and (3) "either conscious misbehavior or recklessness," *Steed Fin.,* 2001 WL 1111508, at [*] 10.

Because the PSLRA requires a strong inference of culpable participation, this Court finds that those pleading requirements will be satisfied where facts are pled with sufficient particularity that a strong inference is raised that the section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct. *See Cromer,* 137 F.Supp.2d at 484; *Dietrich v. Bauer,* 126 F.Supp.2d 759, 765-66 (S.D.N.Y.2001); *Gabriel Capital,* 122 F.Supp.2d at 428.

**\*8** Consequently, as plaintiffs have failed to allege the prima facie elements for control person liability pursuant to both section 15 and section 20(a), counts III and V of the amended complaint are dismissed without prejudice.

**D. Leave to Amend The Complaint**

Leave to replead lies within the sound discretion of the court. *Cortec Indus.,* 949 F.2d at 48. Federal Rule of Civil Procedure 15(a) directs that "leave shall be freely given when justice so requires." Further, "it is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus.,* 949 F.2d at 48. Because it is not clear that any amendment of the complaint in this case would be futile, the Court grants plaintiffs leave to replead, if they can, within 30 days of this Opinion and Order (1) the solicitation aspect of section 12(a)(2) statutory seller liability in accordance with *Pinter,* (2) control person liability pursuant to section 15, and (3) control person liability and culpable participation pursuant to section 20(a).

**CONCLUSION**

For the foregoing reasons, KfW's motion is granted and counts II, III, and V of the amended consolidated class action complaint are dismissed as against KfW without prejudice. Plaintiffs are granted leave to replead those allegations in accordance with this Opinion and Order within 30 days.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 244597, Fed. Sec. L. Rep. P 91,703

**In re Deutsche Telekom AG Securities Litigation, Not Reported in F.Supp.2d (2002)**

2002 WL 244597, Fed. Sec. L. Rep. P 91,703

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.