KeyCite Yellow Flag - Negative Treatment

Declined to Follow by  In re Parmalat Securities Litigation,  S.D.N.Y., February 21, 2007

2005 WL 1907005
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

In re GLOBAL CROSSING, LTD.
SECURITIES LITIGATION

No. 02 Civ. 910(GEL).
|
Aug. 8, 2005.

**Attorneys and Law Firms**

Jay W. Eisenhofer, Sidney S. Liebesman, Michael J. Barry, Michelle T. Wirtner, Grant & Eisenhofer, P.A., Wilmington, DE, for Lead Plaintiffs Public Employees Retirement System of Ohio and State Teachers Retirement System of Ohio.

Daniel A. McLaughlin, Sidley Austin Brown & Wood LLP, New York, NY, and Charles W. Douglas, David F. Graham, James W. Ducayet, Sidley Austin Brown & Wood LLP, Chicago, IL, for Defendant Microsoft Corporation.

Robert A. Sacks, Sullivan & Cromwell LLP, Los Angeles, CA, and Jill D. Fairbrother, Stephen J. Shin, Sullivan & Cromwell LLP, New York, NY, for Defendant Softbank Corporation.

*OPINION AND ORDER*

LYNCH, J.

 **\*1** In this consolidated class action arising from the alleged accounting improprieties at the telecommunications firm Global Crossing, Ltd. ("GC"), and its subsidiary Asia Global Crossing Ltd. ("AGC"), the Second Amended Consolidated Class Action Complaint includes five counts against Microsoft Corporation and Softbank Corporation. Count XVII is a claim for securities fraud under Section 10(b) and Rule 10b-5 (a) and (c) of the 1934 Securities Exchange Act ("Exchange Act"); Count XVIII is a claim for a violation of Section 11 of the Securities Act of 1933 ("Securities Act"); Count XXI is a claim for control-person liability pursuant to Section 15 of the Securities Act; Count XXII is a claim

for control-person liability pursuant to Section 20(a) of the Exchange Act; and Count XXIV is a claim for respondeat superior liability based on violations of Section 10(b) and Rule 10b-5 of the Exchange Act, and Section 11 of the Securities Act. Microsoft and Softbank move to dismiss all five counts, arguing that Lead Plaintiffs ("plaintiffs") have failed to plead respondeat superior or control-person liability, and that plaintiffs' Section 15 and Section 11 claims are time-barred. [1] The motions will be granted.

[1]   Lead plaintiffs submitted one joint brief in opposition to both Microsoft's and Softbank's motions to dismiss.

## BACKGROUND

I. *Factual Background*

The facts set forth below, drawn from the complaint, [2] must be taken as true for purposes of this motion. *SeeBolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995).

[2]   All references to the "complaint" refer to the Second Amended Consolidated Class Action Complaint.

AGC was a pan-Asian telecommunications carrier that provided internet, data, and voice services to wholesale and business customers. On September 24, 1999, AGC was formed as a holding company within GC for GC's operations in Asia. On November 24, 1999, AGC became a wholly-owned subsidiary of a joint venture between GC, Softbank, and Microsoft. (Compl.¶ 200.) GC and AGC substantially overlapped in directors and management, sharing, for example, Gary Winnick as a common Chairman and Lodwrick M. Cook as a common Co-Chairman. (*Id.* ¶¶ 29, 34.)

GC, Softbank, Microsoft, and Goldman Sachs were the shareholders of AGC. (*Id.* ¶ 27.) GC, Softbank, and Microsoft entered into a Shareholder Agreement that gave each party the right to appoint one or more directors of AGC. (*Id.* ¶ 205.) Under the Agreement, Microsoft and Softbank each invested $175 million and committed to purchase $100 million in telecommunications capacity from AGC over a three-year period. (*Id.* ¶ 206.) Following AGC's November 2000 initial public offering ("IPO"), Microsoft and Softbank each became owners of 15.8% of AGC's common stock. (*Id.* ¶ 207.)

AGC's IPO Registration Statement announced that AGC "plan[ned] to leverage [its] relationships with [its] founding shareholders." With regard to its "Microsoft and Softbank Relationships," the IPO stated:

> Microsoft is a worldwide leader in software, services and Internet technologies for personal and business computing. Softbank is one of the world's Internet leaders, with ownership positions in more than 300 Internet companies. We believe that having Microsoft and Softbank as our founding shareholders will allow us to benefit from the expanding involvement of these companies in Internet-related businesses and their expertise in that field.

**\*2** (AGC IPO Registration Stmt., Liebesman Decl. Ex. 1, at 53.) The Registration Statement further elaborates that under the by-laws and shareholders agreement, "the affirmative votes of [AGC's] board members appointed by Microsoft and Softbank are required for a number of important business decisions." [3] *Id.* at 19.

[3] These decisions include "amalgamation ... merger or consolidation of any of [AGC's] majority-owned subsidiaries," "any acquisition or investment by [AGC] or any of [AGC's] majority-owned subsidiaries ... involving aggregate consideration ... in excess of $1.0 billion," "any material change in our purposes as described in our byelaws [*sic.;* the Registration Statement consistently uses this variant spelling]," "any sale, transfer or other disposition of our material assets or of the material assets of our majority-owned subsidiaries in one or more related transactions," "any material change in our purposes as described in our byelaws," "the adoption of our initial strategic plan," "capital expenditures by [AGC] or any of [AGC's] majority owned subsidiaries in excess of $1.0 billion on a project by project basis or in excess of $2.0 billion in any fiscal year," "any transaction between Global Crossing or any of its majority-owned subsidiaries and [AGC]

or any of [AGC's] majority-owned subsidiaries for consideration having a value in excess of $5.0 billion and to be entered into on terms less favorable to us than those that could have been obtained at the time of that transaction in an arms' length transaction with an unrelated third party...." (AGC IPO Registration Stmt. 82-83.)

