Katz v. China Century Dragon Media, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 6047093

---

🏴 KeyCite Yellow Flag - Negative Treatment

Distinguished by Brown v. China Integrated Energy, Inc., C.D.Cal., July 12, 2012

2011 WL 6047093
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Dan KATZ

v.

CHINA CENTURY DRAGON MEDIA, INC., et al.

No. LA CV11–02769 JAK (SSx).
|
Nov. 30, 2011.

**Attorneys and Law Firms**

Laurence M. Rosen, Rosen Law Firm P.A., Los Angeles, CA, for Dan Katz.

Eugene R. Licker, Laura M. Vasey, Loeb & Loeb L.L.P., Bryan T. Mohler, Pryor Cashman L.L.P., New York, NY, Walter Allan Edmiston, Robert J. Catalano, Loeb & Loeb, Daniel D. Harshman, Cozen O'Connor, Christopher F. Wong, Drinker Biddle & Reath L.L.P., Michael J. Niborski, Pryor Cashman L.L.P., Los Angeles, CA, Bruce Halliday Jackson, Irene V. Gutierrez, Baker & McKenzie L.L.P., San Francisco, CA, Robert W. Hayes, Cozen O'Connor, Philadelphia, PA, for China Century Dragon Media, Inc., et al.

**Proceedings: (IN CHAMBERS)
ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS (Dkt.43, 48, 73)**

JOHN A. KRONSTADT, District Judge.

**\*1** Andrea Keifer, Deputy Clerk.

**I. *Introduction***

Plaintiffs are shareholders of Defendant China Century Dragon Media ("China Dragon"). They have sued various defendants for securities violations arising from China Dragon's February 2011 initial public offering ("IPO"). Plaintiffs allege that Defendants falsely stated China Dragon's earnings in its registration statement and prospectus issued in connection with the IPO. Plaintiffs bring a putative class action, alleging violations of Section 11, 15 U.S.C. § 77k, Section 12(a)(2), 15 U.S.C. § 77*l,* and Section 15, 15 U.S.C. § 77*o,* of the Securities Act of 1933. Certain defendants have moved to dismiss Plaintiff's First Amended Complaint ("FAC"). The Court heard oral argument in the matter on November 10, 2011 and took the matter under submission. Dkt. 100. For the following reasons, the Court GRANTS Defendants' motions to dismiss with leave to amend.

**II. *Factual Allegations***

China Dragon is an American company that sells advertising on Chinese television. All of China Dragon's operations are conducted by Beijing CD Media Advertising Co., Ltd. ("CD Media Beijing"), a Chinese company. Huizhou CD Media Co., Ltd. ("CD Media Huizhou") is a Chinese company that is a wholly owned subsidiary of China Dragon. CD Media Huizhou has a series of contractual relationships with CD Media Beijing through which China Dragon controls CD Media Beijing's operations.

China Dragon filed its registration statement with the SEC in February 2011. The registration statement included a prospectus for the public offering of common stock. The prospectus represented China Dragon's revenues from Fiscal Year ("FY") 2009 as approximately $75 million and from FY 2008 as approximately $45 million; it represented China Dragon's profits from FY 2009 as nearly $15 million and from FY 2008 as more than $8 million. First Amended Complaint ("FAC") ¶ 56, Dkt. 24. However, CD Media Beijing's filings with the Chinese State Administration for Industry and Commerce ("SAIC") made materially different statements about its finances. Thus, these SAIC filings represented CD Media Beijing's revenues from FY 2009 as only $9.5 million and from FY 2008 as only $15 million. In addition, these filings represented CD Media Beijing's profits from FY 2009 as $260,000 and from FY 2008 as approximately $360,000. FAC ¶ 56. Plaintiffs allege that, because all of China Dragon's operations run through CD Media Beijing, its financial information should be substantially the same as that of CD Media Beijing. Plaintiffs allege that the smaller SAIC numbers are the true numbers, and that the prospectus numbers, on which Plaintiffs relied in purchasing China Dragon shares in the IPO, were false.

