Lindelow v. Hill, Not Reported in F.Supp.2d (2001)

2001 WL 830956, Fed. Sec. L. Rep. P 91,483

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Wafra Leasing Corp. 1999-A-1 v. Prime Capital
Corp.,   N.D.Ill.,   November 26, 2002

2001 WL 830956
United States District Court,
N.D. Illinois, Eastern Division.

Craig W. LINDELOW, Robin Brisker, and
Wilcris Trading, L.L.P., individually and on
behalf of others similarly situated Plaintiffs,
v.
Jay HILL, K. Shan Padda, Stephen L.
Holden, and John Reilly, Defendants.

No. 00 C 3727.
|
July 20, 2001.

MEMORANDUM OPINION AND ORDER

HOLDERMAN, J.

 **\*1**  Plaintiffs Craig Lindelow, *et. al.,* filed a class action suit
on behalf of all persons who purchased shares of Sabratek
Corporation ("Sabratek") between July 6, 1999 and October
6, 1999 against defendants Jay Hill, K. Shan Padda, Stephen
L. Holden, and John Reilly alleging violations of Sections
10(b) and 20(a) of the Securities Exchange Act of 1934,
15 U.S.C. § 78j(b), § 78t(a). All four defendants have
individually filed motions to dismiss, [1] arguing that plaintiffs
have failed to allege violations of § 10(b) and § 20(a)
generally, and that plaintiffs have failed to state a claim as to
them, individually. For the following reasons, this court finds
that plaintiffs have stated a claim under § 10(b) and § 20(a).
This court also finds that plaintiffs have stated a claim as to
each individual defendant under both § 10(b) and § 20(b).
Defendants' motions to dismiss are therefore DENIED.

[1]     Defendants all initially filed motions to dismiss
        which were put on hold pending efforts
        by the parties to resolve their differences
        without litigation. When efforts at settlement
        proved unsuccessful, the defendants all submitted
        what they called "refiled" motions to dismiss.
        Accordingly, this order applies to defendants'

refiled motions. Defendants' original motions are
moot.

BACKGROUND

This securities class action litigation arises out of a
press release ("the press release") issued by Sabratek on
July 6, 1999 concerning its acquisition of a company
called "Moon" and Moon's plans to and work towards
launching an Internet portal entitled "OneMedPlace.com."
According to plaintiffs' allegations, through early 1999,
Moon's business was to develop remote clinical medical
monitoring computer technology that would be operated
through a "closed" network on non-Internet telephone line
connections. (Pl.Comp.¶¶ 28-31.) In or about July 1997,
Moon and Sabratek entered into a licencing and an option
agreement. Under the option agreement, Moon could not
make any meaningful decisions or spend money without
Sabratek's consent. (Pl.Comp.¶ 30.) Throughout 1998, Moon
continued to work on the development of its clinical software.
On or about January 23, 1999, Sabratek used its influence
over Moon to replace its CEO with defendant Hill. Hill
was hand-picked by defendant Padda, Sabratek's CEO, and
reported to defendant Holden even before Moon was formally
acquired in 1999. (Pl.Comp.¶ 32.)

In February 1999, defendants Padda, Holden, and Hill
caused Moon to abandon Moon's development efforts on
clinical software and pursue a different business plan-
trying to develop an Internet healthcare "portal," later
dubbed OneMedPlace.com. (Pl.Comp.¶¶ 33-36.) Unlike
the clinical software, OneMedPlace.com was to be an
open Internet system geared toward administrative, not
clinical, applications. As such, according to plaintiffs, the
change represented a fundamental shift in Moon's business
plans which bore no relation to Moon's prior work on
clinical applications. (Pl.Comp.¶ 34.) Because it required
the development of interfaces to doctors, HMOs, hospitals,
and other entities, all of Moon's healthcare portal work for
OneMedPlace.com had to be done from scratch beginning on
or after February 1999. (Pl.Comp.¶ 34.)

According to plaintiffs' allegations, Moon's programers and
other technical employees reacted to the internal February
1999 announcement of the change in Moon's business plan
by informing Moon management that the proposed Internet
healthcare portal could not possibly be brought to fruition
in 1999 or any time soon thereafter. (Pl.Comp.¶ 35.) This
conclusion was later confirmed by consultants hired by

Sabratek in connection with OneMedPlace.com. (Pl.Comp.¶ 53(3).)

