Union Oil Co. of California v. John Brown E&C, Not Reported in F.Supp. (1994)

1994 WL 535108

📙 KeyCite Yellow Flag - Negative Treatment

Distinguished by   Facility Wizard Software, Inc. v. Southeastern Technical Services, LLC,   N.D.Ill.,   July 9, 2009

1994 WL 535108
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

UNION OIL COMPANY OF CALIFORNIA,
a California corporation, Plaintiff,
v.
JOHN BROWN E & C, a division of John Brown,
Inc., a Delaware corporation, Defendants.

No. 94 C 4424.
|
Sept. 30, 1994.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

**\*1**  This is a claim brought by Union Oil Company of California ("Unocal") against John Brown E & C, a division of John Brown, Inc. ("John Brown"), seeking damages arising out of John Brown's design and construction of Unocal's Kankakee polymer plant. John Brown moves to dismiss Counts II, III, and IV of the complaint on grounds that these claims seek to recover purely economic losses in tort. Count II seeks recovery on a negligent misrepresentation theory. Counts III and IV seek damages for negligence and gross negligence. John Brown has already filed an answer to Counts I and V of Unocal's complaint, which seek damages for breach of contract and breach of the implied covenant of good faith and fair dealing.

*BACKGROUND*

Accepting the allegations of the complaint as true, the relevant facts are as follows. On April 12, 1989, John Brown and Unocal entered into a written agreement for the construction of a polymer plant for Unocal to be located in Kankakee, Illinois. This contract contained a choice-of-law clause:

*1.4 Governing Law; Headings*

This contract shall be construed, interpreted, and enforced in accordance with the laws and jurisprudence of the State of California, and without reference to California's rules regarding Conflict of Laws.

The contract also contained three clauses regarding John Brown's liability under the contract for negligence or gross negligence in the construction of the plant ("the negligence clauses"):

*3.5 Discounts, Rebates, and Refunds*

Contractor shall exercise due care and diligence in the purchase of Project machinery, equipment, and materials, including payments therefor to obtain the most favorable prices and discounts for which Unocal could qualify as well as any and all applicable refunds or rebates. If Contractor fails to secure such discounts, rebates, and/or refunds for Unocal due to the negligence or fault of contractor, Unocal may deduct from any amount otherwise due contractor hereunder the amount of any such discount, rebate, or refund not secured for Unocal, and such amount shall not be included as part of Contractor's reimbursable costs of the work as described in section 3.1 hereof.

*4.1 Guarantees/Warranties*

Contractor warranties that the Work performed hereunder shall strictly comply with the provisions of the Contract, and shall be in full accordance with generally accepted professional engineering and construction standards and practices in the United States of America, or to the extent that other more stringent standards are expressly specified in writing to Contractor by Unocal, Contractor warrants that such other standards will be met.

*9.16 Limitations of Liability*

Limitations on Contractor's liability as specified above shall apply whether such liability arises at contract, tort (including negligence or strict liability), or otherwise. The above notwithstanding, said limitation on liability shall not apply to all or any portion of such liability which arises out of the gross negligence, fraud or wilful misconduct of contractor and/or its subcontractors, or any of their respective directors, officers, employees, agents, servants or other representatives.

**\*2**  The Kankakee plant was not completed until eight months after its expected completion date. This delay, coupled

Union Oil Co. of California v. John Brown E&C, Not Reported in F.Supp. (1994)

1994 WL 535108

with breaches of various warranties caused by John Brown's alleged failure to construct the plant with proper care, resulted in cost overruns, rework, loss of business opportunities, additional overhead and supervisory costs, financing costs and other costs in excess of $8,000,000.

