Zishka v. American Pad & Paper Co., Not Reported in F.Supp.2d (2001)

2001 WL 1748741

KeyCite Yellow Flag - Negative Treatment

Order Amended on Reconsideration by   Zishka v. American Pad & Paper Co.,   N.D.Tex.,   December 20, 2001

2001 WL 1748741
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Allan ZISHKA, et al., On Behalf of Themselves
and All Others Similarly Situated, Plaintiffs,
v.
AMERICAN PAD & PAPER
COMPANY, et al. Defendants.

No. Civ.A.3:98-CV-0660-M.
|
Sept. 28, 2001.

*ORDER*

LYNN, J.

 **\*1**  Having considered the Motions to Dismiss filed by the Defendants on December 14, 2000, the Plaintiffs' Responses, the Defendants' Replies, supporting appendices, the applicable authorities, and the arguments at a hearing held on April 25, 2001, the Court is of the opinion that the Motions to Dismiss should be GRANTED in part, and DENIED in part.

On September 13, 2000, this Court entered its Memorandum Opinion and Order, granting the Defendants' Motions to Dismiss, but permitting the Plaintiffs an opportunity to replead. They did so by filing an Amended Complaint on October 30, 2000. Defendants again moved to dismiss.

The Court concludes that a limited number of the Plaintiffs' claims are sufficient under the Private Securities Litigation Reform Act. Most are not. The Amended Complaint is virtually entirely comprised of allegations of fraud-by-hindsight and is premised on vague statements of optimism by American Pad and Paper Company ("Ampad") and its executives. Such allegations are not sufficient under the Private Securities Litigation Reform Act ("PSLRA") or this Court's Order.

The Court will begin its analysis with the Bain Defendants-Bain Venture Capital and Defendants Wolpow, Gay & Lavine-as to whom the Plaintiffs' allegations are made only under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). The allegations against the Bain Defendants are legally insufficient. Plaintiffs plead only that because the Bain investment funds owned 38%-50% of the stock of Ampad, and thus had the power to, and did, place three persons on the Ampad Board who were affiliated with Bain (Wolpow, Gay and Lavine), Bain and Wolpow, Gay, and Lavine are liable as control persons under Section 20(a). The Court holds that the Plaintiffs have not pleaded sufficient exercise of power and control by the Bain Defendants as to the challenged acts. Status alone as to persons not involved in day to day management is legally insufficient to support a Section 20(a) claim. *See Dartley v. Ergobilt Inc., et al.,* No. 3:98-CV-1442-M (N.D.Tex. Mar. 29, 2001) (Lynn, J.). *See generally, Abbott v. Equity Group, Inc.,* 2 F.3d 613, 615 n. 15 (5 <sup>th</sup> Cir.1993), *cert. denied,* 510 U.S. 1177 (1994); *Dennis v. Gen. Imaging, Inc.,* 918 F.2d 496 (5 <sup>th</sup> Cir.1990); *G.A. Thompson & Co. v. Partridge,* 636 F.2d 945 (5 <sup>th</sup> Cir.1981). Since Plaintiffs were given one additional opportunity to replead, and have not done so satisfactorily with respect to the Bain Defendants, the claims against the Bain Defendants are dismissed with prejudice.

The Court also dismisses with prejudice those claims regarding the LIFO reserves (Amended Complaint ¶¶ 28-31) except for those relating to rising costs of paper in late 1996 and early 1997. In the Court's view, the Amended Complaint adequately details the contention that the Defendants knew that during the last quarter of 1996 and the first quarter of 1997, paper prices were rising, but Ampad intentionally delayed adjusting the reserve. All other allegations regarding the LIFO reserves are dismissed with prejudice.

 **\*2**  Plaintiffs also adequately allege claims relating to Ampad's pricing policies providing protection against rising paper prices. The risk disclosures in Ampad's filings are insufficient to outweigh the apparently unsubstantiated and seemingly unjustified statements that Ampad had implemented a pricing strategy that would protect it in an era of rising prices. When prices rose, profits suffered. There is nothing before the Court explaining what objective facts justified the repeated and persistent trumpeting of the Company's pricing policy as a protection if paper prices began to rise.

2001 WL 1748741

The claims of improper revenue recognition and problems involving returns of goods (¶¶ 26-27 of Amended Complaint) are legally insufficient. Plaintiffs do not provide sufficient detail to support those allegations, such as describing specific transactions in which there was improper recognition, the materiality of such transactions and any restatements resulting, including any alleged impact on the December 1997 charges. The claimed deficiencies in statements regarding returns and discounts or rebates are similarly defective. The risk disclosures in the prospectus clearly note that reserves and rebates will affect profitability. Reserves for returns and rebates were established and disclosed. The Complaint does not allege that the reserves were false nor does it allege the volume of returns, the materiality of same nor the impact on any restatement. The Court is not persuaded by the Plaintiffs' claims that the PSLRA permits Plaintiffs to impute knowledge to senior executives of what appear to be some plant-specific problems.

The allegations regarding the Williamhouse acquisition and the Williamhouse reporting system are inadequate and do not comply with this Court's Order directing that Plaintiffs set out when the Defendants discovered the problem, when they attempted to remedy it (which is not satisfied by a vague statement of a two year period), when they learned the attempted remedy was unsuccessful, and its dollar impact. These omissions render the allegations factually deficient.

Plaintiffs' allegations regarding introduction of new products, the effect of consolidation, the integration (or lack thereof) of acquisitions, and the failure to make new acquisitions are also fatally deficient. Plaintiffs identify no statement that a particular new product would be introduced at a particular time. The Shade and Williamhouse acquisitions undeniably brought product to Ampad that it did not sell previously, and they were acquisitions during the class period. Ampad guaranteed no particular acquisitions on any certain schedule and also disclosed that the likely impact on Ampad of competition and consolidation was uncertain. These claims all fail for lack of detail, for lack of factual support, and due to the existence of clear risk disclosures in the prospectus and in later Ampad press releases.

Finally, Plaintiffs' Amended Complaint is wholly deficient in improperly attributing analysts' projections of earnings per share to individual defendants, when it is not alleged that the defendants made such projections, and in charging them with liability for miscellaneous generalized GAAP allegations (¶ 33). Such contentions do not satisfy the PSLRA.

**\*3** As to Benson and McAleer, scienter is not properly pleaded. One cannot divine a strong inference of fraudulent intent as to them from the Amended Complaint. Therefore, the claims against them are DISMISSED with prejudice.

As to Hanson and Gard, the few remaining allegations of false statements regarding Ampad's pricing policy and failure to disclose the need for an adjustment to the LIFO reserve are adequately stated, and scienter as to them is sufficiently alleged by their stock transactions. All other claims in the Amended Complaint are DISMISSED with prejudice. Plaintiffs are directed to submit within twenty days a new complaint striking the allegations dismissed herein, and adding no others.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1748741

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.