UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) | Case No.  1:20-cv-05593 |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) | Judge Sharon Johnson Coleman |
| | ) | |
| ALL ACTIONS. | ) | DEMAND FOR JURY TRIAL |
| | ) | |

**LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO STRIKE**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT.........................................................................................................2

      A.    The Incorporation-by-Reference Exception Does Not Apply Because the 2020 10-K Is Neither Referred to in the Complaint nor Central to Plaintiffs' Claims ...................................................................................2

      B.    The 2020 10-K Is Not Subject to Judicial Notice for the Purpose of Accepting Statements in It as True and Its Accuracy Is Reasonably Disputed ...........................................................................................5

III.    CONCLUSION.....................................................................................................8

Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed (collectively, "Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion to strike [ECF Nos. 85, 86] ("Motion to Strike" or "Mot."): (1) Exhibit B [ECF No. 74-2] ("2020 10-K") to the GoHealth and Underwriter Defendants'[1] memorandum supporting their Motion to Dismiss [ECF No. 74] ("Memorandum"); and (2) all references to and assertions based on the 2020 10-K made in that Memorandum and in Defendants' reply memorandum of law in support of their Motion to Dismiss [ECF No. 91] ("Reply Memorandum").

## I. INTRODUCTION

Defendants' Opposition to the Motion to Strike [ECF No. 92] ("Opposition" or "Opp.") does nothing to change the fact that they are improperly using the 2020 10-K to seek resolution of a factual issue in Defendants' favor to support their Rule 12(b)(6) arguments. At bottom, they urge the Court to accept as true the statement (and inferences drawn from the statement) in the 2020 10-K that "LTV increased, not decreased post-IPO[.]" *See* Memorandum at 21 (citing 2020 10-K at 63).

Defendants, therefore, plainly seek use of the 2020 10-K to directly contradict Plaintiffs' allegation that LTV/CAC *decreased* as a result of the undisclosed change in GoHealth's business model and operations prior to and at the time of its IPO. Even if the 2020 10-K is considered, which it should not be, Defendants cannot hide from the fact that the 2020 10-K also states that there was a "decrease in LTV/CAC" for 2020. *See* 2020 10-K at 61. Regardless, the 2020 10-K is extraneous to the Complaint and neither the incorporation-by-reference nor judicial notice exceptions apply to permit its consideration in resolving the Motion to Dismiss. Defendants'

---

[1]   All capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion to Strike or Complaint.  All emphases and alterations are added and citations, internal quotations, and footnotes are omitted, unless noted otherwise.  All paragraph references ("¶__") are to the Complaint.

Opposition, as set forth fully below, cannot overcome these infirmities, relies on cases that are either consistent with or inapposite to those cited in the Motion to Strike, contravenes well-established law, and even misstates the import of Plaintiffs' arguments in their Motion to Strike and opposition to the Motion to Dismiss. Accordingly, the Court should grant the Motion to Strike.

## II. ARGUMENT

### A. The Incorporation-by-Reference Exception Does Not Apply Because the 2020 10-K Is Neither Referred to in the Complaint nor Central to Plaintiffs' Claims

The 2020 10-K is in no way incorporated by reference into the Complaint. The Seventh Circuit has consistently made clear that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim." Mot. at 5 (quoting *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018), and citing *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)); *see also Williams v. Dart*, 967 F.3d 625, 641 (7th Cir. 2020) (same). This remains true, as here, "even if [the documents in question are not] physically attached to [the complaint]." Opp. at 4 (citing *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 809 n.2 (7th Cir. 2018)); *see also Schnuck Mkts., Inc.*, 887 F.3d at 809-10 & n.2 (the documents in question – "the card brand rules and [defendant's] contractual agreements" – were all ones to which plaintiffs' allegations expressly referred in claiming status as a third-party beneficiary of them). Even the legal standards that Defendants cite for the incorporation-by-reference exception recognize this reference requirement. *See* Opp. at 2 ("critical to [a] complaint *and* referred to in it") (quoting *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *10 (N.D. Ill. Feb. 13, 2013)); *id.* ("where material is referenced in[] *and* central to the allegations of a complaint") (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Because, among other things, the filing of the Complaint predates

GoHealth's filing of its 2020 10-K, the Complaint does not and could not have referenced or relied on the 2020 10-K in any way.  Mot. at 4-5.

