UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) | Case No. 20-cv-5593<br><br>Honorable Sharon Johnson Coleman |

### MEMORANDUM OPINION AND ORDER

Lead Plaintiffs bring this action on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") against GoHealth, Inc. ("GoHealth" or the "Company"), Centerbridge[1], NVX Holdings, Inc. ("NVX Holdings"), and three Individual Defendants: Clinton P. Jones ("Jones"), Brandon M. Cruz ("Cruz"), and Travis J. Matthiesen ("Matthiesen") (collectively, "Defendants"). Plaintiffs allege Defendants violated Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o (the "Securities Act"). Before the Court are Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) [73] and Plaintiffs' motion to strike under Federal Rule of Civil Procedure 12(f) [85]. For the following reasons, the Court denies Plaintiffs' motion to strike and denies Defendants' motion to dismiss.

**Background**

The following allegations are taken as true for purposes of this motion. GoHealth operates a technology-driven health insurance marketplace using a combination of websites and licensed agents to help consumers sign up for health insurance with third-party insurance carriers. Leading up to 2020, GoHealth's revenue primarily came from commissions paid to GoHealth by insurance

---

[1] Consisting of Centerbridge Partners, L.P.; CCP III AIV VII Holdings, L.P; CB Blizzard Co-Invest Holdings, L.P.; Blizzard Aggregator, LLC; Centerbridge Associates III, L.P.; and CCP III Cayman GP Ltd.

carrier partners. In particular, GoHealth concentrated on its partnerships with Humana, Inc. ("Humana") and Anthem, Inc. ("Anthem"), which made up for 74% of GoHealth's total revenue for the first fiscal quarter of 2019 ("1Q2019"). (Dkt. 66, at ¶ 12.) GoHealth benefitted from its focus on these carriers because they subsidized GoHealth's marketing costs, paid top-tier commission rates, and were deeply integrated with GoHealth's technology platform.

GoHealth's internal metrics reflected the benefits of this strategy in part through a ratio representing commission revenue relative to customer acquisition cost ("LTV/CAC"). LTV is a metric consisting of aggregate commissions over the life of all commissionable approved submissions, based on numerous variables, which include commission rates, carrier mix, and policy persistency. The second portion of the ratio, CAC, represents the costs associated with retaining customers including marketing, advertising, customer care, and enrollment expenses. Plaintiffs contend that GoHealth experienced "best-in-class" LTV/CAC up to the first fiscal quarter of 2020 because its partnerships with Humana and Anthem decreased its direct marketing costs per policy.

In July 2020, the Company filed its registration statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC") in advance of its initial public offering ("IPO"). In that statement, GoHealth asserted that it would "focus on strengthening the key drivers of LTV/CAC, including marketing costs…" and that its carrier partners "often supplement [its] marketing and technology investments." (Dkt. 66, at ¶¶ 91–92.) GoHealth further stated that its business model would enable it to "rapidly scale while improving [its] unit economies, as measured by LTV/CAC." (*Id.* at ¶ 97.) In addition, it included that "[a]ttracting new carriers" was "critical to the growth of the business," and it was "strategically adding carriers," allowing it to "market more efficiently[.]" (*Id.* at ¶ 98.) GoHealth also obtained revenue from Medicare Special Needs Plans ("SNPs"), a type of Medicare Advantage plan for individuals falling into certain special needs

2

categories. GoHealth asserted in its Registration Statement that "increasingly adding SNPs" would "maximize the value of [its] customer interactions and marketing spend[.]" (*Id.* at ¶ 99.)

The Registration Statement also included forty-five pages of "Risk Factors" for investors. (Dkt. 74-2, at 46–91.) In particular, it warned potential investors that LTVs are estimates based on numerous factors, any one of which could negatively affect LTV and the Company's revenue. Further, it cautioned that the Company relies heavily on carriers owned by Humana and Anthem. If GoHealth were to become dependent on fewer carrier relationships, it may become vulnerable to adverse changes in its relationship with carriers. In addition, it stated that carriers possessed the ability to reduce commission rates, which could affect the Company's financial condition.

