UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) ) | Case No. 1:20-cv-05593 |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) | Judge Sharon Johnson Coleman Magistrate Judge Gabriel A. Fuentes |
| ALL ACTIONS. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ALLEGATIONS COMMON TO THE CLASS ..................................................5

III.  THE PROPOSED CLASS REPRESENTATIVES ..............................................8

IV.  THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS
CERTIFICATION UNDER RULE 23 ...................................................................9

    A.    Legal Standard ...................................................................................9

    B.    The Proposed Class Satisfies the Standards for Class Certification Under
Rule 23(a).........................................................................................11

        1.    The Class Is so Numerous that Joinder Is Impracticable ............11

        2.    Common Questions of Law and Fact Exist .................................12

        3.    The Proposed Class Representatives' Claims Are Typical of the
Class .............................................................................................13

        4.    The Proposed Class Representatives Will Fairly and Adequately
Protect the Interests of the Class .................................................15

        5.    The Court Should Appoint Plaintiffs' Choice of Counsel as Class
Counsel Under Rule 23(g) ...........................................................18

    C.    The Proposed Class Satisfies the Standards for Class Certification Under
Rule 23(b)(3).....................................................................................19

        1.    Common Questions of Law and Fact Predominate ....................20

        2.    A Class Action Is Superior to Other Available Methods for the Fair
and Efficient Adjudication of This Controversy.........................22

V.    CONCLUSION........................................................................................................23

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..........................................................................................3, 10, 20

*Beale v. EdgeMark Fin. Corp.*,
164 F.R.D. 649 (N.D. Ill. 1995).................................................................................15

*Califano v. Yamasaki*,
442 U.S. 682 (1979).................................................................................................23

*Endo v. Albertine*,
No. 88 C 1815, 1995 WL 170030 (N.D. Ill. Apr. 7, 1995)........................................12

*Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) ..............................................................................17

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)........................................................................................3, 4, 9, 10

*Holwill v. AbbVie Inc.*,
No. 1:18-cv-06790, 2021 WL 7366274 (N.D. Ill. Sept. 23, 2021)..................2, 9, 22

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ..............................................................................17

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
No. CV 11-2768 PSG, 2013 WL 5789237 (C.D. Cal. Oct. 25, 2013)......................21

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ..............................................................................21

*In re Groupon, Inc. Sec. Litig.*,
No. 12 CV 2450, 2013 WL 12284524 (N.D. Ill. Sept. 18, 2013)............................10

*In re Groupon, Inc. Sec. Litig.*,
No. 12 CV 2450, 2014 WL 5245387 (N.D. Ill. Sept. 23, 2014)..................... *passim*

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ..........................................................................3, 10

**Page**

*In re Lyft Inc. Sec. Litig.*,
  No. 19-cv-02690-HSG, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ..............................3, 13

*In re Neopharm, Inc. Sec. Litig.*,
  225 F.R.D. 563 (N.D. Ill. 2004) .................................................................................................22

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other grounds*, 862 F.3d
  250 (2d Cir. 2017) ......................................................................................................................19

*In re Sandridge Energy, Inc. Sec. Litig.*,
  No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) ...................................19

*In re Stericycle, Inc.*,
  MDL No. 2455, 2017 WL 635142 (N.D. Ill. Feb. 16, 2017) .....................................................16

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
  No. 97 C 177, 2000 WL 1810085 (N.D. Ill. Dec. 8, 2000) .......................................................11

*Jaffe v. Household Int'l, Inc.*,
  No. 1:02-cv-05893 (N.D. Ill. Oct. 20, 2016), ECF 2261 ..........................................................18

*Karinski v. Stamps.com, Inc.*,
  No. CV 19-1828-MWF, 2020 WL 6572660 (C.D. Cal. Nov. 9, 2020) ...................................19

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .....................................................................................................12

*La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*,
  312 F.R.D. 501 (N.D. Ill. 2015) ...........................................................................................13, 14

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ..............................................................................................21

*Levitan v. McCoy*,
  No. 00 C 5096, 2003 WL 1720047 (N.D. Ill. Mar. 31, 2003) ....................................... *passim*

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ................................................................................................15

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
  65 F.3d 1044 (2d Cir. 1995) ......................................................................................................21

**Page**

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..........................................................................................20

*Messner v. Northshore Univ. Healthsystem*,
   669 F.3d 802 (7th Cir. 2012) ......................................................................................10, 20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................................3, 4, 10

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................................................10

*Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
   No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ...................................11, 20, 22

*Roth v. Aon Corp.*,
   238 F.R.D. 603 (N.D. Ill. 2006)..................................................................................9, 12, 13, 23

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ........................................................................................2, 9

*Silverman v. Motorola, Inc.*,
   259 F.R.D. 163 (N.D. Ill. 2009)....................................................................................13, 15

*Stein v. U.S. Xpress Enters., Inc.*,
   No. 1:19-cv-98, 2021 WL 1410035 (E.D. Tenn. Feb. 12, 2021)............................................14

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ........................................................................................12

*Sudunagunta v. NantKwest, Inc.*,
   No. CV-16-1947-MWF, 2018 WL 3917865 (C.D. Cal. Aug. 13, 2018)................................15

*Tatz v. Nanophase Techs. Corp.*,
   No. 01 C 8440, 2003 WL 21372471 (N.D. Ill. June 13, 2003) ...................................9, 11, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................................9

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ........................................................................................21

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   333 F.R.D. 39 (S.D.N.Y. 2019) ......................................................................................19

**Page**

*Wagner v. NutraSweet Co.*,
95 F.3d 527 (7th Cir. 1996) ...............................................................................13

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
No. 15-cv-3187, 2018 WL 1535156 (N.D. Ill. Mar. 29, 2018) ...............................9, 13, 15, 22

