**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | **Case No. 1:20-cv-5593** |
| | ) | |
| **In re GOHEALTH, INC. SECURITIES** | ) | |
| **LITIGATION** | ) | |
| | ) | **Judge Sharon Johnson Coleman** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**THE GOHEALTH, CENTERBRIDGE AND UNDERWRITER DEFENDANTS'**
**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

Preliminary Statement.................................................................................................................. 1

Relevant Background................................................................................................................... 2

Legal Standard ............................................................................................................................ 4

Argument .................................................................................................................................... 6

I.      Plaintiffs' Motion Fails To Demonstrate That The Proposed Class Is
Ascertainable.................................................................................................................... 6

      A.      The Motion Does Not Propose A Class Period And Thus Does Not
Propose An Ascertainable Class ............................................................................. 6

      B.      If The Court Does Certify A Class, The Class Should Exclude Those Who
Purchased GoHealth Shares After July 23, 2020...................................................... 7

II.     Individualized Questions Predominate ........................................................................... 11

      A.      An Individualized Inquiry Will Be Required To Determine Each Putative
Class Member's Knowledge ................................................................................... 11

      B.      An Individualized Inquiry Will Be Required To Determine Whether Each
Putative Class Member's Share Purchases Are Traceable To The IPO .............. 13

III.    Intra-Class Conflicts Preclude Class Certification ......................................................... 15

Conclusion ............................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................4

*APA Excelsior III L.P. v. Premiere Tech., Inc.*,
476 F.3d 1261 (11th Cir. 2007) ...................................................................8, 9, 10

*Boshes v. Gen. Motors. Corp.*,
59 F.R.D. 589 (N.D. Ill. 1973)................................................................................17

*Comcast Corp v. Behrend*,
569 U.S. 27 (2013).................................................................................................4, 5

*In re Fortune Sys. Sec. Litig.*,
680 F.Supp. 1360 (N.D. Cal. 1987) .......................................................................16

*Gosselin v. First Tr. Advisors L.P.*,
2009 WL 5064295 (N.D. Ill. Dec. 17, 2009)........................................................15

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013).......................................................................6

*Holmes v. Godinez*,
311 F.R.D. 177 (N.D. Ill. 2015)................................................................................5

*Klein v. A.G. Becker Paribas Inc.*,
109 F.R.D. 646 (S.D.N.Y. 1986) ..............................................................................8

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ...........................................................................12

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) ..................................................................................13

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................................14

*Levine v. AtriCure, Inc.*,
508 F.Supp. 2d 268 (S.D.N.Y. 2007).....................................................................15

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ....................................................................................5

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....................................................................................6

*N.J. Carpenters Health Fund v. Residential Cap., LLC,*
    272 F.R.D. 160 (S.D.N.Y. 2011) ...............................................................................12, 13, 14

*In re Sears, Roebuck & Co. Tools Mkting & Sales Prac. Litig.,*
    2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ..............................................................................6

*In re Shoretel Inc., Sec. Litig.,*
    2009 WL 248326 (N.D. Cal. Feb. 2, 2009) .............................................................................15

*In re Smart Tech. Inc. S'holder Litig.,*
    295 F.R.D. 50 (S.D.N.Y. 2013) ...................................................................................7, 8, 11

*In re SunEdison, Inc. Sec. Litig.,*
    329 F.R.D. 124 (S.D.N.Y. 2019) ................................................................................ *passim*

*United States v. Diaz,*
    533 F.3d 574 (7th Cir. 2008) ......................................................................................................7

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)....................................................................................................................5

**Statutes**

15 U.S.C. § 77k...................................................................................................................................2

15 U.S.C. § 77k(a) .......................................................................................................................7, 11

Securities Act of 1933 Section 11 and Section 15 ..........................................................................2

**Other Authorities**

1 MCLAUGHLIN ON CLASS ACTIONS § 4:2 (19th ed. 2022).................................................................6

Rule 23 .................................................................................................................4, 5, 7, 12, 17

iv

**Preliminary Statement**

Defendants GoHealth, Inc. ("GoHealth" or the "Company"), NVX Holdings, Inc. ("NVX Holdings") and Clinton P. Jones, Brandon M. Cruz and Travis J. Matthiesen (collectively, the "Individual Defendants" and, together with GoHealth and NVX Holdings, the "GoHealth Defendants"), Goldman Sachs & Co. LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC (together, the "Underwriter Defendants"), and CCP III AIV VII Holdings, L.P., C.B. Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC (together, "Centerbridge") oppose Plaintiffs' Motion for Class Certification (the "Motion," Dkt. 165) for three independent reasons.

