UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) | Case No. 1:20-cv-05593 |
| | ) ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | Judge Sharon Johnson Coleman |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Gabriel A. Fuentes |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
<u>CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

## TABLE OF CONTENTS

**Page**

I. ARGUMENT...................................................................................................2

    A. The Class Is Readily Ascertainable .........................................................2

    B. Plaintiffs Established that Common Issues Predominate and Defendants' Predominance Challenges Fall Short..........................................................6

        1. Defendants' Unproven Actual Knowledge Defense Is Improper at Class Certification and Fails to Undermine Predominance ........................7

    C. No Individualized Questions as to Traceability Exist............................................10

    D. No Intra-Class Conflicts Exist and Plaintiffs Are Typical....................................11

II. CONCLUSION..............................................................................................13

4884-9951-0096.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997)..................................................................................................................7

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
　476 F.3d 1261 (11th Cir. 2007) ................................................................................................5

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
　222 F.3d 52 (2d Cir. 2000).......................................................................................................8

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
　No. 14-786 ADM/TNL, 2016 WL 4098741 (D. Minn. July 28, 2016)....................................12

*Boston Ret. Sys. v. Uber Techs., Inc.*,
　No. 19-cv-06361-RS, 2022 WL 2954937 (N.D. Cal. July 26, 2022) .......................................7

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
　No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017) ......................3

*Cosby v. KPMG, LLP*,
　No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114 (E.D. Tenn. May 7, 2021).........................10

*Fed. Hous. Fin. Agency v. UBS Ams. Inc.*,
　No. 11 Civ. 5201(DLC), 2013 WL 3284118 (S.D.N.Y. June 28, 2013) ..................................8

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
　301 F.R.D. 116 (S.D.N.Y. 2014) ..............................................................................................7

*Gosselin v. First Tr. Advisors L.P.*,
　No. 08 C 5213, 2009 WL 5064295 (N.D. Ill. Dec. 17, 2009) .................................................12

*Hart v. Rick's Cabaret Int'l, Inc.*,
　967 F. Supp. 2d 901 (S.D.N.Y. 2013)........................................................................................6

*In re Barclays Bank PLC Sec. Litig.*,
　No. 09 Civ. 1989 (PAC), 2016 WL 3235290 (S.D.N.Y. June 9, 2016) ...................................5

*In re Constar Int'l Inc. Sec. Litig.*,
　585 F.3d 774 (3d Cir. 2009).....................................................................................................12

*In re Dynegy, Inc. Sec. Litig.*,
　226 F.R.D. 263 (S.D. Tex. 2005)..............................................................................................11

- ii -

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    411 F. Supp. 2d 377 (S.D.N.Y. 2006)........................................................................11

*In re Fortune Sys. Sec. Litig.*,
    680 F. Supp. 1360 (N.D. Cal. 1987) .........................................................................12

*In re Groupon, Inc. Sec. Litig.*,
    No. 12 CV 2450, 2014 WL 5245387 (N.D. Ill. Sept. 23, 2014)..................................6

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    286 F.R.D. 226 (S.D.N.Y. 2012) ...............................................................................5

*In re Kosmos Energy Ltd. Sec. Litig.*,
    299 F.R.D. 133 (N.D. Tex. 2014) ...............................................................................9

*In re Lyft Inc. Sec. Litig.*,
    No. 19-cv-02690-HSG, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021)................................4, 9

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
    MDL No. 1703, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ......................................6

*In re Shoretel Inc., Sec. Litig.*,
    No. C 08-00271 CRB, 2009 WL 248326 (N.D. Cal. Feb. 2, 2009) .........................12

*In re Smart Techs., Inc. S'holder Litig.*,
    295 F.R.D. 50 (S.D.N.Y. 2013) ..........................................................................5, 10

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ...........................................................................5, 6

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................................3, 4

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 Civ. 5653(PAC), 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011)....................7

*N.J. Carpenters Health Fund v. Res. Cap., LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 477 F. App'x 809 (2d Cir. 2012) ..............9

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)........................................................................................8

