UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) | Case No. 1:20-cv-05593 |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) ) | Judge Jeremy C. Daniel |
| ALL ACTIONS. | ) ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF THE LITIGATION .................................................................2

    A.    Procedural History .................................................................................2

    B.    The Parties' Arm's-Length and Informed Negotiations .........................4

III.  LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH
      RULE 23 AND DUE PROCESS ..........................................................................5

IV.   ARGUMENT .........................................................................................................6

    A.    The Proposed Settlement Warrants Final Approval ................................6

        1.    Lead Plaintiffs and Lead Counsel Adequately Represented the
            Class .............................................................................................6

        2.    The Settlement Resulted from Arm's-Length Negotiations ........7

        3.    The Settlement Provides a Favorable Benefit to the Class
            Considering the Costs, Risks, and Delay of Trial and Appeal ....8

            a.    Risks to Establishing Liability ........................................9

            b.    Risks Related to Proving Damages ..................................9

            c.    The Expected Delays and Costs of Trial and Appeal ....10

        4.    The Settlement Is Fair and Adequate Under the Remaining
            Rule 23(e)(2) Factors ................................................................12

            a.    The Method for Distributing Relief Is Effective ...........12

            b.    Counsel's Fees Are Reasonable ....................................12

            c.    Settlement-Related Agreements .....................................12

            d.    The Settlement Treats Class Members Equitably ...........13

         5.    The Endorsement of Lead Counsel and the Reaction of the Class
            Favor Approval ..........................................................................13

    B.    The Plan of Allocation Warrants Final Approval .................................14

    C.    Class Certification Remains Warranted .................................................15

4870-1096-3123.v3

**Page**

V.    CONCLUSION ................................................................................................................15

4870-1096-3123.v3

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abrams v. Van Kampen Funds, Inc.,*
2006 WL 163023 (N.D. Ill. Jan. 18, 2006)..................................................................................14

*Flynn v. Exelon Corp.,*
No. 1:19-CV-08209, ECF 216 (N.D. Ill. Sept. 7, 2023)...............................................................8

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) ......................................................................................................11

*Hubbard v. BankAtlantic Bancorp, Inc.,*
688 F.3d 713 (11th Cir. 2012) .....................................................................................................11

*In re Career Educ. Corp. Sec. Litig.,*
2008 WL 8666579 (N.D. Ill. June 26, 2008).................................................................................8

*In re Goldman Sachs Grp., Inc. Sec. Litig.,*
579 F. Supp. 3d 520 (S.D.N.Y. 2021),
*rev'd & remanded Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,*
77 F.4th 74 (2d Cir. 2023) ...........................................................................................................10

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) .........................................................................................................6

*Macovski v. Groupon, Inc.,*
2022 WL 17256387 (N.D. Ill. Oct. 28, 2022)..............................................................................14

*Macovski v. Groupon, Inc.,*
No. 1:20-cv-02581, ECF 110-1 (N.D. Ill. June 27, 2022) ...........................................................14

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP,*
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)..........................................................................10, 14

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277 (7th Cir. 2002) .......................................................................................................11

*Rubinstein v. Gonzalez,*
No. 1:14-cv-09465, ECF 274-1 (N.D. Ill. June 19, 2019) ......................................................13, 14

*Schulte v. Fifth Third Bank,*
805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................................10, 13, 14

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.,*
No. 1:15-cv-03187, ECF 527 (N.D. Ill. Oct. 13, 2022).................................................................11

4870-1096-3123.v3

**Page**

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ...................................................................................... *passim*

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §77k ............................................................................................................................3
    §77o ............................................................................................................................3
    §77z-1(a)(4) ............................................................................................................2, 7

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................5, 6, 14
    Rule 23(a) ..................................................................................................................15
    Rule 23(b)(3) ..............................................................................................................15
    Rule 23(c)(2)(B) ...........................................................................................................5
    Rule 23(e)(2) ........................................................................................................ *passim*
    Rule 23(e)(2)(A) .......................................................................................................6, 7
    Rule 23(e)(2)(A)-(D) ....................................................................................................6
    Rule 23(e)(2)(B) ...........................................................................................................7
    Rule 23(e)(2)(C) ...........................................................................................................8
    Rule 23(e)(2)(C)(ii)-(iv) .............................................................................................12
    Rule 23(e)(2)(D) .........................................................................................................12
    Rule 23(e)(3) ..............................................................................................................12

