# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 1:19-cv-08209 |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) | Judge Virginia M. Kendall Magistrate Judge Susan E. Cox |
| EXELON CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

FINAL JUDGMENT APPROVING SETTLEMENT

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order") dated June 9, 2023, on the application of the Settling Parties for approval of the settlement set forth in the Stipulation of Settlement dated May 26, 2023 (the "Stipulation").[1]  Due and adequate notice having been given to the Settlement Class as required in said Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Court has jurisdiction over the subject matter of the Litigation and over all Settling Parties to the Litigation, including all Members of the Settlement Class.

2.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determination in the Notice Order and finally certifies, for settlement purposes only, a Settlement Class defined as: all Persons and entities who purchased or otherwise acquired Exelon common stock between February 8, 2019 and October 31, 2019, inclusive, and were damaged thereby.  Excluded from the Settlement Class are: Defendants, the current and Settlement Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, and any entity in which such excluded persons have or had a controlling interest.  Also excluded from the Settlement Class are those Persons who timely and validly requested exclusion from the Settlement Class pursuant to the Notice.  Pursuant to Rule 23, and for purposes of settlement only, the Court hereby affirms its determination in the Notice Order and finally certifies Lead Plaintiff as Settlement Class Representative, and finally appoints the law firm of Robbins Geller Rudman & Dowd LLP as Settlement Class Counsel.

---

[1]     All defined terms contained herein shall have the same meanings as set forth in the Stipulation, unless otherwise defined herein.

- 1 -

- 2 -

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby approves the Settlement set forth in the Stipulation and finds that in light of the benefits to the Settlement Class, the complexity and expense of further litigation, and the costs of continued litigation, the Settlement is, in all respects fair, reasonable, and adequate, having considered and found that: (i) Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the Settlement Class is adequate, having taken into account (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Members' claims; (c) the terms of any proposed award of attorneys' fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(2); and (iv) the proposed Plan of Allocation treats Settlement Class Members equitably relative to each other.

4.    The Court hereby dismisses the Litigation and all Released Claims of the Lead Plaintiff and the Settlement Class with prejudice, without costs as to any of the Released Parties, except as and to the extent provided in the Stipulation and herein.

5.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Order, pursuant to their terms.

6.    The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

7.    Upon the Effective Date, Lead Plaintiff and each of the Settlement Class Members, and their heirs, executors, administrators, successors, and assigns, shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished,

- 3 -

compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice all Released Claims (including, without limitation, Unknown Claims) against the Released Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release or participates in the Settlement Fund.

8.     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, each and all of the Settlement Class Members, and their counsel, employees, successors and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of (i) the Litigation; or (ii) the Released Claims, except for those claims brought to enforce the Settlement.

9.     Upon the Effective Date, Lead Plaintiff and each of the Settlement Class Members, and their heirs, executors, administrators, successors, and assigns, shall also be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Parties and their counsel from all Released Claims (including, without limitation, Unknown Claims) arising out of the defense, conduct, settlement, or resolution of the Litigation or the Released Claims.  Claims to enforce the terms of the Stipulation are not released.

10.     Upon the Effective Date, Lead Plaintiff and each of the Settlement Class Members who have not validly opted out of the Settlement Class, and anyone claiming through or on behalf of them, are forever barred and enjoined from commencing, instituting, intervening in, prosecuting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Parties, and each of them.

11.     Upon the Effective Date, (i) all Persons shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement against any of the Released Parties of any claims for contribution or indemnity where the alleged injury to that Person is that Person's actual or threatened liability to the Settlement Class or a Settlement Class Member in the Litigation, arising from or related to the claims and allegations asserted by Lead Plaintiff in the Litigation, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and (ii) the Released Parties shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement against any Person of any claims for contribution or indemnity where the alleged injury to the Released Party is the Released Party's actual or threatened liability to the Settlement Class or a Settlement Class Member in the Litigation, arising from or related to the claims and allegations asserted by Lead Plaintiff in the Litigation, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

12.     Notwithstanding paragraphs 7 through 11 above, nothing in this Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

13.     The Notice of Pendency and Proposed Settlement of Class Action given to the Settlement Class ("Notice") in accordance with the Notice Order entered on June 9, 2023, was the best notice practicable under the circumstances, including the individual notice to all Members of the Settlement Class who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth

therein, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

14. Defendants have complied with the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq.* ("CAFA"). Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. §1715(b), including notices to the Attorney General of the United States of America and the Attorneys General of each State. The CAFA notice contains the documents and information required by 28 U.S.C. §1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the notice requirements of CAFA.

15. Any plan of allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

16. Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or concession or evidence of, the validity of any Released Claim, the truth of any fact alleged in the Litigation, the deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, or fault of Defendants; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission of, including with respect to any statement or written document attributed to, approved or made by, any Defendant; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiff were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal, or administrative proceeding in any court, administrative agency, proceeding or other forum or tribunal.

17.     The Released Parties may file the Stipulation and/or this Judgment in any action in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18.     The Court shall retain jurisdiction for the purposes of enforcing the terms of this Judgment.  Except as necessary to enforce the terms of this Judgment, this case is hereby dismissed with prejudice.

19.     The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

20.     Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, Lead Plaintiff and Defendants may agree in writing to reasonable extensions of time to carry out any provisions of the Settlement.

21.     If the Settlement is terminated as provided in the Stipulation, this Judgment shall be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members, and Defendants, and Lead Plaintiff and Defendants shall revert to their respective positions in the Litigation as of immediately prior to the agreement to resolve the Litigation.

22.     The Claims Administrator shall administer the claims administration process, including the calculation of claims submitted by Settlement Class Members and distribution of the

Net Settlement Fund to Authorized Claimants pursuant to the Court-approved Plan of Allocation. All Settlement Class Members shall submit a Proof of Claim and Release ("Claim") under penalty of perjury by the date set forth in the Notice sent to Settlement Class Members. Lead Counsel may, in its discretion, accept for processing late-submitted Claims so long as the distribution of the Net Settlement Fund is not materially delayed.

23. If a Claim is deficient, the Claims Administrator shall send the Settlement Class Member a deficiency letter which will give the Settlement Class Member twenty (20) days to cure the deficiency. If the Settlement Class Member fails to cure the deficiency within the twenty (20)-day period, the Claims Administrator shall send the Settlement Class Member a letter notifying the Settlement Class Member that the Claim has been rejected. The rejection letter will advise the Settlement Class Member of the reason (s) for the rejection of the Claim and his, her, or its right to review the determination of the Claim. If the Claim is still rejected, the Settlement Class Member shall then be allowed to move this Court within twenty (20) days to have the Claim accepted by Lead Counsel and the Claims Administrator.

24. There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED: __9/7/2023__

_____
THE HONORABLE VIRGINIA M. KENDALL
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**
*Joshua Flynn v. Exelon Corporation, et al.*
No. 1:19-cv-08209

## INDIVIDUALS WHO HAVE
## <u>REQUESTED EXCLUSION FROM THE SETTLEMENT CLASS</u>

1. Barbara L. Octon
2. Debra DerManoogian TOD, John W. Christie
3. Ephraim J. Burrow and Marilyn J. Burrow
4. Patrick Devane
5. Antoinette Runski
6. John J. Mitch, Jr. and Gail R. Mitch JT TEN
7. Gail R. Mitch and John J. Mitch, Jr. JT TEN
8. Gail R. Mitch
9. Donald R. Fletcher
10. Peggy J. Stone
11. Joseph O. Kriemelmeyer Jr. and Charlene T. Kriemelmeyer JT TEN WROS
12. Joseph M. Polanski
13. Margaret Cuny
14. William Zubko and Kirsten A. Zubko JT TEN
15. Diana M. Zukowski, Michael H. Zukowski Beneficiary, Renee Michele Zukowski Gruzs Beneficiary
16. Esther A. Talley
17. Alexander Guney (received August 30, 2023)

# EXHIBIT B



# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION:
# 2023 FULL-YEAR REVIEW

By Edward Flores and Svetlana Starykh[1]

23 January 2024

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

**DAVID TABAK, PhD**
Senior Managing Director

# INTRODUCTION

There were 228 new federal securities class action suits filed in 2023, ending a four-year decline in filings seen from 2019 to 2022. The increase in filings was mainly driven by an increase in the number of suits alleging Rule 10b-5 violations. Fueled by turmoil in the banking industry, filings in the finance sector more than doubled in 2023, comprising 18% of new filings. The number of filings related to the environment quadrupled in 2023 compared to 2022.

For the sixth consecutive year, there was a decline in the number of resolutions. There were 190 cases resolved in 2023, consisting of 90 settlements and 100 dismissals, marking the lowest recorded level of resolutions in the last 10 years. More than half of the decline in resolutions was driven by a decrease in the number of settled cases with Rule 10b-5, Section 11, and/or Section 12 claims.

Aggregate settlements totaled $3.9 billion in 2023, with the top 10 settlements of the year accounting for over 66% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, accounting for 24.9% of the 2023 aggregate settlement value. The average settlement value increased by 17% in 2023 to $46 million, though this was largely driven by the presence of a $1 billion settlement. The median settlement value for 2023 was $14 million, a nominal 7% increase from the inflation-adjusted median settlement value in 2022.



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# TRENDS IN FILINGS

From 2019 to 2022, there was a decline in the number of federal filings. In 2023, there were 228 new cases filed, an increase from the 206 cases filed in 2022 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, accounted for most new filings with 206.[3] In particular, filings involving only Rule 10-5 claims increased by 34% from 137 in 2022 to 184 in 2023. On the other hand, there were only seven merger-objection suits filed in 2023, marking a 10-year low. There was also a decline in filings involving crypto unregistered securities, dropping to 11 in 2023 from the 16 observed in 2022.[4] See Figure 2.

Figure 1.  Federal Filings and Number of Companies Listed in the United States
January 1996–December 2023



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2023 listings data are as of October 2023.

Figure 2.  Federal Filings by Type
January 2014–December 2023



Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector accounted for 22% of new filings, the largest proportion of any sector. After hitting a five-year low in 2022, there was a resurgence in filings in the finance sector in 2023, accounting for 18% of new filings. This is more than double the percentage in 2022 and was partly due to the banking crisis in early 2023. On the other hand, the percentage of suits in the health technology and services sector declined from 27% in 2022 to 19% in 2023, partially driven by a decline in COVID-19-related suits. See Figure 3.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second, Third, and Ninth Circuits continue to be the jurisdictions with the most cases filed, together accounting for 155 of the 210 non-merger-objections, non-crypto unregistered securities filings. The Ninth Circuit witnessed 66 new filings, marking a 22% increase from 2022. The number of filings in the Second Circuit declined by 24% to 54, marking a five-year low. The Third Circuit accounted for 35 filings, more than double the number of cases in 2022. Elsewhere, there were 14 cases filed in the Eleventh Circuit, marking a five-year high. See Figure 4.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Among filings of standard cases, 31% included an allegation related to missed earnings guidance and 29% included an allegation related to misled future performance.[5] Meanwhile, the percentage of standard cases containing an allegation related to merger-integration issues declined by one-third to 11%, partially driven by a decline in SPAC-related filings. See Figure 5.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com



Figure 5. **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2019–December 2023

# FILINGS AGAINST FOREIGN COMPANIES

Historically, foreign companies with securities listed on US exchanges have been targeted with securities class action suits at a higher rate than their proportion of US listings, though this trend has reversed over the past two years.[6] In 2023, 18.9% of filings of standard cases were against foreign companies, compared to 24.1% of US listings represented by foreign companies. See Figure 6.

In 2023, there were 39 standard suits filed against foreign companies, a slight increase from 2022 (see Figure 7). Suits against companies in Asia accounted for 19 filings, while another 14 filings were against European companies. Nearly 36% of cases involving foreign companies had an allegation related to regulatory issues, compared to 23% for US companies. See Figure 8.

Figure 6. **Foreign Companies: Share of Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 7.   Filings Against Foreign Companies
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2014–December 2023



Note: Foreign issuer status determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 8. Allegations by US and Foreign Companies
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2023–December 2023



# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas that we have identified for securities class actions over the past five years (see Figures 9 and 10). Due to the small number of cases in some categories, the findings summarized here may be driven by one or two cases.

## Crypto Cases

Since 2020, there have been at least 10 crypto-related federal filings each year, comprised of cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency sector. In 2023, there were 16 crypto-related federal filings, a 28% decline from the 26 filings observed in 2022.

Figure 9.  **Number of Crypto Federal Filings**
January 2016–December 2023



## 2023 Banking Turmoil

The first securities class action suit alleging problems in the banking industry was filed on 7 December 2022 against bank holding company Silvergate Capital Corporation, which provided a banking platform through its subsidiary, Silvergate Bank.[7] Silvergate Bank's voluntary liquidation on 8 March 2023 started a rapid chain of bank failures that intensified during the spring, which saw the collapse of Silicon Valley Bank, Signature Bank, and First Republic Bank,[8] and continued through 3 November 2023, when Citizens Bank of Sac City was closed by the Iowa Division of Banking.[9] Between December 2022 and October 2023, there were 12 securities class action suits filed against banking institutions. Of those, 11 cases were filed in 2023, representing nearly 30% of all filings in the finance sector. Four of the 11 cases were filed against Credit Suisse Group AG, after Credit Suisse, the second-largest bank in Switzerland, collapsed in March 2023 and was bought by rival UBS Group AG.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

## Environment

In recent years, there has been an increased focus by governments and regulators on issues related to the environment, fossil fuel emissions, quality of drinking water, and climate change. During the past five years, there have been 20 environment-related securities class action suits filed. Eight of these cases were filed in 2023, quadruple the number from the two cases filed in 2022. Among the cases filed in 2023 include a suit against Hawaiian Electric Industries, Inc. in connection with wildfires in Hawaii, two cases related to train derailments with severe environmental consequences against Norfolk Southern Corporation, and three cases involving telecommunication companies AT&T, Verizon Communications, and Lumen Technologies for ownership of thousands of miles of lead-covered cables.

## Cannabis

In 2019, there were 13 securities class action suits filed against defendants in the cannabis industry. The number of filings has declined in subsequent years, with only one suit filed per year in each of 2022 and 2023.

## Money Laundering

In each of 2019 and 2020, three cases were filed with claims related to money laundering. In 2021, there were no such cases filed, while in 2022 and 2023, only one such suit was filed in each year.

## Cybersecurity and Customer Privacy Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity and/or customer privacy breach. While there were seven such filings in 2021, there were only three filings in 2023.

## COVID-19

Since March 2020, there have been 85 securities class actions filed with claims related to the COVID-19 pandemic. Of these, 33 cases were filed in 2020. In 2021 and 2022, the number of suits declined to 20 each year, while in 2023, there were only 12 such filings.

## SPAC

Filings related to special purpose acquisition companies (SPACs) peaked in 2021 with 31 securities class action suits filed that year. Since then, new federal filings related to SPACs have declined each year to 24 in 2022 and 14 in 2023.

Figure 10. Event-Driven and Other Special Cases by Filing Year
January 2019–December 2023



# TRENDS IN RESOLUTIONS

In 2023, the number of resolved cases declined by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years. Of these resolved cases, 90 were settlements and 100 were dismissals.[10] While resolutions declined across all categories of cases, more than half of this decline was due to

a reduction in the number of settled standard cases, which had a record-setting year in 2022. The number of merger-objection cases resolved declined to nine in 2023, consistent with the reduced number of filings of such cases in recent years. See Figure 11.

Since 2015, more cases filed have been dismissed than settled. This is consistent with historical trends, which indicate that dismissals tend to occur earlier in the litigation cycle and settlements occur later (see Figure 12). For cases filed in 2023, 5% of cases have been dismissed while 95% remain pending as of December 2023.

For cases filed and resolved over the past 20 years, over two-thirds were resolved within three years of the filing of the first complaint, while 16% of cases take longer than four years to resolve (see Figure 13). The median time to resolution is 2.1 years.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
January 2014–December 2023



Figure 12.  **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2014–December 2023



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

The number of resolved cases decreased by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 13.  **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2004–December 2019 and Resolved January 2004–December 2023



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2014–2023 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 74% of these cases, while 17% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of motions were withdrawn by defendants. Among the cases in which a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full. See Figure 14.

   ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 14. Filing and Resolutions of Motions to Dismiss
Cases Filed and Resolved January 2014–December 2023



## Motion for Class Certification

A motion for class certification was filed in only 18% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases in which a motion for class certification was filed, while nearly all remaining 40% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases. See Figure 15.

Approximately 64% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 16). The median time is about 2.7 years.

Figure 15. Filing and Resolutions of Motions for Class Certification
Cases Filed and Resolved January 2014–December 2023



Figure 16. Time from First Complaint Filing to Class Certification Decision
Cases Filed and Resolved January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# TRENDS IN SETTLEMENT VALUES[11]

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight decline from the inflation-adjusted total of $4.2 billion from 2022.[12]  In 2023, the average settlement value was approximately $46 million, a 17% increase over the 2022 inflation-adjusted average settlement value of $39 million and the second consecutive year that this value has increased (see Figure 17). The increase in the average settlement value is largely driven by a $1 billion settlement by Wells Fargo & Company.[13]

Figure 17. **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million, a decrease of 12% from the $39 million inflation-adjusted amount in 2022 (see Figure 18). The median settlement value was $14.4 million, which is a slight increase from the $13.5 million inflation-adjusted value seen in 2022 (see Figure 19). Aside from a decrease in the percentage of settlements between $10 and $19.9 million and a roughly similar increase in the percentage of settlements between $20 to $49.9 million in 2023, the distribution of settlement values in 2023 looks similar to that of 2022 (see Figure 20).

Figure 18. **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities,
and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million in 2023, a decrease of 12% from the $39 million inflation-adjusted amount in 2022.

Figure 19. **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 20.   **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2019–December 2023



Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight drop relative to the inflation-adjusted total of $4.2 billion from 2022.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# ▌TOP SETTLEMENTS

The 10 largest settlements in 2023 ranged from $90 million to $1 billion and together accounted for over 66% of the $3.9 billion aggregate settlement amount reached in 2023. Wells Fargo & Company appears twice on this list, taking the top spot in a $1 billion settlement in a case involving misrepresentations regarding its progress in overhauling its internal controls[14] as well as the third-highest spot in a $300 million settlement in a matter involving allegations of misconduct in its auto insurance practices.[15] The Second, Seventh, and Ninth circuits accounted for nine of the top 10 settlements.

Table 1. **Top 10 2023 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo & Company (2020) (S.D.N.Y.) | 11 Jun 2020 | 8 Sep 2023 | $1,000.0 | $181.1 | 2nd | Finance |
| 2 | The Kraft Heinz Company (N.D. Ill.) | 24 Feb 2019 | 12 Sep 2023 | $450.0 | $92.7 | 7th | Consumer Non-Durables |
| 3 | Wells Fargo & Company (2018) | 14 Feb 2019 | 17 Aug 2023 | $300.0 | $77.0 | 9th | Finance |
| 4 | Exelon Corporation (2019) | 16 Dec 2019 | 7 Sep 2023 | $173.0 | $45.3 | 7th | Utilities |
| 5 | McKesson Corporation | 25 Oct 2018 | 2 Jun 2023 | $141.0 | $36.3 | 9th | Distribution Services |
| 6 | Alexion Pharmaceuticals, Inc. (D. Conn.) | 17 Nov 2016 | 20 Dec 2023 | $125.0 | $32.8 | 2nd | Health Technology |
| 7 | Cardinal Health, Inc. (2019) | 1 Aug 2019 | 11 Sep 2023 | $109.0 | $33.4 | 6th | Distribution Services |
| 8 | Micro Focus International plc (S.D.N.Y.) (SEC 11) | 28 Mar 2018 | 27 Jul 2023 | $107.5 | $36.7 | 2nd | Technology Services |
| 9 | Grupo Televisa S.A.B. | 5 Mar 2018 | 8 Aug 2023 | $95.0 | $29.6 | 2nd | Communications |
| 10 | The Allstate Corporation | 10 Nov 2016 | 19 Dec 2023 | $90.0 | $27.1 | 7th | Finance |
| | Total | | | $2,590.0 | $591.9 | | |

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2023. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

Table 2. **Top 10 Federal Securities Class Action Settlements (As of 31 December 2023)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | Total | | | $32,334 | $13,249 | $1,017 | $3,358 | | |

\* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[16]

A statistical review reveals that while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 23% of Investor Losses, while in cases with more than $50 million in Investor Losses, the median settlement value is less than 4% of Investor Losses. See Figure 21.

Since 2014, annual median Investor Losses have ranged from a low of $358 million to a high of $984 million. For cases settled in 2023, the median Investor Losses were $923 million, a 6% decline from 2022 and the second highest recorded value during the 2014–2023 period. Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%. See Figure 22.



Figure 21.  Median Settlement Value as a Percentage of NERA-Defined Investor Losses
By Level of Investor Losses
Cases Settled January 2014–December 2023

The median Investor Losses were $923 million, a 6% decline relative to 2022 and the second highest recorded value during the 2014–2023 period.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 22.  Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year
January 2014–December 2023



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 23).

Among cases settled between January 2012 and December 2023, these factors in NERA's statistical model can explain over 70% of the variation observed in actual settlements.



Figure 23.    Predicted vs. Actual Settlements
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2023

# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Over the past 10 years, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $489 million in 2017 to a high of $1.6 billion in 2016. In 2023, aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, a slight decline from the $1.0 billion seen in 2022 (see Figure 24). Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled since the passage of the PSLRA in 1996 reveals that fees and expenses as a percentage of the settlement amount decline as the settlement size increases. For instance, for cases settled during the 2014–2023 period, median percent fees and expenses ranged from 36.1% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

In the past 10 years, median percent attorneys' fees have increased for settlements under $5 million and for settlements over $500 million relative to the 1996–2013 period. This increase is more pronounced for settlements of $1 billion or higher, although this is partly due to this category having only five cases in the post-2013 period (see Figure 25).

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 24. Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size
January 2014–December 2023



Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 25.   Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

■ Median Fees    ■ Median Expenses

| Percentage of Settlement Value 1996–2013 | Settlement Value ($Million) | Percentage of Settlement Value 2014–2023 |
|---|---|---|
| 8.1%  0.5%  7.6% | ≥1,000 | 18.0%  0.6%  18.6% |
| 17.7%  0.7%  17.0% | ≥500 and <1,000 | 18.5%  0.6%  19.1% |
| 23.7%  1.4%  22.3% | ≥100 and <500 | 25.0%  1.3%  26.3% |
| 27.6%  1.9%  25.8% | ≥25 and <100 | 25.0%  1.8%  26.8% |
| 32.7%  2.7%  30.0% | ≥10 and <25 | 27.5%  2.1%  29.6% |
| 33.8%  3.8%  30.0% | ≥5 and <10 | 30.0%  2.1%  32.1% |
| 35.2%  5.2%  30.0% | <5 | 33.0%  3.1%  36.1% |

Note: Component values may not add to total value due to rounding.

# CONCLUSION

In 2023, federal filings increased by 11% from 206 in 2022 to 228 in 2023, ending a four-year period of annual declines in filings from 2019 to 2022. Of the 228 cases filed in 2023, 206 were standard cases with alleged violations of Rule 10b-5, Section 11, and/or Section 12, and 18.9% of standard cases were against foreign companies. Filings against companies in the information technology and technology services, health technology and services, and the finance sectors accounted for 59% of non-merger objections, non-crypto unregistered securities filings.

The number of resolved cases declined by 15% from 223 in 2022 to 190 in 2023. There were 90 settlements and 100 dismissals, marking the lowest level of both settlements and dismissals in the last 10 years. Excluding the presence of settlements of $1 billion or higher, the average settlement value for 2023 was $34 million and the median settlement value was $14 million. Aggregate settlements totaled $3.9 billion in 2023, with aggregate plaintiffs' attorneys' fees and expenses accounting for $972 million, or 24.9%, of the 2023 aggregate settlement value. Over the last 10 years, the median plaintiffs' attorneys' fees and expenses as a percentage of settlement value has ranged from 18.6% for settlements of $1 billion or higher to 36.1% for settlements of $5 million or lower.

# ▌NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other of NERA's securities and finance researchers for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which will be considered as a separate category.

4   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/ American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

6   In our analysis, a company is defined as a foreign company based on the location of its principal executive office.

7   Class Action Complaint for Violations of the Federal Securities Laws, *In re Silvergate Capital Corporation Securities Litigation*, 7 December 2023.

8   Madeleine Ngo, "A Timeline of How the Banking Crisis Has Unfolded," *The New York Times*, 1 May 2023, available at https://www.nytimes.com/2023/05/01/business/banking-crisis-failure-timeline.html.

9   "Iowa Trust & Savings Bank, Emmetsburg, Iowa, Assumes All of the Deposits of Citizens Bank, Sac City, Iowa," FDIC Press Release, 3 November 2023, available at https://www.fdic.gov/news/press-releases/2023/pr23091.html.

10  "Dismissed" is used here as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

11  Unless otherwise noted, the analyses in this section exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

12  For our analysis, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its settlement size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

13  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

14  Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

15  Lauren Berg, "Wells Fargo Investors Ink $300M Deal in Auto Insurance Suit," *Law360.com*, 7 February 2023, available at https://www.law360.com/articles/1573911/.

16  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

# RELATED EXPERTS



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 448 4123
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

# ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allows us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2024
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN CO. et al., <br><br> Defendants. | Civil Action No. 1:15-cv-3187 <br><br> Honorable Sharon Johnson Coleman |

## JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, an action is pending in this Court entitled *Washtenaw County Employees' Retirement System v. Walgreen Co. et al.*, Civil Action No. 1:15-cv-3187 (the "Action");

WHEREAS, by Memorandum Opinion and Order dated March 29, 2018, this Court certified the Action to proceed as a class action on behalf of a class of all persons and entities who purchased or otherwise acquired Walgreen Co. ("Walgreens") common stock between March 25, 2014 and August 5, 2014, inclusive, and were damaged thereby;

WHEREAS, pursuant to the Order dated December 18, 2019, the Notice of Pendency of Class Action (the "Class Notice") was mailed to potential members of the class to notify them of, among other things: (i) the Action pending against defendants Walgreens, Gregory D. Wasson, and Wade D. Miquelon (collectively, "Defendants"); (ii) the Court's certification of the Action to proceed as a class action; and (iii) their right to request to be excluded from the class, the effect of remaining in the class or requesting exclusion, and the requirements for requesting exclusion;

WHEREAS, by operation of the Court's Memorandum Opinion and Order regarding summary judgment dated November 2, 2021, the class previously certified by the Court was modified to consist of all persons and entities who purchased or otherwise acquired Walgreens

1

common stock between April 17, 2014 and August 5, 2014, inclusive, and were damaged thereby (the "Class"[1]);

WHEREAS, (a) Court-appointed Class Representative Industriens Pensionsforsikring A/S ("Class Representative"), on behalf of itself and the Class, and Defendants (together with Class Representative, the "Parties") have entered into the Stipulation and Agreement of Settlement dated June 23, 2022 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, by Order dated June 29, 2022 (the "Preliminary Approval Order"), this Court: (a) found, pursuant to Rule 23(e)(1)(B), that it would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (b) ordered that notice of the proposed Settlement be provided to potential Class Members; (c) provided Class Members with the opportunity to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Class;

WHEREAS, the Court conducted a hearing on October 7, 2022 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

---

[1] Excluded from the Class by definition are: (i) any Defendant in this Action; (ii) the officers and directors of Walgreens; (iii) members of the immediate families of the individual Defendants in this Action; (iv) any entity in which any Defendant has or had a controlling interest; and (v) the legal representative, heirs, successors, or assigns of any such excluded party. Also excluded from the Class are the persons and entities identified on Exhibit 1 hereto that submitted a request for exclusion in connection with the Class Notice.

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. **<u>Jurisdiction</u>** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members.

2. **<u>Incorporation of Settlement Documents</u>** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on June 23, 2022; and (b) the Postcard Notice, the Settlement Notice, and the Summary Settlement Notice, all of which were filed with the Court on September 2, 2022.

