UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) ) | Case No.  1:20-cv-05593 |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) | Judge Jeremy C. Daniel |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Gabriel A. Fuentes |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4)

4861-5349-3427.v3

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     AWARD OF ATTORNEYS' FEES ......................................................................2

        A.      The Percentage Method Should Be Used ..................................................2

        B.      The Percentage Fee Requested Is Reasonable and Appropriate ..............3

                1.      The Request Is Consistent with Fees Awarded in This District ..................4

                2.      Lead Counsel Obtained an Exceptional Result............................................6

                3.      The Requested Attorneys' Fees Are Fair and Reasonable in Light
                        of the Contingent Nature of the Representation ..........................................8

                4.      The Stakes of the Litigation Support the Requested Award......................10

                5.      The Reaction of the Class and Approval of Lead Plaintiffs Further
                        Support the Fee Request .............................................................................10

III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE....................................11

IV.     LEAD PLAINTIFFS' AWARDS PURSUANT TO THE PSLRA ARE
        APPROPRIATE...................................................................................................12

V.      CONCLUSION....................................................................................................13

4861-5349-3427.v3

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbott v. Lockheed Martin Corp.,*
2015 WL 4398475 (S.D. Ill. July 17, 2015) .................................................................11

*Azar v. Grubhub, Inc.,*
No. 1:19-cv-07665, ECF 118 (N.D. Ill. Jan. 12, 2023) ...........................................3, 5, 12

*Beesley v. Int'l Paper Co.,*
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)......................................................................6

*Bell v. Pension Comm. of ATH Holding Co.,*
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...............................................................3, 6

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.,*
No. 1:12-cv-03297, ECF 130 (N.D. Ill. July 22, 2015) ....................................................5

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,*
2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) .............................................................5, 12

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,*
2014 WL 4950173 (N.D. Ill. July 8, 2014)....................................................................12

*Colman v. Theranos, Inc.,*
No. 5:16-cv-06822, ECF 314 (N.D. Cal. July 20, 2018) ..................................................9

*Flynn v. Exelon Corp.,*
2023 WL 8291661 (N.D. Ill. Sept. 8, 2023) ..............................................................3, 12

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) .......................................................................................3

*George v. Kraft Foods Glob., Inc.,*
2012 WL 13089487 (N.D. Ill. June 26, 2012) ...............................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) .......................................................................................7

*In re Akorn, Inc. Sec. Litig.,*
2018 WL 2688877 (N.D. Ill. June 5, 2018)...................................................................13

*In re Cont'l Ill. Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) ..................................................................................11, 12

*In re Dairy Farmers of Am., Inc.,*
80 F. Supp. 3d 838 (N.D. Ill. 2015)...............................................................................3

4861-5349-3427.v3

**Page**

*In re Groupon, Inc. Sec. Litig.*,
    2016 WL 3896839 (N.D. Ill. July 13, 2016)................................................................5

*In re Household Int'l, Inc. ERISA Litig.*,
    2004 WL 7329846 (N.D. Ill. Nov. 22, 2004) ..............................................................5

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .............................................................9

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010)............................................................................9

*In re Stericycle Sec. Litig.*,
    35 F.4th 555 (7th Cir. 2022) .................................................................................6, 12

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .........................................................................2, 10, 11

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005).........................................................................9

*Internal Imp. Fund Trs. v. Greenough*,
    105 U.S. 527 (1881)....................................................................................................2

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..................................................................................2, 4

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) ....................................................5, 7, 9

*Macovski v. Groupon, Inc.*,
    2022 WL 17256417 (N.D. Ill. Oct. 28, 2022)...........................................................11

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)........................................................................3

*Norfolk Cnty. Ret. Sys. v. Ustian*,
    No. 1:07-cv-07014, ECF 217 (N.D. Ill. May 25, 2011) ..............................................5

*Pierrelouis v. Gogo Inc.*,
    2022 WL 7950362 (N.D. Ill. Oct. 13, 2022)...............................................................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..................................................................................9

4861-5349-3427.v3

**Page**

*Rubinstein v. Gonzalez,*
    No. 14-cv-9465, ECF 296 (N.D. Ill. Oct. 22, 2019) ...............................................................6

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................5, 10

*Silverman v. Motorola, Inc.,*
    2012 WL 1597388 (N.D. Ill. May 7, 2012),
    *aff'd sub nom. Silverman v. Motorola Sols., Inc.,*
    739 F.3d 956 (7th Cir. 2013) ................................................................ *passim*

