# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) | Case No. 1:19-cv-07665 |
| | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | |
| | ) | |
| GRUBHUB INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

AMENDED ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

This matter came before the Court for hearing on January 12, 2023 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and payment of expenses. ECF 105-106. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over *Business Wire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses, requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement, dated October 7, 2022, ECF 94 (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Litigation and all parties to the Litigation, including all Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and payment of expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion satisfied the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); constituted the best notice practicable under the circumstances; and constituted due, adequate, and sufficient notice to all Persons entitled thereto.

4.      Lead Counsel is hereby awarded attorneys' fees of 30% of the Settlement Amount, plus interest at the same rate earned by the Settlement Fund, and payment of litigation expenses in

the amount of $236,867.32, plus accrued interest, which sums the Court finds to be fair and reasonable.

5.    Lead Plaintiff City of Pontiac Reestablished General Employees' Retirement System is awarded $1,000 and City of Pontiac Police & Fire Retirement System is awarded $1,000, from the Settlement Fund, pursuant to 15 U.S.C. §78u-4(a)(7), related to their representation of the Class.

6.    The award of attorneys' fees and expenses may be paid to Lead Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

7.    In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has analyzed the factors considered within the Seventh Circuit and found that:

(a)    The Settlement has created a fund of $42,000,000 in cash, pursuant to the terms of the Stipulation, and Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by the efforts of Lead Counsel;

(b)    The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who was directly involved in the prosecution and resolution of the Litigation and who has substantial interest in ensuring that any fees paid to counsel are duly earned and not excessive;

(c)    The amount of attorneys' fees awarded are fair and reasonable and are consistent with fee awards approved in cases within the Seventh Circuit with similar recoveries;

(d)    Lead Counsel has conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy and is highly experienced in the field of securities class action litigation;

(e)    Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class;

- 2 -

(f)     Lead Counsel undertook the Litigation on a contingent basis, and has received no compensation during the Litigation, and any fee and expense award has been contingent on the result achieved;

(g)     The claims against the Defendants involve complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(h)     The efforts of Lead Counsel resulted in an all-cash settlement at a stage in the proceedings that will permit Class Members to benefit from the recovery without further delay or expense; and

(i)     over 77,500 copies of the Notice were mailed to potential Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 30% of the Settlement Amount and expenses in an amount not to exceed $265,000, plus interest on such fees and expenses, and there were no objections to the requested attorneys' fees and expenses.

8.     Any appeal or any challenge affecting this Court's approval regarding any of the attorneys' fees and expense applications shall in no way disturb or affect the finality of the Judgment.

9.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

IT IS SO ORDERED.

DATED:   1/12/2023 _____        _____
                                         THE HONORABLE MATTHEW F. KENNELLY
                                         UNITED STATES DISTRICT JUDGE

- 3 -

# EXHIBIT B

Bloomberg Law News 2023-08-01T17:13:28748066556-04:00

# Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

By Roy Strom 2022-06-09T05:30:11000-04:00

*Welcome back to the Big Law Business column on the changing legal marketplace written by me, Roy Strom . Today, we look at a new threshold for lawyers' billing rates and why it's so difficult to put a price on high-powered attorneys. Sign up to receive this column in your inbox on Thursday mornings. Programming note: Big Law Business will be off next week.*

Some of the nation's top law firms are charging more than $2,000 an hour, setting a new pinnacle after a two-year burst in demand.

Partners at Hogan Lovells and Latham & Watkins have crossed the threshold, according to court documents in bankruptcy cases filed within the past year.

Other firms came close to the mark, billing more than $1,900, according to the documents. They include Kirkland & Ellis, Simpson Thacher & Bartlett, Boies Schiller Flexner, and Sidley Austin.

Simpson Thacher & Bartlett litigator Bryce Friedman, who helps big-name clients out of jams, especially when they're accused of fraud, charges $1,965 every 60 minutes, according to a court document.

In need of a former acting US Solicitor General? Hogan Lovells partner Neal Katyal bills time at $2,465 an hour. Want to hire famous litigator David Boies? That'll cost $1,950 an hour (at least). Reuters was first to report their fees.

Eye-watering rates are nothing new for Big Law firms, which typically ask clients to pay higher prices at least once a year, regardless of broader market conditions.

"Value is in the eye of the beholder," said John O'Connor, a San Francisco-based expert on legal fees. "The perceived value of a good lawyer can reach into the multi-billions of dollars."

**Bloomberg Law**®

© 2023 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

Kirkland & Ellis declined to comment on its billing rates. None of the other firms responded to requests to comment.

## Charge It Up

Big Law firms are crossing the $2,000-an-hour threshold after two years of surging rates driven by an increase in demand for lawyers.

| Firm | Highest Billing Rate |
| --- | --- |
| Hogan Lovells | $2,465 |
| Latham & Watkins | $2,075 |
| Kirkland & Ellis | $1,995 |
| Simpson Thacher & Bartlett | $1,965 |
| Boies Schiller Flexner | $1,950 |
| Sidley Austin | $1,900 |

Source: Court documents

Bloomberg Law

Law firms have been more successful raising rates than most other businesses over the past 15 years.

Law firm rates rose by roughly 40 percent from 2007 to 2020, or just short of 3 percent per year, Thomson Reuters Peer Monitor data show. US inflation rose by about 28% during that time.

The 100 largest law firms in the past two years achieved their largest rate increases in more than a decade, Peer Monitor says. The rates surged more than 6% in 2020 and grew another 5.6% through November of last year. Neither level had been breached since 2008.

The price hikes occurred during a once-in-a-decade surge in demand for law services, which propelled profits at firms to new levels. Fourteen law firms reported average profits per equity partner in 2021 over $5 million, according to data from The American Lawyer. That was up from six the previous year.

© 2023 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

The highest-performing firms, where lawyers charge the highest prices, have outperformed their smaller peers. Firms with leading practices in markets such as mergers and acquisitions, capital markets, and real estate were forced to turn away work at some points during the pandemic-fueled surge.

Firms receive relatively tepid pushback from their giant corporate clients, especially when advising on bet-the-company litigation or billion-dollar deals.

The portion of bills law firms collected—a sign of how willingly clients pay full-freight—rose during the previous two years after drifting lower following the Great Financial Crisis. Collection rates last year breached 90% for the first time since 2009, Peer Monitor data show.

Professional rules prohibit lawyers from charging "unconscionable" or "unreasonable" rates. But that doesn't preclude clients from paying any price they perceive as valuable, said Jacqueline Vinaccia, a San Diego-based lawyer who testifies on lawyer fee disputes.

Lawyers' fees are usually only contested when they will be paid by a third party.

That happened recently with Hogan Lovells' Katyal, whose nearly $2,500 an hour fee was contested in May by a US trustee overseeing a bankruptcy case involving a Johnson & Johnson unit facing claims its talc-based powders caused cancer.

The trustee, who protects the financial interests of bankruptcy estates, argued Katyal's fee was more than $1,000 an hour higher than rates charged by lawyers in the same case at Jones Day and Skadden Arps Slate Meagher & Flom.

A hearing on the trustee's objection is scheduled for next week. Hogan Lovells did not respond to a request for comment on the objection.

Vinaccia said the firm's options will be to reduce its fee, withdraw from the case, or argue the levy is reasonable, most likely based on Katyal's extensive experience arguing appeals.

Still, the hourly rate shows just how valuable the most prestigious lawyers' time can be—even compared to their highly compensated competitors.



© 2023 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

"If the argument is that Jones Day and Skadden Arps are less expensive, then you're already talking about the cream of the crop, the top-of-the-barrel law firms," Vinaccia said. "I can't imagine a case in which I might argue those two firms are more reasonable than the rates I'm dealing with."

