UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re GOHEALTH, INC. SECURITIES LITIGATION | ) ) ) | Case No. 1:20-cv-05593 |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) ) | Judge Jeremy C. Daniel |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| ALL ACTIONS. | ) | |
| | ) | |

DECLARATION OF ROBERT J. ROBBINS IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4)

4888-9573-5221.v1

I, Robert J. Robbins, declare as follows:

1.      I am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  Robbins Geller serves as Court-approved Lead Counsel for the Court-appointed Lead Plaintiffs Sudhakara R. Murikinati, Jerry Nixon, Benjamin Sandmann, and Jeff S. Turnipseed.[1]  I have been actively involved in prosecuting and resolving the Litigation, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my participation in this Litigation and my supervision of, or communications with, other lawyers and staff assigned to this matter.  This declaration was prepared with the assistance of other lawyers at Robbins Geller, reviewed by me before signing, and the information contained herein is believed to be accurate based on what I know and what I have been told by others.

2.      I submit this declaration in support of: (1) Lead Plaintiffs' motion for approval of the $29,250,000 all-cash Settlement and the proposed Plan of Allocation; and (2) Lead Counsel's motion for an award of attorneys' fees and expenses.  Both motions have the support of Lead Plaintiffs, as set forth in their concurrently filed declarations.

## I.      THE SETTLEMENT

3.      The relevant facts and allegations are set forth in Lead Plaintiffs': (i) Consolidated Complaint for Violations of the Securities Act of 1933 ("Complaint") (ECF 66); (ii) concurrently filed Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"); and (iii) concurrently filed Memorandum of Points and Authorities in Support of

---

[1]      Capitalized terms used herein that are not otherwise defined shall have the meanings as provided in the Stipulation of Settlement dated February 7, 2024 (ECF 203) (the "Stipulation").

4888-9573-5221.v1

Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum").

4.      Securities class actions are complex and challenging cases and, given the stakes involved, result in defendants hiring some of the largest law firms and vigorously disputing liability and damages.  This case was no exception.  The legal risks to continued litigation are discussed in the Settlement Memorandum and Fee Memorandum and include Defendants' arguments that: (i) Lead Plaintiffs could not establish that Defendants' challenged statements were false and misleading when made; (ii) certain alleged statements were immaterial puffery; (iii) certain challenged statements were forward looking and, therefore, protected by the bespeaks caution/safe harbor doctrine; and (iv) Lead Plaintiffs could not establish damages.

5.      Prior to the Settling Parties ultimately reaching agreement on November 10, 2023, Lead Counsel and Lead Plaintiffs had engaged in substantial litigation and arm's-length negotiations that allowed them to be informed about the benefits of settlement and risks of ongoing litigation.  For example:

(a)      Lead Counsel conducted a comprehensive investigation into the facts, circumstances, and potential claims and defenses that included analysis of SEC filings, media and analyst reports, press releases, shareholder communications, relevant case law and authorities, and other publicly-available information;

(b)      Lead Counsel used the materials obtained from its investigation to prepare the detailed, 147-paragraph Complaint, then prepared extensive briefs in opposition to Defendants' motions to dismiss the Complaint, which the Court denied in full against GoHealth, the Individual Defendants, NVX Holdings, and the Underwriter Defendants, while denying Centerbridge's motion to dismiss in part and granting it in part, dismissing certain Centerbridge entities, allowing the claims to proceed;

4888-9573-5221.v1

(c) Lead Counsel drafted and then met and conferred regarding document requests and subpoenas that it served on all Defendants and more than 20 non-parties and, as a result, obtained and analyzed more than 7,500 documents, exceeding 60,000 pages;

(d) Each Lead Plaintiff, working with Lead Counsel, responded to interrogatories with signed verified responses, produced documents, and submitted declarations in support of Lead Plaintiffs' Motion for Class Certification and, separately, for Final Approval of Settlement;

(e) Lead Counsel retained damages expert Matthew D. Cain, Ph.D., Senior Fellow, Berkeley Center for Law and Business, University of California ("Dr. Cain"), as a consultant and potential expert witness to offer opinions and testify regarding damages related to GoHealth Class A common stock sold pursuant and/or traceable to GoHealth's IPO. Dr. Cain prepared damages models and estimates for Lead Plaintiffs' claims that were used to inform Lead Plaintiffs' litigation strategy and negotiations at the mediations that led to the Settlement;

(f) Lead Counsel prepared for two all-day, in-person mediations, including by consulting with Dr. Cain on potential damages and Defendants' arguments concerning damages, and the parties exchanged mediation briefs that detailed specific evidence and legal arguments each side would rely upon as the case progressed;

(g) On February 16, 2023, Lead Counsel participated in (and Lead Plaintiffs received updates regarding) an all-day, in-person mediation before the mediator, David M. Murphy ("Mr. Murphy") of Phillips ADR Enterprises, LLC, a well-respected and experienced mediator, which ended without an agreement; and

(h) As the parties continued litigating the case, Lead Counsel and Lead Plaintiffs continued to engage in extensive settlement negotiations with Defendants over several

- 3 -

months following the initial mediation, including an additional, in-person mediation session with Mr. Murphy on July 25, 2023, which ended without an agreement.