Pursuant to the Shareholder Agreement, in November 1999, Softbank designated Eric Hippeau, President and Executive Managing Director of Softbank International Ventures (as well as a member of the GC board of directors from September 1999 to November 2001) to serve on the AGC board of directors, which he did until November 2001 (Compl.¶ 53); in April 2000, Microsoft designated Thomas U. Koll, vice-president of network solutions at Microsoft, to serve on the AGC board of directors (*id.* ¶ 67); and in February 2001, Microsoft appointed Peter Knook, also a Microsoft vice-president, to succeed Koll as Microsoft's appointee to AGC's board of directors (*id.* ¶ 59).

The alleged fraud underlying plaintiffs' complaint has been described from various angles in this Court's previous opinions, and the details will be repeated here only to the extent that they are relevant to Microsoft's and Softbank's motions. *See,e.g.,In re Global Crossing, Ltd. Sec. Litig.,* 322 F.Supp.2d 319 (S.D.N.Y.2004); *In re Global Crossing, Ltd. Sec. Litig.,* 313 F.Supp.2d 189 (S.D.N.Y.2003). At the heart of plaintiffs' allegations is their contention that AGC was integral to GC's alleged scheme to defraud the public and its investors. According to plaintiffs' telling of the alleged scheme, GC and AGC booked revenue in the hundreds of millions of dollars from economically worthless swap transactions in which they simply exchanged telecom capacity between themselves or with other members of the telecom industry. Plaintiffs further contend that most of these transactions were entered into at the very end of a quarterly reporting period, thereby enabling GC and AGC to meet their earnings and revenue targets. Plaintiffs allege that Koll, Knook, and Hippeau signed some of AGC's false and misleading SEC filings, and "caused" AGC to sell securities to investors at artificially inflated prices. (P. Mem. 28; *Compl.* ¶¶ 53, 59, 67.)

II. *Microsoft's and Softbank's Current Motions*
Microsoft and Softbank move to dismiss all five counts, arguing that plaintiffs have failed to plead respondeat superior or control-person liability, and that plaintiffs' claims under Sections 11 and 15 are time-barred. [4] Plaintiffs oppose the

motions, arguing in essence that Koll, Knook, and Hippeau acted at the behest of Microsoft and Softbank as instruments in AGC's alleged fraud-and therefore that Microsoft and Softbank should be held accountable for violating federal securities law-and asserting the timeliness of their claims.

4    Microsoft and Softbank forward somewhat different arguments in support of their motions to dismiss. Microsoft argues that (1) plaintiffs have failed to allege that Koll or Knook were acting as agents of Microsoft when serving as AGC's directors, and have also failed to allege that any of Koll's or Knook's statements were expressly or constructively attributed to Microsoft; (2) plaintiffs fail to plead facts in support of their claim that Microsoft controlled Koll, Knook, or AGC, or that Microsoft culpably participated in any alleged wrongdoing; and (3) plaintiffs' Sections 15 and 11 claims are time-barred. Softbank argues that (1) *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164(1994) precludes plaintiffs' respondeat superior theory of liability; (2) plaintiffs have not adequately pled scienter as to Hippeau, and thus Softbank cannot be held liable for the Section 10(b) claims; (3) plaintiffs failed to plead facts in support of their claim that Softbank controlled Hippeau and Softbank's minority stock ownership and ability to name one director cannot render it a control person of AGC; and (4) plaintiffs Sections 15 and 11 claims are time-barred.

Although there are five counts against Microsoft and Softbank, the issues presented in various counts overlap-Counts XVII, XVIII, and XXIV present the question whether Microsoft and Softbank can be held liable for actions of Knook, Koll, and Hippeau on a theory of respondeat superior,[5] whereas Counts XXI and XXII present the question whether Microsoft and Softbank can be held liable for actions of Knook, Koll, and Hippeau on a theory of control-person liability. As the plaintiffs have not alleged sufficient facts as to agency or control-person relationships between Microsoft and Koll or Knook, or between Softbank and Hippeau, the sufficiency of plaintiffs' factual claims as to Koll's, Knook's, and Hippeau's alleged wrongdoing is irrelevant. Moreover, because plaintiffs' claims as to Microsoft and Softbank are dismissed on other grounds, the Court need not reach the argument put forth by both

defendants that plaintiffs' Sections 15 and 11 claims are time-barred.

5    Plaintiffs do not present all of these claims as respondeat superior claims, but in light of the facts they allege, there is simply no other way to make sense of them. Count XVIII is stated as a straightforward Section 11 claim, whereas Count XVII brings a Section 11 claim (along with Section 10(b) and Rule 10b-5 claims) on a respondeat superior theory. Section 11 imposes civil liability on persons preparing materially misleading registration statements. To state a claim under Section 11, an injured plaintiff must allege only that a defendant made or participated in making a "material misstatement or omission" in a registration statement for a security the plaintiff acquired; liability for such misstatements extends to, among others, any person who "signed the registration statement" or "was a director of ... the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted." 15 U.S.C. § 77k. Accordingly, since Microsoft and Softbank may only violate Section 11 through their agents, who signed the documents, and their alleged agents here are Knook, Koll, and Hippeau, the Court is unable to discern any substantive difference between the merit of the Section 11 claim as articulated in Count XVIII or Count XVII, and the two will be disposed of jointly. Similarly, whereas plaintiffs frame Count XVII as a direct charge against Microsoft and Softbank for scheme liability under subsections (a) and (c) of Rule 10b-5, and Count XXIV as a respondeat superior claim for false statements of Koll, Knook, and Hippeau under Rule 10b-5(b), plaintiffs factual allegations underlying Count XVII rely on a theory that Microsoft and Softbank perpetrated the fraud on the investing public through Koll, Knook, and Hippeau, and thus that claim too presents the question of whether plaintiffs have sufficiently pled an agency relationship between Microsoft and Koll and Knook, and Softbank and Hippeau.