China Dragon stock began trading on February 7, 2011 on the NYSE Amex exchange. On March 21, 2011, Amex halted trading on China Dragon stock; a week later, it began proceedings to delist China Dragon Stock. MaloneBailey, China Dragon's auditor, issued a resignation letter indicating

that China Dragon's accounting records had been falsified and that there were discrepancies in its financial audit from FY 2010. This letter also stated that MaloneBailey was withdrawing its audit opinion as to financial years 2009 and 2008. FAC ¶¶ 18, 36–39, 50–51. Plaintiffs allege that they were injured because China Dragon stock traded after the initial public offering ("IPO") at $5.25 per share, but has fallen to only $0.30 per share, a nearly 95% decline.

**\*2** Defendant China Dragon has moved to dismiss Plaintiffs' claims for violations of Sections 11 and 12(a)(2) of the Securities Act of 1933. The Underwriter Defendants (WestPark Capital, Joseph Gunnar & Co, I–Bankers Securities, and Aegis Capital Corp.) have moved to dismiss Plaintiffs' claims for violations of Sections 11 and 12(a) (2) of the Securities Act of 1933. Defendant Richard Rappaport, CEO of Underwiter Defendant WestPark, has moved to dismiss Plaintiffs' claim for a violation of Section 15 of the Securities Act of 1933.

### III. *Analysis*

#### A. Legal Standard

1. *The Securities Act of 1933*
Section 11 prohibits omissions and misrepresentations in a registration statement. To state a claim under this statutory provision, a plaintiff must plead "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capitol Bancorp Ltd,* 551 F.3d 1156, 1161 (9th Cir.2009).

Section 12(a)(2) prohibits omissions and misrepresentations in conjunction with sale of a security. To state a claim under this provision, a plaintiff must plead:

> (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading.

*Miller v. Thane International, Inc.,* 615 F.3d 1095, 1099 (9th Cir.2010).

Section 15 imposes individual liability on those who "control" an entity that committed a securities violation under Sections 11 or 12. "In order to prove a prima facie case under [Section 15], plaintiff must prove: (1) a primary violation of federal securities laws ... and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1065 (9th Cir.2000). A plaintiff need not prove that a defendant was a "culpable participant." *S.E.C. v. Todd,* 642 F.3d 1207, 1222 (9th Cir.2011). Rather, "actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control." *Id.* at 1223. Further,

> [t]he fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a controlling person. Rather, indicia of "control" include whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements, which is sufficient to presume control over the transactions giving rise to the alleged securities violation.

*Id.* at 1223.

2. *Fraud*
If a claim under Section 11 or Section 12(a)(2) "sounds in fraud," then a plaintiff must plead with particularity as required by Civil Rule 9(b). *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003). A claim sounds in fraud where it "alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim." *Rubke,* 551 F.3d at 1161. A claim does not sound in fraud where the alleged misrepresentations were made as a result of mere negligence. *Vess,* 317 F.3d at 1103–04.

**\*3** A complaint's disclaimer that its claims do not sound in fraud does not affect the requirement to plead in accordance with Rule 9(b) if the claims in fact sound in fraud. *See In*

2011 WL 6047093

*re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n. 2 (9th Cir.1996) ("[Plaintiff] argues that it specifically disclaimed any allegations of fraud with respect to its Section 11 claims. These nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus.").

To plead fraud under Civil Rule 9(a) in the context of a violation of Section 11 or Section 12(a)(2), a complaint must

> "state with particularity the circumstances constituting fraud ...." FED. R. CIV. P. 9(b). In other words, the complaint must set forth what is false or misleading about a statement, and why it is false. This requirement can be satisfied by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants.

*Rubke,* 551 F.3d at 1161. Similarly,

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.

*Vess,* 317 F.3d at 1106. However, a plaintiff need not plead scienter with respect to alleged violations of Sections 11 and 12(a) (2); "such claims may be based on negligent or innocent misstatements or omissions." *In re Stac,* 89 F.3d at 1405 n. 3. Similarly, a plaintiff need not plead reliance, where he pleads that he purchased his shares within twelve months of the IPO. *See* 15 U.S.C. § 77k(a).