**\*2** By early July 1999, Moon management had not firmly settled on what its OneMedPlace.com Internet concept would offer. As of July 6, 1999, the day that OneMedPlace.com was introduced to the investing public as a "product," there were no concrete specifications or requirements, no technical development work had been completed, and not a single line of source code had been written for OneMedPlace.com. (Pl.Comp.¶ 37.)

The press release announcing Sabratek's acquisition of Moon which is the focus of this litigation was released by Sabratek on July 6, 1999. The press release's headline stated "Sabratek acquires Moon Communications, Internet Portal/ ASP Company." The portions of the press release which are at issue here stated:

> With Sabratek's involvement and guidance since the execution of a product licensing agreement, Moon has been evolving into a vertical healthcare portal with characteristics of an Application Service Provider (ASP).

The press release also quoted defendant Hill, Moon's CEO, as stating:

> 'We are very excited about, and are getting ready for, our controlled market launch of OneMedPlace.com' Moon's internet portal, said Jay Hill, Moon's CEO. 'We have until now remained very much in stealth mode, as we incorporated knowledge gained from trial sites to make our system as robust as it could be. Over the course of 1999, we look forward to systematic implementation of our product and rollout strategy. Our goal is to make OneMedPlace.com the de facto web based network of choice for physicians, patients, providers and payors.'

(Pl.Comp.¶ 53.) The press release concluded with the following statement: "This press release contains forward-looking statements. The actual results may differ materially from those projected in the forward-looking statements." The press release went on to advise investors that additional information concerning factors which could cause the actual

results to differ from those contained in the forward-looking statements could be found in Sabratek's publically filed periodic reports.

Plaintiffs allege that the above statements, among others, were false and misleading at the time they were made for several reasons, including: (1) there were no OneMedPlace.com trial sites; (2) there was no OneMedPlace.com "system," but merely a dummy demo version with woefully minimal content; (3) given the lack of any kind of operational system and the enormous hurdles involved in creating one, there was no reasonable possibility of a "systematic implementation" or "product rollout" or "market launch" of OneMedPlace.com in 1999 (as Moon's own technical personnel had advised defendant Hill); (4) no material, concrete steps had been taken to evolve Moon into a "vertical healthcare portal"; and (5) Moon had no near-term ability to assist in the creation of an "all-encompassing, interactive, web-enabled, on-line medical network" linking multiple constituents in the healthcare arena. (Pl.Comp.¶ 53.)

*STANDARD OF REVIEW*

**\*3** In ruling on a motion to dismiss, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2 (1977). The court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal under Rule 12(b)(6) is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *see also Panares v. Liquid Carbonic Industries Corp.,* 74 F.3d 786, 791 (7th Cir.1996).

*ANALYSIS*

I. *Plaintiffs' Fraud Allegations under Fed.R.Civ.P. 9(b) and the PSLRA Generally*

SEC Rule 10b-5, promulgated under Section 10(b) of the Securities Exchange Act of 1934, prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5. To state a valid Rule 10b-5 claim, a plaintiff must allege that the defendant (1) made a misstatement or omission,

Lindelow v. Hill, Not Reported in F.Supp.2d (2001)

2001 WL 830956, Fed. Sec. L. Rep. P 91,483

(2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries. *In re HealthCare Compare Corp. Securities Litig.,* 75 F.3d 276, 280 (7th Cir.1996). In addition, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." Fed.R.Civ.P. 9(b). With respect to securities fraud cases, Rule 9(b) requires that the essential element of scienter be pled with a sufficient level of factual support: "the complaint ... must afford a basis for believing that plaintiffs could prove scienter." *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990). The Seventh Circuit has held that a sufficient level of factual support may be found where the circumstances are pled "in detail." *Id.* at 627. "This means the who, what, when, where, and how" of the statement. *Id.*

Each defendant separately argues that plaintiffs have failed to allege violations of § 10(b) of the Securities Exchange Act of 1934 because they have failed to allege both scienter and material misrepresentations or omissions which are not covered by the Private Securities Litigations Reform Act's ("PSLRA") "safe harbor" provision for forward-looking statements.