## DISCUSSION

### I. *The Applicable Standards*

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather whether the complaint is sufficient to state a claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Thus, a count of the complaint may be dismissed only if it is beyond doubt that under no set of facts would plaintiff's allegations entitle him to relief on that count. *See, e.g., Venture Assoc. Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir.1993). When considering a motion to dismiss, the court must accept all well-pleaded facts as true, and must draw all inferences in favor of the non-moving party. *See Bontkowski v. First National Bank,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* 114 S.Ct. 602 (1993). However, the court need not stretch the allegations to find inferences that are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir.1977).

### II. *The Applicable Law*

Unocal argues that the contract's choice-of-law provision renders California law applicable to its tort claims against John Brown. Unocal further suggests that the application of California law authorizes its claims for economic losses.

A federal district court sitting in diversity must apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941); *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1080 (7th Cir.1986). Under Illinois law, the law applicable to tort claims is normally that of the forum with the most significant contacts to the litigation, usually the location in which the tortious act took place, the place of injury, or the domicile of the parties. *See Abbott Laboratories v. Nutramax Products, Inc.,* 844 F.Supp. 443 (N.D.Ill.1994); *Kwasniewski v. Schaid,* 153 Ill.2d 550, 607 N.E.2d 214, 217 (1992). Here, the alleged tortious act occurred within Illinois and the place of injury is located within Illinois, while the parties are of different domiciles. Absent the contractual provision, Illinois law would clearly apply.

Under Illinois law, the law applicable to a contract is generally that which the parties intended; when that intent is expressed, it should be followed. *Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 322 N.E.2d 454, 458 (1975). In considering whether to apply the chosen forum's law to contractual claims, however, this court must look to the parties' specific intention regarding the governing law and apply the chosen law only when there is a logical basis for doing so. *See Apperson v. Ampad Corp.,* 641 F.Supp. 747, 751–52 (N.D.Ill.1986). Although the choice-of-law clause specifies that the contract's terms are to be interpreted and enforced in accordance with California law, neither the choice-of-law clause nor any other language in the contract suggests that the parties also intended tort or other non-contractual claims to be governed by California law. Unocal has also failed to suggest any other basis for applying California tort law against John Brown, a Delaware corporation with its principal place of business located in California, for negligence allegedly committed in Kankakee, Illinois.

 **\*3** Absent a clear indication of the parties' intent to apply California law to all disputes related to the Kankakee plant, or any evidence demonstrating a need to apply California law, the contractual provision will not alter the application of law otherwise dictated by Illinois' conflict of laws rules. The application of the economic loss doctrine will therefore be analyzed under Illinois law. [1]

### III. *The Economic Loss Doctrine*

Under Illinois law, it is well established that a plaintiff may not recover in tort for losses amounting only to "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits ... as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 435 N.E.2d 443, 449 (1982). The proper remedy for disappointed expectations lies in an action for breach of contract, not a tort claim. *Id.* at 450. The Illinois Supreme Court has repeatedly employed the *Moorman* doctrine to dismiss negligence claims brought by parties to construction contracts where the only damages resulting from the alleged negligence was the failure of the building to meet the purchasers' commercial expectations. *See 2314 Lincoln Park West Condominium Assn. v. Mann, Gin, Ebel, & Frazier, Ltd.,* 136 Ill.2d 302, 555 N.E.2d 346 (1990); *Foxcroft Townhome Owners Assn.*

Case: 1:20-cv-05593 Document #: 90-14 Filed: 07/06/21 Page 3 of 4 PageID #:2679

Union Oil Co. of California v. John Brown E&C, Not Reported in F.Supp. (1994)
1994 WL 535108

*v. Hoffman Rosner Corp.,* 96 Ill.2d 150, 449 N.E.2d 125 (1983); *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 441 N.E.2d 324 (1982).

Unocal does not dispute that the delay, cost overruns, rework, loss of business opportunities and other economic damages simply amount to a failure to meet Unocal's legitimate expectations under the contract. Instead, Unocal claims that the contract's negligence clauses reflect a contractual agreement that John Brown would be liable to Unocal in tort for negligence or gross negligence.