There are, admittedly, instances in which courts have found the incorporation-by-reference exception met despite a complaint not explicitly mentioning an SEC filing.  In such cases, courts have done so not simply because "the material in question speaks to the key issues in the case" (Opp. at 4), but because: (1) the complaint relied on or used the SEC filing as a source of information; or (2) the SEC filing was relevant to whether a disclosure at issue occurred or whether insider trading supported an inference of scienter.  None of these scenarios is present here, and the cases Defendants rely on do not move the needle in their favor.

For example, in *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009), as even Defendants quote, while "[t]he Complaint did not mention the prospectuses, [they] were publicly available documents [at the time of the alleged misconduct] and thus relevant to the question of disclosure." *See* Opp. at 5-6.  The facts of *Hecker* are unlike those here, where the 2020 10-K was not in existence at the time of the IPO (or the Complaint) and thus is not relevant to, let alone dispositive of, what disclosures were made (and not made) to IPO investors.  Similarly, in *Fryman v. Atlas Fin. Holdings, Inc.* and *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, Forms 4 that were not referenced in the complaints were nonetheless considered incorporated into them because, with respect to plaintiffs' insider trading allegations, the Forms 4 were "the only source of insider trading data available to plaintiffs when drafting [the] complaint[][.]"  462 F. Supp. 3d 888, 895 (N.D. Ill. 2020); 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012).  But in this case, there is no dispute that the Complaint could not have relied on or used the 2020 10-K as a source of any information.  Finally, in *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, while the court ultimately determined that it could resolve the motion to dismiss without considering Forms 4

- 3 -

from outside the class period and not referenced in the complaint, it noted that those filings would have nonetheless been relevant to the issue of whether insider trading data supported an inference of scienter (an inference not involved here) and separately refused to consider a conference call transcript because, like here, that document came into existence after defendants' misconduct occurred and thus could not be considered the source of plaintiffs' allegations. 2011 WL 1303387, at *13, *16 (N.D. Ill. Mar. 31, 2011).

As much as Defendants would prefer the Court to believe otherwise – regardless of Defendants' unsupported argument that the 2020 10-K should be somehow incorporated into the Complaint simply because the 2020 10-K itself incorporated "GoHealth's prior 1Q, 2Q, and 3Q financial results" (Opp. at 5-6) – Plaintiffs' claims do not "rely expressly on 2020 financial results" or "full year 2020 performance" (*id*. at 3, 5-6). This is because the success of Plaintiffs' claims turns on the falsity of statements and omissions in the Registration Statement, ***not*** the falsity of statements or omissions occurring after the IPO. Indeed, the Complaint makes clear that, prior to and at the time of the IPO, GoHealth made changes to its business model and operations that were not disclosed in the Registration Statement, rendering it false. *See* ECF No. 83 at 22 (citing ¶¶5, 18-24, 86-89, 91, 95, 100, 105, 114). For these same reasons, Defendants' assertion that the 2020 10-K "directly contradicts [Plaintiffs'] allegations" is objectively wrong. Opp. at 5. Even assuming the 2020 10-K could properly be considered incorporated into the Complaint (it cannot), the 2020 10-K on its face supports Plaintiffs' allegations by establishing that LTV/CAC went ***down*** in 2020: "The ***decrease in LTV/CAC*** is attributable to the hiring and training of additional agents and the implementation of new marketing strategies to drive the conversion of a greater number of qualified prospects into commissionable Approved Submissions[.]" 2020 10-K at 61; *see also* Mot. at 8.