Plaintiffs contend that at the time of the IPO, GoHealth suffered negative financial effects because it had maximized its growth with its partners Humana and Anthem. Therefore, before completion of the IPO, GoHealth decided to treat 2020 as an investment year. In effect, GoHealth substantially expanded its insurance carrier base for Medicare and increased its reliance on non-commissionable revenue through SNPs. Plaintiffs contend that these changes caused "significant disruptions to the Company's critical LTV/CAC metric[.]" (Dkt. 66, at ¶ 88.)

Shortly after GoHealth completed the IPO in July 2020, GoHealth officers made statements and released financial data that Plaintiffs assert signaled a shift from its Registration Statement. For example, co-founder, CEO, and Co-Chair of the board Clinton P. Jones ("Jones") stated on an after-hours earnings call that the Company's 2Q2020 poor financial results "came in largely as expected" and that the trends existed and were known prior to the IPO. (*Id.* at ¶ 119.) The call confirmed that decreased customer persistency was consistent with GoHealth's expectations, including low customer retention and lower effectuation rates. The addition of new carriers also caused higher disenrollment rates, called "churn." Jones also stated that there was "an initial ramp-

3

up period for new carriers with forecasted lower LTVs as agents learn about the new plans." (*Id.* at ¶ 120.)

On March 16, 2021, GoHealth filed its Annual Report on Form 10-K for 2020 (the "2020 10-K") with the SEC. (*See* Dkt. 74-2.) Defendants contend that the 2020 10-K shows that LTV per approved submission for Medicare Advantage increased from 2019 to 2020. Plaintiffs object to the Court's consideration of the 2020 10-K in their motion to strike, but assert in the alternative that the document states that LTV/CAC for the Medicare Internal segment decreased in part due to "the implementation of new marketing strategies to drive the conversion of a greater number of qualified prospects into commissionable Approved Submissions[.]" (*Id.* at 613.)

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

<u>Motion to Strike</u>

First, the Court must resolve Plaintiffs' motion to strike the 2020 10-K form attached to Defendants' motion to dismiss. Defendants argue that the Court may consider the SEC filing in its

analysis as it was incorporated into the complaint by reference, or in the alternative, because it is proper for judicial notice. A document may aid the Court in its analysis of a motion to dismiss if it is "referred to in the plaintiff's complaint and [is] central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

Because Plaintiffs bring the cause of the Company's 2020 financial results into question, including the Company's internal metrics LTV and CAC, the information contained in the 2020 10-K is central to the complaint, although not explicitly referenced. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). Plaintiffs argue that because GoHealth filed the 2020 10-K with the SEC after this lawsuit began, the complaint could not refer to it. The time of filing is of no consequence—the document compiles the Company's financial data from the period at issue. Regardless, despite GoHealth's contention to the contrary and as discussed *infra*, the information contained within the 2020 10-K does not foreclose Plaintiffs' claims.

Motion to Dismiss Section 11 Claim

Under Section 11 of the Securities Act, liability arises when any part of the registration statement contains "an untrue statement of material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]" 15 U.S.C. § 77k.

*Heightened Pleading Standard*

First, Defendants argue that the Plaintiffs must state their Section 11 claim with particularity under Federal Rule of Civil Procedure 9(b). The heightened pleading requirement generally applies to claims under Section 10(b) of the Securities Act, which sound in fraud. Unlike Section 10(b), however, Section 11 does not contain an element of scienter. Rather, the statute prohibits even innocent omissions of material fact. § 77k(a). Some circuits have held that Rule 9(b) applies to Section 11 claims grounded in fraud, but the Seventh Circuit has not explicitly ruled on the issue. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618,

5

629 (4th Cir. 2008); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); *but see In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 314 (8th Cir. 1997) (taking the minority approach). Courts in this District therefore vary in their approach. *Compare W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020) (Pacold, J.) (applying the heightened pleading standard to a Section 11 claim brought alongside a Section 10(b) claim), and *In re Ulta Salon, Cosms. & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1193 (N.D. Ill. 2009) (Gettleman, J.) (declining to apply the heightened pleading standard because it would be illogical to "requir[e] a plaintiff to plead fraud and scienter with particularity when neither is an element of the claim").