*Xiang v. Inovalon Holdings, Inc.*,
327 F.R.D. 510 (S.D.N.Y. 2018) .............................................................................3

*Ziemack v. Centel Corp.*,
163 F.R.D. 530 (N.D. Ill. 1995)..............................................................................20

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§77k.....................................................................................................................1
§77k(e) .............................................................................................................4, 21
§77l(a)(2) ..............................................................................................................21
§77l(e) ..................................................................................................................12
§77o.......................................................................................................................1

Federal Rules of Civil Procedure
Rule 23(a).........................................................................................................1, 3
Rule 23(a)(1) .........................................................................................................11
Rule 23(a)(2) .........................................................................................................12
Rule 23(a)(3) .........................................................................................................13
Rule 23(a)(4) .........................................................................................................15
Rule 23(b) ............................................................................................................24
Rule 23(b)(3)..................................................................................................*passim*
Rule 23(c)..............................................................................................................23
Rule 23(d) .............................................................................................................23
Rule 23(g) ...............................................................................................................1
Rule 23(g)(1)..........................................................................................................18

Lead Plaintiffs Sudhakara R. Murikinati ("Murikinati"), Jerry Nixon ("Nixon"), Benjamin Sandmann ("Sandmann"), and Jeffrey S. Turnipseed ("Turnipseed") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for class certification requesting that, pursuant to Rule 23(a), (b)(3), and (g) of the Federal Rules of Civil Procedure, the Court enter an Order: (1) certifying a class consisting of all persons and entities that purchased or otherwise acquired GoHealth, Inc. ("GoHealth" or "Company") Class A common stock pursuant and/or traceable to the Offering Documents[1] for GoHealth's initial public offering ("IPO"), and who were damaged thereby ("Class");[2] (2) appointing Plaintiffs as Class Representatives; and (3) appointing Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I. INTRODUCTION

This action is ideally suited for class treatment because it is a federal securities action asserting strict liability and negligence-based claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k and 77o, against GoHealth, Chief Executive Officer ("CEO") Clinton P. Jones, Chief Strategy Officer Brandon M. Cruz, Chief Financial Officer Travis J. Matthiesen, NVX Holdings, Inc., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Goldman Sachs & Co. LLC ("Goldman"), BofA Securities, Inc. ("BofA"), and Morgan Stanley & Co. LLC ("Morgan Stanley") (collectively,

---

[1]    GoHealth's IPO was conducted pursuant to, and the sale of GoHealth stock was solicited by, several documents filed by Defendants (defined herein) with the Securities and Exchange Commission ("SEC") and disseminated to the investing public. *See* Declaration of Robert J. Robbins ("Robbins Decl."), filed herewith, Ex. 1 (July 8, 2020 amendment to initial June 19, 2020 registration statement on Form S-1, which was declared effective by the SEC on July 14, 2020); Ex. 2 (July 14, 2020 registration statement registering additional shares for sale in the IPO); and Ex. 3 (July 16, 2020 final Prospectus on Form 424(B)(4)). Together, the Registration Statement and Prospectus (Exs. 1-3) are the "Offering Documents."

[2]    Excluded from the putative Class are Defendants; the officers, directors, and affiliates of Defendants; members of their immediate families; their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

"Defendants"). Plaintiffs' claims are based on false and misleading statements and omissions contained in the Offering Documents issued in connection with GoHealth's IPO, commenced on or about July 14, 2020, of 43.5 million shares of common stock at a price of $21.00 per share. As detailed in the Consolidated Complaint for Violations of the Securities Act of 1933 [ECF 66] ("Complaint"), Defendants violated the Securities Act by making false and misleading statements and omissions in the Offering Documents regarding, *inter alia*, GoHealth's: (1) improved business LTV/CAC (defined below) metrics that were the result of an unsustainable business strategy because of GoHealth's increased concentration on just two customers; (2) need to significantly alter GoHealth's business strategy in order to continue its growth trajectory; (3) plan to use 2020 as an "investment year," which would include rapid customer expansion and negative impacts on GoHealth's key financial metrics, as well as increased marketing costs; and (4) important retention metrics (churn and persistency) that faced negative pressure, resulting in a drag on GoHealth's financial performance. ¶¶90-105.[3]

The Seventh Circuit and courts in this District have made clear that when "a large, public company makes statements that are said to be false, securities[] litigation regularly proceeds as a class action" and "class certification is routine." *Schleicher v. Wendt*, 618 F.3d 679, 681-82 (7th Cir. 2010); *see also Holwill v. AbbVie Inc.*, No. 1:18-cv-06790, 2021 WL 7366274, at *2 (N.D. Ill. Sept. 23, 2021) (securities class action "against a large, public company for alleged misrepresentations affecting the company's stock price . . . generally meets the standards for certifying a class action").[4] In addition, courts routinely grant class certification of actions like this one because "suits alleging violations of Sections 11 . . . and 15 of the Securities Act are

---

[3] All paragraph references ("¶_") are to the Complaint.

[4] Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

- 2 -

especially amenable to class certification and resolution." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 & n.40 (S.D.N.Y. 2012); *see, e.g.*, *In re Lyft Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2021 WL 3711470, at *8 (N.D. Cal. Aug. 20, 2021) (certifying Section 11 class); *Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 532 (S.D.N.Y. 2018) (same). This is true because plaintiffs bringing Securities Act claims "need only show a material misstatement or omission to establish a *prima facie* case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). No proof of scienter, reliance, or loss causation is required under the Securities Act. *See id.* at 381-82; *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178-79 (2015). Class certification is appropriate here because the central issues in this case – the existence and materiality of the alleged misstatements and omissions – present important common issues. *See In re Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2014 WL 5245387, at *2 (N.D. Ill. Sept. 23, 2014) ("*Groupon I*"); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) ("question of materiality is common to the class").