First, the Motion does not propose a class period, and thus fails to carry Plaintiffs' burden to show that the proposed class is ascertainable. The Motion should be denied for this reason alone. In the alternative, if the Court is inclined to certify a class (which must be ascertainable), the Court should define the class to include only those who purchased GoHealth stock from July 15, 2020 (the date on which shares were first publicly sold in connection with GoHealth's IPO) through July 23, 2020 (the date on which the Complaint claims that the Registration Statement's alleged misstatements were revealed to investors). At the latest, the class period should end on August 19, 2020 (the date on which the Complaint alleges that GoHealth made disclosures adding detail to the July 23, 2020 disclosure).

Second, as a matter of law, each putative class member must demonstrate that she did not have knowledge of the alleged misstatements at the time she purchased GoHealth shares. Each putative class member must also demonstrate that the GoHealth shares she purchased can be traced to the IPO registration statement at issue. Both are individualized questions, which predominate over common questions, and thus preclude class certification.

Third, conflicts exist among putative class members. The Defendants are entitled to demonstrate "negative causation"—i.e., that declines in the Company's stock price were not

1

caused by the alleged misstatements. The Complaint's allegations demonstrate that, because putative class members purchased shares at different times, conflicts will arise among those purchasers as to which stock price declines should be attributable to the alleged misstatements. Some putative class members will be incentivized to argue that certain public disclosures were related to the alleged misstatements and caused stock price declines, while other class members will be incentivized to argue that other public disclosures were related to the alleged misstatements and caused stock price declines. These conflicts make the class unmanageable and thus not a superior method of adjudication.

For each of these reasons, and as explained further below, the Court should deny Plaintiffs' Motion.

**Relevant Background**

GoHealth is a health insurance marketplace that uses a proprietary technology platform to connect consumers with health insurance plans. Dkt. 66 ("Compl.") ¶ 31.

On July 15, 2020, GoHealth had its initial public offering of shares of Class A common stock. *Id*. ¶ 74. Before the IPO, GoHealth filed with the Securities and Exchange Commission a registration statement on Form S-1 (as amended, the "Registration Statement") for the IPO. *Id*. ¶¶ 70-73. On the same day as the IPO—and in addition to shares offered to the general investing public—GoHealth issued shares as part of certain organizational transactions and, in a separate Registration Statement, issued shares to certain employee benefit plans. Ex. A at 207 (GoHealth 7/8/20 Form S-1); Ex. B (GoHealth 7/15/20 Form S-8). Those shares were freely tradeable 180 days after the IPO date. *Id*.

Plaintiffs contend that the GoHealth Defendants (and other defendants) are responsible for allegedly false or misleading statements in the Registration Statement. On this basis, Plaintiffs

2

assert claims under Section 11 and Section 15 of the Securities Act of 1933, and seek to represent a class of purchasers of GoHealth Class A common stock. *See* Compl. ¶ 1; 15 U.S.C. § 77k.

Specifically, the Complaint alleges that GoHealth's Registration Statement did not disclose (1) increased "churn" in the health insurance industry—i.e., an increasing number of customers changing healthcare plans; (2) ongoing expansion of the Company's business to additional insurance carriers; and (3) that such carrier expansion would result in lower commissions and increased marketing costs, and would thus negatively impact LTV/CAC—a metric that tracks the ratio of the lifetime value of commissions per consumer acquisition cost. Compl. ¶ 100.

Plaintiffs also contend that these alleged omissions resulted in misstatements in the Registration Statement's disclosure of "risk factors." *Id.* ¶¶ 101-04. Notably, though, Plaintiffs concede that GoHealth's risk factors disclosed that commission rates differed among carriers, that the Company's Medicare revenue was "concentrated in a relatively small number of carriers," and that GoHealth was thus "particularly vulnerable to changes in commission rates," which could adversely impact LTV. *Id.* ¶¶ 102-03 (quoting the Registration Statement).