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) .....................................................................................2

4884-9951-0096.v1

**Page**

*Sudunagunta v. NantKwest, Inc.*,
   No. CV-16-1947-MWF, 2018 WL 3917865 (C.D. Cal. Aug. 13, 2018)................................10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ........................................................................................7

*Vignola v. Fat Brands, Inc.*,
   No. CV 18-7469 PSG, 2020 WL 1934976 (C.D. Cal. Mar. 13, 2020)......................................9

*Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018) ............................................................................5, 6

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
   §77k(a) ...................................................................................................................1, 7
   §77k(e) ........................................................................................................................6

Federal Rules of Civil Procedure
   Rule 23 .....................................................................................................................1, 3
   Rule 23(a)....................................................................................................................1
   Rule 23(a)(4)...............................................................................................................1
   Rule 23(g) ...................................................................................................................1

4884-9951-0096.v1

Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeffrey S. Turnipseed (collectively, "Plaintiffs") respectfully submit this reply memorandum of law in support of their Motion for Class Certification [ECFs 164-166] ("Motion" or "Mot.") and in response to the GoHealth, Centerbridge and Underwriter Defendants' Opposition to Plaintiffs' Motion for Class Certification [ECF 170] ("Opposition" or "Opp.").[1]

Plaintiffs readily meet all the prerequisites for class certification under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Defendants concede numerosity and commonality under Rule 23(a), and hardly address typicality. They also do not contest the adequacy of Plaintiffs under Rule 23(a)(4) or their counsel, Robbins Geller Rudman & Dowd LLP, under Rule 23(g). In fact, Defendants do not seriously contest class certification at all. Instead, they raise only three arguments, two of which are based on affirmative defenses that are inappropriate at class certification, and all of which fall far short of challenging Plaintiffs' strong showing.

**First**, Defendants argue the Class is not ascertainable. *See* Opp. at 6-11. This is an obvious red herring and readily swept aside. Consistent with Seventh Circuit law, the Class is defined by objective criteria: it is limited to those who purchased shares in or traceable to GoHealth's IPO and were damaged thereby. That is all that is required.

**Second**, Defendants contend individualized inquiries are required into the actual knowledge of each Class member, which they argue defeats predominance. *See* Opp. at 11-13. But Defendants ignore that actual knowledge is a **defense** to – and not an element of – Section 11 liability. 15 U.S.C. §77k(a). And, as set forth below, predominance concerns in connection with affirmative defenses may be considered at class certification for affirmative defenses the defendant

---

[1] Unless otherwise stated, all capitalized terms refer to the defined terms in the Motion. Citations, internal quotations, and footnotes omitted and emphasis added unless stated otherwise.

- 1 -

has actually advanced and for which it has presented evidence. But beyond speculation, the Opposition provided the Court with no evidence to back Defendants' arguments. Within their predominance argument, Defendants also claim traceability will doom certification. *See* Opp. at 13-15. But, as detailed below, courts nationwide have rejected the argument that tracing issues in Section 11 cases preclude class certification, and, as Defendants admit, at least two of the Plaintiffs purchased *all* of their GoHealth shares on July 15, 2020, the day the IPO commenced. Tracing is no impediment to class certification in this case.

*Third*, and again with no evidence, Defendants speculatively claim that intra-class conflicts preclude certification because Defendants "expect," at some point, to raise a negative causation affirmative defense. For the same reason, Defendants half-heartedly argue Plaintiffs' claims are atypical. *See* Opp. at 15-18. Not only is Defendants' unsupported, "expect[ed]" affirmative defense insufficient on its face to defeat certification, but it is further undermined because any affirmative defense on this ground would present a common issue, not an individual one, that would impact the entire Class uniformly.

Plaintiffs' Motion should be granted in its entirety.

## I. ARGUMENT

### A. The Class Is Readily Ascertainable

Defendants argue the Class fails to meet the implied "ascertainability" requirement because it is "open-ended" and does not propose a specific class period. *See* Opp. at 6-7. Defendants' "open-ended" ascertainability argument is a red herring for two reasons. First, Defendants ignore the Seventh Circuit's recognition that "securities[] litigation regularly proceeds as a class action" and "class certification is routine." *Schleicher v. Wendt*, 618 F.3d 679, 681-82 (7th Cir. 2010).