4870-1096-3123.v3

## I.    INTRODUCTION

Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed ("Lead Plaintiffs") respectfully submit this memorandum in support of their motion for final approval of the Settlement of the claims in this Litigation against Defendants.[1]  The $29,250,000 all-cash Settlement is the result of Lead Plaintiffs' and Lead Counsel's diligent efforts in litigating this matter and the parties' arm's-length settlement negotiations with the assistance of an experienced and well-respected mediator, David M. Murphy of Phillips ADR Enterprises, LLC. The Settlement is an exceptional result for the Class and, as set forth below, merits approval.

This case has been vigorously litigated from its commencement, as Defendants contested the claims throughout.  The Settlement is the product of Lead Counsel's substantial efforts, including: conducting a thorough investigation that included analysis of SEC filings, media, analyst reports, press releases, shareholder communications, relevant case law and authorities, and publicly-available information; preparing the detailed, 147-paragraph Consolidated Complaint for Violations of the Securities Act of 1933 ("Complaint") filed on February 25, 2021 (ECF 66) ("Complaint"); preparing extensive briefs in opposition to Defendants' motions to dismiss (which were substantially denied); conducting written and document discovery with Defendants and more than 20 non-parties, which included numerous meet and confers with counsel and resulted in the production, review, and analysis of over 60,000 pages of documents; and extensive preparations for and engaging in two in-person mediation sessions and arm's-length negotiations between

---

[1]    The Defendants are GoHealth, Inc., Clinton P. Jones, Brandon M. Cruz, Travis J. Matthiesen, NVX Holdings, Inc., Centerbridge Partners, L.P., CCP III AIV VII Holdings, L.P., CB Blizzard Co-Invest Holdings, L.P., Blizzard Aggregator, LLC, Centerbridge Associates III, L.P., CCP III Cayman GP Ltd., Goldman Sachs & Co. LLC, BofA Securities, Inc., and Morgan Stanley & Co. LLC.  Capitalized terms used herein have the meanings provided in the Stipulation of Settlement dated February 7, 2024 (ECF 203) (the "Stipulation").  Citations are omitted and emphasis is added throughout unless otherwise noted.

4870-1096-3123.v3

highly-experienced counsel.[2]  The $29.25 million Settlement provides the Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation.  Lead Counsel has concluded that the Settlement is a very good result for the Class based on its diligent prosecution of the Litigation, as well as the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against Defendants after trial, and past experience in litigating similar actions.  Even if Lead Plaintiffs were successful at trial, any recovery remained uncertain and would have been years down the road.  Lead Plaintiffs, who were court-appointed, also believe that the Settlement is in the best interest of the Class.  *See* accompanying Declarations of Lead Plaintiffs Sudhakara R. Murikinati, Benjamin Sandmann, Jerry Nixon, and Jeff S. Turnipseed in Support of Lead Plaintiffs' Motion for Final Approval of Settlement ("Lead Plaintiff Declarations").

Lead Plaintiffs respectfully submit that the Settlement is an exceptional recovery and the Plan of Allocation, which was developed by Lead Counsel and its damages expert based on an assessment of the damages theories asserted in the Litigation, is fair, reasonable, and adequate, so both should be approved.

## II.      SUMMARY OF THE LITIGATION

### A.      Procedural History

On September 21, 2020, the initial complaint was filed in the United States District Court for the Northern District of Illinois.  ECF 1.  On December 10, 2020, Judge Coleman appointed

---

[2]      *See* accompanying Declaration of Robert J. Robbins in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Robbins Decl."), ¶5(a)-(h).

4870-1096-3123.v3

the Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B), and approved Lead Plaintiffs' selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel. ECF 61.