3. **<u>Notice</u>** – The Court finds that the dissemination of the Postcard Notice and Notice Packet, the posting of the Settlement Notice on the Settlement Website, and the publication of the Summary Settlement Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the effect of the proposed Settlement (including the Releases to be provided thereunder and the prohibition against a second exclusion opportunity); (ii) Class Counsel's motion for attorneys' fees and Litigation Expenses; (iii) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Class Counsel's motion for attorneys' fees and Litigation Expenses; and (iv) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution

3

(including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules. No Class Member is relieved from the terms of the Settlement, including the Releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or adequate notice.

4.    **CAFA Notice** – The Court finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the Action, have been satisfied.

5.    **Objections** – There are no objections to the Settlement.

6.    **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of the Class. Specifically, the Court finds that (a) Class Representative and Class Counsel have adequately represented the Class; (b) the Settlement was negotiated by the Parties at arms' length; (c) the relief provided for the Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Class, and the proposed attorneys' fee and Litigation Expenses award; and (d) the Settlement treats members of the Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.    The Action and all of the claims asserted against Defendants in the Action by Class Representative and the other Class Members are hereby dismissed with prejudice as to all

Defendants. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8. **<u>Binding Effect</u>** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Class Representative, and all other Class Members (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto who previously submitted a timely request for exclusion from the Class are excluded from the Class and are not bound by the terms of the Stipulation or this Judgment.

9. **<u>Releases</u>** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a) Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Class Representative and each of the other Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Class Representative's Claim against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Class Representative's Claims against any of Defendants or the other Defendants' Releasees in any forum of any kind, whether or not such Class Member has executed or delivered a Proof of Claim Form.

(b)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executives, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Class Representative and the other Class Representative's Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against Class Representative or any of Class Representative's Releasees in any forum of any kind. This Release shall not apply to any person or entity who previously submitted a timely request for exclusion from the Class in connection with the Class Notice as set forth on Exhibit 1 hereto.

10.      Notwithstanding paragraphs 9 (a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11.      **<u>Rule 11 Findings</u>** – Based on its review of the record, the Court finds that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12.      **<u>No Admissions</u>** – Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the Parties' mediation and subsequent Settlement, the communications and/or discussions leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the

6

Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments preferred in connection therewith):

(a)     shall be offered against any of Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Defendants' Releasees with respect to the truth of any fact alleged by Class Representative or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of Defendants' Releasees or in any way referred to for any other reason as against any of Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be offered against any of Class Representative's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Class Representative's Releasees that any of their claims are without merit, that any of Defendants' Releasees had meritorious defenses, or that damages recoverable under the Amended Consolidated Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of Class Representative's Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

*provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

13.    **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for attorneys' fees and/or Litigation Expenses by Class Counsel in the Action; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Class Members for all matters relating to the Action.

14.    Separate orders shall be entered regarding approval of the Plan of Allocation and the motion of Class Counsel for attorneys' fees and Litigation Expenses.  Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

15.    **Modification of the Agreement of Settlement** – Without further approval from the Court, Class Representative and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement. Without further order of the

Court, Class Representative and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Class Representative, the other Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action immediately prior to the execution of the Term Sheet on May 25, 2022, as provided in the Stipulation.

17. **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this 13th day of October, 2022.

Honorable Sharon Johnson Coleman
United States District Judge

9

# EXHIBIT 1

**Walgreens Securities Litigation**
**Exclusion Report**

| Name | City, State, Zip |
|---|---|
| 1. Donald E. Struck  Joan C. Struck | Springfield, IL 62711-6030 |
| 2. Mary P. Carr | Lincolnwood, IL 60712 |
| 3. Melvin W. Harvey  Karen L. Harvey | Nenana, AK 99760 |
| 4. Robert R. Bakanowicz | Kimberling City, MO 65686 |
| 5. Charles H. Williamson  Joyce H. Williamson | Woodstock, GA 30188 |
| 6. John Eric Nelson | Oswego, IL 60543 |
| 7. Virginia Ann Benson | Springfield, TN 37172 |
| 8. Donna Rehman  Donald Rehman  Melanie Rehman | Winfield, IL 60190 |
| 9. Larry K. Gray | Tucson, AZ 85742 |
| 10. Jean Hack | Valparaiso, IN 46383 |
| 11. Emilio A. Vazquez  Emilio A. Vazquez, Jr. JT Tenants | Miami, FL 33222-8177 |
| 12. David C. Morehouse  Alice M. Morehouse  Trustees of the Morehouse Trust dated April 3, 2001 | Madison, WI 53719 |
| 13. Sonya C. Gans | Monticello, IL 61856 |
| 14. Donald F. Anderson, Trustee Anderson Family TR UA 10/13/95 | Las Vegas, NV 89134 |
| 15. Nellie Irene Healy | Millington, TN 38053 |
| 16. James L. Dority | Santa Ana, CA 92705-7512 |
| 17. Thomas P. Kendellen | Greenfield, WI 53201 |
| 18. Marilyn Novello | Chicago, IL 60630 |
| 19. Christopher James Giles | Cumbria LA22 9AU UK |
| 20. Christine Styles | Napier 4110 New Zealand |
| 21. Karlene M. Guerette | East Hampton, CT 06424 |
| 22. William P. Gammie | Buckley, WA 98321 |
| 23. James P. Haen | Schofield, WI 54476 |

11

| | |
|---|---|
| 24. Sandra S. Boyd | Shadyside, OH 43947 |
| 25. Kent R. Wagner | Cincinnati, OH 45231 |
| 26. Cherri Watkins | Chillicothe, IL 61523 |
| 27. Emily VanDerPuy | Grand Haven, MI 49417 |
| 28. Jerry William Galligar | Oswego, IL 60543 |
| 29. Harold L. Hinkley | Mount Dora, FL 32757-9112 |
| 30. Wade Stynoski | Morton Grove, IL 60053-2074 |
| 31. Aloysius J. Kempf<br>    Kathleen M. Kempf | Anoka, MN 55303-6120 |
| 32. John Adam Colquitt | Longview, TX 75604-3600 |
| 33. Bryan L. Wagoner<br>    Brandon M. Wagoner | Gillespie, IL 62033 |
| 34. Bryan L. Wagoner<br>    Zachary R. Wagoner | Gillespie, IL 62033 |
| 35. Georgia B. Petrie | Scotts Valley, CA 95066-4615 |
| 36. Karl M. Grisso<br>    Dorothy L. Grisso | Charleston, IL 61920-4230 |
| 37. Joseph Calabrese III | Belleville, NJ 07109 |
| 38. Joseph Calabrese Jr. | Belleville, NJ 07109 |
| 39. Barbara E. Linn | Great Falls, MT 59405 |
| 40. Marilyn A. Spores | West Des Moines, IA 50266 |
| 41. Leonard V. Wojtowicz<br>    Carol Wojtowicz, JT | Naperville, IL 60563 |
| 42. William Chalmers<br>    Gertrude Louise Chalmers | Meridian, ID 83646-3459 |
| 43. Alice Davidson | Huntley, IL 60142 |
| 44. James R. Walker | Waco, TX 76705 |
| 45. The Bakers's Dozen<br>    Investment Club<br>    Carol J. Raap, President | Andover, SD 57422 |
| 46. Terry Pickel | Labadie, MO 63055 |
| 47. Jungsoo Park | Colorado Springs, CO 80906 |
| 48. Sally Harrington Holmes | Lawton, OK 73505-9668 |
| 49. Audrey Christiansen | Manitowoc, WI 54220 |

| | |
|---|---|
| 50. Karen G. Giambalvo | Mount Prospect, IL 60056 |
| 51. Gloria J. Yurko<br>Donald E. Yurko | Streator, IL 61364 |
| 52. Thomas A. Carlson | Missoula, MT 59802 |
| 53. Estate of Charles A. Bean | Cozad, NE 69130-4108 |
| 54. Terry Polansky | Forsyth, MO 65653 |
| 55. James Robley Vidrine | Ville Platte, LA 70586 |
| 56. Judy Truckenbrod | West Brooklyn, IL 61378-9526 |
| 57. James J. Parisi | Park Ridge, IL 60068 |
| 58. Charles R. Maier, TTEE<br>Charles R. Maier Living Trust | Wayne, NE 68787 |
| 59. Betty H. Johnson | Thomson, MA 30824 |
| 60. Robert F. Parker, Jr. | Sulphur Springs, TX 75482 |
| 61. Vernon C. Ellis Jr. TTEE<br>U/A DTD 01/29/02<br>The Vernon C. Ellis Jr. Trust | Torrington, WY 82240 |
| 62. Gerald F. Allenberg<br>Judith L. Allenberg<br>Gerald & Judith Allenberg TR | St. Charles, MO 63301-4494 |
| 63. Donald J. Blake | Johnsburg, IL 60051 |
| 64. Paula Charlene Cherry<br>Honeycutt | Pineville, AR 72566 |
| 65. Joseph P. Clavet | Ridgecrest, CA 93555 |
| 66. Cheryl Ann Mouton | Oakland, CA 94605 |
| 67. Diana L. Smith | Springfield, IL 62702-4608 |
| 68. Ronald G. Kimbrough<br>Mary Ann Kimbrough | St. Louis, MO 63128-2739 |
| 69. Nicholas Matthew Kennedy | Albuquerque, NM 87109 |
| 70. Nicholas Lemon Kennedy III<br>Jean Ann Kennedy | Albuquerque, NM 87109 |
| 71. Frank J. Sitterle<br>c/o Barry A. McClenahan | San Antonio, TX 78230 |
| 72. Carol Kannegieter | Watertown, SD 57201 |
| 73. Mary Stynoski | Morton Grove, IL 60053-2074 |

13

14

| 74. Eugenia W. Raper | Ashdown, AR 71822 |
| 75. Charles Ross Werner<br> Joan L. Werner | Palm Desert, CA 92211 |

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>WALGREEN CO. et al.,<br><br>       Defendants. | Civil Action No. 1:15-cv-3187<br><br>Honorable Sharon Johnson Coleman |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVE'S MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

                                                                           **Page**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    THE SETTLEMENT WARRANTS FINAL APPROVAL................................................ 3

        A.     Class Representative and Class Counsel Have Adequately Represented the Class ........................................................................................................................5

        B.     The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator ........................................................................................6

        C.     The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors ........................8

                1.     The Strength of Class Representative's Case Compared to the Amount of Settlement ...................................................................................... 8

                2.     The Complexity, Length, and Expense of Further Litigation..................... 9

                3.     The Remaining Rule 23(e)(2) Factors Support Final Approval ............... 11

        D.     The Reaction of the Class to Date............................................................................13

III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION........................... 13

IV.   NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA........................ 14

V.    CONCLUSION................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ...........................................................................8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
   *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc. Sec.*
   *Litig.*, 688 F.3d 713 (11th Cir. 2012) ...........................................................................9

*Beezley v. Fenix Parts, Inc.*,
   2020 WL 4581733 (N.D. Ill. Aug. 7, 2020) ...............................................................15

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .....................................................................................................15

*Equal Emp. Opportunity Comm'n v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) .........................................................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .........................................................................................9

*Goldsmith v. Tech. Sols. Co.*,
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................................................................9

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ..................................................................................8

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011),
   *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).........................................................10

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................13

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .........................................................................................3

*Jaffe Pension Plan v. Household Int'l., Inc.*,
   No. 1:02-cv-05893 (N.D. Ill. May 7, 2009), Doc. 1611 .............................................10

*Jaffe Pension Plan v. Household Int'l., Inc.*,
   No. 1:02-cv-05893 (N.D. Ill. Nov. 10, 2016), Doc. 2267............................................10

*Kleen Prods. LLC v. Int'l Paper Co.*,
2017 WL 5247928 (N.D. Ill. Oct. 17, 2017)...........................................................................7

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
Practices & Prods. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020).................................................12

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ...............................................................................................6

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.*,
834 F.2d 677 (7th Cir. 1987) ...................................................................................................4

*In re Mex. Money Transfer Litig. (W. Union & Orlandi Valuta)*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .....................................................................................7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)...............................................................................................................15

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010)..........................................................................................9

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................................................5

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)....................................................................10, 13

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...............................................................................................9

*Roberti v. OSI Sys., Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ............................................................................9

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................................................9

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...........................................................................3, 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ...............................................................9, 13, 15

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019)....................................................................... 5-6, 8

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................................10

*Swift v. Direct Buy, Inc.*,
 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013)........................................................................12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ...................................................................................................4

*T.K. Through LeShore v. Bytedance Tech. Co., Ltd.*,
 2022 WL 888943 (N.D. Ill. Mar. 25, 2022)...........................................................................14

*Todd v. STAAR Surgical Co.*,
 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)...........................................................................6

*In re Vivendi Universal, S.A. Sec. Litig.*,
 Civ. No. 02-5571 (RJH/HBP) (S.D.N.Y. Feb. 2, 2010), ECF No. 998 ..................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
 Civ. No. 02-5571 (RJH/HBP) (S.D.N.Y. May 9, 2017), ECF No. 1317.................................10

*Wong v. Accretive Health, Inc.*,
 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014).........................................................................12

*Wong v. Accretive Health, Inc.*,
 773 F.3d 859 (7th Cir. 2014) ....................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 23...................................................................................... *passim*

Court-appointed Class Representative Industriens Pensionsforsikring A/S, on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this Action on the terms set forth in the Stipulation and Agreement of Settlement dated June 23, 2022 (Doc. 505) ("Stipulation"); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Class ("Plan of Allocation" or "Plan").[1]

## I.  PRELIMINARY STATEMENT

Subject to Court approval, Class Representative has agreed to settle all claims asserted in the Action against Defendants in exchange for a $105,000,000 cash payment, plus interest accruing in escrow. As detailed in the Joint Declaration and summarized below, the Settlement: (i) is the culmination of more than seven years of highly contentious and vigorous litigation efforts; (ii) is the product of extensive settlement negotiations under the guidance of experienced class-action mediators and, ultimately, the Parties' acceptance of a mediator's recommendation to resolve the Action for the Settlement Amount; and (iii) represents a significant percentage of the Class's estimated damages. Notably, this $105 million Settlement ranks as one of the top ten largest securities class action recoveries in the Seventh Circuit. Class Representative respectfully submits that the Settlement provides an excellent result for the Class and readily satisfies the standards for final approval under Rule 23(e)(2).

---

[1] Unless otherwise defined, all capitalized terms have the meanings set forth in the Stipulation or in the Joint Declaration of David Kessler and Andrew L. Zivitz in Support of (I) Class Representative's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl.") filed herewith. The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Class Representative respectfully refers the Court to it for a detailed description of, *inter alia*: the claims asserted (¶¶ 15-17), the procedural history of the Action (¶¶ 18-112), the Settlement negotiations (¶¶ 113-118), the risks of continued litigation (¶¶ 119-132), the notice campaign (¶¶ 133-138), and the Plan of Allocation (¶¶ 139-145). Citations to "¶ __" herein refer to paragraphs in the Joint Declaration. All internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

As the Court is aware, at the time of settlement, the Parties were at a highly advanced stage of litigation—fact and expert discovery had concluded and summary judgment motions had been briefed and decided. As such, Class Representative and Class Counsel had a well-developed understanding of the strengths and weaknesses of their claims. While Class Representative believes the Class's claims are meritorious and supported by evidence developed during discovery, it also recognized that there were substantial risks to obtaining a larger recovery for the Class through further litigation. Indeed, when the Settlement was reached, the Parties were preparing their respective *Daubert* motions to exclude or limit expert testimony. An adverse ruling for Class Representative on any of Defendants' *Daubert* motions could have significantly narrowed the evidence Class Representative could have presented at trial on behalf of the Class, potentially leading to the disposition of this seven+ year litigation altogether without any recovery.

Even if successful on these anticipated *Daubert* challenges, Class Representative still faced substantial risks at trial. Indeed, at the time of settlement, *only two* sets of statements and *one* corrective disclosure remained in the case, making this a high-risk case to bring before a jury. ¶¶ 111, 149, 202. Defendants were prepared to present significant arguments, supported by their four experts, that Class Representative could not establish either liability or damages with respect to the remaining statements. *See* ¶¶ 122-129. The Settlement avoids the risk of an adverse finding for the Class by a jury—as well as the delay and expense of continued litigation—while providing a substantial (and certain) near-term benefit to the Class. Moreover, the Settlement is not "claims-made." Rather, all Settlement proceeds, after deducting Court-approved fees and costs, will be distributed to Class Members who submit Claims accepted by the Court for payment.

In June, the Court preliminarily approved the Settlement, finding it likely that the Court could approve the Settlement at final approval. Doc. 510, ¶ 1. The Settlement has the full support

2

of the sophisticated, institutional investor Class Representative (*see* Declaration of Jan Østergaard filed herewith), and the reaction of the Class to date has been positive. While the deadline for objections has not yet passed, following an extensive notice campaign that included mailed notice as well as publication of a summary notice online and in high-circulation media, there have been no objections to the Settlement or the Plan of Allocation. ¶¶ 13, 138, 145.

Given the foregoing considerations and the factors addressed below, Class Representative and Class Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Class Members who submit valid Claims based on losses they suffered as a result of the alleged fraud.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Courts in this Circuit "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Equal Emp. Opportunity Comm'n v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016).

Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it "fair, reasonable, and adequate." This determination involves considering whether: "(A) the class representative[] and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:

[among other things,] (i) the costs, risks, and delay of trial and appeal . . .; and (D) the proposal treats class members equitably relative to each other." *Id*.

Further, consistent with this guidance, the Seventh Circuit has identified the following six additional factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).[2] The approval proceedings should not be transformed into an abbreviated trial on the merits. *See, e.g.*, *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987).

As noted above, after considering the Rule 23(e)(2) factors at the preliminary approval stage, the Court found the Settlement to be fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. Doc. 510, ¶ 1. The Court's conclusion on preliminary approval applies even more in light of the record before the Court now. Accordingly, as discussed below, the Settlement is fair, reasonable, adequate, and warrants final approval under the Rule 23(e)(2) factors and Seventh Circuit law.

---

[2] The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2). Accordingly, Class Representative discusses below the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four Rule 23(e)(2) factors, but also discusses the application of the non-duplicative factors articulated by the Seventh Circuit in *Wong*.

4

### A. Class Representative and Class Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court should first consider whether Class Representative and Class Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This factor weighs in favor of approving the Settlement.

In its March 2018 Class Certification Order, the Court found Class Representative satisfied Rule 23(a)(4)'s adequacy requirement.[3] Since that time, Class Representative has continued to represent the Class adequately in its vigorous prosecution of the Action. During the course of this Action, Class Representative has, *inter alia*, communicated regularly with Class Counsel about case developments and litigation strategy, reviewed pleadings and briefs, gathered and reviewed documents and information in response to Defendants' discovery requests, prepared and sat for a deposition, and participated in settlement negotiations. *See* Østergaard Decl., ¶ 4. In addition, Class Representative—whose claims are based on a common course of alleged wrongdoing by Defendants and are typical of other Class Members—has no interests antagonistic to the Class.[4]

Likewise, Class Representative retained counsel highly experienced in securities litigation. ¶¶ 226-231; *see also* Kessler Topaz Fee and Expense Decl., Ex. C (resume). Class Counsel has vigorously pursued the claims on behalf of the Class for *over seven years*, and negotiated a favorable Settlement through hard-fought negotiations and formal mediation. ¶¶ 6-8; *see also Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (Rule 23(e)(2)(A) met where "plaintiffs participated in the case diligently" and "class counsel

---

[3] *See* Doc. 133 at 11 ("[T]his Court perceives no evidence presently before it capable of establishing that Industriens does not satisfy the typicality or adequacy requirements.").

[4] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative").

**B. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator**

The Court should next consider whether the settlement was "negotiated at arm's-length." *See* Rule 23(e)(2)(B). This includes considering related circumstances including: (i) "the opinion of competent counsel"; (ii) "stage of the proceedings and the amount of discovery completed"; and (iii) the involvement of a mediator. *Wong*, 773 F.3d at 863-64. These considerations support approving the Settlement. *See id.* at 863-64.

In this Circuit, "a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). This presumption is further supported when a neutral mediator is involved. *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Here, the Parties reached the Settlement only after protracted arm's-length negotiations with the assistance of two private mediators. ¶¶ 113-114. The Parties' second round of negotiations—occurring several years after the first round, and following the conclusion of fact and expert discovery and while summary judgment motions were pending—included a formal mediation on November 17, 2021, with the Honorable Layn R. Phillips (Ret.), preceded by the exchange of detailed mediation statements and replies which addressed the Court's Summary Judgment Order. ¶ 114. Although the Parties were unable to reach a settlement at the mediation, they continued to engage in negotiations during the next six months with Judge Phillips' assistance. ¶ 115. These negotiations culminated in a mediator's recommendation to settle the Action for $105 million, which the Parties accepted on

6

May 19, 2022. *Id.*; *see also In re Mex. Money Transfer Litig. (W. Union & Orlandi Valuta)*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("The court places significant weight on the unanimously strong endorsement of these settlements by [Settling] Plaintiffs' well respected attorneys.").

Moreover, at the time of settlement, the knowledge of Class Representative and Class Counsel, and the proceedings themselves, had reached a stage where they could make a well-founded evaluation of the claims and propriety of settlement. Prior to settlement, Class Counsel had: (i) conducted a comprehensive investigation into the alleged fraud (¶¶ 7, 22, 150) and drafted two detailed amended complaints based on that investigation (¶¶ 23, 62); (ii) opposed two rounds of motions to dismiss (¶¶ 25, 64-65); (iii) completed comprehensive fact and expert discovery, including taking or defending 35 depositions, reviewing more than 1.1 million pages of documents produced by Defendants and various non-parties, and litigating numerous discovery-related motions (¶¶ 47-54, 71-72, 75, 80-84, 86, 150); (iv) exchanged opening, rebuttal, and reply reports for eight merits experts (¶ 150); (v) successfully moved for class certification (¶¶ 43-46); (vi) conducted an extensive Class-notice program (¶¶ 76-79); (vii) moved for partial summary judgment (¶ 105); (viii) opposed Defendants' motion for summary judgment and subsequent motion for reconsideration (¶¶ 102-103, 110); and (ix) substantially prepared *Daubert* motions to limit or exclude expert testimony (¶ 112).[5] Additionally, the Parties' settlement negotiations, including facts and arguments set forth in their respective mediation submissions, further informed the Parties of the strength of each side's arguments. ¶ 114.[6]

---

[5] The Joint Declaration provides additional detail on Plaintiff's Counsel's efforts over the course of this Action, including a breakdown undertaken each year of the litigation. ¶¶ 155-225.

[6] *See Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) (noting in approving class action settlement that "case was in an advanced stage with trial near, and the record exceptionally well-developed" where litigation had been pending seven years, discovery was extensive, the class had been certified, and summary judgment motions were fully briefed).

### C. The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

The Court should next consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C) encompasses two of the factors traditionally considered by the Seventh Circuit when evaluating a proposed class action settlement: (i) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (ii) the complexity, length, and expense of further litigation. *See Wong*, 773 F.3d at 863-64. As discussed below, these factors strongly support approving the Settlement.

### 1. The Strength of Class Representative's Case Compared to the Amount of Settlement

When deciding whether to approve a proposed class action settlement under Seventh Circuit precedent, the primary consideration is "the strength of the plaintiff's case on the merits balanced against the amount offered in settlement." *Snyder*, 2019 WL 2103379, at *6 (quoting *Wong*, 773 F.3d at 864). Under this factor, courts consider whether the settlement is reasonable in light of the risks of continued litigation. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 959, 961, 963-64 (N.D. Ill. 2011); *see also Sears*, 2016 WL 772785, at *7 (approval does not require a settlement be "the best possible deal for plaintiffs" or that "the class has received the same benefit from the settlement as they would have recovered from a trial"); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement. . . . If the case were fully litigated there is also a possibility that plaintiffs could receive less.").

By any measure, the $105 million Settlement is a favorable result for the Class—providing a near-term, cash benefit to the Class, and eliminating the substantial risk that the Class could

recover less from Defendants, or nothing at all, if this Action proceeded to trial. As noted above, Defendants have denied their culpability throughout the Action, and would vigorously assert strong defenses to all of Class Representative's claims at trial.[7] These defenses, if accepted by a jury, could have foreclosed any recovery for the Class. And, even if Class Representative prevailed at trial, Defendants likely would have appealed that verdict, creating further risk (and delay).[8]

The Settlement Amount also represents a significant percentage (i.e., approximately 9.5%) of the Class's maximum damages (i.e., approximately $1.1 billion) as estimated by Class Representative's damages expert. ¶ 149. Indeed, this recovery is consistent with, or larger than, damage percentages recovered in numerous other securities class action settlements within the Seventh Circuit.[9] "The adequacy of this amount is reinforced by the fact that the amount was originally recommended by Judge Phillips, an objective and informed third-party during the mediation process." *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015).

### 2. The Complexity, Length, and Expense of Further Litigation

In determining the fairness of a settlement, courts also consider the likely "complexity, length, and expense of further litigation." *Wong*, 773 F.3d at 863. Courts routinely recognize that

---

[7] The specifics risks of continued litigation are detailed in the Joint Declaration at ¶¶ 119-132.

[8] There is a real risk that even a successful trial verdict could be overturned on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding $2.46 billion jury verdict after 13 years of litigation); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning estimated $42 million jury verdict in favor of class and granting judgment as a matter of law to defendants), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc. Sec. Litig.*, 688 F.3d 713 (11th Cir. 2012); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict after 19-day trial and dismissing case with prejudice).

[9] *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *5 (N.D. Ind. Sept. 18, 2020) (approving settlement recovering roughly 8% of maximum possible damages); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving settlement representing 10% of estimated class damages, and noting courts have approved class settlements below this percentage); *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (approving settlement representing 6.1% of estimated class damages).

securities class actions involve complex factual and legal issues, and that continued litigation is lengthy and expensive. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").

There is no doubt that this securities class action involves complex factual and legal issues. Perhaps the best example of the complexity of the issues here is the mountain of evidence and briefing submitted to the Court in connection with summary judgment (approximately 1,040 total pages and approximately 870 appendices and exhibits). ¶ 150. Further, the expense of litigating this Action for seven+ years exceeded $2 million without any trial related expenses. A trial would have increased those expenses considerably, requiring a full trial team to move to Chicago to work around the clock for many weeks and possibly months. Any trial verdict in the Class's favor likely would have been appealed and, even with a verdict at trial affirmed on appeal, the Class would face a potentially complex, lengthy, and contested claims process. ¶ 131.[10] *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).

---

[10] In similar actions tried to a jury verdict, the time from verdict to final judgment has taken as long as *seven* years. *See, e.g.*, Verdict Form, *Jaffe Pension Plan v. Household Int'l., Inc.*, No. 1:02-cv-05893 (N.D. Ill. May 7, 2009), ECF No. 1611 & Final Judgment and Order of Dismissal With Prejudice, *id.* (N.D. Ill. Nov. 10, 2016), ECF No. 2267; Verdict Form, *In re Vivendi Universal, S.A. Sec. Litig.*, Civ. No. 02-5571 (RJH/HBP) (S.D.N.Y. Feb. 2, 2010), ECF No. 998 & Final Judgment, *id.* (S.D.N.Y. May 9, 2017), ECF No. 1317.

### 3. The Remaining Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) also instructs courts to consider: (i) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval of the Settlement.

*First*, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation. Here, the proceeds of the Settlement will be distributed to Class Members who submit eligible Claims to the Claims Administrator, A.B. Data, Ltd. ("A.B. Data"). A.B. Data will review and process Claims under Class Counsel's supervision, provide Claimants with an opportunity to cure any deficiencies in their Claims or request Court review of the denial of their Claims, and then mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. Importantly, none of the Settlement proceeds will revert to Defendants. *See* Stip., ¶ 13.