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.,*
    2020 WL 13614342 (N.D. Ill. May 19, 2020),
    *aff'd in part, vacating in part* by *In re Stericycle Sec. Litig.,*
    35 F.4th 555 (7th Cir. 2022) ...............................................................12

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ...............................................................2, 9

*Taubenfeld v. AON Corp.,*
    415 F.3d 597 (7th Cir. 2005) ...............................................................4, 6, 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ...............................................................4

*Will v. Gen. Dynamics Corp.,*
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...............................................................2

*Wolff v. Cash 4 Titles,*
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...............................................................2

*Wong v. Accretive Health, Inc.,*
    2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ...............................................................5, 12

*Wong v. Accretive Health, Inc.,*
    No. 1:12-cv-03102, ECF 85 (N.D. Ill. Apr. 30, 2014)...............................................................12

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §77z-1(a)(4) ...............................................................1, 7, 12, 13

4861-5349-3427.v3

## I. INTRODUCTION

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), was able to secure a $29.25 million settlement for the Class. In awarding fees, courts consider several factors, the most important of which is the quality of work as reflected in the result obtained. The Settlement[1] amounts to approximately 10% of maximum estimated damages, and in considering arguments that were likely to have been advanced concerning damages, could also reflect as much as 12% to more than 50% of damages, which far exceeds typical recoveries in securities class actions. *See infra* §II.B.2. Rarer still, this Settlement was secured prior to Defendants having exhausted all legal challenges, thereby saving time and money for the Class and avoiding an unnecessary burden on the judicial system. It is a great result.

As compensation for its efforts, Lead Counsel requests an award of attorneys' fees of 30% of the $29.25 million Settlement Amount, plus expenses/charges ("expenses") incurred in the prosecution of the Litigation in the amount of $118,705.63, plus interest at the same rate and for the same period as that earned by the Settlement Fund. The 30% fee request is supported and approved by the Court-appointed Lead Plaintiffs, and it is consistent with fees awarded in comparable class action settlements in this District. In addition, Lead Plaintiffs seek awards of $2,500 each pursuant to 15 U.S.C. §77z-1(a)(4) in connection with their representation of the Class. For the reasons set forth herein, the relief sought in this motion should be granted.

---

[1] Capitalized terms not defined herein have the same meanings as in the Stipulation of Settlement dated February 7, 2024 (ECF 203) ("Stipulation"). Citations are omitted and emphasis is added throughout unless otherwise noted.

4861-5349-3427.v3

## II.    AWARD OF ATTORNEYS' FEES

### A.    The Percentage Method Should Be Used

Under the "equitable" or "common fund" doctrine established more than a century ago in *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common fund for a class are entitled to an award of attorneys' fees and expenses from that fund as compensation for their work. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

The "percentage" method for awarding fees (awarding a percentage of the settlement amount) incentivizes and rewards attorneys for obtaining the largest possible settlement for the class, which matters most to the clients. While the "lodestar" method (multiplying hours by rates) has also been used in awarding fees, the lodestar method can create perverse incentives to delay settlements and run up billable hours and thereby rewards inefficient management and staffing of cases, discourages early settlement talks, and causes unnecessary delay and motion practice instead of resolving disputes. *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours").[2] In contingency cases, like this one, clients typically agree to percentage fees, rather than pay based on hourly rates. *See Kirchoff, 786 F.2d at 324* ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"). Thus, "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely

---

[2]    *See also, e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in fee-shifting case that rewarding lawyers based on hourly fees can create a "conflict of interests"); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (Noting that ""hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'").

4861-5349-3427.v3

replicates the contingency fee market rate for counsel's legal services." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009).

Consistent with the market practice and case law, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis." *Bell v. Pension Comm. of ATH Holding Co.*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion to use lodestar "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award). Indeed, judges in this District routinely use the percentage method without regard to lodestar. *See, e.g.*, *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (awarding 27.5% fee on $200 million securities class action settlement, stating it was unnecessary to consider lodestar), *aff'd sub nom. Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013) (affirming without discussion of lodestar); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015) (Dow, J.) (finding the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and finding "no utility in considering" lodestar); *Flynn v. Exelon Corp.*, 2023 WL 8291661, at *1 (N.D. Ill. Sept. 8, 2023) (Kendall, J.) (awarding 26% fee on $173 million settlement fund without discussion of lodestar); Ex. A (*Azar v. Grubhub, Inc.*, No. 1:19-cv-07665, ECF 118 at 1-2 (N.D. Ill. Jan. 12, 2023) (Kennelly, J.) (awarding 30% fee on $42 million settlement without discussion of lodestar)). For these reasons, the percentage method should be used.