# Worth Your Time

**On Cravath:** Cravath Swaine & Moore is heading to Washington, opening its first new office since 1973 by hiring former heads of the U.S. Securities and Exchange Commission and Federal Deposit Insurance Corporation. Meghan Tribe reports the move comes as Big Law firms are looking to add federal government expertise as clients face more regulatory scrutiny.

**On Big Law Promotions:** It's rare that associates get promotions to partner in June, but Camille Vasquez is now a Brown Rudnick partner after she shot to fame representing Johnny Depp in his defamation trial against ex-wife Amber Heard.

**On Working From Home:** I spoke this week with Quinn Emanuel's John Quinn about why he thinks law firm life is never going back to the office-first culture that was upset by the pandemic. Listen to the podcast here.

**That's it for this week! Thanks for reading and please send me your thoughts, critiques, and tips.**

To contact the reporter on this story: Roy Strom in Chicago at rstrom@bloomberglaw.com

To contact the editors responsible for this story: Chris Opfer at copfer@bloomberglaw.com; John Hughes at jhughes@bloombergindustry.com

© 2023 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

## Related Articles

Overworked Big Law Can't Find Enough Lawyers With Demand Surging

Never Underestimate Big Law's Ability to Raise Billing Rates

## Related Documents

Trustee's Objection

Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder'

**Bloomberg Law**®

© 2023 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| BRISTOL COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:12-cv-03297 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Young B. Kim |
| vs. | ) | |
| | ) | |
| ALLSCRIPTS HEALTHCARE SOLUTIONS, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

ORDER AWARDING ATTORNEYS' FEES AND EXPENSES

1050433_1

THIS MATTER having come before the Court on the motion of Lead Plaintiffs for an award of attorneys' fees and expenses; the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of the Action to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. All of the capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement dated April 1, 2015 (the "Settlement Agreement").

2. The Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all members of the Class who have not timely and validly requested exclusion.

3. Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court finds and concludes that due and adequate notice of Lead Plaintiffs' motion for an award of attorneys' fees and expenses was directed to all Persons and entities who are Class Members, including individual notice to those who could be identified with reasonable effort, advising them of the application for fees and expenses and of their right to object thereto, and a full and fair opportunity was accorded to all Persons and entities who are members of the Class to be heard with respect to the motion for fees and expenses.

4. The Court hereby awards Lead Counsel attorneys' fees of 33% of the Settlement Amount and expenses of $119,060.10, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid. Said fees shall be allocated among other Plaintiffs' Counsel by Lead Counsel in a manner which, in their good-faith judgment, reflects each counsel's contribution to the institution, prosecution, and resolution of the Action. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of recovery" method considering, among other things that:

- 1 -

1050433_1

       (a)    the requested fee is consistent with percentage fees negotiated *ex ante* in the private market for legal services;

       (b)    the contingent nature of the Action favors a fee award of 33%;

       (c)    the Settlement Fund of $9.75 million was not likely at the outset of the Action;

       (d)    the awarded fee is in accord with Seventh Circuit authority and consistent with empirical data regarding fee awards in cases of this size;

       (e)    the quality legal services provided by Lead Counsel produced the Settlement;

       (f)    the Lead Plaintiffs appointed by the Court to represent the Class reviewed and approved the requested fee;

       (g)    the stakes of the litigation favor the fee awarded; and

       (h)    the reaction of the Class to the fee request supports the fee awarded.

5.    The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Lead Counsel from the Settlement Fund immediately after the date this Order is executed subject to the terms, conditions, and obligations of the Settlement Agreement, which terms, conditions, and obligations are incorporated herein.

IT IS SO ORDERED.

7/22/15

_____
JORGE L. ALONSO
UNITED STATES DISTRICT JUDGE

1050433_1

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> DANIEL C. USTIAN, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 1:07-cv-07014

<u>CLASS ACTION</u>

Judge Robert W. Gettleman
Magistrate Judge Nan R. Nolan

<u>**ORDER AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND
AWARDS TO LEAD PLAINTIFFS**</u>

THIS MATTER having come before the Court on May 25, 2011, on the application of Lead Counsel for an award of attorneys' fees and expenses incurred in the Litigation; the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of the Litigation against the Defendants to be fair, reasonable, and adequate and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated as of January 13, 2011 (the "Stipulation").

2.      This Court has jurisdiction over the subject matter of the application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3.      The Court finds that the amount of fees awarded is fair and reasonable under the percentage-of-recovery method and further finds that a fee award of 30% of the Settlement Fund is consistent with awards made in similar cases.

4.      The Court hereby awards Lead Counsel attorneys' fees of 30% or $3,900,000 of the Settlement Fund.  The Court hereby awards payment of expenses in an aggregate amount of $107,377.51 to be paid from the Settlement Fund.  Said fees shall be allocated by Lead Counsel in a manner which, in their good faith judgment, reflects each counsel's contribution to the institution, prosecution, and resolution of the Litigation.

5.      The awarded attorneys' fees and expenses shall be paid from the Settlement Fund immediately after the date this Order is executed subject to the terms, conditions, and obligations of

1

the Stipulation and in particular ¶6.2 thereof, which terms, conditions, and obligations are incorporated herein.

6.     The Court finds that an award to Lead Plaintiffs Plumbers' Local Union No. 519 Pension Trust ("Local 519") and Norfolk County Retirement System ("Norfolk") for their reasonable time spent directly in their representation of the Class and prosecution of this Action is fair and reasonable, and thus, hereby awards Local 519 $6,500 and Norfolk $4,375 for their efforts.

IT IS HEREBY ORDERED.

DATED : _May 25, 2011_

_____
THE HONORABLE ROBERT W. GETTLEMAN
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, et al., Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 14-cv-9465 |
| | ) | |
| Plaintiffs, | ) ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD GONZALEZ and ABBVIE INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING APPROVAL OF LEAD COUNSEL'S FEES, AND EXPENSES, COSTS TO LEAD PLAINTIFF AND PLAN OF ALLOCATION

On October 22, 2019, this Court heard Lead Plaintiff's Motion for an Award of Attorney's Fees, Reimbursement of Expenses and approval of Plan of Allocation (the "Motion"). This Court has considered the Motion and other related materials submitted by Lead Plaintiff, as well as Lead Plaintiff's presentation at the Final Approval Hearing, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1. Lead Counsel are awarded $5,025,000 in attorneys' fees.

2. Lead Counsel are awarded $530,133.17 as reimbursement of litigation expenses.

3. This Court finds that Lead Plaintiff Dawn Bradley, in prosecuting the case on behalf of the Class, made a substantial contribution to its outcome, and is therefore awarded $9,937.20 in costs, in addition to any share of the Settlement Fund to which she is entitled.

4. The foregoing awards shall be paid from the Settlement Fund in accordance with the Stipulation of Settlement.

5.     This Court approves the proposed Plan of Allocation and finds it is fair, reasonable and adequate.

DATED: October 22, 2019

_____
Honorable Robert M. Dow, Jr.

3

# EXHIBIT F

Stephen M. Rummage (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8136
Facsimile: (206) 757-7136
steverummage@dwt.com

Allison A. Davis (CA State Bar No. 139203)
Kelly M. Gorton (CA State Bar No. 300978)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-4880
allisondavis@dwt.com
kellygorton@dwt.com

*Attorneys for Defendant Ramesh Balwani*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:16-cv-06822-NC |
| Plaintiffs, | **STIPULATION AND ORDER:** |
| vs. | **(1) DISMISSING CASE UNDER FED. R. CIV. P. 41(a)(1)(A)(ii);** |
| THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI, | **(2) PROVIDING FOR CONTINUED JURISDICTION FOR LIMITED PURPOSES; AND** |
| Defendants. | **(3) AMENDING PROTECTIVE ORDER** |
| | Hon. Nathanael Cousins |

The parties to this action, through their undersigned counsel of record, hereby

STIPULATE AND AGREE as follows:

-1-

STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

4813-0054-7693v.2 0103509-000004

1.  The above-captioned action shall be dismissed in its entirety with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  Plaintiffs and Defendants shall each bear her, his, or its own attorneys' fees and costs.