6.      The litigation and settlement negotiations were hard-fought, as reflected by the motion to dismiss briefing, class certification briefing, failed mediations before an experienced mediator, and continued litigation and settlement negotiations for several months thereafter.  The Settlement was reached only after a second mediation session ended without agreement, and Mr. Murphy thereafter issued a mediator's proposal to settle the action for $29,250,000.

7.      The $29.25 million all-cash Settlement confers a substantial benefit to the Class. From its analysis, Lead Counsel determined that there were significant risks to continuing the litigation.  For example, Defendants have maintained that Lead Plaintiffs did not show the challenged statements were false or misleading when made and that many of the challenged statements were forward-looking statements of opinion or optimism.  Additionally, as set forth in the Settlement Memorandum (at §IV.A.3.b.), damages in securities class actions are, and in this case in particular would be, hotly contested throughout expert discovery and at trial, and Lead Plaintiffs and Lead Counsel have secured a favorable result for the Class under the facts of this case.  Not only is it an exceptional settlement, but it is more remarkable relative to the maximum estimated damages.  The $29.25 million recovery is approximately 10% of maximum estimated damages, and in considering arguments that were likely to have been advanced by Defendants concerning damages, could also reflect as much as 12% to more than 50% of damages.

8.      In addition, Defendants provided Lead Plaintiffs with information about potentially available insurance coverage, which information was taken into account during the parties' extensive, arm's-length negotiations undertaken by experienced negotiators, supervised by a mediator, and is reflected in the Settlement Amount agreed upon between the parties.  Had the case continued in litigation for several years, as many securities class actions do, the expenses of

4888-9573-5221.v1

litigation would have reduced any available insurance to fund a recovery as the parties proceeded to depositions, expert discovery, summary judgment, trial, and any appeals, while exposing the Class to risks of losing or narrowing the paths to recovery.

9. Lead Counsel expended substantial time and effort to achieve the $29.25 million all-cash Settlement in this case which attempts to maximize the amount of the settlement without the costs, expense, and risks of continued litigation. Lead Plaintiffs and Lead Counsel could have settled the Litigation even earlier in the case at a substantially lower amount, but instead litigated the case through motions to dismiss, two mediations, contested document and written discovery, and class certification briefing. In contrast, continuing to litigate would not guarantee a larger recovery for the Class but would only guarantee further delay in any recovery and the continued risk of a smaller or no recovery.

10. As set forth herein and more fully in the Settlement Memorandum, the Settlement was reached after more than three years of litigation, briefing, and negotiations; the Settlement was the result of an arm's-length settlement process between experienced parties and counsel, overseen by Mr. Murphy who has substantial experience conducting mediations, including in securities class actions; and the Settlement was reached only after Lead Plaintiffs and Lead Counsel achieved a substantial litigation victory early in the case, analyzed more than 60,000 pages of documents to identify key "hot" and "critical" documents that would likely represent main exhibits at trial, prepared and fully briefed Lead Plaintiffs' motion for class certification, and consulted with Lead Counsel's damages expert.

11. The Settlement provides immediate recovery without the risks, uncertainties, and delay of continued litigation. Based on its experience in securities class actions and in this case, and for the reasons set forth in the Settlement Memorandum, Lead Counsel believes that the Settlement is fair, reasonable, and in the best interest of the Class.

4888-9573-5221.v1

## II.      THE PLAN OF ALLOCATION

12.      Upon approval by the Court, the Plan of Allocation governs the method by which the Net Settlement Fund will be distributed on a *pro rata* basis to Class Members who submit valid, timely Proof of Claim and Release forms.  The proposed Plan of Allocation is set forth in the Notice.

13.      The proposed Plan of Allocation was developed in consultation with Robbins Geller's damages expert, Dr. Cain.  It reflects the statutory scheme and damages theory for the claims alleged, and it is similar to plans of allocation used in other settlements resolving Securities Act of 1933 claims.

14.      Thus, the Plan of Allocation is designed to fairly and reasonably allocate the Net Settlement Fund among eligible Class Members.  For the reasons set forth in the Settlement Memorandum, Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved.