DISCUSSION

**\*3** Plaintiffs argue that Microsoft and Softbank should be held liable under federal securities law because Koll, Knook, and Hippeau participated as their agents in the alleged fraud at AGC. [6] Plaintiffs rest the sufficiency of the five counts in the complaint against Microsoft and Softbank on two theories of liability: respondeat superior and control-person liability. Plaintiffs do not allege that Microsoft and Softbank aided and abetted a fraud by AGC or its officers or directors, but rather that each was a primary participant in the fraud. Nor do plaintiffs claim that Microsoft and Softbank are liable because they were minority shareholders of a company that issued false statements. Rather, their basic theory is that, since a corporation can act only through human agents, Koll's, Knook's, and Hippeau's statements and actions are attributable to Microsoft and Softbank because they were statements by the corporations' agents in the course of their employment.

[6]    For purposes of these motions, the Court will assume that Koll, Knook, and Hippeau, are adequately alleged to have participated in the fraud. As explained above, because plaintiffs have failed to allege sufficient facts as to agency or control-person relationships between Microsoft and Koll or Knook, or between Softbank and Hippeau, the Court need not address the sufficiency of plaintiffs' factual claims as to Koll's, Knook's, and Hippeau's alleged wrongdoing.

Plaintiffs' arguments are not without some appeal. While there is authority that makes clear that being a director or officer (let alone being able to appoint a director or officer) or a minority shareholder does not make one a control person of the corporation, or vicariously liable for what the corporation does, *Wallace v. Buttar,* 239 F.Supp.2d 388, 396 (S.D.N.Y.2003); *In re Deutsche Telekom AG Sec. Litig.,* No. 00 Civ. 9475, 2002 WL 244597, at \*6-\*7 (S.D.N.Y. Feb. 20, 2002), plaintiffs point to some specific facts about this situation that give their theory some equitable weight. First, Microsoft and Softbank were (with GC itself) present at the creation of AGC. Second, the shareholder agreement that Microsoft and Softbank entered into with GC gave Microsoft and Softbank more power than a typical minority shareholder, including the right to designate individuals to sit on AGC's board. Third, AGC's promotional materials touted not only general synergy with Microsoft and Softbank, but the shareholder agreement, which required Microsoft's and Softbank's appointees' approval on certain strategic decisions by AGC. Fourth, Microsoft and Softbank did not designate

just any individuals to sit on the board; rather, they each designated company employees to sit on the board. In light of all of these factors, it is not unreasonable for plaintiffs to argue that the investing public might attribute to AGC some of the credibility attaching to Microsoft and Softbank, or indeed that AGC encouraged that perception.

But plaintiffs' claims ultimately rest on a few bare facts and a number of legally unjustified presumptions. First, the Second Circuit has cautioned against using ordinary common law principles like respondeat superior in interpreting the securities laws. *Shapiro v. Cantor,* 123 F.3d 717, 720 (2d Cir.1997). The fraud provisions only apply to one who himself makes statements, or to one to whom statements are fairly attributable. *Wright v. Ernst & Young LLP,* 152 F.3d 169, 175 (2d Cir.1998). Second, when acting as directors of AGC, Koll, Knook, and Hippeau had fiduciary duties to act on behalf of the shareholders of AGC itself, not on behalf of the entities that appointed them. Thus, when they acted as directors of AGC, they were not acting within the scope of their employment with Microsoft and Softbank.

**\*4** Plaintiffs may well suggest that this is a legal fiction, or that Koll, Knook, and Hippeau may have violated their duties to AGC. Perhaps they did. But the mere fact that they held high positions with Microsoft and Softbank, and were appointed to the AGC board by those corporations, cannot, standing alone, establish that they acted as agents, or acted under the control, of Microsoft and Softbank. Not all actions of an employee are attributable to a corporate employer- the employer is only responsible for its employee's actions that were within the scope of his employment. Koll, Knook, and Hippeau cannot be presumed to have been acting at the direction of their outside employers in their capacities as AGC directors. Nor can it simply be alleged in conclusory fashion that they did so act. Concrete factual allegations are necessary to establish agency and control.

## I. *Standards*

### A. Motion to Dismiss

For the purposes of this motion to dismiss, the facts as alleged in the plaintiffs' complaint must be taken as true, *Bolt Elec.,* 53 F.3d at 469, and all reasonable inferences must be drawn in the plaintiffs' favor. *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004). At the same time, "[g]eneral, conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995).

2005 WL 1907005

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference, or, even documents that may not be incorporated by reference but are integral to the complaint. *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *seeSira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004). In addition to facts alleged in the complaint, the Court may take judicial notice of public disclosure documents filed with the SEC. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773-74 (2d Cir.1991). Ultimately, this Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (internal quotation marks omitted)).