### 3. *Standing*

Section 11 confers standing to sue on

> any person acquiring such security on the first day of an initial public offering or in the twenty-five day period thereafter.... The limitation on "any person" is that he or she must have purchased "such security." Clearly, this limitation only means that the person must have purchased a security

issued under that, rather than some other, registration statement.

*Hertzberg v. Dignity Partners,* 191 F.3d 1076, 1079–80 (9th Cir.1999). In other words, to have standing to sue based on misrepresentations in a particular registration statement, a plaintiff must have purchased pursuant to that registration statement.

The standing requirements for Section 12(a)(2) are essentially the same as those for Section 11. Thus, a plaintiff must establish that he purchased a security pursuant to a particular prospectus. *See J and R Marketing, SEP v. General Motors Corp.,* 549 F.3d 384, 389 (6th Cir.2008) ("Because both causes of action [under Sections 11 and 12(a)(2) ] are tied to an offering document or oral communication, only those who acquired securities in the offering to which the document or oral communication pertains have standing to sue.").

### B. Application

#### 1. *Section 11*

**\*4** Although Plaintiffs contend that their "claim is not based on, does not allege, nor does it sound in, fraud," FAC ¶ 62, an examination the FAC shows otherwise: Their claims do sound in fraud. It is implausible that, if China Dragon's profit and revenue reports to the SAIC were correct, as Plaintiffs allege, China Dragon's grossly different numbers reported on its prospectus could have been included "negligently." This conclusion also flows from other core allegations of the First Amended Complaint, *i.e.,* that China Dragon knew that the financial terms in its prospectus were false, but included them in order to inflate IPO prices. In addition, Plaintiffs suggest, by including statements MaloneBailey made when withdrawing as China Dragon's accountant, that China Dragon's "records had been falsified," that there were "perceived forgeries" in the records, and that China Dragon knew of this falsification. FAC ¶¶ 18, 22. This is further support for the view that the FAC is premised on allegations of fraud. In short, Plaintiffs plead a "unified course of fraudulent conduct," *i.e.,* that Defendants together included false profit and revenue reports, instead of the true SAIC numbers. *See Rubke,* 551 F.3d at 1161. The fact that Plaintiffs disclaim that they are pleading fraud is irrelevant, because the only actions of Defendants that Plaintiffs rely on in their Section 11 claim are those that sound in fraud, *i.e.,* the inclusion of the false profits and revenue reports.

Katz v. China Century Dragon Media, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 6047093

With respect to certain matters, Plaintiffs' complaint meets the standards of Civil Rule 9(b). Thus, Plaintiffs sufficiently allege what statements are allegedly false and who made these statements. In addition, Plaintiffs plead that the alleged misrepresentations were material, because the data concerned profits and revenues. *S .E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982) (defining the test for materiality as "whether the existence or nonexistence of the fact in question is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction").

In contrast, Plaintiffs fail to meet the heightened standard of pleading with respect to the claim that the profit and revenue reports in the SEC filings were false. Although Plaintiffs plead that the SAIC numbers differ from the SEC numbers, this is "merely consistent with" the SEC numbers' being false, and does not suffice to make that claim plausible. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiffs must plead with greater specificity to make plausible their claim that the SEC numbers, not the SAIC numbers, are false. Plaintiffs could do this, for example, by pleading that Chinese and American accounting standards are sufficiently similar such that the SAIC and SEC numbers should be substantially the same, or that Defendants relied on the same underlying financial data in preparing the SEC and SAIC reports.

**\*5** Contrary to Defendants' arguments, Plaintiffs need not plead loss causation, because the absence of loss causation is a defense that Defendants have the burden to prove. *See In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1421–22 (9th Cir.1994). Moreover, this is not one of the rare instances where, because "the face of the complaint" indicates that "the alleged misrepresentation could not have caused a plaintiff's damages," Plaintiffs must plead loss causation. *In re Washington Mutual, Inc. Securities Litigation,* 694 F.Supp.2d 1192, 1224 (W.D.Wash.2009). To the contrary, it seems evident that a misrepresentation regarding China Dragon's profits and revenues from 2008 and 2009, together with the 2010 discrepancies MaloneBailey identified and MaloneBailey's withdrawal of its opinion for 2008 and 2009, could have caused the delisting of China Dragon and rapid devaluation of its stock, thereby causing Plaintiffs' injuries.