### A. *False and Misleading Statements*

Defendants argue that the statements contained in the press release are not actionable because, read literally, word-by-word, the statements are true. For example, Hill argues that the press release's reference to "trial sites" was intended to refer to the non-Internet version of Moon's virtual hospital room's trial sites, not OneMedPlace.com trial sites. This court rejects defendants' arguments. Though some statements complained of by plaintiffs could be read as literally accurate, plaintiffs have sufficiently alleged that the statements were misleading in context. Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers. *McMahan & Co. v. Wherehouse Entm't, Inc.,* 900 F.2d 576, 579 (2nd Cir.1990); *Kaufman v. Motorola, Inc.,* 1999 WL 688780,* 5 (N.D.Ill. Apr. 16, 1999) (same). In assessing the sufficiency of plaintiffs' allegations for purposes of defendants' 12(b)(6) motion to dismiss, a court must consider the statements at issue both individually *and* collectively in the context in which they are made. *In re Next Level Sys.,*

*Inc.,* 1999 WL 387446,* 4 (N.D.Ill. Mar. 31, 1999). This court finds plaintiffs' allegations sufficient to show that the statements at issue, like those in *Next Level,* were misleading in the context in which they were made-as an announcement of a new, Internet-based portal.

**\*4** In addition, the press release is not protected from the securities laws merely because it speaks to matters of opinion and hope. In some circumstances, statements of goals can, in context, be read by the investor to imply that the company had a reasonable basis for its opinion. *See Roots Partnership v. Lands' End,* 965 F.2d 1411, 1417 (7th Cir.1992) ("Although defendants' alleged statements were contingent by their very nature, a reasonable investor could have taken them to imply that defendants' had a reasonable basis for stating that Lands' End's earnings goal was attainable in fiscal 1990."); *see also Harden v. Raffensperger, Hughes & Co., Inc.,* 65 F.3d 1392, 1405-06 (7th Cir.1995) ("The plaintiffs' claim alleges that, contrary to what the registration statement says, such plans did not exist and were not under consideration.... The dispute over the existence or nonexistence of these 'plans' is not the type of 'soft information' to which the bespeaks caution doctrine applies."). While "mere sales puffery is not actionable under Rule 10b-5," statements of opinion will be actionable if it is possible defendants "said things that were so discordant with reality that they would induce a reasonable investor to buy the stock at a higher price than it was worth ex ante." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 746 (7th Cir.1997). Plaintiffs have alleged that defendants made many of the alleged statements of "strategy" and "goals" while knowing or recklessly ignoring the fact that the stated goals were not attainable. Those allegations are sufficient to state a claim that defendants made false and misleading statements.

### B. *Forward-looking Statement Exception*

Defendants also argue that their statements are not actionable because they are "forward-looking statements," and thus protected by the PSLRA's "safe harbor" provision. This court does not agree. First, to the extent plaintiffs allege statements of "opinion" which, in context, appear to rest upon historical fact, those statements are not protected by the "forward-looking statement" safe harbor because they were not actually forward-looking. Second, to the extent the press release contains pure forward-looking statements of goals and projections, those statements were not accompanied by the "meaningful cautionary language" required to bring them within the PSLRA's safe harbor.

2001 WL 830956, Fed. Sec. L. Rep. P 91,483

Cases involving forward-looking statements are unique. "Predictions of future performance are inevitably inaccurate because things almost never go exactly as planned," *Arazie v. Mullane,* 2 F.3d 1456, 1468 (7th Cir.1993). Thus, companies making forward-looking statements are afforded a safe harbor: plaintiffs must allege "specific facts which illustrate that [the company's] predictions lacked a reasonable basis." *Id.* at 1468; *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1132 (7th Cir.1993) ("If those statements had a reasonable basis when made, the defendants did not commit fraud."). Projections which turn out to be inaccurate are not fraudulent simply because subsequent events reveal that a different projection would have been more reasonable. *Grassi v. Information Resources, Inc.,* 63 F.3d 596, 599 (7th Cir.1995). However, the PSLRA provides a safe harbor for class actions based on forward-looking statements only if and to the extent the forward-looking statement is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement. 15 U.S.C. § 78u-5(c)(1)(A)(i). To be effective, the cautionary language "must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge." *Harden v. Raffensperger, Hughes & Co., Inc .,* 65 F.3d 1392, 1404 (7th Cir.1995).