Even reading these clauses in the light most favorable to the plaintiff, however, the negligence clauses fail to afford Unocal a right to sue in tort to recover its alleged losses. Section 3.5 provides only that John Brown's failure to exercise due diligence in selecting materials and equipment would entitle Unocal to reduce the payments due John Brown *under the contract* by an amount equivalent to any refunds or rebates lost. Similarly, Section 4.1 of the contract simply constitutes a warranty that John Brown would perform in accordance with generally accepted professional standards. Although each of these clauses suggests that a failure to exercise due care might constitute a breach of the construction contract, neither suggests that Unocal would be entitled to sue outside the contract in tort to recover losses caused by a breach of contract. Section 9.16 is similarly irrelevant. This section provides only that John Brown's liability would be limited in tort suits brought by Unocal. In the absence of a legitimate tort claim, however, this section has no effect.

 **\*4** Finally, Unocal argues that under Illinois law, economic losses can be recovered in a claim for negligent misrepresentation. Indeed, Illinois courts have permitted recovery of economic losses in tort "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations." *Moorman,* 435 N.E.2d at 452; *Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 503 N.E.2d 246, 249 (1986). Unocal's complaint alleges that John Brown, acting in its capacities of engineer and construction manager, was in the business of providing information for the guidance of others in its business transactions with third parties. Complaint, ¶ 18. Unocal alleges, in particular, that John Brown negligently misrepresented that it could complete the project for the sum of $46,900,000, that it could complete the project on time, and that it would complete the project without defects and in a workmanlike manner. Complaint, ¶¶ 20–21.

While this court must accept all well-pleaded allegations of the complaint as true, it need not accept as true legal conclusions or opinions that are couched as factual allegations. *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd* 460 U.S. 325 (1983). The claim that a party is in the business of providing information for the guidance of others states a legal conclusion, and must be supported by well-pleaded factual allegations. *See Gerdes v. John Hancock Mutual Life Ins. Co.,* 712 F.Supp. 692, 699 (N.D.Ill.1989). Illinois courts have repeatedly held that when the only information proffered by a defendant relates to the goods or services to be provided by the defendant, the defendant is not deemed to be in the business of providing information for the guidance of others and is not liable for negligent misrepresentation. *See, e.g., Tan v. Boyke,* 156 Ill.App.3d 49, 508 N.E.2d 390, 397, *appeal denied,* 515 N.E.2d 127 (1987); *Knox College v. Celotex Corp.,* 117 Ill.App.3d 304, 453 N.E.2d 8, 11 (1983); *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.,* 109 Ill.App.3d 132, 440 N.E.2d 282, 284 (1982). Unocal has alleged only that John Brown made various representations concerning its performance under the contract, and has failed to allege any other facts that would support its conclusion that John Brown was in the business of providing information. Thus, Unocal fails to provide any basis on which it could recover damages for negligent misrepresentation.

*CONCLUSION*

For the foregoing reasons, Defendant John Brown E & C's motion to dismiss Counts II, III, and IV of the complaint is granted.

1      Application of California law would not clearly change this analysis. Like Illinois, California generally does not permit the recovery of economic losses in tort. *See Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965). While some recent cases have liberally permitted exceptions to this general rule in cases involving claims of professional malpractice or of interference with prospective advantage, these cases do not appear to involve circumstances under which a claim for breach of contract was possible. *See J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157

Case: 1:20-cv-05593 Document #: 90-14 Filed: 07/06/21 Page 4 of 4 PageID #:2680

**Union Oil Co. of California v. John Brown E&C, Not Reported in F.Supp. (1994)**

1994 WL 535108

Cal.Rptr. 407, 598 P.2d 60 (1979); *Cooper v. Jevne,* 56 Cal.App.3d 860, 128 Cal.Rptr. 724 (1976).

**All Citations**

Not Reported in F.Supp., 1994 WL 535108

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.