For the reasons set forth above, the incorporation-by-reference exception does not apply and the 2020 10-K should not be considered at the pleadings stage.

**B.      The 2020 10-K Is Not Subject to Judicial Notice for the Purpose of Accepting Statements in It as True and Its Accuracy Is Reasonably Disputed**

In circumstances where judicial notice of SEC filings is taken at the motion to dismiss stage, they cannot be considered for the truth of the disclosures made therein. *See* Mot. at 6 (listing cases, none of which Defendants attempt to controvert). All of the cases cited in Defendants' Opposition to support taking judicial notice are consistent with this approach or wholly inapposite. *See Hospira*, 2013 WL 566805, at *12 (declining to take judicial notice because "Defendants ask the Court to take judicial notice not only of the fact that the proxy statements contain certain sales data . . . ***but the truth of that sales data***"); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 923 (S.D. Ind. 2008) ("[T]he parties' disputes over what various Defendants knew and/or communicated during the class period are at the heart of this lawsuit. Plaintiffs are correct that the contents of these six exhibits are therefore not admissible for their truth []and . . . Defendants are in agreement that judicial notice of these exhibits should extend only to the determination of what statements were made by Guidant to the public[.]"); *Anixter*, 2011 WL 1303387, at *31 (inapposite because the court declined to "rule definitively on the difficult question . . . of whether it may consider at [the motion to dismiss stage] the Forms 4 for the truth of what is discussed in them"); *Hernandez v. Midland Credit Mgmt., Inc.*, 2006 WL 695451, at *2, *4 (N.D. Ill. Mar. 14, 2006) (inapposite because, unlike here, "[n]o . . . dispute exist[ed]" as to the contents of the SEC filing and it was quoted in the complaint); *Sharbaugh v. First Am. Title Ins. Co.*, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (inapposite because, unlike here, the statements in the SEC filing were not disputed). Similarly, Defendants' use of *Indiana Ins. Co. v. Westfield Ins. Co.* offers them no cover and is of no value to the Court's analysis here because, in that case, the court denied

- 5 -

defendants' motion to strike allegations from the complaint, which required the defendants to demonstrate prejudice, and denied the motion to strike arguments made in opposition to the motion to dismiss. 2010 WL 3404971, at *3 (N.D. Ill. Aug. 26, 2010).

Defendants' attempted use of the 2020 10-K is doomed because they do not seek to prove the existence of statements made in the 2020 10-K; rather, they rely on the 2020 10-K to assert fact-based arguments (*i.e.*, that LTV went up post-IPO) in order to draw inferences in their favor on the contested issue of whether, prior to and at the time of the IPO, the undisclosed changes that GoHealth made to its business model and operations negatively impacted, and would continue to negatively impact, GoHealth's business and its crucial LTV/CAC metric. *See* Mot. at 1, 7-8 (citing Memorandum at 10, 21, 32 and ¶¶18, 64, 88, 89(d), 91, 100(e), 100(g), 100(i), 114). Thus, Defendants' assertion that they are not seeking resolution of a disputed issue of fact is simply wrong. *See* Opp. at 4 n.2. In any event, the inference they seek regarding LTV is belied by the plain language of the 2020 10-K, which makes clear that LTV/CAC went down.