In this case, Plaintiffs claims are distinct from those in cases cited by Defendants. There, courts applied the heightened pleading standard because the course of conduct giving rise to Plaintiffs' Section 11 claims was also the basis for a Section 10(b) fraud claim. *See Conagra*, 495 F. Supp. 3d at 636 (citing *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 886)) ("Where a Securities Act claim 'merely relies on the same alleged misrepresentations… that are central to [the] section 10(b) fraud claim,' that claim is likewise grounded in fraud."). Here, Plaintiffs explicitly pleaded that Defendants negligently made false statements and material omissions in the Registration Statement. Plaintiffs do not allege that Defendants intended to deceive potential investors, nor do they bring a concurrent fraud claim under Section 10(b). Therefore, the Court declines to apply the heightened pleading standard under Rule 9(b).

*Impermissible Puzzle Pleading*

Next, Defendants argue that the Court must dismiss Plaintiffs' complaint as impermissible puzzle pleading. Where a complaint relies extensively on long block quotes from securities filings that improperly burden the Court to "solve the 'puzzle' of interpreting Plaintiffs' claims," the Court may dismiss the claims as inadequately pled. *See, e.g., Constr. Workers Pension Fund-Lake Cty. &*

*Vicinity v. Navistar Int'l Corp.*, No. 13 C 2111, 2014 WL 3610877, at *5 (N.D. Ill. July 22, 2014) (Ellis, J.) (citation omitted). Here, Plaintiffs' claims are not puzzle pleading, particularly as the Court views the complaint under Rule 8(a)(2). The fifty-nine-page complaint selectively quotes from the Registration Statement followed by specific analysis of its alleged omissions or false statements. Further, Plaintiffs' use of bold and italics guide rather than confuse the reader. *Cf. id.*

*Actionable Misstatements or Omissions*

Next, Defendants argue that the complaint fails to allege actionable misstatements or omissions in the Registration Statement. Defendants break Plaintiffs' allegations into two parts: (1) that GoHealth maximized its growth and needed to pivot to a new business model; and (2) that it treated 2020 as an investment year, which created a near-term drag on GoHealth's LTV.

First, Defendants argue that Plaintiffs must allege that the Company's growth had in fact been maximized. In support of its allegation that GoHealth maximized its growth, Plaintiffs point to Jones' statement that "we anticipated 2020 to be an investment year with new carriers." (Dkt. 66, at ¶ 22.) Subsequently disclosed information also revealed that GoHealth experienced negative churn dynamics prior to the IPO, and that the disappointing 2Q2020 data "came in largely as expected" and that GoHealth didn't "see surprises." (*Id.* at ¶ 118–19.) GoHealth's subsequent actions, such as taking a "rifle-shot approach to adding new carriers" as the Company "look[ed] towards 2021" create a reasonable inference that the Company changed tact because it had maximized the growth it could achieve by relying on two insurance carriers. (*Id.* at ¶ 119.)

Defendants next contend that GoHealth did not suffer LTV drag at the time it filed its Registration Statement. Defendants argue that Jones' post-IPO statements do not reflect the state of GoHealth's business at the time of the IPO. Further, Defendants argue that the 2020 10-K illustrates that LTV increased rather than decreased in 2020. In response, Plaintiffs point to the 2Q2020 financial results, which indicate that a number of factors used to calculate LTV/CAC

7

suffered, such as increased marketing and advertising expenses, a drop in commission revenue, and customer churn in SNP plans. Plaintiffs also argue that the 10-K shows that LTV/CAC increased for 2020.