This action is no exception to the Seventh Circuit's "routine" certification of securities class actions and readily satisfies all the requisite elements of Rule 23(a). *First*, numerosity exists because far more than 40 – the minimum presumptive threshold – geographically dispersed investors acquired GoHealth common stock pursuant and/or traceable to the Offering Documents for GoHealth's IPO. *See infra* §IV(B)(1). *Second*, commonality is established because the primary inquiry in this action – whether the Offering Documents contained material misstatements and omissions – presents common issues of law and fact that are subject to common proof. *See infra* §IV(B)(2). *Third*, Plaintiffs' claims are "typical" because they acquired GoHealth common stock pursuant and/or traceable to the false and misleading Offering Documents and were damaged thereby. Plaintiffs will, therefore, make the same legal arguments, based on the same course of

- 3 -

events, as would absent Class members in proving Defendants' liability, and Plaintiffs will prosecute their claims using generalized evidence on a Class-wide basis. *See infra* §IV(B)(3). *Fourth*, Plaintiffs and Class Counsel have and will continue to "fairly and adequately" protect the interests of the Class, as demonstrated by their active and zealous prosecuting of this action thus far, including defeating Defendants' motions to dismiss. Plaintiffs have retained experienced counsel to represent their interests and those of the proposed Class, have repeatedly consulted with counsel concerning the action, and are willing to testify at deposition and trial. *See infra* §IV(B)(4).

The elements of Rule 23(b) are also satisfied. Predominance under Rule 23(b)(3) is fulfilled here because common questions of law and fact predominate over unique circumstances that may pertain to individual Class members. *See infra* §IV(C)(1). Under the Securities Act, Plaintiffs must only show that Defendants made materially false or misleading statements or omissions in the Offering Documents. The proof on these issues – materiality and falsity – will be the same for Plaintiffs as it will be for all other Class members. Significantly, Plaintiffs and the Class are not required to prove scienter, reliance, or loss causation. *See Huddleston*, 459 U.S. at 381-82; *Omnicare*, 575 U.S. at 178-79. Moreover, Class-wide damages here are subject to a common methodology that is determined by statute and is readily applicable to all Class members. *See* 15 U.S.C. §77k(e). Under Section 11, the measure of damages is set as the difference between the price paid for a security purchased pursuant or traceable to a registration statement, and the price at the time suit was filed or the securities were sold. *See id.* Finally, all four Rule 23(b)(3) factors considered in determining whether a class action is superior to alternate means heavily favor class certification. *See infra* §IV(C)(2).

For these reasons, and as set forth more fully below, Plaintiffs respectfully request that the Court grant this motion.

## II.     ALLEGATIONS COMMON TO THE CLASS

This case arises from the Offering Documents filed in connection with GoHealth's July 2020 IPO of approximately 43.5 million shares of common stock. ¶75. GoHealth operates a health insurance marketplace using a combination of websites and licensed agents to help consumers sign up for health insurance with third-party insurance carriers. ¶¶4, 51. In the four years leading up to the IPO, GoHealth shifted its focus away from its traditional individual or family insurance plans, to signing up consumers for Medicare products – specifically, Medicare Advantage plans – *i.e.*, plans that provide Medicare benefits through a private-sector health insurer. ¶¶5, 52-54. With this shift, GoHealth's revenue primarily came from commissions paid to the Company by insurance carrier partners, which were concentrated on two carriers, Humana, Inc. ("Humana") and Anthem, Inc. ("Anthem"), which made up 74% of GoHealth's total revenue for the first quarter of 2020. ¶¶12, 61. GoHealth benefitted from this carrier concentration because they subsidized GoHealth's marketing costs, paid top-tier commissions, and were deeply integrated with GoHealth's technology platform. ¶64.

The Offering Documents stated that GoHealth's shift to Medicare products would enable the Company to capitalize on "strong demographic trends" of aging Americans and the corresponding expected increase in Medicare enrollment by 2028. ¶5. In the Offering Documents, GoHealth estimated a $28 billion "total addressable market" for Medicare Advantage and Medicare Supplement products, adding that the Medicare market trends were poised to "drive a larger market in the coming years[,]" which, in tandem with GoHealth's "other product and plan offerings," would result in an even larger addressable market. ¶6. Given that the Company's Medicare segments drove the majority of GoHealth's revenues and profits, accounting for 89% of

the Company's total revenues, the fact that the Company would be able to tap into this expanding market was critically important to the Company's current and future financial performance. ¶¶11, 56, 86.

GoHealth's key financial metric, the "LTV/CAC" ratio, reflected the benefits of the Company's strategy. LTV/CAC measured the lifetime value of commissions that GoHealth estimated it would receive per "approved submission" ("LTV") over the cost to convert a prospective customer into an actual one that signs up for an insurance policy with a carrier ("CAC"). ¶¶13-14, 58. Put simply, LTV/CAC measured the Company's commissions relative to its customer acquisition cost. ¶13. The Complaint alleges that GoHealth's LTV/CAC was supreme among its peers leading up to the IPO because GoHealth's partnerships with Humana and Anthem reduced GoHealth's marketing costs, among other things. ¶¶13, 64, 88.

The Offering Documents stated GoHealth would "focus on strengthening the key drivers of LTV/CAC, including marketing costs," and that its carrier partners "often supplement [its] marketing and technology investments." ¶¶91-92. The Offering Documents added that GoHealth's business model would enable it to "rapidly scale while improving [its] unit economics, as measured by LTV/CAC." ¶97. The Offering Documents added that "[a]ttracting new carriers" was "critical to the growth of [the] business," and it was "strategically adding carriers," allowing it to "market more efficiently[.]" ¶98. GoHealth also obtained revenue from Medicare Special Needs Plans ("SNPs"), a type of Medicare Advantage plan for individuals falling into certain special needs categories. ¶20, n.3. GoHealth's Offering Documents stated that "increasingly adding SNPs" would "maximize the value of [its] consumer interactions and marketing spend[.]" ¶99.