Plaintiffs also allege that it was publicly known around the time of GoHealth's July 15, 2020 IPO that companies across the entire health insurance industry were facing common challenges caused by churn. For example, the week after the IPO, one of the Company's competitors, eHealth, publicly disclosed that it was observing increased churn among Medicare plan customers. Compl. ¶ 116. eHealth attributed this increased churn to expanding plan choices, escalating enrollment opportunities, and the growing market share of Medicare Advantage plans— all of which were also publicly known. *Id.* According to Plaintiffs, many of the issues that eHealth disclosed on July 23—including increased Medicare churn—"impacted the entire industry, including GoHealth." *Id.*

3

After market hours on August 19, 2020 (just over a month after GoHealth's IPO), the Company released its second quarter earnings report and discussed that release on an investor call. *Id*. ¶ 117-19. According to the Complaint, the earnings release discussed the same industry-wide increase in churn that eHealth had earlier disclosed, along with certain of GoHealth's quarterly results and metrics, the revenue and operational effects of the increased churn, "several new carrier additions," and that the addition of new carriers caused a decrease in commissions from carriers and an increase in advertising expenses. *Id*. ¶¶ 117-18. During the investor call that same day, the Company also the dynamics of increased churn, including the marketplace's increasing use of Medicare plans, and the addition of new insurance carriers to its platform. *Id*. ¶ 120. The Company explained that these factors decreased GoHealth's commissions and increased its costs as the Company sought to build relationships with the new carriers. *Id*.

The Company also explained that lowered commissions and increased marketing costs necessarily put pressure on GoHealth's LTV/CAC metric. *Id*. Churn, by definition, increased the consumer acquisition costs. As more people switched plans, GoHealth had to spend more to match more customers with other plans. And GoHealth would be more successful in matching customers to plans if it had more plans to offer consumers, hence its efforts to bring in new carriers.

After the initial complaint was filed in this action, the Court appointed four lead Plaintiffs: Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandman, and Jeff S. Turnipseed. Plaintiffs now move for certification of a class of "all purchasers of GoHealth Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the IPO." Compl. ¶ 127.

## Legal Standard

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013). The Supreme Court has emphasized that Rule 23 "imposes stringent requirements for certification

4

that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Plaintiffs bear the burden of proving that the requirements of Rule 23 are met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Under Rule 23(a), the moving party must show that: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims are typical of the claims of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Further, an "implied requirement of Rule 23(a) dictates that the plaintiffs' proposed class definition be sufficiently definite that its members are ascertainable." *Holmes v. Godinez*, 311 F.R.D. 177, 213 (N.D. Ill. 2015) (internal quotation marks omitted).

Plaintiffs must also satisfy one of the Rule 23(b) requirements. *Behrend*, 569 U.S. at 33. Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Supreme Court has reiterated that Rule 23 "does not set forth a mere pleading standard." *Behrend*, 569 U.S. at 33. Indeed, at the class certification stage, Plaintiffs may not rest on their pleadings or satisfy their burden by recourse to sweeping or conclusory assertions concerning the Rule 23 requirements. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, Plaintiffs must present "evidentiary proof" showing that the Rule 23 requirements are satisfied. *See Behrend*, 569 U.S. at 33.

**Argument**

**I.    Plaintiffs' Motion Fails To Demonstrate That The Proposed Class Is Ascertainable.**

   *A.    The Motion Does Not Propose A Class Period And Thus Does Not Propose An Ascertainable Class.*

A class definition must "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). In putative shareholder class actions like this one, "the proposed class period comprises the period during which the price of the relevant security allegedly was inflated by defendant's purported misleading statements." 1 MCLAUGHLIN ON CLASS ACTIONS § 4:2 (19th ed. 2022). Those investors who purchased shares during the class period and who can trace their purchases to the Registration Statement may be considered class members; those investors who did not purchase during the class period or who cannot trace their purchases to the Registration Statement may not be considered class members.

Importantly, the class period of a certified class must have an end date. Without an end date, the Court cannot ascertain which investors are included in the class and which investors are excluded. Thus, an end date is mandated by "the implied requirement of ascertainability." *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 133-34 (S.D.N.Y. 2019); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 949 (S.D.N.Y. 2013) ("an open-ended end-date is untenable") (collecting cases); *In re Sears, Roebuck & Co. Tools Mkting & Sales Prac. Litig.*, 2007 WL 4287511, at *4 (N.D. Ill. Dec. 4, 2007) (denying class certification in part because plaintiffs "fail[ed] to suggest an appropriate class period and offer[ed] [the Court] no assistance whatsoever in deciding upon one").

Here, Plaintiffs' Motion proposes that the class period include investors who purchased after GoHealth's IPO (thus implying the IPO date as the class period start date). Mot. at 1.