Second, the Class here easily meets the implied ascertainability requirement because it is a closed universe, defined by clearly objective criteria. The Seventh Circuit – in a case cited by

4884-9951-0096.v1

Defendants – has explicitly rejected attempts to impose a heightened ascertainability requirement and, instead, has followed the "long recognized" approach which recognizes "an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657-58 (7th Cir. 2015) (affirming district court's certification of a class in consumer fraud case and rejecting defendants' attempt to impose a heightened ascertainability requirement). The Class in this case meets the Seventh Circuit's requirements because it is defined, clearly and objectively, as:

> All persons and entities that purchased or otherwise acquired GoHealth, Inc. ("GoHealth" or "Company") Class A common stock pursuant and/or traceable to the Offering Documents filed with the Securities and Exchange Commission for GoHealth's July 14, 2020 Initial Public Offering, and who were damaged thereby ("Class").[2]

As other courts recognize, a Section 11 class is objective and ascertainable when it is limited, as it is here, to persons who purchased or acquired stock pursuant or traceable to the offering and were damaged thereby. *See, e.g.*, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298, at *1, *13 (S.D.N.Y. Aug. 22, 2017) (certifying class and finding ascertainability based on "objective criteria establishing membership within definite boundaries" with a class defined as "all those who acquired shares of MetLife common stock traceable to the Company's false and misleading August 3, 2010 Registration Statement and March 4, 2011 Registration Statement for its IPO . . ., and who were damaged

---

[2] Excluded from the Class are Defendants GoHealth, Clinton P. Jones ("Jones"), Brandon M. Cruz, Travis J. Matthiesen ("Matthiesen"), NVX Holdings, Inc., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Goldman Sachs & Co. LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC (collectively, "Defendants"); the officers, directors, and affiliates of Defendants; members of their immediate families; their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

- 3 -

thereby"); *In re Lyft Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2021 WL 3711470, at *8 (N.D. Cal. Aug. 20, 2021) (certifying a class of "[a]ll persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement").

In their ascertainability attack, Defendants also propose various dates on which they think the class period should end. For example, Defendants argue the class period should end on July 23, 2020, when one of GoHealth's competitors announced its problems with customer churn, which was an industry-wide concern. *See* Opp. at 9-10. Defendants support their argument by incorrectly claiming that "[i]ncreased churn is ***the central allegation*** of the Complaint[.]" *Id.* at 9. But this case is about far more than churn, or a churn-related announcement by a competitor, and "[Defendants'] objection [to certification] fails because it has mischaracterized [Plaintiffs'] theory of liability." *Mullins*, 795 F.3d at 673. The Complaint clearly alleges it was not until December 2, 2020 that GoHealth's CEO Jones admitted, "So we anticipated 2020 to be an investment year with new carriers." ¶¶22, 124[3] ("And typically, you'll see LTV compression there because you don't have the top commission rates, which we anticipated, we've modeled out, and we thought that would happen."); *see also* ¶¶23, 125 (CFO Matthiesen admitted plan to add new carriers would create a "short-term drag on LTV" and GoHealth would not get "top-level contracts" until 2021). Thus, Defendants' version of the events (that churn is the "central allegation") is plainly contradicted by the Complaint's "investment year" allegations – the same allegations the Court credited in denying the motions to dismiss. *See* ECF 100 at 3 ("Therefore, before completion of the IPO, GoHealth decided to treat 2020 as an investment year."); *id.* at 11 ("Further, Jones' alleged statements indicate that GoHealth intended to implement an investment year, which it knew would negatively affect LTV."). "[T]he time when the alleged misrepresentations were sufficiently

---

[3]    All paragraph references ("¶__") are to the Complaint.