Lead Plaintiffs filed the operative Complaint on February 25, 2021. ECF 66. The Complaint alleges violations of §§11 and 15 of the Securities Act of 1933 ("Securities Act") on behalf of a class of all purchasers of GoHealth, Inc. ("GoHealth" or "Company") Class A common stock pursuant or traceable to the Registration Statement and Prospectus ("Registration Statement") issued in connection with the Company's July 14, 2020 initial public offering ("IPO"). The Complaint alleges Securities Act violations premised on Defendants' alleged false and misleading statements that failed to disclose a strategic business shift that GoHealth implemented prior to the IPO that included rapid customer expansion and negative impacts on GoHealth's key financial metrics at the time of and after the IPO. Lead Plaintiffs allege that by failing to disclose this shift and its financial impacts, the statements in the Registration Statement, that GoHealth would rapidly expand and scale its business while improving its financial metrics, were false and misleading. Lead Plaintiffs allege that as a result of the false and misleading statements and omissions in the Registration Statement, Lead Plaintiffs and Class Members are entitled to damages under the Securities Act for their purchases of GoHealth Class A common stock pursuant or traceable to the Registration Statement.

On April 26, 2021, Defendants filed motions to dismiss the Complaint. ECF 73-76. Following briefing (ECF 83-84, 90-91), on April 5, 2022, Judge Coleman denied GoHealth, the Individual Defendants, NVX Holdings, and the Underwriter Defendants' motions to dismiss. ECF 100. On April 18, 2022, Judge Coleman denied Centerbridge's motion to dismiss in part and granted it in part, dismissing certain Centerbridge entities. ECF 104. Defendants then filed answers and affirmative defenses (ECF 124-126), which were later amended (ECF 141-143), and discovery commenced.

- 3 -

4870-1096-3123.v3

On June 28, 2022, the parties exchanged detailed initial disclosures. Lead Plaintiffs conducted extensive written and document discovery, propounding multiple sets of requests for production on Defendants, while serving subpoenas on over 20 third-parties. Lead Plaintiffs engaged in numerous conferral sessions with both Defendants and third-parties throughout discovery, leading to the production and careful review of over 60,000 pages of documents. Lead Plaintiffs' many meet and confers with Defendants concerned, among other things, the scope of document discovery and electronically stored information, categories of documents to be produced, document custodians, and the application of highly-detailed and specific search terms to be applied to specific document custodians who Lead Plaintiffs identified as individuals likely to have relevant information. Defendants, likewise, served document requests and interrogatories on Lead Plaintiffs, which were timely responded to in concert with Lead Plaintiffs' production of documents.

Lead Plaintiffs moved for class certification on September 23, 2022, which Defendants opposed. ECF 164-166, 170. Lead Plaintiffs timely filed their reply on February 13, 2023. ECF 179. The fully briefed motion for class certification was pending before the Court at the time the parties agreed to the Settlement.

### B. The Parties' Arm's-Length and Informed Negotiations

In December 2022, the parties commenced mediation efforts presided over by David M. Murphy ("Mr. Murphy") of Phillips ADR Enterprises, LLC, a well-respected mediator. In addition, counsel on both sides are highly experienced in securities class action litigation. *See, e.g.*, Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. E (Robbins Geller firm resume). After exchanging detailed mediation submissions, the parties participated in two all-day, in-person mediation sessions with Mr. Murphy on February 16, 2023 and July 25, 2023, but did

- 4 -

not reach an agreement. On November 8, 2023, following continued discussions, Mr. Murphy issued a "mediator's proposal" to settle the Litigation for $29.25 million, which the parties accepted on November 10, 2023.

## III. LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved the form and content of the Notice, Proof of Claim, and Summary Notice, as well as Lead Plaintiffs' proposed plan for the distribution and mailing of the Notice, which included all the information required by Rule 23 and the PSLRA. *See* ECF 206, ¶6. As detailed in the accompanying declaration of the Claims Administrator, A.B. Data, as of April 16, 2024, more than 19,500 copies of the Notice have been mailed to potential Class Members, brokers, and nominees.[3] In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on March 18, 2024. *Id.*, ¶9. The Claims Administrator has also established a dedicated Settlement website, www.GoHealthSecuritiesLitigation.com, to provide potential Class Members with information concerning the Settlement and access to copies of the Notice and other important documents. *Id.*, ¶11. This combination of individual notice by first-class mail to Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

---

[3] *See* Declaration of Rochelle J. Teichmiller Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated April 16, 2024, ¶8 ("A.B. Data Decl."), submitted herewith.