*Second*, the relief provided by the Settlement remains adequate when considering the terms of the proposed award of attorneys' fees and expenses, including the timing of any such payments. As discussed in the Fee and Expense Memorandum, the 27.5% fee request, made with the approval of Class Representative and to be paid only upon the Court's approval, is reasonable in light of Plaintiff's Counsel's substantial efforts over the past seven+ years and the risks in the litigation.[11]

---

[11] Class Counsel also seeks payment from the Settlement Fund of Plaintiff's Counsel's Litigation Expenses in the total amount of $2,250,420.62 and Class Representative's costs in the amount of $32,960. ¶ 243.

Indeed, if awarded, a 27.5% fee will still result in a *negative* multiplier of 0.976 on Plaintiff's Counsel's lodestar, representing less than full compensation for the time expended on the Action. Additionally, a 27.5% fee is fully supported by Seventh Circuit case law. *See, e.g., Swift v. Direct Buy, Inc.*, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) ("[P]ayment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action."). Further, approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Class Representative nor Class Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to fees. *See* Stip., ¶ 16.[12]

*Third*, Rule 23 asks courts to consider the fairness of the proposed settlement in light of "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(iv). As previously disclosed, the only such agreement here (other than the Stipulation and preceding Term Sheet) is the Parties' confidential Supplemental Agreement, which set forth the conditions under which Walgreens could terminate the Settlement based on requests for exclusion but *only in the event* that the Court allowed a second opportunity to request exclusion from the Class. The Court did not permit Class Members to request exclusion in connection with the Settlement proceedings (Doc. 510, ¶ 11) and, accordingly, the Supplement Agreement is moot.

*Lastly*, as discussed below in Section III, under the Plan of Allocation, Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on their transactions

---

[12] Pursuant to the Stipulation, attorneys' fees will be paid upon issuance of the award. Stip., ¶ 16. This timing is reasonable and consistent with common practice in class action cases. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (noting "quick-pay" provisions "have generally been approved by other federal courts" and finding objection to such provision "border[ed] on frivolous" as there was "no reason to buck" the trend of other federal courts approving such provisions); *see also Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (Coleman, J.) ("The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Lead Counsel from the Settlement Fund *immediately* after the date this Order is executed . . . .").

12

in Walgreens common stock. Class Representative will receive precisely the same level of *pro rata* recovery (based on its Recognized Claims as calculated under the Plan) as all other Class Members. Accordingly, the Settlement treats Class Members equitably relative to one another.

### D. The Reaction of the Class to Date

Two related final approval factors not included in Rule 23(e)(2) that courts in the Seventh Circuit consider when assessing a proposed settlement are "the amount of opposition to the settlement" and "the reaction of members of the class to the settlement." *See Wong*, 773 F.3d at 863. The deadline for Class Members to object to the Settlement is September 16, 2022. As of the date of this filing, the Settlement has received no objections. ¶¶ 13, 138. Class Representative will address objections, if any, in their reply submission to be filed on September 30, 2022.

In sum, all of the factors to be considered under Rule 23(e)(2) and Seventh Circuit case law support approving the Settlement as fair, reasonable, and adequate.

### III. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be "fair, reasonable and adequate." *Retsky*, 2001 WL 1568856, at *3. Further, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable." *Zimmer*, 2020 WL 5627171, at *6. Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, the Plan was developed by Class Counsel in consultation with Class Representative's damages expert, Chad Coffman, CFA, and his team at Global Economics Group, LLC. ¶ 141. The Plan is designed to distribute the Net Settlement Fund equitably to Class Members who timely submit valid Claims demonstrating they suffered economic losses as a result of Defendants'

alleged violations of the federal securities laws set forth in the FACC and sustained by the Court in subsequent orders, as opposed to economic losses caused by market or industry factors, or Walgreens-specific factors unrelated to the alleged fraud. *Id*.

The Plan is based upon the estimated amount of artificial inflation in the price of Walgreens common stock over the course of the Class Period, as Mr. Coffman calculated in his merits expert reports. ¶ 141. To have a loss, a Claimant must have purchased/acquired Walgreens common stock during the Class Period and held such stock through the alleged corrective disclosure on August 6, 2014. ¶ 142. Further, a Claimant's loss will depend upon several factors, including the date(s) when the Claimant purchased/acquired shares of Walgreens common stock during the Class Period, whether such shares were sold and, if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id*. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their calculated loss. *See T.K. Through LeShore v. Bytedance Tech. Co., Ltd.*, 2022 WL 888943, at \*16 (N.D. Ill. Mar. 25, 2022) ("[Pro rata] distribution plans indicate equitable treatment of class members relative to each other."). Accordingly, Class Representative's trading activity is treated no differently than that of any Class Member who files a timely and valid Claim.

The Plan will result in a fair and equitable distribution of the Settlement proceeds among Class Members who suffered losses as a result of the conduct alleged in the Action. To date, there have been no objections. ¶ 145. For all of the foregoing reasons, the Plan should be approved.

## IV.    NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA

Class Representative has provided the Class with adequate notice of the Settlement. Here, notice satisfies both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement,

14

Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Collectively, the notices also provide all of the information specifically required by Rule 23 and the PSLRA. *See* Doc. 504-1 at 18-19; *see also* Schachter Decl., Exs. A-C.

In accordance with the Preliminary Approval Order, A.B. Data has mailed 278,052 Postcard Notices and 4,749 Notice Packets to potential Class Members and nominees. *See* Schachter Decl., ¶ 9. A.B. Data also caused the Summary Settlement Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*, and updated the case website to provide information about the Settlement as well as downloadable copies of the Settlement Notice, Claim Form, and other relevant documents. *Id*., ¶¶ 11-13. Defendants also issued CAFA notice. ¶ 136 n.18.

In sum, the notice campaign utilized here provides sufficient information for Class Members to make informed decisions regarding the Settlement, fairly apprises them of their rights with respect to the Settlement, represents the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process. Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *Zimmer*, 2020 WL 5627171, at *6 (approving similar notice program); *Beezley v. Fenix Parts, Inc.*, 2020 WL 4581733, at *2 (N.D. Ill. Aug. 7, 2020) (same).

## V.    CONCLUSION

For the reasons herein and in the Joint Declaration, Class Representative respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Dated:  September 2, 2022

Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*/s/ Andrew L. Zivitz*

David Kessler (*Pro Hac Vice*)
Andrew L. Zivitz (*Pro Hac Vice*)
Johnston de F. Whitman (*Pro Hac Vice*)
David A. Bocian (*Pro Hac Vice*)
Michelle M. Newcomer (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
dkessler@ktmc.com
azivitz@ktmc.com
jwhitman@ktmc.com
dbocian@ktmc.com
mnewcomer@ktmc.com

*Class Counsel for the Class*

**ROBBINS GELLER RUDMAN
  & DOWD LLP**
James E. Barz (No. 6255605)
Frank A. Richter (No. 631001)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: (312) 674-4674
Facsimile: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Liaison Counsel for the Class*

16

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 14-cv-9465 |
| | ) | |
| Plaintiffs, | ) ) | Honorable Robert M. Dow, Jr. Honorable Maria Valdez |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD GONZALEZ and ABBVIE INC., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated May 31, 2019 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Dawn Bradley ("Plaintiff") (on behalf of herself and each of the Class Members), by and through her counsel of record in the Litigation; and (ii) AbbVie, Inc. ("AbbVie" or the "Company") and Richard Gonzalez (together, "Defendants"). Plaintiff and the Class (to be certified for settlement purposes) and Defendants are referred to herein as the "Settling Parties." The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I. THE LITIGATION

The Litigation is pending in the United States District Court for the Northern District of Illinois (the "Court"). The initial complaint in this action was filed on November 25, 2014. Dkt. No. 1. On February 4, 2015, the Court appointed Lead Plaintiff and Lead Counsel. Dkt. No. 12.

Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by falsely reassuring the market that AbbVie intended to proceed with a proposed transaction to acquire Shire plc through an inversion transaction (the "Combination") after the U.S. Treasury Department had issued a notice on September 22, 2014 of changes to the tax regulations to dissuade U.S. companies from entering into inversions, when in fact it was reconsidering the proposed transaction and ultimately withdrew from the Combination. Defendants deny Plaintiff's allegations.

On March 29, 2016, the Court dismissed the original complaint upon Defendants' motion, with leave to amend. Dkt. No. 37. On May 2, 2016, Plaintiff filed an Amended Complaint. Dkt. No. 38. In a Memorandum Opinion and Order entered on March 10, 2017, the Court granted in part and denied in part Defendants' motion to dismiss. Dkt. No. 53. The Court denied the motion as to a September 29, 2014 communication to Shire employees and dismissed claims based on earlier statements issued prior to the US Treasury's notice. The Court's Order narrowed the class period to September 29, 2014 through October 14, 2014.

Discovery began following a pretrial status hearing on March 29, 2017, at which the Court adopted the parties' proposed discovery plan. Dkt. No. 61. The parties engaged in several discovery motions and conferences throughout 2017 and 2018, including four motions to compel and two motions for protective orders. Defendants eventually produced approximately 50,000 pages of documents. Plaintiff deposed ten fact witnesses and Defendants deposed proposed class representative Dawn Bradley and her husband Jack Bradley. Defendants also deposed Plaintiff's class certification expert, Chad W. Coffman of Global Economics Group, and Plaintiff deposed Defendants' expert, Allan W. Kleidon of Cornerstone.

On December 21, 2017, Plaintiff moved to certify a class of all persons who purchased or otherwise acquired American Depositary Shares ("ADS") or purchased call options or sold put options of Shire between September 29 and October 14, 2014, and to have Dawn Bradley appointed as class representative. Dkt. No. 105. After the motion was fully briefed, including a sur-reply and sur-sur-reply, on September 25, 2018, the Court issued an order directing Defendants to file a *Daubert* motion to exclude portions of Plaintiff's expert testimony, noting that "[t]he back-and-forth between the parties on the opinions offered in Coffman's report and rebuttal report has the hallmarks of a *Daubert* challenge" despite the absence of a formal motion. Dkt. No. 253. The *Daubert* motion was fully briefed as of November 9, 2018.

The parties engaged the services of the David Murphy from Phillips ADR, a nationally recognized mediator. The parties engaged in an all-day, in-person mediation session with the mediator on March 14, 2019. Although the parties negotiated in good faith, no agreement was reached at the mediation. The parties continued their discussion through near-daily phone conferences with the mediator, and ultimately reached an agreement in principle to resolve the Litigation on April 5, 2019. The agreement included, among other things, the Settling Parties' agreement to settle and release all claims asserted in the Litigation in return for a cash payment of $16,750,000, for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have

denied, and continue to deny, that they have committed any act or omission giving rise to any liability under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted.

## III.    PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports her claims.  However, Plaintiff and her counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals.  Plaintiff and her counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiff and her counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation.  Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Class.  Based on their evaluation, Plaintiff and her counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Plaintiff and the Class.

## IV.    TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff (for herself and the Class Members) and Defendants, by and through their counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation and the Released Claims shall be finally and fully

compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Claims Administrator" means the firm of Epiq.

1.3    "Class" means all Persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options (collectively, "Securities") of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who satisfies the criteria for being a member of the Class, but validly and timely requests exclusion in accordance with the requirements set by the Court.

1.4    "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5    "Class Period" means the period from September 29, 2014 to October 14, 2014, inclusive.

1.6    "Defendants" means AbbVie and Richard Gonzalez.

1.7 "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred or have been waived.

1.8 "Escrow Agent" means the Claims Administrator or its agents.

1.9 "Final" means when the last of the following with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the final determination of that motion or appeal such that no further judicial review or appeal is permitted, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.10 "Immediate Family" means any spouse, parent, step-parent, grandparent, child, step-child, grandchild, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-

6

in-law, or sister-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.11 "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.12 "Lead Counsel" means the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP.

1.13 "Litigation" means the action captioned *Rubinstein v. Gonzalez*, No. 14-cv-9465.

1.14 "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.15 "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.16 "Plaintiff" means Dawn Bradley.

1.17 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.18 "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form

7

attached hereto as Exhibit C-2, that a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.19 "Related Parties" means each Defendant's respective former, present or future parent companies, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.20 "Released Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation. "Released Claims" includes "Unknown Claims" as defined in ¶1.29 hereof.

1.21 "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the

8

institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

1.22    "Released Persons" means each and all of the Defendants and their Related Parties.

1.23    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.24    "Settlement Amount" means Sixteen Million Seven Hundred Fifty Thousand Dollars ($16,750,000.00) in cash to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.1 of this Stipulation.

1.25    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.26    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.27    "Settling Parties" means, collectively, Defendants, Plaintiff, and the Class.

1.28    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.29    "Unknown Claims" means (a) any and all Released Claims which Plaintiff, Lead Counsel, or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants'

9

Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Lead Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Lead Counsel, or Class Members.  With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a

10

breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

### 2. The Settlement

#### a. The Settlement Amount

2.1     In full and final settlement of the claims asserted in the Litigation against Defendants and in consideration of the releases specified in ¶4 herein, AbbVie shall cause the Settlement Amount to be paid by check or wire transfer in accordance with instructions to be provided by the Escrow Agent on or before thirtieth (30) calendar day after the later of: (i) the entry of the Preliminary Approval Order, as defined in ¶3.1 herein, and (ii) the provision to Defendants of all information necessary to effectuate a transfer of funds, including, but not limited to, the bank name and ABA routing number, account name and number, and a signed W-9 reflecting the taxpayer identification number for the Settlement Fund.  The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

2.2     If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel have notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel have provided such written notice.

2.3     Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶2.1 herein, Defendants shall have no obligation to make any other

payment into the Settlement Fund pursuant to this Stipulation, and shall have no responsibility, obligation, or liability with respect to the Escrow Account or the monies maintained in the Escrow Account or the administration of the Settlement, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

### b.    The Escrow Agent

2.4    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' counsel.

2.6    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8     After the Court issues the Preliminary Approval Order, and notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval and/or order of the Court, reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, assisting with the submission of claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow fees and costs, if any ("Notice and Administration Expenses"). The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

c.     **Taxes**

2.9     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary

13

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the elections described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and

14

Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

2.10    This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

### d.    Termination of Settlement

2.11    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.8 and 2.9 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' counsel in accordance with ¶8.6 herein.

15

### 3. Preliminary Approval Order and Settlement Hearing

3.1     Within ten (10) calendar days after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits C-1 and C-3 attached hereto, and certification of the Class for settlement purposes. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below.

3.2     It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 ("CAFA") as set forth in ¶3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4    Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate State official of each State in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of CAFA. Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.    Releases**

4.1    Upon the Effective Date, as defined in ¶1.7 hereof, Plaintiff shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

4.2    Any Proof of Claim and Release that is executed by a Class Member shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit C-2 attached hereto.

4.3    Upon the Effective Date, Plaintiff, all Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claims against any of the Released Persons.

4.4    Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and

17

discharged all Released Defendants' Claims against Plaintiff, each and all of the Class Members, and Lead Counsel. Claims to enforce the terms of this Stipulation are not released.

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses;

(c)    to pay attorneys' fees and expenses of Lead Counsel and reimbursement of Plaintiff's expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3    After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4    Within one hundred-twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Class Member who seeks to share in the Net Settlement Fund shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit C-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

18

5.5    Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within 120 days after the mailing of the Notice, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiff, her counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6    Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7    Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the

19

claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who does not request to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.

5.10    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion.  Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments,

20

which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel.

5.11   Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶5.1-5.13 hereof; and Class Members, Plaintiff, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12   No Person shall have any claim against Defendants or their Related Parties, Defendants' counsel, Plaintiff, Lead Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13   It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the

21

finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

### 6.    Class Member Exclusions and Objections

6.1     Each Class Member shall be bound by all determinations and judgments in the Litigation, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Class, unless such Class Member seeks exclusion from the Class.

6.2     A putative Class Member wishing to exclude themselves from the Class shall mail the request to the Claims Administrator by First Class Mail postmarked no later than twenty-one (21) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), to the address designated in the Notice.

6.3     Such request for exclusion shall clearly indicate the name, address, and telephone number of the Person seeking exclusion, that the sender requests to be excluded from the Class and must be signed by such person.  All persons requesting exclusion also shall be requested to state: the date(s), price(s), number(s), and type of publicly traded security (ADS or put or call option), and for options the specific option series (by name, type ("put" or "call"), strike price, and expiration date), they purchased, acquired, and sold during the Class Period.

6.4     Putative Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund as described in the Stipulation and Notice. The Claims Administrator is authorized to request from any Person requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions and/or sales of Shire publicly traded ADS or put or call options during the Class Period.

6.5     Copies of all requests for exclusion shall be provided to counsel for Plaintiff and Defendants, as expeditiously as possible, but in no event later than ten (10) business days after receipt by the Claims Administrator.

6.6     Any Class Member that does not request exclusion from the Class may file objections to the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, including Plaintiff's expenses. Any such objections and any supporting papers shall be filed with the Court at least twenty-one (21) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), and also delivered by hand or First-Class Mail to Jennifer Sarnelli, Gardy & Notis, LLP, Tower 56, 126 East 56th Street, 8th Floor, New York, NY 10024 and Joshua Z. Rabinovitz, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, by that same date.

6.7     Any such objection must: (a) clearly indicate the objector's name, mailing address, daytime telephone number and e-mail address; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, and/or fee and expense application in *Rubinstein v. Gonzalez*, No. 14-cv-9465; (c) specify the reason(s), if any, for the objection, including any legal support for such objection; (d) state the number of shares of Shire publicly traded ADS or put or call options owned during the Class Period; (e) list the date(s), price(s), and list the date(s), price(s), and type of publicly traded security (ADS or option), and for options, identify each Series, by name, type ("put" or "call"), strike price, and expiration date, acquired and sold during the Class Period; and (f) provide written documentation (whether from the objector's bank, broker or otherwise) of such trading. In order to be considered, an objection also must be signed by the Class Member making the objection.

23

6.8    Attendance at the Settlement Hearing is not necessary.  However, any persons wishing to be heard orally, either individually or through counsel of his, her, or its own choice, in opposition to the approval of the Settlement, the Plan of Allocation, and/or the request by Lead Counsel for attorneys' fees and expenses, are required to indicate in their written objection their intention to appear at the Settlement Hearing and to include in their written objection the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing.

6.9    Class Members do not need to appear at the hearing or take any other action to indicate their approval.  Lead Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

6.10    Any Class Member who does not object to the Settlement, Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses in the manner prescribed herein and in the Notice, shall be deemed to have waived such objection and his, her, or its right to object to the Settlement, the Judgment, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, shall be deemed a Class Member and shall forever be barred and foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, this Order, the Final Judgment, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, and from otherwise being heard concerning the Settlement, this Order, the Judgment, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses in this or any other proceeding.

24

### 7. Lead Counsel's Attorneys' Fees and Expenses

7.1 Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) reimbursement for Plaintiff's time and expenses in connection with her work on behalf of the class; plus (d) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. An application for fees and expenses may include a request for reimbursement of Plaintiff's verifiable reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995. Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

7.2 Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court enters an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among Lead Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3 In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel who have received any portion of the Fee and Expense Award shall, within five (5) business days from receiving notice from Defendants' counsel or from

25

a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination.

7.4    The procedure for and the allowance or disallowance by the Court of any applications by any Lead Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

7.5    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of AbbVie's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.1, Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

8.    **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

8.1    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account;

26

(c)  the time for AbbVie to exercise its option to terminate the Stipulation pursuant to ¶8.3 hereof has passed without any such termination;

(d)  the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto, following notice to the Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(e)  the Judgment has become Final, as defined in ¶1.9 hereof.

8.2  Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If the conditions specified in ¶8.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶8.5, 8.6 and 8.7 hereof unless Plaintiff and Defendants mutually agree in writing to proceed with the Settlement.

8.3  AbbVie shall have the right to terminate the Settlement and render it null and void in the event that Class Members who purchased or otherwise acquired more than a certain percentage of Shire Securities subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiff and AbbVie. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

27

8.4    Plaintiff or AbbVie shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect by the Court, the U.S. Court of Appeals for the Seventh Circuit, or the Supreme Court of the United States.

8.5    If, before the Settlement becomes Final, AbbVie files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by AbbVie to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned to AbbVie out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the Judgment, including the releases pursuant thereto, and the Settlement and this Stipulation shall terminate.

8.6    Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant

28

to ¶¶2.8 and/or 2.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.8 and/or 2.9 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution. Such refunds shall be pursuant to written instructions from Defendants' counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same manner as the Settlement Fund described in this ¶8.6. Such payments shall be pursuant to written instructions from Defendants' counsel.

8.7     In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of April 5, 2019. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.29, 2.3-2.11, 7.3-7.4, 8.4-8.7, and 10.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

8.8     If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Plaintiff nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.8 or 2.9 hereof. In addition, any amounts already incurred pursuant to ¶¶2.8 or 2.9 hereof at the time of such termination or cancellation but which have not been paid,

shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.11 and 8.6 hereof.

### 9. No Admission of Wrongdoing

9.1 Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiff or any Class Member or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b) shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Defendant, or against Plaintiff or any Class Member as evidence of any infirmity in the claims of Plaintiff and the Class;

(c) shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any

way referred to for any other reason as against any of the Settling Parties in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)    shall be construed against Defendants, Plaintiff, or the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

### 10.    Miscellaneous Provisions

10.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

10.2    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in- interest.

10.3    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines

to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.4    Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, except as to the State Court Actions.

10.5    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.6    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

10.7    This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

10.8    Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

10.9    Lead Counsel, on behalf of the Class, are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which they deem appropriate.

10.10 Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.11 This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or pdf via e-mail shall be deemed originals.

10.12 All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given when delivered by electronic mail addressed to the intended recipient as set forth below:

### *If to Plaintiffs or to Lead Counsel:*

James Notis – jnotis@gardylaw.com
Jennifer Sarnelli – jsarnelli@gardylaw.com
Mark Rifkin – rifkin@whafh.com

### *If to Defendants or to Defendants' counsel:*

Joshua Z. Rabinovitz – jrabinovitz@kirkland.com

10.13 This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.14 The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

10.15 Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

10.16 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Illinois without giving effect to its choice-of-law principles.

10.17 The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.18 This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

10.19 The Parties agree that neither side will make or cause to be made any public statements regarding the settlement, other than the public notices described in this Agreement, and notification of the Settlement on counsel's websites or any statements in court regarding the Settlement.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated May 31, 2019.

34

GARDY & NOTIS, LLP

_____
James S. Notis
Jennifer Sarnelli
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509

WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP

_____
Mark C. Rifkin
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600

WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLC
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604

*Counsel for Plaintiff and the Class*

Robert J. Kopecky
Joshua Z. Rabinovitz
Devon M. Largio
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000

*Counsel for Defendants*

Robert A. Michael
Senior Vice President, Chief Financial Officer
AbbVie Inc.
1 North Waukegan Road
North Chicago, IL 60064

36

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>) | No. 14-cv-9465 |
| ) | |
| Plaintiffs, )<br>) | Honorable Robert M. Dow, Jr. |
| v. )<br>) | |
| RICHARD GONZALEZ and ABBVIE INC., )<br>) | |
| Defendants. ) | |

## [PROPOSED] ORDER PRELIMINARLY APPROVING SETTLEMENT

WHEREAS, a securities class action is pending in this Court entitled *Rubinstein v. Gonzalez*, No. 14-cv-9465 (the "Litigation");

WHEREAS, on May __, 2019, the parties to the Litigation, Plaintiff Dawn Bradley on behalf of herself and the other Members of the Class, and defendants AbbVie, Inc. ("AbbVie"), and Richard Gonzalez (together, "Defendants," and, collectively with Plaintiff, the "Settling Parties") entered into the Stipulation of Settlement (the "Stipulation"), which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the Exhibits thereto, sets forth the terms and conditions for the proposed settlement of the claims alleged in any of the complaints filed in this Litigation on the merits and with prejudice;

WHEREAS, Plaintiff has made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation and allowing notice to Members of the Class as more fully described herein;

WHEREAS, the parties to the Stipulation having consented to the entry of this Order;

WHEREAS, the Court having read and considered: (a) Plaintiff's unopposed motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the accompanying Exhibits attached thereto;

WHEREAS, unless otherwise specified all capitalized terms used, but not otherwise defined, herein have the same meanings as set forth in the Stipulation;

**NOW THEREFORE, IT IS HEREBY ORDERED**, this ___day of_____, 2019 that:

1.      The Court hereby preliminarily approves the Stipulation[1] and the Settlement set forth therein as being fair, reasonable and adequate to Class Members (defined in ¶1.4 of the Stipulation), subject to further consideration at the Settlement Hearing described in ¶2 below.

2.      A hearing (the "Settlement Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Court on _____, 2019 at ____ __.m. [a date that is approximately 110 calendar days from the date of entry of this Order], for the following purposes:

(a)      to determine whether the proposed Settlement is fair, reasonable and adequate to Class Members, and should be approved by the Court;

(b)      to determine whether the Judgment as provided under the Stipulation should be entered, dismissing the Litigation on the merits and with prejudice, and to determine whether the release by the Class of the Released Claims, as set forth in the Stipulation, should be provided to the Released Persons;

---

[1]      The Exhibits attached to the Stipulation filed with the Court are incorporated herein as though set forth in this Order.

(c)     to determine whether the release by the Released Persons of the Released Defendants' Claims, as set forth in the Stipulation, should be provided;

(d)     to determine whether the proposed Plan of Allocation of the proceeds of the Settlement is fair and reasonable and should be approved by the Court;

(e)     to consider Lead Counsel's application for an award of attorneys' fees and expenses, including Plaintiff's expenses; and

(f)     to rule upon such other matters as the Court may deem appropriate.

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby certifies a Class, for settlement purposes only, defined as: All Persons who purchased or otherwise acquired American Depositary Shares or purchased call options or sold put options of Shire plc between September 29, 2014 and October 14, 2014, inclusive.  Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with this Order.

4.     Notice of the Settlement and the Settlement Hearing shall be given to the Members of the Class as set forth in ¶¶8, 11-12 of this Order.

5.     The Court may adjourn the Settlement Hearing without further notice to the Class and reserves the right to approve the Settlement, including, if appropriate, with any such modifications as may be agreed to by the parties without further notice to the Class.  The Court further reserves the right to enter its Judgment approving the Settlement and dismissing the

3

Litigation on the merits and with prejudice regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and expenses.

6. The Court approves the form, substance and requirements of: the Notice of Proposed Settlement of Class Action (the "Notice"); the Proof of Claim and Release form (the "Claim Form"); and Summary Notice, annexed to the Stipulation as Exhibits C-1, C-2 and C-3, respectively, and finds that the form, content, and mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶8, 11-12 of this Order, (i) meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq.*, as amended, and all other applicable laws and rules; (ii) is the best notice practicable under the circumstances; (iii) constitutes due and sufficient notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Litigation, of the effect of the proposed Settlement (including the releases to be provided thereunder), of Lead Counsel's application for an award of attorneys' fees and expenses, including Plaintiff's expenses, of their right to exclude themselves from the Class, and of their right to appear at the Settlement Hearing; and (iv) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement. The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

7. The Court approves the appointment of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claim Forms as more fully set forth below.

8. Within thirty-five (35) calendar days of the entry of this Order (the "Notice Date"), the Claims Administrator shall cause the Notice and the Claim Form, substantially in the forms annexed to the Stipulation as Exhibits C-1 and C-2, to be mailed by First-Class Mail, postage prepaid, to all potential Class Members who can be identified with reasonable effort. The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons or entities who purchased or otherwise acquired Shire publicly traded American Depository Shares during the Class Period as record owners but not as beneficial owners. Such nominee purchasers are directed, within seven (7) business days of their receipt of the Notice, to either forward copies of the Notice and Claim Form to their beneficial owners or to provide the Claims Administrator with lists of the names and addresses of the beneficial owners, and the Claims Administrator is ordered to send the Notice and Claim Form promptly to such identified beneficial owners. Nominee purchasers who elect to send the Notice and Claim Form to their beneficial owners shall send a statement to the Claims Administrator confirming that the mailing was made as directed. Additional copies of the Notice shall be made available to any record holder requesting such for the purpose of distribution to beneficial owners, and such record holders shall be reimbursed from the Settlement Fund, upon receipt by the Claims Administrator of proper documentation, for the reasonable expense of sending the Notice and Claim Form to beneficial owners. Lead Counsel shall, at least fifteen (15) calendar days prior to the Settlement Hearing, file with the Court proof, by affidavit or declaration, of mailing of the Notice and Claim Form.