**B.      The Percentage Fee Requested Is Reasonable and Appropriate**

The Supreme Court has recognized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'"

- 3 -

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318-19 (2007). It is well known that corporate defendants retain large firms that recruit talented lawyers through very high compensation and are paid hourly rates without regard to risks of losing.[3] Plaintiff fee awards should serve to attract equally talented lawyers to take on the risks of contingent fee representation for plaintiffs in class action cases. *See, e.g.*, *Silverman*, 739 F.3d at 958 (stating that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel").

Here, the requested 30% fee appropriately compensates Lead Counsel for the quality of services provided, as reflected in the result obtained, and the risks of waiting years to get paid or obtaining no compensation at all. Lead Counsel respectfully requests that the Court approve the 30% fee for the reasons that follow.

### 1. The Request Is Consistent with Fees Awarded in This District

The Seventh Circuit has held that, in awarding fees in common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Silverman*, 739 F.3d at 957, 958 (holding fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). In terms of market rates, had this case been litigated on an individual rather than class basis, the customary fee would be 33%-40% of the recovery. *See* *Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting contract providing for 33%

---

[3]    Defense rates are often much higher than those used by Robbins Geller. *See, e.g.*, Ex. B (Roy Strom, *Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder*,' BLOOMBERG LAW (June 9, 2022), https://news.bloomberglaw.com/business-and-practice/big-law-rates-topping-2-000-leave-value-in-eye-of-beholder (noting that partners at certain defense firms, including those who help clients "accused of fraud," were charging near or more than $2,000 per hour for their work)).

4861-5349-3427.v3

fee if case settled before trial). Similarly, courts have recognized that in class action cases, "an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (Dow, J.).

Given the reputation of defense counsel, it was appropriate that Lead Plaintiffs selected Robbins Geller, as it is a leading firm in this area, for example, having obtained the largest securities class action settlement in the history of the Seventh Circuit. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2016 WL 10571774, at*2 (N.D. Ill. Nov. 10, 2016) (approving $1.575 billion settlement). The percentage sought here, 30% of the $29.25 million Settlement Amount, is consistent with some fees awarded to Robbins Geller in other cases in this District. *See, e.g.*, Ex. A (*Grubhub*, ECF 118 at 1-2) (Kennelly, J.) (awarding Robbins Geller 30% on $42 million settlement); Ex. C (*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 1:12-cv-03297, ECF 130 (N.D. Ill. July 22, 2015) (Alonso, J.) (awarding Robbins Geller fees of 33% of $9.75 million settlement)); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (Coleman, J.) (awarding Robbins Geller 30% of $14 million recovery); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement); Ex. D (*Norfolk Cnty. Ret. Sys. v. Ustian*, No. 1:07-cv-07014, ECF 217 (N.D. Ill. May 25, 2011) (Gettleman, J.) (awarding fees of 30% of $13 million recovery)).

The 30% fee request is also consistent with fees awarded in this District to other law firms in securities and other complex class actions. *See, e.g.*, *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3-*4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement); *In re Household Int'l, Inc. ERISA Litig.*, 2004 WL 7329846, at *1 (N.D. Ill. Nov. 22, 2004) (awarding 30% of $46.5 million settlement); *Pierrelouis v. Gogo Inc.*, 2022 WL 7950362, at *1-*2 (N.D. Ill. Oct. 13, 2022) (awarding 33.3% of $17.3 million settlement, finding amount "fair and reasonable

and consistent with fee awards approved in similarly complex cases within the Seventh Circuit");
Ex. E (*Rubinstein v. Gonzalez*, No. 14-cv-9465, ECF 296 (N.D. Ill. Oct. 22, 2019) (Dow, J.)
(awarding 30% of $16.75 million settlement); *Bell*, 2019 WL 4193376, at *1 (approving fee award
of 33.3% of $23.65 million settlement in ERISA class action); *Beesley v. Int'l Paper Co.*, 2014
WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (approving 33.3% fee award of $30 million settlement
in ERISA class action).[4]

## 2. Lead Counsel Obtained an Exceptional Result

Clients care most about results, and in awarding fees, courts should consider the "quality
of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Silverman*, 2012 WL 1597388,
at *3 (noting that counsel's representation "was significant, both in terms of quality and quantity").
Here, the quality is reflected both in the work done and the result obtained.