2.  The parties agree that they shall complete the process of redesignations contemplated by the Joint Status Report Re: Meet and Confer on Redesignations of Confidentiality [ECF 305], filed with the Court on June 29, 2018.  The parties further agree that the Court should retain jurisdiction with respect to any disputes arising out of that process.

3.  Paragraph 15 of the Protective Order [ECF 62], entered by the Court on April 14, 2017, requires the return or destruction of all Protected Material, i.e., material marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," within sixty (60) days of the final disposition of this action, subject to counsel's right to retain an archival copy of certain materials even if they contain Protected Material.  The parties jointly request that the Court, through approval of this Stipulation, amend Paragraph 15 of the Protective Order to (a) require the return or destruction of all Protected Material within six (6) months of the entry of this Stipulation and Order and (b) clarify that counsel's right to retain an archival copy of deposition transcripts, as provided in Paragraph 15, subsumes the right to retain an archival copy of audio and/or video of any deposition.

IT IS SO STIPULATED.

Dated: July 20, 2018

By: /s/ Stephen M. Rummage
Stephen M. Rummage (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:     (206) 622-3150
steverummage@dwt.com

Allison A. Davis (139203)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: +1 415 276 6500
Facsimile: +1 415 276 4880
allisondavis@dwt.com

*Attorneys for Defendant Ramesh Balwani*

- 2 -
STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

By: /s/ Michael A. Mugmon

Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Jessica Lewis (SBN 302467)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
jessica.lewis@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

By: /s/ Kathleen Goodhart

Kathleen Goodhart (165659)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2012
Facsimile: +1 415 693 2222
kgoodhart@cooley.com

Stephen C. Neal (170085)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400
nealsc@cooley.com

*Attorneys for Defendant Elizabeth Holmes*

- 3 -

STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

4813-0054-7693v.2 0103509-000004

By: /s/ Reed R. Kathrein
  Reed R. Kathrein (139304)
  Peter E. Borkon (212596)
  HAGENS BERMAN SOBOL SHAPIRO LLP
  715 Hearst Avenue, Suite 202
  Berkeley, CA 94710
  Telephone: +1 510 725 3000
  Facsimile: +1 510 725 3001
  reed@hbsslaw.com
  peterb@hbsslaw.com

  Steve Berman (admitted *pro hac vice*)
  HAGENS BERMAN SOBOL SHAPIRO LLP
  1918 Eighth Avenue, Suite 3300
  Seattle, WA 98101
  Telephone: +1 206 623 7292
  Facsimile: +1 206 623 0594
  steve@hbsslaw.com

  *Attorneys for Plaintiffs and Proposed Lead Counsel*
   *for the Class*

By: /s/ Jason A. Forge
  Jason A. Forge (181542)
  ROBBINS GELLER RUDMAN & DOWD LLP
  655 West Broadway, Suite 1900
  San Diego, CA 92101
  Telephone: (619) 231-1058
  Facsimile: (619) 231-7423
  jforge@rgrdlaw.com

  Paul J. Geller (admitted *pro hac vice*)
  ROBBINS GELLER RUDMAN & DOWD LLP
  120 East Palmetto Park Road, Suite 500
  Boca Raton, FL 33432
  Telephone: (561) 750-3000
  Facsimile: (561) 750-3364
  pgeller@rdrdlaw.com

  Dennis J. Herman (220163)
  ROBBINS GELLER RUDMAN & DOWD LLP
  Post Montgomery Center
  One Montgomery Street, Suite 1800
  San Francisco, CA 94104
  Telephone: (415) 228-4545
  Facsimile: (415) 288-4534
  dennish@rgrdlaw.com

  *Additional Counsel for Plaintiffs*

- 4 -

STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

4813-0054-7693v.2 0103509-000004

# ORDER

## PURSUANT TO STIPULATION, IT IS SO ORDERED.

1.      The above-captioned action is dismissed in its entirety with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), each side to bear her, his, or its own attorneys' fees and costs.

2.      The parties shall complete the process of redesignations contemplated by the Joint Status Report Re: Meet and Confer on Redesignations of Confidentiality [ECF 305].  The Court retains jurisdiction with respect to any disputes arising out of that process.

3.      Paragraph 15 of the Protective Order [ECF 62] is hereby amended to

(a) require the return or destruction of all materials marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" within six (6) months of the entry of this Order rather than sixty (60) days as originally provided in the Protective Order, and

(b) clarify that counsel's right to retain an archival copy of deposition transcripts, as provided in Paragraph 15 of the Protective Order, subsumes the right to retain an archival copy of audio and/or video of any deposition.

Dated: July 20, 2018



_____
Hon. Nathanael Cousins
United States Magistrate Judge

GRANTED

Judge Nathanael M. Cousins

- 5 -

STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

4813-0054-7693v.2 0103509-000004

Case 5:16-cv-06822-NC Document 314 Filed 07/20/18 Page 6 of 6

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Stipulation and [Proposed] Order. In compliance with Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: July 20, 2018                                        DAVIS WRIGHT TREMAINE LLP

                                                            By: /s/ Stephen M. Rummage
                                                                Stephen M. Rummage

- 6 -

STIPULATION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), ETC.
Case No. 5:16-cv-06822-NC

4813-0054-7693v.2 0103509-000004

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


LINDA WONG, Individually and on Behalf  ) No. 12 C 3102
of All Others Similarly Situated,        )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )
                                         )
ACCRETIVE HEALTH, INC., et al.,          ) April 30, 2014
                                         ) Chicago, Illinois
                                         ) 1:40 p.m.
                    Defendants.          ) Fairness Hearing

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

APPEARANCES:

For the Plaintiff:              ROBBINS GELLER RUDMAN & DOWD  LLP
                                200 South Wacker Drive
                                Suite 3100
                                Chicago, Illinois  60606
                                BY:  MR. JAMES E. BARZ

                                ROBBINS GELLER RUDMAN & DOWD LLP
                                655 W. Broadway
                                Suite 1900
                                San Diego, California  92101
                                BY:  MS. ELLEN GUSIKOFF STEWART


For the Defendants:             KIRKLAND & ELLIS LLP
                                300 North LaSalle Street
                                Chicago, Illinois  60654
                                BY:  MR. LEONID FELLER




             TRACEY DANA McCULLOUGH, CSR, RPR
                  Official Court Reporter
                   219 South Dearborn Street
                        Room 1426
                 Chicago, Illinois  60604
                     (312) 435-5570

THE CLERK: 12 C 3102, Wong versus Accretive Health.

MR. BARZ: Good afternoon, Your Honor. Jim Barz on behalf of the plaintiffs.

MS. STEWART: Good afternoon, Your Honor. Ellen Gusikoff Stewart on behalf of the plaintiffs.

MR. FELLER: And good afternoon, Your Honor. Leonid Feller on behalf of Accretive Health and the individual defendants.

THE COURT: All right. Thank you for your patience. I had my other important parties that I had to deal with. And we are here on a fairness hearing. The Court has had an opportunity to review the proposed judgment and the attendant documents and order. Anything else to present to the Court on this issue? And is there an objector here? I understand there was an objection.