## III.      THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

15.      Lead Counsel respectfully requests that the Court award 30% of the $29,250,000 Settlement Amount for attorneys' fees.  For the reasons set forth in the Fee Memorandum, Lead Counsel believes such a fee is reasonable and appropriate.  Lead Counsel further requests an award of $118,705.63 in litigation expenses and charges in connection with the prosecution of this Litigation.  Arguments and authorities supporting the requested fees and expenses are set forth in more detail in the Fee Memorandum.

16.      Plaintiffs' Counsel's time and resources expended in the research, investigation, and prosecution of this Litigation are set forth in the Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Declaration of Lucas E. Gilmore Filed on Behalf of Hagens

- 6 -

Berman Sobol Shapiro in Support of Application for Award of Attorneys' Fees and Expenses, and Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses, submitted herewith. Included in those declarations are a summary of the time and expenses incurred by Plaintiffs' Counsel in this Litigation.

17.     As set forth in the Fee Memorandum, Lead Counsel worked diligently to obtain a favorable result for the Class. The recovery obtained for the Class is the direct result of the significant efforts of attorneys who possess substantial experience in the prosecution of complex securities class actions. *See* www.rgrdlaw.com.

18.     On the other side, Defendants were represented by experienced lawyers from large and well-known defense firms, Mayer Brown LLP, Skadden, Arps, Slate, Meagher & Flom LLP, and Akin Gump Strauss Hauer & Feld LLP. The ability of Lead Counsel to obtain the Settlement in the face of such opposition confirms the quality of Lead Counsel's representation.

19.     From the outset, Lead Counsel understood that its attorneys and paraprofessionals would have to devote a significant amount of time and effort to the prosecution of this case. The time spent by Lead Counsel on this case was at the expense of the time that it could have devoted to other matters. Lead Counsel undertook this case solely on a contingent fee basis, assuming a risk that the case would yield no recovery and leave Lead Counsel uncompensated. The only way Lead Counsel would be compensated was to achieve a successful result.

20.     Unlike counsel for defendants, who are generally paid an hourly rate and paid for their time and expenses on a monthly or other regular basis, Lead Counsel has not been compensated for any time or expenses since this case was initiated. Instead, when working on a contingent fee basis, Lead Counsel must wait until the very end of the litigation, which typically

- 7 -

4888-9573-5221.v1

takes many years, to secure payment for its efforts, if at all. To date, Lead Counsel has not been compensated for any of the work detailed herein.

21. Lead Counsel's substantial experience and advocacy was required in presenting the strengths of this case in pleadings, briefing, and at the mediations in an effort to achieve a favorable settlement and convince Defendants, their insurers, defense counsel, and the mediator of the risks Defendants faced from not settling and proceeding to trial. To that end, Lead Counsel assembled an experienced litigation team, as set forth in the firm's resume.

22. The undersigned was the lead trial attorney assigned to this matter from Robbins Geller, is an experienced attorney who has worked at Robbins Geller for 20 years, and previously was a commercial litigator for one of the largest law firms in the United States that, among other things, aggressively litigated complex actions in both state and federal court, including securities class action matters. Since joining Robbins Geller in 2004, the undersigned has been counsel in many securities class actions that resulted in substantial and favorable recoveries, including a recent settlement for $1.21 billion that is the ninth largest securities class action settlement in history, as well as a $173 million settlement that is the seventh-largest securities class action recovery ever obtained in the Seventh Circuit.

23. If the case had not settled, Lead Counsel was fully prepared to litigate this case through the complex stages of pre-trial litigation, trial, and appeal. Lead Counsel only recommended settlement after extensive efforts to obtain the best possible result for the Class.

24. For the reasons detailed in the Fee Memorandum, including the favorable recovery obtained, the complexity of the issues presented, the effort and skill exhibited by Lead Counsel, the contingent nature of Lead Counsel's representation, the fee awards in comparable class actions, and Lead Plaintiffs' negotiation and endorsement of the requested fee, Lead Counsel believes the requested fee and litigation expense awards are reasonable and appropriate, particularly when

- 8 -

4888-9573-5221.v1

considering the policy of incentivizing counsel to take on and diligently pursue meritorious securities class actions.

## IV.     CONCLUSION

25.     In view of the immediate, certain, and favorable recovery to the Class and the challenges presented by the claims against the Defendants and facts of this case, as described above and in the accompanying Settlement Memorandum, Lead Counsel submits that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate.  In view of the recovery achieved and the quality of work performed, among other things, as described above and in the accompanying Fee Memorandum, Lead Counsel submits that the fee and expense application should be approved.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 17th day of April, 2024, at Boca Raton, Florida.

*s/ Robert J. Robbins*
ROBERT J. ROBBINS

- 9 -

4888-9573-5221.v1