### B. Pleading

The pleading standard for all claims under Section 10b-5 is raised by the requirement that plaintiffs plead the element of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 214 (1976). Although Rule 9(b) allows the pleading party to aver scienter generally, the Second Circuit warns that "the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind [must not be mistaken] for a license to base claims of fraud on speculation and conclusory allegations." *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir.1996) (internal citations and quotation marks omitted). Plaintiffs must allege facts that "give rise to a strong inference of fraudulent intent." *Id.* at 269 (internal citations, quotation marks, emphasis omitted). The Private Securities Litigation Reform Act ("PSLRA"), which requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," reinforces this requirement. 15 U.S.C. § 78u-4(b)(2).

**\*5** In recognition that there will rarely be direct evidence of intent to defraud, the Second Circuit has held that a plaintiff may establish the requisite "strong inference" of scienter either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir.2000) (internal citations and quotation marks omitted). "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* (internal citations and quotation marks omitted). The following four types of allegations may also support a strong inference of scienter: "where the complaints sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that they public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Id.* at 311.

As to claims brought under 10b-5(b), the PSLRA requires that where material misstatements or omissions are alleged, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In cases where it is not a statement or omission that is alleged, but rather, a fraudulent scheme to affect the price of stocks, as under subsections (a) or (c) of Section 10(b), it is sufficient to specify " 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.' " *In re Blech Sec. Litig.,* 961 F.Supp. 569, 580 (S.D.N.Y.1997) (internal citation omitted)).

As to control-person liability claims, for Section 15, "[t]he heightened pleading standard under Rule 9(b) or the PSLRA does not apply because fraud and scienter are not necessary elements of the claim." *In re Vivendi Universal, S.A.,* No. 02 Civ. 5571, 2003 WL 22489764, at \*22 (S.D.N.Y. Nov. 3, 2003). Thus, Rule 8 governs the pleading standard for Section 15 claims. For Section 20 claims, however, since culpable participation is an element, the PSLRA's heightened pleading requirements apply, and "plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *Burstyn v. Worldwide Xceed Group, Inc.,* No. 01 Civ. 1125(GEL), 2002 WL 31191741, at \*7 (S.D.N.Y. Sept. 30, 2002) (citations omitted). "[D]etermination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability ."*Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998).

## II. *Factual Allegations*

In re Global Crossing, Ltd. Securities Litigation, Not Reported in F.Supp.2d (2005)

2005 WL 1907005

**\*6** In support of their argument that Microsoft and Softbank should be held liable for the actions of Koll, Knook, and Hippeau, on the theories of respondeat superior and control-person liability, the plaintiffs put forth the following factual allegations:

- Microsoft and Softbank each initially invested $175 million in AGC and committed to purchase $100 million in telecommunications capacity from AGC over a period of three years. (Compl.¶ 206-07.)

- Microsoft consecutively designated Koll and then Knook, high-level Microsoft employees, pursuant to its power under the shareholder agreement, to serve on the AGC board. Softbank designated Hippeau, a high-level Softbank employee, pursuant to its power under the shareholder agreement, to serve on the AGC board. (*Id.* ¶ 53, 59, 67.) (Hippeau also served as a director for GC. (*Id.* 53.))

- Koll, Knook, and Hippeau had "access to insider information concerning [AGC's] financials and business plans." (P. Mem.2.)

- "Microsoft and Softbank were prominently featured in [AGC]'s business plans." (*Id.* at 5 (citing AGC IPO Registration Stmt. at 53).)

- Under AGC's by-laws and the Shareholders Agreement, "the affirmative votes of both the Microsoft and Softbank officer-designees to the board were 'required for a number of important business decisions' " (*Id.* (quoting AGC IPO Registration Stmt. at 19)), and were "responsible for evaluating and approving all transactions exceeding $5 million between [AGC] and [GC] or its subsidiaries and [AGC] and its subsidiaries." (*Id .* (citing AGC IPO Registration Stmt. at 82-83).) The IPO further noted that "[n]either [AGC's] bye-laws nor the Shareholders Agreement provides for any deciding vote if the board members appointed by Microsoft and Softbank disagree on matters requiring their approval." (*Id.* at 5-6 (citing AGC IPO Registration Stmt. at 19).)

- Knook, Koll, and Hippeau served on the AGC board at Microsoft's and Softbank's "behest and direction, and in furtherance of their duties as employees and agents" under the "actual or apparent authority of their principals." (Compl.¶¶ 1225(d), 1247-48; P. Mem. 9-10.) Microsoft and Softbank both "had the power to influence and control and did in fact influence

and control, directly or indirectly, the decisionmaking of [Hippeau,] Koll[,] and Knook, including their participation in the fraudulent scheme [AGC] employed to defraud investors, and the publication and dissemination of the various statements which plaintiffs contend are false and misleading." (Compl.¶¶ 1247-48.)

- Hippeau's position on the GC board gave him access to material inside information, and, as a member of GC's audit committee, he had a duty to monitor GC's and Arthur Andersen's conduct. (P. Mem.10.)

- Koll and Knook allegedly signed materially false and misleading registration statements for the AGC IPO and AGC Stock Incentive Plan. (Compl.¶¶ 638, 669.) Hippeau allegedly signed those two statements as well as the AGC Notes Registration Statement. (*Id.* ¶ 656.) Knook and Hippeau also authorized the release on their behalf of AGC's 2000 Form 10-K filed on April 1, 2001. (P. Mem.10-11.)

### III. *Underlying Claims*

**\*7** Having presented plaintiffs' general arguments and core factual allegations, the Court will lay out the legal landscape in which plaintiffs' arguments must find their bearing.

#### A. Respondeat Superior

Counts XVII, XVIII, and XXIV bring Section 10(b) and Section 11 claims on a theory of respondeat superior.