2. *Section 12(a)(2)*

a) Specificity

Plaintiffs' pleading fails to state a cause of action under Section 12(a)(2) of the Securities Act of 1933 for the same reason that it fails to state a cause of action under Section 11: It does not plead falsity with the requisite specificity. In other respects, however, Plaintiffs have sufficiently pleaded that: (1) stock was sold, (2) through interstate commerce (*i.e.,* on the Amex), (3) by use of a prospectus, (4) with an untrue statement of profits and revenue. Similarly, Plaintiffs have sufficiently pleaded fraud under Rule 9(b), but for the lack of particularity regarding falsity.

b) Standing

Plaintiffs have sufficiently pleaded that Plaintiff Peter Van Nuis has standing to sue Underwriter Defendant Joseph Gunnar & Co ("Gunnar"), because they plead that Van Nuis purchased his China Dragon shares during the IPO from Gunnar. FAC ¶ 59. However, Van Nuis lacks standing to sue the remaining Underwriter Defendants, because he did not purchase China Dragon stock from them.

Plaintiffs have not sufficiently pleaded that Plaintiffs Dan Katz and Julius Shapiro have standing to sue any of the Underwriter Defendants, because they do not plead that that those Plaintiffs purchased their China Dragon stock in connection with the initial IPO, making those purchases traceable to the prospectus. Plaintiffs merely plead that "[e]ach Class Member acquired his, her, or its shares in, pursuant to and/or traceable to, and in reliance on, the Registration Statement and Prospectus." FAC ¶ 64. This allegation is entirely conclusory. Although Plaintiffs suggest that Katz and Shapiro must have bought in the IPO, because a planned resale of shares released under a private placement agreement did not occur, Plaintiffs' allegations do not rule out that the possibility that Katz and Shapiro purchased their shares in a manner not traceable to the IPO. Thus, Plaintiffs must plead with more specificity that Katz and Shapiro bought their shares in a manner traceable to the IPO. A failure to do so would mean that Plaintiffs lack standing to sue the Underwriter Defendants, except for Gunnar.

3. *Rappaport*

**\*6** Plaintiffs have not adequately pleaded that Defendant Rappaport was a control person of WestPark. Plaintiffs allege that: (i) Rappaport was WestPark's CEO, FAC ¶ 29, and sole owner, FAC ¶ 35; (ii) Rappaport was a major shareholder of SKRP 25, Inc., the "shell company" that eventually became China Dragon through a reverse merger transaction, FAC ¶ 29; (iii) Rappaport owned 11% of China

**Katz v. China Century Dragon Media, Inc., Not Reported in F.Supp.2d (2011)**

2011 WL 6047093

Dragon, FAC ¶ 35; and (iv) as a result Rappaport stood to derive substantial financial benefit from the IPO. *Id.* However, Plaintiffs cannot merely plead that Rapport was WestPark's CEO to establish the basis for a claim against him. They must plead more to establish control, such as that Rappaport was involved in day-to-day operations or that he was involved in formulating China Dragon's financial statements. Plaintiffs have also pleaded that Gunnar was brought in as an independent underwriter because of WestPark's conflict of interest, due to Rappaport's ownership interest in China Dragon, FAC ¶ 32. These allegations undercut Plaintiffs' claim that Rappaport was involved in preparing China Dragon's financial information. Rappaport's interest in China Dragon, through his equity ownership and ownership in SKRP, does not suffice to make him a control person of WestPark. Further, the FAC does not clearly allege that Rappaport was a control person at China Dragon.

Finally, for the reasons stated above, Plaintiffs have not adequately pleaded underlying violations of Sections 11 and 12(a) (2) under which WestPark would be liable. In a second amended complaint against Rappaport for violations of Sections 11 and 12(a) (2), Plaintiffs must adequately plead Rappaport's control to establish a basis for alleged liability under Section 15.

**IV.** *Conclusion*

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6047093

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.