**\*5** Plaintiffs have alleged sufficient facts to take the press release out of the PSLRA's forward-looking statement safe harbor. First, plaintiffs allege several statements which, while appear to be forward-looking, were not actually strictly forward-looking in the context in which they were made. For example, the press release's statement that Moon was "getting ready for" the market launch of OneMedPlace.com, in context, could reasonably be read to be premised on the existence of some material steps and bona fide plans for a product rollout in 1999. Plaintiffs have alleged that neither existed. *See In re Ribozyme Pharm., Inc. Sec. Litig.,* 119 F.Supp.2d 1156, 1163 (D.Colo.2000) ( "Defendants' statements that Angiozyme had made 'both clinical history and industry news,' and a 'history-making leap,' are not necessarily forward-looking *given the full context* of the Press Release.") (emphasis added). Plaintiffs have also alleged that no reasonable basis existed for defendants' forward-looking statements at the time they were made, such that they are not protected by the forward-looking statements safe harbor.

Defendants also argue that the press release's forward-looking statements are protected because they were accompanied

by meaningful cautionary language. Specifically, the press release stated: "This press release contains forward-looking statements. The actual results might differ materially from those projected in the forward-looking statements." The warning also stated that additional information concerning factors that could cause actual results to materially differ from the forward-looking statements was contained in Moon's publicly filed records. The first part of the "cautionary language" is not sufficient to protect the statements because it is vague and does not advise the investor of any particular risks associated with Moon's ability (or inability) to launch OneMedPlace.com in 1999. "Vague or boilerplate disclaimers advising that a particular investment has risks generally will not suffice." *United States v. Morris,* 80 F.3d 1151, 1167 (7th Cir.1996). The second part of the "cautionary language" purports to provide more information, and refers the reader to Moon's publically filed records. However, defendants do not even attempt to argue that those records contain any information as to how the launch of OneMedPlace.com might be delayed, nor that it had not even entered a substantive planning stage, as plaintiffs allege. "[C]autionary language must be substantive and it must be tailored to the specific future projections, estimates and opinions' that are alleged to be misleading." *Id.; see also Helwig v. Vencor, Inc.,* 251 F.3d 540, 559 (6th Cir.2001) ("[C]autionary statements must be substantive and tailored to the specific future projections, estimates, or opinions ... which the plaintiffs challenge.") (internal quotations omitted). Defendants' proffered cautionary statements are boilerplate and not tied to the specific future projections made by defendants and thus fall into the same category as those discussed and rejected in *Morris.* As such, the press release is not protected by the PSLRA's safe harbor for forward-looking statements.

C. *Statements Attributable to Each Individual Defendant*

**\*6** Each defendant argues that plaintiffs have not alleged sufficient facts to show that the allegedly false or misleading statements were attributable to him. However, the press release directly quotes three of the four defendants-Padda, Reilly, and Hill. This court finds plaintiffs' allegations, including the attached allegedly false and misleading press release, sufficient to tie Padda, Reilly, and Hill to the allegedly fraudulent statements. *In re Newbridge Networks Sec. Litig.,* 926 F.Supp. 1163, 1174 (D.D.C.1996) ( "Furthermore, at least one press release specifically quoted defendant Sommerer, and another quoted defendant Matthews ... These allegations would seem to tie [the individual defendants] to the fraud itself.") (*quoting Cammer v. Bloom,* 711 F.Supp.