Plaintiffs do not, as Defendants say, "conten[d] that 'on a motion to dismiss, courts cannot judicially notice any fact that contradicts an inference alleged in [the] complaint[.]'" Opp. at 7 (quoting *Anixter*, 2011 WL 1303387, at *12 n.9). What Plaintiffs do contend, however, is that the 2020 10-K should not be judicially noticed for its contents because its accuracy is also reasonably disputed. Mot. at 7. That "Plaintiffs do not challenge GoHealth's financial results" (Opp. at 7), means, as explained *supra* at section II.A., that Plaintiffs' claims do not turn on the accuracy of those results. This is a far cry from Defendants' suggestion (*id*.) that there is no independent factual dispute (there is). Indeed, Plaintiffs allege that, because a "number of factors and assumptions underl[ie] GoHealth's LTV calculations, there is no way for investors or analysts to crosscheck or fully understand how GoHealth calculates its LTV" or LTV/CAC metrics. ¶¶15,

58-59. Because it is impossible from the face of the 2020 10-K to know whether and to what extent either GoHealth's business at the time of and following the IPO is fully set forth in the 2020 10-K's LTV/CAC numbers, or how the LTV and LTV/CAC metrics in the 2020 10-K weighed that business, the accuracy of the 2020 10-K is reasonably disputed. Thus, there is no "misunderstand[ing] [of] the nature of the 'in dispute' inquiry" or "loophole [that] swallow[s] the entirety of Fed. R. Evid. 201[,]" as Defendants wrongly state. Opp. at 6-7.

Moreover, because this reasonable factual dispute about the 2020 10-K exists, it is of no consequence (and is simply inaccurate) that the Complaint contains "allegations about LTV alone." Opp. at 8. Nor, for the same reason, is it of any consequence that the Complaint quotes post-IPO SEC filings, in existence at the time the Complaint was filed, to help demonstrate the falsity of statements or omissions in the Registration Statement. Indeed, the existence of this reasonable factual dispute about the 2020 10-K also makes the cases on which Defendants rely inapposite. In each, unlike here, no dispute existed as to the documents at issue or their contents. *See Anixter*, 2011 WL 1303387, at *12 n.9 ("the authenticity and accuracy of the Forms 4 themselves is not [disputed]"); *Guidant*, 536 F. Supp. 2d at 922 ("Plaintiffs have not demonstrated a reasonable dispute of fact regarding the contents of the SEC filings at issue."); *Sharbaugh*, 2007 WL 3307019, at *2 ("defendant does not dispute [the statements in the Form 10-K]"); *Hernandez*, 2006 WL 695451, at *4 ("[n]o . . . dispute exist[ed]" as to the contents of the SEC filing). These cases are factually inapplicable to the situation here, where Defendants claim the 2020 10-K conclusively establishes that LTV went up during 2020 (and seek inferences from that conclusion in their favor), while Plaintiffs point to other language, in the same document, establishing that LTV/CAC went down in 2020 and have already alleged that there is no method by which investors can understand how GoHealth calculates LTV at any given time. *See, e.g.*, ¶¶15, 58-59.

- 7 -

Accordingly, the judicial notice exception does not apply to permit the Court to consider statements in the 2020 10-K as true in resolving Defendants' Motion to Dismiss. If, however, the Court does judicially notice the 2020 10-K for the truth of statements in it in resolving Defendants' Motion to Dismiss (though it should not, as discussed), then it should do so to credit Plaintiffs' allegations. *See supra* §II.A.; ECF No. 83 at 21 n.15.

## III.    CONCLUSION

For the reasons set forth herein and in the Motion to Strike, Plaintiffs respectfully request that the Court strike the 2020 10-K and all references to and assertions based on it in Defendants' Memorandum and Reply Memorandum in support of their Motion to Dismiss or, alternatively, convert their Motion to Dismiss into one for summary judgment under Rule 56 and permit discovery pertaining to such references and assertions. Plaintiffs also respectfully request any additional and other relief as the Court deems just and proper.

DATED: July 27, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS (admitted *pro hac vice*)
CHRISTIAN G. MONTELIONE
(admitted *pro hac vice*)


                              *s/ Robert J. Robbins*
                           ROBERT J. ROBBINS

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
cmontelione@rgrdlaw.com

- 8 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

*Additional Counsel for Lead Plaintiffs*

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 27, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Robert J. Robbins*
ROBERT J. ROBBINS

- 10 -