The 2020 10-K does not foreclose Plaintiffs' claims. First, Plaintiffs allege that the undisclosed carrier expansion affected LTV/CAC, not merely LTV. Second, the 2020 10-K indicates that LTV increased over the whole of 2020, which, drawing inferences in Plaintiffs' favor, is insufficient to contradict Plaintiffs' allegations. In reply, Defendants attach GoHealth's 2Q2020 financial results to argue that LTV/CAC increased. (Dkt. 91 at 25.) Though Defendants do not argue as much, the document also shows that LTV specifically increased for 2Q2020. Because Defendants present this data for the first time in reply, they deprive Plaintiffs of the opportunity to respond and the Court will not consider it. *See Divane v. Nextiraone, LLC*, No. 02 C 3899, 2002 WL 31433504, at *2 (N.D. Ill. Oct. 30, 2002) (Lindberg, J.) (recognizing that consideration of a document belatedly attached to a reply brief "would be unfair [ ] without giving defendant an opportunity to respond").

Next, Defendants argue that even if Plaintiffs' theories rang true, Defendants bore no obligation to disclose that growth had been maximized nor that the undertaking of an investment year would create a drag on LTV/CAC. But Plaintiffs plausibly allege that Defendants had already implemented a strategic business shift that they anticipated would hurt GoHealth's metrics at the time of the IPO. Failing to sufficiently disclose this shift could make GoHealth's assertions in the Registration Statement that, among other things, GoHealth would rapidly scale while improving its LTV and lowering CAC, false or misleading. At this stage, the Court need not determine that the statements were in fact misleading—plausibly alleging as much suffices. *Azar v. Grubhub, Inc.*, No. 19-cv-07665, 2021 WL 4077327, at *4 (N.D. Ill. Sept. 7, 2021) (Norgle, J.).

*Immaterial Puffery*

Defendants contend that many of the statements in the Registration Statement constitute legally immaterial puffery, that is, "general, optimistic statements that are not capable of being objectively verified." *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) (Lefkow, J.). However, as examples, Defendants point to statements in which GoHealth asserted that LTV would increase and CAC would decrease. Rather than asserting generic aspirations of growth, GoHealth identified factors that would positively impact its performance metrics. *Cf. Plumbers & Pipefitters Loc. Union No. 630 v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858, 873 (N.D. Ill. 2011) (Castillo, J.) (holding as immaterial statements lacking specificity). Further, the context of these statements is integral to the question of materiality. Therefore, "even if they did lean toward hopeful fluff, at this early stage of the proceedings, it is not appropriate for the Court to rule definitively that these statements are mere puffery and therefore not actionable." *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2021 WL 3566602, at *10 (N.D. Ill. Aug. 11, 2021) (Dow Jr., J.).

*Bespeaks Caution Doctrine*

Defendants argue that the bespeaks caution doctrine protects some of the allegedly misleading statements. When projections are accompanied by meaningful cautionary language, the doctrine provides that forward-looking statements may not be misleading. *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1404 (7th Cir. 1995). Though based on the PSLRA safe harbor provision, the parties agree that the statute does not apply to statements made in an IPO. *See* 15 U.S.C. § 77z-2(b)(2)(D). In their application of the bespeaks caution doctrine, courts consider whether a reasonable investor would consider the omitted fact or prediction a significant factor in making the decision to invest, "such that it alters the total mix of information available about the proposed investment." *Harden*, 65 F.3d at 1404 (internal citation omitted). Cautionary language must identify "those sources of variance that (at the time of the projection) were the principal or important risks." *Asher v. Baxter Int'l, Inc.*, 377 F.3d 727, 734 (7th Cir. 2004); *see also Browning v.*

*Amyris, Inc.*, No. 13-cv-02209, 2014 WL 1285175, at *47 (N.D. Cal. Mar. 24, 2014) (finding sufficient cautionary language where the "SEC filings warned of the precise risks that underlie the events described in the complaint," including that the company may encounter operational challenges in its effort to scale up its production).