- 6 -

The Complaint alleges that GoHealth's impressive growth, revenues, industry-leading LTV/CAC, and plans to grow through strategic carrier additions that would allow it to market *more* efficiently generated significant demand in anticipation of the IPO. ¶¶52, 98. This demand allowed GoHealth to increase the IPO's size – raising it from 39,500,000 shares at between $18.00 and $20.00 per share to 43.5 million shares at $21.00 per share, ultimately generating gross proceeds of more than $913 million. ¶¶16-17, 71-72; Robbins Decl. Exs. 1-3.

The Complaint alleges the Offering Documents contained material misstatements and omissions. Prior to the IPO, GoHealth had maximized its growth with its two partners, Humana and Anthem. ¶¶19, 61-62, 64, 100(b). In advance of the IPO, GoHealth decided to treat 2020 as an "investment year," in which it would substantially and rapidly expand its insurance carrier customer base for Medicare and increase its reliance on non-commissionable revenue through SNPs. ¶¶21, 89, 114. These planned changes caused "significant disruptions to the Company's critical LTV/CAC metric[.]" ¶88. In addition, the Offering Documents failed to disclose that the Company was suffering from heightened customer churn at the time of IPO. ¶¶89, 91-100. Specifically, the Complaint alleges the Company's shift in business strategy resulted in: (a) lower commission rates on approved submissions; (b) significant increases of marketing expenses; (c) impaired persistency and a corresponding increase in customer churn, or, at a minimum, requiring GoHealth to increase its efforts (and costs) to combat churn; and (d) a reduction of GoHealth's commissionable revenue in favor of increased non-commissionable revenue, which also dragged down GoHealth's LTV and resulted in decreased persistency. ¶¶18, 24, 89, 105. None of these facts were disclosed in the Offering Documents.

Investors did not begin to learn about GoHealth's "investment year" plans until after the IPO. In July 2020, Jones stated on an after-hours earnings call that the Company's second quarter

- 7 -

2020 poor financial results "came in largely as expected" and that the trends existed and were known prior to the IPO. ¶119. The call confirmed that decreased customer persistency was consistent with GoHealth's expectations, including low customer retention and lower effectuation rates. ¶¶119-120. The addition of new carriers also caused higher disenrollment rates, called "churn." ¶¶8, 20. Jones also stated that there was "an initial ramp-up period for new carriers with forecasted lower LTVs as agents learn about new plans[.]" ¶120. Similarly, in December 2020, Defendants confirmed that GoHealth's plan for 2020 included reduced, lower-than-normal commissions from newly added carriers and LTV compression, with GoHealth not seeing the "upside" until 2021. ¶¶20-22, 116-125. By December 2, 2020, the share price of GoHealth Class A common stock fell to a low of $10.01 – more than *50% below* the IPO price. ¶126.

## III. THE PROPOSED CLASS REPRESENTATIVES

On December 10, 2020, pursuant to the Private Securities Litigation Reform Act of 1995, the Court appointed Murikinati, Nixon, Sandmann, and Turnipseed as Lead Plaintiffs and Robbins Geller as Lead Counsel. ECF 61 ("Consolidation Order"). Plaintiffs each purchased GoHealth common stock pursuant and traceable to the Offering Documents and were damaged thereby. ¶30; *see also* ECF 43-2 (Certifications); Robbins Decl. Ex. 4 (Murikinati Decl.) at ¶1; Ex. 5 (Nixon Decl.) at ¶1; Ex. 6 (Sandmann Decl.) at ¶1; Ex. 7 (Turnipseed Decl.) at ¶1. Since their appointment, Plaintiffs have expended substantial time and effort in informing themselves about this case, working with counsel to vigorously prosecute this action on behalf of the Class, and participating in discovery. Plaintiffs have worked and will continue to work aggressively to obtain critical evidence supporting the Class' claims. *See* Robbins Decl. Ex. 4 (Murikinati Decl.) at ¶¶3-5; Ex. 5 (Nixon Decl.) at ¶¶3-5; Ex. 6 (Sandmann Decl.) at ¶¶3-5; Ex. 7 (Turnipseed Decl.) at ¶¶3-5.

## IV. THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

### A. Legal Standard

Both the Supreme Court and the Seventh Circuit have repeatedly recognized the importance of private class actions in redressing wrongs committed under the federal securities laws and as an enforcement mechanism that supplements government regulation of the securities markets. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007); *Huddleston*, 459 U.S. at 380 n.10; *Holwill*, 2021 WL 7366274, at *2-3.

Courts in this Circuit routinely find securities law claims, such as those here, to be uniquely appropriate for class treatment. *See Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15-cv-3187, 2018 WL 1535156, at *2 (N.D. Ill. Mar. 29, 2018) (Coleman, J.) (Rule 23's requirements are to be "liberally construed in favor of maintaining securities . . . class actions"); *Roth v. Aon Corp.*, 238 F.R.D. 603, 605-06 (N.D. Ill. 2006) (recognizing that in the Seventh Circuit, there is a "strong policy favoring class certification" in securities actions, and Rule 23 is therefore "liberally construe[d]"); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 WL 21372471, at *3 (N.D. Ill. June 13, 2003) ("The Seventh Circuit Court . . . has liberally construed Rule 23 in shareholder suits.").

This policy stems from the fact that "securities . . . cases are uniquely situated to class action treatment since the claims of individual investors are often too small to merit separate lawsuits. The class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing." *Levitan v. McCoy*, No. 00 C 5096, 2003 WL 1720047, at *2 (N.D. Ill. Mar. 31, 2003). As the Seventh Circuit succinctly put it: "[W]hen a large public company makes statements that are said to be false, securities . . . litigation regularly proceeds as a class action." *Schleicher*, 618 F.3d at 681-82; *see also Holwill*, 2021 WL 7366274,

at *2. Suits alleging Securities Act claims are "especially amenable to class action certification and resolution" because they largely depend on establishing that the misstatements and omissions were materially misleading. *IndyMac*, 286 F.R.D. at 232 & n.40; *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011). No proof of scienter, reliance, market efficiency, or loss causation is required. *See Huddleston*, 459 U.S. at 381-82; *Omnicare*, 575 U.S. at 178-79; *In re Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2013 WL 12284524, at *1 (N.D. Ill. Sept. 18, 2013) ("*Groupon II*") ("To establish a claim under §11 . . . of the Securities Act, plaintiffs need only show that they purchased the security and that there was a material misrepresentation or omission. Scienter is not required."). As the Supreme Court has explained, "Section 11 places a relatively minimal burden on a plaintiff[,]" with "virtually absolute [liability], even for innocent misstatements." *Huddleston*, 459 U.S. at 382; *see Groupon II*, 2013 WL 12284524, at *1 (same).

To determine whether class certification is appropriate, courts focus on the narrow question of whether an action satisfies the requirements of Rule 23. *See Amgen*, 568 U.S. at 465-66. Although a court's analysis should be "rigorous[,]" Rule 23 does not grant courts "license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 460, 465-66 ("the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case"). The question is not whether Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *See Groupon I*, 2014 WL 5245387, at *2 ("'[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.'") (quoting *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012)). As set

- 10 -

forth below, all of the requirements of Rule 23 are met, and Plaintiffs' motion should be granted in its entirety.[5]

> **B.  The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(a)**

> **1.  The Class Is so Numerous that Joinder Is Impracticable**

Rule 23(a)(1) requires that the class "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). A plaintiff need not identify the exact number of class members, but rather may rely on reasonable inferences drawn from available facts to estimate the size of the proposed class. *See Tatz*, 2003 WL 21372471, at *6 (inferring hundreds of class members based on 13 million shares traded over the entire relevant time period). While there is no bright-line test, courts have found that classes with "as few as 10 to 40 members" satisfy numerosity. *Id.* at *5. In securities actions involving "nationally traded securities, numerosity may be assumed." *In re Sys. Software Assocs., Inc. Sec. Litig.*, No. 97 C 177, 2000 WL 1810085, at *1 (N.D. Ill. Dec. 8, 2000); *see Groupon I*, 2014 WL 5245387, at *1 (putative class sufficiently numerous where 40.25 million shares outstanding).

This case clearly satisfies numerosity because 43.5 million shares were sold in GoHealth's IPO. Robbins Decl. Ex. 3 (Prospectus). The proposed Class of investors in this Securities Act case involving a $913.5 million, 43.5 million share offering is therefore likely to contain at least hundreds (and likely thousands) of geographically dispersed investors and is, therefore, presumptively and sufficiently numerous.

---

[5]  The proposed Class meets the "implicit requirement of ascertainability" because it is "defined clearly and based on objective criteria." *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, No. 16-cv-10632, 2020 WL 919249, at *2, *8 n.7 (N.D. Ill. Feb. 26, 2020) (certifying class and finding ascertainability met because class was defined with "boundaries set both temporally and as to an identified type of security").

### 2. Common Questions of Law and Fact Exist

Rule 23(a)(2) requires that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "The commonality requirement is not difficult to meet" and "has been characterized as a low hurdle, easily surmounted." *Roth*, 238 F.R.D. at 606. Indeed, commonality does not "require[] that *every* question be common." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (emphasis in original). Rather, the commonality requirement is usually met by showing a "common nucleus of operative fact[,]" which typically is found when "the defendants have engaged in standardized conduct towards members of the proposed class[.]" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Courts have repeatedly held that cases like this one, which proceed primarily under Section 11 of the 1933 Act, are particularly well-suited to class treatment and satisfy the commonality requirement of Rule 23(a)(2)." *Levitan*, 2003 WL 1720047, at *4. "This is so because Section 11 claims require only a material misstatement or omission in a Registration statement to prove liability." *Id.* (citing *Endo v. Albertine*, No. 88 C 1815, 1995 WL 170030, at *2 (N.D. Ill. Apr. 7, 1995)). "In Section 11 cases, typically the only individual issue is a calculation of the damages which each individual class member suffered[,]" which are calculated via statutory formula. *See id.*; *see also* 15 U.S.C. §77l(e); *Groupon I*, 2014 WL 5245387, at *1 (finding commonality "because at the heart of Lead Plaintiff's claims, and common to the class, are whether Defendants materially misrepresented or omitted" information in their statements to the market).

Plaintiffs meet the commonality requirement's "low hurdle." Plaintiffs' and the Class' claims and injuries all arise out of Defendants' "standardized conduct towards members of the proposed class" – Defendants' material misstatements and omissions in the Offering Documents. *See Keele*, 149 F.3d at 594. Specifically, the questions of law or fact common to all members of the Class include whether: (a) Defendants violated the Securities Act; (b) the Offering Documents

contained any misrepresentations or omissions; (c) the Underwriter Defendants (Goldman, BofA, and Morgan Stanley) performed adequate due diligence prior to the IPO; and (d) certain Defendants are control persons of GoHealth. *See* ¶131; *Groupon I*, 2014 WL 5245387, at \*1-2 (holding common question of whether defendants issued misstatements in registration statement satisfied commonality for Securities Act claims); *see, e.g.*, *Lyft*, 2021 WL 3711470, at \*3 (whether the offering documents "contained untrue statements of material fact or omitted to disclose material facts, whether public sources of information could have revealed the purportedly untrue statements or omissions, and whether Defendants violated the Securities Act . . . are sufficient [questions] to satisfy" commonality). Therefore, the commonality requirement is satisfied.

### 3. The Proposed Class Representatives' Claims Are Typical of the Class

Rule 23(a)(3) requires that the class representative's claims or defenses must be "typical" of the claims or defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, 312 F.R.D. 501, 507 (N.D. Ill. 2015). "Typicality is based on the plaintiff's legal theory and the defendant's conduct, and does not depend on the particularized defenses that the defendant may have against certain class members." *Walgreen*, 2018 WL 1535156, at \*5 (citing *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). Typicality is satisfied by showing that the class representative's claims share the "same essential characteristics as the claims of the class at large." *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 169 (N.D. Ill. 2009). Courts "liberally construe" the typicality requirement. *Roth*, 238 F.R.D. at 606. In fact, "[a] finding that commonality exists generally results in a finding that typicality also

exists." *Levitan*, 2003 WL 1720047, at *4. Typicality does not require that each class member "suffer exactly the same injury" as the class representative. *Id.*

Here, Plaintiffs' claims are typical of – if not identical to – the claims of other Class members. As detailed above, Plaintiffs allege that Defendants violated the Securities Act by issuing Offering Documents that misrepresented and omitted material facts. Plaintiffs also allege that they and the Class acquired GoHealth common stock pursuant and/or traceable to the Offering Documents. *See* Robbins Decl. Ex. 4 (Murikinati Decl.) at ¶1; Ex. 5 (Nixon Decl.) at ¶1; Ex. 6 (Sandmann Decl.) at ¶1; Ex. 7 (Turnipseed Decl.) at ¶1. Plaintiffs' claims are based upon the same facts and legal theories as those of absent Class members, and will be proven with the same evidence. *La. Firefighters'*, 312 F.R.D. at 507 (finding typicality where claims arose "from the same . . . course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory"); *Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, 2021 WL 1410035, at *6 (E.D. Tenn. Feb. 12, 2021) (certifying Section 11 class and finding typicality because "[t]he Securities Act claims of named Plaintiffs . . . are driven by the same factual underpinnings as the Securities Act claims of the proposed class because they derive from the same alleged misrepresentations and/or omissions in the Offering Documents"). Nor are Plaintiffs subject to unique defenses that would become a major focus of litigation; any defenses Defendants may assert against them would be the same for other Class members. *See* Robbins Decl. Ex. 4 (Murikinati Decl.) at ¶¶1-7; Ex. 5 (Nixon Decl.) at ¶¶1-7; Ex. 6 (Sandmann Decl.) at ¶¶1-7; Ex. 7 (Turnipseed Decl.) at ¶¶1-7. Any deviation in the amount of damages between Plaintiffs and other Class members is not a unique issue, as the class-wide methodology for calculating damages is fixed by statute and therefore common to the Class. Differences in the amount of damages and the size, manner, or nature of the purchase or holding are insufficient to defeat class certification.

- 14 -

*See, e.g.*, *Beale v. EdgeMark Fin. Corp.*, 164 F.R.D. 649, 654, 659 (N.D. Ill. 1995) (certifying Section 11 class over defendants' objection to typicality arguing class representative was subject to unique defenses); *see also Sudunagunta v. NantKwest, Inc.*, No. CV-16-1947-MWF (JEMx), 2018 WL 3917865, at *4, *9 (C.D. Cal. Aug. 13, 2018) (same). Therefore, the typicality requirement is satisfied.

Thus, "[t]he essential issue of the Plaintiffs' case – whether the [Offering Documents] contained material misstatements of fact or omissions – is typical of the class members' claims." *Levitan*, 2003 WL 1720047, at *4. "No more is required to satisfy the typicality requirement." *Id.*; *see Groupon I*, 2014 WL 5245387, at *1 (finding typicality where lead plaintiff and other class members purchased stock during class period and "all were affected by the materially false and misleading statements alleged").

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To demonstrate adequacy, Plaintiffs must show that: "(1) their claims are not antagonistic to or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) experienced, competent counsel represent them." *Walgreen*, 2018 WL 1535156, at *5 (citing *Silverman*, 259 F.R.D. at 173); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009) (adequacy requires both that "(1) [class representatives'] claims are not antagonistic to or in conflict with those of the proposed class; [and] (2) they have sufficient interest in the outcome of the case"). Meeting this standard is not difficult: "[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient." *Silverman*, 259 F.R.D. at 173. The adequacy requirement is met here.

- 15 -

*First*, Plaintiffs' interests are aligned with, not antagonistic to, those of the Class, and no conflict exists because they all acquired GoHealth common stock in and/or traceable to the Offering Documents and were all injured by the same materially untrue statements and omissions. *See, e.g.*, *Levitan*, 2003 WL 1720047, at \*6 ("Moreover, Lead Plaintiffs . . . and all Class members allegedly were injured by the identical alleged wrongful conduct of Defendants and it is in Plaintiffs' interest to vigorously prosecute this action on behalf of the Class."); *In re Stericycle, Inc.*, MDL No. 2455, 2017 WL 635142, at \*7 (N.D. Ill. Feb. 16, 2017) ("Because the class representatives assert precisely the same claims and seek the same relief as the class members, [they] have common interests with the proposed class and the adequacy requirement is met."). Plaintiffs will prove the Class' claims when their prove their own claims, thus satisfying the adequacy requirement.

*Second*, Plaintiffs have a sufficient interest in the outcome of the case and are committed to the vigorous prosecution of this case. *See* Robbins Decl. Ex. 4 (Murikinati Decl.) at ¶¶1-8; Ex. 5 (Nixon Decl.) at ¶¶1-8; Ex. 6 (Sandmann Decl.) at ¶¶1-8; Ex. 7 (Turnipseed Decl.) at ¶¶1-8. Plaintiffs already have successfully represented the interests of the proposed Class and demonstrated their adequacy to serve as Class Representatives. Among other things, Plaintiffs: (1) have supervised and monitored the progress of the litigation; (2) have participated in discussions with Lead Counsel concerning case developments; (3) have reviewed and discussed with counsel the filing of significant pleadings and briefs in this case, including the Complaint, the service and progress of discovery, and the issuance of Court Orders; (4) have begun to search for and collect documents responsive to Defendants' discovery requests; (5) have responded to Defendants' interrogatories; (6) understand their duty to the Class; and (7) are committed to vigorously prosecuting this action to maximize the recovery for all Class members. *See id.*; *see*

*also Groupon I*, 2014 WL 5245387, at \*2 (adequacy satisfied because lead plaintiff "has already begun participating in discovery and has retained counsel who is highly experienced in securities class action litigation").

*Third* and finally, Plaintiffs retained Robbins Geller, counsel who is qualified, experienced, and able to vigorously prosecute this case. As its firm résumé demonstrates, Robbins Geller has extensive experience litigating securities class actions before courts in this Circuit and throughout the country, and has achieved substantial and record-setting recoveries. *See* Robbins Decl. Ex. 8 (Robbins Geller Firm Résumé); Ex. 4 (Murikinati Decl.) at ¶¶5-6; Ex. 5 (Nixon Decl.) at ¶¶5-6; Ex. 6 (Sandmann Decl.) at ¶¶5-6; Ex. 7 (Turnipseed Decl.) at ¶¶5-6; *see also Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*, 338 F.R.D. 205, 213 (S.D.N.Y. 2021) (finding Robbins Geller to be a "sophisticated" law firm "with considerable experience in complex securities cases").

Since its appointment as Lead Counsel, Robbins Geller has: (1) drafted a detailed consolidated Complaint; (2) successfully opposed Defendants' motions to dismiss; (3) negotiated various agreements between the parties, including the Agreed Confidentiality and Rule 502(d) Order [ECF 156], and Stipulation and Electronic Discovery Order [ECF 159]; (4) issued written discovery requests to Defendants; (5) responded to Defendants' discovery requests to Plaintiffs; (6) prepared the instant motion for class certification; and (7) litigated vigorously against experienced defense counsel. *See In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 652 (C.D. Cal. 2018) ("[T]he work of Robbins Geller lawyers in this case so far indicates that the Court can again expect that Robbins Geller lawyers will effectively help the class representative vigorously prosecute this case.").

In sum, Plaintiffs are well-suited to represent the Class, have no interests antagonistic to other Class members, and, together with their counsel, are willing and able to continue prosecuting this action on behalf of the Class. Accordingly, the adequacy requirement is satisfied.

### 5. The Court Should Appoint Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g)

In addition to satisfying the adequacy prong of Rule 23(a)(4), Robbins Geller also satisfies the considerations of Rule 23(g), and should be appointed Class Counsel. Under Rule 23(g)(4), the Court must appoint counsel who will fairly and adequately represent the Class and, to that end, should consider: "(i) the work . . . done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1).

As discussed in Section IV(B)(4), *supra*, Robbins Geller has identified, investigated, and vigorously pursued the Class' claims in this action and will continue to do so. In conducting an extensive investigation, drafting the operative Complaint, prevailing on detailed briefing related to Defendants' motions to dismiss, and in serving and responding to discovery, Robbins Geller has consistently demonstrated its knowledge of the applicable law and has proven its willingness to commit substantial time and resources to representing the Class. Robbins Geller's lawyers have been appointed class counsel in numerous securities cases, and courts around the country recognize the expertise and ability of Robbins Geller to effectively litigate complex class actions. *See, e.g.*, Robbins Decl. Ex. 9 (Transcript of Proceedings at 65, *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill. Oct. 20, 2016), ECF 2261 ("[Robbins Geller] performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux. They achieved an exceptionally significant recovery for the class. And the Court agrees . . . that it was,

in fact, a spectacular result for the class.")); *see also Karinski v. Stamps.com, Inc.*, No. CV 19-1828-MWF (SKx), 2020 WL 6572660, at *9 (C.D. Cal. Nov. 9, 2020) (appointing Robbins Geller as class counsel and finding, "Robbins Geller has vigorously prosecuted this action and has substantial experience litigating similar types of class actions"); *In re Sandridge Energy, Inc. Sec. Litig.*, No. CIV-12-1341-G, 2019 WL 4752268, at *9 (W.D. Okla. Sept. 30, 2019) ("[T]he attorneys of Robbins Geller are experienced class-action litigators and are sufficiently committed to this litigation."); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (appointing Robbins Geller as class counsel and noting the firm "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law").  Plaintiffs respectfully request that the Court appoint Robbins Geller as Class Counsel pursuant to Rule 23(g).

**C.      The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(b)(3)**

In addition to meeting the requirements of Rule 23(a), this case also satisfies Rule 23(b)(3)'s requirements that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action satisfies Rule 23(b)(3) because "the interests of the class members are aligned and the same alleged misconduct underlies their claims[,]" and Class members "have a minimal interest in controlling the course of the litigation; there are significant efficiency gains to be reaped from concentrating the litigation in a single forum; and the likely difficulties in managing the class action are readily surmountable."  *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 363 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017)).

- 19 -

**1.      Common Questions of Law and Fact Predominate**

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance "requires . . . that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original). As the Supreme Court and courts within this Circuit recognize, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Messner*, 669 F.3d at 814-15 (same); *TreeHouse*, 2020 WL 919249, at \*8 (same). "To determine whether common questions predominate, courts look to whether there is a 'common nucleus of operative facts.'" *Levitan*, 2003 WL 1720047, at \*6 (quoting *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 535 (N.D. Ill. 1995)). "A court should direct its inquiry primarily toward the issue of liability, rather than damages, in determining whether common questions predominate." *Id.*

Because Plaintiffs' Securities Act claims focus on the contents of the Offering Documents and do not require proof of scienter, reliance, or loss causation, they are particularly well-suited for class treatment. Here, as discussed above, Defendants' alleged misstatements and omissions of material fact to members of the Class are at the core of the Complaint. Whether the Offering Documents contained a material misrepresentation or omission is susceptible to a common answer and will be the predominant issue in the case. If Defendants are liable for the alleged misconduct, they are liable to all similarly situated Class members. Thus, common legal and factual questions are at the core of this litigation and are focused on Defendants' actions and issues of liability. Also, whether certain Defendants were control persons are common questions affecting the claims asserted on behalf of the entire Class. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 91 (D. Conn. 2010) ("[E]ach class member's control person claim should be identical given that Defendants' conduct alone is relevant to satisfying the applicable standard"). This issue too will predominate.

- 20 -

Finally, the methodology for calculating damages is a common issue. Although specific damages may vary for each Class member, the "need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *see also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) (varying damages amounts "does not defeat certification if the method of calculating damages is common to the class"). Here, the Securities Act provides statutory damages formulas that are common to the Class. *See* 15 U.S.C. §§77k(e), 77l(a)(2); *see also In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 WL 5789237, at *6 (C.D. Cal. Oct. 25, 2013) (predominance and superiority satisfied because "calculation of damages will be governed by statutory formulas"); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of section 11(e) prescribes the method of calculating damages[,] . . . and the statutory scheme requires courts to apply the prescribed formula in every section 11 case."); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) (holding that predominance was satisfied in Securities Act case despite the defendant's assertion that damages differed because Section 11 "provides a statutory formula for damages," meaning "the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and facts remains").

It is clear that "[t]he issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue" and, therefore, "common questions of law and fact predominate." *Levitan*, 2003 WL 1720047, at *6. Thus the predominance requirement is met here.

- 21 -

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy

Rule 23(b)(3) also requires that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In assessing Rule 23(b)(3)'s superiority requirement, relevant factors include: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Courts in this Circuit recognize the superiority of the class action mechanism for adjudicating securities actions like this one. *See, e.g.*, *Levitan*, 2003 WL 1720047, at *7 ("A class action in this case is superior to other means of adjudication for several reasons."); *Tatz*, 2003 WL 21372471, at *10 ("Rule 23 was designed for this exact type of case [a securities action]."); *Walgreen*, 2018 WL 1535156, at *2 (noting that the Rule 23 prerequisites for certification "have historically been liberally construed in favor of maintaining securities . . . class actions"); *Holwill*, 2021 WL 7366274, at *2 ("[S]ecurities . . . claims against a large, public company for alleged misrepresentations affecting the company's stock price . . . generally meet[] the standards for certifying a class action."); *TreeHouse*, 2020 WL 919249, at *8 n.7 (noting that "superiority of the class mechanism to individual suits in securities . . . cases such as this is generally taken as a given") (collecting cases).

This action satisfies the superiority requirement for at least four reasons. *First*, "[a]s with many securities law cases, this case involves a large number of investors who are likely to be geographically dispersed. Many of these investors are also likely to have relatively small claims making it expensive to seek recovery through individual litigation." *In re Neopharm, Inc. Sec.*

- 22 -

*Litig.*, 225 F.R.D. 563, 568 (N.D. Ill. 2004); *see also Levitan*, 2003 WL 1720047, at *7 ("Class members will benefit from class treatment because litigation costs are high and it is, therefore, unlikely that shareholders will prosecute individual claims."). *Second*, Plaintiffs are unaware of any other related litigation commenced by Class members that was not consolidated with this action by this Court's Consolidation Order. *Third*, it is without question that the parties and the Court have an interest in this litigation proceeding in a single forum to prevent inconsistent rulings and promote judicial economy. *See Roth*, 238 F.R.D. at 608 ("Judicial economy and efficiency will be promoted by certifying this class, and resolving these matters in one suit."); *Levitan*, 2003 WL 1720047, at *7 ("Indeed, any alternative to this class action could create duplication of actions, the very 'evil that Rule 23 was designed to prevent.'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979)). *Fourth*, and finally, Plaintiffs do not foresee any management difficulties that will preclude this action from being maintained as a class action. Lead Counsel has handled numerous similar actions, and the appropriate procedures and techniques for the management of such suits are well-established. Moreover, the flexibility provided to the Court under Rule 23 will enable it to address and resolve any management difficulties if they arise. *See* Fed R. Civ. P. 23(c)-(d). "Under these circumstances, class certification is the best way to manage this situation which could otherwise disintegrate into piecemeal adjudication of many individual actions involving essentially identical questions of law and fact." *Levitan*, 2003 WL 1720047, at *7. Thus, this action satisfies the superiority requirement of Rule 23(b)(3).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted in its entirety and that the Court enter an Order: (1) certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g); (2) appointing Plaintiffs as Class Representatives; and (3) appointing Robbins Geller as Class Counsel.

DATED:  September 23, 2022

ROBBINS GELLER RUDMAN
   & DOWD LLP
ROBERT J. ROBBINS (IL Bar #572233)


*s/ Robert J. Robbins*
ROBERT J. ROBBINS

SABRINA E. TIRABASSI (IL Bar #25521)
SAMUEL C. FELDMAN (IL Bar #326206)
MATTHEW A. RICHARD (IL Bar #1031327)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com
sfeldman@rgrdlaw.com
mrichard@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ (IL Bar #6255605)
BRIAN E. COCHRAN (IL Bar #6329016)
FRANK A. RICHTER (IL Bar #6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

- 24 -

- 25 -

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

*Additional Counsel for Lead Plaintiffs*