6

However, the Motion does **not** propose or even imply a class period end date. *See id*. Without a class period end date, it is impossible to ascertain those GoHealth shareholders who purchased shares during the class period (and are thus members of a certified class), and those who purchased shares outside the class period (and are thus **not** members of a certified class). In the parlance of the class certification requirements, the open-ended class suggested by Plaintiffs' Motion is, by definition, not ascertainable. Plaintiffs thus fail to satisfy their burden to demonstrate that Rule 23's requirements are met, and the Motion should be denied for this reason alone.[1]

> B.      *If The Court Does Certify A Class, The Class Should Exclude Those Who Purchased GoHealth Shares After July 23, 2020.*

The Court should deny class certification because Plaintiffs do not propose an ascertainable class. If the Court is nonetheless inclined to certify a class, the class period should be defined to include only those who purchased shares of GoHealth common stock between July 15, 2020 and July 23, 2020, inclusive. The Court can do so pursuant to its "authority sua sponte to modify a proposed class definition." *SunEdison, Inc.*, 329 F.R.D. at 133-34 (shortening class period plaintiffs proposed).

"In a securities fraud class action, courts are required to cut off the class period on the date of a statement or event that cures the market." *Id.* at 134 (quoting *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 48 (S.D.N.Y. 2018)). This requirement exists because

---

[1] The Court should not permit Plaintiffs' failure to become their success. It was Plaintiffs' burden to propose a class period in their Motion. *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) ("Arguments may not be raised for the first time in a reply brief; this submission therefore is waived."). Plaintiffs thus should not be permitted to argue for a defined class period (with a particular end date) for the first time in their reply in support of the Motion, as the GoHealth and Underwriter Defendants would have no opportunity to respond. At the very least, if the Court is inclined to allow Plaintiffs to argue for a defined class period for the first time in reply, the GoHealth and Underwriter Defendants should be permitted the option to address Plaintiffs' untimely argument in a sur-reply.

Section 11 (the primary statute under which Plaintiffs sue) does not permit recovery for any person who knew of the alleged misstatement or omission at the time he acquired the securities. 15 U.S.C. § 77k(a); *see also In re Smart Tech. Inc. S'holder Litig.*, 295 F.R.D. 50, 58-59 (S.D.N.Y. 2013) ("Where the plaintiff knew of the untruth or omissions at the time of his or her acquisition of the security . . . the plaintiff may not maintain a section 11 [] claim.") (internal quotation marks omitted). Courts interpret knowledge as actual knowledge of the plaintiff or where the plaintiff "*had available* information that would have revealed the untruth or omission." *See APA Excelsior III L.P. v. Premiere Tech., Inc.*, 476 F.3d 1261, 1277 (11th Cir. 2007) (quoting *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 575 (E.D.N.Y. 1971)). Accordingly, courts routinely end class periods on the date a public corrective disclosure was made.

For example, in *In re SunEdison, Inc. Securities Litigation*, the court observed that "the Complaint itself alleges that the 10-Q 'disclosed' and 'revealed' the putatively omitted and misstated information." 329 F.R.D. at 134. Based on that observation, the court certified a class asserting Section 11 claims, but defined the class period to end on the date the 10-Q was publicly filed. *Id*. Notably, the *SunEdison* plaintiffs had proposed a later class period end date when seeking class certification (*id*. at 133); here, Plaintiffs failed altogether to propose an end date.

Similarly, in another Section 11 case, *Yi Xiang v. Inovalon Holdings, Inc.*, the court certified a class with a class period that terminated on the date that, according to the complaint, the company disclosed information revealing its alleged omissions. 327 F.R.D. 510, 521 (S.D.N.Y. 2018). The court reasoned that "even according to Plaintiff's own allegations, putative plaintiffs purchasing or acquiring [defendant's] stock after that date would have actual knowledge of [defendant's] purported misrepresentations and omissions." *Id*.; *see also In re Smart Tech.*, 295 F.R.D. at 58-59 (Section 11 class period terminated on date of the "corrective disclosure" alleged

8

in complaint); *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 653 (S.D.N.Y. 1986) (Section Section 11 class period terminated following press release disclosing allegedly omitted information).

Here, the Complaint alleges that the Registration Statement did not disclose increased churn in the health insurance industry, expansion of the Company's business to include other insurance carriers, and that such carrier expansion would result in lower commissions and increased marketing costs and thus negatively impact LTV/CAC. Compl. ¶ 116-18. The Complaint goes on to indicate that this allegedly omitted information was disclosed—and thus "[made] *available* information that would have revealed the untruth or omission"—on July 23, 2020. *Id.*; *Premiere Tech*, 476 F.3d at 1277 (internal quotation marks omitted). Specifically, the Complaint alleges that eHealth publicly disclosed the same challenges GoHealth allegedly faced, and that those challenges were shared across the industry. Compl. ¶ 116. eHealth further revealed industry-wide elevated churn as a result of Medicare consumers having more plans to choose from and more enrollment opportunities, which led to more shopping and switching by those customers. *Id.* The Complaint alleges that this disclosure revealed the increased churn phenomenon that the Registration Statement allegedly omitted. Compl. ¶¶ 18, 24, 99-100, 114. Indeed, Plaintiffs contend that this Medicare churn "impacted the entire industry, including GoHealth." Compl. ¶ 116.

Increased churn is the central allegation of the Complaint: that Medicare customers across the industry were switching more frequently from one insurance plan to another. *Id*. ¶¶ 8, 18, 20, 24, 64, 89, 114, 116, 119. This industry shift, Plaintiffs allege, rippled through GoHealth and its competitors as they attempted to solve the problems churn created. *Id*. ¶¶ 116-17. By definition, as churn increased and more customers switched insurance plans, the aggregate costs of signing

them up for new plans increased. Thus, GoHealth had increased marketing costs as it sought to bring in new customers. Moreover, new carriers were required to combat churn and continue to grow the Company. New carriers meant lower commissions for GoHealth while it built status with those carriers. Churn also meant decreased commissions and negative impact on LTV/CAC. Thus, the July 23 disclosure of increased churn—which Plaintiffs themselves claim was an industry-wide phenomenon that impacted GoHealth—supposedly revealed the crux of the Registration Statement's alleged omissions. Even according to the Complaint's allegations, any investor who acquired GoHealth shares after July 23, 2020 must have known or had available information that would have revealed that GoHealth and others in the industry were challenged by increased churn. *Premiere Tech*, 476 F.3d at 1277. The class period should therefore end on July 23, 2020. *SunEdison, Inc.*, 329 F.R.D. at 134.

At the absolute outside, the class period should end no later than August 19, 2020. On that date, according to Plaintiffs, GoHealth disclosed a significant net loss, "several new carrier additions," and additional details and metrics around the increased churn reported a month earlier by eHealth. Compl. ¶ 117-20. Adding further context to the effects of increased churn, GoHealth explained that the addition of new carriers and the increasing use of Medicare Special Needs Plans ("SNP") caused a decrease in commissions from carriers and an increase in advertising expenses, which in turn put downward pressure on LTV/CAC. *Id.*

Thus, according to the Complaint, by August 19, investors had actual knowledge or had information available to reveal every piece of information that Plaintiffs claim the Registration Statement misstated or omitted. *Id.* ¶ 100. As the Complaint tells it, by the time the market opened on August 20, investors were aware of GoHealth's challenges, including every major challenge that, according to Plaintiffs' allegations, was not adequately disclosed in the Registration

10

Statement. *Id*. Purchasers of GoHealth common stock at any time after August 19 thus allegedly had presumptive knowledge of the supposed misstatements at the time they purchased their shares, and cannot assert a viable Section 11 claim. *In re Smart Tech. Inc. S'holder Litig.*, 295 F.R.D. at 58-59. Accordingly, any class period should end before August 20, 2020 at the absolute latest.[2]

## II. Individualized Questions Predominate.

### A. *An Individualized Inquiry Will Be Required To Determine Each Putative Class Member's Knowledge.*

Again, as a matter of law, a plaintiff who knew of an alleged misstatement or corrective information at the time of her share purchase cannot sustain a Section 11 claim. 15 U.S.C. §77k(a). Thus, here, the Court will be required to conduct an individualized inquiry to determine whether each putative class member had such knowledge at the time she purchased GoHealth shares. In particular, the Court will be required to inquire as to whether each putative class member was aware of the information that was allegedly misstated in GoHealth's Registration Statement— particularly after corrective information was allegedly disclosed to the investing public on July 23 and August 19, 2020.[3] Such individualized inquiries will predominate over common questions, meaning Rule 23(b)(3) cannot be satisfied, and the Court should therefore decline to certify a class.

---

[2] The Complaint goes on to describe two post-August 19, 2020 disclosures. On November 11, 2020, GoHealth reported third-quarter earnings. Compl. ¶¶ 121-23. The Complaint alleges that report again revealed the same information as the August 19 disclosure: declining commissions, increased marketing and advertising expenses, the addition of new carriers, and continued downward pressure on LTV as a result of carrier expansion and increased use of SNPs. *Id*. On December 2, 2020, GoHealth participated in a public conference. Compl. ¶¶ 124-25. The Complaint alleges the Company again discussed the same issues disclosed on August 19: lower commissions, lower LTV, and the addition of new carriers. *Id*. The later disclosures are not grounds for a class period that extends beyond August 19, 2020. *See SunEdison, Inc.*, 329 F.R.D. at 134 (limiting class period to an earlier date, even where "additional details and context" were described in later disclosures).

[3] If the Court does certify a class, but defines the class period to end on July 23, 2020, this individual inquiry may not be required. Assuming for the sake of argument that material information was improperly omitted from the Registration Statement, and assuming that no

Courts have reached the same conclusion in other Section 11 cases. For example, in *Vignola v. Fat Brands, Inc.*, "the allegedly omitted information that rendered the Offering Documents allegedly misleading was public information" that some investors learned before purchasing their shares. 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020). Noting that public disclosures of the allegedly omitted information before the IPO raised questions of whether investors had encountered that information, the court concluded that adjudication would therefore "requir[e] individualized inquiries into each class members' alleged lack of knowledge." *Id*. The court thus declined to certify a class. *Id.*; *see also In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152 (N.D. Tex. 2014) (denying class certification where putative class members "had varying levels of information relevant to the alleged misstatements and omissions in the Registration Statement, precluding a finding of predominance on the essential issue of investor knowledge").

Similarly, class certification has been denied where putative class members purchased "at different times relative to material disclosures," meaning that "the proposed class would include investors with different levels of knowledge," and therefore "individual issues predominate." *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 170 (S.D.N.Y. 2011). In *Residential Capital*, later purchasers had information about the defendant's declining business that earlier purchasers lacked, including "increasing delinquency and foreclosure rates, as well as key ratings downgrades." *Id.*

---

corrective information was disclosed before the July 23 disclosure, all putative class members were in the same position before the alleged corrective disclosure on July 23. If the Court defines the class period to end on August 19, 2020—and, again, assuming the Complaint's allegations are correct—the inquiry may be limited to putative class members who purchased between July 24 and August 19, 2020, and only as to their knowledge of the July 23 disclosure. In short, the GoHealth and Underwriter Defendants acknowledge that a class period ending July 23 or August 19 ***may*** possibly cure the need for individualized inquiries into each putative class member's knowledge.

12

Here, Plaintiffs themselves allege that putative class members likewise purchased "at different times relative to material disclosures" and, as a result, had "different levels of knowledge." *Id.* Indeed, each of the four lead Plaintiffs is differently situated from the other three. Lead Plaintiffs Murikinati and Sandman allegedly purchased all of their GoHealth shares on July 15, 2020—before they could have had knowledge of the July 23 and August 19 disclosures of allegedly omitted information. By contrast, lead Plaintiff Turnipseed allegedly purchased some of his shares on August 14, 2020—after he had knowledge of the information disclosed on July 23, but before he could have had knowledge of the August 19 disclosure. And lead Plaintiff Nixon purchased some of his shares as late as August 24, 2020—after he had knowledge of the information disclosed on both July 23 and August 19.

Plainly, even among the lead Plaintiffs, the Court will be tasked with determining whether each may have had different knowledge when he purchased GoHealth shares "at different times relative to material disclosures." *Residential Cap.*, 272 F.R.D. at 170. Among a putative class of thousands of shareholders, the inquiries necessary to determine each shareholder's knowledge will be exponentially more varied and burdensome. Only individualized inquiries into what each putative class member knew, and when she knew it, can determine whether that purchaser can succeed on her claim. Such individualized inquiries will predominate over common questions, and the Court should therefore decline to certify a class.

> B.     *An Individualized Inquiry Will Be Required To Determine Whether Each Putative Class Member's Share Purchases Are Traceable To The IPO.*

To have standing to pursue a Section 11 claim, each putative class member must demonstrate that the shares she purchased are traceable to the shares issued in the offering pursuant to the Registration Statement. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495-96 (5th Cir. 2005) ("aftermarket purchasers seeking standing must demonstrate the ability to 'trace' their shares to

the faulty registration"). This inquiry is necessarily individualized and therefore precludes class certification.

Here, the issue is particularly pronounced. In the July 15, 2020 IPO, GoHealth issued 39,500,000 shares of Class A common stock. Ex. A at 3 (GoHealth 7/8/20 Form S-1). GoHealth also issued 41,316,989 shares of Class A common stock as part of the organizational transactions executed in connection with the offering. *Id*. at 93. Those additional shares were subject to a 180-day lockup period, meaning that those shares could not be sold into the secondary market until January 11, 2021. *Id*. at 220. In addition, under multiple separate registration statements, GoHealth registered additional Class A common stock under employee benefit plans on July 15, 2020 and four subsequent dates.[4] Ex. B (GoHealth 7/15/20 Form S-8). Those additional shares were likewise subject to 180-day lockup periods, meaning that 6,465,359 shares could not be sold into the secondary market until January 11, 2021. *Id.* at Ex. 99.1 at 20.

The Court may be able to assume that class members who purchased shares in the secondary market before January 11, 2021 can trace their purchases to the IPO and Registration Statement. On and after January 11, 2021, however, the secondary market was potentially flooded with shares that were not issued in the IPO or pursuant to the Registration Statement. For each putative class member who purchased shares on or after that date to maintain a Section 11 claim, she must trace each share she purchased back to the IPO—meaning that each putative class

---

[4]     GoHealth also registered shares under employee benefit plans on February 10, 2021, December 20, 2021, March 23, 2022, and June 6, 2022. Exs. C (GoHealth 2/10/21 Form S-8); D (GoHealth 12/20/21 Form S-8; E (GoHealth 3/23/22 Form S-8); F (GoHealth 6/6/22 Form S-8). Under these issuances 5,051,728 shares could be sold into the secondary market on August 9, 2021 (Ex. C at 2), 4,000,000 shares could be sold into the secondary market on June 18, 2022 (Ex. D at 2), 6,929,407 shares could be sold into the secondary market on September 19, 2022 (Ex. E at 3), and 10,267,608 shares can be sold into the secondary market starting on December 3, 2022 (Ex. F at 3).

member must prove that each share she purchased in the secondary market was originally issued in the IPO, and was *not* a share sold into the secondary market by a shareholder who obtained her shares as part of the organizational transactions or from the employee benefit plans. *See In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1180 (N.D. Cal. 2017) ("only shares that were purchased in the IPO or on the open market before [the end of the lock-up period], are traceable to the allegedly misleading disclosure statement (absent an individualized showing that post-lock-up purchases were individually traceable to the IPO)").

Analyzing each such class member's proof of purchase and tracing will necessarily require the Court to conduct an individualized inquiry into each share purchased by each putative class member who acquired any of her shares on or after January 11, 2021. Such individualized questions will predominate over common questions and thus preclude class certification.

### III. Intra-Class Conflicts Preclude Class Certification.

Just as putative class members who purchased "at different times relative to material disclosures" had "different levels of knowledge" (*supra* at 12-13), putative class members who purchased at different times will necessarily tie their putative losses to different disclosures. Each different group of putative class members will thus be incentivized to make or emphasize different arguments regarding which disclosures cured the alleged misstatements. Because of these intra-class conflicts, a class is unmanageable, not a superior method of adjudication under Rule 23(b)(3), and cannot be certified.

Negative causation is an affirmative defense in Section 11 cases. *Gosselin v. First Tr. Advisors L.P.*, 2009 WL 5064295, at *7 (N.D. Ill. Dec. 17, 2009). A plaintiff asserting a Section 11 claim is not required to prove that her alleged losses incurred as a result of a declining stock price were caused by the Registration Statement's alleged misstatements. *Levine v. AtriCure, Inc.*, 508 F.Supp. 2d 268, 272 (S.D.N.Y. 2007) ("Loss causation . . . is not an element of a § 11 claim.").

15

Instead, defendants are entitled to demonstrate that the declining stock price was caused by disclosures, information or events unrelated to the alleged misstatements. *See e.g., In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at \*4-5 (N.D. Cal. Feb. 2, 2009) (defendants established negative causation at the pleading stage because the Complaint alleged plaintiffs' losses were caused by a press release, rather than by alleged misstatements in the Registration Statement). To overcome this defense, a plaintiff may respond by attempting to show that such disclosures, information or events are related to the alleged misstatements. *See e.g. In re Fortune Sys. Sec. Litig.*, 680 F.Supp. 1360, 1368 (N.D. Cal. 1987) (plaintiffs failed to rebut evidence of negative causation).

Here, the Defendants expect to assert a negative causation defense. If Plaintiffs elect to challenge this defense, they may attempt to show that, after each alleged misstatement was revealed to investors, the revelation caused a statistically significant drop in GoHealth's stock price. But different putative class members have different incentives when it comes to arguing which disclosure allegedly revealed each misstatement.

This intra-class conflict can be demonstrated using the lead Plaintiffs as an example. Lead Plaintiff Sandman purchased shares on July 15, 2020 (the day of the IPO), and sold those shares on August 6 and August 10—i.e., after July 23, 2022, when the Complaint alleges that corrective information was publicly disclosed and caused GoHealth's stock price to decline, but before a stock price decline on August 19, 2020. Dkt. 43-3 at 2. The Defendants may argue, for example, that the stock price decline on July 23 was not statistically significant (and therefore cannot have been caused by any disclosure on that date), or was caused by factors unrelated to the alleged misstatements. Lead Plaintiff Sandman may attempt to rebut this negative causation defense by

16

arguing that the July 23 disclosure caused the subsequent stock price decline, and revealed at least some of the alleged misstatements.

Other class members will have different incentives than lead Plaintiff Sandman in response to the Defendants' negative causation defense. For example, a putative class member who purchased her GoHealth shares after November 11 (when the Complaint alleges GoHealth reported declining commissions in the third quarter) will have no interest in rebutting the Defendants' negative causation defense to the July 23 stock price decline—her claimed losses will be the same whether or not the Defendants succeed in their defense to the July 23 stock price decline. Lead Plaintiff Sandman will likewise have no interest in rebutting the Defendants' negative causation defense to the November 11 stock price decline—lead Plaintiff Sandman's claimed losses will be the same whether or not the Defendants succeed in their defense to the November 11 stock price decline.

The number of ways a lead Plaintiff or putative class member may choose to, or in some cases need to, rebut the negative causation defense will be based on different purchase and sale dates. These conflicting interests will render the class unmanageable; a class action is thus not a superior method of adjudication under Rule 23. *See Boshes v. Gen. Motors. Corp.*, 59 F.R.D. 589, 599 (N.D. Ill. 1973) ("a class action may not be a superior or, to be more exact, a feasible method of adjudication because the 'class' is simply unmanageable").

For the same reason, lead Plaintiffs' claims are not typical of the entire class. *See* Rule 23(a)(3). Three lead Plaintiffs purchased some GoHealth stock on the day of the IPO. Dkt. 43-3 at 2-3. One (Murikinati) is still holding all his shares, one (Sandman) sold after the July 23 disclosure but before the August 19 disclosure, and the third (Nixon) bought more shares after the August 19 disclosure and sold before the November 11 disclosure. *Id.* The fourth lead Plaintiff (Turnipseed)

purchased after the July 23 disclosure and sold after the August 19 disclosure. *Id.* These lead Plaintiffs' claims will therefore not be typical of putative class members who purchased and sold before the July 23 disclosure, or (if they are not excluded from the class entirely as discussed in Section I, *supra*) purchased after the November 11 or December 2 disclosures. For this additional reason, the Court should not certify a class here.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for class certification.

Dated: December 2, 2022

Respectfully Submitted,

/s/ Glenn K. Vanzura

J. Gregory Deis (ARDC No. 6278910)
gdeis@mayerbrown.com
Sara Norval (ARDC No. 6324420)
snorval@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 782-0600

Glenn K. Vanzura (*pro hac vice*)
gvanzura@mayerbrown.com
Jacqueline M. Vallette (*pro hac vice*)
jvallette@mayerbrown.com
Matthew O. Kussman (*pro hac vice*)
mkussman@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave. #2500
Los Angeles, California 90071
Tel.: (213) 229-9500

*Counsel for Defendants GoHealth, Inc., Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, and NVX Holdings, Inc.*

18

/s/Michelle Reed

AKIN GUMP STRAUSS HAUER & FELD LLP
Katherine R. Goldstein
kgoldstein@akingump.com
Nathaniel B. Botwinick (*pro hac vice*)
nbotwinick@akingump.com
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Michelle Reed
mreed@akingump.com
2300 N. Field Street
Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Megan Cunniff Church (ARDC No. 6281234)
mchurch@mololamken.com
MOLOLAMKEN LLP
300 North LaSalle Drive, Suite 5350
Chicago, Illinois 60654
Telephone: (312) 450-6716
Facsimile: (312) 450-6701

*Counsel for Defendants CCP III AIV VII Holdings, L.P., C.B. Blizzard Co-Invest Holdings, L.P., and Blizzard Aggregator, LLC*

/s/ Marcella L. Lape

Marcella L. Lape (ARDC No. 6286676)
marcie.lape@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

Susan L. Saltzstein (*pro hac vice*)
susan.saltzstein@skadden.com
Lara A. Flath (ARDC No. 6289481)
lara.flath@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Counsel for Defendants Goldman Sachs & Co., LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC*

1