4884-9951-0096.v1

revealed is a question of fact that is not appropriate for resolution on a motion for class certification." *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) (certifying class in Section 11 case); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 242 (S.D.N.Y. 2012) ("[W]hat [investors] would have known, and when, can be proven on a class-wide basis.").[4]

For this reason, Defendants' attempt to end the class period on August 19, 2020 also fails. *See* Opp. at 10-11. The parties' dispute in this case over when "corrective" information reached the market distinguishes *In re Smart Techs., Inc. S'holder Litig.*, relied on by Defendants, where the court created a class period end date based on a specific disclosure because the parties "agree[d] that the class [did] not include post-November 9, 2010, purchasers of SMART stock[.]" 295 F.R.D. 50, 58-59 (S.D.N.Y. 2013). Similarly, Defendants' reliance on *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124 (S.D.N.Y. 2019), and *Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510 (S.D.N.Y. 2018), does Defendants no favors. *See* Opp. at 8-9. In *SunEdison*, the court certified a Securities Act of 1933 ("Securities Act") class but imposed a class period cutoff because "[c]ritically, the Complaint itself allege[d] that the 10-Q 'disclosed' and 'revealed' the putatively omitted and misstated information about SunEdison's loans [at issue]." 329 F.R.D. at 134. The court in *SunEdison* shortened the class period only because it found there was "no substantial doubt as to the curative effect of the announcement[.]" *Id.* Similarly, in *Xiang*, the court addressed the defendants' argument that the class period should end on May 8, 2015, the date the company disclosed that unfavorable state legislative changes increased its effective tax rate, hurting its

---

[4] *APA Excelsior III L.P. v. Premiere Techs., Inc.*, cited by Defendants (Opp. at 8), is readily distinguishable because it addressed – at summary judgment – the knowledge of unique Section 11 plaintiffs who "were sophisticated investors with due diligence rights" and that had "access to inside information." 476 F.3d 1261, 1264, 1277 (11th Cir. 2007). Defendants make no non-speculative arguments regarding Plaintiffs' knowledge in this case.

4884-9951-0096.v1

financial performance. *See* 327 F.R.D. at 521. But, the court rejected the defendants' argument, and instead found that the complaint alleged a later date – August 5, 2015, when the company disclosed the "full extent of the negative impact" of the tax issue. *Id.* For that reason, the court ended the class period on the later date, August 5, 2015. *See id.*

Here, by contrast, there is substantial doubt between Defendants' version of events (*i.e.*, this case is only about churn) and Plaintiffs' (*i.e.*, Defendants planned 2020 as an investment year), which undermines Defendants' attempt to curtail the class period. Applying the reasoning of *SunEdison* and *Xiang* here, the class definition is more than sufficient and does not need to be modified.[5]

## B. Plaintiffs Established that Common Issues Predominate and Defendants' Predominance Challenges Fall Short

Plaintiffs' Motion set out some of the many common questions in this case: whether the Offering Documents contained false statements and omissions; whether they were material; and whether certain Defendants were control persons. *See* Mot. at 12-13. In fact, Defendants do not, and cannot, credibly dispute that nearly every element of every claim alleged in the Complaint is subject to Class-wide proof and will be established with evidence common to the Class. *See In re*

---

[5] Defendants' attempts to liken this case to non-securities cases involving "open-ended" class periods also fail. *See* Opp. at 6-7. For example, in *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 949 (S.D.N.Y. 2013), a Fair Labor Standards Act and New York Labor Law case, the first judge assigned to the case certified a class running "to the entry of judgment in this case." At the summary judgment stage, defendants moved to modify the class period end date. *See id.* The then-presiding judge denied defendants' motion, but set the class period end-date as "when fact discovery ended in this case." *Id.* at 949-50. Here, by contrast, the Class is objectively defined and limited to those who purchased in or traceable to the GoHealth IPO and were damaged thereby. In *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, a state law deceptive advertising case regarding "Made in USA" claims, the court found the proposed class definition could include "a new set of plaintiffs [that] would be added to the class each day[.]" MDL No. 1703, 2007 WL 4287511, at *4 (N.D. Ill. Dec. 4, 2007) (faulting plaintiffs for failing to suggest an appropriate end date and "offer[ing the court] no assistance whatsoever in deciding upon one"). That is not the case here, because there cannot be new IPO purchasers being added to the class every day, and damages are limited by the statutory framework of Section 11. *See* 15 U.S.C. §77k(e).

4884-9951-0096.v1

*Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2014 WL 5245387, at *1-2 (N.D. Ill. Sept. 23, 2014) (holding common question of whether defendants issued misstatements in registration statement satisfied commonality for Securities Act claims); *see also N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653(PAC), 2011 WL 3874821, at *5, *7 (S.D.N.Y. Aug. 16, 2011) (noting predominance "is a test readily met" in securities cases and finding actual knowledge defense did not defeat predominance) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Defendants challenge predominance by claiming individualized questions with respect to putative Class members' knowledge at the time they purchased GoHealth shares will predominate over common questions. Within this argument, Defendants also argue individualized questions regarding traceability will be required. Neither attack has merit.

### 1. Defendants' Unproven Actual Knowledge Defense Is Improper at Class Certification and Fails to Undermine Predominance

Actual knowledge is a defense to Section 11 liability where a defendant "prove[s] . . . at the time of such acquisition[,]" the plaintiff "knew of such untruth or omission[.]" 15 U.S.C. §77k(a)). It is Defendants, therefore, who bear the burden of "show[ing] the purchaser's actual knowledge of the specific untruth or omission." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 138 (S.D.N.Y. 2014). Defendants acknowledged as much when they raised actual knowledge as a defense in their answers. *See* ECF 141 at Fifth & Seventh Affirmative Defenses; ECF 142 at Eighth Affirmative Defense; ECF 143 at Fourth Affirmative Defense. Only when the defendant "has actually advanced" and "presented evidence" may the affirmative defense be considered at class certification. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018); *see also Boston Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2022 WL 2954937, at *3 (N.D. Cal. July 26, 2022) ("Predominance

concerns in connection with affirmative defenses may be considered at class certification for affirmative defenses the defendant has actually advanced and for which it has presented evidence."). Defendants have not met their significant burden.

Without providing evidence of what Plaintiffs knew, Defendants posit that based on the various dates Plaintiffs purchased their respective GoHealth shares, "the Court will be tasked with determining whether each may have had different knowledge when he purchased GoHealth shares[.]" Opp. at 13. But even if Defendants' actual knowledge defense was relevant to the predominance inquiry, their failure to support it with evidence demonstrates there are no individualized issues, much less individualized issues that would "become the focus of the litigation." *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). Despite attaching hundreds of pages of exhibits, nothing indicates Plaintiffs **knew** of the alleged misstatements and omissions in the Offering Materials regarding, for example, GoHealth's maximization of its growth with Humana and Anthem or its plan to use 2020 as an "investment year." Indeed, Defendants did not depose any of the Plaintiffs and did not support their Opposition with an expert report, and it is telling that Defendants failed to provide the proof necessary to back the veracity of their defense. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 n.12 (2d Cir. 2013) (holding actual knowledge defense requires more than a "presum[ption] that the plaintiff **should** have known the relevant information") (emphasis in original); *Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, No. 11 Civ. 5201(DLC), 2013 WL 3284118, at *15 (S.D.N.Y. June 28, 2013) ("[T]he purchaser must have actual knowledge of the misstatements at issue . . . meaning that the [a]vailability elsewhere of truthful information cannot excuse untruths or misleading omissions[.]"). Thus, even if Defendants' actual knowledge defense was relevant at class certification, their failure to support it with any evidence completely

4884-9951-0096.v1

undercuts it. As Plaintiffs' Motion demonstrates, and Defendants fail to counter, there are no individualized issues actually standing in the way of certification.

The cases Defendants rely on do not advance their position. For example, Defendants cite *Vignola v. Fat Brands, Inc.*, No. CV 18-7469 PSG (PLAx), 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020), to argue predominance is lacking here because, in that case, some investors knew about the allegedly omitted information. *See* Opp. at 12. But the defendants in *Vignola*, unlike Defendants in this case, supported their argument with an expert declaration analyzing a host of publicly available information **preceding** the IPO at issue. *See* 2020 WL 1934976, at *4. Even the court in *Vignola* recognized that "[i]n many cases, the knowledge of individual class members is not a major hurdle to certification[.]" *Id.* at *5. Unlike in *Vignola*, Defendants here cannot point to a single document establishing that prior to the IPO it was publicly known that 2020 would be a financially disrupted "investment year" for GoHealth.[6] "At bottom, none of the evidence shows that any putative class member knew of the purported omissions." *Lyft*, 2021 WL 3711470, at *7 & n.6 (distinguishing *Vignola* and rejecting defendants' actual knowledge challenge to predominance).

In other words, none of Defendants' cases should impact the Court's analysis. Defendants have not provided any evidence of public information that was or could have been known to

---

[6]     Defendants' other cited authority is distinguishable for similar reasons. *See* Opp. at 12. The defendants in *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152-53 (N.D. Tex. 2014), submitted an expert report providing evidence of individualized questions and in *N.J. Carpenters Health Fund v. Res. Cap., LLC*, 272 F.R.D. 160, 168-70 (S.D.N.Y. 2011), *aff'd*, 477 F. App'x 809 (2d Cir. 2012), the court found defendants "mustered a good deal of documentary evidence imputing knowledge" to plaintiffs' investment advisor, and the class in that case was comprised of a very narrow set of purchasers whose "background[s] . . . make[] clear that relevant individual issues exist concerning the level of knowledge possessed by different putative class members."

- 9 -

4884-9951-0096.v1

investors prior to Defendants' statements in the IPO. Without that, Defendants' argument is wholly unsustainable and fails.

### C. No Individualized Questions as to Traceability Exist

Pointing to the expiration of a lockup period that occurred on January 11, 2021, well after this case was filed and well after Defendants' December 2, 2020 admission that 2020 was an "investment year," Defendants argue traceability issues defeat predominance. *See* Opp. at 13-14. Defendants are plainly wrong for three reasons. First, Defendants recognize that "[t]hree lead Plaintiffs purchased some GoHealth stock on the day of the IPO" and at least two of the Plaintiffs purchased **all** of their GoHealth shares on July 15, 2020, the day the IPO commenced. Opp. at 13, 17. And the remaining Plaintiff, Turnipseed, made nearly all of his purchases on July 24, 2020, shortly after the IPO (and well before any additional shares entered the market). Second, Defendants concede that "[t]he Court may be able to assume that class members who purchased shares in the secondary market before January 11, 2021 can trace their purchases to the IPO and Registration Statement." Opp. at 14.

Third, courts nationwide have rejected the argument that tracing issues in Section 11 cases preclude class certification. *See, e.g.*, *Sudunagunta v. NantKwest, Inc.*, No. CV-16-1947-MWF (JEMx), 2018 WL 3917865, at *9 (C.D. Cal. Aug. 13, 2018) (declining to impose a limited class period because "[t]he definition of the proposed class already addresses traceability" and "[t]o the extent traceability poses a problem . . . courts should engage that question as a matter of summary judgment, not class certification"); *Smart Techs.*, 295 F.R.D. at 61 ("Although determining traceability may require individualized inquiries, the potential for such inquiries alone does not defeat predominance."); *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114, at *11 (E.D. Tenn. May 7, 2021) ("Defendant's argument that traceability must be considered at [the class certification stage] is unsupported and treads too far into the merits of the claim.").

- 10 -

Nevertheless, Defendants argue that individualized questions with respect to traceability may exist for putative Class members who purchased their shares in the secondary market "on or after January 11, 2021" – the first day after the 180-day lockup period when new additional shares could be sold in the secondary market. Opp. at 15. Although a tracing analysis is not necessary under the facts of this case and is not an impediment to certification, Plaintiffs concede, for the avoidance of any doubt, that purchasers of GoHealth Class A common stock after expiration of the lock-up period do not fall within the Class definition in this case.

### D.     No Intra-Class Conflicts Exist and Plaintiffs Are Typical

Tapping into a negative causation affirmative defense that they "expect" to raise, and using Plaintiff Sandmann's transactions and those of a hypothetical putative Class member, Defendants claim they "may argue" that a specific disclosure date was not statistically significant, that a stock price decline may have been caused by factors unrelated to the misstatements, or that certain Class members may not rebut the negative causation defense. Opp. at 16-17. Defendants' arguments about theoretical, future, potential conflicts fail to raise a barrier to certification in this case.

As an initial matter, and as Defendants acknowledge, negative causation is an affirmative defense (Opp. at 15), and, as such, not properly raised at this stage of the litigation. *See In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005) (declining to rely on the negative causation defense "to limit a putative class at the class certification stage of litigation"). Negative causation "occurs where a defendant ***proves*** that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement [and that the] plaintiff is not entitled to recover any damages." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 383 (S.D.N.Y. 2006). "[T]he defendant has a heavy burden of proving that the decline in stock price was caused by factors other than the misstatement(s) in the registration statement." *Id.*

- 11 -

Negative causation cannot be properly used to defeat certification in a Section 11 case because "[a]ny affirmative defense on this ground would present a common issue – not an individual one" and "[i]f something other than the alleged misrepresentations produced a drop in stock price, be it the weather, market conditions, or any other factor, class members would be affected uniformly." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009) (noting negative causation would not defeat predominance in Section 11 case). Put simply, "where reliance and loss causation are not part of the equation, an individualized inquiry is not required[,]" and, as a result, "[t]he formulaic nature of §11 leaves defendants with little room to maneuver." *Id.*; *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-786 ADM/TNL, 2016 WL 4098741, at *14 (D. Minn. July 28, 2016) (concluding the negative causation defense "cannot limit a putative class at the class certification stage because it would require a merits determination that is improper at this stage in the litigation").

The cases upon which Defendants rely, while helpful to describe the negative causation defense generally, do nothing to support its application at the class certification stage, let alone its application without sufficient evidentiary support. *See* Opp. at 15-18. *Gosselin v. First Tr. Advisors L.P.*, No. 08 C 5213, 2009 WL 5064295, at *7 (N.D. Ill. Dec. 17, 2009), for example, simply stands for the proposition that negative causation is a defense in a Section 11 case and must be raised and proven by defendants, if appropriate, at a later stage in the litigation. *In re Shoretel Inc., Sec. Litig.*, No. C 08-00271 CRB, 2009 WL 248326, at *4-5 (N.D. Cal. Feb. 2, 2009), does not change the analysis. There, the court considered the negative causation defense at the motion to dismiss stage because it was established by the face of the complaint, which is not the case here. *See id.* And the court in *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987),

- 12 -

considered evidence in support of the negative causation defense provided at summary judgment, not class certification.

Defendants claim that they "may" raise the negative causation defense in the future (*see* Opp. at 16-17) as justification for their "Hail Mary" arguments against superiority and their half-hearted challenge to Plaintiffs' typicality. But, the possibility that Defendants may, at some point, raise an argument and present evidence that could (in an unlikely event) amount to a successful negative causation defense is not enough to defeat Plaintiffs' strong showing of superiority or typicality at class certification. Put simply, no intra-class conflicts exist, and the Class should be certified.

## II. CONCLUSION

For these reasons and as set forth in the Motion, Plaintiffs respectfully request that the Court grant the Motion in its entirety.

DATED: February 13, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
ROBERT J. ROBBINS (IL Bar # 572233)


*s/ Robert J. Robbins*
ROBERT J. ROBBINS

SABRINA E. TIRABASSI (IL Bar #25521)
MATTHEW A. RICHARD (IL Bar #1031327)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com
mrichard@rgrdlaw.com

- 13 -

4884-9951-0096.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar #6255605)
BRIAN E. COCHRAN (IL Bar # 6329016)
FRANK A. RICHTER (IL Bar #6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

Additional Counsel for Lead Plaintiff

- 14 -