- 5 -

## IV. ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under Rule 23, as amended in 2018, a district court may approve a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[4]

The $29.25 million all-cash recovery satisfies the Rule 23(e)(2) and *Accretive* factors.

#### 1. Lead Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

---

[4] The Advisory Committee Notes to the 2018 amendments indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments.

4870-1096-3123.v3

As detailed herein, in the Robbins and Lead Plaintiff Declarations, and in the Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), both Lead Plaintiffs and Lead Counsel have adequately represented the Class by diligently prosecuting this Litigation and securing the favorable Settlement, through the extensive litigation efforts detailed herein. *See supra*, §§I and II.

Further, in actively overseeing and participating in this Litigation, Lead Plaintiffs communicated with Lead Counsel about case developments and litigation strategy, reviewed pleadings and briefs, and gathered and reviewed documents and information in response to Defendants' discovery requests. *See* Lead Plaintiff Declarations at ¶3. This diligent and adequate representation of the Class resulted in an exceptional result and strongly supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Resulted from Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settling Parties reached the Settlement only after protracted, arm's-length negotiations, which began in December 2022 and did not conclude until November 2023, at which time the Settling Parties engaged in significant and contested negotiations regarding the Stipulation. The negotiations between experienced counsel included detailed mediation submissions and two, in-person mediation sessions with Mr. Murphy, a well-respected and experienced mediator. *See* Robbins Decl., ¶5(f)-(h). At the time of the mediations, Lead Plaintiffs and Lead Counsel had achieved substantial litigation victories, were well into discovery, and were, therefore, well-informed of the strengths and weaknesses of the claims.

4870-1096-3123.v3

The mediations involved the further exchange of briefs and additional correspondence and discussions regarding the parties' respective views on the strengths and weaknesses of the claims and defenses, class certification, potentially available insurance coverage, and issues related to the length of the Class Period and extensive discussions regarding the amount of damages. The negotiations were hard-fought, as reflected by the contested litigation and inability to settle from the first mediation on February 16, 2023. *Id.* Indeed, the parties were only able to reach an agreement after Mr. Murphy's mediator's proposal to settle for $29.25 million on November 8, 2023. *See id.*, ¶6. This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (Lefkow, J.) (same); *see also* Ex. A (*Flynn v. Exelon Corp.*, No. 1:19-CV-08209, ECF 216, ¶3 (N.D. Ill. Sept. 7, 2023) (Kendall, J.) (same)).

### 3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; and (3) the stage of the proceedings and the amount of discovery completed. *See Accretive*, 773 F.3d at 863-64. Each of these factors supports approval.

### a. Risks to Establishing Liability

While Lead Plaintiffs believe that they had assembled a strong case regarding Defendants' liability, a finding in favor of the Class at trial was never assured. Lead Plaintiffs would need to prove to the satisfaction of the Court and jury that Defendants made material false and misleading statements or omissions to investors. Defendants have adamantly denied liability. *See* ECF 73-76 (Defendants' motions to dismiss).

Defendants argued, among other things, that Lead Plaintiffs did not show the challenged statements were false or misleading when made. For example, Defendants argued that GoHealth's Registration Statement disclosed GoHealth's intention to expand its carrier base and the Company's reliance on Special Needs Plans, that GoHealth had no duty to disclose the anticipated, future impacts of its disclosed carrier expansion, that many of the challenged statements were inactionable, forward-looking statements of opinion or optimism, and that Lead Plaintiffs' claims under Items 303 and 105 of Regulation S-K failed. *See* ECF 74, 91. Likewise, the Centerbridge Defendants asserted the Complaint failed to plead actual and specific control of GoHealth by Centerbridge, and that certain Centerbridge entities had no direct investment in GoHealth. *See, e.g.*, ECF 90.

Although the Court substantially denied Defendants' motions to dismiss, that did not assure that liability would be established at trial. Defendants no doubt would continue to assert that Lead Plaintiffs' claims of false and misleading statements in GoHealth's Registration Statement were insufficient to establish liability under the securities laws at summary judgment and trial against these Defendants.

### b. Risks Related to Proving Damages

Lead Plaintiffs faced further risks and uncertainty with respect to damages. While the burden of proving a negative causation defense in this type of securities class action lies with

- 9 -

4870-1096-3123.v3

Defendants, Defendants likely would have argued, as they did in opposition to class certification (*see* ECF 170), that it was apparent that no causation existed after July 23, 2020 – only eight days after the IPO – because information disclosed to the market would have cured any impact from any alleged false statement.   This argument, along with other, related negative causation arguments, would have resulted in a hotly contested battle of the experts, the outcome of which is difficult to predict and uncertain.   *See Accretive*, 773 F.3d at 863 (approving settlement over objection and noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling").

### c.        The Expected Delays and Costs of Trial and Appeal

The "'complexity, length, and expense of further litigation'" through summary judgment, trial, and appeals on all of these complicated issues would have been substantial, which weighs in favor of settling the claims.   *Id.*  Courts have recognized that "[s]ecurities fraud litigation is long, complex and uncertain" (*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001)* (Darrah, J.)), and this case is no exception.

First, the parties had a substantial amount of documents to analyze and both sides would be engaged in numerous fact and expert depositions. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("'The costs associated with discovery in complex class actions can be significant.'").  Lead Plaintiffs moved for class certification, which can be subject to elongated litigation and appeals. *See, e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520 (S.D.N.Y. 2021) (granting class certification for a second time after original order entered six years earlier was appealed to the Second Circuit and then the Supreme Court, which remanded), *rev'd & remanded Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023).  Even

- 10 -

if Lead Plaintiffs were able to win on every issue, the process could span many years, with costs reducing available insurance to fund a settlement.

Second, any trial would be highly complex, lengthy, and costly. Even a meritorious case can be lost at trial. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor). And even trial victory may not end the litigation. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial 13 years after case was commenced).

In contrast to those delays and risks, the $29.25 million Settlement results in a certain and outstanding recovery. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").[5] This Settlement is well within the range of settlements in securities class actions approved in the Seventh Circuit, and based on damage estimates by Lead Plaintiffs' expert, the Settlement represents approximately 10% of the maximum estimated aggregate damages, and depending on whether Defendants' arguments were successful at class certification, summary judgment, or trial, could also reflect as much as 12% to more than 50% of recoverable damages. *See* Robbins Decl., ¶7. This percentage recovery compares favorably to the median settlement recovery of 1.8% of investor losses in securities cases in 2023 as calculated and reported upon by an economic consulting firm.[6]

---

[5]    *See also Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds").

[6]    Ex. B (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, NERA ECONOMIC CONSULTING (Jan. 23, 2024), at 26, Fig. 22); *see also* Ex. C (*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187, ECF 527 (N.D. Ill. Oct. 13, 2022) (approving $105 million settlement, which briefing (ECF 515-1 at 9) estimated as approximately 9.5% of damages)).

4870-1096-3123.v3

In short, the $29.25 million Settlement is a highly-favorable result, and it avoids the considerable risk, expense, and delay of further litigation.

### 4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors supports approval.

### a. The Method for Distributing Relief Is Effective

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective, and they provide Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* A.B. Data Decl., Ex. A (Notice at 5-6). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or request review by the Court of any denial of their claims. *Id.*; Stipulation, ¶¶6.3-6.10.

### b. Counsel's Fees Are Reasonable

As detailed in the Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Amount plus litigation expenses and charges, are reasonable in light of the result obtained, the efforts of Lead Counsel, the contingent nature of its representation, and the risks in the Litigation.

### c. Settlement-Related Agreements

The Settling Parties entered into a confidential Supplemental Agreement that establishes the conditions under which GoHealth would be able to terminate the Settlement based on whether requests for exclusion from the Class reach a specified threshold. *See* Stipulation, ¶8.4. This type

of agreement is standard in securities class actions. *See, e.g.*, Ex. D (*Rubinstein v. Gonzalez*, No. 1:14-cv-09465, ECF 274-1, ¶8.3 (N.D. Ill. June 19, 2019)) (Dow, J.)). Lead Plaintiffs and Defendants have no other agreements with each other.

#### d. The Settlement Treats Class Members Equitably

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. A.B. Data Decl., Ex. A (Notice at 5-6). Lead Plaintiffs will receive the same type of *pro rata* recovery as all other similarly situated GoHealth share purchasers. Thus, the Settlement treats Class Members equitably.

#### 5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "'opinion of competent counsel,'" the "'amount of opposition to the settlement,'" and "'the reaction of members of the class to the settlement'" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the claims have been litigated and settled by experienced and competent counsel. *See* Robbins Decl., ¶¶10-11, 17-18, 21-24; *see also* www.rgrdlaw.com. Based on its extensive experience in securities class actions, Lead Counsel has determined that the Settlement is in the best interest of the Class after weighing its benefits against the risks of continued litigation. *See* Robbins Decl., ¶¶7-11. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 586-87 (holding opinion of counsel with "extensive experience" supports "approval of the [s]ettlement").

Moreover, as discussed in §III above, the Claims Administrator has sent notice to over 19,500 potential Class Members in accordance with the Preliminary Approval Order. While the

deadline for Class Members to exclude themselves or object is May 1, 2024, to date no objections or requests for exclusion, have been received.[7] A.B. Data Decl., ¶¶12-13. Lead Plaintiffs participated in and oversaw the Litigation, and they endorse the Settlement. *See* Lead Plaintiff Declarations at ¶¶3-4. This favorable reaction by the Class also supports final approval.

### B. The Plan of Allocation Warrants Final Approval

Lead Plaintiffs also seek approval of the Plan of Allocation, which is set forth in full in the Notice. *See* A.B. Data Decl., Ex. A (Notice at 5). Assessment of a plan of allocation under Rule 23 is governed by the same standard of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3. Here, the Plan of Allocation was developed by Lead Counsel in conjunction with its damages expert and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Loss Amount bears to the total Recognized Loss Amount of all Authorized Claimants. *See* A.B. Data Decl., Ex. A (Notice at 5-6). Calculation of an Authorized Claimant's Recognized Loss Amount will depend upon several factors, including when the shares were held, purchased, or sold. *See id.* This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, Ex. F (*Macovski v. Groupon, Inc.*, No. 1:20-cv-02581, ECF 110-1 (N.D. Ill. June 27, 2022) (setting forth similar plan of allocation)); *Macovski v. Groupon, Inc.*, 2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (approving plan of allocation); *Abrams v. Van*

---

[7] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); Ex. E (*Rubinstein v. Gonzalez*, No. 1:14-cv-09465, ECF 297 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (approving settlement with 10 requests for exclusion)). Lead Plaintiffs will file reply papers on May 15, 2024 that will address all requests for exclusion or objections received.

*Kampen Funds, Inc.*, 2006 WL 163023, at *3 (N.D. Ill. Jan. 18, 2006) (Hart, J.) (approving similar plan of allocation as fair and equitable).

### C. Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily approved this Litigation as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF 206, ¶¶4-5. None of the facts regarding certification of the Class have changed since then and there has been no objection to certification. Accordingly, Lead Plaintiffs respectfully request that the Court grant final certification of the Class and appoint Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V. CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiffs respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Class.

DATED: April 17, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS (IL Bar # 572233)
SABRINA E. TIRABASSI (IL Bar # 25521)

*s/ Robert J. Robbins*
ROBERT J. ROBBINS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com

- 15 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
BRIAN E. COCHRAN (IL Bar # 6329016)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

Additional Counsel for Lead Plaintiffs

- 16 -

4870-1096-3123.v3