9. The Escrow Agent or its agents are authorized and directed to prepare any tax returns and any other tax reporting form required to be filed on behalf of or in respect of the Settlement Fund, to cause any Taxes due and owing to be paid from the Settlement Fund, and to

otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation without further order of the Court.

10.     Lead Counsel shall submit their papers in support of final approval of the Settlement, the Plan of Allocation, and application for attorneys' fees and expenses, including Plaintiffs' expenses, by no later than thirty-five (35) calendar days prior to the Settlement Hearing. All reply papers in support of such motions shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

11.     The Claims Administrator shall cause the Summary Notice to be published once over the *Business Wire* within ten (10) business days of the Notice Date. Lead Counsel shall, at least fifteen (15) calendar days prior to the Settlement Hearing, file with the Court proof, by affidavit or declaration, of the publication of the Summary Notice.

12.     In order to be entitled to participate in the Net Settlement Fund, in the event the Settlement is approved in accordance with the terms and conditions set forth in the Stipulation, each Class Member shall take the following actions and be subject to the following conditions:

(a)     A properly executed Claim Form, substantially in the form attached to the Stipulation as Exhibit C-2, must be submitted to the Claims Administrator, online at www.AbbVieSettlement.com or emailed to info@AbbVieSettlement.com or mailed to the Post Office Box indicated in the Notice, postmarked or submitted electronically no later than one hundred- twenty (120) calendar days from the Notice Date. Such deadline may be further extended by Court order. Any Claim Form submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Notice. Lead Counsel may, at their discretion, direct the Claims Administrator to accept late submitted claims if they will

not materially delay distribution of the Net Settlement Fund, but will not incur any liability for declining to do so.

(b)     The Claim Form submitted by each Class Member must satisfy the following conditions:  (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip or such other documentation as is deemed adequate by the Claims Administrator; (iii) if the person executing the Claim Form is acting in a representative capacity, a certification of his current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of the Claims Administrator; and (iv) it must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

(c)     By submitting a Claim Form, a Person shall be deemed to have submitted to the jurisdiction of this Court solely with respect to the claim submitted and the subject matter of the Settlement and shall (subject to effectuation of the Settlement) release all Released Claims as against the Released Persons provided in the Stipulation.

13.     Any Member of the Class who does not submit a Claim Form in the manner stated in this Order or whose Claim Form is not otherwise approved by the Court shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund and shall forever be barred from sharing in the Net Settlement Fund.  In all other respects, however, any such Member of the Class shall be subject to and bound by all of the terms of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Litigation, including, without limitation,

7

the Judgment and the releases provided for therein, whether favorable or unfavorable to the Class and will be barred from commencing, maintaining, or prosecuting any of the Released Claims against the Released Persons unless such Member of the Class has submitted a request to be excluded from the Class in the manner required by this Order. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in ¶12 above.

14. Class Members shall be bound by all determinations and judgments in the Litigation, whether favorable or unfavorable, unless such persons request exclusion from the Class in a timely and proper manner, as hereinafter provided. A putative Class Member wishing to make such request shall mail the request to the Claims Administrator by First-Class Mail postmarked no later than twenty-one (21) calendar days prior to the Settlement Hearing, to the address designated in the Notice. Such request for exclusion shall include the name, address, and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Class and must be signed by such person. Such persons requesting exclusion shall also provide: the date(s), price(s), number(s), and type of publicly traded security (ADS or put or call option), and for options the specific option series (by name, type ("put" or "call"), strike price, and expiration date), they purchased, acquired, and sold during the Class Period. Putative Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund. The Claims Administrator is authorized to request from any Person requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions and/or sales of Shire publicly traded ADS or put or call options during the Class Period. Copies of all requests for exclusion shall be provided to Plaintiff's and Defendants' counsel, as expeditiously as possible, but in no event later than ten (10) business days after receipt by the Claims Administrator.

16.     Any Class Member that does not request exclusion from the Class may file objections to the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, including Plaintiff's expenses.  Any such objections and any supporting papers shall be filed with the Court on or before twenty-one (21) calendar days prior to the Settlement Hearing, and also delivered by hand or First-Class Mail to Jennifer Sarnelli, Gardy & Notis, LLP, Tower 56, 126 East 56th Street, 8th Floor, New York, NY 10024 and Joshua Z. Rabinovitz, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, by that same date. Any such objection must: (a) clearly indicate the objector's name, mailing address, daytime telephone number and e-mail address; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, and/or fee and expense application in *Rubenstein v. Gonzalez*, No. 14-cv-9465; (c) specify the reason(s), if any, for the objection, including any legal support for such objection; (d) state the number of shares of Shire publicly traded ADS or put or call options owned during the Class Period; (e) list the date(s), price(s) and number(s) of shares of Shire publicly traded ADS or put or call options purchased, acquired and sold during the Class Period; and (f) provide written documentation (whether from the objector's bank, broker or otherwise) of such trading.  In order to be considered, an objection also must be signed by the Class Member making the objection.  Attendance at the Settlement Hearing is not necessary.  However, any persons wishing to be heard orally, either individually or through counsel of his, her, or its own choice, in opposition to the approval of the Settlement, the Plan of Allocation, and/or the request by Lead Counsel for attorneys' fees and expenses, are required to indicate in their written objection their intention to appear at the Settlement Hearing and to include in their written objection the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing.  Class Members do not need to appear at the hearing or take

9

any other action to indicate their approval.  Lead Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

17.    Any Class Member who does not object to the Settlement and/or the Plan of Allocation, and any Class Member who does not object to Lead Counsel's application for an award of attorneys' fees and expenses in the manner prescribed herein and in the Notice, shall be deemed to have waived such objection and his, her, or its right to object to the Settlement, this Order, the Judgment, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, shall be deemed a Class Member and shall forever be barred and foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, this Order, the Final Judgment, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, and from otherwise being heard concerning the Settlement, this Order, the Judgment, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses in this or any other proceeding.

18.    Pending final determination of whether the Settlement should be approved, Plaintiff, all Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, or prosecute any action that asserts Released Claims against any Released Person.

19.    Any Class Member may enter an appearance in the Litigation, at his/her/its own expense, individually or through counsel of his/her/its own choice.  If he/she/it does not enter an appearance, he/she/it will be represented by Lead Counsel.

20.    All proceedings in the Litigation are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither Plaintiff nor

any Class Member, either directly, representatively or in any other capacity shall commence or prosecute against any of the Released Persons any action or proceeding in any court or tribunal asserting any of the Released Claims.

21.     The passage of title and ownership of the Settlement Fund to the Escrow Agent in accordance with the terms and obligations of the Stipulation is approved.  No person who is not a Class Member or Plaintiff's Counsel shall have any right to any portion of, or in the distribution of, the Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

22.     The contents of the Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis*, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to this Order, the Stipulation, the Plan of Allocation, and/or further orders of the Court.

23.     All reasonable costs incurred in identifying Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation.

24.     If (a) the Settlement is terminated by AbbVie pursuant to ¶8.3 of the Stipulation; or (b) any specified condition to the Settlement set forth in the Stipulation is not satisfied and Lead Counsel or AbbVie elects to terminate the Settlement as provided in the Stipulation, then, in any such event, the terms of ¶¶8.6 and 8.7 of the Stipulation shall apply, and this Order shall be null and void, of no further force or effect, without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity, and each party shall be restored to his, her or its respective position in this Litigation as it existed prior to May ___, 2019.

12

DATED:

_____
Honorable Robert M. Dow, Jr.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 14-cv-9465 |
| | ) ) | Honorable Robert M. Dow, Jr. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RICHARD GONZALEZ and ABBVIE INC., | ) ) | |
| Defendants. | ) | |

## [PROPOSED] FINAL ORDER AND JUDGMENT

On the ____ day of _____, 2019, a hearing having been held before this Court

pursuant to the Order Preliminarily Approving Settlement and Providing for Notice dated_____,

2019 (the "Preliminary Approval Order"), to determine: (1) whether the terms and conditions of

the Stipulation of Settlement dated May ___, 2019 (the "Stipulation"), are fair, reasonable, and

adequate for the settlement of all claims asserted by the Plaintiff (Dawn Bradley) on behalf of the

Class (as defined in paragraph 2 herein) against the Defendants (AbbVie and Richard Gonzalez)

in the operative complaint now pending in this Court under the above caption (the "Litigation"),

including the release of the Released Persons[1], and should be approved; (2) whether judgment

should be entered dismissing the Litigation on the merits and with prejudice; (3) whether to

---

[1] The Released Persons are the Defendants and each Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

approve the Plan of Allocation as a fair and reasonable method to allocate the Settlement proceeds among the Members of the Class; and (4) whether and in what amount to award Plaintiff's Counsel[2] fees and expenses and Plaintiff's expenses.  The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing, substantially in the form approved by the Court, was mailed to all individuals and entities, reasonably identifiable, who purchased or otherwise acquired American Depository Shares ("ADS") or purchased call options or sold put options of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive (the "Class Period"), as shown by the records compiled by the Claims Administrator[3] in connection with its mailing of notice of the Settlement, at the respective addresses set forth in such records, and that a summary notice of the hearing, substantially in the form approved by the Court, was published pursuant to the Preliminary Approval Order as set forth in the Declaration of _____; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested by Plaintiff's Counsel.

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of this Litigation and all matters relating to the Settlement.

2.      On _____, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certified a Class, for settlement purposes only, defined as: All Persons who purchased or otherwise acquired American Depositary Shares or purchased call options or sold put options of Shire plc between September 29, 2014 and October 14, 2014, inclusive.  Excluded from the Class

---

[2]     Plaintiff's Counsel are Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP.

[3]     The Claims Administrator is Epiq.

are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those Persons who timely and validly excluded themselves therefrom, as identified in Exhibit 1 hereto.

3. Notice of the pendency of this Litigation as a class action and of the proposed Settlement was given to all members of the Class who could be identified with reasonable effort. The Court finds that the form and method of notifying the Class of the pendency of this Litigation as a class action and of the terms and conditions of the proposed Settlement: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of (i) the pendency of the Litigation; (ii) the effect of the proposed Settlement (including the releases to be provided thereunder); (iii) Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (v) the right to exclude themselves from the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*, as amended, and all other applicable laws and rules.

4.      Defendants have complied with the Class Action Fairness Act of 2005, 28 U.S.C. §1715.  Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. §1715(b), including notices to the Attorney General of the United States of America, and the Attorneys General of all States in which Members of the Class reside.  The notice contains the documents and information required by 28 U.S.C. §1715(b)(1)-(8).  The Court finds that Defendants have complied in all respects with the requirements of 28 U.S.C. §1715.

5.      Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the releases provided for therein, and the dismissal with prejudice of the claims asserted in the Litigation), and finds that the Settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the Class.  Subject to the terms and provisions of the Stipulation and the conditions therein being satisfied, the parties are directed to consummate the Settlement.

6.      All of the claims asserted in the Litigation are hereby dismissed in their entirety with prejudice.  The Plaintiff, Defendants and the members of the Class shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

7.      The terms of the Stipulation and of this Judgment shall be forever binding on Plaintiff, Defendants, and all other members of the Class (regardless of whether or not any individual member of the Class submits a Claim Form[4] or seeks or obtains a distribution from the

---

[4]   The Claim Form is the form for submitting a claim, that each member of the Class must complete and submit to share in a distribution of the Net Settlement Fund.  The Net Settlement Fund is the $16.75 million Settlement amount being paid by or on behalf of Defendants minus Plaintiff's Counsel's Court approved fees and expenses, Plaintiff's Court approved fees, the costs to provide notice to the Class and administer the claims made by members of the Class, and any necessary taxes or tax expenses.

4

Net Settlement Fund), as well as their respective successors and assigns. The Persons listed on Exhibit 1 hereto are excluded from the Class pursuant to their request and are not bound by the terms of the Stipulation or this Judgment.

8.     Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other member of the Class asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation are hereby released by Plaintiff and the members of the Class who have not excluded themselves from the Class (as set forth on Exhibit 1 hereto) against Defendants and their Related Parties (the "Released Claims").[5]

9.     Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement, are

---

[5] The Related Parties are Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such effective upon entry of this Judgement. Defendants together with the Related Parties are the "Released Persons."

released by Defendants against Plaintiff and the members of the Class (the "Released Defendants' Claims").

10.     Unknown Claims means (a) any and all Released Claims which Plaintiff, Plaintiff's Counsel, or any member of the Class does not know or suspect to exist in his, her, or its favor at the time of this release of the Defendants and their Related Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Plaintiff's Counsel, or any member of the Class, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Plaintiff's Counsel, or members or the Class.

11.     Upon entry of this Judgment Plaintiff, Defendants, and the Class shall be deemed to have, and by operation of this Judgment to have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Plaintiff, Defendants, and the Class shall expressly waive and each of the member of the Class shall be deemed to have, and by operation of this Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Plaintiff, Defendants, and the Class acknowledge that they may hereafter

6

discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Plaintiff, Defendants, and the Class shall expressly settle and release, and each member of the Class, upon entry of this Judgment, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiff, Defendants, and the Class acknowledge, and the members of the Class shall be deemed by operation of this Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

12. Upon the entry of this Judgement, Plaintiff and each and all of the members of the Class ("Class Releasors") are hereby permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against Defendants or any Released Persons in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any other claims arising out of, relating to or in connection with, the defense, settlement, or resolution of the Litigation or the Released Claims, regardless of whether such member of the Class executes and delivers a Claim Form.

7

13.     Upon entry of this Judgment, Plaintiff and each of the members of the Class shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. Plaintiff and each member of the Class are bound by this Judgment, including, without limitation, the release of claims as set forth in the Stipulation. The Released Claims are hereby compromised, settled, released, discharged, and dismissed as against the Released Persons on the merits and with prejudice by virtue of the proceedings herein and this Judgment.

14.     Upon entry of this Judgment, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiff, each and all of the members of the Class, and Plaintiff's Counsel from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Defendants' Claims.

15.     Pursuant to the PSLRA, upon entry of this Judgement, all claims by any individual or entity for contribution or indemnity arising out of the Litigation, however such claims are denominated, shall be barred against the Released Persons.

16.     The Released Persons and their respective counsel may refer to or file the Stipulation and/or this Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or otherwise to enforce the terms of the Settlement.

17.     The Court finds that AbbVie has satisfied its financial obligations under the Stipulation by paying or causing to be paid $16,750,000.00 to the Settlement Fund.

8

18. The Court finds and concludes that the Plaintiff, Plaintiff's Counsel, Defendants, and Defendants' counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and/or settlement of this Litigation.

19. Any Plan of Allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment. Separate orders shall be entered regarding approval of a plan of allocation and Plaintiff's Counsel's application for an award of attorneys' fees and expenses.

20. Any appeal or any challenge affecting the approval of: (a) the Plan of Allocation submitted by Plaintiff's Counsel; and/or (b) this Court's approval regarding any attorneys' fee and expense applications shall in no way disturb or affect the finality of the other provisions of this Judgment.

21. There is no just reason for delay in the entry of this Judgment as a final judgment in this Litigation and immediate entry by the Clerk of the Court is expressly directed.

DATED:

_____
Honorable Robert M. Dow, Jr.

EXHIBIT C-1

**Notice of Proposed Settlement of Class Action, Settlement Hearing and Right to Appear**

# If You Acquired Shire plc American Depository Shares (ADS) or Call Options or Sold Put Options between September 29, 2014 and October 14, 2014
## You May Be Entitled to Money from a Class Action Settlement

The Settlement will provide a gross amount of $16.75 million to pay claims from investors who purchased or otherwise acquired ADS or purchased call options or sold put options of Shire plc ("Shire") between September 29 and October 14, 2014, inclusive. The Net Settlement Fund (i.e., the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (i) any Taxes, (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court, and (iv) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth on pages XXX below.

The Settlement resolves a lawsuit over the plaintiff's allegation that AbbVie and its CEO ("Defendants") falsely told the market that they intended to proceed with a proposed transaction to acquire Shire through an inversion transaction (the "Combination") after the U.S. Treasury Department had issued a notice of tax changes impacting inversions, when in fact it was reconsidering and ultimately withdrew from the Combination.

The plaintiff agreed to the Settlement because the Class Members will receive a certain and more immediate recovery. The Plaintiff and her attorneys think the Settlement is fair and is what is best for all Class Members.

Plaintiff's damages expert estimates that the conduct at issue in the Action affected approximately 2,292,600 shares of Shire ADS and 2,288,900 Shire Call Options purchased, and 1,876,200 Shire Put Options sold/written, during the Class Period. Based on the total Settlement Amount, if all eligible Settlement Class Members elect to participate in the Settlement, the estimated average recovery would be approximately $ 5.63 per affected share of Shire ADS, $0.13 per affected Shire Call Option, and $1.89 per affected Shire Put Option, before the deduction of any Court-approved fees, expenses, and costs as described in this Notice.[1] Settlement Class Members should note, however, that the foregoing average recovery per share or option is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, which Shire Securities they purchased, when and at what prices they purchased/acquired or sold/wrote their Shire Securities, and the total number of valid Claim Forms submitted. Distributions to eligible Settlement Class Members will be made based on the Plan of Allocation set forth herein (see pages XXX below) or such other plan of allocation as may be approved by the Court.

The parties do not agree on the average amount of damages per share or option that would be recoverable if Lead Plaintiff were to prevail in the Action. Among other things, the Defendants do not

---

[1]    All options-related amounts here are per share or unit of the underlying security (i.e., 1/100 of a contract).

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

The Court has appointed the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP to represent the Class (Plaintiff's Counsel). Plaintiff's Counsel have been litigating this case since 2014 without any payment and have advanced all the funds to pay the necessary expenses in connection with the case. Plaintiff's Counsel will seek an award of attorneys' fees not to exceed 30% of the Settlement Fund plus reasonable expenses, which will include reasonable costs incurred by Lead Plaintiff Dawn Bradley directly related to her representation of the Class. Class Members are not personally liable for any such fees or expenses. If the Court approves Lead Counsel's fee and expense application, assuming claims are filed for all affected shares and options, the estimated average amount of fees and expenses would be approximately $1.94 per affected share of Shire ADS, $0.05 per affected Shire Call Option, and $0.65 per affected Shire Put Option.

Jennifer Sarnelli of Gardy & Notis, LLP, 126 E. 56th Street, 8th Floor, New York, NY 10024, 212.905.0509, jsarnelli@gardlaw.com, one the attorneys for the Class, is available to answer questions regarding the Settlement.

Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | By **Month 00, 2019**. This is the only way to get a payment |
| OBJECT | Write to the Court by **Month 00, 2019** about why you don't like the Settlement. |
| EXCLUDE YOURSELF | Ask to be excluded from the Settlement by **Month 00, 2019**. You will not be eligible to get a payment and will not be bound by the Release. |
| DO NOTHING | Get no payment. Give up your rights. |

These rights and options—and the deadlines to exercise them—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after objections and appeals, if any, are resolved. Please be patient.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

## 1. Why did I get this notice?

This Notice is being sent to you pursuant to an Order of the Court because you or someone in your family may have acquired Shire ADS or purchased call options or sold put options of Shire between September 29, 2014 and October 14, 2014, inclusive.

You got this notice because you have a right to know about the proposed Settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the Settlement.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United State District Court for the Northern District of Illinois (the "Court"), and the case is called *Rubinstein v. Gonzalez*, No. 14-cv-9465 (the "Lawsuit").  The judge presiding over this case is Judge Robert M. Dow Jr.  The person who brought the suit, Dawn Bradley, is called the Plaintiff, and the company and people she sued, AbbVie, Inc. and Richard Gonzalez, are called the Defendants.

If the Court approves the Settlement and the Settlement becomes effective: (a) the Lawsuit will be dismissed with prejudice, (b) all members of the Class will be deemed to have released the Released Claims (a full copy of the Released Claims is in question XXX), and (c) the Settlement Administrator approved by the Court will make payments pursuant to the Settlement.[2]

## 2. What is this lawsuit about?

The following summary does not constitute findings of the Court.  The Court has made no findings about the following matters and these descriptions are not opinions of the Court as to the merits of any of the claims or defenses raised by any of the parties.

The plaintiff alleges as follows: AbbVie entered into an agreement to acquire Shire in what is called an inversion transaction which would result in AbbVie becoming a foreign Company which would provide certain tax benefits.  However, on September 22, 2014, the US Treasury Department issued a notice of a tax rule change that would materially alter those benefits.  The Lawsuit claims that despite knowing that the Company would not proceed with the Combination, Defendants told investors on September 29, 2014 that he was "more energized than ever" and "more confident than ever" about the Combination, when in fact he knew the Company was reconsidering acquiring Shire.  On October 14, 2014, AbbVie announced it was reconsidering the Combination and ultimately withdrew from the Combination the next day.

---

[2] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated May X, 2019 (the "Settlement Stipulation"), which is available on the Settlement website at www.AbbVieSettlement.com.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

Plaintiff claimed that as a result of Gonzalez's statements investors believed that the Combination was moving forward and therefore acquired Shire securities based on this reassurance. On October 14, 2014, after the Company announced it was reconsidering the Combination, the Shire share price dropped dramatically causing harm to the Class. Defendants have denied, and continue to deny, all allegations of wrongdoing, fault, liability or damage.

Plaintiff's counsel reviewed thousands of documents, took numerous depositions and consulted with experts about the Lawsuit and both Defendants and Plaintiff presented arguments to the Court about the merits of the claims. The Court decided not to dismiss the Lawsuit in its entirety, but did not make any final decisions about the merits of the case.

### 3. Why is this a class action?

In a class action, one or more people (in this case, Plaintiff Dawn Bradley), sue on behalf of people who have similar claims. All these people are a Class or Class Members.

### 4. Why is there a settlement?

Although the Plaintiff and her counsel think they could have won at trial, the Defendants think the Plaintiff would not have won anything at a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, the parties avoid the cost of a trial, and the Class Members will receive money. The Plaintiff and her attorneys think the Settlement is fair and is what is best for all Class Members.

Plaintiff's counsel conducted an investigation and pursued extensive discovery relating to the claims and the underlying events and transactions alleged in the Lawsuit. Plaintiff's counsel have analyzed the evidence obtained during their investigation, and the extensive discovery obtained in the Lawsuit, and have also researched the law with respect to the claims asserted in the Lawsuit and the potential defenses. Plaintiff's counsel consulted with an expert regarding the potential damages to the Class, and considered the views of the expert retained by Defendants. Plaintiff's counsel also considered the Court's partial denial of Defendants' motion to dismiss the Lawsuit.

In negotiating and evaluating the terms of the Settlement, Plaintiff and Plaintiff's Counsel considered the significant legal and factual defenses to the Plaintiff's claims and the expense, length, and risk of pursuing their claims through trial and appeals. While Plaintiff believes that the Defendants recklessly omitted material information from the market about the fact that it was reconsidering the Combination and falsely reassured the market that the Combination would proceed, Defendants have argued that they acted appropriately and continue to deny all allegations of wrongdoing, fault, liability or damage. In light of the risks of continued litigation, the amount of the Settlement and the immediacy of recovery to the Class, Plaintiff and Plaintiff's Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class. Plaintiff and Plaintiff's Counsel believe that the Settlement provides an extraordinary benefit to the Class, namely $16.75 million in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Lawsuit would produce a smaller, or no recovery after trial and appeals, possibly years in the future.

The Court has not made any final decisions about Plaintiff's claims or Defendants' defenses.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

**5.  How do I know if I am part of the Settlement?**

If you are a member of the Class, you are subject to the Settlement.  The Class proposed to the Court consists of:

> All Persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options (collectively, "Securities") of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive.  Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, and persons that exclude themselves from the Class.

Please note: receipt of this notice does not mean that you are a Class Member or that you will be entitled to receive money from the Settlement.  If you wish to be eligible to get money from the Settlement, you are required to submit the claim form attached hereto and make sure it is postmarked no later than **Month 00, 2019**.

**6.  What does the settlement provide?**

In consideration for the full and final settlement and dismissal with prejudice of the Lawsuit, and the release by the Class Members of any and all Released Claims, the Defendants have agreed to pay $16.75 million cash into an interest-bearing escrow account for the benefit of the Class to be divided, after payment of fees and expenses, among all Class Members who purchased or otherwise acquired comprised of all persons who purchased or otherwise acquired ADS or purchased call options or sold put options of Shire between September 29 and October 14, 2014 and who send in a valid claim form.

**7.  How much will my payment be?**

Your share of the fund will depend on several things, including, among other things, how many Class Members timely send in valid Claim Forms; the amount of Shire's ADS or call options you purchased or otherwise acquired, or the amount of put options you sold, during the Class Period; the prices and dates of those purchases or acquisitions; and the prices and dates of any sales you made.  The Plan of Allocation below will provide more detail on your potential recovery.

As discussed above, the Settlement provides $16.75 million in cash for the benefit of the Class.  The Settlement Amount and any interest it earns constitute the "Settlement Fund."  The Settlement Fund, after deduction of Court-approved attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund."  If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – i.e., members of the Class who timely submit valid Claim Forms that are accepted for payment by the Court – in accordance with this proposed Plan of Allocation ("Plan of Allocation" or

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

5

"Plan") or such other plan of allocation as the Court may approve.  The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Class.  Any order modifying the Plan of Allocation will be posted on the settlement website, www.AbbVieSettlement.com.

The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The Plan of Allocation is not a formal damage analysis, and the calculations made in accordance with the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations in accordance with the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement, because the Settlement Fund is less than the total losses alleged to be suffered by Class Members.  The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making pro rata allocations of the Net Settlement Fund.  An Authorized Claimant's Recognized Claim will be the amount used to calculate the Authorized Claimant's pro rata share of the Net Settlement Fund.  The pro rata share will be the Authorized Claimant's Recognized Claim divided by the total of the Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

The Plan of Allocation was developed in consultation with Plaintiff's damages expert.  In developing the Plan of Allocation, the damages expert calculated the estimated amount of alleged artificial inflation (or deflation) in the per-share prices of Shire's ADS and options that was allegedly caused by Defendants' alleged materially false and misleading statements and omissions, adjusting those price changes for factors that were attributable to market or industry forces, and for non-fraud related information.

In order to have recoverable damages under the federal securities laws, disclosure of the alleged misrepresentation and/or omission must be the cause of the decline in the price of the security.  In this Action Plaintiff alleges that corrective information allegedly impacting the prices of Shire's securities (referred to as a "corrective disclosure") was released to the market on October 14, 2014 which impacted the market price of Shire's securities in a statistically significant manner and removed the alleged artificial inflation (or deflation for put options).  Accordingly, in order to have a compensable loss in this Settlement, Shire's ADS or call options must have been purchased or otherwise acquired during the Class Period and held through October 14, 2014 and, with respect to put options, those options must have been sold (written) during the Class Period and not closed through October 14, 2014.

THE PLAN OF ALLOCATION

In this case, Plaintiff alleged that Defendants made false statements and omitted material facts during the period between September 29, 2014, through and including October 14, 2014, which had the effect of artificially inflating the prices of Shire ADSs and Shire Call Options and artificially deflating the price of Shire Put Options ("Shire Securities").  Plaintiff alleged that artificial inflation was removed from Shire ADSs and Call Options and artificial deflation was removed from Shire Put Options on October 15, 2014, in reaction to information disclosed on October 14, 2014 (after market hours).

In order to have a "Recognized Loss Amount" under the Plan with respect to Shire ADSs and Call Options, the security must have been purchased during the Class Period and held through the alleged disclosure that resulted in a statistically significant change in market price, and with respect to Put Options, those

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

6

options must have been sold (written) during the Class Period and not closed through the alleged disclosure that resulted in a statistically significant change in market price.

Shire ADSs held as of the close of trading on September 26, 2014 and sold during the Class Period were sold at artificially inflated prices but purchased at prices that were not artificially inflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such ADS.

Shire Call Options held (i.e. open positions) as of the close of trading on September 26, 2014 and sold (closed) during the Class Period were sold at artificially inflated prices but purchased at prices that were not artificially inflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such Shire Call Option.

Shire Put Options sold (written) prior to the close of trading on September 26, 2014 and closed (through purchase or exercise) during the Class Period were closed at artificially deflated prices but sold at prices that were not artificially deflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such Shire Put Option.

<div align="center">CALCULATION OF RECOGNIZED LOSS AND RECOGNIZED GAIN AMOUNTS</div>

With respect to shares of Shire ADSs, Call Options, and Put Options, a Recognized Loss Amount will be calculated by the Claims Administrator as set forth below for each purchase or other acquisition of Shire ADSs and Call Option contracts and each sale of Shire Put Option contracts from September 29, 2014, through and including October 14, 2014, that is listed in the Claim Form and for which adequate documentation is provided, and a Recognized Gain Amount will be calculated by the Claims Administrator as set forth below for each sale of Shire ADSs and Call Option contracts and each purchase of Shire Put Option contracts from September 29, 2014, through and including October 14, 2014, that is listed in the Claim Form and for which adequate documentation is provided.

SHIRE ADS CALCULATIONS

For each Shire ADS purchased or otherwise acquired from September 29, 2014 through and including October 14, 2014, the Recognized Loss Amount for each such ADS shall be $50.69, the dollar artificial inflation applicable to each such ADS on the date of purchase/acquisition.

For each Shire ADS sold from September 29, 2014 through and including October 14, 2014 the Recognized Gain Amount for each such ADS shall be $50.69, the dollar artificial inflation applicable to each such ADS on the date of sale.

SHIRE CALL AND PUT OPTION CALCULATIONS

Exchange-traded options are traded in units called "contracts" that entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the underlying security, which in this case are Shire ADSs. Throughout this Plan, all price quotations are per share of the underlying security (i.e., 1/100 of a contract).

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

7

Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (i.e., 1/100 of a contract) for each series of Shire Call Options and the dollar artificial deflation per share (i.e., 1/100 of a contract) for each series of Shire Put Options has been calculated by Lead Plaintiff's damages expert.

There are two tables included at the end of this Notice set forth the eligible option series. Table 1 sets forth the dollar amount of artificial inflation per share in Shire Call Options during the Class Period. Table 2 below sets forth the dollar amount of artificial deflation per share in Shire Put Options during the Class Period. Tables 1 and 2 list only series of exchange traded Shire Options that expired on or after October 15, 2014 – the date of the alleged corrective disclosure. Transactions in Shire Options that expired before October 15, 2014 have a Recognized Loss Amount of zero and a Recognized Gain Amount of zero under the Plan of Allocation. Any Shire Option series not listed on Table 1 or Table 2 has a Recognized Loss Amount of zero and a Recognized Gain Amount of zero under the Plan of Allocation.

For each Shire Call Option purchased or otherwise acquired from September 29, 2014 through and including October 14, 2014, the Recognized Loss Amount for each such share shall be the dollar amount of artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in Table 1 below, multiplied by 0.4.

For each Shire Call Option held as of the close of trading on September 26, 2014 and closed from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial inflation applicable to each such share as set forth in Table 1 below, multiplied by 0.4.

For each Shire Put Option sold (written) from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial deflation applicable to each such share as set forth in Table 2 below, multiplied by 0.4.

For each Shire Put Option sold as of the close of trading on September 26, 2014 and closed (through purchase or exercise) from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial deflation applicable to each such share as set forth in Table 1 below, multiplied by 0.4.

ADDITIONAL PROVISIONS

FIFO Matching: If a Claimant has more than one purchase/acquisition or sale of Shire ADSs, Call Options, or Put Options during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis. For Shire ADSs and Call Options, Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. For Shire Put Options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period and then against Put Options sold (written) during the Class Period in chronological order.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

Purchase/Acquisition/Sale Dates and Prices: Purchases or acquisitions and sales of Shire ADSs, Call Options, or Put Options shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. All purchase or acquisition and sale prices shall exclude any fees, taxes, commissions, or other costs. The receipt or grant by gift, inheritance or operation of law of Shire ADSs, Call Options, or Put Options during the Class Period shall not be deemed a purchase, acquisition, or sale for the calculation of a Claimant's Recognized Loss Amount pursuant to the calculations set forth above, and such receipt or grant shall not be deemed an assignment of any claim relating to the purchase/acquisition or sale of such Shire Securities, unless (i) the donor or decedent purchased or otherwise acquired such securities during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Shire Securities.

Short Sales: With respect to Shire ADSs, the date of covering a short sale is deemed to be the date of purchase or acquisition of the stock. The date of a short sale is deemed to be the date of sale of the respective Shire ADSs. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on short sales, including purchases covering short sales, during the Class Period is zero. In the event that a Claimant has an opening short position in Shire ADSs, the earliest Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

If a Settlement Class Member has "written" Shire Call Options, thereby having a short position in the Call Options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the Call Option. The date on which the Call Option was written is deemed to be the date of sale of the Call Option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "written" Call Options and any purchased Call Options used to cover the position is zero. In the event that a Claimant has an opening written position in Shire Call Options, the earliest Class Period purchases or acquisitions of like Call Options shall be matched against such opening written position, and not be entitled to a recovery, until that written position is fully covered.

If a Settlement Class Member has purchased or acquired Shire Put Options, thereby having a long position in the Put Options, the date of purchase or acquisition is deemed to be the date of purchase or acquisition of the Put Option. The date on which the Put Option was sold, exercised, or expired is deemed to be the date of sale of the Put Option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on such purchased or acquired Put Options is zero. In the event that a Claimant has an opening long position in Shire Put Options, the earliest Class Period sales or dispositions of like Put Options shall be matched against such opening position, and not be entitled to a recovery, until that long position is fully covered.

Eligible Securities: Shire ADSs, Call Options, and Put Options are the only securities eligible for recovery under the Plan of Allocation. With respect to Shire ADSs purchased or sold through the exercise of an option, the purchase/sale date of the Shire ADSs is the exercise date of the option and the purchase/sale price is the exercise price of the option.

Calculation and Distribution of Recognized Claims: The sum of a Claimant's Recognized Loss Amounts minus the sum of a Claimant's Recognized Gain Amounts will be the Claimant's "Recognized Claim." To

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

9

the extent that the calculation of a Claimant's Recognized Claim results in a negative number, the Claimant's Recognized Claim will be zero.

An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's pro rata share of the Net Settlement Fund. If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its pro rata share of the Net Settlement Fund. The pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment, the excess amount in the Net Settlement Fund shall be distributed pro rata to all Authorized Claimants entitled to receive payment.

The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

Class Members who do not submit valid Claim Forms will not share in the distribution of the Net Settlement Fund, however they will nevertheless be bound by the Settlement and Judgment of the Court dismissing this Action, unless they have timely and validly sought exclusion.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund at least four months after the initial distribution of such funds shall be re-distributed on a pro rata basis to Class Members who have cashed their initial distributions in an equitable and economical manner, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer economical to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund, shall be contributed to Public Justice, a nonprofit legal advocacy organization.

Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Shire, their counsel, Lead Plaintiff, Lead Counsel, their damages expert, the Claims Administrator, or any other agent designated by Lead Counsel, arising from determinations or distributions to Claimants made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court. Shire and their counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, calculation, or payment of any Claim or any actions taken (or not taken) by the Claims Administrator, the

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

10

payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

## 8.  How can I get a payment?

To qualify for payment, you must submit in the claim form attached to this Notice or complete a claim form on the Settlement website at www.AbbVieSettlement.com.  Read the instructions carefully, fill out the form, sign it, and mail it, email it or submit online no later than **Month 00, 2019**.

## 9.  When would I get my payment?

The Court will hold a hearing at **0:00 __.m. on Month 00, 2019**, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606, to decide whether to approve the Settlement.  If the Court approves the Settlement after that, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a claim form will be informed of the progress of the Settlement on the Settlement website.  Please be patient.

## 10.  How Does the Settlement Affect My Rights?

If the Settlement is approved, you can't sue or be part of any other lawsuit against Defendants about the legal issues in this case, regardless of whether or not you submit a claim form or get paid unless you exclude yourself as explained in question X.  It also means that all of the Court's orders will apply to you and legally bind you.

As a result of the Settlement you can no longer sue any of the Defendants for any of the claims made in the Lawsuit.  Giving up these claims is called a release.  The full release language agreed to in connection with the Lawsuit is as follows:

The Released Claims are any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADS or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation.  "Released Claims" does not include any claims to enforce the Settlement.  "Released Claims" includes "Unknown Claims" as defined in ¶1.31 hereof.

"Unknown Claims" means (a) any and all Released Claims which Plaintiff, Plaintiff's Counsel, or any Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class;

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

11

and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Plaintiff's Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Plaintiff's Counsel, or Class Members.  With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

## 12. Do I have a lawyer in this case?

The Court appointed the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP Co-Lead Counsel to represent you and other Class Members.  These lawyers are called Plaintiff's Counsel. You will not be charged any out of pocket money for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13. How will the lawyers be paid?

Plaintiff's Counsel will ask the Court to approve payment of up to 30% of the Settlement amount plus out-of-pocket expenses for attorneys' fees and expenses not to exceed $750,000.  Plaintiff will also request reimbursement of time and expenses of $10,000 for the work she performed on behalf of the Class.  Plaintiff's counsel have been working on this case since 2014, without any payment.  Plaintiff's counsel successfully opposed Defendants' motion to dismiss the Lawsuit, engaged in several discovery

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

12

motions and conferences throughout 2017 and 2018, including four motions to compel, and two motions for protective order, reviewed thousands of documents from Defendants and third parties, took 11 depositions, and consulted with an expert about the Lawsuit. The Court did not make any final decisions about the merits of the case. The fees would pay Plaintiff's Counsel for investigating the facts, litigating the case, and negotiating the Settlement that achieves a $16.75 million recovery. The expenses are to reimburse Plaintiff's Counsel for out of pocket expenses incurred in litigating the Lawsuit. The Court may award less than these amounts. The amount of the fees and expenses and Plaintiff's fee will be deducted from the Settlement Fund. The costs to administer the Settlement will also be deducted from the Settlement Fund.

| 14. How do I tell the Court that I don't like the Settlement? |
|---|

You can object to the Settlement if you don't like any part of it, including the request by Plaintiff's Counsel for fees and reimbursement of expenses as described above. You can give reasons why you think the Court should not approve the Settlement or the request for fees/expenses. The Court will consider your views. To object, you must send a signed letter saying that you wish to comment on or object to the proposed Settlement, Plan of Allocation, and/or fee and expense application in the AbbVie Securities Settlement. Include your name, mailing address, daytime telephone number, e-mail address, and your signature, state the number of shares of Shire ADS or options owned as of the beginning of trading on September 29, 2014 (the first day of the Class Period), identify the date(s), price(s), and number(s) of shares of Shire ADS or options you purchased, acquired, and sold during the Class Period and state your comments or the reasons why you object to the proposed Settlement, Plan of Allocation and/or fee and expense application, including any legal support for such objection. You must also include copies of documents demonstrating such purchase(s), acquisition(s), and/or sale(s). Your comments or objection must be filed with the Court and mailed or delivered to each of the following addresses such that it is received no later than **Month 00, 2019:**

| | |
|---|---|
| Jennifer Sarnelli | Joshua Z. Rabinovitz |
| Gardy & Notis, LLP | Kirkland & Ellis, LLP |
| Tower 56 | 300 North LaSalle |
| 126 East 56th Street, 8th Floor | Chicago, IL 60654 |
| New York, NY 10022 | |

| 15. How do I exclude myself from the Class? |
|---|

To exclude yourself from the Class and the Settlement, you must send a letter by First-Class Mail stating that you "request exclusion from the Class in the AbbVie Securities Settlement." You cannot exclude yourself by telephone or e-mail. Your letter must include your name, address, telephone number, and your signature. In addition, you must also provide your purchases, acquisitions, and sales of Shire ADS or options during the Class Period, including the dates, the number of shares of Shire ADS or options purchased, acquired, or sold and price paid or received for each such purchase, acquisition or sale. You must submit your exclusion request so that it is postmarked no later than **Month 00, 2019** to:

Epiq

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

P.O. Box XXXX
Portland, OR 97208-XXXX

Your exclusion request must comply with these requirements in order to be valid and effective. Plaintiff's Counsel or the Claims Administrator may, at their discretion, request from any person or entity requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions, and/or sales of Shire ADS or options during the Class Period.

If you ask to be excluded, you will not receive any payment from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Persons about the Released Claims in the future.

Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be Members of the Class in an amount that exceeds an amount agreed to by Plaintiff and Defendants.

**16. What is the difference between objecting and excluding yourself?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class.

Excluding yourself is telling the Court that you do not want to be paid and do not want to release any claims you think you may have against Defendants and their Related Parties. If you exclude yourself, you cannot object to the Settlement because it does not affect you.

**17. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Settlement Hearing at **0:00 __.m. on Month 00, 2019**, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate and whether to approve the plan of allocation. The Court will also consider how much to pay to Plaintiff's Counsel. If there are objections, the Court will consider them. After the hearing, the Court will make decisions whether to approve these matters relating to the Settlement. We do not know how long these decisions will take.

**18. Do I have to come to the hearing?**

No. Plaintiff's Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection with the proper documentation and in the manner described above on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

Unless the Court orders otherwise, any Class Member who does not object in the manner described above and provide the proper proof of membership in the Class will be deemed to have waived any

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

14

objection and will be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, Plaintiff's Counsel's request for an award of attorneys' fees and reimbursement of expenses, or Plaintiff's request for an incentive award. Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| 19. What happens if I do nothing at all? |
| --- |

If you do nothing, you will get no money from the Settlement. If the Settlement is approved you won't be able to start a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

| 20. Are there more details about the Settlement? |
| --- |

This notice summarizes the Settlement. More details are in the Settlement Stipulation. For more detailed information about the matters involved in the Lawsuit, you are referred to the papers on file in the Lawsuit, including the Settlement Stipulation, which may be inspected during regular business hours of each business day at the XXXX. Copies of the Settlement Stipulation and any related orders entered by the Court will be posted on the settlement website at www.AbbVieSettlement.com. All questions about this Notice or the Claim Form should be directed to the Settlement Administrator by visiting the website at www.AbbVieSettlement.com, or by emailing info@AbbVieSettlement.com, or calling 1-XXX-XXX-XXXX.

| 21. How do I get more information? |
| --- |

You can call the Settlement Administrator at 1-XXX-XXX-XXXX toll free; write to AbbVie Securities Litigation, c/o CLAIMS ADMIN ADDREDSS, email the Claims Administrator at info@AbbVieSettlement.com, contact Jennifer Sarnelli of Gardy & Notis, LLP (one of counsel for Plaintiff) at jsarnelli@gardylaw.com or visit the website www.AbbVieSettlement.com, where you will find answers to common questions about the Settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible to get money from the Settlement. PLEASE DO NOT CALL OR WRITE THE COURT.

| NOTICE TO PERSONS OR ENTITIES HOLDING RECORD OWNERSHIP ON BEHALF OF OTHERS. |
| --- |

If you held Shire ADS or options during the Class Period for the beneficial interest of a person or entity other than yourself, within seven (7) business days of receipt of this Notice, you must either (a) forward the Notice and claim form to all such beneficial owners; or (b) provide a list of the names and addresses of all such beneficial owners to AbbVie Securities Litigation, c/o Name, Address, or by email to info@AbbVieSettlement.com. If you choose the second option, the Settlement Administrator will send copies of the Notice and the claim form to the beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Settlement Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice and the claim form may also be obtained from the

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

settlement website maintained by the Settlement Administrator, www.AbbVieSettlement.com, by calling the Settlement Administrator at 1-XXX-XXX-XXXX.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

16

**Table 1. Shire Call Option Artificial Inflation per Share by Option Series**

| Expiration Date | Strike Price | Artificial Inflation per Share | Expiration Date | Strike Price | Artificial Inflation per Share | Expiration Date | Strike Price | Artificial Inflation per Share |
|---|---|---|---|---|---|---|---|---|
| 10/18/2014 | $170.00 | $62.11 | 11/14/2014 | $232.50 | $18.73 | 1/17/2015 | $260.00 | $6.20 |
| 10/18/2014 | $175.00 | $59.43 | 11/14/2014 | $242.50 | $11.44 | 1/17/2015 | $265.00 | $5.76 |
| 10/18/2014 | $225.00 | $19.32 | 11/14/2014 | $260.00 | $1.85 | 1/17/2015 | $270.00 | $2.65 |
| 10/18/2014 | $235.00 | $10.38 | 11/14/2014 | $265.00 | $0.10 | 1/17/2015 | $275.00 | $2.09 |
| 10/18/2014 | $240.00 | $7.12 | 11/14/2014 | $270.00 | $1.36 | 1/17/2015 | $280.00 | $0.32 |
| 10/18/2014 | $245.00 | $3.77 | 11/22/2014 | $205.00 | $36.84 | 1/17/2015 | $290.00 | $0.51 |
| 10/18/2014 | $250.00 | $1.80 | 11/22/2014 | $235.00 | $17.88 | 1/17/2015 | $295.00 | $0.10 |
| 10/18/2014 | $252.50 | $1.63 | 11/22/2014 | $250.00 | $7.51 | 1/17/2015 | $300.00 | $0.24 |
| 10/18/2014 | $255.00 | $0.10 | 11/22/2014 | $255.00 | $5.49 | 4/17/2015 | $205.00 | $37.47 |
| 10/18/2014 | $257.50 | $0.02 | 11/22/2014 | $260.00 | $3.35 | 4/17/2015 | $245.00 | $16.33 |
| 10/24/2014 | $227.50 | $17.98 | 11/22/2014 | $265.00 | $1.41 | 4/17/2015 | $255.00 | $11.01 |
| 10/24/2014 | $247.50 | $3.89 | 11/22/2014 | $270.00 | $1.19 | 4/17/2015 | $260.00 | $8.46 |
| 10/24/2014 | $255.00 | $0.34 | 11/22/2014 | $275.00 | $0.61 | 4/17/2015 | $265.00 | $6.12 |
| 10/31/2014 | $225.00 | $20.82 | 11/28/2014 | $255.00 | $5.88 | 4/17/2015 | $275.00 | $2.31 |
| 10/31/2014 | $230.00 | $16.67 | 1/17/2015 | $180.00 | $49.76 | 4/17/2015 | $280.00 | $0.83 |
| 10/31/2014 | $232.50 | $14.82 | 1/17/2015 | $225.00 | $25.66 | 4/17/2015 | $285.00 | $0.05 |
| 10/31/2014 | $235.00 | $13.32 | 1/17/2015 | $230.00 | $21.92 | 1/15/2016 | $225.00 | $26.34 |
| 10/31/2014 | $240.00 | $9.31 | 1/17/2015 | $235.00 | $19.39 | 1/15/2016 | $230.00 | $24.35 |
| 10/31/2014 | $260.00 | $0.19 | 1/17/2015 | $240.00 | $16.57 | 1/15/2016 | $235.00 | $22.06 |
| 11/7/2014 | $230.00 | $17.84 | 1/17/2015 | $245.00 | $14.07 | 1/20/2017 | $290.00 | $5.15 |
| 11/7/2014 | $257.50 | $2.14 | 1/17/2015 | $250.00 | $11.08 | | | |
| 11/14/2014 | $225.00 | $22.55 | 1/17/2015 | $255.00 | $8.77 | | | |

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

17

**Table 2. Shire Put Option Artificial Deflation per Share by Option Series**

| Expiration Date | Strike Price | Artificial Deflation per Share | Expiration Date | Strike Price | Artificial Deflation per Share | Expiration Date | Strike Price | Artificial Deflation per Share |
|---|---|---|---|---|---|---|---|---|
| 10/18/2014 | $140.00 | $0.51 | 10/24/2014 | $267.50 | $72.41 | 11/22/2014 | $265.00 | $69.79 |
| 10/18/2014 | $145.00 | $1.07 | 10/24/2014 | $270.00 | $72.41 | 11/22/2014 | $270.00 | $70.95 |
| 10/18/2014 | $150.00 | $1.97 | 10/31/2014 | $220.00 | $46.90 | 11/22/2014 | $275.00 | $72.17 |
| 10/18/2014 | $155.00 | $2.89 | 10/31/2014 | $225.00 | $51.08 | 11/22/2014 | $280.00 | $72.46 |
| 10/18/2014 | $160.00 | $4.74 | 10/31/2014 | $237.50 | $59.82 | 11/22/2014 | $285.00 | $72.46 |
| 10/18/2014 | $165.00 | $6.39 | 10/31/2014 | $240.00 | $61.33 | 11/28/2014 | $230.00 | $51.08 |
| 10/18/2014 | $170.00 | $8.99 | 10/31/2014 | $247.50 | $65.75 | 1/17/2015 | $90.00 | $2.31 |
| 10/18/2014 | $180.00 | $15.45 | 10/31/2014 | $250.00 | $66.97 | 1/17/2015 | $100.00 | $1.07 |
| 10/18/2014 | $185.00 | $19.15 | 10/31/2014 | $262.50 | $71.15 | 1/17/2015 | $130.00 | $2.16 |
| 10/18/2014 | $190.00 | $23.38 | 10/31/2014 | $270.00 | $72.26 | 1/17/2015 | $140.00 | $5.22 |
| 10/18/2014 | $195.00 | $27.19 | 10/31/2014 | $275.00 | $72.22 | 1/17/2015 | $150.00 | $7.82 |
| 10/18/2014 | $200.00 | $31.56 | 11/7/2014 | $227.50 | $51.95 | 1/17/2015 | $180.00 | $20.80 |
| 10/18/2014 | $205.00 | $35.74 | 11/14/2014 | $240.00 | $58.85 | 1/17/2015 | $185.00 | $23.59 |
| 10/18/2014 | $210.00 | $39.36 | 11/14/2014 | $265.00 | $70.42 | 1/17/2015 | $200.00 | $31.25 |
| 10/18/2014 | $215.00 | $44.08 | 11/14/2014 | $270.00 | $71.34 | 1/17/2015 | $205.00 | $34.26 |
| 10/18/2014 | $220.00 | $48.89 | 11/14/2014 | $275.00 | $72.12 | 1/17/2015 | $210.00 | $37.47 |
| 10/18/2014 | $222.50 | $49.59 | 11/22/2014 | $135.00 | $2.04 | 1/17/2015 | $215.00 | $40.87 |
| 10/18/2014 | $225.00 | $52.97 | 11/22/2014 | $140.00 | $2.14 | 1/17/2015 | $220.00 | $44.56 |
| 10/18/2014 | $230.00 | $58.12 | 11/22/2014 | $145.00 | $3.52 | 1/17/2015 | $225.00 | $46.65 |
| 10/18/2014 | $232.50 | $59.41 | 11/22/2014 | $150.00 | $4.30 | 1/17/2015 | $240.00 | $55.55 |
| 10/18/2014 | $235.00 | $61.60 | 11/22/2014 | $155.00 | $6.12 | 1/17/2015 | $245.00 | $58.07 |
| 10/18/2014 | $237.50 | $63.44 | 11/22/2014 | $180.00 | $19.34 | 1/17/2015 | $255.00 | $63.47 |
| 10/18/2014 | $240.00 | $65.70 | 11/22/2014 | $185.00 | $22.01 | 1/17/2015 | $270.00 | $69.30 |
| 10/18/2014 | $242.50 | $67.74 | 11/22/2014 | $190.00 | $25.17 | 4/17/2015 | $170.00 | $18.22 |
| 10/18/2014 | $245.00 | $68.79 | 11/22/2014 | $195.00 | $28.33 | 4/17/2015 | $180.00 | $23.04 |
| 10/18/2014 | $247.50 | $70.27 | 11/22/2014 | $200.00 | $31.27 | 4/17/2015 | $190.00 | $27.85 |
| 10/18/2014 | $250.00 | $70.71 | 11/22/2014 | $205.00 | $34.36 | 4/17/2015 | $195.00 | $30.32 |
| 10/18/2014 | $252.50 | $71.15 | 11/22/2014 | $210.00 | $38.10 | 4/17/2015 | $200.00 | $32.66 |
| 10/18/2014 | $255.00 | $72.70 | 11/22/2014 | $215.00 | $41.45 | 4/17/2015 | $210.00 | $37.86 |
| 10/18/2014 | $257.50 | $72.60 | 11/22/2014 | $220.00 | $45.10 | 4/17/2015 | $220.00 | $43.25 |
| 10/18/2014 | $260.00 | $72.75 | 11/22/2014 | $225.00 | $48.31 | 4/17/2015 | $225.00 | $45.88 |
| 10/18/2014 | $262.50 | $72.51 | 11/22/2014 | $230.00 | $51.17 | 4/17/2015 | $240.00 | $54.14 |
| 10/18/2014 | $265.00 | $72.90 | 11/22/2014 | $240.00 | $57.54 | 4/17/2015 | $260.00 | $63.71 |
| 10/24/2014 | $237.50 | $60.94 | 11/22/2014 | $245.00 | $60.70 | 4/17/2015 | $265.00 | $65.80 |
| 10/24/2014 | $245.00 | $66.14 | 11/22/2014 | $250.00 | $62.88 | 1/15/2016 | $265.00 | $62.45 |
| 10/24/2014 | $247.50 | $67.55 | 11/22/2014 | $255.00 | $65.51 | | | |
| 10/24/2014 | $260.00 | $71.97 | 11/22/2014 | $260.00 | $67.89 | | | |

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

18

EXHIBIT C-2

**AbbVie Securities Litigation**
**Settlement Administrator**
**c/o Epiq**
**P.O. Box _____**
**Portland, OR 97208-____**
**www.AbbVieSettlement.com**

# CLAIM FORM

To be potentially eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this claim form. **This claim form must be postmarked no later than ____ __, 2019.**

Failure to submit your claim form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

**Do not mail or deliver your claim form to the Court, the parties to the Action, or their counsel. Submit your claim form only to the Settlement Administrator at the address set forth above.**
=

**TABLE OF CONTENTS**                                                                                    **PAGE #**
**GENERAL INSTRUCTIONS**.................................................................................................................._
**PART I – CLAIMANT IDENTIFICATION**..................................................................................._
**PART II - TRANSACTIONS IN SHIRE ADSs**…………………………………....................................._
**PART III - TRANSACTIONS IN SHIRE CALL OPTIONS**…………………………......................._
**PART IV - TRANSACTIONS IN SHIRE PUT OPTIONS**………………………………....................
**PART V - SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGEMENTS**......................_
**PART VI – RELEASE** ..................................................................................................................._

## GENERAL INSTRUCTIONS

To recover as a Class Member based on your claims in the Action entitled *Rubenstein v. Gonzalez,* No. 14-cv-9465 (the "Action"),[1] you must complete and, on page _ hereof, sign this claim form. If you fail to file a properly addressed (as set forth below) claim form, your claim may be rejected and you may be precluded from any recovery from the Net Settlement Fund created in connection with the proposed Settlement. Submission of this claim form, however, does not assure that you will share in the proceeds of the Settlement of the Lawsuit. YOU MUST MAIL YOUR COMPLETED AND SIGNED CLAIM FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, **ON OR BEFORE _____ __, 2019**, ADDRESSED AS FOLLOWS:

AbbVie Securities Settlement
Settlement Administrator
c/o Epiq
P.O. Box _____
Portland, OR 97208-____
www.AbbVieSettlement.com

If you are NOT a Class Member, as defined in the Notice of Proposed Settlement of Class Action, Settlement Hearing and Right to Appear ("Notice"), DO NOT submit a claim form. If you are a Class Member and you did not timely request exclusion, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM.

---

[1] This claim form incorporates by reference the definitions in the Stipulation of Settlement dated _____, 2019 ("Stipulation"), which can be obtained at www.AbbVieSettlement.com.

EXHIBIT C-2

**CLAIMANT IDENTIFICATION**

If you acquired Shire American Depository Shares ("ADS") or purchased call options or sold put options of Shire (collectively "Shire Securities") between September 29 and October 14, 2014, inclusive. and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, if the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of Shire Securities, which forms the basis of this claim. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S) OR ACQUIRER(S) OF SHIRE SECURITIES UPON WHICH THIS CLAIM IS BASED.

All joint purchasers or acquirers must sign this claim. Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

**CLAIM FORM**

Use Part II of this form entitled "Schedule of Transactions" to supply all required details of your transaction(s). If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

On the schedules, provide all of the requested information with respect to all of your purchases, acquisitions, and sales of Shire Securities which took place between September 29 and October 14, 2014, inclusive, whether such transactions resulted in a profit or a loss. You must also provide all of the requested information with respect to **all** of the Shire Securities you held at the close of trading on October 14, 2014. Failure to report all such transactions may result in the rejection of your claim.

List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

The date of covering a "short sale" is deemed to be the date of purchase of the Shire Security. The date of a "short sale" is deemed to be the date of sale of the Shire Security.

**COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN SHIRE SECURITIES SHOULD BE ATTACHED TO YOUR CLAIM. FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN REJECTION OF YOUR CLAIM.**

NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. All claimants MUST submit a manually signed paper claim form whether or not they also submit electronic copies. If you wish to file your claim electronically, you must contact the Settlement Administrator at info@AbbVieSettlement.com to obtain the required file layout. No electronic files will be considered to have been properly submitted unless the Settlement Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

EXHIBIT C-2

**PART I – CLAIMANT INFORMATION**

Beneficial Owner's First Name

MI

Beneficial Owner's Last Name

Co-Beneficial Owner's First Name

MI

Co-Beneficial Owner's Last Name

Entity Name (if claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address 1

Address 2

City

State/Province

ZIP

Foreign Country

Day Phone

Evening Phone

Email Address

Account Number

Specify one of the following:

☐ Individual(s)  ☐ Corporation  ☐ UGMA Custodian  ☐ IRA  ☐ Partnership  ☐ Estate

☐ Trust

☐ Other _____

Enter Taxpayer Identification Number below for the Beneficial Owner(s).

Social Security No. (for individuals)

or

Taxpayer Identification No. (for estates, trusts, corporations, etc.)

**PART II - TRANSACTIONS IN SHIRE ADSs**

**Beginning Holdings:**

A. State the total number of shares of Shire ADSs owned at the close of trading on September 28, 2014, long or short (*must be documented*).

$$\boxed{\phantom{XXXXXXXX}}\;.\;\boxed{\phantom{XX}}$$

**Purchases:**

B. Separately list each and every purchase of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (MMDDYY) | Number of ADS Purchased | Price | Total Cost (Excluding Commissions, Taxes, and Fees) | Transaction Type (P/R)* |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*P – Purchase, R – Received (Transfer-In)

**Sales:**

C. Separately list each and every sale of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (MMDDYY) | Number of ADS Sold | Price | Amount Received (Excluding Commissions, Taxes, and Fees) | Transaction Type (S/D)* |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*S – Sale, D – Delivery (Transfer-Out)

**Ending Holdings:**

D. State the total number of Shire ADSs owned at the close of trading on October 14, 2014 long or short (*must be documented*).

$$\boxed{\phantom{XXXXXXXX}}\;.\;\boxed{\phantom{XX}}$$

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**PART IV – TRANSACTIONS IN SHIRE CALL OPTIONS**

**1. HOLDINGS AS OF SEPTEMBER 28, 2014** – State the total number of call options of Shire ADSs held as of the close of trading on September 28, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐☐ |
| ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐☐ |
| ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐☐ |
| ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐☐ |

**2. PURCHASES/ACQUISITIONS FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** – Separately list each and every purchase/acquisition (including free receipts) of call options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Date of Purchase (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Purchased | Purchase Price Per Call Option Contract | Total Purchase Price (excluding taxes, commissions, and fees) | Insert an "X" if Expired / Insert an "E" if Exercised | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|
| ☐☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐.☐☐ | ☐ | ☐☐☐☐☐☐ |
| ☐☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐.☐☐ | ☐ | ☐☐☐☐☐☐ |
| ☐☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐.☐☐ | ☐ | ☐☐☐☐☐☐ |
| ☐☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ | ☐☐.☐☐ | ☐☐☐☐.☐☐ | ☐ | ☐☐☐☐☐☐ |

**3. SALES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** – Separately list each and every sale/disposition (including free deliveries) of call   options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**4. HOLDINGS AS OF OCTOBER 14, 2014** – State the total number of call options of Shire ADSs held as of the close of  trading on October 14, 20154. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**PART V – TRANSACTIONS IN SHIRE PUT OPTIONS:**

**1. HOLDINGS AS OF SEPTEMBER 28, 2014** – State the total number of put options of Shire ADSs held as of the close of trading on September 28, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2. SALES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** – Separately list each and every sale (including free deliveries) of put options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Date of Sale (Writing) (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised Insert an "X" if Expired | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**3. PURCHASES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** — Separately list each and every purchase (including free receipts) of put   options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

**IF NONE, CHECK HERE** ☐

| Date of Purchase (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Purchased | Purchase Price Per Put Option Contract | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**4. HOLDINGS AS OF OCTOBER 14, 2014** – State the total number of put options of Shire ADSs held as of the close of  trading on October 14, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**PART III: SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

I (We) submit this claim form under the terms of the Stipulation described in the Notice. I (We) also submit to the jurisdiction of the Court, with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Action. I (We) agree to furnish additional information to the Settlement Administrator to support this claim if requested to do so. I (We) have not submitted any other claim covering the same purchases, acquisitions or sales of Shire Securities during the relevant period and know of no other person having done so on my (our) behalf.

**PART IV: RELEASE**

1. I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge any and all of the Released Defendants' Claims from all Released Claims.

2. 1.20 "Released Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation. "Released Claims" includes "Unknown Claims" as defined below.

3. 1.21 "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

4. 1.29 "Unknown Claims" means (a) any and all Released Claims which Plaintiff, Lead Counsel, or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Lead Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Lead Counsel, or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released

Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

5. I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6. I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in Shire Securities which occurred during the relevant period as well as the number of Shire Securities held by me (us) at the close of trading on October 14, 2014.

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS CLAIM FORM IS TRUE, CORRECT AND COMPLETE.

Signature of claimant (if this claim is being made on behalf of joint claimants, then each must sign)

(Signature)

(Signature)

(capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.) (See item 2 on page 1 for instructions)

Date: | | | – | | – | | | | MM     DD       YYYY

**THIS CLAIM FORM MUST BE SUBMITTED NO LATER THAN _____ __, 2019, AND MUST BE MAILED TO:**

AbbVie Securities Settlement
Settlement Administrator
c/o Epiq
P.O. Box _____
Portland, OR 97208-____
www.AbbVieSettlement.com

A claim form received by the Settlement Administrator shall be deemed to have been submitted when posted, if mailed by _____ __, **2019**, and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions. In all other cases, a claim form shall be deemed to have been submitted when actually received by the Settlement Administrator.

**REMINDER CHECKLIST**

○ Please be sure to sign this claim form. If this claim form is submitted on behalf of joint claimants, then both claimants must sign.

○ Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.

○ Do NOT use highlighter on the claim form or any supporting documents.

- o If you move after submitting this claim form, please notify the Settlement Administrator of the change in your address.

EXHIBIT C-3

## Gardy & Notis, LLP and Wolf Haldenstein Adler Freemen & Herz LLP Announce Proposed Settlement in the AbbVie, Inc. Securities Litigation

CHICAGO--(BUSINESS WIRE)— The following statement is being issued by Gardy & Notis, LLP and Wolf Haldenstein Adler Freemen & Herz LLP regarding *Rubinstein v. Gonzalez*, No. 14-cv-9465 (N.D. Ill.) (the "Litigation").

**TO: ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN DEPISITORY SHARES ("ADS") OR PURCHASED CALL OPTIONS OR SOLD PUT OPTIONS OF SHIRE PLC BETWEEN SEPTEMBER 29, 2014 AND OCTOBER 14, 2014 (THE "CLASS").**

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED that pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Illinois that the Litigation has been certified as a class action on behalf of the Class, except for certain persons and entities who are excluded from the Class by definition as set forth in the full printed Notice of Proposed Settlement of Class Action (the "Notice").

YOU ARE ALSO NOTIFIED that Plaintiff in the Litigation on behalf of herself and the other Members of the Class, have reached a proposed settlement of the Litigation with the defendants for the sum of $16,750,000 in cash (the "Settlement"). If the Settlement is approved, it will resolve all claims in the Litigation.

A hearing will be held on DATE, at 9:30 a.m. CT, before the Honorable Robert M. Dow Jr at Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606, for the purpose of determining: (1) whether the proposed Settlement should be approved by the Court as fair, reasonable and adequate; (2) whether, thereafter, this Litigation should be dismissed with prejudice against the Defendants as set forth in the Stipulation of Settlement dated May X, 2019; (3) whether the Plan of Allocation of Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; and (4) the reasonableness of the application of Lead Counsel for the payment of attorneys' fees and expenses incurred in connection with this Litigation, together with interest thereon (which request may include a request for reimbursement of Plaintiffs' reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995).

You may comment on the Settlement no later than **DATE** and the Court will consider your views at the hearing. You can also appear at the hearing or hire your own attorney at your own cost to represent you at the hearing if you choose. You do not need to attend the hearing to have your comments considered. Details on the process to comment on the Settlement or appear at the hearing are explained in detail on the website or in the detailed Notice.

If you have not received a detailed Notice and Claim Form you may obtain copies by writing to *AbbVie Securities Settlement*, Claims Administrator, c/o ADDRESS, or by downloading this information at www.AbbVieSettlement.com. If you are a Class Member, in order to share in the distribution of the Net Settlement Fund, you must submit a Claim Form no later than **DATE** online, by email or by U.S. mail establishing that you are entitled to a recovery.

You will be bound by any judgment in the Litigation unless you request to be excluded, in writing, postmarked by **DATE**. Please review the Settlement website or the detailed Notice to get instructions on how to exclude yourself.

Any objection to any aspect of the Settlement must be filed with the Clerk of the Court and also delivered by hand or First-Class Mail to each of the following addresses such that it is *received no later than DATE*:

Jennifer Sarnelli  
Gardy & Notis LLP  
Tower 56  
126 East 56th Street, 8th Floor  
New York, NY 10022

Joshua Z. Rabinovitz  
Kirkland & Ellis LLP  
300 North LaSalle  
Chicago, IL 60654

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**

Contact:  
Gardy & Notis, LLP  
Jennifer Sarnelli, jsarnelli@gardylaw.com

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated,  )<br>)<br>)<br>) | No. 14-cv-9465 |
| )<br>Plaintiffs,      )<br>) | Honorable Robert M. Dow, Jr. |
| v.        )<br>) | |
| RICHARD GONZALEZ and ABBVIE INC.,  )<br>) | |
| Defendants.    ) | |

## FINAL ORDER AND JUDGMENT

On the 22nd day of October, 2019, a hearing having been held before this Court pursuant to the Order Preliminarily Approving Settlement and Providing for Notice dated July 2, 2019 (the "Preliminary Approval Order"), to determine: (1) whether the terms and conditions of the Stipulation of Settlement dated May 31, 2019 (the "Stipulation"), are fair, reasonable, and adequate for the settlement of all claims asserted by the Plaintiff (Dawn Bradley) on behalf of the Class (as defined in paragraph 2 herein) against the Defendants (AbbVie and Richard Gonzalez) in the operative complaint now pending in this Court under the above caption (the "Litigation"), including the release of the Released Persons[1], and should be approved; (2) whether judgment should be entered dismissing the Litigation on the merits and with prejudice; (3) whether to

---

[1] The Released Persons are the Defendants and each Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

approve the Plan of Allocation as a fair and reasonable method to allocate the Settlement proceeds among the Members of the Class; and (4) whether and in what amount to award Plaintiff's Counsel[2] fees and expenses and Plaintiff's expenses. The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing, substantially in the form approved by the Court, was mailed to all individuals and entities, reasonably identifiable, who purchased or otherwise acquired American Depository Shares ("ADS") or purchased call options or sold put options of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive (the "Class Period"), as shown by the records compiled by the Claims Administrator[3] in connection with its mailing of notice of the Settlement, at the respective addresses set forth in such records, and that a summary notice of the hearing, substantially in the form approved by the Court, was published pursuant to the Preliminary Approval Order as set forth in the Declaration of Jordan Broker; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested by Plaintiff's Counsel.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Court has jurisdiction over the subject matter of this Litigation and all matters relating to the Settlement.

2. On July 2, 2019, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certified a Class, for settlement purposes only, defined as: All Persons who purchased or otherwise acquired American Depositary Shares or purchased call options or sold put options of Shire plc between September 29, 2014 and October 14, 2014, inclusive. Excluded from the

---

[2] Plaintiff's Counsel are Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP.

[3] The Claims Administrator is Epiq.

2

Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those Persons who timely and validly excluded themselves therefrom, as identified in Exhibit 1 hereto.

3. Notice of the pendency of this Litigation as a class action and of the proposed Settlement was given to all members of the Class who could be identified with reasonable effort. The Court finds that the form and method of notifying the Class of the pendency of this Litigation as a class action and of the terms and conditions of the proposed Settlement: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of (i) the pendency of the Litigation; (ii) the effect of the proposed Settlement (including the releases to be provided thereunder); (iii) Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (v) the right to exclude themselves from the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*, as amended, and all other applicable laws and rules.

4. Defendants have complied with the Class Action Fairness Act of 2005, 28 U.S.C. §1715. Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. §1715(b), including notices to the Attorney General of the United States of America, and the Attorneys General of all States in which Members of the Class reside. The notice contains the documents and information required by 28 U.S.C. §1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the requirements of 28 U.S.C. §1715.

5. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the releases provided for therein, and the dismissal with prejudice of the claims asserted in the Litigation), and finds that the Settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the Class. Subject to the terms and provisions of the Stipulation and the conditions therein being satisfied, the parties are directed to consummate the Settlement.

6. All of the claims asserted in the Litigation are hereby dismissed in their entirety with prejudice. The Plaintiff, Defendants and the members of the Class shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

7. The terms of the Stipulation and of this Judgment shall be forever binding on Plaintiff, Defendants, and all other members of the Class (regardless of whether or not any individual member of the Class submits a Claim Form[4] or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The Persons listed on

---

[4] The Claim Form is the form for submitting a claim, that each member of the Class must complete and submit to share in a distribution of the Net Settlement Fund. The Net Settlement Fund is the $16.75 million Settlement amount being paid by or on behalf of Defendants minus Plaintiff's Counsel's Court approved fees and expenses, Plaintiff's Court approved fees, the costs to provide notice to the Class and administer the claims made by members of the Class, and any necessary taxes or tax expenses.

4

Exhibit 1 hereto are excluded from the Class pursuant to their request and are not bound by the terms of the Stipulation or this Judgment.

8. Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other member of the Class asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation are hereby released by Plaintiff and the members of the Class who have not excluded themselves from the Class (as set forth on Exhibit 1 hereto) against Defendants and their Related Parties (the "Released Claims").[5]

9. Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the

---

[5] The Related Parties are Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such effective upon entry of this Judgement. Defendants together with the Related Parties are the "Released Persons."

Settlement, are released by Defendants against Plaintiff and the members of the Class (the "Released Defendants' Claims").

10.     Unknown Claims means (a) any and all Released Claims which Plaintiff, Plaintiff's Counsel, or any member of the Class does not know or suspect to exist in his, her, or its favor at the time of this release of the Defendants and their Related Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Plaintiff's Counsel, or any member of the Class, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Plaintiff's Counsel, or members or the Class.

11.     Upon entry of this Judgment Plaintiff, Defendants, and the Class shall be deemed to have, and by operation of this Judgment to have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Plaintiff, Defendants, and the Class shall expressly waive and each of the member of the Class shall be deemed to have, and by operation of this Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to

6

California Civil Code §1542. The Plaintiff, Defendants, and the Class acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Plaintiff, Defendants, and the Class shall expressly settle and release, and each member of the Class, upon entry of this Judgment, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiff, Defendants, and the Class acknowledge, and the members of the Class shall be deemed by operation of this Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

12. Upon the entry of this Judgement, Plaintiff and each and all of the members of the Class ("Class Releasors") are hereby permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against Defendants or any Released Persons in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any other claims arising out of, relating to or in connection with, the defense, settlement, or resolution of the Litigation or the Released Claims, regardless of whether such member of the Class executes and delivers a Claim Form.

7

13.     Upon entry of this Judgment, Plaintiff and each of the members of the Class shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. Plaintiff and each member of the Class are bound by this Judgment, including, without limitation, the release of claims as set forth in the Stipulation. The Released Claims are hereby compromised, settled, released, discharged, and dismissed as against the Released Persons on the merits and with prejudice by virtue of the proceedings herein and this Judgment.

14.     Upon entry of this Judgment, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiff, each and all of the members of the Class, and Plaintiff's Counsel from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Defendants' Claims.

15.     Pursuant to the PSLRA, upon entry of this Judgement, all claims by any individual or entity for contribution or indemnity arising out of the Litigation, however such claims are denominated, shall be barred against the Released Persons.

16.     The Released Persons and their respective counsel may refer to or file the Stipulation and/or this Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or otherwise to enforce the terms of the Settlement.

17. The Court finds that AbbVie has satisfied its financial obligations under the Stipulation by paying or causing to be paid $16,750,000.00 to the Settlement Fund.

18. The Court finds and concludes that the Plaintiff, Plaintiff's Counsel, Defendants, and Defendants' counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and/or settlement of this Litigation.

19. Any Plan of Allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment. Separate orders shall be entered regarding approval of a plan of allocation and Plaintiff's Counsel's application for an award of attorneys' fees and expenses.

20. Any appeal or any challenge affecting the approval of: (a) the Plan of Allocation submitted by Plaintiff's Counsel; and/or (b) this Court's approval regarding any attorneys' fee and expense applications shall in no way disturb or affect the finality of the other provisions of this Judgment.

21. There is no just reason for delay in the entry of this Judgment as a final judgment in this Litigation and immediate entry by the Clerk of the Court is expressly directed.

DATED: October 22, 2019

_____
Honorable Robert M. Dow, Jr.

## Exhibit 1

## List of Excluded Persons/Entities

1. Pentwater Merger Arbitrage Master Fund Ltd.; Pentwater Equity Opportunities Master Fund Ltd.; PWCM Master Fund Ltd.; Oceana Master Fund Ltd.

2. Elliot Associates, L.P.; Elliot International, L.P.; the Liverpool Partnership

3. ODS Capital, LLC

4. WCM Alternatives: Event-Driven Fund; WCM Master Trust; The Merger Fund; The Merger Fund VL

5. Farallon Capital Partners, L.P.; Farallon Capital AA Investors, L.P.; Farallon Capital Institutional Partners, L.P.; Farallon Capital Institutional Partners II, L.P.; Farallon Capital Offshore Investors II, L.P.; Farallon Capital (AM) Investors, L.P.; Farallon Capital Institutional Partners III, L.P.; Noonday Offshore Investors Inc

6. First New York Securities LLC; FNY Managed Accounts LLC

7. Goose Hill Capital, LLC

8. Mason Capital L.P.; Mason Capital Master Fund L.P.

9. Hudson Bay Master Fund Ltd.; Hudson Bay Merger Arbitrage Opportunities Master Fund Ltd.

10. Quad Capital Portfolio A LLC; Quad Securities Portfolio A LLC

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, <br><br><br> Defendants | Case No. 1:20-cv-02581 <br><br> Honorable Matthew F. Kennelly |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of June 24, 2022 (the "Stipulation") is entered into between (a) lead plaintiff Fadi E. Rahal ("Lead Plaintiff"), on behalf of himself and the Settlement Class (defined below); and (b) defendant Groupon, Inc. ("Groupon" or the "Company") and defendants Rich Williams ("Williams) and Melissa Thomas ("Thomas") (collectively, the "Individual Defendants," and, together with Groupon, "Defendants"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").[1] Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and all claims asserted therein against Defendants.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

WHEREAS:

A.      On April 28, 2020, a class action complaint was filed in the United States District Court for the Northern District of Illinois (the "Court"), styled *Macovski v. Groupon Inc. et al.*, No. 1:20-cv-02581.  (ECF No. 1.)

B.      By Order dated August 1, 2020, the Court appointed Fadi E. Rahal as Lead Plaintiff for the Action; and approved Lead Plaintiff's selection of Kirby McInerney LLP and Glancy Prongay & Murray LLP as Lead Counsel and Pomerantz LLP as Liaison Counsel for the putative class.  (ECF No. 41.)

C.      On September 22, 2020, Lead Plaintiff filed and served his Amended Class Action Complaint for Violation of the Federal Securities Laws (the "First Amended Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  Among other things, the First Amended Complaint alleged that Defendants made statements that omitted material adverse information concerning: (i) Groupon's Goods division; (ii) Groupon's Select loyalty program; and (iii) Groupon's overall financial performance.  The First Amended Complaint further alleged that the prices of Groupon's publicly-traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.  (ECF No. 43.)

D.      On November 23, 2020, Defendants moved to dismiss the First Amended Complaint.  (ECF Nos. 48-49.)  On December 23, 2020, Lead Plaintiff filed his opposition to the motion to dismiss (ECF No. 55) and, on January 13, 2021, Defendants filed a reply in further support of their motion to dismiss (ECF No. 56).

2

E.      On April 28, 2021, the Court granted Defendants' motion to dismiss, but permitted Lead Plaintiff to file a motion for leave to amend that includes a proposed second amended complaint that meets the PSLRA's pleading requirements.  (ECF No. 64.)

F.      On May 19, 2021, Lead Plaintiff filed and served a motion for leave to amend the First Amended Complaint along with a [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws.  (ECF Nos. 66-68.)  On June 23, 2021, Defendants filed and served an opposition to Lead Plaintiff's motion for leave to amend.  (ECF No. 70.)

G.      On June 28, 2021, Lead Plaintiff filed and served a motion for leave to file a reply brief in support of his motion for leave to amend the Fist Amended Complaint (ECF Nos. 71-72), which Defendants' opposed on June 29, 2021 (ECF No. 73).  The Court granted Lead Plaintiff's motion for leave to file a reply in support of their motion to amend on June 30, 2021 (ECF No. 74), and on July 9, 2021, Lead Plaintiff filed his reply in support of his motion for leave to amend the First Amended Complaint (ECF No. 75).

H.      On August 11, 2021, the Court granted Lead Plaintiff's motion for leave to file the [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws.  (ECF No. 79.)  On August 12, 2021, Lead Plaintiff filed and served the Second Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Second Amended Complaint"), again asserting claims under the Exchange Act and Rule 10b-5 against Defendants based upon a similar set of allegations as the First Amended Complaint.  (ECF No. 80.)

I.      On September 24, 2021, Defendants filed and served an answer to the Complaint. (ECF No. 86.)  In addition to denying the allegations in the Complaint, the answer asserted that Defendants would expect to raise multiple defenses, including, but not limited to, the truthfulness of the alleged misstatements, the immateriality of the alleged misrepresentations and omissions,

3

the nonexistence of allegedly omitted information, the reasonable basis upon which forward-looking statements were made, the lack of requisite scienter, and the lack of a legal duty to disclose allegedly withheld, later-discovered information. Moreover, to the extent Plaintiff's case rests primarily on allegations related to Select, Defendants would expect to show that Select was an early-stage loyalty program with a membership of well less than 1% of Groupon's customer base.

J. The Parties exchanged their initial disclosures on October 1, 2021. From October 2021 through April 2022, counsel for Lead Plaintiff and Defendants began to engage in fact discovery. Lead Plaintiff propounded Requests for Production of Documents on Defendants. Lead Plaintiff also served seven (7) third-party subpoenas for production of documents on various third parties. Over the course of discovery, Lead Counsel reviewed and analyzed more than 90,000 pages of documents produced by Defendants and third parties. In addition to responding to discovery, Defendants propounded Requests for Production of Documents and written Interrogatories upon Lead Plaintiff, to which Lead Plaintiff responded and produced documents.

K. While discovery was ongoing, the Parties agreed to participate in private mediation. The Parties selected Jed D. Melnick, Esq. of JAMS to serve as mediator. The Parties exchanged extensive mediation statements and exhibits that addressed, among other things, issues related to liability and damages. On March 15, 2022, the Parties participated in a virtual, full-day mediation session. The session ended without an agreement to settle and the Parties continued with discovery.

L. Over the course of the next several weeks, Mr. Melnick conducted further discussions with the Parties, which culminated in a mediator's recommendation to resolve the

Action for $13,500,000 in cash for the benefit of the Settlement Class, which the Parties accepted on April 21, 2022. The Parties thereafter memorialized the settlement in a confidential Term Sheet to Settle Class Action (the "Term Sheet") executed on May 6, 2022. The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $13,500,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

M. This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties.

N. Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and the other members of the Settlement Class, and in their best interests. Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering, among other things: (i) the substantial financial benefit that Lead Plaintiff and the other members of the Settlement Class will receive under the proposed Settlement; and (ii) the significant risks and costs of continued litigation and trial.

O. This Stipulation constitutes a compromise of matters that are in dispute between the Parties. Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. Each Defendant denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or

concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted. Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever. Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed and prosecuted by Lead Plaintiff in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiff's Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiff's Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1. As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

6

(a)     "Action" means the securities class action in the matter styled, *Macovski v. Groupon Inc. et al.*, No. 1:20-cv-02581.

(b)     "Alternate Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation that is acceptable to both Lead Plaintiff and Defendants.

(c)     "Authorized Claimant" means a Settlement Class Member who submits a Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

(d)     "Claim" means a Claim Form submitted to the Claims Administrator.

(e)     "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

(f)     "Claimant" means a person or entity who or that submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

(g)     "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

(h)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(i)     "Complaint" means the Second Amended Consolidated Class Action Complaint filed by Lead Plaintiff in the Action on August 12, 2021.

7

(j) "Court" means the United States District Court for the Northern District of Illinois.

(k) "Defendants" means Groupon and the Individual Defendants.

(l) "Defendants' Counsel" means Skadden, Arps, Slate, Meagher & Flom LLP.

(m) "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, insurers, reinsurers, employees, and attorneys, in their capacities as such.

(n) "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 31 of this Stipulation have been met and have occurred or have been waived.

(o) "Escrow Account" means an account maintained at The Huntington National Bank wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

(p) "Escrow Agent" means The Huntington National Bank.

(q) "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(r) "Excluded Claims" means (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted in *Frankel v. Thomas*, 1:21-cv-01281-RGA (D. Del.), *Estreen v. Lefkofsky*, C.A. No. 2022-0057-PAF (Del. Ch.), *Khoury v. Williams*, C.A. No. 2022-0077-PAF (Del. Ch.), and/or *Anders v. Angelakis*, C.A. No. 2022-0407-MTZ (Del. Ch.); and (iii)

any claims of any person or entity who or that submits a request for exclusion that is accepted by the Court.

(s)  "Final," with respect to the Judgment or, if applicable, the Alternate Judgment, or any other court order, means when the last of the following shall occur: (i) the expiration of the time to file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time provided for filing or noticing any appeal without any appeal having been taken, *i.e.*, thirty (30) days after entry of the judgment; or (iii) if a motion to alter or amend is filed or if an appeal is taken, (a) the date of final dismissal of all such motions or appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

(t)  "Groupon" or the "Company" means Groupon, Inc.

(u)  "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(v)  "Individual Defendants" means Williams and Thomas.

(w)  "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(x)  "Lead Counsel" means the law firms of Kirby McInerney LLP and Glancy Prongay & Murray LLP.

(y)  "Lead Plaintiff" means Fadi E. Rahal.

(z)  "Liaison Counsel" means the law firm of Pomerantz LLP.

(aa)  "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action (which may include the costs and expenses of Lead Plaintiff directly related to his representation of the Settlement Class), for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

(bb)  "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

(cc)  "Notice" means the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be mailed to Settlement Class Members.

(dd)  "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

(ee) "Parties" means Defendants and Lead Plaintiff, on behalf of themselves and the Settlement Class.

(ff) "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, limited liability company or corporation, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

(gg) "Plaintiff's Counsel" means Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Settlement Class in the Action.

(hh) "Plaintiff's Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

(ii) "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

(jj) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

(kk) "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

(ll) "Released Claims" means all Released Defendants' Claims and all Released Plaintiff's Claims.

11

(mm) "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or that submits a request for exclusion from the Settlement Class that is accepted by the Court.

(nn) "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of Groupon common stock during the Settlement Class Period. However, Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted in *Frankel v. Thomas*, 1:21-cv-01281-RGA (D. Del.), *Estreen v. Lefkofsky*, C.A. No.: 2022-0057-PAF (Del. Ch.), *Khoury v. Williams*, C.A. No. 2022-0077-PAF (Del. Ch.) and/or *Anders v. Angelakis*, C.A. No. 2022-0407-MTZ (Del. Ch.); and (iii) any claims of any person or entity who or that submits a request for exclusion that is accepted by the Court.

(oo) "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiff's Releasees.

(pp) "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(qq) "Settlement" means the settlement between Lead Plaintiff and Defendants on the terms and conditions set forth in this Stipulation.

(rr) "Settlement Amount" means $13,500,000 in cash.

(ss) "Settlement Class" means all persons and entities who or that, between July 30, 2019, and February 18, 2020, inclusive, purchased or otherwise acquired Groupon common stock and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as a control person, executive officer and/or director of Groupon during the Settlement Class Period, and members of his or her Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Groupon; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof. Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion that is accepted by the Court.

(tt) "Settlement Class Member" means each person and entity who or that is a member of the Settlement Class.

(uu) "Settlement Class Period" means the period between July 30, 2019 and February 18, 2020, inclusive.

(vv) "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

13

(ww) "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(xx) "Summary Notice" means the Summary Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(yy) "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(zz) "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, that, if known by him, her, or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by

14

operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## CLASS CERTIFICATION

2.      Solely for purposes of the Settlement and for no other purpose, Defendants stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiff as Class Representative for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

## PRELIMINARY APPROVAL OF SETTLEMENT

3.      Within ten (10) business days of execution of this Stipulation, Lead Plaintiff will move for preliminary approval of the Settlement, certification of the Settlement Class for settlement purposes only, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.  Concurrently with the motion for preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree

15

to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

## RELEASE OF CLAIMS

4.      The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action as against Defendants; and (ii) the Releases provided for herein.

5.      Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiff's Claim against Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any Defendants' Releasee.  This release shall not apply to any Excluded Claim.

6.      Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants and each of the other Defendants' Releasees, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiff's Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the

16

Plaintiff's Releasees.  This release shall not apply to any person or entity who or that submits a request for exclusion from the Settlement Class that is accepted by the Court.

7.	Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternate Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternate Judgment, if applicable.

<div align="center">

**THE SETTLEMENT CONSIDERATION**

</div>

8.	In consideration of the settlement of the Released Plaintiff's Claims against Defendants' Releasees, Defendants shall pay or cause to be paid the Settlement Amount into the Escrow Account no later than fifteen (15) business days after the later of: (a) the date of entry by the Court of an order preliminarily approving this Settlement; or (b) Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account, including wiring instructions that include the bank name and ABA routing number, account name and number, and the contact information of an individual who can verbally confirm the wire instructions, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited.

<div align="center">

**USE OF SETTLEMENT FUND**

</div>

9.	The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 18-29 below.

10.	Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the

<div align="center">

17

</div>

jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

11.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Defendants' Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this

paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

13.     The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or that paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

14.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable. Such costs and expenses shall include, without limitation, the actual costs

19

of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendants' Releasees, or any other person or entity who or that paid any portion of the Settlement Amount.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

15.     Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiff's Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiff's costs and expenses directly related to his representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

16.     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award

20

of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; (b) Lead Plaintiff terminates the Settlement; or (c) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

17. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action. Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiff's Counsel shall be payable solely from the Escrow Account.

## NOTICE AND SETTLEMENT ADMINISTRATION

18. As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than Groupon's obligation to provide its securities holders records as provided in ¶ 19 below, none of the Defendants' Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the

administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members, or Lead Counsel in connection with the foregoing. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

19. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of the date of entry of the Preliminary Approval Order, Groupon shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) its list(s) (consisting of names and addresses) of the record holders of the Groupon common stock during the Settlement Class Period.

20. The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation appearing in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

22

21.     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendants' Releasee shall have any involvement with or liability, obligation, or responsibility whatsoever for the application of the Court-approved plan of allocation.

22.     Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment, or the Alternate Judgment, if applicable, to be entered in the Action and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiff's Claims in the event that the Effective Date occurs with respect to the Settlement.

23.     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendants' Releasee shall be permitted to review, contest, or object to any Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

24. For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a) Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b) All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiff's Claim. Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c) Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation

the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claim Forms that do not meet the submission requirements may be rejected.   Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.   The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.   If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

25.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.   No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

25

26.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

27.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiff's Claims.

28.     No person or entity shall have any claim against Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, or Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.  Lead Plaintiff and Defendants, and their respective counsel, and Lead Plaintiff's damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including

26

interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

29.     All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

30.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

31.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

(b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

(c)     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 35 below);

27

(d)     Lead Plaintiff has not exercised his option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e)     the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final, or the Court has entered an Alternate Judgment and none of the Parties seek to terminate the Settlement and the Alternate Judgment has become Final.

32.     Upon the occurrence of all of the events referenced in ¶ 31 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

33.     If (i) Defendants, or any of them, exercises his, her, or its right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiff exercises his right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

(b)     Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of May 6, 2022.

(c)     The terms and provisions of this Stipulation, with the exception of this ¶ 33 and ¶¶ 14, 16, 36, and 56, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternate Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)    Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 16 above), less any Notice and Administration Costs actually incurred, paid, or payable and less any Taxes paid, due, or owing shall be refunded by the Escrow Agent to the funding parties of the settlement.  In the event that the funds received by Lead Counsel consistent with ¶ 16 above have not been refunded to the Settlement Fund within the five (5) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to the funding parties of the settlement immediately upon their deposit into the Escrow Account consistent with ¶ 16 above.

34.    It is further stipulated and agreed that Lead Plaintiff and each of the Defendants shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Seventh Circuit or the United States Supreme Court; or (e) the date upon which an Alternate Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Seventh Circuit or the United States Supreme Court, and the provisions of ¶ 33 above shall apply.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation

29

shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternate Judgment, if applicable, and shall not be grounds for termination of the Settlement.

35.    In addition to the grounds set forth in ¶ 34 above, Groupon shall have the unilateral right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Groupon's confidential supplemental agreement with Lead Plaintiff (the "Supplemental Agreement"), in accordance with the terms of that agreement. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiff and Groupon concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

**NO ADMISSION OF WRONGDOING**

36.    Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that

30

has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)  shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)  shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

*provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

37.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or

inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

38. Groupon warrants that, as to the payments made or to be made by or on behalf of Groupon and the other Defendants, at the time of entering into this Stipulation and at the time of such payment Groupon, or to its knowledge any persons or entities contributing to the payment of the Settlement Amount, is not insolvent, nor will the payment required to be made by or on behalf of it render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This representation is made by Groupon itself not by its counsel.

39. In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff, Lead Plaintiff and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternate Judgment, if applicable, entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the releases and Judgment, or Alternate Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 33 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid, or payable) shall be returned as provided in ¶ 33.

40. The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiff and any other

Settlement Class Members against the Defendants' Releasees with respect to the Released Plaintiff's Claims. Accordingly, Lead Plaintiff and his counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process supervised and conducted by Mr. Melnick, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

41. While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, Lead Plaintiff and his counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

42. The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of both Lead Plaintiff and Defendants (or their successors-in-interest).

43.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiff's Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

45.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

46.     This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, its exhibits, or the Supplemental Agreement other than those contained and memorialized in such documents.

47.     This Stipulation may be executed in one or more counterparts, including by a .pdf/.tif image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

48.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

49. The construction, interpretation, operation, effect, and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Illinois without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

50. Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

51. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that this Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

52. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

53. Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

54. If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand

35

delivery or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiff or Lead Counsel:

Kirby McInerney LLP
Attn:  Thomas W. Elrod, Esq.
250 Park Avenue, Suite 820
New York, NY 10177
Telephone:  (212) 371-6600
Email: telrod@kmllp.com

-and-

Glancy Prongay & Murray LLP
Attn:  Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Email: lsolish@glancylaw.com

If to Defendants:

Skadden, Arps, Slate, Meagher & Flom LLP
Attn:  Matthew R. Kipp, Esq.
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0728
Email: matthew.kipp@skadden.com

55.     Except as otherwise provided herein, each Party shall bear its own costs.

56.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

57.     All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

58.     Defendants shall be responsible for timely service of any notices that might be required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").  Defendants shall provide a copy of such notices as well as proof of service of such notices to Lead Counsel. In accordance with 28 U.S.C. § 1715(d), the Settlement Hearing shall not be held earlier than

36

ninety (90) days after any such requisite notices are served. Defendants shall bear all cost and expenses associated with providing CAFA notice.

59. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of June 24, 2022.

**KIRBY MCINERNEY LLP**

By: */s/ Thomas W. Elrod*
    Thomas W. Elrod
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: telrod@kmllp.com

-and-

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*
    Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

POMERANTZ LLP
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: lcludwig@pomlaw.com

*Liaison Counsel for Lead Plaintiff and the Settlement Class*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**


By: */s/ Matthew R. Kipp*
    Matthew R. Kipp
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0728
Email: matthew.kipp@skadden.com

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-02581 |
| | Honorable Matthew F. Kennelly |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING
## SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, a class action is pending in this Court entitled *Macovski v. Groupon, Inc. et al.*, No. 1:20-cv-02581 (the "Action");

WHEREAS, (a) Lead Plaintiff Fadi E. Rahal, on behalf of himself and the Settlement Class (defined below), and (b) defendant Groupon, Inc. ("Groupon") and defendants Rich Williams and Melissa Thomas (collectively, "Individual Defendants," and, together with Groupon, "Defendants;" and together with Lead Plaintiff, the "Parties") have determined to settle all claims asserted against Defendants in this Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated June 24, 2022 (the "Stipulation") subject to approval of this Court (the "Settlement");

WHEREAS, Lead Plaintiff has made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with

the Stipulation, certifying the Settlement Class for purposes of the Settlement only, and allowing notice to Settlement Class Members as more fully described herein;

WHEREAS, the Court has read and considered: (a) Lead Plaintiff's motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the exhibits attached thereto; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1. **Class Certification for Settlement Purposes** – Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class consisting of all persons and entities who or that, between July 30, 2019, and February 18, 2020, inclusive (the "Settlement Class Period"), purchased or otherwise acquired Groupon common stock and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as a control person, executive officer and/or director of Groupon during the Settlement Class Period, and members of his or her Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Groupon; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof. Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion that is accepted by the Court.

2.      **Class Findings** – Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of Lead Plaintiff in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3.      The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Lead Plaintiff Fadi E. Rahal is an adequate class representative and certifies him as Class Representative for the Settlement Class.  The Court also appoints Lead Counsel, Kirby McInerney LLP and Glancy Prongay & Murray LLP, as Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4.      **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5.      **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2022 at __:__ _.m. in Courtroom 2103 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided

for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. Notice of the Settlement and the Settlement Hearing shall be given to Settlement Class Members as set forth in paragraph 7 of this Order.

6. The Court may adjourn the Settlement Hearing without further notice to the Settlement Class, and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class. As set forth in the Notice, the Court reserves the right to hold the Settlement Hearing telephonically or via videoconference.

7. **Retention of Claims Administrator and Manner of Giving Notice** – Lead Counsel is hereby authorized to retain Epiq Class Action & Claims Solutions, Inc. (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below. Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

(a) within ten (10) business days of the date of entry of this Order, Groupon shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) its list(s) of shareholders of

record (consisting of names and addresses) for the Groupon common stock during the Settlement Class Period;

(b)  not later than twenty (20) business days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, respectively (the "Notice Packet"), to be mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records provided by Groupon or in the records that Groupon causes to be provided, or who otherwise may be identified through further reasonable effort;

(c)  contemporaneously with the mailing of the Notice Packet, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded;

(d)  not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*; and

(e)  not later than seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

8.  **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, and the Summary Notice, attached hereto as Exhibits 1, 2, and 3, respectively, and (b) finds that the mailing and distribution of the Notice and Claim Form and the publication of the Summary Notice in the manner and form set forth in paragraph 7

5

of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, of their right to exclude themselves from the Settlement Class, and of their right to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules. The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

9. **<u>Nominee Procedures</u>** – Brokers and other nominees who purchased or otherwise acquired Groupon common stock during the Settlement Class Period for the benefit of another person or entity shall (a) within seven (7) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of the names and addresses of all such beneficial owners to the Claims Administrator in which event the Claims Administrator shall promptly mail the Notice Packet to such beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their

6

reasonable expenses actually incurred, up to a maximum of $0.50 per Notice Packet mailed; $0.05 per Notice Packet transmitted by email; or $0.10 per name, mailing address, and email address (to the extent available) provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

10. **<u>Participation in the Settlement</u>** – Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked no later than one hundred twenty (120) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class. By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

11. Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by Lead Counsel or the Claims Administrator; (c) if the

person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

12. Any Settlement Class Member who does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or prosecuting any of the Released Plaintiff's Claims against each and all of the Defendants' Releasees, as more fully described in the Stipulation and Notice. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10 above.

13. **Exclusion From the Settlement Class** – Any member of the Settlement Class who wishes to exclude himself, herself, or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, to: *Macovski v. Groupon, Inc.*, EXCLUSIONS, c/o Epiq, P.O. Box 2648, Portland, OR 97208-2648, and (b) each request for exclusion must (i) state the name, address,

8

and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Macovski v. Groupon, Inc.*, No. 1:20-cv-02581"; (iii) state the number of shares of Groupon common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale; and (iv) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, or is otherwise accepted by the Court.

14. Any person or entity who or that timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action, and shall not receive any payment out of the Net Settlement Fund.

15. Any Settlement Class Member who or that does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders, and judgments in the Action, including, but not limited to, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or

9

prosecuting any of the Released Plaintiff's Claims against any of the Defendants' Releasees, as more fully described in the Stipulation and Notice.

16.     **Appearance and Objections at Settlement Hearing** – Any Settlement Class Member who does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice, by filing with the Clerk of Court and delivering a notice of appearance to both Lead Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, or as the Court may otherwise direct. Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

17.     Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed a written objection with the Court and served copies of such objection on Lead Counsel and Defendants' Counsel at the addresses set forth below such that they are received no later than twenty-one (21) calendar days prior to the Settlement Hearing.

10

| **Lead Counsel** | **Defendants' Counsel** |
|---|---|
| Kirby McInerney LLP | Skadden, Arps, Slate, Meagher & Flom LLP |
| Thomas W. Elrod, Esq. | Matthew R. Kipp, Esq. |
| 250 Park Avenue, Suite 820 | 155 N. Wacker Drive |
| New York, NY 10177 | Chicago, IL 60606 |
| -and- | |

Glancy Prongay & Murray LLP
Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

18. Any objections, filings, and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Groupon common stock that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale. Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

19. Any Settlement Class Member who or that does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the

11

Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

20. **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation. Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Lead Plaintiff, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Plaintiff's Claims against each and all of the Defendants' Releasees.

21. **Settlement Administration Fees and Expenses** – All reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation without further order of the Court.

22. **Settlement Fund** – The contents of the Settlement Fund held by The Huntington National Bank (which the Court approves as the Escrow Agent), shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23. **Taxes** – Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of May 6, 2022, as provided in the Stipulation.

25.    **Use of this Order** – Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):  (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff's Releasees that any of their claims

13

are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount that could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.     **Supporting Papers** – Lead Counsel shall file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than thirty-five (35) calendar days prior to the Settlement Hearing; and reply papers, if any, shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

27.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 202__.


_____
The Honorable Matthew F. Kennelly
United States District Judge

14

<div align="right"><strong>Exhibit A-1</strong></div>

<div align="center">

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

</div>

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, <br><br><br> Defendants | Case No. 1:20-cv-02581 <br><br> Honorable Matthew F. Kennelly |

<div align="center">

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

***A Federal Court authorized this Notice. This is not a solicitation from a lawyer.***

</div>

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Northern District of Illinois (the "Court"), if, during the period between July 30, 2019 and February 18, 2020, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired the common stock of Groupon Inc. ("Groupon" or the "Company").[1]

**NOTICE OF SETTLEMENT:** Please also be advised that the Court-appointed Lead Plaintiff, Fadi E. Rahal ("Lead Plaintiff"), on behalf of himself and the Settlement Class (as defined in ¶ 24 below), have reached a proposed settlement of the Action for $13,500,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Groupon, any other Defendants in**

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 24, 2022 (the "Stipulation"), which is available at www.GrouponSecuritiesSettlement.com.

the Action, or their counsel. **All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 85 below).**

1.  **Description of the Action and the Settlement Class:** This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants Groupon, Rich Williams ("Williams") and Melissa Thomas ("Thomas") (collectively, "Defendants")[2] violated the federal securities laws by making false and misleading statements and omissions regarding Groupon. A more detailed description of the Action is set forth in paragraphs 11-23 below. The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 24 below.

2.  **Statement of the Settlement Class's Recovery:** Subject to Court approval, Lead Plaintiff, on behalf of himself and the Settlement Class, has agreed to settle the Action in exchange for a settlement payment of $13,500,000 in cash (the "Settlement Amount") to be deposited into an escrow account. The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth in paragraphs 50-68 below.

3.  **Estimate of Average Amount of Recovery Per Share:** Based on Lead Plaintiff's damages expert's estimates of the number of shares of Groupon common stock purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) per eligible share is $0.14. Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased/acquired or sold their shares of Groupon common stock, and the total number of valid Claim Forms submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* paragraphs 50-68 below) or such other plan of allocation as may be ordered by the Court.

4.  **Average Amount of Damages Per Share:** The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiff were to prevail in the Action. Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of Defendants' conduct.

5.  **Attorneys' Fees and Expenses Sought:** Plaintiff's Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2020, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel, Kirby McInerney LLP and Glancy Prongay & Murray LLP, will apply

---

[2] Defendants Williams and Thomas are collectively referred to herein as "Individual Defendants."

to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 33⅓% of the Settlement Fund. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants, in an amount not to exceed $350,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $5,000. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses. Estimates of the average cost per affected share of Groupon common stock, if the Court approves Lead Counsel's fee and expense application, is $0.05 per eligible share.

6. **Identification of Attorneys' Representatives:** Lead Plaintiff and the Settlement Class are represented by Thomas W. Elrod, Esq. of Kirby McInerney LLP, 250 Park Avenue, Suite 820, New York, NY 10177, (212) 371-6600, telrod@kmllp.com and Leanne H. Solish, Esq. of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, (888) 773-9224, settlements@glancylaw.com.

7. **Reasons for the Settlement:** Lead Plaintiff's principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action, and the likely appeals that would follow a trial. This process could be expected to last several years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM ONLINE OR POSTMARKED NO LATER THAN _____, 2022.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiff's Claims (defined in ¶ 33 below) that you have against Defendants' Releasees (defined in ¶ 34 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2022.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. Excluding yourself from the Settlement Class is the only option that allows you ever to be part of any other lawsuit against any of the Defendants' Releasees concerning the Released Plaintiff's Claims. |

| OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2022. | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like one or more of them. You cannot object to the Settlement, the Plan of Allocation, or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
|---|---|
| GO TO A HEARING ON _____, 2022 AT __:__ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2022. | Filing a written objection and notice of intention to appear by _____, 2022 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| DO NOTHING. | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? ........................................................ Page __
What Is This Case About? .......................................................... Page __
How Do I Know If I Am Affected By The Settlement?
   Who Is Included In The Settlement Class? ............................ Page __
What Are Lead Plaintiff's Reasons For The Settlement? ........... Page __
What Might Happen If There Were No Settlement? .................. Page __
How Are Settlement Class Members Affected By The Action
  And The Settlement? ............................................................... Page __
How Do I Participate In The Settlement? What Do I Need To Do? ... Page __
How Much Will My Payment Be? .............................................. Page __
What Payment Are The Attorneys For The Settlement Class Seeking?
  How Will The Lawyers Be Paid? ......................................... Page __
What If I Do Not Want To Be A Member Of The Settlement Class?
   How Do I Exclude Myself? ................................................ Page __
When And Where Will The Court Decide Whether To Approve The Settlement?
   Do I Have To Come To The Hearing? May I Speak At The Hearing If I
   Don't Like The Settlement? ............................................... Page __

What If I Bought Shares On Someone Else's Behalf?                    Page __
Can I See The Court File?  Whom Should I Contact If I Have Questions?  Page __

| **WHY DID I GET THIS NOTICE?** |
|---|

8.     The Court directed that this Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired Groupon common stock during the Settlement Class Period.  The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.     The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  *See* paragraphs 74-7575 below for details about the Settlement Hearing, including the date and location of the hearing.

10.    The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

| **WHAT IS THIS CASE ABOUT?** |
|---|

11.    A class action complaint was filed in the Court on April 28, 2020, styled *Macovski v. Groupon Inc. et al.*, No. 1:20-cv-02581.

12.    By Order dated August 1, 2020, Fadi E. Rahal was appointed lead plaintiff, and his selection of the law firms of Kirby McInerney LLP and Glancy Prongay & Murray LLP to serve as Lead Counsel and Pomerantz LLP to serve as Liaison Counsel were approved by the Court.

13.    On September 22, 2020, Lead Plaintiff filed and served his Amended Class Action Complaint for Violation of the Federal Securities Laws (the "First Amended Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  Among other things, the First Amended Complaint alleged that Defendants made statements that omitted material adverse information concerning (i) Groupon's Goods division, (ii) Groupon's Select loyalty program, and (iii) Groupon's overall financial performance.  The First Amended Complaint further alleged that the prices of Groupon's publicly-traded securities were artificially inflated as a result of

Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

14.    On November 23, 2020, Defendants moved to dismiss the First Amended Complaint. On April 28, 2021, the Court granted Defendants' motion to dismiss, and permitted Lead Plaintiff to file a motion for leave to amend that includes a proposed second amended complaint that meets the PSLRA's pleading requirements.

15.    On May 19, 2021, Lead Plaintiff filed and served a motion for leave to amend the First Amended Complaint along with a [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws. On June 23, 2021, Defendants filed and served an opposition to Lead Plaintiff's motion for leave to amend.

16.    On August 11, 2021, the Court granted Lead Plaintiff's motion for leave to file the [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws. On August 12, 2021, Lead Plaintiff filed and served the Second Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Second Amended Complaint"), again asserting claims under the Exchange Act against Defendants based upon a similar set of allegations as the First Amended Complaint.

17.    On September 24, 2021, Defendants filed and served an answer to the Complaint. In addition to denying the allegations in the Complaint, the answer asserted that Defendants would expect to raise multiple defenses, including, but not limited to, the truthfulness of the alleged misstatements, the immateriality of the alleged misrepresentations and omissions, the nonexistence of allegedly omitted information, the reasonable basis upon which forward-looking statements were made, the lack of requisite scienter, and the lack of a legal duty to disclose allegedly withheld, later-discovered information. Moreover, to the extent Plaintiff's case rests primarily on allegations related to Select, Defendants would expect to show that Select was an early-stage loyalty program with a membership of well less than 1% of Groupon's customer base.

18.    The Parties exchanged their initial disclosures on October 1, 2021. From October 2021 through April 2022, counsel for Lead Plaintiff and Defendants began to engage in fact discovery. Over the course of discovery, Lead Counsel reviewed and analyzed more than 90,000 pages of documents produced by Defendants and third parties. In addition to responding to discovery, Defendants propounded Requests for Production of Documents and written Interrogatories upon Lead Plaintiff, to which Lead Plaintiff responded and produced documents.

19.    While discovery was ongoing, the Parties agreed to participate in private mediation. The Parties selected Jed D. Melnick, Esq. of JAMS to serve as mediator. The Parties exchanged extensive mediation statements and exhibits that addressed, among other things, issues related to liability and damages. On March 15, 2022, the Parties participated in a virtual, full-day mediation session. The session ended without an agreement to settle and the Parties continued with discovery.

20.    Mr. Melnick conducted further discussions with the Parties, which culminated in a mediator's recommendation to resolve the Action for $13,500,000 for the benefit of the Settlement Class, which the Parties accepted.

21.    Based on the investigation and mediation of the case and Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of their counsel, Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the

6

Stipulation after considering, among other things: (a) the substantial financial benefit that Lead Plaintiff and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

22.     Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation.  Each of the Defendants denies any wrongdoing, and the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined in ¶ 34 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted.  Similarly, the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

23.     On _____, 2022, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Settlement Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

---

| **HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?** <br> **WHO IS INCLUDED IN THE SETTLEMENT CLASS?** |
|---|

24.     If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.  The Settlement Class consists of:

> all persons and entities who or that, between July 30, 2019, and February 18, 2020, inclusive, purchased or otherwise acquired Groupon common stock and were damaged thereby.

Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as a control person, executive officer, and/or director of Groupon during the Settlement Class Period, and members of his or her Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Groupon; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof.  Also excluded from the Settlement Class are any persons or entities who or that exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in this Notice.  *See* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself," on page [___] below.

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU ARE A SETTLEMENT CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS**

**NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN ONLINE OR POSTMARKED NO LATER THAN _____, 2022.**

| WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT? |
| --- |

25. Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against the remaining Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages. For example, Defendants argued and would have continued to argue that the Select loyalty program was not over-indexing to Goods as of the start of the Settlement Class Period, the Select loyalty program was in any event not material to Groupon investors, and that Defendants had not yet decided to exit Groupon's Goods business at the time of the challenged statements, contrary to Lead Plaintiff's allegations. Defendants have also argued that any investor losses were not caused by any of the alleged misrepresentations. Additionally, Lead Plaintiff would have to prevail at several stages – class certification, motions for summary judgment, trial, and if he prevailed on those, on the appeals that would likely follow. Thus, there were very significant risks attendant to the continued prosecution of the Action.

26. In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $13,500,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after summary judgment, trial, and appeals, possibly years in the future.

27. Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

| WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT? |
| --- |

28. If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of the claims asserted against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial, or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

| HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT? |
| --- |

29. As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You

are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section below entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?".

30. If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section below entitled, "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?".

31. If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section below entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?".

32. If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiff's Claim (as defined in ¶ 33 below) against Defendants' Releasees (as defined in ¶ 34 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

33. "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of Groupon common stock during the Settlement Class Period. However, Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted in *Frankel v. Thomas*, 1:21-cv-01281-RGA (D. Del.), *Estreen v. Lefkofsky*, C.A. No. 2022-0057-PAF (Del. Ch.), *Khoury v. Williams*, C.A. No. 2022-0077-PAF (Del. Ch.), and/or *Anders v. Angelakis*, C.A. No. 2022-0407-MTZ (Del. Ch.); and (iii) any claims of any person or entity who or that submits a request for exclusion that is accepted by the Court.

34. "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, insurers, reinsurers, employees, and attorneys, in their capacities as such.

35. "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the

9

time of the release of such claims, that, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

36. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants and each of the other Defendants' Releasees, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim (as defined in ¶ 37 below) against Lead Plaintiff and other Plaintiff's Releasees (as defined in ¶ 38 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees.

37. "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or that submits a request for exclusion from the Settlement Class that is accepted by the Court.

38. "Plaintiff's Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

---

**HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?**

---

39. To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **online or postmarked no later than _____, 2022**. A Claim Form is included with this Notice, or you may obtain one from the website maintained by

the Claims Administrator for the Settlement, www.GrouponSecuritiesSettlement.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-866-991-0893. Please retain all records of your ownership of and transactions in Groupon common stock, as they may be needed to document your Claim. If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

| HOW MUCH WILL MY PAYMENT BE? |
|---|

40. At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

41. Pursuant to the Settlement, Defendants have agreed to pay or caused to be paid thirteen million five hundred thousand dollars ($13,500,000) in cash. The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund." If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

42. The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

43. Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final. Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund, or the plan of allocation.

44. Approval of the Settlement is independent from approval of a plan of allocation. Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

45. Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form online or postmarked on or before _____, 2022 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given. This means that each Settlement Class Member releases the Released Plaintiff's Claims (as defined in ¶ 33 above) against Defendants' Releasees (as defined in ¶ 34 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiff's Claims against any of Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

46.    Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Groupon common stock held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares that they purchased or acquired outside of the ERISA Plan.  Claims based on any ERISA Plan's purchases or acquisitions of Groupon common stock during the Settlement Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

47.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

48.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

49.    Only Settlement Class Members, *i.e.*, persons and entities who purchased or otherwise acquired Groupon common stock during the Settlement Class Period will be eligible to share in the distribution of the Net Settlement Fund.  Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  The only securities that are included in the Settlement are shares of Groupon common stock.

## PROPOSED PLAN OF ALLOCATION

50.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

51.    The Plan of Allocation generally measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants.  The Plan of Allocation is not a formal damage analysis. Recognized Loss Amounts are based primarily on the price declines observed over the period which Plaintiffs allege corrective information was entering the market place.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts between July 30, 2019 through and including February 18, 2020, which had the effect of artificially inflating the price of Groupon common stock.  The estimated alleged artificial inflation in the price of Groupon common stock during the Settlement Class Period is reflected in Table 1 below.  The computation of the estimated alleged artificial inflation in the price of Groupon common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff.

12

52. In order to have recoverable damages, disclosures correcting the alleged misrepresentations must be the cause of the decline in the price of the Groupon common stock. In this matter, information disclosed after the market closed on February 18, 2020 allegedly corrected the misrepresentations alleged by Lead Plaintiff, thereby removing the alleged artificial inflation from the price of Groupon common stock on February 19, 2020. Accordingly, in order to have a Recognized Loss Amount, Groupon common stock must have been purchased or acquired during the Settlement Class Period and still held through market close on February 18, 2020.

53. To the extent a Claimant's transactions in Groupon common stock do not satisfy the conditions set forth in the preceding paragraph, his, her or its Recognized Loss Amount for those transactions will be zero.

| Table 1 | | |
|---|---|---|
| Artificial Inflation in Groupon Common Stock[3] | | |
| From | To | Per-Share Price Inflation |
| July 30, 2019 | February 18, 2020 | $1.35 |
| February 19, 2020 | Thereafter | $0.00 |

54. The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss Amount for Groupon common stock. The limitations on the calculation of the Recognized Loss Amount imposed by the PSLRA are applied such that losses on Groupon common stock purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for such stock and its average price during the 90-Day Lookback Period. The Recognized Loss Amount on Groupon common stock purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such stock and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

55. In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions. If a Recognized Loss Amount is calculated to be a negative number, that Recognized Loss Amount shall be set to zero. Any transactions in Groupon common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

56. Based on the formula set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of Groupon common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.

    I.   For each share purchased during the Settlement Class Period that was sold prior to February 19, 2020, the Recognized Loss Amount is $0.00.

---

[3] After the Settlement Class Period, on June 11, 2020, Groupon stock underwent a 1-for-20 reverse stock split. Groupon common stock prices and quantities reported herein are **not** adjusted for this stock split.

13

II. For each share purchased during the Settlement Class Period that was subsequently sold during the period February 19, 2020 through May 18, 2020, inclusive (*i.e.*, the 90-Day Lookback Period), the Recognized Loss Amount is *the least of*:

    a. $1.35; or

    b. the purchase price *minus* the "90-Day Lookback Value" on the date of sale as appears in Table 2 below; or

    c. the purchase price *minus* the sale price.

III. For each share purchased during the Settlement Class Period and still held as of the close of trading on May 18, 2020, the Recognized Loss Amount is *the lesser of*:

    a. 1.35; or

    b. the purchase price minus the average closing price for Groupon stock during the 90-Day Lookback Period, which is $1.05.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value |
| 2/19/2020 | $1.70 | 3/19/2020 | $1.13 | 4/20/2020 | $1.00 |
| 2/20/2020 | $1.70 | 3/20/2020 | $1.11 | 4/21/2020 | $1.00 |
| 2/21/2020 | $1.68 | 3/23/2020 | $1.09 | 4/22/2020 | $1.00 |
| 2/24/2020 | $1.65 | 3/24/2020 | $1.08 | 4/23/2020 | $1.00 |
| 2/25/2020 | $1.62 | 3/25/2020 | $1.07 | 4/24/2020 | $1.01 |
| 2/26/2020 | $1.58 | 3/26/2020 | $1.07 | 4/27/2020 | $1.01 |
| 2/27/2020 | $1.55 | 3/27/2020 | $1.07 | 4/28/2020 | $1.02 |
| 2/28/2020 | $1.52 | 3/30/2020 | $1.07 | 4/29/2020 | $1.02 |
| 3/2/2020 | $1.50 | 3/31/2020 | $1.07 | 4/30/2020 | $1.03 |
| 3/3/2020 | $1.47 | 4/1/2020 | $1.06 | 5/1/2020 | $1.03 |
| 3/4/2020 | $1.45 | 4/2/2020 | $1.05 | 5/4/2020 | $1.03 |
| 3/5/2020 | $1.42 | 4/3/2020 | $1.04 | 5/5/2020 | $1.04 |
| 3/6/2020 | $1.40 | 4/6/2020 | $1.04 | 5/6/2020 | $1.04 |
| 3/9/2020 | $1.37 | 4/7/2020 | $1.03 | 5/7/2020 | $1.04 |
| 3/10/2020 | $1.34 | 4/8/2020 | $1.03 | 5/8/2020 | $1.04 |
| 3/11/2020 | $1.31 | 4/9/2020 | $1.02 | 5/11/2020 | $1.04 |
| 3/12/2020 | $1.28 | 4/13/2020 | $1.02 | 5/12/2020 | $1.04 |
| 3/13/2020 | $1.25 | 4/14/2020 | $1.02 | 5/13/2020 | $1.04 |
| 3/16/2020 | $1.22 | 4/15/2020 | $1.01 | 5/14/2020 | $1.04 |
| 3/17/2020 | $1.19 | 4/16/2020 | $1.01 | 5/15/2020 | $1.05 |
| 3/18/2020 | $1.16 | 4/17/2020 | $1.00 | 5/18/2020 | $1.05 |

## ADDITIONAL PROVISIONS

57. The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in paragraph 60 below) is $10.00 or greater .

14

58.     **FIFO Matching:** If a Settlement Class Member has more than one purchase/acquisition or sale of Groupon common stock, all purchases/acquisitions and sales shall be matched on a First In, First Out ("FIFO") basis. Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

59.     **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her or its Recognized Loss Amounts for all shares of the Groupon common stock.

60.     **Determination of Distribution Amount:** The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.

61.     **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Groupon common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Groupon common stock during the Settlement Class Period shall not be deemed a purchase, acquisition or sale of Groupon common stock for the calculation of an Authorized Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any Groupon common stock unless (i) the donor or decedent purchased or otherwise acquired such Groupon common stock during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Groupon common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

62.     **Short Sales:** The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Groupon common stock. The date of a "short sale" is deemed to be the date of sale of Groupon common stock. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a Claimant has an opening short position in Groupon common stock, the earliest Settlement Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

63.     **Option Contracts:** Option contracts are not securities eligible to participate in the Settlement. With respect to Groupon common stock purchased through the exercise of an option, the purchase date of the Groupon common stock shall be the exercise date of the option, and the purchase price of the Groupon common stock shall be the strike price of Groupon common stock on the date of exercise. Any Recognized Loss Amount arising from purchases of Groupon common stock acquired during the Settlement Class Period through the exercise of an option on Groupon common stock shall be computed as provided for other purchases of Groupon common stock in the Plan of Allocation.

64.     **Market Gains and Losses:** To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Groupon common stock during the Settlement Class Period,

15

the value of the Claimant's Recognized Claim shall be zero. To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Groupon common stock during the Settlement Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

65. For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Groupon common stock during the Settlement Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[4] and (ii) the sum of the Total Sales Proceeds[5] and the Holding Value.[6] If the Claimant's Total Purchase Amount *minus* the sum of the Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's market loss on such securities; if the number is a negative number or zero, that number will be the Claimant's market gain on such securities.

66. After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

67. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Plaintiff, Plaintiff's Counsel, Lead Plaintiff's damages expert,

---

[4] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all Groupon common stock purchased or acquired during the Class Period.

[5] The Claims Administrator shall match any sales of Groupon common stock during the Class Period, first against the Claimant's opening position in Groupon common stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Groupon common stock sold during the Settlement Class Period shall be the "Total Sales Proceeds."

[6] The Claims Administrator shall ascribe a "Holding Value" to shares of Groupon common stock purchased or acquired during the Settlement Class Period and still held as of the close of trading on February 18, 2020, which shall be $1.05. The total calculated holding values for all Groupon common stock shall be the Claimant's "Total Holding Value."

Defendants, Defendants' Counsel, or any of the other Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiff, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

68. The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiff after consultation with his damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the settlement website, www.GrouponSecuritiesSettlement.com.

<div style="border:1px solid black; text-align:center">

**WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?**

</div>

69. Plaintiff's Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiff's Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 33⅓% of the Settlement Fund. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $350,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $5,000. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

<div style="border:1px solid black; text-align:center">

**WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?**

</div>

70. Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *Macovski v. Groupon Inc.*, EXCLUSIONS, c/o Epiq, P.O. Box 2648, Portland, OR 97208-2648. The exclusion request must be **received** no later than _____, 2022. You will not be able to exclude yourself from the Settlement Class after that date. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Macovski v. Groupon, Inc.*, No. 1:20-cv-02581"; (c) identify and state the number of shares of Groupon common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class

17

Period (*i.e.*, between July 30, 2019 and February 18, 2020, inclusive), as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

71. If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiff's Claim against any of the Defendants' Releasees.

72. If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

73. Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds a threshold agreed to by Lead Plaintiff and Defendants.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

74. **Settlement Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing**.

75. The Settlement Hearing will be held on _____, 2022 at __:__ _.m., before the Honorable Matthew F. Kennelly at the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, Courtroom 2103, 219 S. Dearborn Street, Chicago, IL 60604. The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class. The Court also reserves the right to hold the Settlement Hearing telephonically or via videoconference.

76. Any Settlement Class Member who or that does not request exclusion may object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Northern District of Illinois at the address set forth below on or before _____, 2022. You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before _____, 2022**.

| **Clerk's Office** | **Lead Counsel** | **Defendants' Counsel** |
|---|---|---|
| United States District Court Northern District of Illinois Clerk of the Court United States Courthouse 219 S. Dearborn Street, Chicago, IL 60604 | **Kirby McInerney LLP** Thomas W. Elrod, Esq. 250 Park Avenue, Suite 820 New York, NY 10177<br><br>-and-<br><br>**Glancy Prongay & Murray LLP** Leanne H. Solish, Esq. 1925 Century Park East, Suite 2100 Los Angeles, CA 90067 | **Skadden, Arps, Slate, Meagher & Flom LLP** Matthew R. Kipp, Esq. 155 N. Wacker Drive Chicago, IL 60606 |

77.    Any objection (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Groupon common stock that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between July 30, 2019 and February 18, 2020 inclusive), as well as the dates and prices of each such purchase/acquisition and sale. You may not object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

78.    You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

79.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before** _____**, 2022**. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

80.    You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 76 above so that the notice is *received* **on or** _____**, 2022**.

19

81.   The Settlement Hearing may be adjourned by the Court, or held telephonically or via videoconference, without further written notice to the Settlement Class.  If you intend to attend the Settlement Hearing, you should confirm the date, time, and location on the settlement website www.GrouponSecuritiesSettlement.com, or with Lead Counsel, given potential changes as a result of the COVID-19 pandemic.

82.   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

83.   If you purchased or otherwise acquired Groupon common stock between July 30, 2019 and February 18, 2020 inclusive, for the beneficial interest of persons or organizations other than yourself, you must either (a) within seven (7) calendar days of receipt of this Notice, request from the Claims Administrator sufficient copies of the Notice and Claim Form (the "Notice Packet") to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to *Macovski v. Groupon, Inc.*, c/o Epiq, P.O. Box 2648, Portland, OR 97208-2648.  If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred—up to a maximum of $0.50 per Notice Packet mailed; $0.05 per Notice Packet transmitted by email; or $0.10 per name, mailing address, and email address (to the extent available) provided to the Claims Administrator—by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Any dispute concerning the reasonableness of reimbursement costs shall be resolved by the Court.  Copies of this Notice and the Claim Form may also be obtained from the website maintained by the Claims Administrator, www.GrouponSecuritiesSettlement.com, or by calling the Claims Administrator toll-free at 1-866-991-0893.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

84.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.GrouponSecuritiesSettlement.com.

85.   All inquiries concerning this Notice and the Claim Form should be directed to:

| | | |
|---|---|---|
| *Macovski v. Groupon Inc.* | and/or | Thomas W. Elrod, Esq. |
| c/o Epiq | | KIRBY MCINERNEY LLP |
| P.O. Box 2648 | | 250 Park Avenue, Suite 820 |
| Portland, OR 97208-2648 | | New York, NY 10177 |
| 1-866-991-0893 | | (212) 371-6600 |
| www.GrouponSecuritiesSettlement.com | | telrod@kmllp.com |

-and-

Leanne H. Solish, Esq.
GLANCY PRONGAY &
MURRAY LLP
1925 Century Park East, Suite
2100
Los Angeles, CA 90067
(888) 773-9224
settlements@glancylaw.com

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: _____, 2022

By Order of the Court
United States District Court
Northern District of Illinois

21

**Exhibit A-2**

*Macovski v. Groupon, Inc.*
**c/o Epiq**
**P.O. Box 2648**
**Portland, OR 97208-2648**
**Toll Free Number: (866) 991-0893**
**Settlement Website: www.GrouponSecuritiesSettlement.com**
**Email: info@GrouponSecuritiesSettlement.com**

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and submit it online at www.GrouponSecuritiesSettlement.com or mail it by first-class mail to the above address, **submitted online or postmarked no later than _____.**

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | _ |
| **PART II – GENERAL INSTRUCTIONS** | _ |
| **PART III – SCHEDULE OF TRANSACTIONS IN GROUPON COMMON STOCK** | _ |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | _ |

1

## PART I – CLAIMANT INFORMATION

(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's Name

Co-Beneficial Owner's Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit or box number)

City                              State          Zip Code

Foreign Country (only if not USA)

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (home)                    Telephone Number (work)

Email address (E-mail address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

Account Number (account(s) through which the securities were traded)[1]:

Claimant Account Type (check appropriate box):
   Individual (includes joint owner accounts)       Pension Plan          Trust
   Corporation                                      Estate
   IRA/401K                                         Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank. If the same legal entity traded through more than one account you may write "multiple." Please see paragraph 11 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

2

## PART II – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Settlement Notice. The Settlement Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. The Settlement Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Settlement Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to all persons or entities who or that, between July 30, 2019, and February 18, 2020, inclusive (the "Settlement Class Period"), purchased or otherwise acquired Groupon, Inc. ("Groupon") common stock ("Groupon Stock") and were damaged thereby (the "Settlement Class"). All persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.      Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as a control person, executive officer and/or director of Groupon during the Settlement Class Period, and members of his or her Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Groupon; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof. Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Settlement Notice that is accepted by the Court.

4.      If you are not a Settlement Class Member do not submit a Claim Form. YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER. THUS, IF YOU ARE EXCLUDED FROM THE CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.      If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class. Thus, if you are a Class Member, the Judgment will release, and you will be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum, asserting each and every Released Plaintiffs' Claims (including Unknown Claims) against Defendants' Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only

3

if you are a member of the Settlement Class and if you complete and return this form as specified below. If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.      Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Settlement Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.      Use the Schedules of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable Groupon Stock. On the Schedules of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions and sales of the applicable Groupon Stock, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.      Please note: Only Groupon Stock purchased or otherwise acquired during the Settlement Class Period (*i.e.*, from July 30, 2019 and February 18, 2020, inclusive) are eligible under the Settlement. However, because the PSLRA provides for a "90-day look-back period" (described in the Plan of Allocation set forth in the Settlement Notice), you must provide documentation related to your purchases and sales of Groupon Stock during the period from February 19, 2020, through and including May 18, 2020 (*i.e.*, the 90-day look-back period) in order for the Claims Administrator to calculate your Recognized Loss Amount under the Plan of Allocation and process your claim. After the Settlement Class Period, on June 11, 2020, Groupon common stock underwent a 1-for-20 reverse stock split. Groupon common stock prices and quantities reported in the Plan of Allocation are ***not*** adjusted for this stock split. Please submit your data claimed on a pre-split basis.

10.      You are required to submit genuine and sufficient documentation for all of your transactions and holdings of the applicable Groupon Stock set forth in the Schedules of Transactions in Part III of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in Groupon Stock. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11.      Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions

4

made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12. All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired Groupon Stock during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired Groupon Stock during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13. Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a) expressly state the capacity in which they are acting;

(b) identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Groupon Stock; and

(c) furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14. By submitting a signed Claim Form, you will be swearing that you:

(a) own(ed) the Groupon Stock you have listed in the Claim Form; or

(b) are expressly authorized to act on behalf of the owner thereof.

15. By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16. If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all claims processing. This could take substantial time. Please be patient.

17. PLEASE NOTE: As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

18. If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Settlement Notice, you may contact the Claims Administrator, Epiq at

*Macovski v. Groupon, Inc.* P.O. Box 2648, Portland, OR 97208-2648 by email at info@GrouponSecuritiesSettlement.com, or by toll-free phone at (866) 991-0893 or you may download the documents from the Settlement website, www.GrouponSecuritiesSettlement.com.

19. NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at www.GrouponSecuritiesSettlement.com or you may email the Claims Administrator's electronic filing department at info@GrouponSecuritiesLitigation.com. Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at info@GrouponSecuritiesLitigation.com to inquire about your file and confirm it was received and acceptable.

20. NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.GrouponSecuritiesSettlement.com. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@GrouponSecuritiesLitigation.com or by toll-free phone at (866) 991-0893. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

**IMPORTANT: PLEASE NOTE**

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT (866) 991-0893.**

## PART III – SCHEDULE OF TRANSACTIONS IN GROUPON STOCK

Complete this Part III if and only if you purchased/acquired Groupon Stock during the period from July 30, 2019 and February 18, 2020, inclusive.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above.  Do not include information in this section regarding securities other than Groupon Stock.

**1.  BEGINNING HOLDINGS** – State the total number of shares of Groupon Stock held as of the close of trading on July 29, 2019.  (Must be documented.)  If none, write "zero" or "0." _____

**2. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD THROUGH MAY 18, 2020**– Separately list each and every purchase/acquisition (including free receipts) of Groupon Stock from after the opening of trading on July 30, 2019, through and including the close of trading on May 18, 2020. (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/ Acquisition Price Per Share | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

| **3.  SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH MAY 18, 2020** – Separately list each and every sale/disposition (including free deliveries) of Groupon Stock from after the opening of trading on July 30, 2019, through and including the close of trading on May 18, 2020. (Must be documented.) | **IF NONE, CHECK HERE** ○ |
|---|---|

| Date of Sale/ Delivery (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**4.  ENDING HOLDINGS –** State the total number of shares of Groupon Stock held as of the close of trading on May 18, 2020.  (Must be documented.)  If none, write "zero" or "0." _____

7

8

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

## *PART VI – RELEASE OF CLAIMS AND SIGNATURE*

## *YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN*

## *ON PAGE [XX] OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) successors and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever waived, released, discharged, and dismissed each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Settlement Notice) against Defendants' Releasees (as defined in the Stipulation and in the Settlement Notice) and shall forever be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum asserting any or all of the Released Plaintiffs' Claims against any Defendants' Releasee.

### CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), as follows:

1. that I (we) have read and understand the contents of the Settlement Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2. that the Claimant(s) is a (are) Settlement Class Member(s), as defined in the Settlement Notice and in paragraph 2 on page 3 of this Claim Form, and is (are) not excluded from the Class by definition or pursuant to request as set forth in the Settlement Notice and in paragraph 3 on page 3 of this Claim Form;

3. that I (we) own(ed) the Groupon Stock identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4. that the Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of Groupon Stock and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5. that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6. that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

7. that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

8. that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

9.      that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding. **If the IRS has notified the Claimant(s) that he, she or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                              Date

_____

Print your name here

_____

Signature of joint Claimant, if any                         Date

_____

Print your name here

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____

Signature of person signing on behalf of Claimant          Date

_____

Print your name here

_____

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC*. (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 14 ON PAGE 5 OF THIS CLAIM FORM.)

10

## REMINDER CHECKLIST:

1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint Claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Do not send original security certificates or documentation.  These items cannot be returned to you by the Claims Administrator.

5. Keep copies of the completed Claim Form and documentation for your own records.

6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (866) 991-0893.**

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@GrouponSecuritiesSettlment.com, or toll-free at (866) 991-0893 or visit www.GrouponSecuritiesSettlement.com.  Please DO NOT call Groupon or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN _____, 2022**, ADDRESSED AS FOLLOWS:

*Macovski v. Groupon, Inc.*
c/o Epiq
P.O. Box 2648
Portland, OR 97208-2648

OR SUBMITTED ONLINE AT WWW.GROUPONSECURITIESSETTLEMENT.COM **ON OR BEFORE \_\_\_\_\_, 2022**.

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 2022 is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

**Exhibit A-3**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, <br><br> Defendants | Case No. 1:20-cv-02581 <br><br> Honorable Matthew F. Kennelly |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION,
CERTIFICATION OF SETTLEMENT CLASS, AND
PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING;
AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:** **All persons and entities who, during the period between July 30, 2019 through February 18, 2020 inclusive, purchased or otherwise acquired the common stock of Groupon, Inc. ("Groupon") and were damaged thereby (the "Settlement Class"):**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Illinois, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full printed Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action has reached a proposed settlement of the Action for $13,500,000 in cash (the "Settlement") that, if approved, will resolve all claims in the Action.

A hearing will be held on _____, 2022 at __:__ _.m., before the Honorable Matthew F. Kennelly at the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, Courtroom 2103, 219 S. Dearborn Street, Chicago, IL 60604, to determine (i) whether the proposed Settlement should be approved as fair,

reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation and Agreement of Settlement dated June 24, 2022 (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**. If you have not yet received the Notice and Claim Form, you may obtain copies of these documents by contacting the Claims Administrator at *Macovski v. Groupon Inc.*, c/o Epiq, P.O. Box 2648, Portland, OR 97208-2648, 1-866-991-0893. Copies of the Notice and Claim Form can also be downloaded from the website maintained by the Claims Administrator, www.GrouponSecuritiesSettlement.com.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *online or postmarked* no later than _____, 2022. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than _____, 2022, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than _____, 2022, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Groupon, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Requests for the Notice and Claim Form should be made to:

*Macovski v. Groupon Inc.*
c/o Epiq
P.O. Box 2648_
Portland, OR 97208-2648
1-866-991-0893
www.GrouponSecuritiesSettlement.com

2

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

KIRBY MCINERNEY LLP
Thomas W. Elrod, Esq.
250 Park Avenue, Suite 820
New York, NY 10177
(212) 371-6600
telrod@kmllp.com

-and-

GLANCY PRONGAY & MURRAY LLP
Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(888) 773-9224
settlements@glancylaw.com

By Order of the Court

3

<div align="right">**Exhibit B**</div>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS,<br><br>Defendants | Case No. 1:20-cv-02581<br><br>Honorable Matthew F. Kennelly |

<u>**ORDER AND FINAL JUDGMENT APPROVING CLASS ACTION SETTLEMENT**</u>

WHEREAS, a consolidated class action is pending in this Court entitled *Macovski v. Groupon, Inc. et al.*, No. 1:20-cv-02581 (the "Action");

WHEREAS, (a) Lead Plaintiff Fadi E. Rahal, on behalf of himself and the Settlement Class (defined below), and (b) defendant Groupon, Inc. ("Groupon") and defendants Rich Williams and Melissa Thomas (collectively, "Individual Defendants," and, together with Groupon, "Defendants;" and together with Lead Plaintiff, the "Parties") have entered into a Stipulation and Agreement of Settlement dated June 24, 2022 (the "Stipulation"), which provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated _____ __, 2022 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement; (b) certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on _____ __, 2022 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** – This judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on _____, 2022; and (b)

2

the Notice and the Summary Notice, both of which were filed with the Court on _____,

2022.

3.    **Class Certification for Settlement Purposes** – The Court hereby affirms its

determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement

only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure on behalf of the Settlement Class consisting of all persons and entities who or that,

between July 30, 2019, and February 18, 2020, inclusive ("Settlement Class Period"), purchased

or otherwise acquired Groupon common stock and were damaged thereby.  Excluded from the

Settlement Class are: (i) Defendants; (ii) any person who served as a control person, executive

officer, and/or director of Groupon during the Settlement Class Period, and members of his or

her Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors,

affiliates, and predecessors of Groupon; (iv) any entity in which Defendants have or had a

controlling interest during the Settlement Class Period; (v) any trust of which any Individual

Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of

his or her Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of

any person or entity excluded under provisions (i) through (v) hereof.  [Also excluded from the

Settlement Class are the persons and entities listed on Exhibit 1 hereto who or that are excluded

from the Settlement Class pursuant to request.]

4.    **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil

Procedure, and for the purposes of the Settlement only, the Court hereby affirms its

determinations in the Preliminary Approval Order certifying Lead Plaintiff as Class

Representative for the Settlement Class and appointing Lead Counsel as Class Counsel for the

Settlement Class.  Lead Plaintiff and Lead Counsel have fairly and adequately represented the

Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **<u>Notice</u>** – The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

6. **<u>Final Settlement Approval and Dismissal of Claims</u>** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class. The Parties

are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.      The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and the other Settlement Class Members are hereby dismissed with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.      **Binding Effect** – The terms of the Stipulation and of this judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.  [The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this judgment.]

9.      **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of this judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiff's

5

Claim against Defendants' Releasees, and shall forever be enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees. This Release shall not apply to any of the Excluded Claims (as that term is defined in paragraph 1(r) of the Stipulation).

(b)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants and each of the other Defendant Releasees, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of this judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiff's Releasees, and shall forever be enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees. [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

10.      Notwithstanding paragraphs 9(a) – (b) above, nothing in this judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this judgment.

11.      **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12.      **No Admissions** – Neither this judgment, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the

execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any allegation by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount that could be or would have been recovered after trial;

*provided, however*, that the Parties and the Releasees and their respective counsel may refer to this judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

13. **Retention of Jurisdiction** – Without affecting the finality of this Order and Final Judgment, the Court reserves continuing and exclusive jurisdiction over all matters relating to the administration, implementation, effectuation, and enforcement of the Settlement.

14. Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses. Such orders shall in no way affect or delay the finality of this judgment and shall not affect or delay the Effective Date of the Settlement.

15. **Modification of the Agreement of Settlement** – Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this judgment shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of May 6, 2022, as provided in the Stipulation.

17.     **<u>Entry of Final Judgment</u>** – There is no just reason to delay the entry of this Order and Final Judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this Order and Final Judgment in this Action.

SO ORDERED this _____ day of _____, 2022.


_____
The Honorable Matthew F. Kennelly
United States District Judge

**Exhibit 1**

**[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]**