First, a lot of work went into securing this result. From the outset, this case required a
determined investigation and the skill to respond to a host of complex legal and factual defenses
raised by Defendants in their motions. *See* ECFs 73, 74, 75, 76. Plaintiffs' Counsel spent over
6,570 hours of attorney and paraprofessional time investigating the claims, drafting the detailed
Complaint, preparing extensive briefs in opposition to Defendants' motions to dismiss (which were
largely denied), conducting substantial discovery (including obtaining and analyzing more than
60,000 pages of documents), fully briefing Lead Plaintiffs' motion for class certification, which
was pending at the time of the Settlement, and preparing for and participating in two in-person

---

[4]  Note that the Seventh Circuit recently remanded a 25% fee award in a securities class action that
was clearly distinguishable. *See In re Stericycle Sec. Litig.*, 35 F.4th 555, 568 (7th Cir. 2022). Specifically,
that case settled prior to a ruling on a motion to dismiss, the Seventh Circuit was "not as convinced the
settlement was a good outcome," the settlement followed the defendants' settlements with other parties in
related litigation, and the lead plaintiff had apparently negotiated a lower fee at the outset. *Id.* at 561-67.
In contrast, this case settled after the motion to dismiss and substantial discovery, it is an excellent result,
there had been no other settlements at the outset of the case, and the Lead Plaintiffs support the fee request.

4861-5349-3427.v3

mediation sessions that included the exchange of detailed mediation statements regarding the parties' respective positions on the claims, defenses, and damages.[5] Lead Counsel demonstrated its willingness to continue to litigate the claims rather than accept a settlement that was not in the best interest of the Class by refusing to settle at the first mediation. *See id.*, ¶¶6, 9. The case did not even settle at the second mediation, rather Lead Counsel pressed forward and only settled after a mediator's recommendation. *See id.*, ¶6.

Second, Lead Counsel was able to secure a (relatively) prompt resolution that benefits the Class and preserves judicial resources. Since the amount at stake is so high, it is very rare and difficult to settle these cases at a high amount prior to defendants exhausting their legal challenges through summary judgment or even appeals. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities class action prosecuted by Robbins Geller filed in 2002 settled in 2016 after trial and appeal). Lead Counsel, based on its reputation and willingness to litigate as long as necessary (for example, the 14 years it took in *Household*), was able to convince Defendants to settle at a high amount at a reasonable stage of the Litigation.

Third, not only is it an exceptional settlement, but it is more remarkable relative to the maximum estimated damages. The $29.25 million recovery is approximately 10% of maximum estimated damages, and in considering arguments that were likely to have been advanced concerning damages, could also reflect as much as 12% to more than 50% of damages. *See* Robbins Decl., ¶7. This is much higher than typical settlements in securities class actions. *See* Settlement

---

[5]     *See* accompanying Declaration of Robert J. Robbins in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Robbins Decl."), ¶5(a)-(h).

- 7 -

4861-5349-3427.v3

Memorandum, §IV.A.3.c (noting median settlement recovery of 1.8% of investor losses in securities class actions in 2023).

And fourth, the $29.25 million result is all the more impressive given Lead Counsel was opposed by a large number of law firms (Mayer Brown LLP, Skadden, Arps, Slate, Meagher & Flom LLP, and Akin Gump Strauss Hauer & Feld LLP). In the face of this formidable opposition, there can be no doubt that Lead Counsel provided quality legal services that persuaded Defendants to settle the Litigation on such favorable terms.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958; *see also Taubenfeld*, 415 F.3d at 600 (stating courts should consider the fact "that lead counsel was taking on a significant degree of risk of nonpayment"). Lead Counsel undertook this Litigation on a contingent fee basis, assuming significant risk that defense counsel does not face.

Unlike counsel for defendants, who are generally paid an hourly rate and paid for their time and expenses on a regular (*e.g.*, monthly) basis, regardless of whether they win or lose, Lead Counsel had no such guarantee that it would ever be paid and only knew that it would have to wait several years for any payment while incurring substantial expenses. While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case. In fact, the dismissal rate in securities cases is relatively high as they are well known to be complex and difficult due to the heightened pleading standards. *See, e.g.*, Settlement Memorandum, Ex. B at 15 (report from NERA Economic Consulting noting that 60% of the securities class actions filed over the 2014-2023 period had motions to dismiss granted (some without prejudice)).

4861-5349-3427.v3

Next, securities class actions continue to be risky even after surviving a motion to dismiss because they take so many years to resolve and are not infrequently dismissed even at later stages of the case.[6] Although Lead Plaintiffs successfully opposed Defendants' motions to dismiss, Lead Plaintiffs faced risks in certifying a class, defeating Defendants' motion for summary judgment, defeating inevitable *Daubert* challenges to Lead Plaintiffs' experts, and prevailing at trial and on appeal. *See* Settlement Memorandum, §IV.A.3. Moreover, apart from proving liability, proving damages in securities cases is particularly complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. *See id.*

Finally, even in cases with successful outcomes, Lead Counsel has to wait years to be compensated. As noted, in *Household*, 2016 WL 10571774, at*2, Lead Counsel litigated for 14 years before reaching a settlement. Because the fee in this matter was entirely contingent, the only certainty was that Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. Thus, the risks and contingent nature of Lead Counsel's representation strongly favors approval of the requested fee. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing reduced fee award "[b]ecause the district court failed to provide for the risk of loss, the

---

[6]     *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after Robbins Geller spent eight years litigating with an approximate lodestar of $40 million and over $6 million in unreimbursed expenses), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict); Ex. F (*Colman v. Theranos, Inc.*, No. 5:16-cv-06822, ECF 314 (N.D. Cal. July 20, 2018) (stipulating to dismissal of securities class action following financial collapse of defendant corporation after litigation by Robbins Geller)); *see also In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) (noting that "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy").

4861-5349-3427.v3

possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

### 4. The Stakes of the Litigation Support the Requested Award

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598. Securities cases are expensive to litigate, as they typically involve years of complicated litigation and require retention of expensive experts. At the time Lead Counsel was appointed here, it committed itself to represent the Class for an unknown length of years and to advance substantial expenses and retained experts to navigate the complex issues. Thus, the stakes of the case support the fee award.

### 5. The Reaction of the Class and Approval of Lead Plaintiffs Further Support the Fee Request

Pursuant to this Court's February 27, 2024 Preliminary Approval Order (ECF 206), more than 19,500 copies of the Notice have been mailed to potential Class Members and nominees. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees not to exceed 30% of the Settlement Amount, plus expenses in an amount not to exceed $175,000, plus interest earned on both amounts. Class Members were also advised of their right to object to Lead Counsel's fee and expense request. While the deadline to file objections – May 1, 2024 – has not yet passed, to date, no objection has been received. Lead Counsel will address any objections received in its reply brief to be filed on May 15, 2024.

Moreover, Lead Plaintiffs, who worked with counsel throughout the Litigation, have approved the 30% fee request. *See* Declarations of Lead Plaintiffs Sudhakara R. Murikinati, Benjamin Sandmann, Jerry Nixon, and Jeff S. Turnipseed in Support of Lead Plaintiffs' Motion

- 10 -

4861-5349-3427.v3

for Final Approval of Settlement ("Lead Plaintiff Declarations"). The support of the Court-appointed Lead Plaintiffs, combined with the absence of objection by any other Class Member, including any sophisticated institutional investor, weighs significantly in favor of its reasonableness. *See Macovski v. Groupon, Inc.*, 2022 WL 17256417, at \*2 (N.D. Ill. Oct. 28, 2022) ("The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who oversaw the prosecution and resolution of the Action.").

Accordingly, all of the factors discussed above support the fee award requested by Lead Counsel, and the Court should grant Lead Counsel's application.

## III. LEAD COUNSEL'S EXPENSES ARE REASONABLE

Attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses from the fund. *See Synthroid*, 264 F.3d at 722; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Lead Counsel is requesting payment of expenses in the amount of $118,705.63. As set forth in the accompanying declarations, these expenses were reasonably incurred in the prosecution of this Litigation and are adequately described. *See* Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶5-7, Declaration of Lucas E. Gilmore Filed on Behalf of Hagens Berman Sobol Shapiro LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶5-7, Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶5-7; *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at \*4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court

- 11 -

reporters; travel expense[s]; copy, phone and facsimile expenses and mediation.").[7]  Thus, Lead Counsel respectfully requests payment of these reasonable litigation expenses from the Settlement Fund.

## IV.    LEAD PLAINTIFFS' AWARDS PURSUANT TO THE PSLRA ARE APPROPRIATE

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of [the] class."  15 U.S.C. §77z-1(a)(4). Pursuant to these provisions, courts in this District have granted awards, for example, reflecting time spent on the litigation based on customary rates.  *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 4950173 (N.D. Ill. July 8, 2014) (requesting award for estimated employee time and customary rate); *Hospira*, 2014 WL 12767763, at *1 (St. Eve., J.)

---

[7]    Note that judges in this District have split on whether electronic legal research expenses should be awarded or should be considered part of the attorneys' fee award.  *Compare* Silverman, 2012 WL 1597388, at *4 (declining to approve legal research expenses), *with* George v. Kraft Foods Glob., Inc., 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (allowing recovery of such expenses).  While historically, legal research costs may have been considered to be absorbed by the significant rate increases for attorney time in the transition from paper to electronic legal research, more recently cases appear to have recognized that electronic legal research expenses are passed on to clients in the marketplace.  *See* Ex. G (*Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, ECF 85 at 4-5 (N.D. Ill. Apr. 30, 2014) (discussing split)); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) (awarding legal research expenses); Ex. H (*Azar v. Grubhub, Inc.*, No. 1:19-cv-07665, ECF 106 at 14 n.8 (N.D. Ill. Dec. 8, 2022) (memorandum discussing split)); Ex. A (*Grubhub*, ECF 118 at 1-2 (awarding legal research expenses)); *Exelon Corp.*, 2023 WL 8291661, at *1 (approving litigation expenses that included $18,501.75 for online legal research). *But see* St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc., 2020 WL 13614342, at *4 (N.D. Ill. May 19, 2020) (Wood, J.), *aff'd in part, vacating in part* by *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 n.1 (7th Cir. 2022) (declining to approve legal research expenses).  Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market.  *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market . . . reimburses lawyers' LEXIS and WESTLAW expenses.").  In this case, legal research expenses amount to $7,104.49 of the total $118,705.63 in expenses for which an award is being sought.

- 12 -

(awarding more than $25,000 to four institutional representatives). Also pursuant to these provisions, courts in this District have granted awards reflecting time spent on the litigation that could have been spent on other matters without consideration of an hourly rate or the exact time spent. *See, e.g.*, Ex. I (*In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, ECFs 174-5, ¶7; 174-6, ¶7 (N.D. Ill. Feb. 19, 2018) (requesting awards under 15 U.S.C. §78u-4(a)(4) for time devoted to the "representation of the Settlement Class" that could have otherwise been dedicated to tennis instructor business (ECF 174-5) and power outage business (ECF 174-6))); *In re Akorn, Inc. Sec. Litig.*, 2018 WL 2688877, at *4-*5 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding $10,000 each to three individual class representatives, $30,000 total).

Here, Lead Plaintiffs have submitted accompanying declarations seeking awards of $2,500 each for the time they dedicated to pursuing the claims. *See* Lead Plaintiff Declarations, ¶6. These requests are set forth in the Notice, well below the amounts awarded in some cases cited herein, and there has been no objection to date.

## V.    CONCLUSION

For all the reasons stated herein, and in the accompanying Settlement Memorandum and declarations, Lead Counsel submits that the Court should approve the fee and expense application. Lead Counsel also submits that Lead Plaintiffs' requests for awards of $2,500 each, are reasonable and should be awarded pursuant to 15 U.S.C. §77z-1(a)(4).

DATED:  April 17, 2024                              Respectfully submitted,

                                                    ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
                                                    ROBERT J. ROBBINS (IL Bar # 572233)
                                                    SABRINA E. TIRABASSI (IL Bar # 25521)


                                                    *s/ Robert J. Robbins*
                                                    ROBERT J. ROBBINS

- 13 -

4861-5349-3427.v3

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
BRIAN E. COCHRAN (IL Bar # 6329016)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

Additional Counsel for Lead Plaintiffs

- 14 -

4861-5349-3427.v3