MS. STEWART: Your Honor, thank you. We're happy to stand on our papers. And there was an objector, and I just want to update the Court and let the Court know that we have asked that the Court overrule that objection. And ask certainly that the Court rule with respect to his objection to the plan of allocation and to the fee, that the Court find that Mr. Hayes has no standing. We have now confirmed with the claims administrator that Mr. Hayes never submitted a claim form in this matter, and so he has no injury. He has no interest in either of the plan of allocation or the fee. He

does have standing obviously as a class member to object to the settlement.

But for the reasons that we have stated in our reply brief and the defendants stated in their brief, that objection ought to be overruled on the merits. But we would ask that the Court find that with respect to the plan of allocation and to the extent he objects to the fee, that the Court find he has no standing.

THE COURT: And unless I hear different and considering Mr. Hayes isn't here, the Court will grant that motion.

MS. STEWART: Thank you, Your Honor.

THE COURT: All right. And based on the Court's review of the papers unless there's something else to present to Court, the Court will --

MR. BARZ: One more thing, Your Honor. There is a split of authority in this district about legal research, Lexis and Westlaw.

THE COURT: As to the payments.

MR. BARZ: So some judges have allowed it as a recoverable fee. Other judges, for example, in a case that this firm, our firm handled and myself personally before Judge St. Eve and Motorola, she said that those sort of go into your legal fees and they're not separately recoverable. So we wanted to bring that to your attention. We've asked for a fee

recovery -- oh, separate from fees, but the expenses.  We've asked for 30 percent of a fee.  We have asked for expenses of $63,911.14.  Within that is a category that we call legal research and financial research.  We think financial research is recoverable.  It's separate, but we just put them lumped together, and that was $3,448.40.  So some Courts have approved it.

THE COURT:  Do you have what it would be separately?

MR. BARZ:  If you take it out -- yes.  The Lexis fee is $2,034.83.  And the financial research I'm told is $1,167.61.  Combined those are $3,448.40, which is set out in my declaration as an exhibit.

THE COURT:  All right.  Thank you for --

MR. BARZ:  And we've got -- I just filed -- I just did a settlement last week before Judge Darrah.  And I noted that.  And in that approval we -- do we have a copy of that?

MS. STEWART:  That order hasn't been signed.

MR. BARZ:  No, but the final.

MS. STEWART:  Oh.  I have a copy of the fee brief, but I don't have a copy --

MR. BARZ:  Okay.  So you'll see, Your Honor, I'm one of the counsel in that case with some other counsel.  And this was actually -- so this is the Ross versus Career Education case, and it's case 12 C 276, and it's document No. 119.  And I'm going to tender up a copy to the Court to supplement our

filings in this case with this split of authority. And you'll see it's footnote 8 on page 14 of that brief where we sort of lay out the split of authority.

THE COURT: All right.

MR. BARZ: If I could tender a copy of that to Your Honor.

(Document tendered.)

THE COURT: All right. No objection to the Court receiving it?

MR. FELLER: No objection.

THE COURT: All right.

MR. BARZ: And so we don't have any further argument on it, Your Honor. You know, whatever Your Honor decides, we'll live with. We just wanted to highlight that issue for the Court.

THE COURT: And what I want to do is I haven't had for a little while any attorney's fees. I want to make sure I'm consistent. I think I'm pretty sure about what I've done, but I want to make sure that I am consistent. All right. And so I'll make the ruling when I enter the orders later. Other than that, the orders will be entered.

MS. STEWART: Okay.

MR. BARZ: Okay. Great. But when you say as to the fees, you're talking about the 30 percent we've suggested or the expenses?

THE COURT:  No.  No.  As to the split in authority as to the computerized computer research versus the financial research.

MR. BARZ:  Excellent.

THE COURT:  All right.  Anything else?

MR. FELLER:  No, Your Honor.

MR. BARZ:  No.

MS. STEWART:  Thank you, Your Honor.

THE COURT:  I'll enter the orders this afternoon. Thank you very much.

MR. BARZ:  And is the motion for the fees, the 30 percent is that granted, Your Honor?

THE COURT:  That's granted.

MR. BARZ:  Thank you, Your Honor.

THE COURT:  All right.  Thank you very much.

MR. BARZ:  You have a great afternoon.

THE COURT:  You too.

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.


*/s/TRACEY D. McCULLOUGH*                    *May 3, 2014*

Official Court Reporter                              Date
United States District Court
Northern District of Illinois
Eastern Division

# EXHIBIT H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Case No.  1:19-cv-07665 |
| | ) | |
| Plaintiff, | ) ) | CLASS ACTION |
| | ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| GRUBHUB INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4853-3716-1791.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    AWARD OF ATTORNEYS' FEES ......................................................................3

      A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases...........................3

      B.    The Requested Fee Is Reasonable and Appropriate ................................................5

            1.    The 30% Attorneys' Fee Request Is Consistent with Fees Awarded in this District......................................................................6

            2.    Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class...................................................8

            3.    The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation .........................................9

            4.    The Stakes of the Litigation Favor a 30% Fee Award...............................11

             5.    The Reaction of the Class Supports the Requested Award........................12

             6.    Lead Plaintiff Approved the 30% Fee Request..........................................12

III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE...................................13

IV.    AWARDS TO LEAD PLAINTIFF PURSUANT TO THE PSLRA .................14

V.    CONCLUSION...................................................................................................15

4853-3716-1791.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ..........................................................................13

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ..........................................................................4

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
No. 1:12-cv-03297, slip op. (N.D. Ill. July 22, 2015)............................................................14

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) .............................................................6, 10, 15

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2014 WL 4950173 (N.D. Ill. July 8, 2014)............................................................................14

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ...................................................................................................4

*George v. Kraft Foods Global, Inc.*,
2012 WL 13089487 (N.D. Ill. June 26, 2012) .......................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...................................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................................11

*In re Akorn, Inc. Sec. Litig.*,
2018 WL 2688877 (N.D. Ill. June 5, 2018)...........................................................................15

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)....................................................................................11

*In re Broiler Chicken Antitrust Litig.*,
2022 WL 6124787 (N.D. Ill. Oct. 7, 2022)..........................................................................6, 7

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...........................................................................................13, 14

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .....................................................................................4, 7

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................................11

- ii -

*In re Spiegel, Inc. Sec. Litig.*,
No. 1:02-cv-08946, slip op. (N.D. Ill. Mar. 2, 2007)..............................................................6

*In re Sw. Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015) ....................................................................................................7

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ..........................................................................................3, 11, 13

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................................11

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) .............................................................................................3, 5, 6

*Lowry v. RTI Surgical Holdings, Inc.*,
No. 1:20-cv-01939, slip op. (N.D. Ill. Jan. 26, 2022)..............................................................7

*Macovski v. Groupon, Inc.*,
2022 WL 17256417 (N.D. Ill. Oct. 28, 2022).................................................................. *passim*

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009).....................................................................................5

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ....................................................................................................7

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..............................................................................................11

*Ronge v. Camping World Holdings, Inc.*,
No. 1:18-cv-07030, slip op. (N.D. Ill. Aug. 5, 2020) .........................................................6, 14

*Rubinstein v. Gonzalez*,
No. 1:14-cv-09465, slip op. (N.D. Ill. Oct. 22, 2019)..............................................................7

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................6, 10, 12

*Silverman v. Motorola, Inc.*,
2012 WL 1597388 (N.D. Ill. May 7, 2012),
*aff'd*, 739 F.3d 956 (7th Cir. 2013)...............................................................................4, 8, 14

*Silverman v. Motorola, Inc.*,
739 F.3d 956 (7th Cir. 2013) .................................................................................... *passim*

4853-3716-1791.v1

**Page**

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*,
    No. 1:16-cv-07145, slip op. (N.D. Ill. May 19, 2020),
    *rev'd on other grounds*, 35 F.4th 555 (7th Cir. 2022) ......................................................7, 8, 14

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*,
    35 F.4th 555 (7th Cir. 2022)…………………………………………………………………..7

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ......................................................................................................3, 11

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ......................................................................................................6, 8, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................................................5

*Trustees v. Greenough*,
    105 U.S. 527 (1881)..........................................................................................................................3

*Will v. Gen. Dynamics Corp.*,
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..................................................................................3

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ...........................................................................................................4

*Wolff v. Cash 4 Titles*,
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .............................................................................3, 5

*Wong v. Accretive Health, Inc.*,
    2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ..............................................................................6, 14

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...........................................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B).................................................................................................................................13
    §78u-4(a)(4) ...............................................................................................................................2, 9, 14, 15

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA Economic Consulting Jan. 25, 2022)..................................................................................8

4853-3716-1791.v1

## I.    INTRODUCTION

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), has obtained a substantial Settlement[1] consisting of $42 million, plus interest earned thereon.  For the reasons set forth herein and in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Settlement is a very favorable result.  It was achieved through Lead Counsel's vigorous litigation of this matter and the skill and effective advocacy of Lead Counsel.  As compensation for its efforts in achieving this result, Lead Counsel seeks an award of attorneys' fees of 30% of the $42 million fund, plus expenses/charges ("expenses") incurred in the prosecution of the Litigation in the amount of $228,889.82, plus interest at the same rate and for the same period as that earned by the Settlement Fund.  As detailed in §II.B.1. below, the 30% fee request, approved by Lead Plaintiff, is consistent with the fees often awarded in comparable securities class action settlements.

The 30% fee requested is warranted in light of the contingent nature of counsel's representation, the efforts of counsel in obtaining this favorable result, and the risks faced in the prosecution and settlement of the Litigation.  Absent the Settlement, and assuming Lead Plaintiff prevailed on Defendants' anticipated motion for summary judgment, the claims against Defendants could have continued for many years through trial and likely appeals.  As a result of Lead Counsel's diligent prosecution of this Litigation, a favorable settlement was achieved that provides Class Members with a substantial cash benefit now, rather than a potential recovery after several years of continued litigation, and eliminates the possibility of no recovery at all or of the costs of litigation

---

[1]    All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation of Settlement dated October 7, 2022, ECF 94 (the "Stipulation").  Citations are omitted and emphasis is added unless otherwise noted.

4853-3716-1791.v1

diminishing the recovery. The significant settlement is reflective of counsel's experience, reputation, and skill in prosecuting securities class actions.

Lead Counsel undertook representation of the Class on a contingent fee basis and no payment has been made to date for its services or the litigation expenses it has incurred on behalf of the Class. Faced with complex issues, and opposed by experienced defense counsel, Lead Counsel nevertheless achieved a substantial litigation victory early in the case, as Defendants' motion to dismiss was denied in full, conducted extensive discovery, and succeeded in securing a favorable result for the Class. Lead Counsel believes its reputation as a leader in this field, its diligent efforts, and its dedication to the interests of the Class substantially contributed to obtaining the Settlement. The requested fee is within the range of percentages normally awarded in securities class actions in this Circuit and District, and is the appropriate method of compensating counsel. In addition, Lead Plaintiff was actively involved in the Litigation and has approved the requested fee. *See* accompanying Declaration of Sheldon Albritton in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Albritton Decl."), ¶8; Declaration of Matthew Nye in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Nye Decl."), ¶8.

Separately, Lead Plaintiff seeks awards of $1,000 each for the City of Pontiac Reestablished General Employees' Retirement System ("Retirement System") and the City of Pontiac Police & Fire Retirement System ("Police & Fire"), pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Lead Plaintiff supports its application with declarations setting forth the basis for the awards, which are substantially lower than awards in recent cases. Lead Plaintiff respectfully requests that the Court approve the requested awards.

For all the reasons set forth herein and in the accompanying declarations, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable and should be awarded by the Court.

- 2 -

4853-3716-1791.v1

## II. AWARD OF ATTORNEYS' FEES

### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class. Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund. Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common fund for a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

The "lodestar" method (multiplying reasonable hours by reasonable rates) to assess attorneys' fees is an additional method for assessing an appropriate fee award, and is often used in fee-shifting cases or cases involving statutory fee awards. While it can be used in securities class actions as a cross-check on fee awards, courts have recognized it can create perverse incentives that reward inefficient staffing of cases, discourage early settlement talks, cause unnecessary delay in resolving disputes, and thereby increase the burden on the judicial system. *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours"); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in civil rights fee-shifting case the challenge of judicial review of attorney time because the "judge cannot readily see what legal work was reasonably necessary at the time" and that rewarding lawyers for hours billed can create a "conflict of interests").[2]

---

[2]  *See also, e.g.*, *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) ("'Where

- 3 -

Thus, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion on the appropriate method for a given case, "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award).

Consistent with this case law, judges in this District routinely award a reasonable percentage-of-the-fund as fees without any regard to lodestar. *See, e.g.*, *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (fees awarded as a percentage of the settlement fund); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (stating it was unnecessary to consider lodestar and citing cases), *aff'd*, 739 F.3d 956 (7th Cir. 2013) (affirming percentage award without any discussion of lodestar); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015) (Dow, J.) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and stating "the Court sees no utility in considering" counsel's submitted lodestar).

Accordingly, Lead Counsel requests attorneys' fees of 30% of the Settlement Amount.

---

success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'").

4853-3716-1791.v1

## B. The Requested Fee Is Reasonable and Appropriate

The Supreme Court has emphasized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). It is well documented in publicly-available media that large defense firms representing corporations attract talented lawyers with very high compensation, and fee awards should serve to attract equally talented lawyers to take on the risks of contingent fee representation of plaintiffs in class action cases. *See, e.g.*, *Silverman v. Motorola, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (approving fee award and noting that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel"); *Wolff*, 2012 WL 5290155, at *5 ("Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively.").

The percentage-of-the-fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *See Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (stating "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services").

Here, the requested 30% fee appropriately compensates Lead Counsel for the quality of services provided and the risks of obtaining no compensation at all. To date, no Class Member has objected to the fee, and it was approved by Lead Plaintiff. Lead Counsel respectfully requests that the 30% fee be approved.

### 1. The 30% Attorneys' Fee Request Is Consistent with Fees Awarded in this District

The Seventh Circuit has held that, in deciding common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Silverman*, 739 F.3d at 957, 958 (holding that attorneys' fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). Had this case been litigated on an individual rather than class basis, the customary fee arrangement would be in the range of one-third to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled before trial). Moreover, courts in this District have recognized that in common fund cases, "an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (Dow, J.); *see In re Broiler Chicken Antitrust Litig.*, 2022 WL 6124787, at *4 (N.D. Ill. Oct. 7, 2022) (Durkin, J.) (awarding 33% noting that "in large cases like this, the only available evidence of the 'market rate' is past awards").

The percentage sought here, 30% of the $42 million Settlement Amount, is consistent with percentages awarded to Robbins Geller in other securities class action cases in this District. *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (Coleman, J.) (awarding Robbins Geller and co-counsel 30% on $14 million settlement).[3]

---

[3] *See also Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030, slip op. at ¶4 (N.D. Ill. Aug. 5, 2020) (Pallmeyer, J.) (awarding 30% of $12.5 million); *In re Spiegel, Inc. Sec. Litig.*, No. 1:02-cv-08946, slip

- 6 -

The 30% fee request is also consistent with fee percentages often awarded in this District to other law firms in securities and other complex class actions. *See, e.g., Groupon*, 2022 WL 17256417, at *1-*2 (awarding 33-1/3% of $13.5 million securities settlement, which "is consistent with the market rate in similarly complex actions litigat[ed] on a wholly contingent basis"); *Broiler Chicken*, 2022 WL 6124787, at *3 (awarding 33% on $181 million antitrust settlement, net of expenses, rejecting "declining fee scale award structures"); *Lowry v. RTI Surgical Holdings, Inc.*, No. 1:20-cv-01939, slip op. at ¶18 (N.D. Ill. Jan. 26, 2022) (Kennelly, J.) (awarding 30% fee of $10.5 million securities settlement); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, slip op. at ¶1 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (awarding 30% of $16.75 million securities settlement); *Dairy Farmers of Am.*, 80 F. Supp. 3d at 862 (awarding 33% of $46 million antitrust settlement).[4] Thus, Lead Counsel's request for 30% of the total recovery is fair and reasonable and consistent with the "market rate" based on prior fee awards in this District.[5]

---

op. at ¶3 (N.D. Ill. Mar. 2, 2007) (Pallmeyer, J.) (awarding 30% of $17.5 million). Attached hereto as Exhibit A is an appendix of unreported authorities cited herein.

[4] The securities class action cases cited all awarded fees based on a percentage of the gross settlement amount. Recently, a court held that, under *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), expenses and notice and administration costs should be deducted from the gross settlement amount and the fee awarded as a percentage of the remainder. *See, e.g., St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, No. 1:16-cv-07145, slip op. at 4 (N.D. Ill. May 19, 2020) (Wood, J.), *rev'd on other grounds*, 35 F.4th 555, 559 n.1 (7th Cir. 2022) (noting that district court's decision to deduct costs before awarding percentage fee was "not at issue on appeal"). But *Redman* was a consumer case involving a coupon settlement, and the Seventh Circuit has repeatedly noted concerns regarding assessing the actual recovery in coupon settlements because such cases can have a low claims rate and might provide for any unclaimed funds to revert back to the defendants. *See Redman*, 768 F.3d at 629-37; *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015). In contrast, the Seventh Circuit affirmed a percentage fee award in a securities class action based on the aggregate settlement, without any discussion of the need to deduct such expenses. *See Silverman*, 739 F.3d 956 (affirming fee award of 27.5% of $200 million settlement); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (affirming final approval of settlement and noting that district court "awarded attorneys' fees of 30% of the [$14 million] settlement proceeds, or $4.2 million").

[5] The Seventh Circuit recently remanded a 27.5% fee award in a securities class action. *St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, 35 F.4th 555, 568 (7th Cir. 2022). However, that case involved a settlement that was obtained prior to a ruling on a motion to dismiss, that followed large settlements with the government and consumers that "substantially reduced the risk of non-payment" in the securities action, and that involved a Lead Plaintiff that had apparently negotiated a lower fee scale agreement at the outset. *Id.*

- 7 -

### 2. Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class

In evaluating counsel's fee request, courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Silverman*, 2012 WL 1597388, at *3 (noting that "[t]he representation that Class Counsel provided to the class was significant, both in terms of quality and quantity"). From the outset, Lead Counsel sought to obtain the best possible recovery for the Class. Securities cases are well known to be complex and recovery is far from certain due to the heightened pleading standards, which has resulted in a significant dismissal rate. *See, e.g.*, Settlement Memorandum, Ex. A (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022)) at 14, Fig. 14 (noting that for federal securities class actions filed and resolved between January 2012 and December 2021, where a decision was entered on a motion to dismiss, 56% were granted).

This case required a determined investigation and the skill to respond to a host of legal and factual defenses raised by Defendants in connection with both their motion to dismiss and Lead Plaintiff's class certification motion. During the course of the Litigation, Lead Counsel spent over 8,560 hours of attorney and paraprofessional time investigating the claims, drafting the detailed Complaint, preparing an extensive brief in opposition to Defendants' motion to dismiss (which was denied in full), conducting substantial discovery (including obtaining and analyzing more than two million pages of documents), preparing a thorough brief in support of class certification, defending Lead Plaintiff's expert's deposition and the Rule 30(b)(6) depositions of Lead Plaintiff, and preparing for and participating in two mediation sessions that included the exchange of mediation statements regarding the parties' respective positions on the claims and defenses, and damages. *See*

---

at 561-67. Thus, that case is distinguishable from the facts here and does not overrule or undercut the rationale of the fee awards in the cases cited herein.

4853-3716-1791.v1

accompanying Declaration of James E. Barz in Support of: (1) Lead Plaintiff's Motion for Final

Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's

Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiff Pursuant to 15

U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶¶5(a)-(j), 10.  During settlement negotiations, Lead Counsel

demonstrated its willingness to continue to litigate the claims rather than accept a settlement that was

not in the best interest of the Class.  Notably, the case did not settle at the first or second mediation,

but rather Lead Counsel pressed forward with the litigation and negotiations.

Moreover, given the stakes involved, it can be difficult to settle these cases prior to

defendants exhausting all their legal challenges through summary judgment.  *See Glickenhaus & Co.*

*v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities action prosecuted by Robbins Geller

that was filed in 2002, resulted in jury verdict for plaintiffs in 2009, remanded after appeal and

settled in 2016).  Not only was Lead Counsel, based on its reputation and willingness to litigate the

case as long as necessary, able to secure a (relatively) prompt resolution less than three years after

the case was filed, but it was also able to obtain a very good result.  The result for the Class is also

impressive as a percentage of recoverable damages.  *See* Settlement Memorandum, §IV.A.3.b.

This result is all the more impressive given Lead Counsel was opposed in this Litigation by

counsel from Kirkland & Ellis LLP, which has a reputation for being a leading defense firm in

complex civil cases.  In the face of this formidable opposition, Lead Counsel developed its case so as

to persuade Defendants to settle the Litigation on terms favorable to the Class.  Lead Counsel's skill,

expertise, and excellent advocacy in representing the Class is reflected in this favorable result.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment.  The greater the risk of

walking away empty-handed, the higher the award must be to attract competent and energetic

4853-3716-1791.v1

counsel." *Silverman*, 739 F.3d at 958.[6] Lead Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for defendants, who are paid an hourly rate and paid for their expenses on a regular (*e.g.*, monthly) basis, regardless of whether they win or lose, Lead Counsel had no such guarantee of payment, had to wait for any payment while the case was prosecuted for several years, and had to incur unpaid expenses while the case was ongoing. While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case.

Lead Counsel had to build this case from its investigation without the benefit of any SEC or other government investigation, findings, or settlements. Even though Lead Plaintiff successfully opposed Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles. Assuming Lead Plaintiff was successful in certifying a class and able to overcome Defendants' motion for summary judgment after costly, additional discovery efforts, it still would have faced risks in proving falsity, materiality, scienter, and loss causation before a jury. *See* Settlement Memorandum §IV.A.3. Moreover, even apart from proving liability, proving damages in securities cases is complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. *See id*. Here, the damages assessments of the parties' respective experts would be heavily disputed (*see* ECF 82 at 21; Settlement Memorandum, §IV.A.3.b) and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."

There are numerous examples where plaintiffs' counsel in contingent cases such as this, after the expenditure of significant time and expenses, have received no compensation. Securities cases

---

[6] *See also Schulte*, 805 F. Supp. 2d at 598 ("All contingent fee class action cases involve some degree of risk for plaintiffs' counsel."); *Taubenfeld*, 415 F.3d at 600 (stating courts should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"); *Hospira*, 2014 WL 12767763, at *1 ("the contingent nature of the Action favors a fee award of 30%").

4853-3716-1791.v1

have been dismissed at the pleading stage, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by the "new 'transactional' rule" enunciated by the Supreme Court).[7] Quite simply, "Defendants prevail outright in many securities suits." *Silverman*, 739 F.3d at 958.

Because the fee in this matter was entirely contingent, the only certainty was that Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. Notably, the case did not settle during the two mediation sessions, as Lead Counsel committed its time and money to the vigorous and successful prosecution of the Litigation for the benefit of the Class. The contingent nature of counsel's representation strongly favors approval of the requested fee. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's reduced fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

### 4.    The Stakes of the Litigation Favor a 30% Fee Award

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal

---

[7]    In fact, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversal of jury verdict of $81 million).

4853-3716-1791.v1

proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598. In this high stakes litigation, Lead Counsel successfully obtained a favorable recovery even before the completion of fact discovery. A settlement now is more beneficial to the Class than waiting several more years to obtain a recovery, not only because of the time value of money but also because the increased expenses of continued litigation could have reduced the amount of any available insurance to fund a recovery to the Class. As the litigation advances, the risks can also increase. And, even if Lead Plaintiff prevailed at trial, Defendants would have the opportunity to appeal any judgment obtained, possibly delaying a favorable resolution for years. *See supra*, §II.B.2-3. Lead Counsel undertook this case fully prepared to litigate against these obstacles.

### 5. The Reaction of the Class Supports the Requested Award

Pursuant to this Court's October 14, 2022 Preliminary Approval Order (ECF 99), more than 70,600 copies of the Notice have been mailed to potential Class Members and nominees. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees not to exceed 30% of the Settlement Amount, plus expenses in an amount not to exceed $265,000, plus interest earned on both amounts. Class Members were also advised of their right to object to Lead Counsel's fee and expense request and the procedure for doing so. While the deadline to file objections – December 22, 2022 – has not yet passed, to date, no objection to any aspect of the Settlement, including the fee and expense request, has been received. Lead Counsel will address any objections received in its reply brief to be filed on January 5, 2023.

### 6. Lead Plaintiff Approved the 30% Fee Request

Lead Plaintiff, who worked with counsel throughout the Litigation, has approved the 30% fee request. *See* Albritton Decl., ¶8; Nye Decl., ¶8. Unlike consumer and other class action cases where lead plaintiffs may have little or no stake in the litigation, securities fraud cases have unique procedures for appointing as lead plaintiff the movant with the largest financial interest, which serve

- 12 -

to protect class members. *See Silverman*, 739 F.3d at 959 (stating it is "a premise of several rules in the Private Securities Litigation Reform Act" that investors with a large stake in the settlement fund, in "looking out for themselves, help to protect the interests of class members with smaller stakes"); 15 U.S.C. §78u-4(a)(3)(B). Moreover, the Class consists of many sophisticated Class Members who have counsel and incentive to object to the fee award, and the Seventh Circuit has also considered the absence of objection from such class members as supporting the reasonableness of a fee award. *See Silverman*, 739 F.3d at 959 (affirming fee award in securities class action and noting lack of objection by "institutional investors [that] have in-house counsel with fiduciary duties to protect the beneficiaries" and high fee awards could be "worth a complaint to the district judge if the lawyers' cut seems too high"). That Lead Plaintiff, two sophisticated institutional investors, approved the fee request also weighs in favor of its reasonableness. *See Groupon*, 2022 WL 17256417, at *2 ("The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who oversaw the prosecution and resolution of the Action.").

Accordingly, all of the factors discussed above support the fee award requested by Lead Counsel, and the Court should grant counsel's application.

## III. LEAD COUNSEL'S EXPENSES ARE REASONABLE

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *Synthroid*, 264 F.3d at 722; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Lead Counsel is requesting payment of expenses in the amount of $228,889.82. As set forth in the accompanying Declaration, these expenses were reasonably incurred in the prosecution of this Litigation and are adequately described. *See* Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶6, 7; *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17,

- 13 -

4853-3716-1791.v1

2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").[8]  Thus, Lead Counsel respectfully requests payment of these reasonable litigation expenses from the Settlement Fund.

## IV.    AWARDS TO LEAD PLAINTIFF PURSUANT TO THE PSLRA

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §78u-4(a)(4).  Pursuant to these provisions, courts in this District have granted awards, for example, reflecting time spent on the litigation based on customary rates.  *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v.*

---

[8]    Note that judges in this District have split on whether electronic legal research expenses should be awarded or should be considered part of the attorneys' fee award. *Compare Silverman*, 2012 WL 1597388, at *4 (declining to approve legal research expenses) *with George v. Kraft Foods Global, Inc.*, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (allowing recovery of such expenses).  While initially such costs were considered to be absorbed by rate increases for attorney time in the transition from paper to electronic legal research, more recently cases appear to have continued to approve electronic legal research expenses as an additional expense passed on to clients in the marketplace. *See Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, Transcript of Proceedings, ECF 85 at 4-5 (N.D. Ill. Apr. 30, 2014) (discussing split); *Accretive*, 2014 WL 7717579 (awarding legal research expenses); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, ECF 116 at 14-15 (N.D. Ill. June 17, 2015) (memorandum discussing split); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, slip op. at ¶4 (N.D. Ill. July 22, 2015) (Alonso, J.) (awarding legal research expenses); *Camping World*, No. 1:18-cv-07030, ECF 140 at 13 n.7 (N.D. Ill. July 1, 2020) (memorandum noting split); *Camping World*, slip op. at ¶4 (awarding expenses).  But *see Stericycle*, slip op. at 4 (declining to approve legal research expenses).  This Court has recently approved reimbursement of expenses that included amounts for "Online Research." *See, e.g.*, *Groupon*, No. 1:20-cv-02581, ECF 121, ¶107 (N.D. Ill. Sept. 8, 2022) (counsel including "Online Research" in categories of expenses); *Groupon*, 2022 WL 17256417, at *1 (awarding reimbursement of counsel's expenses).  Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market. *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market reimburses lawyers' LEXIS and WESTLAW expenses.").  In this case, legal research expenses amount to $26,449.37 of the total $228,889.82 in expenses for which an award is being sought.

- 14 -

*Hospira, Inc.*, 2014 WL 4950173 (N.D. Ill. July 8, 2014) (requesting award for estimated employee time and customary rate); *Hospira*, 2014 WL 12767763, at *1 (St. Eve., J.) (awarding more than $25,000 to four institutional representatives). Also pursuant to these provisions, courts in this District have granted awards reflecting time spent on the litigation that could have been spent on other matters without consideration of an hourly rate or the exact time spent. *See, e.g.*, *Groupon*, No. 1:20-cv-02581, ECF 121, ¶107 (N.D. Ill. Sept. 8, 2022) (requesting lead plaintiff award where individual lead plaintiff "contributed time for the benefit of the Settlement Class"); *Groupon*, 2022 WL 17256417, at *2 (awarding $5,000 to lead plaintiff); *In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, ECF 174-5, ¶7 (N.D. Ill. Feb. 19, 2018) (requesting award under 15 U.S.C. §78u-4(a)(4) for time devoted to the "representation of the Settlement Class" that could have otherwise been dedicated to tennis instructor business); *In re Akorn, Inc. Sec. Litig.*, 2018 WL 2688877, at *4-*5 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding $10,000 each to three individual class representatives, $30,000 total).

Here, the Lead Plaintiff Pension Funds have submitted accompanying declarations seeking awards of $1,000 each for the time they dedicated to pursuing the claims. *See* Albritton Decl., ¶9; Nye Decl., ¶9. The requests of $2,000, combined, are well below the $10,000 maximum combined award amount set forth in the Notice, well below the amounts awarded in other cases in this District, and there has been no objection to date.

V.      **CONCLUSION**

For all the reasons stated herein, and in the accompanying Settlement Memorandum and declarations, Lead Counsel submits that the Court should approve the fee and expense application. Lead Counsel also submits that Lead Plaintiff's request for awards of $1,000 each for Retirement System and Police & Fire, are reasonable and should be awarded pursuant to 15 U.S.C. §78u-4(a)(4).

4853-3716-1791.v1

DATED: December 8, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)

<u>          *s/ James E. Barz*          </u>
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
BRIAN E. COCHRAN (IL Bar # 6329016)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4853-3716-1791.v1

- 17 -

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
MATTHEW HENZI
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
cbdunn@asherkellylaw.com
mhenzi@asherkellylaw.com

Additional Counsel for Lead Plaintiff

4853-3716-1791.v1

# EXHIBIT I

# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| IN RE AKORN, INC.<br>SECURITIES LITIGATION | Case No. 15-CV-01944<br><br>Hon. Gary Feinerman |

**DECLARATION OF MIKOLAJ SARZYNSKI IN SUPPORT OF FINAL APPROVAL<br>OF THE SETTLEMENT AND REIMBURSEMENT OF CLASS PLAINTIFFS' COSTS**

395221.1 AKORN

I, Mikolaj Sarzynski, hereby declare as follows:

1.      I am a member of Court-appointed Lead Plaintiff Akorn Investor Group ("AIG"), which consists of myself, J.M. Cunniff, Jr., and Elizabeth Cunniff (collectively, "Class Plaintiffs"). I respectfully submit this declaration in support of final approval of the Settlement and reimbursement of Class Plaintiffs' costs.

2.      I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). I have personal knowledge of the matters set forth in this Declaration, as I have both been directly involved in monitoring and overseeing the prosecution of the above-captioned action (the "Action"), as well as the negotiations leading to the Settlement, and I could and would testify competently to these matters.

3.      On August 24, 2015, AIG was appointed Lead Plaintiff in this Action. In fulfillment of my responsibilities as a member of AIG, I have worked closely with Co-Lead Counsel Glancy Prongay & Murray LLP ("GPM") and Pomerantz LLP ("Pomerantz," and together with GPM, "Class Counsel") to obtain a favorable result in this case for the benefit of the Settlement Class.

4.      The specific tasks I performed include but are not limited to:

(a)      regularly communicating with Class Counsel regarding the posture and progress of the case;

(b)      reviewing significant pleadings and memoranda filed by Class Counsel in the litigation, including the 93-page Consolidated Amended Class Action Complaint, the briefing on Defendants' motion to dismiss, and the briefing on the motion for class certification;

(c)     reviewing the Court's orders and other litigation-related information obtained from Class Counsel;

(d)     reviewing Defendants' document requests with Class Counsel and providing my responses to the document requests;

(e)     collecting and producing documents in response to Defendants' document requests;

(f)     reviewing Defendants' interrogatories with Lead Counsel and providing my responses to the interrogatories;

(g)     preparing for and participating in my deposition;

(h)     consulting with Lead Counsel before and during the negotiations that resulted in the proposed Settlement; and

(i)     evaluating and approving the proposed Settlement.

5.      Based on my involvement throughout the prosecution and resolution of the claims asserted in the Action, I believe that the Settlement provides an excellent recovery for the Settlement Class, particularly in light of the risks of continued litigation. Thus, I believe that the proposed Settlement is fair, reasonable, and adequate to the Settlement Class, and I therefore strongly endorse final approval of the Settlement by the Court.

6.      I understand that reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA. For this reason, I am seeking reimbursement for the costs and expenses that I incurred relating to my representation of the Settlement Class.

7.      The time that I devoted to the representation of the Settlement Class in this Action is time that I otherwise could have dedicated to running my business as a tennis instructor and thus represented a cost to me. Accordingly, I respectfully seek reimbursement in the amount of

395221.1 AKORN                              2

$10,000. It is my belief that this request for reimbursement is fair and reasonable given the amount of time I have spent on this litigation.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed this 19th day of February 2018.

By: /s/ Mikolaj Sarzynski
    Mikolaj Sarzynski

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

IN RE AKORN, INC.
SECURITIES LITIGATION

Case No. 15-CV-01944

Hon. Gary Feinerman

## DECLARATION OF J.M. CUNNIFF, JR., AND ELIZABETH CUNNIFF IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT AND <u>REIMBURSEMENT OF CLASS PLAINTIFFS' COSTS</u>

395218.1 AKORN

We, J.M. Cunniff, Jr., and Elizabeth Cunniff, hereby declare as follows:

1.      We are members of Court-appointed Lead Plaintiff Akorn Investor Group ("AIG"), which consists of ourselves and Mikolaj Sarzynski (collectively, "Class Plaintiffs"). We respectfully submit this declaration in support of final approval of the Settlement and reimbursement of Class Plaintiffs' costs.

2.      We are aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). We have personal knowledge of the matters set forth in this Declaration, as we have both been directly involved in monitoring and overseeing the prosecution of the above-captioned action (the "Action"), as well as the negotiations leading to the Settlement, and we could and would testify competently to these matters.

3.      On August 24, 2015, AIG was appointed Lead Plaintiff in this Action. In fulfillment of our responsibilities as members of AIG, we have worked closely with Co-Lead Counsel Glancy Prongay & Murray LLP ("GPM") and Pomerantz LLP ("Pomerantz," and together with GPM, "Class Counsel") to obtain a favorable result in this case for the benefit of the Settlement Class.

4.      The specific tasks we performed include but are not limited to:

(a)      regularly communicating with Class Counsel regarding the posture and progress of the case;

(b)      reviewing significant pleadings and memoranda filed by Class Counsel in the litigation, including the 93-page Consolidated Amended Class

Action Complaint, the briefing on Defendants' motion to dismiss, and the briefing on the motion for class certification;

     (c)    reviewing the Court's orders and other litigation-related information obtained from Class Counsel;

     (d)    reviewing Defendants' document requests with Class Counsel and providing our responses to the document requests;

     (e)    collecting and producing documents in response to Defendants' document requests;

     (f)    reviewing Defendants' interrogatories with Lead Counsel and providing our responses to the interrogatories;

     (g)    preparing for and participating in our depositions;

     (h)    consulting with Lead Counsel before and during the negotiations that resulted in the proposed Settlement; and

     (i)    evaluating and approving the proposed Settlement.

5.    Based on our involvement throughout the prosecution and resolution of the claims asserted in the Action, we both believe that the Settlement provides an excellent recovery for the Settlement Class, particularly in light of the risks of continued litigation. Thus, we both believe that the proposed Settlement is fair, reasonable, and adequate to the Settlement Class, and we therefore strongly endorse final approval of the Settlement by the Court.

6.    We understand that reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA. For this reason, we are seeking reimbursement for the costs and expenses that we incurred relating to our representation of the Settlement Class.

7.    The time that we devoted to the representation of the Settlement Class in this

Action is time that we otherwise could have dedicated to running our joint business, Power Outage Services Company, LLC, and thus represented a cost to us. Accordingly, we respectfully seek reimbursement in the amount of $10,000 each ($20,000 total). It is our belief that this request for reimbursement is fair and reasonable given the amount of time we have spent on this litigation.

 We declare under penalty of perjury, that the foregoing is true and correct.

 Executed this 19th day of February 2018.

By: */s/ J.M. Cunniff, Jr.*
   J.M. Cunniff, Jr.

 Executed this 19th day of February 2018.

By: */s/ Elizabeth Cunniff*
   Elizabeth Cunniff