#### 1. Section 10(b) and Rule 10b-5

Section 10(b) protects investors by making it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to SEC Rule 10b-5, it is unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

In re Global Crossing, Ltd. Securities Litigation, Not Reported in F.Supp.2d (2005)
2005 WL 1907005

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To better achieve Section 10(b)'s aim of setting "a high standard of business ethics in the securities industry," *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 151 (1972) (citing *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186 (1963) (internal quotation marks omitted)), the Exchange Act is "to be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *Id.* (internal citation and quotation marks omitted).

Plaintiffs here bring claims under the commonly used Rule 10b-5(b), as well as under the more general provisions of Rule 10b-5(a) and (c). In order for a claim brought under Rule 10b-5(b) to survive a motion to dismiss, a plaintiff must allege that the defendant, "in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000). A statement or omission is material if it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976). Rule 10b-5(a) and (c) more generally prohibit the use of "any device, scheme, or artifice to defraud" or the participation "in any act, practice, or course of business" that would perpetrate fraud on investors. In contrast, plaintiffs bringing claims under Rule 10b-5(a) and (c) must allege that "(1) they were injured; (2) in connection with the purchase or sale of securities; (3) by relying on a market for securities; (4) controlled or artificially affected by defendant's deceptive or manipulative conduct; and (5) the defendants engaged in the manipulative conduct with scienter." *In re Initial Public Offering Sec. Litig.,* 241 F.Supp.2d 281, 385 (S.D.N.Y.2003) (citing *In re Blech Sec. Litig.* 961 F.Supp. at 582).

**\*8** Under Section 10(b), the plaintiff must show that " 'plaintiff's reliance on defendant's action caused plaintiff injury." ' *In re Worldcom, Inc.,* No. 02 Civ. 3288, 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003) (quoting *Press v. Chem Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir.1999)). To establish causation under federal securities laws, the " 'plaintiff must allege both transaction causation, *i.e.,* that *but for* the fraudulent statement or omission, the plaintiff would

not have entered into the transaction; and loss causation, *i.e.,* that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." ' *Id.* (citing *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001)). "To show reliance on a defendant's statement, 'the misrepresentation must be attributed,' to the defendant at the time of public dissemination and 'in advance of the investment decision." ' *Id.* (citing *Wright,* 152 F.3d at 175).

Despite defendants' urging that *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994), precludes plaintiffs' theories of liability, plaintiffs do not actually argue or allege that either Microsoft or Softbank aided and abetted a fraud by AGC or its officers or directors. Rather, plaintiffs' argument is that Microsoft and Softbank were primary participants in the alleged fraud. Thus, *Central Bank'* s holding-that there is no private cause of action against mere aiders and abettors of section 10(b) violations-is largely irrelevant here, aside from the Supreme Court's insistence that "[t]he absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchase or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met." 511 U.S. at 191 (emphasis in original). The Second Circuit has elaborated that in cases brought under Rule 10b-5(b), defendants can only be held liable for statements that are publicly attributed to them. *See Wright,* 152 F.3d at 175. Thus, in order for a defendant to be held liable for a claim brought under Rule 10b-5, a plaintiff must allege that the defendant made a false or misleading statement or omission that was attributed to him or her, or that s/he "participated in [a] fraudulent scheme or other activity proscribed by the securities laws." *SEC v. U.S. Environmental, Inc.,* 155 F.3d 107, 111 (2d Cir.1998) (citations omitted).

2. Section 11

Section 11 imposes civil liability on persons preparing materially misleading registration statements. To state a claim under Section 11, an injured plaintiff must allege only that a defendant made or participated in making a "material misstatement or omission" in a registration statement for a security the plaintiff acquired. Liability for such misstatements extends to, among others, any person who "signed the registration statement" or "was a director of ... the

issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted." 15 U.S.C. § 77k. Section 11 "identifies the various categories of defendants subject to liability for a violation," *Central Bank,* 511 U.S. at 179, and courts have construed the list strictly. *SeeHerman & MacLean v. Huddleston,* 459 U.S. 375, 382-83 & n. 13, 386 n. 22 (1983); *Kusner v. First Penn. Corp,* 531 F.2d 1234, 1240 (3d Cir.1976) (Rosen, J., concurring); *seealsoQuantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 665 n. 5 (S.D.N.Y.1987). Finally, "[n]o intent to defraud need be alleged under Section 11." *In re Global Crossing,* 322 F.Supp.2d at 347 (citing *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382 (1983)).

3. Application to Plaintiffs' Claims

**\*9** Plaintiffs claim that Microsoft and Softbank are liable under Section 10(b), Rule 10b-5, and Section 11, pursuant to principles of respondeat superior, for Koll's, Knook's, and Hippeau's conduct as directors of AGC. [7] Plaintiffs contend that Knook, Koll, and Hippeau undertook actions in violation of the securities laws-that Koll, Knook, and Hippeau were responsible for publishing registration statements which contained materially false and misleading statements about AGC's finances, and that they "caused" AGC to sell securities to investors at artificially inflated prices-for which Microsoft and Softbank should be held responsible. Microsoft and Softbank argue that plaintiffs have failed to allege facts to support respondeat superior liability, or to support the attribution requirement for secondary liability after *Central Bank,* 511 U.S. 164. (Microsoft Mem. 4-14; Softbank Mem. 2-7.)

[7]   As discussed before, *supra* note 5, although plaintiffs seem to attempt to bring their Sections 10(b) and 11 claims in Counts XVII and XVIII directly against Microsoft and Softbank, their claims rely on Knook's, Koll's, and Hippeau's authority as directors within AGC, and therefore rely on an agency theory. (P. Mem.26-28.) Accordingly, the Court's analysis here disposes of those counts, as well as those that explicitly rely on a respondeat superior theory.

In light of plaintiffs' reliance on Koll's, Knook's, and Hippeau's roles in the alleged fraud at issue, the core question as to plaintiffs' Sections 10(b) and 11 claims against Microsoft and Softbank is whether plaintiffs have sufficiently pled facts that support the existence of an agency relationship between Koll, Knook, and Microsoft, and Hippeau and Softbank.

Agency is a factual relationship that cannot simply be pled into existence.

In determining agency, control is the determinative issue. *SeeMaritime Adventures Int'l, Inc. v. Caribbean Trading & Facility, Ltd.,* 689 F.Supp. 1340, 1353 (S.D.N.Y.1988). Although it may be true in some general sense that "[i]t is axiomatic that employers 'control' their employees" (P. Mem.18), pleading an employment relationship is insufficient to establish agency between Microsoft and Softbank and its employees in their capacities as directors of an independent corporation. That Koll, Knook, and Hippeau were Microsoft's and Softbank's employees, and that Microsoft and Softbank exercised their power to appoint directors to AGC to appoint those employees, is insufficient to create an inference that Microsoft and/or Softbank controlled Koll, Knook, and/or Hippeau in their capacities as AGC's directors. Where a plaintiff pleading respondeat superior (or control) "seeks to attribute control status to a third party, director, or employee who is not in a control position nor an outside party such as an attorney, auditor, or underwriter, then further factual allegations [beyond a substantial stock relationship or officer/ director status] must be made to show that in fact such control can be inferred." *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.,* 941 F.Supp. 1369, 1378 (S.D.N.Y.1996). As plaintiffs have pled no facts to suggest that Microsoft or Softbank directed or controlled their appointees to the AGC board in their appointees' capacities as AGC directors, plaintiffs conclusory allegations of agency fail to establish or suggest any sort of agency-based liability.

Agency requires "a finding that the principal directs and controls the agent's actions." *In re Sunbeam Corp.,* 284 B.R. 355, 366 (S.D.N.Y.2002). Plaintiffs' complaint and memorandum in opposition to defendants' motions provide nothing more than recitations of the legal standard of agency, which are belied by other portions of the complaint. Indeed, the complaint states that the shareholder agreement gave Microsoft and Softbank "substantial control over" AGC. (Compl.¶ 205.) But nowhere does the complaint mention any way in which the Agreement gave Microsoft or Softbank direct control over AGC. While the Agreement gives the directors appointed by Microsoft and Softbank a veto over certain specific extraordinary transactions, it does not give Microsoft or Softbank, or the directors appointed by them, any special authority over the day-to-day operations of AGC.

**\*10** The basic theory of the complaint as to Microsoft and Softbank is that Microsoft and Softbank had the power to

In re Global Crossing, Ltd. Securities Litigation, Not Reported in F.Supp.2d (2005)

2005 WL 1907005

control AGC through the power to appoint a representative to the AGC board. (*Id.* ¶¶ 205-08.) But the power to appoint a representative to the AGC board, even combined with minority shareholder status, is insufficient to raise the inference that Microsoft or Softbank controlled Koll, Knook, or Hippeau. *See US Airways Group, Inc. v. British Airways, PLC,* 989 F.Supp. 482, 494 (S.D.N.Y.1997); *In re Deutsche Telekom,* 2002 WL 244597, at \*6-\*7. Plaintiffs allege no facts from which it could be inferred that these individuals acted at the behest of Microsoft or Softbank in exercising their duties as directors in relation to the ordinary operations of AGC.

As to plaintiffs' 10b-5(b) claims, moreover, plaintiffs have not provided any factual basis from which it could be inferred that Koll's, Knook's, or Hippeau's statements as AGC directors should be attributed to Microsoft or Softbank. Plaintiffs argue that Koll's, Knook's, and Hippeau's alleged misrepresentations are attributable to Microsoft and Softbank because Koll's and Knook's affiliation with Microsoft, and Hippeau's affiliation with Softbank, were disclosed in various of AGC's public filings; Koll, Knook, and Hippeau were acting on behalf of Microsoft and Softbank; and Koll, Knook, and Hippeau were responsible for publishing registration statements that contained materially false and misleading statements about AGC's finances.[8] (P. Mem.20-22.) But plaintiffs do not substantiate their assertions of attribution with any concrete factual allegations. Although AGC's public materials touted general synergy between Microsoft and Sofbank, nothing plaintiffs point to suggest that Microsoft or Softbank guaranteed any particular decision by or information about AGC, such that the public could reasonably rely on it.

[8] In the alternative, plaintiffs' contend that "attribution is irrelevant to a respondeat superior analysis as such claims are premised upon the agent's wrongdoing (the agent is the primary violator) for which a principal is responsible by virtue of the legal relationship between the parties." (P. Mem. 21 (citing *Vento & Co. v. Metromedia Fiber Network, Inc.,* No. 97 Civ. 7751, 1999 WL 147732, at \*12 (S.D.N.Y. Mar. 18, 1999).) Despite their citation to one opinion of another judge of this Court, plaintiffs' argument is plainly inconsistent with *Central Bank,* 511 U.S. 164, and *Wright,* 152 F.3d at 175, which make clear that in cases brought under Rule 10b-5(b), defendants can only be held liable for statements that are publicly attributed to them. *See In re Global Crossing,* 322 F.Supp.2d at 349; *Gabriel Capital, L.P. v. Natwest Finance, Inc.,* 122 F.Supp.2d 407, 430-31 (S.D.N.Y.2000) ("[A] principal can be liable under § 10(b) for the misrepresentations of its agent only if the person to whom the misrepresentations were made knows that the agent is acting under the actual or apparent authority of the principal.")

This Court has previously noted that "a plaintiff may state a claim for primary liability under Section 10(b) for a false statement (or omission), even where the statement is not publicly attributed to the defendant, where the defendant's participation is substantial enough that s/he may be deemed to have *made* the statement, and where investors are sufficiently aware of defendant's participation that they may be found to have *relied* on it as if the statement had been attributed to the defendant." *In re Global Crossing,* 322 F.Supp.2d at 333 (emphasis in original). Plaintiffs attempt to fuel their attribution theory by pointing to AGC's public filings, including AGC's IPO Registration form, which disclosed Koll's and Knook's relationships with Microsoft and Hippeau's relationship with Softbank. But surely such matter-of-course disclosures, accompanied by conclusory assertions that defendant-employees filed allegedly false registration statements "acting on behalf of Microsoft and Softbank," are insufficient to connect Knook's, Koll's, or Hippeau's actions as AGC directors to Microsoft or Softbank, or to sustain the high burden of attribution. Indeed, as Softbank points out, that Softbank designated Hippeau (or that Microsoft designated Koll and Knook) to serve as an AGC director pursuant to the Shareholder Agreement cannot amount to a substantive allegation that Hippeau was Softbank's agent (or that Koll or Knook were Microsoft's agents) in his capacity as an AGC director. *See Andreae v. Andrea* Civ. A. No. 11905, 1992 WL 43924, at \*5 (Del. Ch. Mar. 3, 1992) (noting that Delaware courts have "consistently ... rejected" the argument that a director lacks independence from the person who nominated or appointed him as a director); *Aronson v. Lewis,* 473 A.2d 805, 816 (Del.1984).

**\*11** As to plaintiffs' Section 11 claims, the complaint alleges that Knook, Koll, and Hippeau personally signed "certain of [AGC's] false and misleading SEC fillings." (Compl.¶¶ 53, 638, 656, 669.) But plaintiffs have failed to plead any facts sufficient to show that any of the alleged misstatements were made by or on behalf of Softbank or Microsoft. Stated another way, plaintiffs have provided no set of facts under which Microsoft or Softbank should be held liable for making or participating in a "material misstatement or

omission" in AGC's registration statement. Knook, Koll, and Hippeau are alleged to have signed such statements, but without allegations substantiating a concrete connection between those signatures and any direction from Microsoft and Softbank, liability cannot extend to those entities.

Plaintiffs fail to allege any facts to suggest that Microsoft's or Softbank's appointees to the AGC board acted as their agents in their capacities as AGC directors. Having failed to plead respondeat superior liability, or that Knook's, Koll's, or Hippeau's actions were attributable to Microsoft or Softbank, plaintiffs have failed to state claims under Section 10(b) of the Exchange Act and Section 11 of the Securities Act.

## C. Control-Person Liability

Counts XXI and XXII bring claims of control-person liability.

### 1. Section 20(a) and Section 15

Section 20(a) of the Exchange Act provides for control-person liability for underlying securities law violations. The relevant provision states that:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The provisions of Section 15 of the Securities Act are essentially parallel, providing control-person liability for claims brought under Sections 11 and 12, and its terms are interpreted in the same manner as those of Section 20(a). 15 U.S.C. § 77o; *In re Initial Public Offering,* 241 F.Supp.2d at 392-93. Each provision provides a separate basis for liability, apart from the underlying claim of primary liability.

In order to state claims under Sections 20(a) and 15, it is noncontroversial that plaintiffs must allege (a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator. *SeeBurstyn,* 2002 WL 31191741, at *7;*seealsoBoguslavsky,* 159 F.3d at 720. Section 20(a) contains the additional requirement that plaintiff allege culpable participation "in some meaningful sense" by the controlling person in the fraud. *Id.* (internal citation and quotation marks omitted); *seeIn re Global Crossing,* 322 F.Supp.2d at 349 & n. 24.

#### a. Control

**\*12** To be liable as a control person, the defendant "must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person." *Wallace v. Buttar,* 239 F.Supp.2d 388, 396 (S.D.N.Y.2003). In other words, plaintiffs must show both that the defendant "possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise,"*SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472-73 (2d Cir.1996) (internal citation and quotation marks omitted); *In re Blech,* 961 F.Supp. at 586, and that defendant had "actual control over the transaction in question." *Ross v. Bolton,* No. 83 Civ. 8244, 1989 WL 80428 (S.D.N.Y. Apr. 4, 1989) (internal citation and quotation marks omitted); *seeWallace,* 239 F.Supp.2d at 396;*In re CINAR Corp. Sec. Litig.,* 186 F.Supp.2d 279, 319 (E.D.N.Y.2002). Conclusory allegations of control are insufficient as a matter of law. *SeeIn re Deutsche Telekom AG Sec. Litig.,* No. 00 Civ. 9475, 2002 WL 244597, at *5-*7 (S.D.N.Y. Feb. 20, 2002). *Converse, Inc. v. Norwood Venture Corp.,* No. 96 Civ. 3745, 1997 WL 742534, at *3-*4 (S.D.N.Y. Dec. 1, 1997); *Sloane Overseas Fund,* 941 F.Supp. at 1378-79 (S.D.N.Y.1996); *Martin v. EVP Second Corp.,* No. 90 Civ. 7074, 1991 WL 131176, at *3 (S.D.N.Y. July 9, 1991). Because "the power to direct the management and policies of a person must be a real, de facto power and not just de jure[,] officer or director status alone does not constitute control." *Wallace,* 239 F.Supp.2d at 396 (internal citation and quotation marks omitted); *In re CINAR Corp.,* 186 F.Supp.2d at 319. Neither is status as a minority shareholder sufficient "by itself to infer control." *In re Deutsche Telekom,* 2002 WL 244597, at *6-*7.

#### b. Culpable Participation

For a Section 20 claim, in addition to the requirement of control, a plaintiff must also demonstrate that "the controlling person was in some meaningful sense a culpable participant in the primary violation." *Boguslavsky,* 159 F.3d at 720

In re Global Crossing, Ltd. Securities Litigation, Not Reported in F.Supp.2d (2005)

2005 WL 1907005

(internal citation and quotation marks omitted). The PSLRA's heightened pleading requirements apply, and "plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *In re Global Crossing, 322 F.Supp.2d at 349* (internal citation and quotation marks omitted). "[D]etermination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability." *Boguslavsky,* 159 F.3d at 720. A complaint that does not contain "detailed allegations regarding the state of mind of the 'control person' " must be dismissed. *Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569, 2001 WL 286757, at *11 (S.D.N.Y. Mar 23, 2001); *In re Sotheby's Holdings, Inc.,* No. 00 Civ. 1041, 2000 WL 1234601, at *7-*8 (S.D.N.Y. Aug. 31, 2000); *In re Twinlab Corp. Sec. Litig.,* 103 F.Supp.2d 193, 208-09 (E.D.N.Y.2000).

### 2. Application to Plaintiff's Claims

**\*13** Defendants move to dismiss plaintiffs' § 15 and § 20(a) claims on the grounds that plaintiffs fail to sufficiently allege that Microsoft and Softbank had actual control over their appointees to the AGC board and AGC, and moreover, that plaintiffs fail to allege Microsoft's and Softbank's "culpable participation" in alleged securities violations committed by AGC or its representatives. (Microsoft Mem. 14-22; Softbank Mem 15-22.) Plaintiffs oppose defendants' motions, arguing that Microsoft and Softbank indeed controlled and directed their appointees to AGC's board and AGC, and accordingly participated in an unlawful scheme to defraud investors. (P. Mem.26-32.) As the Court finds that plaintiffs have failed to allege control, there is no need to reach the issue of whether Microsoft or Softbank culpably participated in the alleged securities violations committed by AGC.

Similar to the respondeat superior claims, the central issue is whether plaintiffs have adequately alleged control, and plaintiffs' attempts again fail. Microsoft's and Softbank's status as minority shareholders of AGC is insufficient to establish or permit an inference of actual control. *See In re Deutsche Telekom,* 2002 WL 244597, at *6-*7 (dismissing control-person claim against 22% shareholder where the only allegations of control were shareholder status and generalized assertion of "access to copies of the complained of statements prior to" when issued, and a different shareholder owned 43% of the primary violator); *see Sloane Overseas Fund,* 941 F. Supp at 1378-79; *In re Twinlab Corp. Sec. Litig. v. Perrigo Co.,* 103 F.Supp.2d 193, 209 (E.D.N.Y.2000). This

is not a situation where one entity was the sole shareholder and controlled the corporation, *see Dietrich v. Bauer,* 126 F.Supp.2d 759, 764-65 (S.D.N.Y.2001), but rather a situation where each of two minority shareholders appointed one outside director to a twelve-director board. *See Travelers Ins. Co. v. Lewis,* 756 F.Supp. 172, 177 (S.D.N.Y.1991). Allegations that a person was one of multiple directors of the primary violator does not raise an inference of control over that entity. *Wallace,* 239 F.Supp.2d at 396; *see In re CINAR Corp. Sec. Litig.,* 186 F.Supp.2d at 319. Accordingly, neither does a party's ability to appoint or elect a director to the board constitute control of the company by the party appointing that director. *See Theoharous v. Fong,* 256 F.3d 1219, 1227-28 (11th Cir.2001); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 308 F.Supp.2d 249, 273-74 (S.D.N.Y.2004).

The Shareholder Agreement empowered Softbank and Microsoft to each appoint a member to the AGC board, and that director held the power to veto certain extraordinary corporate actions. But plaintiffs mention no power that Microsoft or Softbank had over Koll, Knook, or Hippeau, after they had exercised their power to appoint. Because plaintiffs have failed to "allege specifically how each director possessed the power to direct or cause the direction of the management" of the primary violator, *Kimmel v. Labenski,* 85 Civ. 804, 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988), let alone how Microsoft or Softbank controlled Knook, Koll, or Hippeau to direct AGC, plaintiffs fail to state control-person liability claims.

## CONCLUSION

**\*14** For the forgoing reasons, Microsoft's and Softbank's motions to dismiss are granted, and Counts XVII, XVIII, XXI, XXII, and XXIV are dismissed as to Microsoft and Softbank. [9]

[9]   Plaintiffs have moved to amend their complaint as to Softbank. In light of Softbank's motion to dismiss, however, the parties agreed to defer full briefing of that motion until this Court's decision on Softbank's motion. Accordingly, Softbank has not opposed plaintiffs' motion to amend, with the expectation that if Softbank's motion is granted-which it now has been-Softbank will have an opportunity to respond to the motion to amend. Although the motion to amend is not fully

before the Court, the proposed amended complaint includes important details missing from the current complaint as to the relationship between Softbank, Hippeau, and the alleged fraud and AGC, and may well cure the deficiencies identified by this opinion of the second amended complaint.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1907005

---

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.