1264, 1295 (D.N.J.1989). [2] Plaintiffs argue that the press release is attributable to Holden, in addition to the quoted defendants, under the "group published" document doctrine. For the reasons explained more fully below, concerning all defendants' scienter, this court finds that plaintiffs have adequately alleged that Holden is responsible for the press release, as well. Plaintiffs allege that Holden was Sabratek's president and that Hill, who is directly quoted in the press release and whom plaintiffs allege had knowledge that OneMedPlace.com could not be launched in 1999, reported directly to him. Plaintiffs also state that they have subsequently learned that Holden was one of three Moon board members as of the date of the July 6, 1999 press release. Finally, plaintiffs allege that, by the time of the press release, Moon' business essentially was OneMedPlace.com. As such, plaintiffs have alleged sufficient facts to tie the July 6, 1999 press release to Holden.

[2]   While defendant Hill argues that *Newbridge Networks* is inapposite because the court made the statement in the context of § 20(b) control person liability, this court finds the court's statement in *Newbridge Networks,* that a defendant's quoted language in an allegedly false or misleading statement seems to tie the defendant to the fraud, to be equally apposite in determining to whom false and misleading statements are attributable in the context of § 10(b) liability.

### D. *Scienter as to Each Individual Defendant*

Each defendant argues that plaintiffs have not met the PLSRA's scienter pleading requirements as to each of them. Plaintiffs respond by arguing that the group pleading doctrine applies to the Securities Exchange Act of 1934, and that in any event, plaintiffs have sufficiently plead facts regarding each defendant's scienter to satisfy the PSLRA's scienter pleading requirement.

The PSLRA requires that: "In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The overwhelming majority of courts, particularly in this District, have adopted the Second Circuit's formulation for alleging scienter. *See, e.g., Danis v. USN Communications, Inc.,* 73 F.Supp.2d 923, 936-37 (N .D.

Ill.1999); *Miller v. Material Sci. Corp.,* 9 F.Supp.2d 925, 927 (N.D.Ill.1998). Under that standard, a plaintiff may allege two types of facts to establish the required "strong inference" of scienter: (1) facts showing the defendants had both motive and opportunity to commit fraud, or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Danis,* 73 F.Supp.2d at 937 (citing *Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 538 (2nd Cir.1999); *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1128 (2nd Cir.1994)).

**\*7**  Here, plaintiffs allege facts which they contend show strong circumstantial evidence of conscious misbehavior or recklessness. This court agrees that plaintiffs' allegations of what was represented about Moon and OneMedPlace.com and the facts, including what defendants were told regarding the feasability of launching the site in 1999 and lack of preparation toward that goal, supports a strong inference of scienter. *See In re 2TheMart.com, Inc. Sec. Litig.,* 114 F.Supp.2d 955, 960 (C.D.Cal.2000) (finding strong circumstantial evidence of deliberate recklessness where defendants made press releases regarding stage of development which did not mesh with reality). However, in order to sufficiently state a claim under the PSLRA, the complaint must allege facts showing *each* defendant acted with the required state of mind. Plaintiffs argue that: (1) the false and misleading statements alleged were so fundamental to the core operation of Moon that they can be attributed to defendants, who were all top management at Moon and/or Sabratek, its corporate parent; and (2) that they have alleged sufficient facts to demonstrate that each individual defendant was aware of the falsity of the statements, yet contributed to the press release nonetheless. This court addresses each argument in turn.

#### 1. *Defendants' Positions as "Top Management"*

Plaintiffs and defendants debate the level of particularity required to meet the PSLRA's requirement that "the complaint ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Judges of this District have likewise been unable to agree as to what is required to attribute fraudulent statements to corporate directors. *See Dardick v. Zimmerman,* 2001 WL 735580, [*] 1 (N.D. Ill. June 27, 2001) (recognizing division between courts in this District as to whether "group pleading" survived the enactment of the PSLRA). As pointed out by Judge Milton Shadur of this District, the schism has not generated any opinion from

2001 WL 830956, Fed. Sec. L. Rep. P 91,483

a source that makes precedent because pleading issues do not find their way to appellate court decisions. *See id.* The competing views among district courts are exemplified here, as they were in *Dardick,* by plaintiffs' reliance on an opinion by Judge Suzanne Conlon in *Danis v. USN Communications, Inc.,* 73 F.Supp.2d 923, 936-39 (N.D.Ill.1999), and by defendants' counter-reliance on the opinion of Judge Ruben Castillo in *Chu v. Sabratek Corp.,* 100 F.Supp.2d 827, 835-37 (N.D.Ill.2000) (previous litigation against Sabratek and its officers for different alleged misrepresentations). This court concurs with Judge Shadur that, "[w]hatever side of that disagreement might seem more persuasive as an abstract matter, there is of course no question that it is not fatal for any complaint to collectivize 'defendants' in certain respects." *Dardick,* 2001 WL 735580 at *1.

**\*8** Here, as in *Dardick,* plaintiffs' allegations of misrepresentations concern matters fundamental to the operations of Sabratek and Moon, namely Moon's ability (or inability) to conduct or even "get ready for" a market launch of OneMedPlace.Com in 1999. According to plaintiffs' allegations, OneMedPlace.com was virtually the only business of Moon by mid-1999, and constituted a "core project" of Sabratek, Moon's corporate parent. In *Dardick,* Judge Shadur found it "highly significant" that the alleged misrepresentation was the corporation's "deep and pervasive corporate illness-the existence of LINC's extraordinarily serious financial difficulties" and distinguished the facts from *Chu,* in which the alleged misrepresentation concerned allegedly flawed accounting practices of which a limited group of corporate managers would be expected to know. *Dardick,* 2001 WL 735580 at *3. This case is thus like *Dardick,* and unlike *Chu,* in that it is strongly inferential that every officer or director of Moon and Sabratek either had the knowledge of the feasibility of launching OneMedPlace.com in 1999, or, if not, that his failure to have such knowledge equated to reckless disregard. *See id.* "[N]othing in the Act or in any claimed abolition of a 'group pleading doctrine' renders such allegations insufficient as a matter of law." *Id.*

### 2. *Statements Attributable to Each Defendant*

Plaintiffs have also alleged sufficient facts to show that each individual defendant was responsible for the statements contained in the press release, and that each defendant was reckless as to the truth of those statements. As explained above, each defendant was quoted in the press release, with the sole exception of Holden.

Reilly argues that he cannot be held accountable for the press release statements because he was employed by Sabratek for only two months before the press release was issued. However, Reilly was directly quoted in the release, and, to the extent Reilly did not know the extent of Moon's capabilities to launch OneMedPlace.com in 1999, he could be found to have been reckless to allow his name to be used.

Hill argues that he cannot be held accountable because Sabratek, not Moon, issued the release, and he had no control over Sabratek as a controlling person at Moon. However, Hill is directly quoted in the press release, and therefore plaintiffs have alleged that he made the statement, was aware that it lacked a factual basis, and was aware of facts which directly undermined his quoted words.

Defendant Padda argues that plaintiffs have failed to allege scienter as to him because they did not allege that Padda sold any stock. Padda misreads the pertinent case law. The Second Circuit's test, adopted by certain judges in this District, states that a plaintiff may allege *either* facts showing the defendants had both motive and opportunity to commit fraud *or* facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Danis,* 73 F.Supp.2d at 937. Here, plaintiffs rely on the later type of evidence, and have no obligation to allege motive in order to survive a motion to dismiss.

**\*9** Holden argues that plaintiffs have alleged no more than his position as a corporate director to impute liability. However, this court has already found that plaintiffs have alleged sufficient facts to show that Holden could be responsible for the press release, and that he was in a position to know the truth, which was, according to plaintiffs' allegations, contrary to the statements in the press release.

In summary, plaintiffs have alleged that false and misleading statements were made, that each and every defendant was responsible for the allegedly false and misleading statements, and that each and every defendant acted with actionable scienter required by the PSLRA. Whether or not the statements truly were false or misleading, defendants were responsible for the statements, or defendants were reckless in making the statements, are facts which can be elicited during discovery. However, for now, plaintiffs have stated a claim against defendants for violations of § 10(b). As such, each defendant's 12(b)(6) motion to dismiss plaintiffs' § 10(b) claims must be denied.

Lindelow v. Hill, Not Reported in F.Supp.2d (2001)
2001 WL 830956, Fed. Sec. L. Rep. P 91,483

II. *Control Person Liability under Section 20(a)*
Reilly and Hill argue that plaintiffs have failed to allege facts to establish control liability under § 20(a). Section 20(a) of the 1934 Act states: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). In this Circuit, a claim for controlling person liability must plead two elements: (1) that the defendant actually exercised general control over the operations of the entity; and (2) that the defendant had the power or ability to control the specific acts constituting the primary violation. *Donohoe v. Consol. Operating & Prod. Corp.,* 982 F.2d 1130, 1138-39 (7th Cir.1992). Ordinarily, whether a defendant is a "controlling person" under § 20(a) is a question of fact that cannot be determined at the pleading stage. *In re Discovery Zone Sec. Litig.,* 943 F.Supp. 924, 943 (N.D.Ill.1996).

This court finds that plaintiffs have adequately alleged control liability under § 20(b) as to all defendants, including Reilly and Hill. As for Reilly, plaintiffs allege that he acted as CFO of Sabratek and exercised general control over the operations of Sabratek, the corporation which issued the press release. Plaintiffs also allege that Reilly, as well as Hill, controlled Moon and had the power to influence the statements made in the July 6, 1999 press release. As for Hill, plaintiffs allege that he acted as CEO, president, and chairman of Moon. Plaintiffs have thus alleged that both Reilly and Hill were "control persons" because of their status as top-ranking company officials whose high level positions necessarily involve general oversight and direction. *See Discovery Zone.,* 943 F.Supp. at 943. Plaintiffs have also alleged that both Reilly and Hill acted "knowingly" in issuing the press release. As such, plaintiffs have stated a claim for control person liability against Hill and Reilly, and their motions to dismiss plaintiffs' § 20(b) claims must be denied.

III. *Claim Preclusion of Certain Plaintiffs' Claims against Defendant Padda*
 **\*10**  Finally, Padda argues that because plaintiffs Lindelow and Wilcris Trading, LLC ("Wilcris") have already pursued a lawsuit against Padda and other former officers of Sabratek arising out of their purchase of Sabratek securities (the *Chu*

suit), they are barred by claim preclusion from pursuing this litigation. Padda argues that the claims are barred because Lindelow and Wilcris could have raised their claims in that litigation. In support, Padda cites *Roboserve, Inc. v. Kato Kaguku Co.,* 121 F.3d 1027, 1034 (7 th Cir.1997), in which the court stated "[r]es judicata ... operates not only as a bar to any further litigation of matters decided in the prior action, but also as to any issues which could have been raised." However, in *Roboserve,* the court also stated that for res judicata to apply in federal court, there must be an identity of the causes of action, and that "a cause of action" consists of a single core of operative facts which give rise to a remedy. *Id.* The Seventh Circuit has defined "transaction" to mean "a single core of operative facts which gives rise to a remedy." *See Andersen v. Chrysler Corp.,* 99 F.3d 846, 852 (7 th Cir.1993) (allowing subsequent suit between same parties for plaintiffs' post-termination benefits where second case concerned different benefits).

Here, the previous *Chu* suit, upon which Padda relies, concerned Sabratek's flush syringe business and its improper accounting. *See Chu v. Sabratek Corp.,* 100 F.Supp.2d 827, 830 (N.D.Ill.2000). This case, by contrast, is limited to Sabratek's involvement with Moon and OneMedPlace.com. While both suits involve Lindelow and Wilcris's purchase of Sabratek securities, the claims arise out of completely different sets of operative facts. Accordingly, Lindelow and Wilcris's present claims are not barred by claim preclusion.

*CONCLUSION*

For all the reasons stated, defendants Jay Hill, K. Shan Padda, Stephen L. Holden, and John Reilly's "refiled" motions to dismiss are all DENIED. The defendants' original motions to dismiss are moot. The parties are strongly encouraged to discuss settlement of this case. All defendants are to file an answer to plaintiffs' complaint by August 3, 2001. Counsel for the parties are to confer pursuant to Federal Rule of Civil Procedure 26(f) by August 7, 2001 and file a completed Form 35 by August 22, 2001. This case is set for report on status at 9:00 a.m. on August 28, 2001.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 830956, Fed. Sec. L. Rep. P 91,483

2001 WL 830956, Fed. Sec. L. Rep. P 91,483

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.