In this case, the Registration Statement's risk disclosures did not identify the risks associated with the strategic business change allegedly already implemented by GoHealth. *See Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019) ("[D]efendants failed to disclose that those projections were contradicted by known facts concerning the transition and its inevitable impact."). Here, it is correct that the disclosures warned potential investors of generic risks. Further, the disclosure warned against the effect of unsuccessful carrier expansion on GoHealth, but the disclosures did not identify the impact that successful expansion could have on commission rates. For these reasons, the bespeaks caution doctrine does not protect GoHealth's statements.

*Items 303 and 105*

Next, Defendants argue that Plaintiffs failed to sufficiently allege violations of Items 105 and 303 of Regulation S-K. *See* 17 C.F.R. §§ 229.105, 229.303. Item 303 requires an issuer of a security to disclose "any known trends or uncertainties that have had or are reasonably likely to have a material favorable or unfavorable impact on net sales or revenue or income from continuing operations." § 229.303. Defendants argue that GoHealth's alleged shift in strategy cannot constitute a "trend" for purposes of 303. They also contest that GoHealth expected such a trend would have a material impact on sales, revenues, or income. The Court does not conclude as a matter of law that GoHealth's alleged shift in business strategy did not constitute a trend. *See e.g., Curo*, 426 F. Supp. 3d at 872. Plaintiffs allege that Defendants failed to adequately disclose its carrier expansion, which had already been in effect at the time of the IPO. Further, Jones' alleged

10

statements indicate that GoHealth intended to implement an investment year, which it knew would negatively affect LTV. (Dkt. 66. at ¶ 119.) Plaintiffs sufficiently pled to survive a motion to dismiss on an alleged violation of Item 303.

Item 105 of Regulation S-K provides that a public company must discuss in its registration statement "the material factors that make an investment in the registrant or offering speculative or risky." § 229.105. Defendants argue that the Registration Statement's disclosures satisfy Item 105. Making reasonable inferences in favor of the Plaintiffs, and as discussed, *supra*, the Registration Statement failed to satisfactorily disclose the risks associated with the business shift given Plaintiffs' allegations that Defendants expected the change to impact the Company's financial condition. Therefore, Plaintiffs' Item 105 claim goes forward.

Motion to Dismiss Section 15 Claim

Finally, Defendants move to dismiss Plaintiffs' claim under Section 15 of the Securities Act, which "provid[es] a vehicle to hold one defendant vicariously liable for the securities violations committed by another." *Donahoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 911 (7th Cir. 1994). To state a claim under Section 15, Plaintiffs need only allege that the alleged control person actually exercised control over the violator and possessed the ability to control the specific activity upon which the primary violation was predicated. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992).

First, Defendants argue that control person liability as to the Individual Defendants fails because it is predicated solely on their positions as directors and/or senior officers of GoHealth. *See Starr v. !Hey, Inc.*, No. 01 C 6087, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003) (Hibbler, J.). The complaint, however, alleges that the Individual Defendants possessed control over GoHealth and the specific activity giving rise to the alleged violation. Plaintiffs allege that the Individual Defendants reviewed and helped prepare the Registration Statement, signed the Registration

11

Statement, and participated in the solicitation of the Company's Class A common stock to investors in the IPO. (Dkt. 66, at ¶ 35.) Further, the Registration Statement stated that Jones and Cruz "will continue to have significant control over our business, affairs and policies, including the appointment of our management." (Dkt. 66, at ¶ 145.)

Second, Defendants contend that Plaintiffs cannot base their allegations of control solely through NVX Holdings and Centerbridge's collective ownership interest and power to appoint directors. The Court will address arguments as to Centerbridge's liability under Section 15 solely in its ruling on Centerbridge's motion to dismiss. As for NVX, Plaintiffs allege that Cruz and Jones' actions (as President and CEO of the entity, respectively) extend control to NVX. Defendants offer no response to the contrary. The Court denies Defendants' motion to dismiss the Section 15 claim.

**Conclusion**

For the foregoing reasons, the Court denies Plaintiffs' motion to strike [85] and denies Defendants' motion to dismiss [73].

IT IS SO ORDERED.

Date: 4/5/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge